Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
James Doty (NY Bar No. 4552550)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop CC-5201
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
(202) 326-3395 (fax)

Attorneys for Plaintiff
Federal Trade Commission

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**UBER TECHNOLOGIES, INC.**, a corporation, and<br><br>**UBER USA, LLC**, a limited liability company,<br><br>Defendants. | Case No. 4:25-cv-03477-JST<br><br>**JOINT RULE 26(f) REPORT AND CASE MANAGEMENT STATEMENT**<br><br>Assigned to: Hon. Jon S. Tigar<br><br>Scheduling Conf.: Aug. 5, 2025<br>Time: 2:00 PM<br>Place: Zoom |

### JOINT REPORT PURSUANT TO FED. R. CIV. P. 26

Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 16-9, and the "Standing Order for All Judges of the Northern District of California - Contents of Joint Case Management Statement," Plaintiff, the Federal Trade Commission ("Plaintiff" or the "FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC ("Defendants" or "Uber") (collectively, the "Parties"), by and through their respective counsel of record, hereby submit this Joint Report in advance of the Court's August 5, 2025, Initial Case Management Conference.

### I.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345. There are no issues regarding jurisdiction or venue. There are no remaining parties to be served.

## II. STATEMENT OF FACTS

### A. <u>Plaintiff's Statement</u>

As described in the Complaint (ECF No. 26), Plaintiff alleges that for years, Defendants have unlawfully enrolled consumers in their paid Uber One subscription service and have trapped consumers in these subscriptions by requiring consumers to locate and navigate complex and multi-step cancellation flows that are frequently ineffective. Defendants have lured consumers into these paid subscriptions with promises that consumers can "cancel anytime" without additional fees or penalties. Consumers, however, cannot effectively cancel within the final 48 hours of their billing period because of Defendants' practice of charging consumers before their stated billing dates, and those who try to cancel earlier are often thwarted by Defendants' cancellation flows that are unreasonably difficult to find and complete. These practices have caused many consumers to be charged for months or even years of Uber One without their express informed consent.

Plaintiff further alleges that Defendants have enrolled and charged consumers without their consent with unprompted pop-up ads and push notifications that appear while consumers are ordering a ride or food delivery, and that Defendants charged consumers after they had completed cancellation or while they were waiting for Defendants' response to a cancellation request. In addition, Defendants have failed to clearly and conspicuously disclose material terms of Uber One, including (i) that it is a recurring paid subscription, (ii) the amount of money that consumers can actually save, (iii) that consumers are charged before their stated billing dates, and (iv) the methods of cancellation.

Once consumers have been enrolled in Uber One, they are continuously charged ($9.99 per month or $96 per year) unless they can successfully navigate one of Defendants' counterintuitive cancellation flows. Consumers attempting to cancel through the Defendants' "self-help" method must complete as many as 12 separate actions across at least 7 screens. If they attempt to cancel within the final 48 hours of their billing period, they may need to take up to 32 actions across as many 23 screens, ultimately arriving at a screen that lacks any effective cancellation option at all.

**B. Defendant's Statement**

Uber is a technology company that has revolutionized the way that people, food, and products get around cities and towns. Uber connects riders with drivers, eaters with restaurants, and shoppers with merchants. Billions of times, Uber has provided these valuable services to consumers seeking more cost-effective and efficient means of transportation and delivery. Like many companies, Uber also offers a membership program, called Uber One, that provides consumers additional savings and exclusive benefits. As is common with such programs, consumers can try Uber One for free and see if it makes sense for them. Before consumers join or try Uber One, Uber informs consumers about the terms of the Uber One membership. And members can cancel Uber One whenever they wish, with no additional fees or penalties for doing so.

These common and unremarkable features are the target of the Federal Trade Commission's lawsuit, which includes claims under the FTC Act and the Restore Online Shoppers' Confidence Act ("ROSCA"). The Complaint gets the facts wrong and is not supported by the law. Discovery will reveal the many weaknesses in the FTC's case, but a few fundamental flaws pervade all of the claims.

*First*, there is nothing false or misleading about Uber's statement that consumers could "cancel anytime with no additional fees or penalties." Even the Complaint admits that Uber One members can cancel their memberships anytime through either the App's self-cancellation flow or by contacting Uber Support in the app or on the web. And the Complaint does not allege that Uber charges an additional fee or penalty for cancelling Uber One. It alleges only that Uber charges consumers for membership as disclosed and agreed to by consumers. Charging a consumer for a membership from which the consumer continues to benefit is not an "additional" cancellation fee or penalty; it is a membership charge.

*Second*, the experience of a handful of members seeking to cancel within 48 hours of a renewal date describes nothing unlawful. Before a recent policy change and technological update months before this Complaint was filed, Uber disclosed to members that they should cancel their membership more than 48 hours prior to the next membership period to avoid charges for the

next month. This was because the next month's charge may have already begun processing, due to financial institutions' processing windows. If a member nevertheless sought to cancel within the 48-hour window, Uber would direct them to do so through customer support—allowing members to request a refund of the next month's membership if they wanted. Just like any other time, therefore, members could cancel, and Uber charged them no cancellation fee to do so.

*Third*, Uber clearly and conspicuously disclosed all material terms of Uber One, and consumers agreed to those terms before enrolling. The Complaint's screenshots plainly show that Uber informs consumers of the price, renewal terms, billing practices, and cancellation policies in simple language set off in bold or contrasting text. By telling consumers the terms and then asking them to click a button to join, Uber obtains their express informed consent before enrollment. On the other end, cancelling is also simple and intuitive, using familiar features like a "Manage Membership" button. The buttons to press are clear and simple and easy to read, and the cancellation process is fast.

At its core, the FTC's lawsuit is quintessential agency overreach. It attacks lawful practices that look nothing like those ROSCA was meant to prohibit. Congress passed that law in the early years of the Internet to stamp out pernicious tactics employed by third-party sellers who tricked consumers into unknowingly buying their products or services while completing a transaction with a different online retailer. Uber One, by contrast, is a popular, well-known, and straightforward membership for which consumers must take an affirmative step to enroll. Uber vigorously disputes and denies all of the FTC's claims.

## III.     DISPUTED POINTS OF LAW

The Parties believe the following issues of law are disputed:

(1) Whether Uber's representations that Uber One members could cancel anytime with no additional fees were false or misleading in violation of the FTC Act.

(2) Whether Defendants have charged consumers without their express informed consent in violation of the FTC Act.

(3) Whether the Uber One membership program constitutes a "negative option feature" under the Restore Online Shoppers' Confidence Act ("ROSCA") as a matter of law.

(4) If so, whether:

    a. Defendants have failed to clearly and conspicuously disclose material transaction terms and obtain consumers' express informed consent before charging them.

    b. Defendants have failed to provide a simple mechanism to stop recurring charges in violation of ROSCA.

(5) Whether liability can be imposed consistent with the Due Process Clause, First Amendment, Equal Protection Clause, Excessive Fines Clause of the Eighth Amendment, and the major questions doctrine.

## IV. PRIOR AND PENDING MOTIONS

On April 30, 2025, Plaintiff filed an Administrative Motion to Consider Whether Another Party's Material Should be Sealed (ECF No. 20). The Court has already resolved this Administrative Motion, and granted Defendants' sealing request. The Parties have also filed several administrative motions for *pro hac vice* admission. The Court has resolved all such motions.

Subject to developments during the discovery period, the Parties at present anticipate that they each may file a motion for summary judgment. Should the case proceed beyond the summary-judgment stage, the Parties also anticipate they may each file various pretrial motions, including motions *in limine* and *Daubert* motions.

## V. AMENDED PLEADINGS

### A. Plaintiff's Position

Plaintiff proposes that the deadline for amending the pleadings or joining additional parties be November 1, 2025. Plaintiff reserves the right to seek leave to amend based on fact discovery, including by seeking leave to name additional defendants if warranted through facts learned in discovery.

### B. Defendants' Position

Defendant proposes that the deadline for amending the pleadings or joining additional parties be August 25, 2025.

## VI. EVIDENCE PRESERVATION

Both Parties certify that their respective counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The Parties further certify that they have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## VII. INITIAL DISCLOSURES

The Parties served their respective Initial Disclosures on or before July 17, 2025, the deadline set by the Court's Initial Case Management Scheduling Order (ECF No. 10). These Initial Disclosures include the information required by Federal Rule of Civil Procedure 26(a)(1).

## VIII. DISCOVERY

### A. Discovery Taken to Date

FTC and Defendant Uber Technologies, Inc. each served their first Requests for Production and Interrogatories. The Parties have not otherwise issued any written discovery or taken any depositions in this case.

Prior to this case being filed by the FTC, Defendant Uber Technologies, Inc. responded to a Voluntary Access Letter ("Access Letter") issued by the FTC. Defendant Uber Technologies, Inc. produced documents in response to this Access Letter. The Parties agree that all documents previously produced to the FTC and available to Plaintiff are deemed produced in this case, subject to a forthcoming stipulated Protective Order, and need not be reproduced by the Defendants in response to any discovery requests.

Notwithstanding the agreement that reproduction is unnecessary, if Plaintiff identifies any deficiency in the format of specific documents already produced to the FTC, it reserves the right to request that Defendants produce those identified documents directly in a format that corrects the deficiency. Defendants reserve the right to object to such reproduction.

### B. Scope of Anticipated Discovery

#### i. Plaintiff's Position

Plaintiff expects to issue additional discovery requests to Defendants as appropriate. Plaintiff also expects to issue deposition notices for fact depositions and Rule 30(b)(6) depositions of Uber Technologies, Inc. and Uber USA, LLC. Plaintiff anticipates that the scope of non-party discovery in this case will be relatively limited, but it expects to issue subpoenas for documents and depositions, including corporate representative depositions, to certain third parties including (1) vendors or contractors that performed work for Defendants on relevant subject matters, and/or (2) other entities that may have knowledge and records of Defendants' alleged unlawful conduct.

### ii. Defendants' Position

Defendants expect to issue additional discovery requests to FTC as appropriate, and to limited third parties, including Requests for Production, Interrogatories, Requests for Admission, and deposition notices.

## C. Proposed Limitations or Modifications to Discovery Rules

Due to the complexity of the case, Plaintiff expects that it will seek to take more than ten depositions. *See FTC v. Amazon.com, Inc. et al.*, No. 2:23-cv-00932-JHC, Dkt. No. 193 (W.D. Wash. Sept. 19, 2024). Before significant discovery has been conducted, however, Plaintiff believes it is premature to suggest a precise number of depositions that may be necessary.

Defendants believe it is premature to seek additional depositions beyond the amount allotted under the federal rules at this time.

## D. Proposed Discovery Plan Pursuant to Federal Rule of Civil Procedure 26(f)

### i. Changes to Requirements for Initial Disclosures (26(f)(3)(A))

The Parties do not propose any changes to the requirements for Initial Disclosures.

### ii. Discovery Schedule (26(f)(3)(B)

Plaintiff and Defendants have proposed different schedules for discovery that are included in their responses in Section XIV below.

### iii. Electronically Stored Information (26(f)(3)(D))

The Parties anticipate filing a stipulated E-Discovery Order governing the collection, review, and production of electronically stored documents.

### iv. Claims of Privilege or Protection (26(f)(3)(D))

The Parties agree that the provisions of Federal Rule of Evidence 502 apply to any privileged documents inadvertently disclosed by the parties. The Parties agree that if one party reasonably believes that a document produced by the other side may be privileged and was produced in error, the Party shall promptly notify the producing Party. The producing Party shall have fourteen (14) business days after receipt of this notification to claw back the document, and if the document is not clawed back, any applicable privilege is deemed waived. The receiving Party must destroy all copies of a clawed back document, except that the receiving party may sequester and preserve one copy of a document that may be used solely for the purposes of challenging the clawback. If no challenge is made to the clawback within twenty-one (21) days, this sequestered copy shall be destroyed.

### v. Changes to Discovery Limitations (26(f)(3)(E))

At this time, the Parties do not seek any discovery limitations. During the course of discovery, if either party believes that discovery limitations may be necessary, it will seek appropriate leave from the Court.

### vi. Other Court Orders (26(f)(3)(F))

The Parties anticipate filing a stipulated Protective Order governing confidentiality for purposes of discovery.

## IX. RELATED CASES

The Parties are not aware of any related cases, as that term is defined in Local Rule 3-12, pending before another judge of this court of another court or administrative body.

## X. RELIEF SOUGHT BY CLAIM OR COUNTER CLAIM

Plaintiff intends to seek injunctive relief for Defendants' violations of the FTC Act and injunctive and monetary relief for Defendants' violations of ROSCA. It has not yet determined the amount of monetary relief it will seek.

Defendants have not filed a counterclaim or cross claim.

## XI. SETTLEMENT AND ADR

### A. Plaintiff's Position

Plaintiff does not believe that settlement communications or ADR is reasonably likely to be fruitful because the Parties engaged in extensive settlement negotiations immediately prior to the filing of this case that did not result in resolution. Accordingly, pursuant to ADR Local Rule 3-5(d)(3), Plaintiff respectfully requests that the Court defer making any ADR referral until after the case has progressed through substantial discovery. In the event that an ADR referral is ordered by the Court, Plaintiff's position is that court-sponsored mediation to be completed by August 1, 2026 (Plaintiff's proposed fact and expert discovery cut-off) would be the most beneficial option.

### B. Defendants' Position

Defendants believe that private mediation is appropriate for this case and would welcome a discussion with the Court at the Case Management Conference regarding the most productive path forward for ADR.

## XII. OTHER REFERENCES

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation. All Parties do not consent to the jurisdiction of a magistrate judge for all purposes.

## XIII. NARROWING OF ISSUES

At this time, the Parties have not identified any issues that can be narrowed by agreement or through stipulated facts and/or the presentation of a summary at trial. The Parties do not request to bifurcate any claims, issues, or defenses.

## XIV. SCHEDULING

### A. Plaintiff's Position

Plaintiff's proposed schedule is as follows:

| Event | Date |
|---|---|
| Deadline to amend the pleadings and for joinder of additional parties | October 31, 2025 |

| | |
|---|---|
| Expert disclosures | May 1, 2026 |
| Rebuttal expert disclosures | July 1, 2026 |
| Fact and expert discovery cut-off | July 31, 2026 |
| Summary judgment motions due | September 1, 2026 |
| Hearing on dispositive motions | November 19, 2026 (or on such a date as is convenient to the Court) |
| Pre-trial conference | January 22, 2027 (or on such a date as is convenient to the Court) |
| Trial | February 8, 2027 (or on such a date as is convenient to the Court) |

Plaintiff proposes approximately one year for discovery. This schedule builds in time for the Parties to make document requests (in addition to interrogatories and requests for admission); to respond to those requests, locate responsive documents, and produce them; to resolve discovery disputes or bring them to the Court; to prepare affirmative and rebuttal expert reports; and to conduct depositions. Plaintiff's proposed schedule accommodates for the complexity of this case and is consistent with the scheduling order issued in the *Amazon* matter (*FTC v. Amazon.com, Inc. et al.*, No. 2:23-cv-00932, Dkt. No. 66 (W.D. Wash. Sept. 14, 2023)), which alleges similar misconduct against a large corporation.

Defendants' proposed schedule is inadequate for two reasons. First, Defendants' proposal that written discovery and the production of documents be completed by February 18, 2026 will not provide the Parties with sufficient time to produce critical evidence relevant to the case, such as data and information on Uber One enrollees and cancellations. Throughout the investigation that preceded the filing of this case, Defendants repeatedly claimed that they required extensive amounts of time to respond to simple data requests. Ultimately, they either failed to respond to such requests or produced only limited, self-serving responses. Because Plaintiff anticipates seeking similar data and information during discovery, as well as additional materials that it did not seek during the investigation, the time allotted for written discovery and the production of

documents in Defendants' proposed schedule is insufficient and will result in unnecessary motion practice and the need for extension requests.

Second, Plaintiff disagrees with Defendants' proposal that Plaintiff disclose its expert reports before Defendants. Plaintiff agrees that any Uber expert report that is limited to rebutting an FTC expert report can be submitted at the FTC's proposed rebuttal deadline. There is no basis, however, to allow Defendants to wait and see what the Plaintiff's experts say before offering their own affirmative opinions on issues – such as the clarity and simplicity of Uber One's enrollment and cancellation processes – that the parties already know are in dispute. Moreover, critical information likely to be addressed in expert reports is exclusively in Defendants' possession, such as data on Uber One subscribers, enrollment, and cancellation flows. Thus, Defendants have already had several months to analyze this information and prepare potential expert reports in light of the issues raised in the Complaint. Consistent with the foregoing, courts have regularly issued scheduling orders in line with the approach that Plaintiff proposes here. *See, e.g., Lewis v. Accurate C&S Services, Inc.*, No 4:24-cv-09294-JST, Dkt. No. 13 (N.D. Cal. March 25, 2025); *Armstrong v. TD Bank et al.*, No. 4:22-cv-02729-JST, Dkt. No. 38 (N.D. Cal. Aug. 9, 2022); *Lopez v. Inflection Risk Solutions, LLC*, No. 4:21-cv-04854-JST, Dkt. No. 25 (N.D. Cal. March 8, 2022); *Cagno v. Synchony Bank*, No. 4:21-cv-03105-JST, Dkt. No. 19 (N.D. Cal. Aug. 10, 2021); *Onyeador et al. v. Experian Information Solutions, Inc.*, No 4:20-cv-08596-JST, Dkt. No. 16 (N.D. Cal. June 4, 2021); *FTC v. Doxo, Inc.*, No. 2:24-cv-00569-TSZ, Dkt. No. 40 (W.D. Wash. April 15, 2025); *FTC v. Amazon, Inc. et al.*, No 2:23-cv-00932-JHC, Dkt. No. 66 (W.D. Wash. Sept. 14, 2023).

### B. Defendants' Position

Defendants propose the following schedule:

| Event | Date |
|---|---|
| Last day to request leave to amend pleadings per Fed. R. Civ. P. 15; deadline for joinder of any additional parties | August 25, 2025 |
| Deadline for written discovery and the production of documents | February 18, 2026 |
| Fact discovery deadline | May 18, 2026 |
| Plaintiff's initial expert disclosures | June 19, 2026 |

| Defendants' expert disclosures | September 18, 2026 |
|---|---|
| Plaintiff's rebuttal expert disclosures | October 20, 2026 |
| Expert discovery deadline | November 20, 2026 |
| Deadline to file summary judgment motions | January 10, 2027 |
| Deadline for oppositions to summary judgment motions | February 28, 2027 |
| Deadline for replies in support of dispositive and evidentiary motions | *21 days before hearing on summary judgment* |
| Hearing on dispositive motions | *To be requested* |
| Exchange exhibits and exhibit list | *At least 21 calendar days before final pretrial conference* |
| Deadline to meet and confer before final pretrial conference | *At least 21 calendar days before final pretrial conference* |
| Deadline for motions *in limine* and joint pretrial statement and order deadline | *At least 10 days before final pretrial conference* |
| Final pretrial statement and proposed findings of fact and conclusions of law | *At least 7 days before final pretrial conference* |
| Deadline for opposition to motions *in limine* | *At least 3 days before final pretrial conference* |
| Trial exhibits and trial brief | *At least 7 days prior to commencement of trial* |
| Final pretrial Conference | May 5, 2027 (To be set by Court) |
| Trial | May 10, 2027 (To be set by Court) |

Defendants' proposed schedule is designed to set reasonable, efficient, and clear deadlines to move this case forward. We summarize the key differences between the Defendants' proposed schedule and the FTC's proposed schedule below.

First, Defendants' schedule sets interim deadlines for completion of document/data discovery, fact discovery, and expert discovery. The interim deadline to complete document/data discovery will allow for orderly depositions "after document production is substantially complete." *See FTC v. DOXO, Inc.*, No. 2:24-cv-00568-TSZ, Dkt. No. 57 (W.D. Wash. July 8, 2025) (FTC's motion). This will prevent requests to re-examine witnesses based on later produced documents and will ensure sufficient time for completion of document discovery. Similarly, setting a completion for fact discovery before the disclosure of expert reports, should ensure that all experts have the benefit of a complete factual record before expert disclosures are made.

Second, Defendants propose a staggered expert disclosure schedule where the party that bears the burden of proof discloses its experts first and then the party that does not bear the burden of proof responds. This orderly exchange is outlined by the Advisory Committee notes to Rule 26 which states that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." *See* Fed. R. Civ. P. 26, Advisory Committee Notes to 1993 Amendments. This sequencing is especially useful in cases like this one, where Plaintiff asserts multiple theories and Defendants "must know them in advance" to meaningfully respond. *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, No. 01-20418 JW, 2005 WL 1459572, at *2 (N.D. Cal. June 21, 2005). This staggered expert disclosure was also adopted by this Court in a recent ROSCA case, *United States v. Adobe, Inc. et al*, No. 5:24-cv-03630-NW Dkt. No. 70 (N.D. Cal. Dec. 6, 2024) (scheduling order), and in several other cases in this court, *see e.g., Homyk v. Chemocentryx, Inc., et al.*, No. 21-cv-03343-JST, Dkt. No. 148 (N.D. Ca. Apr. 22, 2024); *In re Plantronics Securities Litigation*, No. 19-cv-07481-JST, Dkt. No. 135 (N.D. Ca. Feb. 21, 2023).

### XV. TRIAL

At this time, the Parties agree that this case should be tried to the Court and, subject to adjustment based on the conduct of discovery and rulings by the Court, the Parties estimate that each would need approximately 8 business days to present its case in chief, and that the full trial should take approximately three weeks.

### XVI. DISCLOSURE OF INTEREST PARTIES

Plaintiff is not required to file a Certification of Interested Parties pursuant to Local Rule 3-15(a). Defendants filed their Rule 7.1 Corporate Disclosure Statement and Civil L.R. 3-15 Certification of Conflicts (ECF No. 13) and Interested Entities or Persons on April 28, 2025 (ECF No. 14).

### XVII. PROFESSIONAL CONDUCT

Both Parties confirm that their respective counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully submitted,

Dated: July 29, 2025

   /s/ Paul Mezan
Paul Mezan
Stephanie Liebner
James Doty
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Stop CC-10232
Washington, DC 20580
(202) 758-4177 (Mezan)
E-mail: pmezan@ftc.gov
(202) 326-3395 (fax)

**Attorneys for Plaintiff**
**Federal Trade Commission**


   /s/ Benjamin M. Mundel
Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8729
Facsimile: +1 202 736 8711

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Ausjia Perlow (*pro hac vice*)
aperlow@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: +1 212 839 5886
Facsimile: +1 212 839 5599

**Attorneys for Defendants**
**Uber Technologies, Inc. and Uber USA, LLC**

**ECF ATTESTATION**

I, Paul Mezan, hereby attest that concurrence in the filing of this document has been obtained from the other signatories, and that this document was served by electronic filing on July 29, 2025, on all counsel of record.

                           */s/ Paul Mezan*

                           Paul Mezan