Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415-772-1200
Facsimile: 415-772-7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202-736-8729
Facsimile: 202-736-8711

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN, <br><br> Plaintiffs, <br><br> v. <br><br> **Uber Technologies, Inc.**, a corporation, and **Uber USA, LLC**, a limited liability company, <br> Defendants, | Case No. 4:25-cv-3477 <br><br> **DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS** <br><br> Assigned to: Hon. Jon S. Tigar <br><br> Date:   April 2, 2026 <br> Time:  2:00 p.m. <br> Place:  Courtroom 6 <br><br> **Oral Argument Requested** <br> **First Amended Complaint Filed: December 15, 2025** |

# TABLE OF CONTENTS

I.    INTRODUCTION                                                                                    2

II.   BACKGROUND ................................................................................................3

    A.    Uber One Is A Popular Membership Program.............................................4

        1.    Uber accurately informs consumers about the terms of Uber One...................4

        2.    Uber allows consumers to cancel anytime with no fees. ...................5

    B.    The First Amended Complaint Fails To State A Claim...................................5

III.  ARGUMENT ....................................................................................................6

    A.    Count One Fails To State A Claim. ..............................................................6

        1.    Uber's statements about delivery fees and savings are not misleading. ...........7

        2.    Consumers may cancel Uber One at any time with no fee. ...............9

    B.    The ROSCA Counts Should Be Dismissed Because The Amended Complaint Does Not Plausibly Allege That ROSCA Applies. ...................................12

    C.    Count Three Should Be Dismissed Because The FAC Fails To Adequately Allege That Uber Did Not Provide Clear And Conspicuous Disclosures. .............................13

    D.    Count Four Should Be Dismissed Because Uber Obtained Express Informed Consent. ................................................................................................16

    E.    The Requests For Civil Penalties Should Be Dismissed. ...........................17

        1.    The demand for federal civil penalties must be dismissed for failure to follow statutory procedures. ...................................................17

        2.    Civil penalties are not available for the alleged violations of the FTC Act.....18

    F.    The States Fail To Plausibly Plead Standing, Authority To Bring Their Claims, Or The Merits. ................................................................................................21

        1.    The FAC fails to plausibly plead Article III standing.....................................21

        2.    Certain states otherwise lack authority to bring their claims..........................23

        3.    The states' barebones citations fail to plausibly plead their claims................25

IV.   CONCLUSION.................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeghe v. Procter & Gamble Co.*,
   2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) .................................................25

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) .....................................................7

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982)...........................................................................22, 23

*AMG Cap. Mgmt. LLC v. Fed. Trade Comm'n*,
   593 U.S. 67 (2021).................................................................................18

*Aminov v. DraftKings, Inc.*,
   2025 WL 2108543 (E.D.N.Y. July 28, 2025)............................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................21, 25

*Att'y Gen. v. Diamond Mortg. Co.*,
   327 N.W.2d 805 (Mich. 1982)................................................................21

*Barrer v. Chase Bank USA, N.A.*,
   566 F.3d 883 (9th Cir. 2009) .................................................................14

*California v. Infineon Techs. AG*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) .............................................21, 24

*CashCall, Inc. v. Morrisey*,
   2014 WL 2404300 (W. Va. May 30, 2014)..............................................21

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
   2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ...........................................20

*State ex rel. Corbin v. United Energy Corp. of Am.*,
   725 P.2d 752 (Ariz. Ct. App. 1986).......................................................21

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..............................................................................21

*Daly v. Amazon.com, Inc.*,
   718 F. Supp. 3d 1378 (W.D. Wash. 2024)...............................15, 16, 17

*In re DirecTV Early Cancellation Fee Litig.*,
   2009 WL 10697976 (C.D. Cal. May 4, 2009) .........................................11

ii

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ....................................................................................................14

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013).......................................................................................................9

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................................................................8

*FTC v. Amazon.com, Inc.*,
   2024 WL 2723812 (W.D. Wash. May 28, 2024)......................................................................14

*FTC v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019) ....................................................................................................19

*FTC v. D-Link Sys., Inc.*,
   2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) ...........................................................................7

*FTC v. FTC v. Am. Future Sys., Inc.*,
   2024 WL 1376026 (E.D. Pa. Mar. 29, 2024).....................................................................20, 21

*FTC v. Lights of Am., Inc.*,
   760 F. Supp. 2d 848 (C.D. Cal. 2010) ........................................................................................7

*FTC v. Stefanchik*,
   559 F.3d 924 (9th Cir. 2009) .................................................................................................7, 14

*Gershfeld v. TeamViewer US, Inc.*,
   No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023) ........................................................16

*Greer v. Strange Honey Farm, LLC*
   114 F.4th 605 (6th Cir. 2024) .....................................................................................................7

*Hall v. Capella Univ.*,
   770 F. App'x 776 (8th Cir. 2019) ...............................................................................................7

*Hall v. Google LLC*,
   2025 WL 1555747 (N.D. Cal. June 2, 2025) (Tigar, J.) .............................................................6

*Hall v. Time, Inc.*,
   2020 WL 2303088 (C.D. Cal. Mar. 13, 2020) .........................................................................15

*Hall v. Time, Inc.*,
   857 Fed. App'x. 385 (9th Cir. May 24, 2021) .........................................................................16

*Harrison v. Jefferson Parish School Board*,
   78 F.4th 765 (5th Cir. 2023) ................................................................................................22, 23

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir.), *vacated and remanded on other grounds*, 583 U.S. 941
   (2017)........................................................................................................................................22

iii

*Haywood v. Massage Envy Franchising, LLC*,
   887 F.3d 329 (7th Cir. 2018) .............................................................................7

*Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2023 WL 7284160 (N.D. Cal. Nov. 3, 2023) (Tigar, J.).........................................9

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010) .......................................................................................19

*Jones v. L.A. Cent. Plaza LLC*,
   74 F.4th 1053 (9th Cir. 2023) .........................................................................23

*Keebaugh v. Warner Brothers Entertainment Inc.*,
   100 F.4th 1005 (9th Cir. 2024) .......................................................................17

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) .....................................................................22, 23

*Lupin Pharm., Inc. v. Richards*,
   2015 WL 4068818 (D. Md. July 2, 2015)..........................................................24

*Manitoba v. Bernhardt*,
   923 F.3d 173 (D.C. Cir. 2019) .......................................................................22

*Marshall v. Miller*,
   276 S.E.2d 397 (N.C. 1981) ...........................................................................21

*Migliore by Migliore v. Vision Solar LLC*,
   160 F.4th 79 (3d Cir. 2025) ..............................................................................7

*Millam v. Energizer Brands, LLC*,
   2024 WL 2988210 (9th Cir. June 14, 2024) .......................................................9

*Moore v. Compass Grp. USA, Inc.*,
   2022 WL 4598558 (E.D. Mo. Sept. 30, 2022).....................................................25

*Navajo Nation v. Wells Fargo & Co.*,
   344 F. Supp. 3d 1292 (D.N.M. 2018) ...............................................................23

*Nicholas v. Amazon.com, Inc.*,
   740 F. Supp. 3d 1099 (W.D. Wash. 2024)....................................................15, 16

*Novartis Pharms. Corp. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024) .......................................................................13

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ...........................................................................13

*People of the State of New York v. Sirius XM Radio Inc.*,
   2024 WL 4877083 (N.Y. Sup. Ct. Nov. 21, 2024), aff'd, 243 A.D.3d 424, 245
   N.Y.S.3d 37 (2025)..................................................................................11, 24

iv

*Perkins v. New York Times Co.*,
　2023 WL 3601489 (S.D.N.Y. May 23, 2023) ........................................................16

*Robins v. Glob. Fitness Holdings, LLC*,
　838 F. Supp. 2d 631 (N.D. Ohio 2012) ...............................................................11

*Romero v. Flowers Bakeries, LLC*,
　2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ...........................................................11

*Rooney v. Cumberland Packing Corp.*,
　2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) .........................................................11

*Safeco Ins. Co. of Am. v. Burr*,
　551 U.S. 47 (2007) .....................................................................................19

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*,
　946 F.3d 951 (6th Cir. 2020) ...........................................................................22

*Sam v. Beaird*,
　685 So. 2d 742 (Ala. Civ. App. 1996) .................................................................21

*State v. CSC Holdings, LLC*,
　2025 WL 2708275 (Conn. Super. Ct. Sept. 17, 2025) ...............................................21

*Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*,
　256 F.3d 879 (9th Cir. 2001) ...........................................................................22

*United Healthcare Servs., Inc. v. United Therapeutics Corp.*,
　2024 WL 1256266 (D. Md. Mar. 25, 2024) ...........................................................25

*United States v. Dish Network LLC*,
　256 F. Supp. 3d 810 (C.D. Ill. 2017) ..................................................................19

*United States v. Dish Network L.L.C.*,
　954 F.3d 970 (7th Cir. 2020) ...........................................................................19

*In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
　2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint*
　*USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ..........................................................15

*Viveros v. Audible, Inc.*,
　2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ...................................14, 15, 16, 17

*Walker v. Fred Meyer, Inc.*,
　953 F.3d 1082 (9th Cir. 2020) ..........................................................................14

*Walkingeagle v. Google LLC*,
　2023 WL 3981334 (D. Or. June 12, 2023), *aff'd*, 2024 WL 4379734 (9th Cir. Oct.
　3, 2024) .............................................................................14, 15, 16, 17

**Statutes**

15 U.S.C. § 45(m)(1)(A) .............................................................................18, 19

v

15 U.S.C. § 56(a)(1)(A) ...............................................................................................18

15 U.S.C. § 8403 ...............................................................................6, 12, 13, 16, 17

15 U.S.C. § 8404(a) ...................................................................................................19

15 U.S.C. § 8405(a) ...................................................................................................18

28 U.S.C. § 1367(c)(4) ...............................................................................................25

Ala. Code § 8-19-11(a), (b), (c) .................................................................................24

Mich. Comp. Laws § 445.905 .....................................................................................24

Mo. Rev. Stat. § 407.101 ............................................................................................24

Mont. Code Ann. § 30-14-142 .....................................................................................21

N.H. Rev. Stat. Ann. § 358-A:4 ...................................................................................24

N.J. Rev. Stat. § 56:8-8 ...............................................................................................24

N.Y. Exec. Law § 63(12) .........................................................................................24, 25

Neb. Rev. Stat. § 87-303.05 ........................................................................................24

Wis. Stat. § 100.18(11)(d) ...........................................................................................25

**Other Authorities**

16 C.F.R. § 310.2(w) .............................................................................................6, 12

84 Fed. Reg. 52393, 52396 (Oct. 2, 2019) ..................................................................20

88 Fed. Reg. 24716, 24718 (Apr. 24, 2023) ................................................................20

*Average*, Cambridge Dictionary ..................................................................................9

Fed. R. Civ. P. 15(a)(2) ................................................................................................6

FTC, *Working Together to Protect Consumers* (April 10, 2024) ..................................18

vi

1

<u>**NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS**</u>

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

Please take notice that on April 2, 2026 at 2:00 p.m., Defendants Uber Technologies, Inc. and

4

Uber USA, LLC (collectively, Uber) will bring for hearing this Motion and Partial Motion to

5

Dismiss, before the Honorable Jon S. Tigar, Oakland Courthouse, Courtroom 6.

6

The Court should dismiss the First Amended Complaint (FAC) in part under Rules 12(b)(1)

7

and 12(b)(6), because the Federal Trade Commission (FTC) and the State Plaintiffs have failed to

8

state a claim upon which relief can be granted, and the State Plaintiffs lack authority to bring their

9

claims. For these reasons, the Court should dismiss Counts One, Two (in part), Three, Four, and Five

10

of the FAC.

11

This motion is based on the attached memorandum and such arguments as may be presented

12

before or after the hearing on this matter.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Uber One is an immensely popular membership program that allows loyal Uber customers to save money on Uber rides and Uber Eats deliveries. Despite the Plaintiffs' allegations, Uber One is not about trapping customers in a program they do not want. It is about earning customer loyalty by providing valuable benefits, and Uber expends great efforts to ensure that customers not only understand what they are getting into when they subscribe to the program but also that they are able to cancel their memberships if the program does not satisfy their needs. There is nothing unlawful about Uber One, and countless companies offer similar membership programs.

With no viable theory on the facts, Plaintiffs seek to invent what their own allegations demonstrate to be untrue. Uber's disclosures directly contradict these allegations. To give just a few examples, Plaintiffs claim that Uber falsely advertises that consumers "will save a specific amount" on Uber One. But a screenshot of the message in question is clear about what Uber actually says: "That's how much people save *on average* from Uber One and promos in your country." Plaintiffs blast Uber for "assum[ing] that the subscription is free; the purported savings [from Uber One] does not subtract any costs." But Uber's language is clear: the "Estimated savings do not include membership price." They next claim that Uber falsely promises "$0 delivery fees" on everything with Uber One. But every screenshot containing that statement clearly applies it only to "eligible" orders. The pattern continues throughout the FAC, including through the FTC's and states' willful blindness to the word "additional" when Uber promises consumers that they can cancel with no "additional" fee.

Although there is no merit to the FAC's factual allegations, and Uber intends to vigorously dispute them, the FAC contains several threshold problems that can and should be resolved on a motion to dismiss.

First, Count One fails because there is nothing false or misleading about Uber's statements about savings, delivery fees, or cancellation. To the contrary, the targeted statements are accurate on their face. And reasonable consumers—unsurprisingly—understand truthful statements.

---

Second, the Restore Online Shoppers' Confidence Act (ROSCA) counts (Counts Three, Four, and Five) fail because Plaintiffs cannot show that ROSCA applies. That law applies only to services offered on the internet through a "negative option feature"—meaning that the service is "accepted" through silence or a failure to take action. But Uber One does not qualify, because consumers can only sign up through affirmative conduct (clicks). And even if ROSCA did apply, Uber's enrollment disclosures are clear and conspicuous because they are visible, legible, and present, and they tell consumers exactly what they are signing up for.

Third, the demand for federal civil penalties should be dismissed. By statute, federal civil penalties are not available for alleged violations of the FTC Act. Moreover, the FTC does not even allege that it followed the required statutory procedure to seek penalties. And the addition of state plaintiffs is an improper attempt to circumvent these limits that cannot cure those fatal flaws.

Finally, and in all events, in addition to belatedly and improperly joining this case, the states have failed to show that they have standing or the authority to bring their claims in federal court. The states' only basis for standing is their common law *parens patriae* authority, but they do not meet *their* burden to show standing under that doctrine. And the states' vague, scattershot citations to state statutes often backfire by showing that the states *cannot* bring suit here.

At its core, this case attacks lawful practices in a popular, well-known, and easy-to-navigate membership program that brings real value to its members. There is no good reason to waste the parties' and the Court's resources in years of litigation when claims and requested remedies fail as a matter of law.

## II.    BACKGROUND

Uber is a technology company that has revolutionized the way that people, food, and products get around cities and towns. Uber connects riders with drivers, diners with restaurants, and shoppers with merchants. Billions of times, Uber has provided these valuable services to consumers seeking more cost-effective and efficient means of transportation and delivery.

### A.    Uber One Is A Popular Membership Program.

Uber facilitates ride-hailing and food delivery services for consumers through a well-known mobile smartphone app of the same name. *See* FAC ¶12. For loyal Uber customers, Uber offers a membership service called Uber One. *See id.* ¶¶ 17–18. Uber One provides members with a host of benefits, including credits on rides, $0 delivery fee on eligible orders, discounts on food orders, and access to top-rated drivers. *Id.* ¶ 20, Ex. 2. An Uber One membership typically costs $9.99 per month, or a discounted $96 per year. *Id.* ¶ 3. The membership renews at the end of each term (monthly or yearly), until cancelled. *See id.* ¶ 17. Uber does not charge a fee for cancelling the membership, *id.* ¶ 20, Ex. 2; and after cancelling, the member's benefits continue through the end of the paid term, *see id.* ¶ 69, Ex. 25. Consumers may initiate both enrollment and cancellation of their Uber One subscription within the Uber app. *See id.* ¶¶ 34, 44, 75 n.†.

### 1.    Uber accurately informs consumers about the terms of Uber One.

Uber references the "savings and exclusive perks" of an Uber One membership and describes them in detail on its app. FAC ¶ 20, Ex. 2. Relevant here, Uber informs consumers that those benefits include "$0 Delivery Fee on eligible food, groceries, and more." *Id.* And Uber tells customers about the average amount Uber One members save every month. Uber states, for example: "You could save $25 each month," and further explains that these "[s]avings are based on average monthly savings, including any UberCash members have earned and used in your country with Uber One. Estimated savings do not include membership price." *Id.* ¶ 57, Ex. 19.

Each Uber One enrollment process includes a text disclosure clearly stating that Uber One is a membership that renews, what it costs, and when charges will be incurred if the consumer does not cancel. For example, Uber explains: "By joining Uber One, you authorize Uber to charge $9.99 on any payment method on your account, and monthly thereafter, based on the terms, until you cancel. To avoid charges, cancel up to 48 hours before [renewal date] in the app." FAC ¶ 27, Ex. 4; *id.* ¶ 35, Ex. 9. This disclosure is followed by a hyperlink to the full terms and conditions, and it appears immediately above the button a consumer must affirmatively tap in order to enroll in Uber One. *Id.*

---

4

Finally, Uber states that members can "Cancel anytime" and "Cancel your membership with no additional fees." *Id.* ¶ 19. Similarly, Uber discloses: "Cancel without fees or penalties," and then states, "You'll be charged $9.99 on March 12 [the membership renewal date] and every month until you cancel in app." *Id.* ¶ 30, Ex. 6. Another disclosure states: "Billing starts Jul 16, 2024 [the membership start date] for $9.99/mo. Cancel without fees or penalties." *Id.* ¶ 35, Ex. 9. That screen adds that, "[t]o avoid charges cancel up to 48 hours before Jul 16, 2024 [the membership start date] in the app," and contains a hyperlink to "View terms and conditions." *Id.* As Uber tells consumers, payment is initiated 48 hours before renewal. *See id.* This is to ensure that the financial institution can process the payment by its due date.

### 2. Uber allows consumers to cancel anytime with no fees.

Uber also offers consumers multiple ways to cancel their Uber One subscriptions. Although these processes have changed over time, the FAC's allegations make clear that a customer can cancel their Uber One subscription at any time in any of the following ways.

- Customers can cancel on the Uber App (the same place a consumer would sign up), by clicking through a short flow that starts at the "Uber One" tab of a customer's account and ends with an "End membership" button. *See id.* ¶¶ 48–50.

- Within 48 hours of the renewal date, consumers could cancel by contacting Uber support, which is also easy to find and use in the Uber App. Uber told these customers next to a bright orange warning symbol: "You are within 48 hours of your renewal date and your next scheduled payment may be in process. Please contact support to cancel." *Id.* ¶ 57, Ex. 19. Depending on the timing, those consumers could either chat directly with an Uber support representative to cancel or enter their request to cancel in a box for "Shar[ing] details" with the support team about the request to cancel. *Id.* ¶ 70.

However any consumer chooses to cancel, the FAC nowhere alleges or identifies any cancellation or termination fees for doing so—either within or outside the 48 hours before renewal.

### B. The First Amended Complaint Fails To State A Claim.

5

The FTC alone initially brought this case against Uber. Dkt. 1, ¶ 1. In December 2025, six months after Uber's answer, the FTC filed the FAC. Dkt. 46. The FAC adds 22 states as plaintiffs and numerous new legal theories. *Id.* Piggybacking on the FTC's claims under the FTC Act, Count One adds claims under more than 30 state laws and Count Two adds nearly 20 new state laws. *Id.* ¶¶ 101, 105. That Count alleges that Uber makes several representations that are "false, misleading, or not substantiated at the time the representations were made," including (1) that consumers who enroll in Uber One will "save ... $25 every month;" (2) that Uber One members receive "$0 delivery fees," and (3) "that consumers may cancel their subscription services at any time with no additional fees." FAC ¶¶ 98–99.

Some states also join Counts Three, Four, and Five asserting claims under ROSCA. *Id.* ¶¶ 112–27. Those counts challenge Uber One's enrollment and cancellation processes. At the threshold, Plaintiffs assert—based on a blanket citation to 70 paragraphs of the FAC—that ROSCA applies to Uber One because it is "sold in transactions effected on the Internet through a negative option feature"—a transaction in which a consumer's silence or failure to cancel is interpreted as assent to an offer to purchase a service. FAC ¶¶ 112, 114, 116; *see also* 15 U.S.C. § 8403; 16 C.F.R. § 310.2(w). Count Three alleges that Uber violates ROSCA by failing to "clearly and conspicuously disclose" the "material terms" of Uber One, FAC ¶ 112, and Count Four asserts that Uber fails to obtain consumers' "express informed consent" to join, *id.* ¶ 114.

## III.    ARGUMENT

### A.    Count One Fails To State A Claim.

When, as here, a complaint fails to allege statements that are false, or plausibly misleading to a "reasonable consumer," the FTC cannot state a claim for deception under Section 5, *see FTC v. D-Link Sys., Inc.*, 2017 WL 4150873, at *3 (N.D. Cal. Sept. 19, 2017) (granting motion to dismiss a Section 5 claim), and the states cannot state a claim under their parallel state laws, FAC ¶ 101.[1] That

---

[1] The state laws also require a showing of false or misleading statements. *See* Carolyn Carter et al., *Unfair and Deceptive Acts and Practices* 4.2.11.2 (11th ed. 2025) (summarizing state consumer

1  is the problem with Count One, which asserts that it was false or misleading to tell consumers: (1) that

2  Uber One members could save $25 a month; (2) that members might be eligible for $0 delivery on

3  certain items; and (3) that they could cancel anytime and without additional fees. FAC ¶ 98.

4      The FAC demonstrates that these statements are entirely accurate. True statements are

5  obviously not "false," and no "consumer[] acting reasonably under the circumstances" would "likely

6  ... be misled" by Uber's truthful representations either. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir.

7  2009). Count One thus fails to state a claim, especially under the heightened pleading requirements of

8  Rule 9(b) that apply to Section 5 claims, *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853–54

9  (C.D. Cal. 2010), and the state-law deception claims.[2]

10      **1.    Uber's statements about delivery fees and savings are not misleading.**

11      The allegations in the FAC do not plausibly plead that Uber's advertising statements are false

12  or misleading.

13      *Delivery fees.* The FAC alleges that "the sign-up page on Uber's website" states that Uber One

14  members receive "$0 delivery fees on *eligible* food, groceries, and more." FAC ¶ 20, Ex. 2 (emphasis

15  added); *see also id.* ¶ 20 ("Another purported benefit is '$0 delivery fees' on *eligible* orders."

16  (emphasis added)). The FAC does not plead facts showing that this statement is false: nowhere do

17  plaintiffs allege that any consumer paid a delivery fee on a single *eligible* order. *See* FAC ¶ 23 (alleging

18  that "consumers, including Uber One subscribers, have reported that they have had to pay delivery

19  fees").

20      Nor would reasonable consumers plausibly be misled to think that Uber One members would

21  receive "$0 delivery fees" on *all* orders. As the FAC concedes, Uber states that the $0 delivery fees

22

---

23  deception laws and explaining that "claims based on unreasonable or fanciful interpretations of label[s] or other advertising may be dismissed on the pleadings").

24  [2] *E.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 558 (N.D. Cal. 2019) (applying Rule 9(b) in claims arising from California, Arizona, and New Hampshire law); *Greer v. Strange Honey Farm*, LLC, 114

25  F.4th 605, 614 n.1 (6th Cir. 2024) (collecting cases where federal district courts held 9(b) applied to state law claims); *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 90 (3d Cir. 2025) (applying

26  9(b) to a claim arising from New Jersey state law); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (applying 9(b) to a claim under Missouri state law); *Hall v. Capella*

27  *Univ.*, 770 Fed. App'x 776, 777 (8th Cir. 2019) (applying 9(b) to Minnesota state law).

28

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477

are on "eligible" orders. *See id.* ¶ 20. And the qualifier "eligible" unambiguously informs consumers that they would access this benefit on some—but not all—orders. *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (affirming dismissal of consumer deception claims under California law because a reasonable consumer would understand a promotional promise to be conditional—not universal—where the offer was expressly qualified by the word "if"); *Aminov v. DraftKings, Inc.*, 2025 WL 2108543, at *6 (E.D.N.Y. July 28, 2025).

Indeed, Uber defines "eligible" (as orders that meet certain minimum amounts), but Plaintiffs have cropped the FAC's screenshots to avoid displaying the definition—which would defeat their claims. *Compare* FAC Ex. 2, *with* Uber One, https://www.ubereats.com/uber-one?access-point=web_upsell_banner (full webpage from which Ex. 2 is drawn, explaining that "[b]enefits available only for eligible stores" and defining the minimum order requirements "to receive $0 Delivery Fee"). The result is that plaintiffs have not plausibly pled that Uber's statements that members get "'$0 delivery fees' on *eligible* food, groceries, and more," is false or misleading. FAC ¶ 20 (emphasis added).

*Monthly savings*. Plaintiffs claim that Uber falsely told consumers that Uber One members would "save $25 every month," FAC ¶ 98, when "[m]any consumers do not actually save $25 a month by using Uber One," *id.* ¶ 22. Once again, the FAC's own allegations disprove that claim.

Uber does not promise that *all* Uber One members will "save $25 every month," and no reasonable consumer would understand Uber to make such a promise. Instead, Uber tells customers "[y]ou *could* save $25 each month," *id.* ¶ 57, Ex. 19 (emphasis added)—meaning, you might, or might not save that amount, *see Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2023 WL 7284160, at *3 (N.D. Cal. Nov. 3, 2023) (Tigar, J.) (holding a statement that a result "can" happen was not misleading as a matter of law because the conditional term "can" indicates a result is "capable" of happening, not that it "typically or always" happens). And Uber further conspicuously explains that these "[s]avings are based on *average* monthly savings, including any Uber Cash members have earned and used," and that "[e]stimated savings do not include the membership price." FAC ¶ 57, Ex.

19 (emphasis added); *see also id.* ¶ 19, Ex. 1 (explaining that $25 is "how much people save *on average* from Uber One and promos in your country*" (emphasis added)).

No reasonable consumer reading the challenged language would believe that they are guaranteed $25 every month in savings net of the membership fee. *See Houser*, 2023 WL 7284160, at *3 (dismissing a false advertising claim for failure to state a claim because "the corresponding disclaimer eliminate[d] any doubt" as to the meaning of a conditional statement). Rather, they would understand that some consumers will save less, and some will save more; that is the very definition of "average." *See Average*, Cambridge Dictionary ("[T]he result you get by adding two or more amounts together and dividing the total by the number of amounts."); *see also Millam v. Energizer Brands, LLC,* 2024 WL 2988210, at *1 (9th Cir. June 14, 2024) (affirming dismissal of consumer protection claim because a reasonable consumer would not understand a statement that batteries are "up to 50% longer lasting" to mean they are "usually or always 50 percent longer" lasting). Plaintiffs are not permitted—even on a motion to dismiss—to contradict the plain language of the very text that they include in the FAC. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (concluding "easily" that "Plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss" where "the allegations of the Complaint are materially inconsistent with the … advertisement").

### 2. Consumers may cancel Uber One at any time with no fee.

#### a. Consumers may cancel Uber One at any time.

Count One also alleges that "Defendants represent … that consumers may cancel their subscription service at any time" and that this representation is "false" or "misleading." FAC ¶¶ 98–99. The FAC generally discusses two different periods in a subscription cycle, and its allegations show that Uber's "any time" statement was not false or misleading for either one.

First, for most days in a subscription cycle, consumers can cancel Uber One directly in the Uber App's self-cancellation flow. On the App, under the Account tab, consumers can click on the Uber One button, where there is a Manage membership button. *Id.* ¶¶ 47–48. Under Manage membership, customers can click a button that says "End membership." *Id.* ¶¶ 49–50. Tapping that

9

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477

button takes the consumer through a cancellation flow culminating in a conspicuous "red 'End Uber One' button" that Plaintiffs admit allows a "consumer [to] actually cancel his or her subscription." *Id.* ¶ 56. Consumers who took  this route are plainly cancelling "at" whatever "time" they choose.

Second, the FAC also addresses consumers who canceled within 48 hours of their membership period ending. The allegations make clear that these customers can cancel too—it just entails a different process. These customers are told with a bright orange warning symbol: "You are within 48 hours of your renewal date and your next scheduled payment may be in process. Please contact support to cancel." *Id.* ¶ 57, Ex. 19. The FAC then describes at least two independent ways that a consumer could reach Uber support to cancel. *See id.* ¶¶ 70–71, 75 n.†. And the FAC never alleges that *any* consumer could *not* in fact cancel through Uber support—because customers *could* cancel at any time, which is all that matters.

At points, the FAC alleges or implies that it is not easy to cancel within the 48 hours before the renewal date. *Id.* ¶¶ 56, 70, 75. But that does not save Count One, because the Count does not allege that Uber promises consumers any particular experience when going through the cancellation process. All Count One alleges is that it was "false or misleading" for Uber to tell consumers that they "may cancel their subscription service at any time." *Id.* ¶ 1, 98. Because it was possible to cancel anytime, Uber's statement was true and not actionable as a false statement.

Nor was Uber's "any time" statement misleading. While "a representation need not be false to mislead a reasonable consumer, the representation must nevertheless be 'misleading or ha[ve] the capacity, likelihood or tendency to deceive or confuse members of the public.'" *Romero v. Flowers Bakeries, LLC*, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016). Uber's "cancel anytime" statement did not have that capacity, and the FAC does not even try to explain how it could. Again, the statement does not promise any *type* of cancellation process, and no reasonable consumer would read "cancel anytime" to mean something more—like cancel without contacting support or cancel through the App. *See, e.g.*, *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (dismissing state-law deception claim where "a reasonable consumer could not

10

be led to believe" a claim defendant did not make); *People of the State of New York v. Sirius XM Radio Inc.*, 2024 WL 4877083, at \*5 (N.Y. Sup. Ct. Nov. 21, 2024), aff'd, 243 A.D.3d 424, 425, 245 N.Y.S.3d 37, 40 (2025) (granting summary judgment because a promise to consumers that they could cancel any time is not false or misleading even where the cancellation process is challenging).

### b. Consumers may cancel Uber One with no additional fees.

Plaintiffs cannot rescue Count One by pointing to Uber's statement that consumers may cancel Uber One "with no additional fees." FAC ¶ 98. That statement is similarly truthful and not misleading, because Uber never charges cancellation fees.

Plaintiffs do not allege otherwise. Instead, Plaintiffs base their claim on the strained theory that the canceling consumer's last month's membership charges are actually "additional fees or penalties." The fact that some late-cancelling consumers were "charged for another [] month or [] year," *id.* ¶ 81 (emphasis omitted), however, does not transform those membership charges into an "additional fee or penalty" for cancelling. Nor would any reasonable consumer think that it is, especially since reasonable consumers know that other companies *do* charge actual cancellation fees. *See, e.g.*, *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 640–41 (N.D. Ohio 2012) (Fitness club charged $250 "termination fee" and $10 "administrative fee" for cancellation); *In re DirecTV Early Cancellation Fee Litig.*, 2009 WL 10697976, at \*1 (C.D. Cal. May 4, 2009) (cancellation of satellite television services were "subject to early cancellation fees of up to $480."). A charge for membership, by contrast, is *not* a cancellation fee or an "additional fee" for cancelling; it is a charge for membership and extends the membership benefits to the following period. The FAC's contrary suggestion is implausible, particularly when Uber instructs consumers upon enrollment to "cancel up to 48 hours before" the next term "[t]o avoid charges." *See id.* ¶ 27, Ex. 4; ¶ 35, Ex. 9; ¶ 77.[3]

\*      \*      \*

---

[3] While not relevant for this motion, Uber proactively refunded customers who cancelled within the 48-hour window their membership charge. This was not required by law or the company's terms, but Uber did so because it was in the best interest of its customers.

11

1

2

Because there is nothing plausibly false or misleading about Uber's statements about savings, delivery fees, or the availability of cancellation, Count One fails to state a claim.

3

4

**B.    The ROSCA Counts Should Be Dismissed Because The Amended Complaint Does Not Plausibly Allege That ROSCA Applies.**

5

6

Uber is entitled to dismissal of the ROSCA counts (Counts Three, Four, and Five) because an Uber One subscription is not a "negative option feature" within the meaning of ROSCA.

7

8

9

10

11

12

13

14

ROSCA applies only to "transaction[s] effected on the Internet through a negative option feature," *see* 15 U.S.C. § 8403, and the FAC nowhere pleads facts showing that a transaction to join Uber One qualifies. A "[n]egative option feature means, in an offer or agreement to … provide any … services, a provision under which the customer's silence or failure to take an affirmative action to reject ... services ... is interpreted by the seller as acceptance of the offer." *See* 16 C.F.R. § 310.2(w) (emphasis omitted). After reciting this definition, the FAC asserts the conclusion that "as described in Paragraphs 16 to 42," Uber sold subscriptions "through a negative option feature." FAC ¶ 109. That allegation cannot meet the FTC's pleading burden.

15

16

17

18

19

20

21

22

23

24

25

26

Paragraphs 16 to 42 of the FAC actually show the opposite. When Uber extends an offer to enroll in Uber One, the consumer's "acceptance of the offer" is manifested by affirmative conduct— tapping a sign-up button—*not* "silence" or a "failure ... to reject ... or cancel" the service. In two of the alleged flows, consumers are enrolled in Uber One *only* after tapping a button labeled "Try for free" or "Claim offer." FAC ¶¶ 26–28 & Exs. 3–4. In another, consumers must check a box at checkout and then affirmatively click "Start Saving" on a pop-up, in order to enroll. *Id.* ¶¶ 30–31 & Exs. 5–6. In still more flows, consumers join Uber One only by clicking a "Join Uber One" button. *Id.* ¶¶ 34–36 & Exs. 7–8. For all of the alleged flows, consumers assent to join Uber One by taking an affirmative action. *See, e.g., Oberstein v. Live Nation Ent., Inc.,* 60 F.4th 505, 515–16 (9th Cir. 2023) (online assent turns on whether the interface calls for an unambiguous manifestation of agreement such as clicking a button). The plaintiffs' attempts to relabel those affirmative enrollment mechanics cannot transform them into ones "effected" through silence.

27

28

12

Plaintiffs cannot cure the problem with a general allegation that "Uber One renews automatically, charging consumers on a recurring basis, unless they take affirmative action to cancel." FAC ¶ 17. "Acceptance" of an offer is "manifestation of assent to" all "the terms thereof." Restatement (Second) of Contracts § 50(a) & cmt. A (1981); *see also Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) ("[I]n construing the term offer, we must consider its meaning in the law of contracts."). And here, the express terms of Uber's offer include that an Uber One member will be charged after the free-trial period (if any) and then periodically, unless the consumer cancels. *See, e.g.*, FAC ¶ 27, Ex. 4 (image stating that "[b]y joining Uber One, you authorize Uber to charge $9.99 on any payment method on your account, and monthly thereafter, based on the terms, until you cancel"); *id.* ¶ 31, Ex. 6 (similar); *id.* ¶ 35, Ex. 9 (similar). Put another way, the Uber One enrollment offer itself includes an agreement to pay recurring charges. Once a consumer accepts that offer, there are no new offers from Uber that the consumer could "accep[t]" by "silence." That means that there is no "negative option feature." Counts Three, Four, and Five should be dismissed.

## C.    Count Three Should Be Dismissed Because The FAC Fails To Adequately Allege That Uber Did Not Provide Clear And Conspicuous Disclosures.

At all times, Uber provided clear and conspicuous disclosures directly belying plaintiffs' allegations. Count Three alleges that Uber failed to "provide[] text that clearly and conspicuously discloses all material terms of the transaction." 15 U.S.C. § 8403(1); FAC ¶112. According to the FAC, those terms are: (1) the recurring nature of Uber One; (2) the timing of charges; (3) the method of cancellation; and (4) the "true benefits and savings of an Uber subscription."[4] FAC ¶ 112. But the FAC demonstrates that Uber made those disclosures and that they were "clear and conspicuous" on their face.

Although ROSCA does not define the phrase "clearly and conspicuously," courts have construed it to require disclosures that are "reasonably understandable" (*i.e.*, "clear") and "readily noticeable" (*i.e.*, "conspicuous")," *see Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1091 (9th Cir. 2020),

---

[4] Uber assumes, solely for purposes of this motion, that these are "material terms."

to a "*reasonable*" consumer, *see Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009); *see also FTC v. Amazon.com, Inc.*, 2024 WL 2723812 (W.D. Wash. May 28, 2024). A disclosure flunks that test only if it is "*likely* to mislead consumers acting reasonably under the circumstances." *FTC v. Stefanchik*, 559 F.3d 924, 928–29 (9th Cir. 2009) (emphasis added); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) ("[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"). The FAC does not plausibly allege that any of Uber's disclosures were "*likely* to mislead" the ordinary internet consumer–especially those who use Uber's apps as the entire population of consumers here necessarily did.

Recurrence. For each enrollment flow alleged in the FAC, Uber clearly and conspicuously discloses the recurring nature of Uber One. As the images in the FAC reveal, Uber discloses the renewal cadence in plain language immediately above the enrollment button (so all consumers necessarily see the disclosures before they enroll). One states, for example: "By joining Uber One, you authorize Uber to charge $9.99 on any payment method on your account, and monthly thereafter, based on the terms, until you cancel." FAC ¶ 27 & Ex. 4. The others are materially similar. *See id.* Ex. 6; Ex. 9. Presented with similar disclosures located immediately next to a sign-up button, other courts have deemed the disclosures clear and conspicuous on their face and granted dismissal. *See, e.g.*, *Walkingeagle v. Google LLC,* 2023 WL 3981334, at *5; *Viveros v. Audible, Inc.*, 2023 WL 6960281, at *7 (W.D. Wash. Oct. 20, 2023); *Nicholas v. Amazon.com, Inc.*, 740 F. Supp. 3d 1099, 1103 (W.D. Wash. 2024); *Daly v. Amazon.com, Inc.*, 718 F. Supp. 3d 1378, 1387 (W.D. Wash. 2024).

Timing of charges. The timing of the charges (assuming that is a material term) is just as clear and conspicuous as recurrence. In every enrollment flow at issue, adjacent to the sign-up button, Uber states the date on which charges will be incurred. For example: "To avoid charges, cancel up to 48 hours before Dec. 2, 2024 in the app." FAC ¶ 27, Ex. 4. Or: "You'll be charged $9.99 on March 12 and every month until you cancel in app." *Id.* ¶ 30, Ex. 6. Yet again: "Billing starts Jul 16, 2024 for $9.99/mo." *Id.* ¶ 35, Ex. 9. The FAC never shows how these plain disclosures could possibly mislead

even a single reasonable consumer—let alone a substantial number. *Cf. In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at \*6 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ("A consumer cannot decline to read clear and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer has failed to read, is deceptive."). And unsurprisingly, numerous courts have found disclosures with a similar design clear and conspicuous as a matter of law. *See, e.g.*, *Walkingeagle,* 2023 WL 3981334, at \*3–4; *Viveros*, 2023 WL 6960281, at \*7; *Nicholas*, 740 F. Supp. 3d at 1103; *see also Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at \*5 (N.D. Ill. Sept. 20, 2018) (finding Uber disclosures clear and conspicuous).

Cancellation method. Uber also clearly and conspicuously discloses how to cancel Uber One: "in the app." Once again, each flow plainly states this information right above the sign-up button: "To avoid charges, cancel up to 48 hours before Dec. 2, 2024 in the app," FAC ¶ 27, Ex. 4; or "You'll be charged $9.99 on March 12 and every month until you cancel in app," *id.* ¶ 30, Ex. 6; or "To avoid charges cancel up to 48 hours before Jul 16, 2024 in the app," *id.* ¶ 35, Ex. 9. As discussed, all consumers are able to initiate the cancellation process within the app, even if they ultimately must contact customer service to confirm their request to cancel. *See supra* §§ II.A.2; III.A.2.a. And once again, courts have deemed materially similar disclosures–such as, "Cancel ... via Account Details"— sufficient as a matter of law. *See, e.g., Hall v. Time, Inc.*, 2020 WL 2303088, at \*4 (C.D. Cal. Mar. 13, 2020) (defendants clearly and conspicuously disclosed the required terms where they "provided information about how and when [plaintiff] could cancel"); *Daly*, 718 F. Supp. 3d at 1387 ("Cancel anytime via Account Details."); *Nicholas*, 740 F. Supp. 3d at 1103 (same); *Viveros*, 2023 WL 6960281, at \*8 (similar). As these cases under similar autorenewal laws show, Uber need only tell consumers where to find the cancel flow. ROSCA requires disclosure of "material terms," not a screen-by-screen tutorial of every navigation step within a mobile application—whatever Plaintiffs' views about how easy navigating that flow is. *See* 15 U.S.C. § 8403(1).

<u>Benefits and savings</u>. Finally, even assuming that the benefits and savings of a membership are material terms, Uber advertised them clearly and conspicuously. The complaint itself contains images of Uber's advertisements plainly stating that members receive "$0 Delivery Fee[s] on eligible food, groceries, and more," along with other benefits. FAC ¶ 20, Ex. 2. As already explained, there is nothing false or misleading about those disclosures and Plaintiffs never allege any facts suggesting otherwise. *See supra* § III.A.1.

\*    \*    \*

Courts regularly dismiss claims based on disclosures that are clear and conspicuous on their face, *e.g.*, *Walkingeagle v. Google LLC*, 2023 WL 3981334, at *5 (D. Or. June 12, 2023), *aff'd*, 2024 WL 4379734 (9th Cir. Oct. 3, 2024) (dismissing complaint under state autorenewal law), or that do "not plausibly allege why ... [the disclosures] would not be obvious or plainly visible to a consumer" *Perkins v. New York Times Co.*, 2023 WL 3601489, at *4 (S.D.N.Y. May 23, 2023); *see also, e.g., Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming dismissal where disclosures incorporated into the complaint established that terms "were presented in a clear and conspicuous manner"); *Hall v. Time, Inc.*, 857 Fed. App'x. 385, 386 (9th Cir. May 24, 2021) (same). Because Uber clearly and conspicuously discloses all material terms of Uber One, the same result is warranted here.

### D.    Count Four Should Be Dismissed Because Uber Obtained Express Informed Consent.

Because consumers are required to take affirmative action before enrolling in Uber One, Count Four likewise fails to state a claim. That Count alleges a violation of ROSCA's requirement that a seller obtain a consumer's "express informed consent" before charging the consumer. 15 U.S.C. § 8403(2). A consumer provides express informed consent if "the consumer takes some action, such as clicking a button," after being informed of the material terms and told that taking that action will trigger the transaction. *Keebaugh v. Warner Brothers Entertainment Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024), (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). The

FAC itself proves that consumers do just this when enrolling in Uber One. Count Four should therefore be dismissed.

Each enrollment flow adequately discloses the material terms of Uber One. *See supra* § II.A.1. And every enrollment flow requires the user to affirmatively tap a button to enroll. *See* FAC ¶¶ 27, 30, 35. What is more, the language immediately adjacent to the button (along with the text of the button itself) confirms the effect of tapping the button. For example, above a button labeled "Join Uber One": "By joining Uber One, you authorize Uber to charge $9.99 on any payment method ...." *Id.* ¶ 35, Ex. 9; *see also id.* ¶¶ 27, 30.

As other courts have held, as a matter of law, these sorts of disclosures coupled with this sort of affirmative action from the consumer obtains express informed consent. *See Walkingeagle*, 2023 WL 3981334, at *5; *Viveros*, 2023 WL 6960281, at *8; *Daly*, 718 F. Supp. 3d at 1387–88. Count Four thus fails to state a claim and must be dismissed.

### E.    The Requests For Civil Penalties Should Be Dismissed.

The FAC's brand new request for federal civil penalties, *see* FAC ¶ 119, should also be dismissed because they are not statutorily authorized here, and even if they were, penalties would be unavailable. And the FTC's gambit of adding the states to get around these problems should fail too– as the states' demands for civil penalties fare no better than the FTC's.

#### 1.    The demand for federal civil penalties must be dismissed for failure to follow statutory procedures.

By statute, "before commencing" any civil action seeking civil penalties, the FTC must provide written notification to and undertake consultation with the Attorney General. 15 U.S.C. § 56(a)(1)(A). The FTC's own guidance recognizes as much. *See* FTC, *Working Together to Protect Consumers* at 29 (Apr. 10, 2024).

Nowhere in the complaint does the FTC allege that it followed the mandatory procedures Congress imposed. The FTC may not simply disregard statutory limits Congress placed on the types of suits it is authorized to bring and the types of remedies it may obtain in those suits. *See, e.g.*, *AMG*

17

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477

*Cap. Mgmt. LLC v. FTC*, 593 U.S. 67, 76–78 (2021) (FTC lacked authority to obtain equitable monetary relief under Section 13(b)'s plain meaning). The initial complaint contained no demand for civil penalties, and the FAC contains no allegation that the FTC sought the statutorily required approval to seek civil penalties between the initial complaint and the new one. The unauthorized demand for penalties should therefore be dismissed.

The addition of the states as plaintiffs does not fix the problem. They cannot (and are not alleged to have) completed the consultation process for the FTC. As the FTC's guidance says, the referral process is "mandatory," and "State Attorneys General must at a minimum wait for the federal referral process to play out in order to file a joint action with the FTC or DOJ." Working Together to Protect Consumers at 29-30. Moreover, ROSCA only authorizes the states to "obtain appropriate injunctive relief"—not civil penalties. 15 U.S.C. § 8405(a).

### 2.    Civil penalties are not available for the alleged violations of the FTC Act.

Separate and apart from the FTC's procedural failure, penalties under the FTC Act are plainly unavailable here. That law permits the FTC to seek penalties "against any ... corporation which violates *any rule* under this subchapter respecting (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited *by such rule*." 15 U.S.C. § 45(m)(1)(A) (emphasis added). But the FTC Act Counts (One and Two) nowhere allege that Uber violated any *rule*—that is, a regulation or a statute—respecting unfair or deceptive acts or practices. *See FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 771 (7th Cir. 2019) ("Once the Commission promulgates a rule, it can seek legal and equitable remedies, including restitution, from violators…. And if it establishes that a violator had 'actual knowledge or knowledge fairly implied on the basis of objective circumstances' that his conduct violated a rule, the Commission can also pursue civil penalties."). Federal civil penalties are therefore unavailable for any violations of the FTC Act alleged in Counts One and Two.

**3.   In all events, all the federal civil penalties demands should be dismissed for failure to plead the requisite knowledge.**

Finally, both the FTC Act and ROSCA penalty demands fail because the complaint does not allege that Uber violated any rule with knowledge. The governing statute permits federal civil penalties under those laws only when a defendant violates "any rule" with "actual knowledge or knowledge fairly implied on the basis of objective circumstances" that its actions were "unfair or deceptive" and "prohibited by such rule." 15 U.S.C. § 45(m)(1)(A); 15 U.S.C. § 8404(a). This scienter requirement creates a variation of the "ignorance-of-the law defense." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583–84 (2010) (describing § 45(m) as providing "a mistake-of-law defense"). As such, the FTC must allege facts demonstrating that Uber knew both (1) about the specific prohibitions the FAC invokes here and (2) that Uber One's flows violated them. *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 929 (C.D. Ill. 2017) (requiring knowledge both "of the existence of the rule" and that the party's "acts or omissions violated the rule").

The FAC does not and could not plead such facts. It pleads no facts demonstrating that Uber had "actual knowledge" that it was violating any law. Nor does it show that Uber had "knowledge fairly implied."  As the Supreme Court has made clear, "[w]here, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing ... violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007). And here there are certainly reasonable views of ROSCA that are inconsistent with the FAC's interpretation of that law. *See, e.g.*, *supra* § III.C (explaining why Uber complied with ROSCA's enrollment requirements). The FAC points to no FTC guidance or prior case law adopting its interpretation of ROSCA—and there is none. To the contrary, the FTC itself has repeatedly admitted that ROSCA is ***un***clear, stating that ROSCA "lacks specificity about cancellation procedures," 84 Fed. Reg. 52393, 52396 (Oct. 2, 2019), and leaves businesses "without guidance about what is simple," 88 Fed. Reg. 24716, 24718 (Apr. 24, 2023). As for the phrase "clearly and conspicuously," the FTC admits ROSCA neither "prescribe[s]

specific steps marketers must follow" nor "provide[s] clarity about how to avoid deceptive negative option disclosures." *Id.* Given all this, it is implausible that Uber knew or should have known that its practices violated the FAC's view of ROSCA, simply because Uber employed lawyers, which is all that is alleged in paragraph 93 of the FAC.

Nor is it enough that consumers complained about being confused or dissatisfied, and that Uber analyzed those complaints. *See* FAC ¶¶ 4, 92. Cases finding "knowledge fairly implied" typically involve direct regulatory warnings, explicit notice of rule requirements, or continued violations after clear notice from authorities—not simply the existence of customer complaints, which all legally compliant companies routinely receive. *See, e.g.*, *FTC v. Am. Future Sys., Inc.,* 2024 WL 1376026, at *21 (E.D. Pa. Mar. 29, 2024) (noting that "some customer complaints are expected" in any business); *Consumer Fin. Prot. Bureau v. CashCall, Inc*., 2018 WL 485963, at *14 (C.D. Cal. Jan. 19, 2018) (explaining that "knowing" violations require the defendant's awareness of the rule's prohibition and that its conduct violated the rule). These allegations cannot show that Uber knew it was violating any law, and the Court should thus dismiss the FAC's demand for civil monetary penalties.

### 4. Several state demands for civil penalties must be dismissed for failure to plead scienter.

To the extent that state Plaintiffs seek civil penalties under state statutes that require a knowing or willful violation, those requests should likewise be dismissed. For the same reasons the FAC fails to plead the knowledge required for federal civil penalties, it fails to allege facts plausibly showing that Uber acted "knowingly" or "willfully" (or engaged in a "persistent and knowing" violation) as required to support penalties under Alabama, Arizona, Connecticut, Michigan, Montana, North Carolina, Pennsylvania, and West Virginia law. *See, e.g.*, *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996); *State ex rel. Corbin v. United Energy Corp. of Am.*, 725 P.2d 752, 758 (Ariz. Ct. App. 1986); *State v. CSC Holdings, LLC*, 2025 WL 2708275, at *12-14 (Conn. Super. Ct. Sept. 17, 2025); *Att'y Gen. v. Diamond Mortg. Co.*, 327 N.W.2d 805, 807 n.4 (Mich. 1982); Mont. Code Ann. § 30-14-142; *Marshall v. Miller*, 276 S.E.2d 397, 399 (N.C. 1981); *FTC v. Am. Future Sys., Inc.,* 2024

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477

1  WL 1376026, at *2 & n.9 (E.D. Pa. Mar. 29, 2024); *CashCall, Inc. v. Morrisey*, 2014 WL 2404300,

2  at *10 (W. Va. May 30, 2014).

3  **F.    The States Fail To Plausibly Plead Standing, Authority To Bring Their Claims,**

4  **Or The Merits.**

5         Even if the FTC could somehow maintain the claims already discussed and its demand for

6  federal civil penalties, its ploy to add 22 states as plaintiffs, without following the proper procedures

7  to do so, *see supra* § II.B, should fail, for multiple reasons. The burden is on each state to plead Article

8  III standing, authority, and sufficient facts to bring each of their claims. *See DaimlerChrysler Corp. v.*

9  *Cuno*, 547 U.S. 332, 342 n.3 (2006); *see also California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124,

10  1139 (N.D. Cal. 2007) ("plac[ing] upon [state] plaintiffs the burden of persuading the court that state

11  laws allow them to file the instant claims"); *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). To meet this

12  burden, the FAC offers a choose-your-own-adventure allegation—with the states claiming to sue

13  under the "consumer protection *and/or* business regulation authority conferred on them by the

14  following state laws *and/or* pursuant to *parens patriae and/or* common law authority," and then

15  providing a table with generic citations to more than two dozen state laws. FAC ¶ 10 (emphasis added).

16  These barebones assertions do not meet the states' burden to plead standing or authority. The states

17  take the same barebones approach to the merits of their state claims, appending charts with lists of

18  state statutes but never attempting to plead the elements of those claims or the facts that support those

19  elements.

20         **1.    The FAC fails to plausibly plead Article III standing.**

21         States are bound by Article III's standing requirements of injury-in-fact, redressability, and

22  causation. *Hawaii v. Trump*, 859 F.3d 741, 762 (9th Cir.), *vacated and remanded on other grounds*,

23  583 U.S. 941 (2017). "A State's standing depends on the capacity in which it initiates a lawsuit."

24  *Manitoba v. Bernhardt*, 923 F.3d 173, 178 (D.C. Cir. 2019). When a state sues to vindicate its own

25  direct sovereign, private, or proprietary interests, it need only meet Article III's standing requirements.

26  *See Hawaii*, 859 F.3d at 762; *see also Harrison v. Jefferson Parish School Board*, 78 F.4th 765, 769

27

28

(5th Cir. 2023). But "[s]tates asserting *parens patriae* standing must meet both the basic requirements of Article III standing and the unique requirements of that doctrine." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). Those requirements are whether the state (1) alleges injury to a "sufficiently substantial segment of its population;" (2) "articulates an interest apart from the interests of particular private parties;" and (3) "expresses a quasi-sovereign interest." *Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001).

The states never identify a theory of Article III standing—despite shouldering this burden. They have no "private" or "proprietary" interests in Uber One to vindicate. *Snapp*, 458 U.S. at 601–02 (defining those interests). Neither can they show that Uber's actions have somehow "invad[ed]" their "sovereign right[s], resulting in some tangible interference with [their] authority to regulate or enforce [their] laws." *Jefferson Parish*, 78 F.4th at 770 (cleaned up); *see also Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 956 (6th Cir. 2020) ("[S]omeone violat[ing] a law ... does not by itself injure the government in an Article III way. Only actual or threatened interference with its authority does." (internal quotation marks omitted)). That leaves a *parens patriae* theory. But the FAC makes no effort to plead "the unique requirements of that doctrine." *Harris*, 847 F.3d at 651. It is simply silent on any facts supporting the states' standing. And a complaint that fails to "allege sufficient facts that, taken as true, demonstrate each element of Article III standing" is "subject to dismissal." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (explaining that a plaintiff must "support[]" the "elements" of Article III standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation") (cleaned up).

This deficiency requires dismissal. Most glaringly, the FAC nowhere pleads injury that affects a "sufficiently substantial segment of [the states'] population[s]." *Snapp*, 458 U.S. at 602. It contains *no* allegations of state-specific harm; "no specific allegations about the statewide magnitude of" any alleged harm to Uber One members in each state; and no allegations about "the extent to which" any

harms "affect more than just an identifiable group of individual" Uber One consumers. *Harris*, 847 F.3d at 652 (internal quotation marks omitted). Indeed, the FAC here includes far *less* than the complaint that the Ninth Circuit found wanting in *Harris*, which only reinforces the glaring and dismissal-worthy gaps in the FAC's allegations. *See, e.g.*, *id.* And nothing in the FAC "articulate[s] an interest" of each state "apart from the interests of particular private parties." *Id.* at 651.

The FAC alleges harm to consumers generally, but "alleging harm to" a group of private citizens "in Plaintiffs' States is insufficient to satisfy" this requirement. *Harris*, 847 F.3d at 653. That is because individual Uber One members "are capable of pursuing their own interests," including via private suits under the same state consumer-protection laws the states invoke, *Id.* at 653, and "*parens patriae* standing is inappropriate where an aggrieved party could seek private relief." *Id.* at 652; *see also Jefferson Parish*, 78 F.4th at 772 (holding that state could not maintain *parens patriae* standing where its asserted interests were "wholly derivative" of private citizens' interests); *see Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1313 (D.N.M. 2018) (granting motion to dismiss for lack of *parens patriae* standing where tribe "failed to allege facts that would support its assertion of injury to the Nation as a whole, apart from the private injuries suffered by members of the Navajo tribe").

## 2.    Certain states otherwise lack authority to bring their claims.

Even if the states had Article III standing (they do not), many of them still lack statutory authority to assert their claims, because those states' statutes authorize them to sue or to obtain remedies only in *state* court. *See California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1137 (N.D. Cal. 2007) (dismissing claims brought by state plaintiffs where the "plain statutory language" of the "states' governing antitrust laws" did not "expressly provide[] or even impl[y]" authority to bring the claims); *cf. Lupin Pharm., Inc. v. Richards*, 2015 WL 4068818, at *6 (D. Md. July 2, 2015) (holding that plaintiffs could not have asserted claims under an Alaska antitrust statute in federal court because the statute only authorizes such claims to be filed in Alaska "superior court"). For example:

1. <u>Alabama</u>:  Alabama law authorizes the Alabama Attorney General to obtain remedies under the state's Deceptive Trade Practices Act, only in Alabama "circuit court," not in a federal court. *See* Ala. Code § 8-19-11(a), (b), (c).

2. <u>Michigan</u>:  Michigan law permits the state's Attorney General to bring an action "in the circuit court of the county where the defendant is established or conducts business or, if the defendant is not established in this state, in the circuit court of Ingham County," which this is not. Mich. Comp. Laws § 445.905.

3. <u>Missouri</u>:  The Missouri Attorney General is authorized to "seek and obtain" certain relief "in an action in a circuit court," but not in federal district court. Mo. Rev. Stat. § 407.101.

4. <u>Nebraska</u>:  Nebraska law permits the Attorney General to "apply for and obtain" certain relief "in an action *in any district court of this state*."  Neb. Rev. Stat. § 87-303.05 (emphasis added).

5. <u>New Hampshire</u>:  New Hampshire law authorizes the state Attorney General to sue "in the superior court of the county in which the person allegedly in violation of this chapter resides or in which the principal place of business is located, or, with the consent of the parties or if the person is a nonresident and has no place of business within the state, in the superior court of Merrimack county." N.H. Rev. Stat. Ann. § 358-A:4, III(a).

6. <u>New Jersey</u>:  The Unfair Trade Practices Act authorizes the state's Attorney General to bring an "action in the Superior Court"—not federal district court. N.J. Rev. Stat. § 56:8-8.

7. <u>New York</u>:  One of the laws New York invokes, N.Y. Exec. Law § 63(12), allows "the attorney general ... [to] apply, in the name of the people of the state of New York, *to the supreme court of the state of New York*" (not to a federal court) for certain relief. N.Y. Exec. Law § 63(12) (emphasis added).

8. <u>Wisconsin</u>:  Finally, the Wisconsin provision the FAC cites as "conferr[ing]" the relevant "authority" to "bring this action," FAC ¶ 10 (citing Wis. Stat. § 100.18(11)(d)), instead only allows the Attorney General to "commence an action in circuit court." Wis. Stat. § 100.18(11)(d).

These claims should be dismissed because the states lack authority to assert them in this forum. At the very least, this Court should decline to exercise supplemental jurisdiction over these claims, because the states' lack of authority is a "compelling reason [to] declin[e] jurisdiction." 28 U.S.C. § 1367(c)(4).

### 3.     The states' barebones citations fail to plausibly plead their claims.

Even if the states had standing or authority to bring their claims, their claims under Counts One and Two should be dismissed for an additional reason: The states have not even attempted to allege how Uber One supposedly violated their consumer protection statutes. Instead, the FAC simply lists the consumer protections that were supposedly violated, in charts displaying dozens of vague statutory citations—without alleging any particular facts that would support the varied elements of each law. FAC ¶¶ 101, 105. Courts around the country have rejected this type of "laundry list" pleading, holding that state consumer protection claims should be dismissed when "the plaintiff … provided little more than an alphabetical list of state statutes it alleges the defendant violated by the same conduct that underlies the plaintiff's federal statutory claims." *United Healthcare Servs., Inc. v. United Therapeutics Corp.*, 2024 WL 1256266, at *19 (D. Md. Mar. 25, 2024); *accord Adeghe v. Procter & Gamble Co.*, 2024 WL 22061, at *5 (S.D.N.Y. Jan. 2, 2024). After all, "[s]tate consumer-protection laws vary considerably." *Moore v. Compass Grp. USA, Inc.*, 2022 WL 4598558, at *12 (E.D. Mo. Sept. 30, 2022). When a plaintiff declines to identify those variations and their supporting facts, it results in insufficient notice for defendants and the Court alike. *See id.* at *10; *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here too, the state claims under Counts One and Two should be dismissed.

## IV.     CONCLUSION

Plaintiffs have pled themselves out of court. The FAC should accordingly be dismissed in part and with prejudice because the errors identified here cannot be cured.

Date:  January 27, 2026                    Respectfully submitted,

                                          SIDLEY AUSTIN LLP
                                          By: /s/ *Benjamin M. Mundel*
                                              Benjamin M. Mundel

                                          *Attorney for Defendants*

DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 4:25-CV-3477