Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
James Doty (NY Bar No. 4552550)
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
(202) 326-3395 (fax)

*Attorneys for Plaintiff*
*Federal Trade Commission*

*Additional Counsel listed on Signature Page*

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: 415-772-1200
Facsimile: 415-772-7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711


*Attorneys for Defendants Uber Technologies, Inc. and Uber USA, LLC*

*Additional Counsel listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN,** ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Number: 4:25-cv-03477-JST<br><br>[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

Plaintiffs,

vs.

**UBER TECHNOLOGIES, Inc.**, a corporation, and

**UBER USA, LLC**, a limited liability company,

Defendants.

_____

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

### 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

### 3. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### 4.  GENERAL

The Parties shall take reasonable steps to comply with the procedures set forth in this Order.

This Order is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

Except as specifically limited herein, this Order governs the production of discoverable documents by the Parties during the litigation. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement. This Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation. Subject to this Order, the Parties' objections and responses to requests for production of documents and interrogatories and other discovery requests, and a binding Stipulated Protective Order ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right

3

to object to the production of certain hard copy documents or ESI, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

### 5. PRESERVATION

a)   The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

b)   The Parties agree that data, including Protected Material, as defined in the Protective Order, should be preserved until the final resolution of the litigation, including the exhaustion of all appeals and post-judgment proceedings.

c)   The Parties will agree on the number of custodians per party for whom ESI will be preserved.

d)    The Parties will identify data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced.

e)    The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

f)    To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that, absent a showing of good cause by the Requesting Party, data from the following sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved:

> i.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data, which is only accessible by forensics and "unallocated" space on hard drives.
>
> ii.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
>
> iii.  On-line access data such as temporary internet files, history, cache, cookies, and the like, wherever located.
>
> iv.   Data stored on photocopiers, scanners and fax machines.
>
> v.    Ephemeral or transient data, such as chats or prompts, in third-party AI tools (e.g., ChatGPT, Gemini, etc.) that are not retained in the ordinary course of business.

vi.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

vii.    Back-up data that are duplicative of data that are more accessible elsewhere.

viii.   Server, system or network logs.

ix.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

x.      Operating systems, computer activity logs, batch files, and system files.

xi.     Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

xii.    Other forms of ESI from sources that the Parties agree are not reasonably accessible because of undue burden or cost.

**6. SEARCH**

a) Except as otherwise agreed upon in this Order, the Parties will meet and confer in a good-faith effort to agree upon the following:

i.      Pursuant to Section 5 above, a list of custodians;

ii.     Pursuant to Section 5 above, the location of relevant ESI sources including custodial and non-custodial ESI sources; and

iii.   Search methodology to be applied, including, but not limited to, appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any further effort is undertaken following entry of this order. The parties shall continue to cooperate in revising the appropriateness of the search.

b)  <u>Search Methodology:</u>

i.   The Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI that is within the possession, custody or control of the Producing Party.

a)   Google Workspace materials. The Parties will review and produce the most current versions of Google Workspace materials. Absent a demonstration of specific need or good cause by the Requesting Party, the Parties need not produce all historical versions of Google Workspace materials.

b)   On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

ii.   The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

iii.   The Parties recognize the availability of a variety of search tools and methodologies, including but not limited to technology assisted review ("TAR") or AI-based analytics tools. If the Producing Party intends to use TAR or similar advanced analytics for its review and production, the Parties agree to meet and confer in good faith to attempt to reach agreement about the appropriate disclosures, technology, and process that a Producing Party proposes to use to identify responsive ESI and a statistically sound methodology to assess the effectiveness of the tool and processes in identifying responsive documents. If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the Responding Party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI. However, the Parties recognize that the Court has authority to decide whether a Responding Party is sufficiently preserving and producing information as required by the Federal Rules of Civil Procedure, this Order, and any other applicable rule or Court order. Nothing in this section shall

excuse any Party from its obligations under Federal Rules of Civil Procedure, this Order, and any other applicable rule or Court order, to produce information and documents responsive to discovery requests.

## 7. PRODUCTION FORMATS

The parties agree that:

a)  Unless specifically addressed elsewhere in this protocol, responsive ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

b)  Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format[1] with extracted text and metadata. Unless otherwise agreed to by the parties, for all other files, natives shall be produced upon reasonable request. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents

---

[1]  The Parties agree that Google Workspace applications (e.g., Google Docs, Google Slides, Google Sheets, etc.) are converted to Microsoft Office format upon ingestion in industry-standard review tools, that any native production of these items will not be in the form of the original Google Workspace application, but that such natives include all data, metadata, and extracted text found in the originating document at the time of collection/ingestion.

9

requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

c)  Each document image file shall be named and labeled with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable and available, the revision history.

d)  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e)  Unless otherwise agreed to by the parties, the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

## 8. PREVIOUSLY COLLECTED AND PRODUCED DATA

The Parties agree that there is no obligation to reproduce any prior productions produced before the entry of this ESI Order, including any Investigation Material as defined in the Protective Order. Notwithstanding the agreement that reproduction is unnecessary, if Plaintiff identifies any deficiency in the format of specific documents already produced to the FTC, it reserves the right to request that Defendants produce those identified documents in a format that corrects the deficiency. Defendants reserve the right to object to such reproduction.

## 9. OTHER ESI DISCOVERY PROCEDURES

The parties agree:

a) <u>De-duplication:</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources, so long as they disclose this de-duplication to the requesting party, and the duplicate custodian information removed during the de-duplication process shall be tracked in a duplicate/other custodian field in the database load file.

b) <u>Email Threading:</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies, except if the lesser inclusive copies include unique family members, in which case the lesser inclusive copies and related family members shall also be produced. Upon reasonable request, the producing party will produce a less inclusive copy.

c) <u>Metadata fields:</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: DocID; FamilyID; ParentID; File

Path; TextPath; Custodian; AllCustodians; Source; Filename; File Size; File

Extensions; MD5 Hash; EXTRTEXTSIZE; PRODUCTION_VOLUME;

HASREDACTIONS; HAS HIDDEN CONTENT;  Exception Reason;

PRODBEG; PRODEND; PRODBEG_ATTACH; PRODEND_ATTACH;

ATTACH COUNT; Page Count; From; To; CC; BCC; EmailSubject; Date

Sent; Time Sent; Date Received; Time Received; Author; Title; Subject; Date

Created; Time Created; Date Modified; Time Modified; Date Printed; Time

Printed; document type; storage location if no custodian; and confidentiality

status (indicating whether the producing party has designated a document

"confidential"). The list of metadata type is intended to be flexible and may be

changed by agreement of the parties, particularly in light of advances and

changes in technology, vendor, and business practices..

d)  <u>Hard-Copy Documents</u>: If the parties elect to produce hard-copy documents in

an electronic format, the production of hard-copy documents will include a

cross-reference file that indicates document breaks and sets forth the custodian

or custodian/location associated with each produced document. Hard-copy

documents will be scanned using Optical Character Recognition technology and

searchable ASCII text files will be produced (or Unicode text format if the text

is in a foreign language), unless the producing party can show that the cost

would outweigh the usefulness of scanning (for example, when the condition of

the paper is not conducive to scanning and will not result in accurate or

reasonably useable/searchable ESI). Each file will be named with a unique

Bates Number (e.g., the unique Bates Number of the first page of the

corresponding production version of the document followed by its file extension).

e) <u>Hyperlinked Documents</u>: The Parties agree that hyperlinked documents are not attachments and will not be treated as such. However, for the avoidance of doubt, this Agreement does not relieve a producing party of its obligation to search for and produce responsive, non-privileged documents contained in any repositories or databases in which hyperlinked documents are stored. For responsive, non-privileged documents, the producing party will produce the version that exists at the time of collection, which is how such documents are stored in the ordinary course of business.

If a receiving party cannot readily identify a hyperlinked document that is linked in a produced document, the producing party, upon request of the receiving party, will state whether the hyperlinked document was produced and, if so, identify that hyperlinked document by Bates number.

If a receiving party determines that a hyperlinked document from a produced document was not produced and is needed, a request for the hyperlinked document may be made. The producing party will consider reasonable requests for hyperlinked documents, including requests for hyperlinked documents within its Microsoft 365 Applications (Teams, SharePoint, OneNote, OneDrive, etc.), Google Workspace or Box and produce any non-privileged, responsive material in response.

If a receiving party believes that production of historical versions of hyperlinked documents are required, the receiving party must meet and confer

with the producing party, and must establish a reasonable basis for why the historical versions are relevant to the claims or defenses in the case, and why the versions as collected with its accompanying metadata are insufficient.

f)  <u>Redactions</u>: The Producing Party can redact documents for privilege or otherwise Protected Material, and "Personally Identifiable Information," "Sensitive Private Data," or "Nonpublic Personal Information" as these terms are defined under federal, state or foreign data protection laws, unless this information is responsive to a discovery request from the Receiving Party. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties will seek resolution from the Court. When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (*e.g.*, if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

g)  <u>No Designation of Discovery Requests</u>: Production of hard copy documents and ESI in the reasonably usable form set out in this Order need not include any reference to the requests to which a document or ESI may be responsive

h)  <u>Foreign Language Documents</u>: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language, unless English language translations exist and are reasonably accessible, in which case the English language translations will also be produced. The Producing Party has no obligation to translate the documents or ESI or any portion thereof.

i)  <u>Culling Procedures</u>: The Producing Party shall disclose any software or technology used to search, identify, or review potentially responsive material, including but not limited to, TAR or predictive coding. Nothing in this paragraph shall be construed as granting the Requesting Party any right to dictate, mandate, or otherwise control the Producing Party's procedures beyond those rights provided by applicable law, rules, or court order.

## 10. PRIVILEGE LOGS AND DOCUMENTS PROTECTED FROM DISCOVERY

a)  A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed by the parties or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and, for each document, shall identify the author(s), recipient(s), document type, subject matter, and the basis for the claim (attorney-client privileged or work-product protection). Privilege logs will be produced to all other parties no later than 60

days after delivering a production unless an alternative deadline is agreed to by the parties.

b)  Parties are not required to include in privilege logs any of the following information: (i) materials generated after the issuance of the Voluntary Access Letter to Uber; (ii) communications or documents sent or received solely between, or work product generated solely by, counsel for Defendants (or persons employed by and operating at the direction of counsel for the Defendants); and (iii) communications or documents sent or received solely between, or work product generated solely by, counsel for the FTC or Plaintiff States (or persons employed by and operating at the direction of counsel for the FTC or Plaintiff States). Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

c)  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).The parties plan to stipulate to entry of a non-waiver order under Fed. R. Evid. 502(d).

**11. RECEIPT OF INADVERTENTLY PRODUCED PRIVILEGED OR OTHERWISE PROTECTED MATERIAL AND CLAWBACK PROCEDURE**

a)  In the event that a Receiving Party discovers that it received documents, including Investigation Material, or information it knows or reasonably should know are inadvertently produced privileged or otherwise protected material, it shall provide written notice to the producing Party identifying the subject documents or information within 14 calendar days of discovery by counsel, or

within 14 days of entry of this Order with respect to Investigation Material that counsel for a Receiving Party has already discovered contains inadvertently produced privileged or otherwise protected material.

b) Clawback Procedure: In the event that a Producing Party discovers that it produced Privileged Documents, it shall provide written notice of the claim to the Receiving Party (a "Clawback Notice") identifying the subject Privileged Documents within 14 calendar days of their discovery by counsel or notification under the preceding paragraph. The Clawback Notice shall include a privilege log (in the format described) listing the item(s) produced and, if the Producing Party claims that only a portion of the Privileged Documents contain privileged or otherwise protected material, a new copy of the document redacted to protect only the portion(s) claimed to be privileged or work product.

c) Procedures Following Clawback Notice

   i. No Challenge: Within ten calendar days of receipt of a Clawback Notice (unless the Receiving Party challenges the Producing Party's claim of privilege as set forth below), or a determination by the Court following a challenge that documents produced are Privileged Documents, the Receiving Party must promptly return and/or destroy the Privileged Document, all copies thereof, and any notes that reproduce, copy, or otherwise disclose the substance of the information for which privilege is claimed, and notify the Producing Party when this is complete. For the avoidance of any doubt, failure to challenge a Clawback Notice

within ten calendar days does not foreclose a Party for later challenging a claim of privilege.

ii. <u>Challenge</u>: If a Receiving Party challenges a claim that a document specified in a Clawback Notice is privileged or work-product-protected:

1. The Receiving Party shall notify the producing Party of its challenge (and the reasons therefor) within ten calendar days of receiving the Clawback Notice asserting the claim. The Receiving Party shall sequester the challenged document, all copies thereof, and any notes that reproduce, copy, or otherwise disclose or use the substance of the information for which privilege is claimed, until the claim has been resolved.

2. Within seven calendar days of the Producing Party's receiving notification of the challenge, the Parties shall meet and confer in an effort to resolve their disagreement. If the Parties are unable to reach agreement, within ten business days of the meet and confer, the Parties shall submit a joint discovery letter to the Court, submitting the issue for a determination and/or for in camera review. The document(s) listed in the Clawback Notice shall not be used or disclosed by the Receiving Party during the time in which the Parties are meeting and conferring

about the privileged nature of the document(s) or during the time in which the challenge is before the Court for determination, unless otherwise agreed in writing by the Parties or ordered by the Court. The Producing Party shall bear the burden of establishing the privileged or protected nature of the document(s).

3.  Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the challenged materials and such other information as is reasonably necessary to identify the challenged materials and describe their nature to the Court in any joint discovery letter regarding the challenge.

d)  Procedures During Depositions and Hearings

   i.  If, during a deposition, a Producing Party claims that a document being used in the deposition (*e.g.*, marked as an exhibit, shown to the witness, or made the subject of examination) contains material that is privileged or protected work product, the Producing Party may (a) allow the document to be used during the deposition without waiver of any claim of privilege or other protection; (b) instruct the witness not to answer questions concerning the parts of the document containing privileged or protected material; or (c) object to the use of the document at the

19

deposition to the extent the entire document is privileged or work-product-protected, in which case no testimony may be taken relating to the document during the deposition until the matter is resolved by agreement or by the Court. If the Producing Party allows the examination concerning the document to proceed consistent with this paragraph, all Parties shall sequester all copies of the document(s) in dispute. As to any testimony subject to a claim of privilege or work product, the Producing Party shall serve a Clawback Notice within fourteen calendar days of the deposition, after which the Parties shall follow the procedures set forth in Section XI.C.3. Pending determination of the clawback dispute, all Parties with access to the deposition transcript shall treat the relevant testimony in accordance with Section XI.C.3.

ii.  If a Receiving Party uses a document or other information in a brief or at a hearing and the Producing Party has not served a Clawback Notice as to those materials in advance of the briefing event or hearing, the producing Party shall serve a Clawback Notice within fourteen calendar days of filing of the brief or date of the hearing if claiming that any materials used by the Receiving Party are attorney client privileged or protected work product. Thereafter, the procedures set forth in Section XI.C.3 shall apply.

e)  Pursuant to Rules 502(d) and (e) of the Federal Rules of Evidence, the production of a privileged or work product protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of a privileged or work product protected document in this case as part of a production is not itself a waiver. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Moreover, nothing in this Order shall be interpreted to require disclosure of information subject to privacy protections as set forth in law or regulation, including information that may need to be produced from outside of the United States and/or may be subject to foreign laws.

## 12. THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third Parties produce ESI, if any, in accordance with the specifications set forth herein where reasonably practicable. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena. Nor is this Order intended to suggest that a non-Party has, should, or will provide ESI.

21

### 13. GOOD FAITH

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order. If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the Requesting Party as to why compliance with the Order was unreasonable or not possible within ten (10) days after so learning. No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties to the action.

### 14. NO EFFECT ON DISCOVERY OR ADMISSIBILITY

This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests. Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable. Nothing in this Order shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

### 15. COSTS AND BURDEN

The Parties agree that the burdens placed on them during this litigation, including during discovery, must be proportional to the litigation itself, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b).

### 16. PROTECTIVE ORDER

Nothing in this Order shall be deemed to limit, modify, or override any provision of the Protective Order.

### 17. ROLLING PRODUCTIONS

The Parties understand that this Order contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Agreed Protective Order entered in this case.

### 18. DISCOVERY DEFICIENCY

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

    a) As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete basis for its belief of a deficiency in the Producing Party's discovery process and explain their reasons for believing that additional efforts are reasonable and proportional.

    b) Upon a showing of good cause, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional production criteria to cure the deficiency.

c) If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in accordance with the local Civil Rules.

**19. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.


**IT IS SO STIPULATED**, through Counsel of Record.


Dated: March 4, 2026

*/s/ Benjamin M. Mundel*
Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8729
Facsimile: +1 202 736 8711

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP 2600 El
Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: +1 650 600 5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com

24

Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: +1 212 230 8800

**Attorneys for Defendants**
**Uber Technologies, Inc. and**
**Uber USA, LLC**

*/s/ Paul Mezan*

Paul Mezan
Stephanie Liebner
James Doty
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Stop CC-10232
Washington, DC 20580
(202) 758-4177 (Mezan)
E-mail: pmezan@ftc.gov
(202) 326-3395 (fax)

**Attorneys for Plaintiff**
**Federal Trade Commission**

OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, CONSUMER PROTECTION DIVISION

*/s/ Phillip Ziperman*

Philip Ziperman (MD Bar No.: 9012190379)*
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
pziperman@oag.maryland.gov
(410) 576-6417

Luke Riley (MD Bar No.: 2502271005)*
Assistant Attorney General
Consumer Protection Division

Office of the Attorney General of Maryland 200 St. Paul
Place, 16th Floor
Baltimore, MD 21202
lriley@oag.maryland.gov
(410) 576-6568

*Attorneys for Plaintiff*
*Office of the Maryland Attorney General,*
*Consumer Protection Division*

STEVE MARSHALL
*ATTORNEY GENERAL*

By:

*/s/ Michael G. Dean*
Michael G. Dean*
*Assistant Attorney General*

*/s/ Lindsay D. Barton*
Lindsay D. Barton*
*Assistant Attorney General*

Office of the Attorney General Consumer Interest Division
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152 (334) 242-7300
Michael.Dean@AlabamaAG.gov
Lindsay.Barton@AlabamaAG.gov

*Attorneys for Plaintiff*
*Attorney General of Alabama*

KRISTIN K. MAYES
Attorney General of Arizona

*/s/ Alyse Meislik*
Alyse Meislik, AZ Bar No. 024052*
Assistant Attorney General
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3702
Fax: (602) 542-4377
Email:  consumer@azag.gov
Alyse.Meislik@azag.gov

26

1

2      *Attorney for Plaintiff*
       *Arizona Attorney General*

3
       URSULA JONES DICKSON
4      District Attorney of Alameda County

5      */s/ Andres H. Perez*
       ANDRES H. PEREZ (SBN 186219)
6      Assistant District Attorney
       HUY T. LUONG (SBN 251507)
7      Deputy District Attorney
       Consumer, Environmental & Worker Protection Division
8      7677 Oakport Street, Suite 650
       Oakland, CA 94621
9      Telephone (510) 383-8600
       Email: andres.perez@acgov.org
10     huy.luong@acgov.org

11

12     *Attorneys for Plaintiff*
       *People of the State of California*
13

14     STATE OF CONNECTICUT
       WILLIAM TONG
15     ATTORNEY GENERAL OF THE STATE OF
       CONNECTICUT
16

17     */s/ Brendan T. Flynn*
       Brendan T. Flynn*
18     Fed. Bar No. ct04545
       Assistant Attorney General
19     Office of the Attorney General of the State of Connecticut
       165 Capitol Ave.
20     Hartford, CT  06106
       Tel: 860-808-5400
21     Fax: 860-808-5593
       Brendan.Flynn@ct.gov
22

23     *Attorney for Plaintiff*
       *Attorney General of the State of Connecticut*
24

25     BRIAN L. SCHWALB
       Attorney General for the District of Columbia
26

27     */s/ Coty Montag*
       COTY MONTAG [CA BAR #255703]
28

Deputy Attorney General, Public Advocacy Division
Coty.Montag@dc.gov

BETH MELLEN
WILLIAM STEPHENS
Assistant Deputy Attorneys General, Public Advocacy
Division

KEVIN VERMILLION
Director, Office of Consumer Protection

EMILY HOLNESS
Deputy Director, Office of Consumer Protection

BRITTANY NYOVANIE
Assistant Attorney General, Office of Consumer Protection
Office of the Attorney General for the District of Columbia

400 6th Street NW, 10th Floor   Washington, DC 20001
Tel: (202) 702-5686
Email: Brittany.Nyovanie@dc.gov

*Attorneys for Plaintiff*
*District of Columbia*

PEOPLE OF THE STATE OF ILLINOIS

*/s/ Hal B. Dworkin*
HAL B. DWORKIN, IL Bar No. 6318213*
Senior Assistant Attorney General
Office of the Illinois Attorney General Consumer
Protection Division
Consumer Fraud Bureau
115 South LaSalle Street
Chicago, IL 60603
(312) 814-5159
Hal.Dworkin@ilag.gov

*Attorney for Plaintiff*
*The People of the State of Illinois*

FOR PLAINTIFF THE PEOPLE OF THE STATE OF
MICHIGAN:

*/s/ Aaron W. Levin*
AARON W. LEVIN*

Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
525 W. Ottawa Street
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
Fax: (517) 335-6755
levina@michigan.gov

*Attorney for Plaintiff*
*The People of the State of Michigan*

*KEITH ELLISON*
*Attorney General of Minnesota*

*/s/ Jacob Harris*
JACOB HARRIS*
SARAH DOKTORI*
DANIEL RIFE*
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
jacob.harris@ag.state.mn.us
Telephone: (651) 300-7591
Sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694
Daniel.rife@ag.state.mn.us
Telephone: (651) 757-1104

*Attorneys for Plaintiff*
*State of Minnesota by its Attorney General Keith Ellison*

Catherine Hanaway
Missouri Attorney General

*/s/ Alison Esbeck*
Alison Esbeck (MO Bar # 58501)*
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-4977
Alison.Esbeck@ago.mo.gov

Connor McNeall (MO Bar # 76836)*

STIPULATED ESI AGREEMENT                                  4:25-CV-03477-JST

Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-7888
connor.mcneall@ago.mo.gov

*Attorneys for Plaintiff*
*Missouri Attorney General's Office*

STATE OF MONTANA
*/s/ Anna Schneider*
Anna Schneider (MT # 13963)
Office of Consumer Protection
Montana Department of Justice
P.O. Box 200151
Helena, MT 59620-0151
(406) 444-4500
Brent.mead2@mt.gov

*Attorney for Plaintiff*
*State of Montana*

STATE OF NEBRASKA

*/s/ Benjamin J. Swanson*
Benjamin J. Swanson (NE #27675)*
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68508
(402) 471-7759
benjamin.swanson@nebraska.gov

*Attorney for Plaintiff*
*State of Nebraska*

FOR PLAINTIFF STATE OF NEW HAMPSHIRE:

JOHN M. FORMELLA
Attorney General
*/s/ Amanda N. Purcell*
Amanda N. Purcell, NH Bar #278532*
Assistant Attorney General
Consumer Protection and Antitrust Bureau

New Hampshire Department of Justice
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-1215
Email: Amanda.N.Purcell@doj.nh.gov

*Attorney for Plaintiff*
*State of New Hampshire*

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

*/s/ Zeyad A. Assaf*
Zeyad A. Assaf *
Deputy Attorney General
New Jersey Office of the Attorney General
Division of Law
124 Halsey St., 5th Fl.
Newark, NJ 07102
Phone: (609) 696-5363
Email: Zeyad.Assaf@law.njoag.gov

*Attorney for Plaintiff*
*Attorney General of the State of New Jersey*

FOR THE STATE OF NEW YORK

LETITIA JAMES
*Attorney General of the State of New York*

*By:  /s/ Patrick Gibson*
Patrick Gibson (NY Bar No. 5267489)*
Assistant Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6067
Email: patrick.gibson@ag.ny.gov

*Attorney for Plaintiff*
*The State of New York*

FOR PLAINTIFF THE STATE OF NORTH CAROLINA:

JEFF JACKSON
North Carolina Attorney General

1

2      */s/ Jesse Ramos*
       JESSE RAMOS (NC Bar No. 51663)*
3      Special Deputy Attorney General

4      KUNAL CHOKSI (NC Bar No. 55666)
       Senior Deputy Attorney General
5

6      BRIAN RABINOVITZ (NC Bar No. 41538)*
       Special Deputy Attorney General
7

8      Consumer Protection Division
       North Carolina Department of Justice
9      Post Office Box 629
       Raleigh, NC 27602
10     Tel: (919) 716-6000
       Fax: (919) 716-6050
11     Email: jramos@ncdoj.gov

12
       *Attorneys for Plaintiff*
13     *The State of North Carolina*

14     DAVE YOST
       OHIO ATTORNEY GENERAL
15

16     */s/ Kevin R. Walsh*
       Kevin R. Walsh (0073999)*
17     Senior Assistant Attorney General
       Consumer Protection Section
18     615 W. Superior Avenue, 11th Floor
       Cleveland, Ohio 44113
19     Telephone: (216) 787-3447
       Facsimile: (866) 947-3223
20     Email: Kevin.Walsh@ohioago.gov

21
       *Attorneys for Plaintiff*
22     *Ohio Attorney General*

23
       *GENTNER DRUMMOND,*
24     *ATTORNEY GENERAL OF OKLAHOMA*
       */s/ Christopher J. Campbell*
25     Cameron R. Capps, OBA No. 32742*
       Christopher. J. Campbell, OBA No. 33649*
26     313 N.E. 21st St.
       Oklahoma City, OK 73105
27     Tel: (405) 522-1260

28
       32

Fax: (405) 521-3921
Cameron.Capps@oag.ok.gov
Chris.Campbell@oag.ok.gov

*Attorneys for Plaintiff*
*Attorney General of Oklahoma*

*DAVID W. SUNDAY, Jr.  PENNSYLVANIA ATTORNEY*
*GENERAL*
*By:*
*/s/ Merna T. Hoffman*
MERNA T. HOFFMAN*
Senior Deputy Attorney General
PA Attorney I.D. No. 312897
15th Floor, Strawberry Square Harrisburg, PA 17120
Email: mhoffman@attorneygeneral.gov

JOHN M. ABEL*
Chief Deputy Attorney General Bureau of Consumer
Protection
PA Attorney I.D. No. 47313
15th Floor, Strawberry Square Harrisburg, PA 17120
Email: jabel@attorneygeneral.gov

*Attorneys for Plaintiff*
*Attorney General of Pennsylvania*

JASON S. MIYARES,
ATTORNEY GENERAL OF THE COMMONWEALTH
OF VIRGINIA

*/s/ Mark S. Kubiak*
Mark S. Kubiak (VSB No. 73119)*
Senior Assistant Attorney General
Timothy S. Allison (VSB No. 98083)*
Assistant Attorney General
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-7364 (Kubiak)
            (804) 786-0594 (Allison)
E-mail: mkubiak@oag.state.va.us
        tallison@oag.state.va.us

*Attorneys for Plaintiff*

*Jason S. Miyares, Attorney General of the Commonwealth of Virginia*

JOHN B. MCCUSKEY, ATTORNEY GENERAL OF WEST VIRGINIA

/s/ Tanya L. Godfrey
Ann L. Haight (WVSB# 1527)*
Deputy Attorney General, Consumer Director
Tanya L. Godfrey (WVSB# 7448)*
Assistant Attorney General
Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Ann.L.Haight@wvago.gov
Tanya.L.Godfrey@wvago.gov

*Attorneys for Plaintiff*
*Attorney General of West Virginia*

JOSHUA L. KAUL
Attorney General of Wisconsin

/s/ Laura E. McFarlane
LAURA E. MCFARLANE*
Assistant Attorney General
State Bar #1089358
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911
(608) 294-2907 (Fax)
laura.mcfarlane@wisdoj.gov

Attorney for Plaintiff
State of Wisconsin

*Pro hac vice* application filed or forthcoming
Co-counsel for Plaintiffs' attorneys appearing *pro hac vice*:

Kerry O'Brien (CABN 149264)
Federal Trade Commission
Western Region San Francisco
90 Seventh St., Suite 14-300
San Francisco, CA 94103

Phone: (415) 848-5100
Email: kobrien@ftc.gov

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

_____

UNITED STATES DISTRICT JUDGE

## ATTESTATION OF ELECTRONIC SIGNATURE

I hereby attest that pursuant to Civil Local Rule 5-1(i)(3), I have obtained authorization from the above signatories representing Plaintiffs to file the above-referenced document, and that the above signatories concur in the filing's content.

By: */s/ Benjamin M. Mundel*
Benjamin M. Mundel