

Division of Financial Practices
Bureau of Consumer Protection

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

March 6, 2026

**By ECF**

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiff Federal Trade Commission ("FTC") and Defendants Uber Technologies, Inc. and Uber FTC, LLC ("Uber" or "Defendants") submit this joint statement pursuant to the Court's Discovery Standing Order.

The parties hereby attest that they have met and conferred in good faith to resolve their disputes prior to filing this letter.

Respectfully submitted,

*/s/ James Doty*
James Doty
Federal Trade Commission

*Attorney for Plaintiff FTC*

*/s/ Ben Mundel*
Ben Mundel
Sidley Austin LLP

*Attorney for Uber Technologies, Inc. and Uber USA, LLC*

## I. FTC's Statement

Discovery is at a standstill. In the six months since the FTC served its first requests (*see* Ex. A, B), Uber has produced only 72 documents totaling 179 pages–a startling lack of progress in a case where the evidence is largely within Uber's exclusive control.[1] Despite conducting six meet-and-confers and exchanging multiple letters, Uber continues to obstruct and delay: withholding information without justification and making token productions to feign cooperation. *See* Ex. C. Thus, the FTC respectfully seeks the Court's assistance in resolving the disputes outlined below.

### A. Uber's Failure to Provide Basic Information Necessary to Establish Search Protocols

From the outset, the FTC asked Uber to prioritize responses to Interrogatory 1 and RFPs 2 and 3, which seek the identities of employees with relevant knowledge, organizational charts, and documents identifying teams that worked on Uber One, respectively. For 3 months, the FTC has also been asking Uber to identify how and where responsive materials are stored.

Uber's responses are grossly deficient. As of February 19, it had identified only 11 individuals (*see* Ex. D), despite pre-suit productions indicating that *hundreds* of employees have relevant knowledge.[2] It has produced charts for just three teams, consisting only of high-level employees; entire teams, such as Uber's marketing, membership growth, and "customer obsession," are absent from its production. Uber has also failed to identify the repositories or databases it intends to search.

Without this basic information, the FTC cannot intelligently propose custodians and search terms, which itself is only a precursor step toward Uber's collection and production of materials responsive to many of the FTC's requests. Uber's refusal to turn over all relevant, responsive information, and instead arbitrarily cabin its responses, runs afoul of the Northern District of California's Guidelines for the Discovery of Electronically Stored Information and is inconsistent with case law holding that responding parties may not unilaterally dictate discovery parameters. *See, e.g., In re Amazon Return Litig.*, 350 F.R.D. 326, 331 (W.D. Wash. 2025) ("[Defendants] cannot unilaterally decide what is "useful" to Plaintiffs—the standard is relevance, not [Defendants'] preferred method of custodian identification.").

To make progress and attempt to overcome Uber's obstruction, the FTC provided Uber with a preliminary list of employees who it believes may possess relevant knowledge[3] and proposed search terms for several requests. The FTC proposed that Uber (1) provide information responsive to Interrogatory 1 for the listed employees and anyone who worked in the same

---

[1] Uber's pre-suit production was equally deficient: of the 210 documents produced in response to the FTC's 11/4/2024 Voluntary Access Letter, over 40% were "non-responsive attachments" or RSVPs to two Zoom meetings.

[2] On February 20, after the FTC provided Uber with its portion of this statement, Uber finally identified employees included in its pre-suit productions. The timing of this supplemental production, which should have been provided months ago, is further evidence of Uber's inappropriate gamesmanship. And the substance of the production merely reveals the extent to which Uber's productions have been deficient, as it references teams and business units likely to have worked on issues central to the case that Uber has never identified.

[3] The FTC has never suggested that all the individuals who may possess relevant knowledge should be custodians.

1

departments as those employees and (2) identify the repositories or databases Uber intends to search for each request. To date, Uber has not provided this information.

The FTC respectfully requests the Court order Uber to, within 5 days: (1) provide complete responses to Interrogatory 1 and RFPs 2 and 3; (2) identify repositories and databases that contain responsive materials; and (3) negotiate appropriate custodial searches with the FTC in good faith.

**B. Uber's Unjustified Withholding of Relevant Materials**

For numerous requests (or components thereof) that do not require custodial searches, Uber has produced nothing. These requests seek, among other things, consumer notification procedures (RFP 9); basic policies and procedures (RFP 14(d)-(f)); consumer complaints and related materials (RFPs 19, 25, 26); blog posts and FAQs (RFP 21); documents relating to third party partnerships (RFPs 22(c), 30); customer service materials (RFPs 23, 24); ads and related materials (RFPs 27-29); specific experiments (RFP 31(b)-(h)); and consumer data (RFPs 34-37).

Aside from boilerplate objections, Uber has not disputed the relevance of these requests or claimed undue burden. Instead, it asserts it is still conducting a "reasonable" search, which has dragged on for over 6 months without explanation, and erroneously claims it cannot produce these materials until the parties formalize an ESI agreement.[4] *See, e.g., Albert v. Lab. Corp. of Am.*, 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020) (An ESI agreement "does not supplant the requirement of Rule 34 that an initial, reasonable search for responsive documents be conducted in the first place.").

Uber's unjustified withholding of these materials has prejudiced the FTC's ability to negotiate custodial searches and to move the case forward in a timely manner. Thus, the FTC respectfully requests the Court order Uber to complete its searches and produce materials responsive to the aforementioned requests within 10 days.

**C. Uber's Refusal to Comply with Specific Discovery Requests**

Finally, Uber flatly refuses to search for or produce materials responsive to the following requests (or components thereof), despite their clear relevance to the case:

**RFPs 8, 10**: Uber has not produced complete versions of its enrollment and cancellation flows as requested by the FTC. In addition, Uber will not produce any enrollment or cancellation flows from foreign jurisdictions, even though the FTC proposed that Uber produce a limited number of such flows to be negotiated by the parties. Flows from foreign jurisdictions are relevant because they may demonstrate that Uber had both the knowledge and ability to provide clearer and simpler flows than those implemented in the United States. *See, e.g., FTC v. Amazon.com, Inc. et al.*, No. 2:23-cv-00932, Dkt. No. 248 (W.D. Wash. March 14, 2025) (ordering production of materials relating to potential design changes to Defendants' cancellation flows and information concerning flows used in the global market).

**RFP 14(a), (b), (g), (h)**: Uber refuses to produce basic policies and procedures governing its billing dates, the calculation of its savings claims and fees, chargebacks and refunds, and the

---

[4] Contrary to Uber's assertions, Uber and the FTC never agreed to an ESI protocol prior to the filing of the amended complaint, and the reason is that Uber has taken twice as long to respond to proposed revisions as the FTC and its co-plaintiffs (despite the fact that the FTC was unable to work on the case during the 43-day government shutdown).

terms of its free trials, incentives, and promotions. It also refuses to produce any contemplated changes to its policies or procedures. *See, e.g., Fed. Trade Commn. v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 WL 251449, at *8 (D. Kan. Jan. 26, 2011) (ordering supplemental production of Defendants' policies and procedures).

**RFPs 16, 17**: Aside from consumer complaints provided by BBBs and state attorneys general's offices (which Uber has still not provided), Uber refuses to produce documents relating to private lawsuits or investigations that concern the practices alleged in the FAC, even though Uber's receipt of such materials may demonstrate its knowledge of unlawful practices. *See, e.g., Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG (KAW), 2017 WL 1101941, at *3–4 (N.D. Cal. Mar. 24, 2017) (ordering production of documents from prior private consumer protection lawsuit where pending case involved "significant factual and legal overlap").

**RFP 33**: Uber refuses to produce documents showing how it determines ride and delivery prices. These materials are central to the case, which alleges that Uber misrepresents the amount of money that Uber One subscribers save compared to users who are not enrolled. *See, e.g., Paya v. Macy's Inc.*, 793 F. Supp. 3d 1201, 1208 (C.D. Cal. 2025) ("Plaintiff cannot reasonably be expected to have detailed knowledge of Defendant's in-store pricing practices without conducting discovery.").

The FTC respectfully requests the Court order Uber to promptly comply with the aforementioned requests. Alternatively, the FTC seeks leave to file a motion to compel regarding these requests.

## II. Uber's Statement

The FTC wrongly blames Uber for its own attempted abuse of the discovery process. This statement is just its latest salvo in a bid to obtain a new case schedule because what the FTC has learned to date cannot support its misguided theory of liability. The FTC ignores that before this lawsuit was filed, it conducted a pre-complaint investigation where Uber *voluntarily* produced hundreds of documents, in addition to substantial data.[5] The FTC also fails to mention that there is a pending, still not fully briefed motion to dismiss, filed after the FTC amended its complaint without leave to change its theory of the case. And the FTC does not acknowledge that the reason why it does not have more documents is because the FTC has refused to *accept* even one of Uber's proposed custodians as a starting point for its production. Uber has offered up a non-exhaustive list of custodians so that it can produce documents and the FTC—not Uber—has refused to take yes for an answer. To date, the FTC has not made a serious counterproposal; the FTC's latest proposal was still 219 potential custodians. The FTC's other gripes fare no better (and also omit critical information). Uber remains ready to continue collecting and producing discovery consistent with the phased approach this District uses to ensure proportionality. The FTC should accept what Uber is offering, review those materials, and identify what additional material it believes it needs to build its case.

The FTC has only itself to blame for the pace of discovery. The FTC has allowed weeks, and at times months, to pass before responding to Uber's correspondence. The FTC first proposed 234 possible custodians, many with no apparent connection to Uber One, and then proposed 219. Both numbers far exceed the number of custodians even in complex antitrust cases and exceed what is appropriate here. Rather than narrow its overbroad requests, the FTC has brought the Court into issues that could have been resolved between the parties, only after Judge Tigar explained that

---

[5] There is no such thing as a "deficient" *voluntary* production of documents.

it could not have its schedule extension without doing so. Thus, what the FTC now calls "disputes" are nothing more than delays caused by its own recalcitrance. The Court need not intervene.

### A. The FTC has Refused to Reasonably Negotiate on Search Protocols

<u>Custodians.</u> Months ago, on November 4, 2025, Uber proposed an initial list of seven core custodians. Ex. E. That proposal was consistent with this District's phased approach to discovery, which contemplates beginning with the "[c]ustodians (by name or role)" who are "most likely to have discoverable information." N.D. Cal. Rule 26(f) Checklist. It included, for example, the Director of Product Management and the Product Operations Lead for the Membership Tech team, as well as the Senior Director and Head of Global Memberships. These are three of the individuals most involved in Uber One, the subject of this case. Uber expressly proposed *beginning* with these custodians, subject to later expansion *if needed*, and suggested that the FTC could use initial productions from this core set to help inform subsequent expansion.

The FTC maintains that it lacks sufficient information even to confirm whether any of Uber's proposed custodians is appropriate. But Uber has produced hundreds of employee names and organizational charts,[6] more than enough to enable a targeted counterproposal, or at least to confirm that Uber's initial proposed custodians are appropriate. If the FTC then wanted additional custodians, it would be free to so request. But the FTC has refused to allow Uber to move forward.

Instead, seven weeks after Uber's proposal, the FTC countered with a list of 234 individuals. Ex. F. On it: nearly every Uber employee named in Uber's pre-suit productions. Uber provided a second supplemental response with four additional names on Jan. 26, 2026. The FTC then countered with 219 individuals. Ex. G. The FTC has yet to propose a number that is not wildly disproportionate to what is needed. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (rejecting request for 33 custodians as "not proportional" where requesting party lacked factual basis tying proposed custodians to conduct at issue).

<u>Repositories.</u> Uber has identified the principal repositories to be searched, including Gmail, Google Drive, Slack, and the Bliss customer-service database. Ex. H. The FTC has not explained what more it needs to know.

### B. Uber Has Said it Will Produce the Materials the FTC Claims are Being Withheld

Uber has either already produced or committed to producing materials responsive to the requests the FTC highlights. As Uber has explained, however, the parties' ESI protocol should be finalized before undertaking ESI production, *see F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 674 & n.14 (N.D. Fla. 2013),[7] especially when the parties are close to agreement, Ex. K at 5–6 (02.03 email). Again, Plaintiffs are responsible for that delay.[8] Moreover, Uber recently provided written

---

[6] See productions dated Nov. 21, 2025 and Jan. 26, 2026, and interrogatory responses dated Dec. 4, 2025, Jan. 26, 2026, and Feb. 20, 2026. These names were all already known to the FTC from the pre-suit productions.

[7] *Albert v. Laboratory Corp. of America*, 536 F. Supp. 3d 798 (W.D. Wash. 2020), is irrelevant because the parties there had already agreed on an ESI protocol.

[8] The FTC's claim that Uber took twice as long to respond to proposed ESI protocol revisions improperly counts the government shutdown against Uber. Once the government reopened, the longest delay came when the FTC and the States wasted nearly two months trying to renegotiate

updates on each of these requests and offered to meet and confer; the FTC never responded. *See* Ex. I at 4–6. Specifically:

- Uber is not aware of documents responsive to the relevant portions of RFP 30, because enrollment through partnerships requires affirmative consent.
- For RFPs 19, 25, and 26, Uber has provided customer-support codes to facilitate a meet and confer on a reasonable plan to collect communications tagged with those codes.
- Uber has already produced information responsive to subparts of RFPs 34 and 14, and Uber will supplement its productions with material responsive to the remaining subparts.
- RFPs 35, 36, and 37 seek billions of data points. Uber is continuing to analyze and will explain any limitations once that review is complete.
- Uber will produce materials responsive to RFPs 9, 21, 22, 23, 24, 27, 29, and 31 now that the parties have finalized their ESI agreement, once they agree on a reasonable date range.
- On RFP 28, Uber will provide dissemination information for a reasonable number of advertisements produced under RFP 27. *See* Ex. K at 14.

**C. Uber's Narrowing of the FTC's Extremely Broad Requests is Reasonable**

The FTC served 40 Requests for Production, many with numerous sub-parts. It takes issue with Uber's narrowing of five of these requests. But Uber's approach is reasonable.

- RFPs 8, 10: Uber has declined to produce enrollment and cancellation flows from foreign jurisdictions because they are irrelevant. *See, e.g.*, *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL 4755611, at *2 (C.D. Cal. Jan. 7, 2008).[9] The FTC's argument about what is possible elsewhere is not relevant.
- RFP 14(a), (b), (g), (h): Uber is willing to search for and produce non-privileged, responsive materials for subparts (a) and (b). Subparts (g) and (h) are indeterminate and overbroad: They would sweep in every discussion about fees or changing Uber One, no matter how untethered to the allegations. Courts in this District have declined to compel similarly open-ended searches. *See, e.g.*, *In re Google RTB Consumer Privacy Litig.*, No. 21-cv-02155-YGR (VKD), at 2–3 (N.D. Cal. Apr. 25, 2022).[10]
- RFPs 16, 17: Uber has agreed to respond to RFP 16. RFP 17, however, seeks documents relating to *all* lawsuits concerning Uber One, regardless of subject matter. Such a sweeping request is obviously neither relevant nor proportional.
- RFP 33: Pricing is only relevant to the extent it bears on Uber's representations about Uber One savings. And Uber has confirmed that it will produce documents substantiating its savings claims under RFPs 14 and 29. The FTC is on a fishing expedition for information about how Uber sets prices across its services. This request is disproportionate for this case.

Uber has agreed to produce responsive materials and respectfully requests the time to do so.

---

a term Uber and the FTC had previously agreed on. The FTC re-agreed to Uber's proposed terms on March 3, 2026.

[9] *FTC v. Amazon.com*, No. 2:23-cv-00932, Dkt. No. 248 (W.D. Wash. Mar. 14, 2025), concerned documents withheld for privilege, not Amazon's foreign enrollment and cancellation flows.

[10] In *FTC v. Affiliate Strategies, Inc.*, 2011 WL 251449 (D. Kan. Jan. 26, 2011), the court ordered a supplemental search for policy documents generally, not documents about every unimplemented change.