# Exhibit A

1    Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
2    James Doty (NY Bar No. 4552550)
Federal Trade Commission
3    600 Pennsylvania Ave., NW
Washington, DC 20580
4    Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
5    (202) 326-3395 (fax)

6    Attorneys for Plaintiff
Federal Trade Commission

7

8                    **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
9                       **OAKLAND DIVISION**

10

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. 4:25-cv-03477-JST |
| Plaintiff, | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| **UBER TECHNOLOGIES, Inc.**, a corporation, and | |
| **UBER USA, LLC**, a limited liability company, | |
| Defendants. | |

18        Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal

19   Rules of Civil Procedure 26 and 34, serves the following requests for production of documents

20   ("RFPs") from Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively,

21   "Defendants" or "Uber").

22        Uber's responses to these requests are due within 30 days of service.  Please also produce

23   for examination, copying, and inspection the documents and things described below within 30

1    days of service, at the office of the Federal Trade Commission, 600 Pennsylvania Avenue NW,

2    Washington, DC 20580.

3        For purposes of these requests, the following instructions and definitions apply.

4    **I.    INSTRUCTIONS**

5        A.    **Failure to Disclose**:  You are placed on notice that, to the extent that you fail to

6    disclose responsive documents (including ESI) in response to these RFPs, the FTC may move

7    before or at trial or any other evidentiary hearing to preclude you from presenting evidence

8    regarding or relating to this information.

9        B.    **Ongoing Duty to Supplement**:  These RFPs are continuing in nature through the

10   conclusion of this matter and require supplemental responses pursuant to Federal Rule of Civil

11   Procedure 26(e).  Responsive Documents obtained or discovered after your initial response and

12   production must be produced promptly.

13       C.    **Document Retention**:  Retain all documentary materials used in the preparation

14   of responses to these RFPs.  The FTC may seek the production of additional documents at a later

15   time during this litigation.  Accordingly, you should have already suspended any routine

16   procedures for document destruction and taken other measures to prevent the destruction of

17   documents that are in any way relevant to this litigation during its pendency, regardless of

18   whether you believe such documents are protected from discovery by privilege or otherwise.

19       D.    **Scope of Search**:  These RFPs require you to produce documents in your

20   possession or under your actual or constructive custody or control, including, but not limited to,

21   documents and information in the possession, custody, or control of your attorneys, accountants,

22   directors, officers, employees, and other agents and consultants, whether or not such documents

23   and information were received from or disseminated to any person or entity.

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

E.    **Construction**:  In construing these requests, the singular shall be deemed to include the plural and vice versa, so as to make the requests inclusive rather than exclusive.  The past tense shall be construed to include the present and future tenses and vice versa, so as to make the requests inclusive rather than exclusive.

F.    **Applicable Time Period**:  The applicable time period, unless otherwise specified, shall be from November 8, 2019, to the date of full and complete response.  This instruction shall not be read to limit your duty to supplement your responses pursuant to Rule 26(e).

G.    **Sharing of Information**:  The FTC often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies.  The Commission may make information supplied by you available to such agencies where appropriate pursuant to the Federal Trade Commission Act and 16 C.F.R. § 4.11 (c) and (j) and in compliance with any Protective Order entered by the Court.  Information you provide may be used in any federal, state, or foreign civil or criminal proceeding by the Commission or other agencies.

H.    **Privilege**:  If any document or portion of a document that would be responsive to a request below is not produced because of a claim of privilege or immunity, you shall serve upon the FTC counsel a written list that identifies each such document and the applicable claim (*e.g.*, attorney-client privilege) and provides sufficient information for the FTC to assess the applicability of privilege or protection as required by Federal Rule of Civil Procedure 26(b)(5).  Such information includes, without limitation, (a) the name and position of each author, originator, and/or creator of the document; (b) the name and position of each addressee or recipient of the document; (c) the name and position of each other person who received or was shown the document or a copy thereof; (d) the nature of the document (*e.g.*, a letter, a memorandum, an advertisement, hand-written notes, etc.); (e) the general subject matter of the

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

document or portion of the document withheld; (f) the date of the document or, if the specific creation date of the document is not known, your best estimate of the date (*i.e.*, the month and year or, if the month is not known, the year) on which the document is believed to have been created; (g) the number of pages of the document or portion of the document withheld; (h) the specific privilege or exemption claimed for that document; and (i) an explanation of the grounds for claiming such privilege or exemption, with sufficient particularity to provide a basis for determination of the validity of the privilege or exemption claimed. Any attachment to an allegedly privileged or immune document shall be produced unless you contend that the attachment is also privileged or immune, in which case the information specified above in this paragraph shall be separately provided for each such attachment. If only some portion of any responsive material is privileged, all non-privileged portions of the material must be produced.

I.     **Objections**: If there is an objection to any part of a request below, the grounds of the objection and the part to which the objection applies should be identified with specificity, and documents responsive to the remaining part(s) should be produced.

J.     **Translations:** Where an identified document is in a language other than English, state whether an English translation of such document exists. If an English translation exists, identify and provide both the document and the English translation.

K.     **Sensitive Personally Identifiable Information**: If any material called for by these requests contains sensitive personally identifiable information or sensitive health information of any individual, please contact FTC counsel before sending those materials to discuss ways to protect such information during production, such as by encrypting any electronic copies of such material with encryption software such as SecureZip and providing the encryption key in a separate communication.

For purposes of these requests, sensitive personally identifiable information includes: an individual's Social Security number alone; or an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

## II.     DEFINITIONS

A.     "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale or use of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content. Advertisements include email marketing, pop-ups, push notifications, and the like.

B.     "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any request any document that otherwise might be construed to be outside the scope of the request.

C.     "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

D.     "**Cancellation Procedure**" and "**Cancellation Process**" means the process, flow, or experience through which a consumer may temporarily or permanently stop recurring charges

1    from being placed on the consumer's credit card, debit card, bank account, or other financial

2    account, including all immediately preceding or immediately subsequent steps that form part of

3    that process, flow, or experience (such as elements that could influence the consumer's behavior

4    during, or understanding of, the process, flow, or experience).

5        E.    "**Customer Correspondence**" means documents, such as complaints, reviews (on

6    social media, app stores, or otherwise), inquiries, and your responses to such complaints,

7    reviews, and inquiries, that you directly or indirectly received from or sent to a customer,

8    including any complaints or inquiries to or by Better Business Bureaus or government agencies,

9    and your responses to those complaints, reviews, or inquiries.

10       F.    "**Diverted Cancel**" means a consumer: (a) who was enrolled in Uber One

11   (through a free trial or otherwise); (b) for whom you have any reason to believe intended to

12   cancel Uber One through (in whole or in part) a cancellation procedure (including any consumer

13   to commence a cancellation procedure, either on the consumer's own initiative or at your

14   direction); and (c) who did not terminate their enrollment during the cancellation procedure.

15       G.    "**Document**" means the complete original, all drafts, and any non-identical copy,

16   whether different from the original because of notations on the copy, different metadata, or

17   otherwise, of any item covered by Federal Rule of Civil Procedure 34(a)(1)(A), including ESI.

18       H.    "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to

19   include "**each**."

20       I.    "**Electronically Stored Information**" or "**ESI**" means the complete original and

21   any non-identical copy (whether different from the original because of notations, different

22   metadata, or otherwise), regardless of origin or location, of any information created,

23   manipulated, communicated, stored, or utilized in digital form, requiring the use of computer

hardware or software.  This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp or Slack), videoconferencing, other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.  "ESI" also includes such technical assistance or instructions as will enable FTC counsel to convert ESI into a reasonably usable form.

J.    **"Enrollment"** or **"Enrollment Process"** means the process, flow, or experience through which a consumer accepts an offer or arrangement to receive a product or service, whether through silence, failure to take affirmative action to reject such offer or arrangement, or otherwise, including all immediately preceding or immediately subsequent steps that form part of that process, flow, or experience (such as any elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

K.    **"Include"** and **"including"** mean "including without limitation," or "including but not limited to," to avoid excluding any document that might otherwise fall within the scope of any request.

L.    **"Nonconsensual Enrollee"** or **"Nonconsensual Enrollment"** mean a consumer: (a) who was enrolled in Uber One; (b) whom you have any reason to believe was enrolled without the consumer knowing or realizing they were enrolled; and (c) whom you have no reason to believe was enrolled through identity theft or as a result of any other fraud by a third party.  Nonconsensual Enrollment includes "mistaken" enrollment and "accidental" enrollment.

M.    "**Product**" means products, goods, and services, and includes online memberships, subscriptions, free trials, and enrollments.

N.    "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

O.    "**You**" and "**Your**" mean Uber Technologies, Inc., Uber USA LLC, and their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all current and former directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, individually, collectively, or in any combination.

## III.    REQUESTS FOR PRODUCTION

1.  For Uber USA, LLC, Documents sufficient to show the following: (a) its full legal name and All other names under which it has done business; (b) its mailing address, street address, and telephone number of its headquarters; (c) its date and place of incorporation; (d) the names and addresses of All parent, subsidiary, and affiliate companies, and Each person who is or has been an officer of Uber USA, LLC; (e) All websites and mobile applications operated by or on behalf of Uber USA, LLC; (f) All Products offered by or on behalf of Uber USA, LLC; and (g) its relationship to Uber One and Uber Technologies, Inc., Including Any transfers of money between it and Uber Technologies, Inc.

2.  Documents, such as organizational charts, sufficient to show the organizational structure of Uber Technologies, Inc. and Uber USA, LLC, Including the Uber One, Uber Support, and Uber "customer obsession" teams.

3.  Documents sufficient to identify (a) Any team or group that worked on Any issue Relating to Uber One (Including the development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments, reviews, studies, surveys, or testing of Uber One; Uber One Customer Correspondence; Uber One customer retention; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities); (b) the individuals on those teams; (c) the individuals supervising those teams; (d) the dates those individuals worked on or supervised those teams; and (e)

whether those individuals are or were employed by Uber Technologies, Inc., Uber USA, LLC, or both.

4. All Documents Relating to (a) goals or targets set for teams or groups working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3, and (b) metrics by which those teams' performance was evaluated.

5. Performance reviews for All members of teams who worked on Any issue Relating to Uber One, Including individuals identified in Your response to RFP 3.

6. All operational plans, business reviews, technical reviews, product requirements documents, and reports prepared by or for Any team or group working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3.

7. All presentations to, and Documents sent to, Uber's Board of Directors, Any drafts thereof, and the minutes of Any meeting of Uber's Board, Relating to Uber One or Uber Pass.

8. Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Enrollment Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Enrollment Process, Including Any hyperlinked Documents; (b) Each disclosure Relating to the terms of Uber One that may appear in the Enrollment Process; (c) Each claim relating to Uber One subscription benefits or savings that may appear in the Enrollment Process; (d) whether the Enrollment Process was only available to certain cohorts of consumers; (e) the timeframe during which Each Enrollment Process was available; and (f) Any changes, whether enacted or only considered, to the Enrollment Process or elements of the Enrollment Process referenced in subparts (a) through (d).

9. Documents (such as screenshots or video recordings) sufficient to show how You inform consumers that (a) they are or have enrolled in Uber One (free trial or otherwise); (b) they will be charged an Uber One subscription fee; (c) they have cancelled their Uber One subscription, turned off the auto-renewal feature, paused their subscription, or accepted a discounted subscription; (d) if they have paused their subscripton or accepted a discounted subscription, the date on which they will once again be charged the full price for an Uber One subscription; and (e) Any changes, whether enacted or only considered, to subparts (a) through (d).

10. Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Cancellation Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Cancellation Process, Including Any hyperlinked Documents; (b) Each potential page, step, or action that may appear in the Cancellation Process that does not progress a consumer toward or result in cancellation; (c) Each claim Relating to Uber

One or Uber Pass subscription benefits or savings that may appear in the Cancellation Process; (d) Each potential retention effort that may appear in the Cancellation Process; (e) whether the Cancellation Process was only available to certain cohorts of consumers; (f) the timeframe during which Each Cancellation Process was available; and (g) Any changes, whether enacted or only considered, to the Cancellation Process or elements of the Cancellation Process referenced in subparts (a) through (e).

11. All video recordings, Including compilations of video recordings, of consumers or individuals interacting with the Uber One Enrollment or Cancellation Processes.

12. All Documents Relating to Uber One or Uber Pass Enrollment, Including (a) All Documents Relating to the development of Enrollment Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Enrollment; (c) All Documents Relating to disclosures that You made or considered making during Enrollment; (d) All Documents Relating to Nonconsensual Enrollment; (e) All Documents Relating to Any claims regarding subscription benefits or savings that You made or considered making during Enrollment; and (f) All Documents Relating to free trials, enrollment incentives, or promotions.

13. All Documents Relating to Uber One or Uber Pass Cancellation Processes, Including (a) All Documents Relating to the development of Cancellation Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Cancellation Processes, Including changes to how and where consumers may access Cancellation Processes, the pages or steps that consumers may encounter during Cancellation Processes, and the tactics used by You to retain customers during Cancellation Processes; (c) All Documents Relating to consumers' difficulty with cancelling subscriptions or free trials; (d) All Documents Relating to Diverted Cancels, Including consumers' abandonment of Cancellation Processes; (e) All Documents Relating to Any claims regarding subscription benefits or savings that may appear during Cancellation Processes; and (e) All Documents analyzing or Relating to the timing or stage at which abandonment occurs, the reason(s) for abandonment, and save rates.

14. All Documents Relating to Your polices, practices, or procedures for Uber One, Including (a) how You determine when consumers enrolled in Uber One will be charged or billed for their subscriptions; (b) how You calculate savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes; (c) the Uber One terms of service; (d) how You address or dispute chargebacks; (e) the issuance of refunds; (f) the terms of free trials, enrollment incentives, or promotions; (g) how You determine which fees, if Any, will be charged to consumers who are subscribed in uber One; and (h) Any changes, whether enacted or only considered, to Your policies, practices, or procedures.

15. All Documents Relating to consumer understanding, beliefs, intention, or perception regarding Uber One, including the terms of Uber One; Uber One Advertisements; Uber

10

One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

16. All Documents Relating to Any communications received from, or investigations or inquiries by, Any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, regarding Nonconsensual Enrollment or Uber One Cancellation or Enrollment Processes.

17. All Documents Relating to private lawsuits against You regarding Uber One and involving Uber One Enrollment or Cancellation Processes, Nonconsenual Enrollment, Diverted Cancels, or Uber One subscription benefits or savings.

18. All Documents discussing the Restore Online Shopper Confidence Act ("ROSCA") or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment in, or cancellation of, online subscription services.

19. All Customer Correspondence Relating to Uber One, Including the terms of Uber One; Uber One Enrollment or Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; refunds; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

20. All Documents prepared by or for You Relating to Uber One Customer Correspondence, Including analyses, studies, or reviews of Uber One Customer Correspondence.

21. Documents sufficient to show All versions of All Uber blog posts, support pages, and FAQs (and the timeframe when such materials were publicly available) Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

22. All Documents Relating to (a) credit card fraud, (b) account takeovers, (c) Uber One partnerships or agreements with third party entities, or (d) family or household members signing up for Uber One for other members of their family or household, as a cause of Nonconsensual Enrollment.

23. All Documents used by You to train Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience on issues Relating to Uber One, including call scripts, policies, manuals, knowledge bases, "blogposts," "support logic," or FAQs.

24. All Documents reviewed or created by Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

25. Documents sufficient to identify All codes, tags, or categorizations used by Your customer service, Uber support, Uber "customer obsession" teams, or Any other teams or contractors to label or sort Uber One Customer Correspondence, and the meaning of those codes, tags, or categorizations.

26. All Documents and data Relating to Uber One Customer Correspondence, Including Documents or data showing, for Each month, the volume and percentage of customer service contacts Relating to Each code, tag, or categorization referenced in Your response to RFP 25.

27. All materially unique versions of Advertisements Relating to Uber One.

28. For Each Advertisement responsive to RFP 27, a dissemination schedule, Including the dates and times of dissemination, number of disseminations, the media used, and the total cost of preparing and disseminating the Advertisement.

29. All Documents and underlying data Relating to savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes (e.g., that Uber One customers save or can save $25 per month, or that Uber One customers are eligible for $0 delivery fees), Including Any analyses, experiments, reviews, studies, or testing You conducted.

30. Documents sufficient to show (a) Each of Your partnerships or agreements Relating to Uber One with third party entities, Including Your partnerships with credit card companies, Disney+, PayPal, Verizon, and others; (b) the terms of such partnerships or agreements; and (c) how customers of third parties are enrolled in Uber One subscriptions or free trials as a result of these partnerships or agreements.

31. All Documents (Including video recordings and underlying data) Relating to Any analyses, experiments, reviews, studies, or testing of Uber One, Including: (a) usability studies of Uber One Enrollment or Cancellation Processes; (b) the "Uber One Churn Prevention" experiments (*see* UBER-SEPT24-00000178, UBER-SEPT24-00000273); (c) the "Cancellation Flow – Primary CTA XP" experiment (*see* UBER-SEPT24-00000131); (d) the "Membership Cancellation Transparency – XP" experiment (*see* UBER-SEPT24-00000133); (e) the "Cancellation Flow Restructing Phase 1 XP" experiment (*see* UBER-SEPT24-00000136); (f) the "US Uber One Savings Reinforment" experiment (*see* UBER-SEPT24-00000156); (g) the "Cancellation Value Reminder Screen XP" experiment (*see* UBER-SEPT24-00000373); (h) the "US Uber One Ending Benefits on Free Trial Cancellation" readout (*see* UBER-SEPT-00000148); (i) the financial impact of Any changes, whether enacted or only considered, to Uber One Enrollment or Cancellation Processes, Uber One enrollment incentives, free trials, or promotions, and

Uber One subscription benefits or savings; and (j) consumers' ability to locate and navigate the Uber One Enrollment and Cancellation Processes.

32. All Documents and underlying data relating to consumer testing or analyses of Uber One performed by You or at Your direction regarding consumer understanding, beliefs, behavior, perception, or demographics, Including Any A/B or multivariate testing, copy testing, surveys, focus groups, customer interviews, conversion rate testing, clickstream analysis, or polling.

33. All Documents and underlying data Relating to how You determine the total price of Uber rides or Uber Eats deliveries, Including (a) the factors You use to determine the total price of Uber rides or Uber Eats deliveries and the weights assigned to those factors; (b) Any fees that You may include in the total price and how and when those fees are assessed; (c) the effect, if Any, that a consumer's enrollment or membership status in Uber One has on the total price or Any fees that may be included in the total price; (d) how You determine whether an Uber ride or Uber Eats delivery is eligible for a $0 delivery fee, 10% discount, or other special offer or promotion associated with Uber One; and (e) Any changes, whether enacted or only considered, to how You determine the total price of Uber rides or Uber Eats deliveries.

34. Documents or data sufficient to show:

   a. The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall;

   b. The total number of consumers with active Uber One subscriptions, by month and overall;

   c. The total number of consumers with active Uber One free trials, by month and overall;

   d. The total number of consumers with discounted Uber One subscriptions, by month and overall;

   e. The total number of consumers who accepted a discounted Uber One subscription during Any Cancellation Process, by month and overall;

   f. The total number of consumers with paused Uber One subscriptions, by month and overall;

   g. The total number of consumers who paused their Uber One subscription or free trial during Any Cancellation Process, by month and overall;

   h. The total number of consumers who successfully cancelled their Uber One subscription or free trial (i.e., consumers who were not subsequently charged for

Uber One for Any reason after completing a Cancellation Process), by month and overall;

i. The total number of consumers who cancelled their Uber One subscription or free trial (or who turned off the auto-renewal feature) but were were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall;

j. The total number of consumers who initated Any Uber One Cancellation Process, by month and overall;

k. The total number of consumers who initiated Any Uber One Cancellation Process but did not terminate their Uber One subscription or free trial, by month and overall; and

l. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

35. For each consumer who enrolled in an Uber One subscription or free trial:

a. Documents or data sufficient to show the consumer's name, mailing address, email address, and phone number; and

b. All Documents and data (including click-through data) Relating to:

i. The consumer's enrollment in Uber One, Including (A) the date, time, and Enrollment Process through which the consumer enrolled; (B) whether the consumer enrolled through a free trial or other promotion; and (C) if the consumer enrolled through a free trial or other promotion, the terms of the free trial or promotion (e.g., billing date, duration of free trial, etc.);

ii. The consumer's Uber One payment history, Including (A) the date, time, amount, and payment method of All Uber One subscription fees paid by or billed to the consumer; and (B) the date, time, and amount of Any refunds (including chargebacks) paid to the consumer in connection with Any Uber One subscription fee;

iii. The consumer's Uber One usage, Including (A) the date, time, and total price of Each Uber ride or Uber Eats delivery ordered and paid for by the consumer while the consumer was subscribed to Uber One; (B) Any fees that the consumer was assessed in connection with Each Uber ride or Uber Eats delivery that the consumer ordered while subscribed to Uber One; (C) if the Uber ride or Uber Eats delivery was reduced in price as a result of the consumer's Uber One subscription, the amount and reason that the price was reduced (i.e., a $0 delivery fee); and (D) the lifetime, cycle, and

average trip and delivery savings attributable to the consumer's Uber One subscription;

    iv.  The consumer's cancellation of (or attempts to cancel) Uber One, Including (A) the date, time, duration, and outcome of Each instance in which the consumer initiated a Cancellation Process; (B) for Each Cancellation Process that the consumer initiated, the point at which the consumer exited or completed the Cancellation Process, and the amount of time the consumer spent on Each page or step of the Cancellation Process; (C) if applicable, the dates and times on which the consumer cancelled his or her Uber One subscription (or turned the auto-renewal feature off), and the date and time on which the subscription terminated; and (D) if applicable, the dates and times on which the consumer paused Uber One or accepted a discounted Uber One subscription, the means by which the consumer paused or accepted a discounted Uber One subscription, and the duration of the pause or discounted subscription;

    v.  The consumer's complaints or inquiries Relating to Uber One, Including the date, time, code, tag, or categorization of Each complaint or inquiry; and

    vi.  A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

36. All data (Including click-through data) Relating to Each potential Uber One Enrollment Process, Including data showing:

    a.  The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall, through the Enrollment Process;

    b.  If the Enrollment Process is not available to All consumers (i.e., the Enrollment Process begins with a pop-up Advertisement, push notification, or other solicitation), (i) the total number of consumers who were presented with the Enrollment Process, by month and overall; (ii) the total number of instances in which the Enrollment Process was presented to consumers, by month and overall; and (iii) how You determine which, when, and how often consumers are presented with the Enrollment Process;

    c.  The average and median amount of time that it takes consumers to enroll in an Uber One subscription or free trial through the Enrollment Process; and

    d.  A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

37. All data (Including click-through data) Relating to Each potential Uber One Cancellation Process, Including data showing:

    a.  The total number of instances in which consumers initiated Each Cancellation Process, by month and overall;

    b.  The total number of instances in which consumers successfully completed Each Cancellation Process (i.e., instances in which consumers were not subsequently charged for Uber One for Any reason after completing the Cancellation Process), by month and overall;

    c.  The total number of instances in which consumers completed Each Cancellation Process but were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall;

    d.  The total number of instances in which consumers agreed to pause their Uber One subscription or accepted a discounted Uber One subscription during Each Cancellation Process, by month and overall;

    e.  The total number of instances in which consumers abandoned Each Uber One Cancellation Process after initiating it without cancelling, turning off the auto-renewal feature, pausing, or accepting a discounted Uber One subscription, by month and overall;

    f.  The total number of instances in which consumers initiated Each Uber One Cancellation Process within 48 hours of the consumer's billing date;

    g.  The average amount of time that consumers spent interacting with the Cancellation Process, and with Each page or step of the Cancellation Process; and

    h.  A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

38. All communications, Including emails, text messages, instant messages, Slack messages, call recordings, notes of phone calls, and meeting minutes, Relating to Uber One.

39. Documents sufficient to identify your document retention and destruction policies and when such policies went into effect.

40. Documents sufficient to show the monthly, quarterly, and annual gross and net revenue You generated from Uber One since November 8, 2019.

1

Dated: July 22, 2025

2

*/s/ Paul Mezan*

Paul Mezan (NY Bar #5357124)
Stephanie Liebner (VA Bar #90647)
James Doty (NY Bar # 4552550)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 758-4177; pmezan@ftc.gov (Mezan)
sliebner@ftc.gov (Liebner)
jdoty@ftc.gov (Doty)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

# Exhibit B

1   Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
James Doty (NY Bar No. 4552550)
2   Federal Trade Commission
600 Pennsylvania Ave., NW
3   Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
4   Email: pmezan@ftc.gov (Mezan)
(202) 326-3395 (fax)

5   Attorneys for Plaintiff
Federal Trade Commission

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. 4:25-cv-03477-JST |
|     Plaintiff, | **PLAINTIFF'S FIRST SET OF** |
|     v. | **INTERROGATORIES** |
| **UBER TECHNOLOGIES, Inc.**, a corporation, and | |
| **UBER USA, LLC**, a limited liability company, | |
|     Defendants. | |

Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal

Rules of Civil Procedure 26 and 33, serves the following interrogatories on Defendants Uber

Technologies, Inc. and Uber USA, LLC (collectively, "Uber"). Uber's responses to these

interrogatories are due within 30 days of service.

For purposes of these interrogatories, the following instructions and definitions apply.

# I.    INSTRUCTIONS

A.    **Failure to Disclose**:  You are placed on notice that, to the extent that you fail to disclose responsive information in response to these interrogatories, the FTC may move before or at trial or any other evidentiary hearing to preclude you from presenting evidence regarding or relating to this information.

B.    **Ongoing Duty to Supplement**:  These interrogatories are continuing in nature through the conclusion of this matter and require supplemental responses pursuant to Federal Rule of Civil Procedure 26(e).  Responsive information obtained or discovered after your initial response and production must be provided promptly.

C.    **Document Retention**:  Retain all documentary materials used in the preparation of responses to these interrogatories.  The FTC may seek the production of additional documents or information at a later time during this litigation.  Accordingly, you should have already suspended any routine procedures for document destruction and taken other measures to prevent the destruction of documents that are in any way relevant to this litigation during its pendency, regardless of whether you believe such documents are protected from discovery by privilege or otherwise.

D.    **Scope of Search**:  These interrogatories require you to provide information in your possession or under your actual or constructive custody or control, including, but not limited to, information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such information was received from or disseminated to any person or entity.

E.    **Construction**:  In construing these interrogatories, the singular shall be deemed to include the plural and vice versa, so as to make the requests inclusive rather than exclusive.  The

past tense shall be construed to include the present and future tenses and vice versa, so as to make the requests inclusive rather than exclusive.

F.  **Complete Responses**:  Each interrogatory should be set forth in full preceding the answer to it and should be answered separately and fully in writing, under oath.  If any interrogatory cannot be answered in full, answer the interrogatory to the fullest extent possible and provide the reasons for the inability to answer fully.

G.  **Other Responses**:  If your answer to all or any part of any interrogatory is "unknown," "not applicable," or any similar response, please state (1) why the answer to the interrogatory is "unknown" or "not applicable" (or something similar), (2) the efforts made to obtain answers to the particular interrogatory, and (3) the name and contact information of any person who may know the answer.

H.  **Applicable Time Period**:  The applicable time period, unless otherwise specified, shall be from November 8, 2019, to the date of full and complete response.  This instruction shall not be read to limit your duty to supplement your responses pursuant to Rule 26(e).

I.  **Sharing of Information**:  The FTC often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies.  The Commission may make information supplied by you available to such agencies where appropriate pursuant to the Federal Trade Commission Act and 16 C.F.R. § 4.11(c) and (j) and in compliance with any Protective Order entered by the Court.  Information you provide may be used in any federal, state, or foreign civil or criminal proceeding by the Commission or other agencies.

J.  **Privilege**:  If any responsive information is withheld on the basis of a claimed privilege, you must expressly make the claim and describe the nature of the information withheld in sufficient detail to enable the FTC to assess the privilege claim.  *See* Fed. R. Civ. P. 26(b)(5).

PLAINTIFF'S FIRST SET OF
INTERROGATORIES
4:25-CV-03477-JST

K.     **Objections**:  All objections to any individual interrogatory must be raised in the initial response or are otherwise waived.  If you object to any interrogatory or a part of any interrogatory, state the interrogatory or part to which you object, state the exact nature of the objection, and describe in detail the facts upon which you base your objection.

L.     **Sensitive Personally Identifiable Information**:  If any material called for by these interrogatories contains sensitive personally identifiable information or sensitive health information of any individual, please contact us before sending those materials to discuss ways to protect such information during production.  Contact us to discuss encrypting any electronic copies of such material with encryption software such as SecureZip and provide the encryption key in a separate communication.

For purposes of these interrogatories, sensitive personally identifiable information includes: an individual's Social Security number alone; or an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number.  Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

PLAINTIFF'S FIRST SET OF
INTERROGATORIES
4:25-CV-03477-JST

## II.    DEFINITIONS

A.    "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale or use of a good or service or is designed to increase consumer interest in a brand, good, or service.  Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content.  Advertisements include email marketing, pop-ups, push notifications, and the like.

B.    "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Request any document or information that otherwise might be construed to be outside the scope of the Request.

C.    "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

D.    "**Cancellation Procedure**" and "**Cancellation Process**" means the process, flow, or experience through which a consumer may temporarily or permanently stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account, including all immediately preceding steps that form part of that process, flow, or experience (such as elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

E.    "**Customer Correspondence**" means documents, such as complaints, reviews (on social media, app stores, or otherwise), inquiries, and your responses to such complaints, reviews, and inquiries, that you directly or indirectly received from or sent to a customer, including any complaints or inquiries to or by Better Business Bureaus or government agencies, and your responses to those complaints, reviews, or inquiries.

F.      "**Diverted Cancel**" means a consumer: (a) who was enrolled in Uber One (through a free trial or otherwise); (b) for whom you have any reason to believe intended to cancel Uber One through (in whole or in part) a cancellation procedure (including any consumer to commence a cancellation procedure, either on the consumer's own initiative or at your direction); and (c) who did not terminate their enrollment during the cancellation procedure.

G.      "**Document**" means the complete original, all drafts, and any non-identical copy, whether different from the original because of notations on the copy, different metadata, or otherwise, of any item covered by Federal Rule of Civil Procedure 34(a)(1)(A), including ESI.

H.      "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

I.      "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software.  This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp or Slack), videoconferencing, other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.  "ESI" also includes such technical assistance or instructions as will enable FTC counsel to convert ESI into a reasonably usable form.

J.     **"Enrollment"** or **"Enrollment Process"** means the process, flow, or experience through which a consumer accepts an offer or arrangement to receive a product or service, whether through silence, failure to take affirmative action to reject such offer or arrangement, or otherwise, including all immediately preceding or immediately subsequent steps that form part of that process, flow, or experience (such as any elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

K.     **"Include"** and **"including"** mean "including without limitation," or "including but not limited to," to avoid excluding any document or information that might otherwise fall within the scope of any Request.

L.     **"Nonconsensual Enrollee"** or **"Nonconsensual Enrollment"** mean a consumer: (a) who was enrolled in Uber One; (b) whom you have any reason to believe was enrolled without the consumer knowing or realizing they were enrolled; and (c) whom you have no reason to believe was enrolled through identity theft or as a result of any other fraud by a third party.  Nonconsensual enrollment includes "mistaken" enrollment and "accidental" enrollment.

M.     **"Product"** means products, goods, and services, and includes online memberships, subscriptions, free trials, and enrollments.

N.     **"Referring to"** or **"relating to"** means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

O.     **"You"** and **"Your"** means Uber Technologies, Inc., Uber USA, LLC, and their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all current and former directors, officers, members,

1    employees, agents, consultants, and other persons working for or on behalf of the foregoing,

2    individually, collectively, or in any combination.

3    **III.    INTERROGATORIES**

4        1.    Identify Each current or former Uber employee or contractor with information

5    relevant to this action, Including individuals having Any responsibility Relating to the

6    development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and

7    Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments,

8    studies, reviews, or testing of Uber One; Uber One Customer Correspondence; Uber One

9    subscription benefits and savings; and Uber One partnerships or agreements with third party

10    entities.  In Your response, Include the role, title, and department of the individual, and the time

11    period during which the individual was employed by Uber.

12

13    Dated:  July 22, 2025                    /s/    _Paul Mezan_____

14                                                Paul Mezan (NY Bar #5357124)
                                                Stephanie Liebner (VA Bar #90647)
15                                                James Doty (NY Bar #4552550)
                                                Federal Trade Commission
16                                                600 Pennsylvania Avenue, NW
                                                Washington, DC 20580
17                                                (202) 758-4177; pmezan@ftc.gov (Mezan)
                                                sliebner@ftc.gov (Liebner)
18                                                jdoty@ftc.gov (Doty)

19                                                Attorneys for Plaintiff
                                                FEDERAL TRADE COMMISSION

20

21

22

23

# Exhibit C



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Division of Financial Practices
Bureau of Consumer Protection

February 10, 2026

***By Email***

Benjamin M. Mundel
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711

Re:    *Federal Trade Commission, et al. v. Uber Technologies, Inc. et al.*
        Case No. 4:25-cv-03477-JST

Dear Counsel:

    We write in response to your email dated February 3, 2026, our meet-and-confer conducted on January 8, 2026, and the parties' prior correspondence concerning discovery. As an initial matter, however, we disagree with your characterization of the status of discovery and the events that have led to the parties' current impasse.

    The FTC served its First Sets of Requests for Production (RFPs) and Interrogatories on July 22, 2025. Since then, the parties conducted five meet-and-confers and exchanged numerous emails and letters. But Uber's responses and productions remain grossly deficient. To date, Uber has produced only 72 documents totaling 179 pages during litigation while the FTC has produced 682 documents totaling 1877 pages–a startling disparity for a case in which much of the evidence is in the defendants' exclusive control. Uber's deficient productions appear to be the result of a strategy of obstruction and delay, characterized by the withholding of basic information without justification and the provision of token productions to feign cooperation.

    The parties' January 8 meet-and-confer is illustrative of Uber's problematic approach to discovery in this case. At this meeting, the FTC reiterated its concern that Uber's failure to comply with straightforward discovery requests prevented the FTC from meaningfully negotiating custodial searches. Although you represented that Uber would attempt to address this concern by providing more information in response to Interrogatory 1, Uber's supplemental production identified only four additional employees with relevant knowledge. In total, Uber has identified just eleven employees in response to this straightforward request, even though its own pre-suit productions indicate there are hundreds of employees familiar with the services and practices at issue in the case.

1

Despite Uber's persistent refusal to meaningfully engage in discovery, the FTC is willing to conduct an additional meet-and-confer so the parties can try again to narrow the issues in dispute. To facilitate our discussion, the FTC has summarized several issues with Uber's production below. The FTC requests that Uber respond to and cure these deficiencies by Friday, February 13, 2026. The FTC expressly reserves its right to raise additional deficiencies as discovery continues.

### FTC's Discovery Requests

- **Applicable Time Period.** In our January 8 meet-and-confer, Uber represented that it would confirm the time period it was willing to search for responsive materials. Uber has not done so. The FTC requests that Uber search for responsive materials from November 8, 2019 through December 15, 2025.

- **Uber Pass.** Uber previously indicated it does not intend to search for or produce any materials relating to Uber Pass. The FTC requests that Uber search for and produce materials relating to Uber Pass if they are responsive to the FTC's discovery requests.

- **Search Terms and Custodians.** As discussed above, the FTC is unable to meaningfully negotiate search terms and custodians because of Uber's failure to provide a complete response to Interrogatory 1, its deficient productions with respect to RFPs 2 and 3, its refusal to describe where and how responsive materials are stored, and its delay in complying with requests that do not require custodial searches. Uber's failure to provide this basic information prevents the FTC from independently assessing whether Uber's proposed custodians are likely to possess responsive materials; estimate the appropriate number of custodians; or craft search terms tailored for the repositories, databases, or communication channels in which they will be run. Put differently, it puts Uber in the position to unilaterally dictate the parameters of its custodial searches without meaningful input from the FTC.

  Despite these obstacles, the FTC will be providing revised lists of potential custodians and search terms. In order to further narrow these lists, the FTC requests that Uber (a) provide a complete response to Interrogatory 1 and supplement its production of materials responsive to RFPs 2 and 3, as detailed below; (b) identify the repositories, databases, and communication channels it intends to search for each of the FTC's discovery requests; and (c) produce all materials responsive to discovery requests that do not require the use of custodial searches.

***

- **Interrogatory 1.** Uber's response is deficient because it identifies only eleven individuals with relevant knowledge even though pre-suit productions indicate there are hundreds of individuals familiar with the services and practices at issue in the complaint. The FTC requests that Uber identify all individuals with relevant knowledge. As a first step, the FTC proposes that Uber provide responsive information for (a) all individuals included on the FTC's potential custodian list and (b) all individuals who worked in the same departments or on the same teams as individuals included on the FTC's potential custodian list at any point

2

during the Applicable Time Period.

- **RFP 2.** Uber's production is deficient because it fails to show the organizational structure of Uber Technologies, Inc. or Uber USA, LLC. Specifically, Uber's production does not show where relevant teams are situated within the entities or provide any information on the various business units that comprise each entity. <u>The FTC requests that Uber supplement its production to include documents sufficient to show where all relevant teams are situated within the two entities and the business units that comprise each entity.</u>

- **RFP 3.** Uber's production is deficient in at least two respects. First, with respect to teams for which Uber provided organizational charts (e.g., the Membership Tech Team), Uber's production fails to identify all individuals on those teams, the dates those individuals worked on or supervised those teams, and whether those individuals were employed by Uber Technologies, Inc. or Uber USA, LLC. Second, entire teams are missing from Uber's productions, such as the Membership Growth, Membership Engineering, Membership Operations, Design, Product, Data Science, Customer Obsession, CommOps, and Marketing teams. <u>The FTC requests that Uber supplement its production to identify all information requested by RFP 3 for any teams or groups that worked on issues relating to Uber One.</u>

- **RFP 4.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 5.** Uber has stated it will not produce materials responsive to this request. <u>The FTC renews its proposal that Uber agree to produce performance reviews for a limited number of individuals to be identified by the parties after Uber has cured its production deficiencies.</u>

- **RFP 6:** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 7.** In its production letter dated January 26, 2026, Uber stated it had not located any non-privileged documents responsive to this request. On September 8, 2025, however, the parties agreed that materials responsive to this request would be collected through negotiated pulls or custodial searches. <u>The FTC requests that Uber disclose how it searched for responsive materials and provide a privilege log identifying each document withheld and the basis for withholding it.</u>

- **RFP 8.** Uber's production is deficient in several respects. Uber has not produced (i) documents sufficient to show its complete enrollment, notification, and cancellation flows; (ii) any relevant flows from foreign jurisdictions; (iii) with respect to RFPs 8 and 10, documents sufficient to show whether responsive flows were only available to certain cohorts of consumers and the timeframes during which the flows were available. <u>The FTC requests that Uber supplement its production to cure these deficiencies.</u> With respect to responsive materials from foreign jurisdictions, the FTC is willing to identify a limited number of foreign jurisdictions for which Uber would produce responsive materials.

- **RFP 11.** In our September 8, 2025 meet-and-confer, the FTC asked whether responsive video recordings were stored in a central repository. You responded that Uber would investigate and confirm. On January 7, 2026, Uber confirmed that no such repository existed and subsequently searched for and produced ten responsive video recordings. <u>The FTC requests that Uber disclose how it searched for responsive video recordings and provide a privilege log identifying any recordings withheld and the basis for withholding them.</u>

- **RFPs 12, 13.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 14.** In your letter dated January 7, 2026, you stated Uber would not produce materials responsive to subparts (a), (b), (g) or (h) of this request. <u>The FTC requests that Uber produce materials responsive to all subparts of this request and is amenable to the use of custodial searches if Uber provides the information and materials necessary to negotiate those searches.</u>

- **RFP 15.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 16.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would only produce consumer complaints about Uber One's cancellation or enrollment processes received from Better Business Bureaus or State Attorneys General. <u>The FTC requests that Uber produce all documents responsive to this request and is amenable to the use of custodial searches if Uber provides the materials and information necessary to negotiate those searches.</u>

- **RFP 17.** In its letter dated January 7, 2026, Uber stated it would not produce materials responsive to this request. <u>The FTC requests that Uber produce all documents responsive to this request and is amenable to the use of custodial searches if Uber provides the materials and information necessary to negotiate those searches.</u>

- **RFP 18.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 19.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would collect responsive materials from its Bliss database and produce a list of potentially relevant issue codes in response to RFPs 25 and 26, which would be used by the parties to negotiate the scope of Uber's search and production. <u>The FTC requests that Uber (i) confirm there are no other repositories of responsive materials, such as those maintained by Uber's Executive Community Relations ("ECR") team or its regulatory team; (ii) provide its list of potentially relevant issue codes; and (iii) identify the number of issue codes excluded from the list and the basis for excluding them.</u>

4

- **RFP 20.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber provide the information and materials necessary for it to negotiate custodians and search terms (see above).</u>

- **RFP 21.** In its letter dated January 7, 2026, Uber stated it would supplement its pre-suit productions to include new blog posts, support pages, and FAQs relating to Uber One as well as documents relating to partnerships or agreements with third party entities to the extent they bear on the process of Uber One enrollment. <u>The FTC requests that Uber produce these materials as well as documents sufficient to show the timeframes when such materials were publicly available.</u>

- **RFP 22.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would only produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment. <u>The FTC requests that Uber fully comply with all subparts of the request and is amenable to the use of custodial searches if Uber provides the materials and information necessary to negotiate them.</u>

- **RFPs 23, 24.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would perform discrete pulls and produce documents showing how Uber's customer support team addresses questions and complaints about the enrollment, cancellation, and advertising issues in the complaint. <u>The FTC requests that Uber produce these materials.</u>

- **RFPs 25, 26.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would produce a list of potentially relevant issue codes, which would be used by the parties to negotiate the scope of Uber's search and production. <u>As a first step, the FTC requests that Uber (a) provide its list of potentially relevant issue codes and (b) identify the number of issue codes excluded from the list and the basis for excluding them.</u>

- **RFPs 27, 28.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would produce advertisements responsive to this request and search for dissemination information for a reasonable number of responsive advertisements to be identified by the FTC. <u>The FTC requests that Uber produce its responsive advertisements.</u>

- **RFP 29.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would produce data substantiating advertising claims at issue in the case and would conduct a custodial search to collect other responsive documents and communications. <u>The FTC requests that Uber (a) produce its substantiation for advertising claims at issue in the case, including any related analyses, experiments, reviews, studies, or testing and (b) information necessary to negotiate search terms and custodians.</u>

- **RFP 30.** Uber has not produced any materials responsive to this request. In its letter dated

January 7, 2026, Uber stated it would produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment. <u>The FTC requests that Uber produce these materials.</u>

- **RFPs 31, 32.** In our September 8, 2025 meet-and-confer, the FTC asked whether responsive materials were stored in a central repository. On January 7, you confirmed that no such repository existed but that Uber would search for and produce responsive materials after conducting a custodial search. <u>The FTC requests that Uber (a) produce the specific materials listed in RFP 31, such as documents and underlying data related to the "Uber One Churn Prevent" experiments (UBER-SEPT24-0000017, UBER-SEPT24-00002273), and (b) provide the information necessary for the FTC to negotiate search terms and custodians.</u>

- **RFP 33.** Uber has not produced any materials responsive to this request. <u>The FTC requests that Uber fully comply with all subparts of the request and is amenable to the use of custodial searches if Uber provides the materials and information necessary to negotiate them.</u>

- **RFP 34.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would produce data responsive to certain subparts of this request. <u>The FTC requests that Uber produce data responsive to all subparts of this request.</u> If Uber will not produce data responsive to particular subparts, the FTC requests that it provide a detailed explanation of the basis for withholding the data so that the parties can explore other options.

- **RFP 35.** Uber has not produced any materials responsive to this request. In its letter dated January 7, 2026, Uber stated it would produce data responsive to certain subparts of this request. <u>The FTC requests that Uber produce data responsive to all subparts of this request.</u> If Uber will not produce data responsive to particular subparts, the FTC requests that it provide a detailed explanation of the basis for withholding the data so that the parties can explore other options. With respect to subpart (a), the FTC requests that Uber produce documents and data sufficient to show each consumer's name, email address, phone number, and state or city of residency.

- **RFPs 36, 37.** Uber has not produced any materials responsive to this request. On January 7, Uber stated it was still conducting a search for data responsive to this request. <u>The FTC requests that Uber produce data responsive to all subparts of this request.</u> If Uber will not produce data responsive to particular subparts, the FTC requests that it provide a detailed explanation of the basis for withholding the data so that the parties can explore other options.

### Uber's Discovery Requests

On January 16, 2026, the FTC provided Uber with responses to questions concerning Uber's discovery requests. On January 26, 2026, the FTC made its first production of responsive materials. Uber has not formally responded to the FTC's letter or the contents of the FTC's initial production. If Uber has concerns with specific aspects of the FTC's productions to date, we request that Uber identify those concerns so the parties can find a path forward.

Sincerely,

/s/ *Paul Mezan*

Paul Mezan
Attorney for the Federal Trade Commission

cc:    lfreeman@sidley.com
       dlangan@sidley.com
       lydia.sidrys@sidley.com
       david.gringer@wilmerhale.com
       sonal.mehta@wilmerhale.com
       marissa.wenzel@wilmerhale.com
       jdoty@ftc.gov
       sliebner@ftc.gov
       pziperman@oag.maryland.gov
       lriley@oag.maryland.gov
       michael.dean@alabamaag.gov
       jessica.tubbs@alabamaag.gov
       lindsay.barton@alabamaag.gov

# Exhibit D

1   Lauren C. Freeman (SBN 324572)        Sonal N. Mehta (SBN 222086)
    lfreeman@sidley.com                   sonal.mehta@wilmerhale.com
2   SIDLEY AUSTIN LLP                     Wilmer Cutler Pickering Hale and Dorr LLP
3   555 California Street, Suite 2000      2600 El Camino Real, Suite 400
    San Francisco, CA 94104               Palo Alto, CA 94306
4   Telephone:  415-772-1200              Telephone: +1 650 600 5051
    Facsimile:  415-772-7400
5                                         David Gringer (*pro hac vice*)
    Benjamin M. Mundel (*pro hac vice*)   david.gringer@wilmerhale.com
6   bmundel@sidley.com                    Marissa M. Wenzel (*pro hac vice*)
    SIDLEY AUSTIN LLP                     marissa.wenzel@wilmerhale.com
7   1501 K Street, N.W.                   Wilmer Cutler Pickering Hale and Dorr LLP
    Washington, D.C. 20005                7 World Trade Center
8   Telephone: +1 202 736 8729            250 Greenwich Street
    Facsimile: +1 202 736 8711            New York, NY 10007
9                                         Telephone: +1 212 230 8800

10  *Attorneys for Defendants*
    *Uber Technologies, Inc., and Uber USA, LLC*
11

12

## UNITED STATES DISTRICT COURT
13    ## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION
14

15  **FEDERAL TRADE COMMISSION;**
    **THE ATTORNEYS GENERAL OF THE**        Case Number: 4:25-cv-03477-JST
16  **STATES OF ALABAMA, ARIZONA,**
    **CONNECTICUT, MARYLAND,**
17  **MINNESOTA, MISSOURI, MONTANA,**       **DEFENDANT'S SECOND**
    **NEBRASKA, NEW HAMPSHIRE, NEW**         **SUPPLEMENTAL RESPONSES AND**
18  **JERSEY, NEW YORK, NORTH**              **OBJECTIONS TO PLAINTIFF'S**
    **CAROLINA, OHIO, OKLAHOMA,**           **FIRST SET OF INTERROGATORIES**
19  **PENNSYLVANIA, VIRGINIA, WEST**
20  **VIRGINIA, WISCONSIN, AND THE**
    **DISTRICT OF COLUMBIA; THE**
21  **PEOPLE OF THE STATE OF**
    **CALIFORNIA, THE PEOPLE OF THE**
22  **STATE OF ILLINOIS, AND THE**
    **PEOPLE OF THE STATE OF MICHIGAN**
23

24          Plaintiffs,

25
        vs.
26  _____

27                      1

**UBER TECHNOLOGIES, Inc.**, a
corporation, and

**UBER USA, LLC**, a limited liability
company,

                    Defendants.
_____

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules"), Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively "Defendants" or "Uber") hereby provide these Second Supplemental objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") First Interrogatories, Set One (the "Interrogatories"). Uber reserves the right to supplement or amend these objections and responses as necessary in accordance with the Federal Rules of Civil Procedure and any Local Rules or orders of this Court.

## **GENERAL OBJECTIONS**

The following General Objections apply to each of the Interrogatories whether or not specifically referred to and/or incorporated in each response:

1.    <u>Privilege</u>.  Uber objects to the Interrogatories to the extent they seek documents or information subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information").  Any inadvertent disclosure of Privileged Information by Uber shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

2.    <u>Reservation of Right to Supplement</u>.  These responses and objections are made without prejudice to, and are not a waiver of, Uber's right to amend, correct, or supplement these responses, and are subject to Uber's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist.  Uber provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

3.    <u>No Waiver</u>.  By responding to these Interrogatories, Uber does not concede the relevance of any Interrogatory nor the relevance or admissibility of any information provided in response thereto.  Uber expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, confidentiality, hearsay, or admissibility as evidence for any other purpose.

4.    Uber objects to the Interrogatories to the extent that they seek information, documents, or communications that are already in the possession, custody, or control of Plaintiff, in particular through Uber's prior responses to the FTC's September 5, 2024 Voluntary Access Letter ("VAL"), which upon information and belief have been provided in their entirety to FTC. Uber will provide responsive, non-privileged information, to the extent it exists, that is not duplicative of that already provided to FTC.

## <u>SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>

1.    Uber specifically objects to the Instructions and the Definitions to the extent they purport to impose obligations on Uber that exceed those imposed by the Rules and the Local Rules.  In responding to these Interrogatories, Uber will follow the requirements set forth in the Rules and the Local Rules.

2.    Uber specifically objects to Instruction H as imposing an undue burden on Uber. Uber provided information for the time period beginning October 1, 2021 in response to the VAL, and it is disproportionate to the needs of the case to require Uber to provide information from November 8, 2019—nearly two full years before the launch of the membership program at

issue in FTC's Complaint.  Additionally, Instruction H purports to extend the applicable time period to "the date of full and complete response" to the Interrogatories, an indefinite endpoint that extends far after the filing of the Complaint and is an ever-moving goalpost.  Uber will interpret these Interrogatories as requesting information from October 1, 2021 to April 21, 2025 ("Applicable Time Period").

3.      Uber specifically objects to the definition of "Cancellation Procedure" and "Cancellation Process" as overbroad, vague, and imprecise.  Defining the terms to include "all immediately preceding steps" and "elements that could influence the consumer's behavior during, or understanding of, the process" makes the starting point of a "Cancellation Procedure" or "Cancellation Process" indeterminate, circular, and potentially limitless.[1]

4.      Uber specifically objects to the definition of "Customer Correspondence" as overbroad and seeking irrelevant information to the extent it includes any Uber customers who were not Uber One members.  Uber objects that "Customer Correspondence" is overbroad to the extent it includes publicly available information (for example, reviews on social media and app stores) that is not in the custody of Uber and is equally accessible to FTC.  Further, Uber objects that the phrase "indirectly received from … a customer" is overbroad, vague, and imprecise.

5.      Uber specifically objects to the definition of "Diverted Cancel" as vague.  The phrase "have any reason to believe" lacks any objective, articulable standard for determining

---

[1] Uber does not include specific objections to defined terms that are not used in the substance of FTC's Interrogatory, even if listed as a definition.  Uber expressly reserves the right to further object to FTC's definitions to the extent they are used in subsequent Interrogatories.

what level of information, inference, or supposition is sufficient to trigger an affirmative duty to

identify a person as "intend[ing] to cancel Uber One." Uber further objects that this term is

overbroad to the extent that it would include consumers who "commence a cancellation

procedure" with no intention of cancelling Uber One, but instead for purposes of obtaining a

Save Offer. Further, the definition improperly requires Uber to speculate about the state of mind

of third parties. To the extent an Interrogatory demands that Uber divine the intentions or beliefs

of customers, it calls for information not within Uber's knowledge, is incapable of verification,

and is not reasonably calculated to lead to the discovery of admissible evidence. Because this

definition does not enable Uber to ascertain, without resort to speculation, who must be included

in or excluded from the responsive universe, Uber cannot reasonably provide a complete or

accurate response to Interrogatories using this term.

6.    Uber specifically objects to the definition of "Enrollment" or "Enrollment

Process" as overbroad, vague, and imprecise. By defining the terms as encompassing "all

immediately preceding steps or immediately subsequent steps," the definition refers back to itself

without specifying any determinate starting or ending point, thereby rendering it circular and the

scope limitless. Further, the inclusion of the phrase "any elements that could influence the

consumer's behavior during, or understanding of, the process" compounds the ambiguity by

introducing an undefined, potentially boundless, and similarly circular variable.

7.    Uber specifically objects to the definition of "Nonconsensual Enrollee" and

"Nonconsensual Enrollment" as vague. The phrase "have any reason to believe" lacks any

objective, articulable standard for determining what level of information, inference, or

supposition is sufficient to trigger an affirmative duty to identify a person as having enrolled

"without … knowing or realizing."  Uber further objects that, by requiring evaluation of individuals based on subjective impressions or conjecture, the definition is overbroad and unduly burdensome.  Compliance would necessitate an indefinite, exhaustive review of innumerable records coupled with guesswork as to whether any circumstance—however trivial—could constitute "a reason to believe" enrollment was mistaken.  Further, the definition improperly requires Uber to speculate about the state of mind of third parties.  To the extent an Interrogatory demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence.  Because this definition does not enable Uber to ascertain, without resort to speculation, who must be included in or excluded from the responsive universe, Uber cannot reasonably provide a complete or accurate response to Interrogatories using this term.

8.     Uber specifically objects to the definition of "You" and "Your" as overbroad.  These Interrogatories were propounded to Defendants Uber Technologies, Inc., and Uber USA, LLC, and Defendants can only provide information that is within their own possession, custody, or control.

9.     The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

**<u>INTERROGATORIES</u>**

**INTERROGATORY 1:** Identify Each current or former Uber employee or contractor with information relevant to this action, Including individuals having Any responsibility Relating to the development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments, studies, reviews, or testing of Uber One; Uber One Customer Correspondence; Uber One subscription benefits and savings; and Uber One partnerships or agreements with third party entities.  In Your response, Include the role, title, and department of the individual, and the time period during which the individual was employed by Uber.

**RESPONSE:**

Uber objects to this Interrogatory as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case.  Uber further objects to this Interrogatory as vague and ambiguous through its use of undefined terms, including "subscription benefits and savings."  Uber further objects to this Interrogatory on the basis of overbreadth, relevance and proportionality because it seeks information regarding "Each current or former Uber employee or contractor … having Any responsibility Relating to the development of Uber One…" and additional information, without regard to whether the information is at all relevant and proportional to the specific disclosures and enrollment and cancellation practices challenged in the Complaint.  Uber also objects that this is a compound Interrogatory that has multiple "discrete subparts."  Uber reincorporates its objections to the defined terms, including to "Diverted Cancel" and "Nonconsensual Enrollment" as vague and to

8

Second Supplemental Responses and Objections to
Plaintiff's First Set of Interrogatories
4:25-cv-03477-JST

the terms "Cancellation Process," "Customer Correspondence," and "Enrollment Process" as overbroad, vague and imprecise.

Subject to and without waiving the foregoing specific and general objections, Uber responds that it is willing to meet and confer regarding this Interrogatory so that it can identify employees with relevant information.

**FIRST SUPPLEMENTAL RESPONSE:**

Subject to and without waiving its original specific and general objections, Uber responds that no employees have responsibility for "Diverted Cancel" and "Nonconsensual Enrollment." Uber does not divert customers from cancelling Uber One, nor does it enroll customers in Uber One without their consent. Rather, Uber provides simple mechanisms for customers to cancel and also obtains consent for customers before they enroll in Uber One. Subject to these objections, Uber identifies the following employees as likely to have information relevant to this action. The titles and organizations listed below are the employee's current titles and they may have had different roles unrelated to Uber One during their tenures with Uber:

- Abbey Stauffer, Director of Product Management, Membership Tech

    o Uber employee: 10/27/2021 – present

- Maheen Abbasi, Product Operations Lead, Membership Tech

    o Uber employee: 3/21/2022 – present

- Danielle Sheridan (née Portugal), Senior Director and Head of Global Memberships

    o Uber employee: 2014 – 11/18/2022; 9/11/2023 – present

- Pablo Rodriguez Sanchez, Strategy and Planning Lead, Global Memberships

    o Uber employee 6/28/2021 – present

9

- Alex Wagner, Senior Program Manager for Consumer Experience, CommOps
  - Uber employee 7/9/2018 – present
- Sherry Xie, Senior Manager, Strategic Finance
  - Uber employee 3/21/2021 – present
- Siddhant Narula, Product Manager II, Customer Obsession
  - Uber employee 5/2/2023 – present

**SECOND SUPPLEMENTAL RESPONSE:**

Subject to and without waiving its original specific and general objections, and in addition to its First Supplement Response, Uber identifies the following employees as likely to have information relevant to this action.  The titles and organizations listed below are the employee's current titles and they may have had different roles unrelated to Uber One during their tenures with Uber:

- Swathi Bhumireddy, Senior Manager, Engineering
  - Uber employee: 11/5/2018 – present
- Mallory Usen, Head of Membership Product Marketing
  - Uber employee: 5/28/2024 – present
- Ryan Saunders, Central Operations Lead, Global Membership
  - Uber employee: 10/4/2021 – present
- Inessa Liskovich, Senior Manager, Science, Tech
  - Uber employee: 6/28/2024 – present

SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES
4:25-CV-03477-JST

# Exhibit E



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

November 4, 2025

**Via Email**

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
E: pmezan@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

Re:    *FTC v. Uber Technologies, Inc. and Uber USA, LLC, No. 4:25-cv-03477* – Uber's Proposed Custodians

Counsel:

On behalf of Uber Technologies, Inc., and Uber USA, LLC (collectively, "Uber"), we will collect and review documents from the following custodians in the course of responding to the FTC's Requests for Production. We will produce organization charts with additional information on where these individuals fit within Uber's reporting structure.

| Custodian | Title | Tenure |
|---|---|---|
| Abbey Stauffer | Director, Product Management | 10/27/21 - present |
| Danielle Sheridan | Sr. Director, Global Memberships | 2014-2022; 9/11/23 - present |
| Pablo Rodriguez Sanchez | Strategy & Planning Lead, Global Memberships | 6/28/21 - present |
| Maheen Abbasi | Lead, Product Operations | 3/21/22 - present |
| Alex Wagner | Sr. Program Manager, Consumer Experience | 7/9/18 - present |
| Sherry Xie | Sr. Manager, Strategic Finance | 3/1/21 - present |
| Siddhant Narula | Product Manager II, Customer Obsession and Customer Experience | 5/2/23 - present |

Sidley Austin LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 2


Note that Uber's first production will include organizational charts for Uber's Membership Operations team and Membership Tech team.

A limited number of individuals in Uber's US&C Mobility CX team work on Uber One. This includes Alex Wagner, Senior Program Manager.  Alex Wagner reports to Nathan Brown, the Consumer Experience Lead within the US&C Mobility CX team.  Nathan Brown reports to Caitlyn Chamblee, Head of US&C Mobility CX CommOps. Similarly, only limited individuals on Uber's Customer Obsession team work on Uber One.  Siddhant Narula, a Product Manager does so and he reports to Divya Anand, a manager responsible for Consumer Experience & Help Center Platforms. Divya Anand reports to Thomas Corfmat, a Product Director. Thomas Corfmat reports to Jai Malkani, Head of the Customer Obsession team.

Sincerely,

/s/ *Benjamin M. Mundel*
Benjamin M. Mundel

cc:    Lauren Freeman (lfreeman@sidley.com)
       Drew Langan (dlangan@sidley.com)

# Exhibit F

**Potential Custodians**

12/23/2025

| | | | | |
|---|---|---|---|---|
| 1. | Abbasi, Maheen | 43. | Baron, Alec |
| 2. | Bharucha, Breta | 44. | Bruen, Pat |
| 3. | Kishinchandani, Saloni | 45. | Han, David |
| 4. | Narula, Siddhant | 46. | Hernandez, Cesar |
| 5. | Prehodick, Jesse | 47. | Mandal, Mayank |
| 6. | Rodriguez Sanchez, Pablo | 48. | Merchant, Khalid |
| 7. | Sheridan, Danielle | 49. | Neumann, Charlotte |
| 8. | Stauffer, Abbey | 50. | Saunders, Ryan |
| 9. | Wagner, Alex | 51. | Temares, Madeline |
| 10. | Xie, Sherry | 52. | Achard, Marie-Camille |
| 11. | Aggarwal, Lavi | 53. | Aggarwal, Divya |
| 12. | Arora, Hersh | 54. | Alban, Tali |
| 13. | Benjamin, Larissa | 55. | Ali, Ahmed |
| 14. | Bhumireddy, Swathi | 56. | Anderson, Phil |
| 15. | Chen, Pengyao | 57. | Anderson, Susan |
| 16. | Cheng, Dan | 58. | Asta, Chris |
| 17. | Cheng, Paul | 59. | Bansal, Juhi |
| 18. | Climan, Elie | 60. | Barker, Brandon |
| 19. | Gandhi, Niyati | 61. | Bayo, Chris |
| 20. | Goldstein, Andrew | 62. | Bin, Chuhan |
| 21. | Gulzar, Farrah | 63. | Bruce, Kit |
| 22. | Gupta, Kratika | 64. | Burnham, Rosie |
| 23. | Jeong, Stacey | 65. | Camille, Marie |
| 24. | Joshi, Prachi | 66. | Casbarro, Maryam |
| 25. | Kouta, Arvind | 67. | Castelblanco, David |
| 26. | Li, Leann | 68. | Chai, Nelson |
| 27. | Li, Zhuonan | 69. | Chakraborty, Pooja |
| 28. | Liskovich, Inessa | 70. | Chau, Victor |
| 29. | Liu, Tong | 71. | Chevaleau, Ruffin |
| 30. | Luhadiya, Ravi | 72. | Chow, Aswin |
| 31. | Luo, Leslie | 73. | Chu, April |
| 32. | Magati, Vivek | 74. | Chu, Emmeline |
| 33. | Pai, Rashmi | 75. | Coe, Liv |
| 34. | Pan, Colin | 76. | Colak, Tom |
| 35. | Qu, Theia | 77. | Collins, Ned |
| 36. | Rohan, Arya | 78. | Colys, James |
| 37. | Sotir, David | 79. | Coonce, Brian |
| 38. | Sundaresan, Vishnu | 80. | Crawley, Ian |
| 39. | Tan, Jing Jing | 81. | Cui, Jake "Jack" |
| 40. | Van Oppen, Frederieke | 82. | Daga, Advika |
| 41. | Wang, Sophie | 83. | D'Amico, Taylor Owen |
| 42. | Yu, Gary | 84. | Daphalapurkar, Ameya |

| | | | | |
|---|---|---|---|---|
| 85. | Davidson, Josh | 130. | Katz, Evan |
| 86. | Davis, Martin-Abdul | 131. | Kaushal, Varun |
| 87. | Dawson, Stephanie | 132. | Khan, Sarah |
| 88. | Deng, Dan | 133. | Kharia, Sukrut |
| 89. | Desiderio, Alfredo | 134. | Khosrowshahi, Dara |
| 90. | Devine, Jessica | 135. | Killeen, Sean |
| 91. | dos Santos, Ayrton | 136. | Kim, Julie |
| 92. | Doyle, Robin | 137. | Kimbrough, Shelby |
| 93. | Dunn, Katie | 138. | Klimovich, Hayley |
| 94. | Ennin, Gabriel | 139. | Krawczyk, Tomasz |
| 95. | Errington, Devon | 140. | Krishnamurthy, Nikki |
| 96. | Estrada, Lynda | 141. | Lam, Grant |
| 97. | Evseev, Sergey | 142. | Lawrence, Nike |
| 98. | Fares, Stefany | 143. | Lee, James |
| 99. | Fei Shen, Meng | 144. | Leniger, Jake |
| 100. | Filipe Da Cunha Henriques, Valdo | 145. | Li, Nancy |
| | | 146. | Li, Xiang |
| 101. | Fraind, Salomon | 147. | Lin, Tammy |
| 102. | Fuldner, Gus | 148. | Lock, Erica |
| 103. | Garcia, Jacqueline | 149. | Luch, Georgia |
| 104. | Gomes, Fernanda | 150. | Macdonald, Andrew |
| 105. | Good, Nathália | 151. | Madariaga, Rodrigo |
| 106. | Greenberg, Albert | 152. | Mahendra-Rajah, Prashanth |
| 107. | Gulati, Gurwinder | 153. | Maretti, Vinicius |
| 108. | Gupta, Shraddha | 154. | Mavrogiannis, Michail |
| 109. | Hagin, Maurice | 155. | Medina Bravo, Francisco |
| 110. | Hall, Francisca | 156. | Melikian, Matthew |
| 111. | Hamidy, Eric | 157. | Méndez Ruiz, Andrés |
| 112. | Hart, Marissa | 158. | Miguel Pereira, Manuela |
| 113. | Hatting, Shelley | 159. | Minapara, Sadaf H. |
| 114. | Hazelbaker, Jill | 160. | Moore, Adam |
| 115. | Healy, Angie | 161. | Muller, Justin |
| 116. | Heisler, Gillen | 162. | Mussolini, Marina |
| 117. | Herman, Hildé | 163. | Nandam, Abhi |
| 118. | Hines, Joey | 164. | Naqvi, Farrah |
| 119. | Hiray, Nilesh | 165. | Navarrete, Claudia |
| 120. | Ho, Dexter | 166. | Neppalli Naga, Praveen |
| 121. | Howard, Ryan | 167. | Nigam, Ashish |
| 122. | Hudson, Alice | 168. | Nikiforov, Aleksandr |
| 123. | Hughes, Nicole | 169. | Olson, Matt |
| 124. | Idaewor, Hope | 170. | Ory, Brett |
| 125. | Igarashi, Daiki | 171. | Padrao, Gabriela |
| 126. | Jain, Sundeep | 172. | Pal Singh, Ajesh |
| 127. | Javadi, Roxy | 173. | Pallav, Kumar |
| 128. | Kansal, Sachin | 174. | Parameswaran, Pradeep |
| 129. | Kashriel, Shelli | 175. | Parmar, Alaksh |

2

176. Parr, Dan
177. Pi, Rashmi
178. Price, Grant
179. Pus, Daria
180. Rajanathan, Rakshanaa
181. Rejniak, Olivia
182. Sachdev, Sam
183. Sáchica, Jeisson
184. Saleh, Youssef
185. Salud, Tiffany
186. Salvo, Stella
187. Santos, Eduardo
188. Sausville, Kelsie
189. Savin, Laurence
190. Sawant, Omkar
191. Sax, Josh
192. Schwer, Dan
193. Seabrooke, Andie
194. Sebree, Morgan
195. Sharma, Prateek
196. Sharma, Upasna
197. Simmons, Andrew
198. Souza, Eduardo
199. Stecher, Verena
200. Sue, Andrew
201. Sun, Alice
202. Tancinco, Clarisse
203. Terrein, Michelle
204. Thomas, Callum
205. Thrasher, Jessica

206. Thurston, Spencer
207. Tiwari, Sonali
208. Togias, Aris
209. Toli, Victoria
210. Tran, Eric
211. Tsai, Tiffany
212. Valentine, Beccy
213. Vardi, Matan
214. Vasconcelos, Roxelyn
215. Verma, Awaneesh
216. Vo, Eric
217. Vogg, Maddy
218. Wallace, Erin
219. Wang, Yidong
220. Wei, Chengming
221. Weisman, Whitney
222. Wells, Fay
223. West, Tony
224. Wu, Joyce
225. Wu, Rachel
226. Yang, Kiara
227. Yang, Vivian
228. Yao, Mary
229. Yokoyama, Michelle
230. Yu, Ryan
231. Zaifman, Noa
232. Zhang, Kaimei
233. Zheng, Alicia
234. Zhong, Thomas

3

# Exhibit G

**Potential Custodians[1]**
2/12/2026

1.   Abbasi, Maheen
2.   Bharucha, Breta
3.   Kishinchandani, Saloni
4.   Narula, Siddhant
5.   Prehodick, Jesse
6.   Rodriguez Sanchez, Pablo
7.   Sheridan, Danielle
8.   Stauffer, Abbey
9.   Wagner, Alex
10.  Xie, Sherry
11.  Aggarwal, Lavi
12.  Arora, Hersh
13.  Benjamin, Larissa
14.  Bhumireddy, Swathi
15.  Chen, Pengyao
16.  Cheng, Dan
17.  Cheng, Paul
18.  Climan, Elie
19.  Gandhi, Niyati
20.  Goldstein, Andrew
21.  Gulzar, Farrah
22.  Gupta, Kratika
23.  Jeong, Stacey
24.  Joshi, Prachi
25.  Kouta, Arvind
26.  Li, Leann
27.  Li, Zhuonan
28.  Liskovich, Inessa
29.  Liu, Tong
30.  Luhadiya, Ravi
31.  Luo, Leslie
32.  Magati, Vivek
33.  Pai, Rashmi
34.  Pan, Colin
35.  Qu, Theia
36.  Rohan, Arya
37.  Sotir, David
38.  Sundaresan, Vishnu
39.  Tan, Jing Jing
40.  Van Oppen, Frederieke
41.  Wang, Sophie
42.  Yu, Gary
43.  Baron, Alec
44.  Bruen, Pat
45.  Han, David
46.  Hernandez, Cesar
47.  Mandal, Mayank
48.  Merchant, Khalid
49.  Neumann, Charlotte
50.  Saunders, Ryan
51.  Temares, Madeline
52.  Achard, Marie-Camille
53.  Aggarwal, Divya
54.  Alban, Tali
55.  Ali, Ahmed
56.  Anderson, Phil
57.  Asta, Chris
58.  Bansal, Juhi
59.  Barker, Brandon
60.  Bayo, Chris
61.  Bin, Chuhan
62.  Bruce, Kit
63.  Burnham, Rosie
64.  Camille, Marie
65.  Casbarro, Maryam
66.  Castelblanco, David
67.  Chai, Nelson
68.  Chakraborty, Pooja
69.  Chau, Victor
70.  Chevaleau, Ruffin
71.  Chow, Aswin
72.  Chu, April
73.  Chu, Emmeline
74.  Coe, Liv
75.  Colak, Tom
76.  Collins, Ned
77.  Colys, James
78.  Coonce, Brian

---

[1] Due to significant deficiencies in Uber's productions to date, the FTC recognizes that its proposed search terms may be both under- and over-inclusive in certain respects. The FTC reserves the right to modify its proposals once Uber's production deficiencies are cured.

79. Crawley, Ian
80. Cui, Jake "Jack"
81. Daga, Advika
82. D'Amico, Taylor Owen
83. Daphalapurkar, Ameya
84. Davidson, Josh
85. Davis, Martin-Abdul
86. Deng, Dan
87. Desiderio, Alfredo
88. Devine, Jessica
89. dos Santos, Ayrton
90. Doyle, Robin
91. Dunn, Katie
92. Ennin, Gabriel
93. Errington, Devon
94. Estrada, Lynda
95. Evseev, Sergey
96. Fares, Stefany
97. Fei Shen, Meng
98. Filipe Da Cunha Henriques, Valdo
99. Garcia, Jacqueline
100. Gomes, Fernanda
101. Good, Nathália
102. Greenberg, Albert
103. Gulati, Gurwinder
104. Gupta, Shraddha
105. Hagin, Maurice
106. Hall, Francisca
107. Hart, Marissa
108. Hatting, Shelley
109. Healy, Angie
110. Heisler, Gillen
111. Herman, Hildé
112. Hines, Joey
113. Hiray, Nilesh
114. Ho, Dexter
115. Howard, Ryan
116. Hudson, Alice
117. Hughes, Nicole
118. Idaewor, Hope
119. Igarashi, Daiki
120. Jain, Sundeep
121. Javadi, Roxy
122. Kashriel, Shelli
123. Katz, Evan
124. Kaushal, Varun
125. Khan, Sarah
126. Kharia, Sukrut
127. Killeen, Sean
128. Kim, Julie
129. Kimbrough, Shelby
130. Klimovich, Hayley
131. Krawczyk, Tomasz
132. Lam, Grant
133. Lawrence, Nike
134. Lee, James
135. Leniger, Jake
136. Li, Nancy
137. Li, Xiang
138. Lin, Tammy
139. Lock, Erica
140. Luch, Georgia
141. Madariaga, Rodrigo
142. Maretti, Vinicius
143. Mavrogiannis, Michail
144. Medina Bravo, Francisco
145. Melikian, Matthew
146. Méndez Ruiz, Andrés
147. Miguel Pereira, Manuela
148. Minapara, Sadaf H.
149. Moore, Adam
150. Muller, Justin
151. Mussolini, Marina
152. Nandam, Abhi
153. Naqvi, Farrah
154. Navarrete, Claudia
155. Nigam, Ashish
156. Nikiforov, Aleksandr
157. Olson, Matt
158. Ory, Brett
159. Padrao, Gabriela
160. Pal Singh, Ajesh
161. Pallav, Kumar
162. Parmar, Alaksh
163. Parr, Dan
164. Pi, Rashmi
165. Price, Grant
166. Pus, Daria
167. Rajanathan, Rakshanaa
168. Rejniak, Olivia
169. Sachdev, Sam

170. Sáchica, Jeisson
171. Saleh, Youssef
172. Salud, Tiffany
173. Salvo, Stella
174. Santos, Eduardo
175. Sausville, Kelsie
176. Savin, Laurence
177. Sawant, Omkar
178. Sax, Josh
179. Schwer, Dan
180. Seabrooke, Andie
181. Sebree, Morgan
182. Sharma, Prateek
183. Sharma, Upasna
184. Simmons, Andrew
185. Souza, Eduardo
186. Stecher, Verena
187. Sue, Andrew
188. Sun, Alice
189. Tancinco, Clarisse
190. Terrein, Michelle
191. Thomas, Callum
192. Thrasher, Jessica
193. Thurston, Spencer
194. Tiwari, Sonali

195. Togias, Aris
196. Toli, Victoria
197. Tran, Eric
198. Tsai, Tiffany
199. Valentine, Beccy
200. Vardi, Matan
201. Vasconcelos, Roxelyn
202. Verma, Awaneesh
203. Vo, Eric
204. Vogg, Maddy
205. Wallace, Erin
206. Wang, Yidong
207. Wei, Chengming
208. Weisman, Whitney
209. Wells, Fay
210. Wu, Joyce
211. Wu, Rachel
212. Yang, Kiara
213. Yang, Vivian
214. Yao, Mary
215. Yokoyama, Michelle
216. Yu, Ryan
217. Zaifman, Noa
218. Zheng, Alicia
219. Zhong, Thomas

3

# Exhibit H

## Sidrys, Lydia

| | |
|---|---|
| **From:** | Langan, Drew |
| **Sent:** | Thursday, February 12, 2026 10:47 PM |
| **To:** | Mezan, Paul; Liebner, Stephanie; LRiley@oag.maryland.gov; pziperman@oag.state.md.us; Doty, James; jessica.tubbs@alabamaag.gov; Barton, Lindsay; Dean, Michael |
| **Cc:** | Freeman, Lauren; Mundel, Benjamin; Sidrys, Lydia; marissa.wenzel@wilmerhale.com; David.Gringer@wilmerhale.com; Sonal.Mehta@wilmerhale.com |
| **Subject:** | RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery |

Paul and Stephanie – We will formally respond to your February 10, 2026 letter but wanted to respond to your note first and memorialize all of the topics we discussed on our February 11, 2026 meet and confer. If you want to cover the topics we didn't get to, let us know times to continue our discussion.

Regarding the ESI Protocol, thank you for sending the FTC's proposed revisions. We will review and let you know if this version is acceptable.

Regarding the Relevant Time Period, we generally think the appropriate time period is October 1, 2021 to April 21, 2025. We agreed on our meet and confer, however, that Uber would consider responding to specific document requests with documents from before October 1, 2021 or after April 21, 2025, if the FTC can identify a specific basis for doing so. The FTC indicated that it was open to this approach and will look at this on a request-by-requests basis.

Regarding the relevance of Uber Pass, Uber stated that Uber Pass is not relevant to the Plaintiffs' complaint and the complaint makes no allegations that any conduct related to Uber Pass was unlawful. We explained that if the FTC is seeking information about Uber Pass to prove a violation of the law, it cannot do so based on this complaint. If the FTC is looking for information related to Uber Pass to understand the history of Uber's subscription practices, we can consider that if the FTC articulates a rationale. We would also need a commitment that the FTC is not seeking any relief on the basis of Uber Pass or alleging that Uber Pass violated the law.

Regarding the sources of responsive ESI, Uber stated that it has disclosed its significant communications channels: Gmail, Google Workspace, and Slack. Uber also stated that it has means of identifying data relevant to Uber One in databases where Uber One data is mixed with non-Uber One data, such as financial databases and the customer service database Bliss. FTC did not request any additional information.

Regarding non-custodial data, Uber stated that, while much of what remains to be produced will be addressed through search terms and custodians, it will continue making its non-custodial productions. Uber stated that we still need the ESI protocol in place for these productions because this material includes electronically stored information. If the FTC was willing to not seek ESI for particular requests, we could respond to those without an ESI protocol. The FTC declined.

Regarding search terms and custodians, we explained that we produced a viable list of custodians on November 4, 2025. FTC did not respond until December 23, 2025. We think our list is reasonable and proportionate, particularly in light of the phased approach to discovery in this district. The FTC has refused to engage or negotiate reasonably with us, including with your recent proposals which still have

more than 200 custodians and which do not address our fundamental concerns. Indeed, you stated during the meet and confer that you would not be willing to accept a single one of our search terms or custodians as appropriate. The FTC's refusal to engage in negotiations or accept reasonable proposals has delayed discovery. We reiterate our request that you confirm that the 7 custodians we proposed cover the core discovery needed in this case and are at least a good starting point. We can then produce those documents promptly and the FTC can identify any gaps or follow on requests. In the meantime, we will also work to provide you with positions for the 200+ potential custodians you identified. This is in no way an acknowledgement that the FTC's potential custodians list is a reasonable starting point for custodial discovery.

We propose that we complete our meet and confer on the topics we did not cover so that we can fully respond to your February 10, 2026 letter.

Best,

Drew

**DREW LANGAN**
Managing Associate

**SIDLEY AUSTIN LLP**
+1 202 736 8191
dlangan@sidley.com

---

**From:** Mezan, Paul <pmezan@ftc.gov>
**Sent:** Thursday, February 12, 2026 6:11 PM
**To:** Freeman, Lauren <lfreeman@sidley.com>; Mundel, Benjamin <bmundel@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Langan, Drew <dlangan@sidley.com>; marissa.wenzel@wilmerhale.com; David.Gringer@wilmerhale.com; Sonal.Mehta@wilmerhale.com
**Cc:** Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.state.md.us; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; jessica.tubbs@alabamaag.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>; Doty, James <jdoty@ftc.gov>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery

**EXTERNAL EMAIL - Use caution with links and attachments.**

Counsel,

Based off months of calls and correspondence including our meet-and-confer yesterday, it's clear the parties have several significant and fundamental disagreements regarding the FTC's discovery requests. If there are specific issues Uber believes can be resolved efficiently through an additional meeting, we're available tomorrow.

Attached are plaintiffs' proposed revisions to the ESI agreement as well as revised lists of potential custodians and search terms. Plaintiffs have accepted all of Uber's proposed edits to the ESI agreement but have made minor revisions to the section on hyperlinked documents for better consistency with the cases you cited.

With respect to potential custodians and search terms, the FTC incorporated the limited feedback we received by (i) striking individuals you stated do not possess relevant information from the potential

custodian list and (ii) revising the proposed search terms to comport with character limitations. As stated in our meet-and-confer, the FTC requires that Uber cure its production deficiencies to further narrow its lists of custodians and search terms. The FTC also reserves the right to identify new custodians or search terms that are not currently included in its proposals due to Uber's deficient productions.

Please let us know if the ESI agreement is acceptable to Uber. If Uber intends to respond to the FTC's letter summarizing deficiencies, please do so by Monday (2/16).

Thanks,

Paul


**Paul Mezan**
Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
(202) 758-4177

---

**From:** Freeman, Lauren <lfreeman@sidley.com>
**Sent:** Thursday, February 5, 2026 8:21 PM
**To:** Mezan, Paul <pmezan@ftc.gov>; Benjamin Mundel -Contact <bmundel@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Langan, Drew <dlangan@sidley.com>; marissa.wenzel@wilmerhale.com; David.Gringer@wilmerhale.com; Sonal.Mehta@wilmerhale.com
**Cc:** Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.state.md.us; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; jessica.tubbs@alabamaag.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery


Paul,

We are available at the following time next week to meet and confer.  Please send us your substantive responses at least one day prior to our meet and confer so that we can have a productive conversation.

- Wednesday, February 11:  1:00-2:00 ET

If this time doesn't work, we can send some alternatives.  We'll get back to you soon on the ESI agreement.

Best,
Lauren


**LAUREN C. FREEMAN**

**SIDLEY AUSTIN LLP**

+1 415 772 1253
lfreeman@sidley.com

**From:** Mezan, Paul <pmezan@ftc.gov>
**Sent:** Thursday, February 5, 2026 5:12 PM
**To:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Langan, Drew <dlangan@sidley.com>; marissa.wenzel@wilmerhale.com; David.Gringer@wilmerhale.com; Sonal.Mehta@wilmerhale.com
**Cc:** Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.state.md.us; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabaaag.gov>; jessica.tubbs@alabamaag.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery

Hi Lauren,

We're following up on the ESI agreement and Uber's availability for a meet-and-confer on Monday (2/9) or Tuesday (2/10). Can you please let us know your availability and the status of the ESI agreement?

Thanks,

Paul


**Paul Mezan**
Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
(202) 758-4177


**From:** Mezan, Paul
**Sent:** Wednesday, February 4, 2026 3:52 PM
**To:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; lydia.sidrys@sidley.com; Langan, Drew <dlangan@sidley.com>; marissa.wenzel@wilmerhale.com; David.Gringer@wilmerhale.com; Sonal.Mehta@wilmerhale.com
**Cc:** Doty, James <jdoty@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.state.md.us; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabaaag.gov>; jessica.tubbs@alabamaag.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery

Lauren,

We disagree with your characterization of the status of discovery and don't believe another meet-and-confer is required under the Court's Discovery Standing Order (since we've already conducted several addressing these issues). That said, we are willing to meet again and are available on Monday or Tuesday. Can you please propose some times that work for your team on those dates? We will provide a more substantive response to the points you raised in advance of the meeting.

Thanks,

Paul


**Paul Mezan**
Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
(202) 758-4177

---

**From:** Freeman, Lauren <lfreeman@sidley.com>
**Sent:** Tuesday, February 3, 2026 4:49 PM
**To:** Mezan, Paul <pmezan@ftc.gov>; Benjamin Mundel -Contact <bmundel@sidley.com>; Langan, Drew <dlangan@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; david.gringer@wilmerhale.com; sonal.mehta@wilmerhale.com; marissa.wenzel@wilmerhale.com
**Cc:** Doty, James <jdoty@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.maryland.gov; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Jessica.Tubbs@AlabamaAG.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery

Paul,

We think a telephonic status conference with Judge Hixson is premature on the issues you outline below. Since we last met and conferred about these issues on January 8, 2026, Uber has made a production, supplemented its response to the FTC's interrogatory, and provided additional information the FTC said it needed as a prerequisite to negotiate custodians. Plaintiffs have not told us what more you are looking for since this time. Uber also sent a letter on January 7, 2026 regarding its responses to the FTC's discovery requests, and the FTC has not yet formally responded to that correspondence. Furthermore, several months ago Uber proposed search terms and custodians and, in the absence of meaningful engagement by the FTC and in an effort to move discovery forward, has been working toward preparing its first production of custodial material based on its reasonable proposals. However, Uber cannot make custodial productions until a final ESI Protocol is in place, and last week Plaintiff States proposed significant edits to the ESI Protocol that the original parties had negotiated over several months.

Once Plaintiffs review and respond to the materials Uber provided, please let us know when you are available for a lead counsel meet and confer—as Judge Hixson's procedures require—on these issues before we tee anything up for the court.

As to the specific items you outlined, none of these are ripe to take to Magistrate Judge Hixson.

(a)  Regarding your item (a), Uber proposed seven custodians on November 4, 2025 and 129 search terms on November 19, 2025. Uber proposed custodians in the roles and functions that are most relevant to this case, as demonstrated by Uber's response to the FTC's first interrogatory and the information provided in response to the FTC's second and third RFPs. As we've discussed, if you think that there is a role or function that is not represented, we would be happy to discuss that specific concern with you. But you have not come to us with a counter-proposal beyond the 234 "potential custodians" you suggested on December 23, 2025. Since we last conferred about these issues on January 8, 2026, Uber has supplemented its response to the FTC's first interrogatory and provided even more information about the reporting structures of its proposed custodians. Plaintiffs have not identified any issues since these supplemental responses nor have Plaintiffs made a proposal regarding custodians.

Similarly, on search terms, we think the more productive path would be for the FTC to make any counter-proposal based on the terms Uber has already proposed. So far, the FTC has made one proposal of facially overbroad search terms on December 23, 2025, many of which contained too many characters to be run as a single search. At this stage, it is premature to meet with Judge Hixson on these issues.

(b)  On your item (b), it is unclear to us exactly what information the FTC feels like it is missing. As Plaintiffs are well aware from the FTC's investigation and the parties' negotiations on the ESI protocol, Uber uses Google Workspace for email communications and document storage, and Slack for instant messaging. Moreover, as we mentioned in our January 7 correspondence, Uber's customer communications are stored in a database called Bliss. If you have specific questions about repositories, please send them to us so we can try to get you the information you are seeking. There is nothing in dispute such that this issue should be taken to the court.

(c)  On your item (c), we produced additional non-custodial material on January 26, 2026 and continue to prepare additional productions of non-custodial material. Uber is working expeditiously to produce non-custodial materials. Many of the FTC's sweeping requests are highly detailed, contain multiple sub-parts, and/or call for the production of a large amount of data. Again, if you have specific concerns, please send them to us so we can address them.

Finally, regarding Uber's discovery requests, we assume that the FTC is also preparing additional productions of its non-custodial material and will be proposing its own terms and custodians in short order?

Thanks,
Lauren

*********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*********************************************************************************************

**From:** Mezan, Paul <pmezan@ftc.gov>
**Sent:** Thursday, January 29, 2026 12:24 PM
**To:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>;

Langan, Drew <dlangan@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; david.gringer@wilmerhale.com; sonal.mehta@wilmerhale.com; marissa.wenzel@wilmerhale.com
**Cc:** Doty, James <jdoty@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; pziperman@oag.maryland.gov; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Jessica.Tubbs@AlabamaAG.gov; Barton, Lindsay <lindsay.barton@alabamaag.gov>
**Subject:** FTC et al. v. Uber Technologies, Inc. et al., 4:25-cv-3477 (N.D. Cal.): Discovery

Ben and team,

We would like to schedule a telephonic conference with Judge Hixson to discuss the FTC's discovery requests. We think it would be helpful to receive his initial guidance on Uber's failure to (a) provide information and materials necessary to negotiate search terms and custodians, (b) identify the repositories, databases, and communication channels that contain responsive information and materials, and (c) produce documents responsive to requests that do not require custodial searches. We can also address general issues that Uber might have with the FTC's production.

Can you please let us know if you're amenable to that?

Thanks,

Paul

**Paul Mezan**
Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC  20580
(202) 758-4177

# Exhibit I



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

+1 202 736 8157
BMUNDEL@SIDLEY.COM

AMERICA • ASIA PACIFIC • EUROPE

February 19, 2026

**<u>Via Email</u>**

Paul Mezan, Esq.
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
pmezan@ftc.gov

RE:     *<u>FTC et al. v. Uber Technologies, Inc. et al., No. 4:25-cv-03477</u>*

Dear Counsel:

We write in response to your letter dated February 10, 2026, our meet-and-confer conducted on February 11, 2026, and the parties' email correspondence. We first address Uber's discovery requests to the FTC, and we then address the FTC's discovery requests to Uber.

## I.     Uber's Discovery Requests to the FTC

Below Uber addresses its requests for production served on the FTC and then its interrogatories served on the FTC.

- **Requests for Production**

    - The FTC asked that Uber identify its concerns with the FTC's productions to date. Uber understands that the FTC has produced documents responsive to RFPs 1, 3, 4, 5, 6, 7, 13, 15, 16, 17, 18, and 19. Please confirm whether the FTC considers its responses to these RFPs substantially complete. Uber will then be able to identify specific deficiencies.

    - For RFPs 4 and 5, please state the basis upon which you seek to withhold responsive documents based on privilege.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

- o Please also clarify whether the FTC is planning to produce consumer complaints relating to Lyft, DoorDash, Grubhub, and Instacart from its Consumer Sentinel database, as requested by RFP 7. These materials are relevant, inter alia, as benchmarking the volume of customer complaints. If the FTC does not intend to introduce consumer complaints about Uber at trial, please let us know.

- **Interrogatories**: Further, the FTC has not supplemented any of its interrogatory responses. As described in our January 7, 2026 letter, these are also deficient. Without waiver of its rights to identify any other deficiencies, Uber requests that the FTC supplement its responses to the following Interrogatories by February 24, 2026.

  - o Interrogatory 1 seeks the factual basis for the FTC's investigation. You identify two bases: consumer complaints and public information. Please supplement your response to identify with specificity, by Bates number, which complaints and documents formed the factual basis that caused the FTC to open the investigation.

  - o Interrogatory 2 seeks the identity of non-parties with whom the FTC has communicated. Please supplement your response to identify the dates of each communication, the persons involved, the medium, and the subject matter.

  - o Interrogatory 3 seeks the factual basis for the allegations in the FTC's complaint. You identify information from Consumer Sentinel, as well as material produced during the investigation. Please supplement your response to identify with specificity, by Bates number, to which complaints you are referring.

  - o Interrogatory 16 asks the FTC to identify the terms of the injunction it is seeking. Uber reiterates its request that the FTC provide a complete, substantive response to this Interrogatory.

## II.     The FTC's Discovery Requests To Uber

Below we respond to the FTC's questions and assertions relating to its discovery requests served on Uber. This letter incorporates by reference the objections we made in responding to those requests and does not repeat them all here. This letter should not be interpreted as a waiver of any objection previously stated.

To begin, the FTC's characterization of discovery overlooks the more than one thousand pages of documents that Uber produced to the FTC during its investigation, which are also responsive to the FTC's discovery requests here. There was no reason for <u>any</u> further discovery, let alone the extremely broad requests you served in the litigation. Furthermore, the FTC's letter ignores its delays and unreasonable positions, as described further below.

# SIDLEY

Page 3

Before addressing the specific discovery requests, we address the Applicable Time Period, Uber Pass, and search terms and custodians.

- **Applicable Time Period**. Six months ago, Uber stated in its August 21, 2025 responses and objections to the FTC's requests for production that it would consider the Applicable Time Period to be October 1, 2021 to April 21, 2025, and Uber stands by that position. Requiring Uber to search for and produce documents responsive to each request from nearly two years before the launch of Uber One (November 17, 2021) is not reasonable or proportionate to the needs of the case. By contrast, the start date Uber used for its productions in response to the Voluntary Access Letter (October 1, 2021) is reasonable because it includes a sensible ramp-up period before the launch of Uber One. It is also not reasonable or proportionate to enlarge the Applicable Time Period nearly eight months to encompass the time between the filing of the Complaint and the First Amended Complaint ("FAC") when neither complaint alleges illegal conduct that took place exclusively or primarily within that time period. As we discussed in our February 11, 2026 meet-and-confer, Uber will consider responding to specific document requests with documents from before October 1, 2021 or after April 21, 2025, if the FTC can identify a specific basis for doing so for that request. To date, Uber has received no particularized justification for any request.

- **Uber Pass**. Uber Pass is not relevant to the FAC and the FAC makes no allegations that any conduct related to Uber Pass was unlawful. The FTC had every opportunity, during its pre-complaint investigation, to develop facts concerning Uber Pass; that investigation yielded a complaint with no allegation that Uber Pass was unlawful. Thus, as Uber explained during the February 11, 2026 meet-and-confer, if the FTC is seeking information about Uber Pass to prove a violation of the law, it cannot do so based on the FAC. If the FTC is looking for information related to Uber Pass to understand the history of Uber's subscription practices, Uber would consider providing it if the FTC articulates a rationale within the bounds of specific requests. Because the investigatory phase is over and the FTC is now bound by the allegations it has pled, Uber would require a commitment that the FTC is not seeking—and will not seek—any relief on the basis of Uber Pass or alleging that Uber Pass violated the law before it considered producing any documents.

- **Search Terms and Custodians**. Uber produced a viable list of custodians on November 4, 2025. The FTC did not respond until December 23, 2025. Uber's list is reasonable and proportionate, particularly given the phased approach to discovery in the Northern District of California. The FTC has refused to engage or negotiate reasonably with Uber, insisting on more than 200 custodians and not addressing our fundamental concerns with that number. Uber has proposed, on multiple occasions, that the FTC use Uber's search terms and custodians, which Uber sent in November 2025, as a starting point for its counter-proposals. At the very least, Uber has proposed that the FTC point to specific

# SIDLEY

Page 4

missing pieces from Uber's terms and custodians proposals. The FTC has refused both of these reasonable proposals. Indeed, the FTC stated during the February 11, 2026 meet-and-confer that it would not be willing to accept a single one of Uber's search terms or custodians as appropriate for discovery. The FTC's refusal to engage in negotiations or accept reasonable proposals has delayed discovery by at least three months. Uber reiterates its request that the FTC confirm that Uber's seven-custodian proposal covers the core discovery needed in this case or is at least a good starting point. Uber can then produce those documents promptly, and the FTC can identify any gaps or follow-on requests. If the FTC does not agree to this proposal, the FTC needs to engage with a reasonable counterproposal that identifies a realistic number of search terms and custodians.

Uber responds below regarding the FTC's specific requests.

- **Requests Pending Agreement on Search Terms and Custodians**

    - **RFPs 4, 6, 12, 13, 15, and 20**: Both parties agree that these requests require an agreement on search terms and custodians. The FTC has asked Uber to produce documents responsive to these requests, but Uber cannot do that until the FTC makes a reasonable counter-offer to Uber's proposed terms and custodians or accepts Uber's proposal.

- **Requests Where Uber Has Completed Its Collection and Review of Documents**

    - **RFP 2**: After conducting a reasonable search, Uber has not located a document that shows where its relevant teams are situated in relation to each other within Uber's corporate structure. Uber produced organizational charts on November 21, 2025, that show Uber's corporate structure (UBER-FTCU1-00000001) and the organizational makeup of the key Uber One teams—the Global Membership (UBER-FTCU1-00000010) and Membership Tech (UBER-FTCU1-00000011) teams.

    - **RFP 3**: Uber's production on November 21, 2025, provided much of the requested information in response to RFP 3. For example, the Global Membership organizational chart shows sub-functions including Central Operations, Core Portfolio & Strategy, Loyalty, and Cross Platform. Also, the Membership Tech organizational chart contains organizational charts for the Production Operations, Product, Engineering, Data Science, Design, and UX teams. Together, these documents show a majority of the sub-functions that the FTC claims are missing. Separately, Uber notes that its proposed custodians are employed by Uber Technologies, Inc.

# SIDLEY

Page 5

- o **RFP 7**: Uber stated on January 7, 2026, that it would conduct a reasonable search for documents sent to Uber's Board of Directors or minutes of Uber's Board of Directors meetings that discuss Uber One enrollment processes, Uber One cancellation processes, or the advertisements at issue in the Complaint. Following document collection and review, Uber has not identified any responsive, non-privileged documents. Uber will provide a privilege log upon substantial completion of its document productions.

- o **RFP 30**: Uber is not currently aware of any documents responsive to the relevant portions of this request, as defined by Uber's January 7, 2026 correspondence, because no consumers are enrolled in Uber One as a result of any partnership or agreement without providing affirmative consent to Uber.

- **Requests Where Uber Is Collecting and Reviewing Documents and Data to Continue its Rolling Productions**

  - o **Interrogatory 1**: Uber will provide the FTC with titles and tenures for the 219 proposed custodians that the FTC included in its February 12, 2026 email.

  - o **RFP 8**: Uber will produce additional responsive documents to this request as part of its rolling productions, but Uber will not provide flows from foreign jurisdictions because they are not relevant to this matter.

  - o **RFP 11**: Uber will produce additional responsive documents to this request as part of its rolling productions. Uber has not yet withheld any materials responsive to this request on the basis of privilege.

  - o **RFPs 14, 16, 21, 22, 23, 24, 29, 31, 32, 33, and 34**: Uber will produce documents and/or data responsive to the relevant portions of these requests as part of its rolling productions.

  - o **RFP 19**: Uber will provide a list of potentially relevant issue codes, per RFP 25. Uber's Bliss database includes materials from its Executive Community Relations team.

  - o **RFPs 25 and 26**: Uber will provide a list of potentially relevant issue codes associated with Uber One.

  - o **RFPs 27 and 28**: Uber will produce documents responsive to RFP 27 as part of its rolling productions. As previously discussed, the parties will then agree to a reasonable and proportionate response to RFP 28.

# SIDLEY

Page 6

- **RFP 35**: Uber does not collect or maintain user residency data, but Uber can provide data that it uses to designate a user's location, which is generally the location where the user enrolled in Uber One. Uber is continuing its reasonable and proportionate search for data in response to this request, which calls for the production of hundreds of billions of data points. Uber agrees to explain its basis for not producing data in response to any sub-part of this request once its search is complete.

- **RFPs 36 and 37**: Uber is continuing its reasonable and proportionate search for data in response to these RFPs, which call for the production of hundreds of millions, if not billions, of data points. Uber agrees to explain its basis for not producing data in response to any sub-part of these requests once its search is complete.

- **Requests Where Uber Stands on Its Objections**

  - **RFP 5**: Uber stands on its objections and does not intend to produce performance reviews because they are not relevant to the allegations in this case. Although the FTC claims that it is willing to limit this request, the FTC has failed to do so in any productive respect because the FTC has refused to narrow its list of relevant individuals to less than 219 "potential custodians." If the FTC identifies a limited number of individuals for which it would like Uber to consider whether it will produce performance reviews, and articulates a reasonable basis why these documents are relevant, Uber will meet and confer with the FTC to discuss the details of the proposal and its justifications. But Uber maintains its position that performance reviews, as a general matter, are not relevant to the FTC's claims in this litigation.

  - **RFP 17**: Uber's position has not changed since its January 7, 2026 letter. Uber will not produce documents related to private lawsuits regarding Uber One.

  - **RFP 18**: Uber explained in its January 7, 2026 letter that it would be willing to respond to this request if the FTC identifies the documents that it seeks beyond communications that would clearly be privileged. The FTC has not addressed Uber's pending question. As a result, Uber continues to stand on its objections.

# SIDLEY

Page 7

Sincerely,

/s/ Benjamin M. Mundel
Benjamin M. Mundel
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

cc:     lfreeman@sidley.com
        dlangan@sidley.com
        lydia.sidrys@sidley.com
        david.gringer@wilmerhale.com
        sonal.mehta@wilmerhale.com
        marissa.wenzel@wilmerhale.com
        jdoty@ftc.gov
        sliebner@ftc.gov
        pziperman@oag.maryland.gov
        lriley@oag.maryland.gov
        michael.dean@alabamaag.gov
        jessica.tubbs@alabamaag.gov
        lindsay.barton@alabamaag.gov

# Exhibit J



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

January 7, 2026

<u>**Via Email**</u>

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
E: [pmezan@ftc.gov](mailto:pmezan@ftc.gov)

   **Re:**  <u>*FTC v. Uber Technologies, Inc. and Uber USA, LLC*, No. 4:25-cv-03477 –</u>
<u>Discovery</u>

Dear Counsel:

We write to address a number of outstanding discovery items. First, we address Uber's discovery requests to the FTC. Second, we respond to the FTC's questions about the discovery it served on Uber and address the items raised in your December 23, 2025 email about our discovery responses.

## I.  Uber's Discovery Requests To the FTC

We have serious concerns about the FTC's failure to respond to Uber's discovery requests.

On July 11, 2025, we served 19 requests for production and 17 interrogatories on the FTC. To date, the FTC has not produced a single responsive document. Nor has the FTC meaningfully or substantively responded to the interrogatories. And the FTC has denied our repeated requests that it identify potential custodians and search terms to use to identify responsive materials.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 2

We summarize some of the key deficiencies below.

- RFP # 1 seeks documents identified in your initial disclosures. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 3 seeks all non-privileged documents from your investigative file. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22 and that it will log all withheld documents.

- RFP # 4 seeks communications the FTC had with third parties relating to Uber, and RFP # 5 seeks documents produced by third parties. The FTC has not produced any documents responsive to either requests to date. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 6 seeks all transcripts of testimony provided by third parties. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22, or indicate that the FTC has not taken any testimony.

- RFP # 7 seeks all consumer complaints, comments, or communication regarding Uber, Lyft, DoorDash, Grubhub, or Instacart. We understand this material would be held in the Consumer Sentinel database. Consumer Sentinel data has been produced in many cases, including cases we have worked on together before. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 12 seeks surveys, copy tests, studies, or other testing that the FTC has done regarding Uber or this case. Please confirm whether there are any responsive documents and if any documents are being withheld on the privilege grounds. Please also produce non-privileged responsive documents by January 22.

The FTC has also refused to produce documents in response to RFP #s 16-19. We will draft our portion of the joint discovery letter for this dispute and provide it to you.

As to the FTC's responses to Uber's interrogatories, those too are deficient.

- Interrogatory # 1 seeks the factual basis for the FTC's investigation. You identify two bases: consumer complaints and public information. By January 22, please produce and identify the consumer complaints and also specifically identify the public information that is responsive to this Interrogatory.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 3

- Interrogatory # 2 seeks the identity of third parties with whom you have communicated. You state that you will produce communications with consumers and you note that you gave a nonpublic briefing on the investigation to staff of the House Judiciary Committee. Please confirm that you will produce all communications with consumers by January 22 as well as the materials used to brief the House Judiciary Committee and also confirm that the FTC has not had any other communication with third parties about the investigation or case. If the FTC has had such additional communication, please identify that communication.

- Interrogatory # 3 seeks the factual basis for the allegations in the FTC's complaint. You identify information from Consumer Sentinel as well as material produced during the investigation. Please produce that information by January 22 and confirm that there are no additional and undisclosed factual bases for the allegations in the FTC's complaint.

- Interrogatory # 8 asks the FTC to identify all Uber customers who were allegedly harmed. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 9 asks the FTC to identify all Uber customers who were unaware of the material terms of the Uber One membership at the time of enrollment. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 10 asks the FTC to identify all Uber customers that were not able to cancel Uber One and those that were not able to simply cancel Uber One. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 15 asks the FTC to identify all Uber consumers that were deceived or misled by Uber advertising. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 4

- Interrogatory # 16 asks the FTC to identify the terms of the injunction that it is seeking. Please confirm that you will provide a complete, substantive response to this Interrogatory by January 22.

- Interrogatory # 17 asks the FTC to identify and describe the monetary relief it is seeking. You object that this interrogatory is premature. Please confirm that you will provide a complete, substantive response to this Interrogatory by April 3.

## II.     The FTC's Discovery Requests To Uber

Below we provide a status update on each of the FTC's discovery requests served on Uber. This letter incorporates the objections we made in responding to those requests by reference and does not repeat them all here. This letter should not be interpreted as a waiver of any objection previously stated.

Before going through each request, we respond to your December 23, 2025 search terms and potential custodians lists. These lists are overbroad and unreasonable. With respect to the FTC's "potential custodians," you characterize this as a list of "approximately 200 individuals whose names or emails appear in Uber's extremely limited pre-complaint production and who clearly possess relevant information." However, this appears to be a list of nearly every name of an Uber employee that the FTC could find in the documents Uber produced during the investigation. The FTC has made no effort to target its potential custodians toward those individuals most likely to have relevant information. Thus, the FTC's list includes multiple people who have no policymaking responsibilities with respect to Uber One, like Salomon Fraind (Head of Groceries and Retail Customer Experience) and Stephanie Dawson (Sr Program Leader, AV Delivery). Similarly, the FTC's list includes employees with roles unrelated to Uber One in the United States, such as Eric Hamidy (Director, United States and Canada Crash Claims & Support) and Kaimei Zhang (Senior Operations Manager, Rider, EMEA). The FTC also lists a number of senior Uber executives with no nexus to its complaint, such as Chief People Officer Nikki Krishnamurthy.

By contrast, we have provided a list of seven custodians all of whom are intimately involved in Uber One. Through searching their files, we are getting you the key communications about Uber One, including correspondence that these custodians had with other employees who are not custodians. If you think there are any holes or gaps in our proposal, we are happy to discuss that with you. But the 200+ individuals you listed are not necessary custodians for this case and are far greater than the number of custodians permitted in other similar cases. *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (rejecting request for 33 custodians as "not proportional to the needs of [the] case" where requesting party lacked

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 5

factual basis tying proposed custodians to conduct at issue); see also *Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information* (N.D. Cal.) (recommending that parties phase discovery to start with "[c]ustodians (by name or role) most likely to have discoverable information").

The FTC's search term proposal is equally overbroad. While Defendants' proposed 129 unique, reasonably tailored search terms, the FTC proposes a set of incredibly broad terms, including many that are not connected to the case. For example, in response to RFP 4, the FTC's proposal would mean that any document with the words "goal" and "growth" would need to be reviewed, sweeping in companywide growth documents that have nothing to do with Uber One or the issues in the complaint. With respect to RFP 12, the FTC's proposal includes the words "promotion" and "join." This would include Uber promotions that have nothing to do with Uber One and documents about joining meetings that have nothing to do with Uber One. With respect to RFP 14, any document with the words "payment" and "process" would need to be reviewed. This term is thus likely to sweep in any documents that talk about processing payments for any of Uber's services. With respect to RFP 15, any documents with the words "think" and "customer" or "think" and "consumer" would need to be reviewed, again sweeping in documents relating to any of Uber's offerings. Defendants could list countless such examples of unreasonable and overbroad terms. Moreover, the FTC's terms are impracticable because more than half of the proposed search term strings are too long for our processing tool and would need to be split into multiple terms before they could even be run.

Again, by contrast, our search term list is reasonable and proportionate. If you think there are missing words or concepts from the terms we provided, let us know and we are happy to discuss.

- **RFP 1:**

  - Text of RFP 1: For Uber USA, LLC, Documents sufficient to show the following: (a) its full legal name and All other names under which it has done business; (b) its mailing address, street address, and telephone number of its headquarters; (c) its date and place of incorporation; (d) the names and addresses of All parent, subsidiary, and affiliate companies, and Each person who is or has been an officer of Uber USA, LLC; (e) All websites and mobile applications operated by or on behalf of Uber USA, LLC; (f) All Products offered by or on behalf of Uber USA, LLC; and (g) its relationship to Uber One and Uber Technologies, Inc., Including Any transfers of money between it and Uber Technologies, Inc.

  - Defendants' Status Update: On November 21, 2025, Defendants produced documents responsive to this request, including a corporate organization chart

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 6

(UBER-FTCU1-00000001) and two corporate formation documents. (UBER-FTCU1-00000002 - UBER-FTCU1-00000009). The corporation formation documents have the full legal name and address for Uber USA, LLC. Uber Technologies, Inc. is the 100% owner of Uber USA, LLC. Uber One is offered by Uber USA, LLC, as stated in the Uber One terms. Uber USA, LLC does not own or operate any websites or mobile applications.

- **RFP 2:**

  o <u>Text of RFP 2:</u> Documents, such as organizational charts, sufficient to show the organizational structure of Uber Technologies, Inc. and Uber USA, LLC, Including the Uber One, Uber Support, and Uber "customer obsession" teams.

  o <u>Defendants' Status Update:</u> On November 21, 2025, Defendants produced organizational charts for the teams that are responsible for Uber One, including the Membership and Membership Technology teams. (UBER-FTCU1-00000010 - UBER-FTCU1-00000011). Defendants also identified responsive information in their November 4, 2025 letter regarding custodians. Please let us know if there are other groups where you would like organizational charts and we are happy to look for them, as long as those teams have a reasonable relationship to the issues in this case.

- **RFP 3:**

  o <u>Text of RFP 3:</u> Documents sufficient to identify (a) Any team or group that worked on Any issue Relating to Uber One (Including the development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments, reviews, studies, surveys, or testing of Uber One; Uber One Customer Correspondence; Uber One customer retention; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities); (b) the individuals on those teams; (c) the individuals supervising those teams; (d) the dates those individuals worked on or supervised those teams; and (e) whether those individuals are or were employed by Uber Technologies, Inc., Uber USA, LLC, or both.

  o <u>Defendants' Status Update:</u> Defendants have produced or provided in writing information relating to the teams responsible for Uber One and the issues in the complaint, including the Membership, Membership Technology, CommOps, Customer Obsession, and Strategic Finance teams.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 7

- **RFPs 4 and 5:**

  - <u>Text of RFP 4:</u> All Documents Relating to (a) goals or targets set for teams or groups working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3, and (b) metrics by which those teams' performance was evaluated.

  - <u>Text of RFP 5:</u> Performance reviews for All members of teams who worked on Any issue Relating to Uber One, Including individuals identified in Your response to RFP 3.

  - <u>Defendants' Status Update:</u> Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the proposed custodians and search terms we have offered are reasonable and proportionate. Defendants will not produce any performance reviews.

- **RFP 6:**

  - <u>Text of RFP 6:</u> All operational plans, business reviews, technical reviews, product requirements documents, and reports prepared by or for Any team or group working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3.

  - <u>Defendants' Status Update:</u> Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the proposed custodians and search terms we have offered are reasonable and proportionate.

- **RFP 7:**

  - <u>Text of RFP 7:</u> All presentations to, and Documents sent to, Uber's Board of Directors, Any drafts thereof, and the minutes of Any meeting of Uber's Board, Relating to Uber One or Uber Pass.

  - <u>Defendants' Status Update:</u> Defendants will conduct a reasonable search for documents sent to Uber's Board of Directors or minutes of Uber's Board of Directors meetings that discuss Uber One enrollment processes, Uber One cancellation processes, or the advertisements at issue in the Complaint.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 8

- **RFPs 8, 9, and 10:**

  - <u>Text of RFP 8:</u> Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Enrollment Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Enrollment Process, Including Any hyperlinked Documents; (b) Each disclosure Relating to the terms of Uber One that may appear in the Enrollment Process; (c) Each claim relating to Uber One subscription benefits or savings that may appear in the Enrollment Process; (d) whether the Enrollment Process was only available to certain cohorts of consumers; (e) the timeframe during which Each Enrollment Process was available; and (f) Any changes, whether enacted or only considered, to the Enrollment Process or elements of the Enrollment Process referenced in subparts (a) through (d).

  - <u>Text of RFP 9:</u> Documents (such as screenshots or video recordings) sufficient to show how You inform consumers that (a) they are or have enrolled in Uber One (free trial or otherwise); (b) they will be charged an Uber One subscription fee; (c) they have cancelled their Uber One subscription, turned off the auto-renewal feature, paused their subscription, or accepted a discounted subscription; (d) if they have paused their subscription or accepted a discounted subscription, the date on which they will once again be charged the full price for an Uber One subscription; and (e) Any changes, whether enacted or only considered, to subparts (a) through (d).

  - <u>Text of RFP 10:</u> Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Cancellation Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Cancellation Process, Including Any hyperlinked Documents; (b) Each potential page, step, or action that may appear in the Cancellation Process that does not progress a consumer toward or result in cancellation; (c) Each claim Relating to Uber One or Uber Pass subscription benefits or savings that may appear in the Cancellation Process; (d) Each potential retention effort that may appear in the Cancellation Process; (e) whether the Cancellation Process was only available to certain cohorts of consumers; (f) the timeframe during which Each Cancellation Process was available; and (g) Any changes, whether enacted or only considered, to the Cancellation Process or elements of the Cancellation Process referenced in subparts (a) through (e).

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 9

- o <u>Defendants' Status Update:</u> Defendants produced Uber One's current and prior terms and conditions, which are or were used in the enrollment flows. Defendants will produce screenshots of all Uber One US enrollment and cancellation flows and notification procedures during the relevant time period. Defendants will also produce video recordings of enrollment and cancellation flows that are available. Defendants will not produce contemplated changes to the flows or notifications procedures that were not implemented. Defendants also will not produce any material from foreign jurisdictions as such material is overbroad, irrelevant, and disproportionate to the needs of the case.

- **RFP 11:**

  - o <u>Text of RFP 11:</u> All video recordings, Including compilations of video recordings, of consumers or individuals interacting with the Uber One Enrollment or Cancellation Processes.

  - o <u>Defendants' Status Update:</u> You asked whether a repository of video recordings of consumers or individuals interacting with the Uber One enrollment or cancellation processes exists. Defendants respond that no such repository exists. Defendants will produce video recordings of Uber One enrollment and cancellation flows that it identifies through a reasonable search.

- **RFPs 12 and 13:**

  - o <u>Text of RFP 12:</u> All Documents Relating to Uber One or Uber Pass Enrollment, Including (a) All Documents Relating to the development of Enrollment Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Enrollment; (c) All Documents Relating to disclosures that You made or considered making during Enrollment; (d) All Documents Relating to Nonconsensual Enrollment; (e) All Documents Relating to Any claims regarding subscription benefits or savings that You made or considered making during Enrollment; and (f) All Documents Relating to free trials, enrollment incentives, or promotions.

  - o <u>Text of RFP 13:</u> All Documents Relating to Uber One or Uber Pass Cancellation Processes, Including (a) All Documents Relating to the development of Cancellation Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Cancellation Processes, Including changes to how and where consumers may access Cancellation Processes, the pages or steps that consumers may encounter

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 10

during Cancellation Processes, and the tactics used by You to retain customers during Cancellation Processes; (c) All Documents Relating to consumers' difficulty with cancelling subscriptions or free trials; (d) All Documents Relating to Diverted Cancels, Including consumers' abandonment of Cancellation Processes; (e) All Documents Relating to Any claims regarding subscription benefits or savings that may appear during Cancellation Processes; and (e) All Documents analyzing or Relating to the timing or stage at which abandonment occurs, the reason(s) for abandonment, and save rates.

- o **Defendants' Status Update:** Subject to the objections made previously, Defendants have proposed a custodial search to respond to RFP #s 12 and 13. Defendants believe that this proposal is reasonable and proportionate. If there are custodians or terms that you believe are missing, we welcome a meet and confer on that topic.

- **RFP 14:**

   - o **Text of RFP 14:** All Documents Relating to Your polices, practices, or procedures for Uber One, Including (a) how You determine when consumers enrolled in Uber One will be charged or billed for their subscriptions; (b) how You calculate savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes; (c) the Uber One terms of service; (d) how You address or dispute chargebacks; (e) the issuance of refunds; (f) the terms of free trials, enrollment incentives, or promotions; (g) how You determine which fees, if Any, will be charged to consumers who are subscribed in Uber One; and (h) Any changes, whether enacted or only considered, to Your policies, practices, or procedures.

   - o **Defendants' Status Update:** On November 21, 2025, Defendants produced Uber One's current and prior terms and conditions in response to subpart (c). Defendants will not produce materials in response to subpart (a) because it seeks irrelevant information and is disproportionate to the needs of the case. Defendants believe that subpart (b) is entirely duplicative of RFP 29 and refer to Defendants' response to that RFP. Defendants will not produce documents in response to subpart (g) because it is overbroad, seeks irrelevant information, is unduly burdensome and disproportionate to the needs of the case. Defendants will also not produce documents in response to subpart (h) because changes Defendants considered but did not actually make are not relevant and are disproportionate to the needs of the case.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 11

- **RFP 15:**

  - <u>Text of RFP 15:</u> All Documents Relating to consumer understanding, beliefs, intention, or perception regarding Uber One, including the terms of Uber One; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

  - <u>Defendants' Status Update:</u> Subject to the objections made previously, Defendants have proposed a custodial search to respond to this RFP. Defendants believe that this proposal is reasonable and proportionate. If there are custodians or terms that you believe are missing, we welcome a meet and confer on that topic.

- **RFPs 16 and 17:**

  - <u>Text of RFP 16:</u> All Documents Relating to Any communications received from, or investigations or inquiries by, any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, regarding Nonconsensual Enrollment or Uber One Cancellation or Enrollment Processes.

  - <u>Text of RFP 17:</u> All Documents Relating to private lawsuits against You regarding Uber One and involving Uber One Enrollment or Cancellation Processes, Nonconsenual Enrollment, Diverted Cancels, or Uber One subscription benefits or savings.

  - <u>Defendants' Status Update:</u> In response to RFP 16, Defendants will produce consumer complaints about Uber One's cancellation and enrollment processes, including complaints from the Better Business Bureau and State Attorneys General. Defendants will not produce documents related to lawsuits and accordingly stand on their objections to RFP 17.

- **RFP 18:**

  - <u>Text of RFP 18:</u> All Documents discussing the Restore Online Shopper Confidence Act ("ROSCA") or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment in, or cancellation of, online subscription services.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 12

- o  <u>Defendants' Status Update:</u> The FTC has asked Defendants to use search terms to respond to this request. Defendants reiterate that the material requested by this RFP is privileged and that search terms would surface documents that are largely if not entirely privileged. Defendants are willing to see if there is some path to get the FTC responsive and non-privileged material, if the FTC identifies what it wants that is not clearly privileged communication.

- **RFP 19:**

  - o  <u>Text of RFP 19:</u> All Customer Correspondence Relating to Uber One, Including the terms of Uber One; Uber One Enrollment or Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; refunds; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

  - o  <u>Defendants' Status Update:</u> Defendants state that they will collect responsive materials from the Bliss database of customer communications. Defendants will produce a list of potentially relevant issue codes in response to RFPs 25 and 26 and are willing to negotiate the scope of this search and production by using those codes.

- **RFP 20:**

  - o  <u>Text of RFP 20:</u> All Documents prepared by or for You Relating to Uber One Customer Correspondence, Including analyses, studies, or reviews of Uber One Customer Correspondence.

  - o  <u>Defendants' Status Update:</u> Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the search we have offered is reasonable and proportionate. If you believe there are additional specific terms or custodians that are needed, please let us know.

- **RFP 21:**

  - o  <u>Text of RFP 21:</u> Documents sufficient to show All versions of All Uber blog posts, support pages, and FAQs (and the timeframe when such materials were publicly available) Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 13

Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

- o **Defendants' Status Update:** Defendants will supplement their productions made during the investigation to include new blog posts, support pages, and FAQs regarding the enrollment, cancellation, and advertising allegations made in the complaint. Defendants will produce documents relating to partnerships or agreements with third party entities to the extent they bear on the process of Uber One enrollment.

- **RFP 22:**

  - o **Text of RFP 22:** All Documents Relating to (a) credit card fraud, (b) account takeovers, (c) Uber One partnerships or agreements with third party entities, or (d) family or household members signing up for Uber One for other members of their family or household, as a cause of Nonconsensual Enrollment.

  - o **Defendants' Status Update:** Defendants maintain their objections to parts (a), (b), and (d). In response to part (c), Defendants will produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment.

- **RFPs 23 and 24:**

  - o **Text of RFP 23:** All Documents used by You to train Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience on issues Relating to Uber One, including call scripts, policies, manuals, knowledge bases, "blogposts," "support logic," or FAQs.

  - o **Text of RFP 24:** All Documents reviewed or created by Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

  - o **Defendants' Status Update:** The FTC asked for clarification regarding Defendants' plan to locate responsive documents for this request. Defendants will perform discrete pulls and produce documents showing how Uber's customer

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 14

> support addresses questions and complaints about the enrollment, cancellation, and advertising issues in the complaint.

- **RFPs 25 and 26:**

  - <u>Text of RFP 25:</u> Documents sufficient to identify All codes, tags, or categorizations used by Your customer service, Uber support, Uber "customer obsession" teams, or Any other teams or contractors to label or sort Uber One Customer Correspondence, and the meaning of those codes, tags, or categorizations.

  - <u>Text of RFP 26:</u> All Documents and data Relating to Uber One Customer Correspondence, Including Documents or data showing, for Each month, the volume and percentage of customer service contacts Relating to Each code, tag, or categorization referenced in Your response to RFP 25.

  - <u>Defendants' Status Update:</u> Defendants will identify relevant issue codes related to the Uber One enrollment, cancellation, and advertising issues in the complaint. Defendants will meet and confer on a plan to collect and extract responsive customer communication that was tagged with the agreed upon issue codes.

- **RFPs 27 and 28:**

  - <u>Text of RFP 27:</u> All materially unique versions of Advertisements Relating to Uber One.

  - <u>Text of RFP 28:</u> For Each Advertisement responsive to RFP 27, a dissemination schedule, Including the dates and times of dissemination, number of disseminations, the media used, and the total cost of preparing and disseminating the Advertisement.

  - <u>Defendants' Status Update:</u> In response to RFP 27, Defendants will conduct a reasonable search for Uber One advertisements that have the claims at issue in the complaint. Once this production is made, the FTC can identify a reasonable number of advertisements and Uber will search for dissemination information for that reasonable number of advertisements to respond to RFP 28.

- **RFP 29:**

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 15

- o  Text of RFP 29: All Documents and underlying data Relating to savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes (e.g., that Uber One customers save or can save $25 per month, or that Uber One customers are eligible for $0 delivery fees), Including Any analyses, experiments, reviews, studies, or testing You conducted.

- o  Defendants' Status Update: Defendants will produce data substantiating the advertising claims at issue in the complaint. Defendants have also proposed search terms and custodians to collect other responsive documents and communications.

- **RFP 30:**

  - o  Text of RFP 30: Documents sufficient to show (a) Each of Your partnerships or agreements Relating to Uber One with third party entities, Including Your partnerships with credit card companies, Disney+, PayPal, Verizon, and others; (b) the terms of such partnerships or agreements; and (c) how customers of third parties are enrolled in Uber One subscriptions or free trials as a result of these partnerships or agreements.

  - o  Defendants' Status Update: Defendants maintain their objection that much of this request has nothing to do with the subject matter of this case. Uber will produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment.

- **RFPs 31 and 32:**

  - o  Text of RFP 31: All Documents (Including video recordings and underlying data) Relating to Any analyses, experiments, reviews, studies, or testing of Uber One, Including: (a) usability studies of Uber One Enrollment or Cancellation Processes; (b) the "Uber One Churn Prevention" experiments (see UBER-SEPT24-00000178, UBER-SEPT24-00000273); (c) the "Cancellation Flow – Primary CTA XP" experiment (see UBER-SEPT24-00000131); (d) the "Membership Cancellation Transparency – XP" experiment (see UBER-SEPT24-00000133); (e) the "Cancellation Flow Restructing Phase 1 XP" experiment (see UBER-SEPT24-00000136); (f) the "US Uber One Savings Reinforment" experiment (see UBER-SEPT24-00000156); (g) the "Cancellation Value Reminder Screen XP" experiment (see UBER-SEPT24-00000373); (h) the "US Uber One Ending Benefits on Free Trial Cancellation" readout (see UBER-SEPT-00000148); (i) the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 16

financial impact of Any changes, whether enacted or only considered, to Uber One Enrollment or Cancellation Processes, Uber One enrollment incentives, free trials, or promotions, and Uber One subscription benefits or savings; and (j) consumers' ability to locate and navigate the Uber One Enrollment and Cancellation Processes.

- o Text of RFP 32: All Documents and underlying data relating to consumer testing or analyses of Uber One performed by You or at Your direction regarding consumer understanding, beliefs, behavior, perception, or demographics, Including Any A/B or multivariate testing, copy testing, surveys, focus groups, customer interviews, conversion rate testing, clickstream analysis, or polling.

- o Defendants' Status Update: The FTC has asked whether Defendants maintain a repository of responsive materials for these requests. Defendants state that there is not a repository of responsive materials. Defendants will search for and produce responsive materials identified based upon a review of the hits from the search terms and custodians identified in Defendants' November 4, 2025 and November 18, 2025 letters. If there are particular custodians or terms you think are missing, please let us know.

- **RFP 33:**

  - o Text of RFP 33: All Documents and underlying data Relating to how You determine the total price of Uber rides or Uber Eats deliveries, Including (a) the factors You use to determine the total price of Uber rides or Uber Eats deliveries and the weights assigned to those factors; (b) Any fees that You may include in the total price and how and when those fees are assessed; (c) the effect, if Any, that a consumer's enrollment or membership status in Uber One has on the total price or Any fees that may be included in the total price; (d) how You determine whether an Uber ride or Uber Eats delivery is eligible for a $0 delivery fee, 10% discount, or other special offer or promotion associated with Uber One; and (e) Any changes, whether enacted or only considered, to how You determine the total price of Uber rides or Uber Eats deliveries.

  - o Defendants' Status Update: Defendants reiterate that most of the material requested by this RFP is not related to the subject matter of this lawsuit. Defendants will produce documents showing how its $0 delivery fee on eligible order claim is substantiated. Defendants will also produce documents showing the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 17

delivery fees it charges to Uber One customers when they place orders that are not eligible for $0 delivery.

- **RFP 34**

  - <u>Text of RFP 34</u>: Documents or data sufficient to show: (a) The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall; (b) The total number of consumers with active Uber One subscriptions, by month and overall; (c) The total number of consumers with active Uber One free trials, by month and overall; (d) The total number of consumers with discounted Uber One subscriptions, by month and overall; (e) The total number of consumers who accepted a discounted Uber One subscription during Any Cancellation Process, by month and overall; (f) The total number of consumers with paused Uber One subscriptions, by month and overall; (g) The total number of consumers who paused their Uber One subscription or free trial during Any Cancellation Process, by month and overall; (h) The total number of consumers who successfully cancelled their Uber One subscription or free trial (i.e., consumers who were not subsequently charged for Uber One for Any reason after completing a Cancellation Process), by month and overall; (i) The total number of consumers who cancelled their Uber One subscription or free trial (or who turned off the auto-renewal feature) but were were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall; (j) The total number of consumers who initated Any Uber One Cancellation Process, by month and overall; (k) The total number of consumers who initiated Any Uber One Cancellation Process but did not terminate their Uber One subscription or free trial, by month and overall; and (l) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

  - <u>Defendants' Status Update</u>: Defendants will respond to subparts (a) – (h) and part (l) with discrete data pulls.

- **RFP 35**

  - <u>Text of RFP 35</u>: For each consumer who enrolled in an Uber One subscription or free trial: (a) Documents or data sufficient to show the consumer's name, mailing address, email address, and phone number; and (b) All Documents and data (including click-through data) Relating to: (i) The consumer's enrollment in Uber One, Including (A) the date, time, and Enrollment Process through which the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 18

consumer enrolled; (B) whether the consumer enrolled through a free trial or other promotion; and (C) if the consumer enrolled through a free trial or other promotion, the terms of the free trial or promotion (e.g., billing date, duration of free trial, etc.); (ii) The consumer's Uber One payment history, Including (A) the date, time, amount, and payment method of All Uber One subscription fees paid by or billed to the consumer; and (B) the date, time, and amount of Any refunds (including chargebacks) paid to the consumer in connection with Any Uber One subscription fee; (iii) The consumer's Uber One usage, Including (A) the date, time, and total price of Each Uber ride or Uber Eats delivery ordered and paid for by the consumer while the consumer was subscribed to Uber One; (B) Any fees that the consumer was assessed in connection with Each Uber ride or Uber Eats delivery that the consumer ordered while subscribed to Uber One; (C) if the Uber ride or Uber Eats delivery was reduced in price as a result of the consumer's Uber One subscription, the amount and reason that the price was reduced (i.e., a $0 delivery fee); and (D) the lifetime, cycle, and average trip and delivery savings attributable to the consumer's Uber One subscription; (iv) The consumer's cancellation of (or attempts to cancel) Uber One, Including (A) the date, time, duration, and outcome of Each instance in which the consumer initiated a Cancellation Process; (B) for Each Cancellation Process that the consumer initiated, the point at which the consumer exited or completed the Cancellation Process, and the amount of time the consumer spent on Each page or step of the Cancellation Process; (C) if applicable, the dates and times on which the consumer cancelled his or her Uber One subscription (or turned the auto-renewal feature off), and the date and time on which the subscription terminated; and (D) if applicable, the dates and times on which the consumer paused Uber One or accepted a discounted Uber One subscription, the means by which the consumer paused or accepted a discounted Uber One subscription, and the duration of the pause or discounted subscription; (v) The consumer's complaints or inquiries Relating to Uber One, Including the date, time, code, tag, or categorization of Each complaint or inquiry; and (vi) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

o **Defendants' Status Update**: With respect to subpart (a), Defendants do not collect consumers' mailing addresses in the ordinary course, but Defendants will otherwise respond to this subpart with discrete data pulls. Defendants will respond to subparts (b)(i)-(iii) and (vi), except that for subpart (b)(iii) Defendants will only provide aggregate data that captures consumers' duration of membership. Defendants will not respond to subpart (b)(iv) because this data is not kept in the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 19

ordinary course of their business or is not proportional to the needs of the case. Defendants will also not respond to subpart (b)(v) because it is duplicative with RFPs 19, 25, and 26.

- **RFP 36**

  - <u>Text of RFP 36</u>: All data (Including click-through data) Relating to Each potential Uber One Enrollment Process, Including data showing: (a) The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall, through the Enrollment Process; (b) If the Enrollment Process is not available to All consumers (i.e., the Enrollment Process begins with a pop-up Advertisement, push notification, or other solicitation), (i) the total number of consumers who were presented with the Enrollment Process, by month and overall; (ii) the total number of instances in which the Enrollment Process was presented to consumers, by month and overall; and (iii) how You determine which, when, and how often consumers are presented with the Enrollment Process; (c) The average and median amount of time that it takes consumers to enroll in an Uber One subscription or free trial through the Enrollment Process; and (d) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

  - <u>Defendants' Status Update</u>: Defendants are conducting a reasonable and proportionate search for data in response to this RFP.

- **RFP 37**

  - <u>Text of RFP 37</u>: All data (Including click-through data) Relating to Each potential Uber One Cancellation Process, Including data showing: (a) The total number of instances in which consumers initiated Each Cancellation Process, by month and overall; (b) The total number of instances in which consumers successfully completed Each Cancellation Process (i.e., instances in which consumers were not subsequently charged for Uber One for Any reason after completing the Cancellation Process), by month and overall; (c) The total number of instances in which consumers completed Each Cancellation Process but were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall; (d) The total number of instances in which consumers agreed to pause their Uber One subscription or accepted a discounted Uber One subscription during Each Cancellation Process, by month and overall; (e) The total number of instances in which consumers abandoned Each Uber One

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 20

> Cancellation Process after initiating it without cancelling, turning off the auto-renewal feature, pausing, or accepting a discounted Uber One subscription, by month and overall; (f) The total number of instances in which consumers initiated Each Uber One Cancellation Process within 48 hours of the consumer's billing date; (g) The average amount of time that consumers spent interacting with the Cancellation Process, and with Each page or step of the Cancellation Process; and (h) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

- o <u>Defendants' Status Update</u>: Defendants are conducting a reasonable and proportionate search for data in response to this RFP.

- **RFP 38:**

  - o <u>Text of RFP 38:</u> All communications, Including emails, text messages, instant messages, Slack messages, call recordings, notes of phone calls, and meeting minutes, Relating to Uber One.

  - o <u>Defendants' Status Update:</u> Defendants maintain that this RFP is entirely too broad. It would seek significant material that has nothing to do with the allegations in the complaint.

- **RFP 39:**

  - o <u>Text of RFP 39:</u> Documents sufficient to identify your document retention and destruction policies and when such policies went into effect.

  - o <u>Defendants' Status Update:</u> On November 21, 2025, Defendants produced their document retention policy. (UBER-FTCU1-00000128 - UBER-FTCU1-00000131)

- **RFP 40:**

  - o <u>Text of RFP 40:</u> Documents sufficient to show the monthly, quarterly, and annual gross and net revenue You generated from Uber One since November 8, 2019.

  - o <u>Defendants' Status Update:</u> Defendants will produce information sufficient to show the monthly, quarterly, and annual gross revenue generated from Uber One since Uber One's inception. Defendants do not track "net revenue."

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 21

Sincerely,


/s/ Benjamin M. Mundel
Benjamin M. Mundel
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

cc:    Lauren Freeman (lfreeman@sidley.com)
       Drew Langan (dlangan@sidley.com)