FILED UNDER SEAL

Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (VA Bar No. 90647)
James Doty (NY Bar No. 4552550)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
Fax: (202) 326-3395

*Attorneys for Plaintiff*
*Federal Trade Commission*

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., a corporation, and <br><br> UBER USA, LLC, a limited liability company, <br><br> Defendants. | Case No. 4:25-cv-03477-JST <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FAC IN PART** <br><br> Assigned to: Hon. Jon. S. Tigar <br><br> Date: April 2, 2026 <br> Time: 2:00 PM <br> Place: Zoom <br><br> **Oral Argument Requested** <br> **FAC Filed: December 15, 2025** |

FILED UNDER SEAL

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ....................................................................................................... 2

ARGUMENT .................................................................................................................... 3

    I.    The FAC Properly Alleges that Uber Has Violated the FTC Act ................... 3

        A.    Rule 8(a), Not Rule 9(b), Applies Though the FAC Satisfies Either..... 3

        B.    The FAC Properly Alleges that Uber Has Deceived Consumers (Count I) ................................................................................................................ 5

    II.    The FAC Properly Alleges Uber Has Violated ROSCA ................................. 10

        A.    Uber One Employs a Negative Option Feature ..................................... 10

        B.    Uber Has Failed to Disclose Material Terms Before Obtaining Consumer Billing Information (Count III) ............................................. 12

        C.    Uber Charges Consumers Without Express Informed Consent (Count IV) .......................................................................................................... 17

    III.    The FAC Properly Pleads Defendants' Liability for Civil Penalties ............. 18

        A.    The FTC Followed the Statutory Procedures in 15 U.S.C. § 56; Plaintiffs Were Not Required to Allege Procedural Steps in the Complaint ............................................................................................... 18

        B.    The FAC Alleges Defendants' Knowledge, or Knowledge Fairly Implied ................................................................................................... 18

    IV.    The Plaintiff States Were Properly Added as Plaintiffs ................................. 21

        A.    The Plaintiff States Have Pled Article III Standing.............................. 21

        B.    Defendants Misstate the Law Regarding the Plaintiff States' Authority to Sue in Federal Court ......................................................................... 24

        C.    The FAC Sufficiently Pleads the Plaintiff States' Claims In Counts I and II ...................................................................................................... 25

CONCLUSION ................................................................................................................ 25

FILED UNDER SEAL

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                      **Page(s)**

3

*Adeghe v. Procter & Gamble Co.*, 2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) ...............................25

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982)..............21, 22, 23

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................3

5

*Barquis v. Merchants Collection Assn.,* 7 Cal.3d 94 (Cal. 1972) ...............................................4

6

*Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883 (9th Cir. 2009).............................................12, 13

7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................2

8

*California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007) ...............................24

9

*California v. United States Dep't of Educ.*, 2018 WL 10345668 (N.D. Cal. June 27, 2018) ........22

*Camco Manuf., Inc. v. John Stephens Corp.*, 391 F.Supp.3d 515 (NC 2019)...............................4

10

*Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285 (E.D. Cal. 2024) ......................................14

11

*CFPB v. CashCall, Inc.* 2018 WL 485963 (C.D. Cal. Jan. 19, 2018)...........................................20

12

*City of Almaty v. Khrapunov*, 956 F.3d 1129 (9th Cir. 2020)......................................................3

13

*Creamer v. Monumental Properties, Inc.*, 329 A.2d 812 (Pa. 1974)...........................................4

14

*Edenfield v. Fane*, 507 U.S. 761 (1993) ....................................................................................24

15

*Fanning v. FTC*, 821 F.3d 164 (1st Cir. 2016)............................................................................5

*FTC v. Am. Future Sys., Inc.* 2024 WL 1376026 (E.D. Pa. Mar. 29, 2024)................................20

16

*FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297 (W.D. Wash. 2024) ............12, 13, 14, 15, 17, 19

17

*FTC v. Amazon.com, Inc.*, 2025 WL 2677086 (W.D. Wash. Sept. 17, 2025) ..................11, 19, 20

18

*FTC v. Benning*, 2010 WL 2605178, at *5 (N.D. Cal. June 28, 2010) ........................................20

19

*FTC v. Cardiff*, 2020 WL 6540509 (C.D. Cal. Oct. 9, 2020)......................................................11

20

*FTC v. Consolidated Foods Corp.*, 396 F. Supp. 1344 (S.D.N.Y. 1974)....................................18

*FTC v. Consumer Health Benefits Ass'n*, 2012 WL 1890242 (E.D.N.Y. May 23, 2012) ...............4

21

*FTC v. Corpay, Inc.*, 164 F.4th 807 (11th Cir. 2026) ...............................................................7, 8

22

*FTC v. Credit Bureau Ctr.*, 937 F.3d 764 (7th Cir. 2019)..........................................................14

23

*FTC v. Cyberspace.com LLC*, 453 F.3d 1196 (9th Cir. 2006)...............................................5, 17

24

*FTC v. Dave, Inc.*, 2025 WL 2698698 (C.D. Cal. Sept. 12, 2025) ......................................4, 11, 20

*FTC v. Day Pacer LLC*, 689 F. Supp. 3d 609 (N.D. Ill. 2023) ......................................................21

*FTC v. DirectTV, Inc.*, 2016 WL 5339797 (N.D. Cal. Sept. 23, 2016) .........................................11

*FTC v. Doxo, Inc.*, 771 F. Supp. 3d 1162, 1177 (W.D. Wash. 2025) ................................7, 11, 12

*FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005) ................................................3

*FTC v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803 (D. Ariz. 2024) .....................................3

*FTC v. Health Formulas, LLC*, 2015 WL 2130504 (D. Nev. May 6, 2015) ...............11, 14, 16, 17

*FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280 (N.D. Ga. 2018) .....................4

*FTC v. Hornbeam Special Sols., LLC*, 2022 WL 20357002 (N.D. Ga. Mar. 28, 2022) ................11

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052 (C.D. Cal. 2012) ......................11

*FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010) ................................................5

*FTC v. Lunada Biomedical, Inc.*, 2016 WL 4698938 (C.D. Cal. Feb. 23, 2016) ...........................4

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) ..................................................................5

*FTC v. QT, Inc.*, 448 F. Supp. 2d 908 (N.D. Ill. 2006) .............................................................6, 10

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ...........................................................................5

*FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014) .......................................................4

*FTC v. Triangle Media Corp.*, 2018 WL 4051701 (S.D. Cal. Aug. 24, 2018) .............................11

*FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) ..................4

*Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) ......................13

*Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765 (5th Cir. 2023) ..............................................24

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir.) ...................................................................................21

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012) ........................................................................2

*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 2007 WL 2517851
(N.D. Cal. Aug. 31, 2007) .............................................................................................................24

*In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525 (S.D.N.Y. 2014) .....................................22

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..........................................................25

*Landers v. Quality Comms., Inc.*, 771 F.3d 638 (9th Cir. 2014) ................................................2-3

*Lupin Pharm., Inc. v. Richards*, 2015 WL 4068818 (D. Md. July 2, 2015) ................................24

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)................................................................................2

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ..............................................................................22

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ............................................................................23

*Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020)................................24

*Minnesota v. Minnesota School of Business*, 935 N.W.2d 124 (Minn 2019)..............................4

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ............................................21, 22

*New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021)....................................................22

*Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023) .............22

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ......................................................3

*Patterson v. Beall*, 19 P.3d 839 (Okla 2000) ..............................................................................4

*People ex rel. Spitzer v. Applied Card Systems, Inc.*, 805 N.Y.S.2d 104 (NY 2005) ......................4

*Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219 (D.C. Cir. 2025)........... 23-24

*Removatron Int'l Corp. v. FTC*, 884 F.2d 1489 (1st Cir. 1989) ................................................7, 9

*Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975)..............................................5

*Ross v. A. H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ................................................................25

*Salem Grain Co., Inc. v. Consolidated Grain & Berge Co.*, 900 N.W. 2d 909 (Neb. 2017) ..........4

*Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228 (Mo 2006) ........4

*State v. American TV Appliance of Madison, Inc.*, 430 N.W. 2d 709 (Wis. 1988) ........................4

*State v. Talyansky*, 409 Wis.2d 57 (2023) ..................................................................................23

*Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879 (9th Cir. 2001)....................21

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......................................................................24

*United Healthcare Servs., Inc. v. United Therapeutics Corp.*, 2024 WL 1256266
(D. Md. Mar. 25, 2024) ..............................................................................................................25

*United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025) ................................10, 11, 17

*United States v. Chem. Found.*, 272 U.S. 1 (1926) ......................................................................18

*United States v. Consumer L. Prot., LLC*, 2023 WL 6200774 (E.D. Mo. Sept. 22, 2023) ............24

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No. 4:25-cv-03477-JST

*United States v. Dish Network*, 954 F. 3d 970 (7th Cir. 2020) ......................................................20

*United States v. Lassester*, 2005 WL 1638735 (M.D. Tenn. June 30, 2005) ................................21

*United States v. MyLife*, 499 F. Supp. 3d 751 (C.D. Cal. 2020) ................................................11

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996) ...................................19

*United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080 (S.D. Cal. 2024) ...................19, 21

*United States v. Tech. Commc'ns Indus., Inc.*, 1986 WL 15489 (E.D.N.C. Dec. 22, 1986) ..........19

*Washington v. Internet Order, LLC*, 2015 WL 918694 (W.D. Wa. Mar. 2, 2015).........................15

**Statutes**                                                                                          **Page(s)**

Ala. Code § 8-19-5.....................................................................................................................23

Ala. Code § 8-19-6.......................................................................................................................4

Ariz. Rev. Stat. § 44-1522(C) ......................................................................................................4

Conn. Gen. Stat. § 42-110b(b) .....................................................................................................4

D.C. Official Code §§ 28-3901(d) ...............................................................................................4

D.C. Official Code §§ 28-3904 ...................................................................................................23

Md. Code Ann., Com. Law Sec. 13-102......................................................................................22

Md. Code Ann., Com. Law Sec. 13-105........................................................................................4

MCA § 30-14-104 .........................................................................................................................4

Minn. Stat. §§ 325F.69, subd.1; 325D.44 ..................................................................................23

Mont. Code Ann. 30-14-133 .......................................................................................................23

Mont. Code Ann. 30-14-142(2) ..................................................................................................23

N.H. Rev. Stat. § 358-A:13 ...........................................................................................................4

N.J. Stat. Ann. § 56:8-2...............................................................................................................23

Ohio Rev. Code § 1345.02(C)........................................................................................................4

W. Va. Code § 46A-6-101 .............................................................................................................4

W. Va. Code § 46A-7-102(7)(M) ................................................................................................23

15 U.S.C. § 45(m) ..................................................................................................................19, 20

15 U.S.C. § 56 .............................................................................................................................18

FILED UNDER SEAL

15 U.S.C. § 8401 ...................................................................................................12, 22, 23

15 U.S.C. § 8403 ..........................................................................................10, 12, 13, 23

16 C.F.R. § 310.2(w) ..................................................................................................10

28 U.S.C. § 1367(c)(4) ...............................................................................................24

73 P.S. §§ 201-3 and 201-2(4)(xxi) ...........................................................................23

815 ILCS 505/2 .......................................................................................................4, 23

**Other Authorities**                                                                    **Page(s)**

Fed. R. Civ. P. 8(a) .....................................................................................................3

Fed. R. Civ. P. 9(b) .............................................................................................3, 4, 25

FILED UNDER SEAL

1

## INTRODUCTION

For years, Defendants have enrolled consumers in subscription plans and charged them on a recurring basis without their knowledge or consent, including by using billing information consumers have previously provided to book a ride or order food. When they affirmatively market their subscription plan (as opposed to tricking people into signing up), they make inflated savings claims and misrepresent the program's benefits. Consumers who realize they are paying for a service they never wanted—or that fails to deliver on promised benefits—must navigate a cancellation maze that requires them to take at least 12 to 32 actions and includes calling Defendants' customer support to cancel, where they experience long wait times and significant delays. In many instances, consumers are charged subscription fees again anyway. In just a two-year period, Defendants charged $935 million in subscription fees.

Defendants now move to dismiss, in part, Plaintiffs' First Amended Complaint ("FAC"). Defendants do not seek to dismiss the allegations in Count I that they have misrepresented the date on which consumers will be charged, FAC ¶ 98(b), and that consumers have authorized the charges, *id.* ¶ 98(e), nor do they move to dismiss Count II, which states that Defendants charged consumers without their express informed consent.

As to the claims that Defendants do move to dismiss, the FAC lays out Defendants' surreptitious enrollment process and cancellation maze, Uber's misleading claims to consumers, the public outpouring of complaints, and more than sufficiently states a claim that Defendants have violated the FTC Act, state consumer protection acts, and ROSCA.

## BACKGROUND

Defendants[1] market transportation and food delivery services. FAC ¶ 16. To use these services, consumers download Defendants' app and provide their payment information. FAC ¶¶ 16, 33. Unbeknownst to consumers, Defendants have used this payment information to charge for subscription plans, at a cost of $9.99 a month or $96 a year. FAC ¶ 38. Consumers report that they have been enrolled in an Uber subscription without their consent, stating that they never signed up and have no idea why they were charged. FAC ¶ 4.

---

[1] "Defendants" and "Uber" refer to Uber Technologies, Inc. and Uber USA, LLC, collectively.

FILED UNDER SEAL

Through pop-ups and other marketing, Defendants also make false claims about the subscription's benefits (*e.g.*, $0 delivery fees) and savings (*e.g.*, $25 per month). FAC ¶¶ 19-24. Internal Uber testing shows that 85% of consumers who were being charged for a subscription and wanted to cancel it would not keep it even if it cost only $1. FAC ¶ 4.

Consumers who try to cancel face difficulty and are charged fees anyway, despite Uber being required under the law to provide a simple mechanism to cancel recurring charges. FAC ¶¶ 43-87 (showing the maze of screens consumers have to go through to cancel—if they can figure out how to cancel at all—including, if cancellation is 48 hours before their billing date, a recurring loop they encounter and a second maze of screens they have to go through to contact customer support). In fact, the process is so challenging that it has spawned online tutorials attempting to explain how consumers can cancel, which have been viewed tens of thousands of times and include comments from fed up consumers. FAC ¶ 79. Further, even though Uber promises consumers can cancel any time without additional fees, it nonetheless charges additional fees if they cancel during certain times – even during purported free trials. FAC ¶ 61.

Even when Uber has specifically told consumers their subscriptions were cancelled and they wouldn't be charged again, they were charged additional fees, often repeatedly. FAC ¶ 87. And even when they cancelled their payment card to stop the charges, Uber has charged other cards it happens to have access to. FAC ¶ 87.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all well pleaded facts in the complaint and construe them in the light most favorable" to the plaintiff. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (cleaned up). "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A Complaint survives a motion to dismiss when it "state[s] a claim to relief that is plausible on its face." *Landers v. Quality Comms., Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "plausible" when it "allows the court to draw the reasonable inference" of liability.

1   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *See also OSU Student Alliance v. Ray*,

2   699 F.3d 1053, 1078 (9th Cir. 2012) (plausibility requires "something more than a sheer

3   possibility, but less than a probability[.]"). Dismissal is inappropriate unless it "appears beyond

4   doubt that plaintiff can prove no set of facts in support of its claims which would entitle it to

5   relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020) (cleaned up).

6   **ARGUMENT**

7   The FAC properly states FTC Act and ROSCA claims, seeks civil penalties, and adds the

8   Plaintiff States.

9   **I.    The FAC Properly Alleges that Uber Has Violated the FTC Act**

10  **A.    Rule 8(a), Not Rule 9(b), Applies Though the FAC Satisfies Either**

11  Defendants assert, in a sentence fragment, that Rule 9(b) applies to the FTC Act claims.

12  MTD at 7. This is all Defendants say on the point; the MTD is devoid of any reference to the text

13  of Rule 9(b).[2] And for good reason: Rule 8(a) sets forth the proper pleading standard for

14  Plaintiffs' claims, and, while Defendants are wrong that Rule 9(b) governs, the Court need not

15  reach that issue because the FAC meets either standard.[3]

16  A Section 5 deception claim "simply is not a claim of fraud as that term is commonly

17  understood or as contemplated by Rule 9(b)," because it does not require proof of common law

18  fraud elements, such as specific reliance or specific injury. *FTC v. Freecom Commc'ns, Inc.*, 401

19  F.3d 1192, 1203 n.7 (10th Cir. 2005). For these reasons, Rule 8(a) sets forth the proper pleading

20  standard for Plaintiffs' claims. *See FTC v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 837

21  (D. Ariz. 2024) (holding 9(b) does not apply and collecting cases holding same).

22
[2] Although Defendants contend that Count I does not meet Rule 9(b), Defendants do not move to
23  dismiss Plaintiffs' other FTC Act claim (Count II) on these grounds. The court should also
    evaluate the FTC's ROSCA claims under Rule 8(a), as it does not require proof of the elements
    of fraud; Defendants do not argue otherwise.
24  [3] Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that
    the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 9(b), a pleading must allege
    "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The lone district court case Defendants cite, MTD at 7, is inapposite and is discussed below. Other courts have routinely declined to apply Rule 9(b) to claims under the FTC Act. *See, e.g.*, *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1287 (N.D. Ga. 2018); *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014); *FTC v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7 (E.D.N.Y. May 23, 2012).[4]

Regardless, even if Rule 9(b) applied, the FAC meets the standard because it "details the course of deceptive conduct at issue and enumerates the time frame for this conduct. Rule 9(b) does not require any greater level of detail." *FTC v. Dave, Inc.*, 2025 WL 2698698, at *10 (C.D. Cal. Sept. 12, 2025). Plaintiffs have identified with particularity the specific representations alleged to be deceptive (FAC ¶¶ 19-24, 30, 32, 35, 40-41, 57-58, 98), have included screenshots showing where and how the statements appeared on Uber's website and apps (FAC ¶ 19 Ex.1, ¶ 20 Ex. 2, ¶ 27 Ex. 4, ¶ 30 Ex. 6, ¶ 35 Ex. 9, ¶ 57 Ex. 19), have alleged the time frame of the conduct (FAC ¶¶ 17, 39), and have alleged that the statements were false, misleading, or unsubstantiated at the time they were made (FAC ¶ 99). These allegations more than meet the pleading requirements of Rule 9(b). *FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *10 (N.D. Cal. Apr. 4, 2011) ("to satisfy Rule 9(b), a complaint must allege the "who, what[,] where[,] and how" of the conduct at issue."); *FTC v. Lunada Biomedical, Inc.*, 2016 WL 4698938, at *3 (C.D. Cal. Feb. 23, 2016) ("Rule 9(b) is satisfied because the FTC has pleaded

---

[4] State courts and legislatures have directed that when construing the term "unfair or deceptive trade practices", due consideration and weight be given to the interpretations of § 5 (a)(1) of the FTC Act. Ala. Code § 8-19-6; Ariz. Rev. Stat. § 44-1522(C); *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 110 (Cal. 1972); Conn. Gen. Stat. § 42-110b(b); D.C. Official Code §§ 28-3901(d); 815 ILCS 505/2; Md. Code Ann., Com. Law § 13-105; MCA § 30-14-104; *Minnesota v. Minnesota School of Business*, 935 N.W.2d 124, 136, n.6 (Minn 2019); *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 234 (Mo 2006); *Salem Grain Co., Inc. v. Consolidated Grain & Berge Co.*, 900 N.W. 2d 909, 920-21 (Neb. 2017); N.H. Rev. Stat. § 358-A:13; *People ex rel. Spitzer v. Applied Card Systems, Inc.*, 805 N.Y.S.2d 104, 178 (2005); *Camco Manuf., Inc. v. John Stephens Corp.*, 391 F.Supp.3d 515, 527-28 (M.D.N.C. 2019); Ohio Rev. Code § 1345.02(C); *Patterson v. Beall*, 19 P.3d 839, 846 (Okla 2000); W. Va. Code, § 46A-6-101; and *Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 817-18 (Pa. 1974). *See also State v. American TV & Appliance of Madison, Inc.*, 430 N.W. 2d 709, 712-13 (Wis. 1988).

1   with sufficient particularity the "what" of the false advertising claim (*i.e.*, specific representative

2   ads giving rise to the express or implied claims subject to this enforcement action."). The

3   allegations here also stand in stark contrast to those found insufficiently pled in *Lights*. *See FTC*

4   *v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 854 (C.D. Cal. Dec. 17, 2010) (holding that the

5   allegations "do not differentiate between conduct committed by [different defendants], nor do

6   they explain when or where the alleged misrepresentations were made.").

7           **B.      The FAC Properly Alleges that Uber Has Deceived Consumers (Count I)**

8           All that is necessary to state a deception claim under the FTC Act is a plausible allegation

9   that Defendants made an express or implied representation about a material fact that is likely to

10  mislead consumers acting reasonably under the circumstances. *FTC v. Pantron I Corp.*, 33 F.3d

11  1088, 1095-1096 (9th Cir. 1994). When considering how a reasonable consumer would interpret

12  marketing materials, courts consider the overall "net impression" conveyed. *See., e.g., FTC v.*

13  *Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). Fine print disclosures cannot save an otherwise

14  misleading net impression.  *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006).

15  Further, if "a claim conveys more than one meaning, only one of which is misleading, a seller is

16  liable for the misleading interpretation even if non-misleading interpretations are possible."

17  *Fanning v. FTC*, 821 F.3d 164, 171 (1st Cir. 2016) (cleaned up)); *Resort Car Rental Sys., Inc. v.*

18  *FTC*, 518 F.2d 962, 964 (9th Cir. 1975) ("Advertising capable of being interpreted in a

19  misleading way should be construed against the advertiser.").

20          Here, the FAC alleges that Defendants violated the FTC Act by making five

21  misrepresentations. FAC ¶¶ 98-100. Defendants do not dispute that the FAC adequately pleads

22  two of them – that Defendants have misrepresented when they will charge consumers and that

23  consumers have authorized the charges; nor do Defendants dispute that the FAC has alleged that

24  all five misrepresentations are material. Defendants do challenge Count I subparts (a), (c), and

FILED UNDER SEAL

1    (d), but only by rewriting the pleadings to wrestle with strawmen and attacking well-pled facts

2    and reasonable inferences, ignoring Rule 12(b)(6)'s requirement to accept alleged facts as true.

3        **i.    Count I(a): Uber Misrepresented that Consumers Can Cancel**

4            **Subscriptions at Any Time with No Additional Fees**

5        Defendants have represented to consumers that they may cancel their subscriptions at any

6    time with no additional fees. FAC ¶¶ 19-24, 30, 35, 40, 98. In reality, as alleged in the FAC,

7    consumers are unable to cancel at certain times before the next billing period without incurring

8    additional charges of $9.99 a month or $96 a year in subscription "fees." FAC ¶¶ 81, 87.

9        Defendants argue that Uber does not charge "cancellation fees." MTD at 11. This is a red

10   herring, as Plaintiffs do not contend that Uber charges "cancellation fees." Rather, as alleged,

11   Defendants charge "fees" or "additional fees" in the form of *next* month's or year's subscription

12   charges (i) despite consumers attempting to cancel their subscription before their next billing

13   date, and (ii) for trial period subscriptions, even before the current month ends and before the

14   date Uber represents to consumers that they will be billed. *See, e.g.*, FAC ¶ 82. Further, even

15   after Uber specifically told consumers their subscriptions were canceled and that they would not

16   be charged again, those consumers were nevertheless charged additional fees for additional

17   *months.*[5] *See, e.g.*, FAC ¶¶ 81, 87.

18       Defendants also reference a disclaimer that sometimes appeared later (FAC ¶¶ 27, 35),

19   which stated that to avoid charges consumer should cancel "up to 48 hours before" their next

20   billing date, MTD at 11. But whether the disclosure is clear and conspicuous is an issue of fact

21   that generally should not be resolved on a motion to dismiss. *FTC v. QT, Inc.*, 448 F. Supp. 2d

22   908, 957-58 (N.D. Ill. 2006) (net impression is a question of fact). Here, Plaintiffs have alleged

23

24
   ---
   [5] Defendants also claim Uber proactively refunded consumers, MTD at 11 n.3; the FAC pleads
   otherwise. *See, e.g.*, FAC ¶¶ 79, 82.

1    that the disclaimer is neither clear nor conspicuous. FAC ¶ 77. The disclaimer appears in small,

2    light gray fine print at the bottom of some screens (*see* FAC ¶ 27, Ex. 4), but not others (see FAC

3    ¶ 30, Ex. 6). *See* also FAC ¶ 76. *See FTC v. Doxo, Inc.*, 771 F. Supp. 3d 1162, 1177 (W.D. Wash.

4    2025) ("Courts across the country have determined that, where a disclaimer is buried in fine print

5    and is without accentuation, it is insufficient to alter the net impression" of a claim.).

6         Even where the disclaimer does appear, it confusingly contradicts Defendants' more

7    prominent promise that consumers can cancel "anytime." FAC ¶ 35, Ex. 9; ¶ 77; *Removatron*

8    *Int'l Corp. v. FTC*, 884 F.2d 1489, 1496-97 (1st Cir. 1989). In order to be effective, disclaimers

9    must be "sufficiently prominent and unambiguous to change the apparent meaning of the claims

10   and to leave an accurate impression. Anything less is only likely to cause confusion by creating

11   contradictory double meanings." *Id*. at 1497; *see also FTC v. Corpay, Inc.*, 164 F.4th 807, 835-36

12   (11th Cir. 2026) (rejecting disclaimers that are "small, ambiguous, or contradicted by the body of

13   the ad"). Even the language of the Defendants' disclaimer itself is likely to sow confusion,

14   because it says consumers can cancel "up to 48 hours" before an unspecified billing date, giving

15   a time frame in hours but referencing a different time frame that is expressed as a date. FAC ¶ 77.

16        Finally, Defendants also argue that consumers can cancel anytime because, regardless of

17   the difficulty or charges incurred, it was "possible." MTD at 10. Not only did Defendants require

18   that consumers successfully navigate a highly complex and time-consuming maze in order to

19   cancel, but consumers who were forced to resort to customer service often were unsuccessful in

20   canceling before they incurred additional charges. FAC ¶¶ 65, 75, 85-87. Defendants' argument

21   also ignores the claim as pled, attempting to bifurcate the count by focusing myopically on the

22   phrase "cancel anytime" but ignoring the representation "with no additional fees." MTD at 9-11.

23   The FAC alleges that consumers were unable to cancel in time to avoid additional fees. FAC ¶¶

24   79, 82, 86-87. Thus, Defendants' suggestion that "the FAC never alleges that any consumer could

1    not in fact cancel through Uber support," MTD at 10, is misleading and irrelevant to the claim as

2    pled. The FAC does allege that consumers could not in fact cancel through Uber support

3    "without additional fees" (FAC ¶¶ 79, 82, 86-87) which is the claim at issue. FAC ¶ 98.

### ii.    Count I(c): Uber Misrepresented Consumers "Save $25 every month"

5         The FAC alleges that Defendants have represented to consumers that they will save a

6    specific amount, such as "$25 every month," by enrolling in a subscription. *See, e.g.*, FAC ¶ 19

7    ("Save $25 every month"). The FAC alleges this statement to be false, misleading, or

8    unsubstantiated because the savings amount promised does not account for the cost of the

9    subscription. FAC ¶ 22. Further, most consumers do not save $25 *ever*, let alone "every month,"

10   even setting aside the cost of the subscription. FAC ¶ 22.

11        Defendants do not dispute that the representation, as pled, is false and material.

12   Defendants instead suggest consumers should know "Save $25 every month" means they would

13   only save $15 ($25 minus the monthly fee). MTD at 9. But the representation at issue in Count

14   I(c) is based on Uber's own advertisements, which fail to disclose at all (before enrollment) or

15   clearly (after enrollment) that the $25 savings is actually (at most) $15 savings. FAC ¶ 57, Ex. 19

16   (in light, small font, three lines in, the text reads "Estimated savings do not include membership

17   price.") Plaintiffs also have alleged that any caveats regarding "average" savings come in

18   smaller, lighter font (FAC ¶ 19, Ex. 1; ¶ 57, Ex. 19). Courts have held that such representations

19   were "deceptive as a matter of law" where they contained "a central, large-font claim…with

20   small-print disclosures and caveats that effectively negated much, if not all, of the advertised

21   savings." *Corpay*, 164 F.4th at 835-36.

22        Defendants also argue that they disclose that the savings representation is an "average,"

23   so not all consumers should expect to achieve the savings. MTD at 8-9. But Plaintiffs do not

24   allege that "all" consumers needed to save $25 a month. Instead, Plaintiffs allege that the claim

FILED UNDER SEAL

1    that consumers will save "$25 every month" is deceptive because it inflates savings by at least

2    $10 by failing to account for subscription costs and ignores Defendants' own research which

3    found that most consumers save only between ██ and ██ throughout the entire *lifetime* of their

4    membership. FAC ¶¶ 19, 22, 57, 99.

5          **iii.**        **Count I(d): Uber Misrepresented Specific Benefits, $0 delivery fees**

6          The FAC alleges that Uber represents specific benefits of their subscriptions, such as $0

7    delivery fees. FAC ¶¶ 20, 98. As alleged in the FAC, the representation is false or misleading;

8    consumers, including subscribers, have reported that they have had to pay fees on deliveries.

9    FAC ¶¶ 23, 99. Defendants contend that this representation is not false or misleading because

10    they promised $0 delivery fees only on "eligible" orders, and the FAC does not allege that

11    consumers paid delivery fees on the subset of orders that were "eligible." MTD at 7-8. By this

12    logic, however, Defendants could promise $0 delivery fees on "eligible" orders but designate all

13    orders "ineligible" without committing a deceptive act or practice. Plaintiffs have alleged that

14    Defendants' representation that consumers would pay $0 delivery fees is false or misleading

15    because many subscribers reported paying delivery fees. FAC ¶ 23. The MTD does not dispute

16    that the claim *as pled* is false and material; it instead ignores deception law and the facts alleged.

17    As discussed in Section II, courts consider the overall "net impression" that advertisements

18    convey. Rather than evaluating the advertisement's net impression, Defendants instead focus on

19    one word, "eligible." MTD at 7-8.[6] Ultimately, how the $0 delivery fees claim was understood

20    by a reasonable consumer, and whether the availability of "eligible" orders versus "ineligible"

21    ones was consistent with consumer understanding and clearly disclosed are all issues of fact

22    

23    ───────────────────────────
[6] Uber also asks the Court to look beyond the four corners of the complaint, to small print appearing in Uber's ads that ran *after* this suit was filed. MTD at 8 (hyperlink that leads to a current version of the webpage, different from the version in the FAC). Not only is citing all

24    Defendants' fine print infeasible, it is also irrelevant – the disclosures are inconspicuous and do not alert consumers that the Count I(d) claim is false. *See Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1496-97 (1st Cir. 1989).

FILED UNDER SEAL

1    inappropriate for resolution here. *FTC v. QT, Inc.*, 448 F. Supp. 2d at 957-58 (net impression is a

2    question of fact).

3    **II.    The FAC Properly Alleges Uber Has Violated ROSCA**

4            As explained below, contrary to the MTD: (1) Uber's subscription is a textbook example

5    of a negative option feature, and the FAC sufficiently alleges that Uber has violated ROSCA by;

6    (2) failing to clearly and conspicuously disclose, before obtaining billing information, material

7    terms (Count III); and (3) charging consumers without their express informed consent (Count

8    IV).[7] Defendants dispute that ROSCA applies, but do not dispute that, if it does, the FAC states a

9    claim that they have failed to provide a simple mechanism for cancellation (Count V).

10           **A.    Uber One Employs a Negative Option Feature**

11           Despite Defendants' attempt to ignore the statute's text and this circuit's precedent,

12   Defendants' subscription plans fall squarely within ROSCA's definition of a "negative option

13   feature." ROSCA applies to any "negative option feature," which is, "in an offer or agreement to

14   sell or provide any goods or services, a provision under which the customer's silence or failure to

15   take an affirmative action to reject goods or services or to cancel the agreement is interpreted by

16   the seller as acceptance of the offer." 15 U.S.C. § 8403; 16 C.F.R. § 310.2(w).

17           As the FAC alleges, Uber One is a paradigmatic negative option feature. Consumers in

18   free trials "are automatically enrolled in and charged for an Uber One subscription" before the

19   end of their free trial period. FAC ¶ 39. *See United States v. Adobe, Inc.*, 791 F. Supp. 3d 966,

20   983 (N.D. Cal. 2025) (holding "free-to-pay conversion plans" are "negative option features.").

21   And, regardless of the method of enrollment, Uber One renews automatically and charges

22   consumers on a recurring basis unless they take affirmative action to cancel the agreement. FAC

23

24

---

[7] Defendants do not dispute that the terms alleged in Count III are material. MTD at 13, n. 4.

FILED UNDER SEAL

¶¶ 3, 17. "Such recurring charges, effected through silence, constitute negative option features." *United States v. Adobe*, 791 F. Supp. 3d at 983.

In sum, courts have applied the definition of a negative option feature "broadly to renewal subscriptions," that have features similar to Uber One. *FTC v. Doxo, Inc.*, 771 F. Supp. 3d at 1180 (citing cases); *see also United States v. Adobe*, 791 F. Supp. 3d at 982-83 ("Subscriptions that automatically renew by default unless the consumer affirmatively cancels are 'textbook example[s] of a negative option feature.'") (citations omitted); *FTC v. Amazon.com, Inc.*, 2025 WL 2677086, at *5 (W.D. Wash. Sept. 17, 2025) ("The plain language of ROSCA" confirms that "Prime is subject to ROSCA" because Defendants "automatically continue billing consumers for the service until they affirmatively cancel their membership.").[8]

Defendants' argument that ROSCA does not apply where the customer agrees to a subscription's terms at the outset, MTD at 13, has no basis in the statute and has been rejected by courts. *See United States v. Adobe, Inc.*, 791 F.Supp.3d at 983 (argument that Adobe subscriptions are not negative option features because consumers provide affirmative consent to recurring charges "misses the mark," as "[t]he relevant time for consumer action is not at the time of purchase but at the time of renewal"). Even where a customer enrolls through an affirmative act, it is the customer's "failure to cancel the agreement"—language Defendants simply ignore—that authorizes Uber to continue to charge consumers. *See FTC v. Amazon.com, Inc.*, 2025 WL 2677086, at *5 ("Defendants' artful application of contract law does not allow them to avoid this straightforward understanding of ROSCA[,]" and their "singular focus on the

---

[8] *See also FTC v. Dave, Inc.*, 2025 WL 2698698, at *13; *FTC v. Triangle Media Corp.*, 2018 WL 4051701, at *2 (S.D. Cal. Aug. 24, 2018); *FTC v. Cardiff*, 2020 WL 6540509, at *16-17 (C.D. Cal. Oct. 9, 2020); *FTC v. DirectTV, Inc.*, 2016 WL 5339797, at *2 (N.D. Cal. Sept. 23, 2016); *FTC v. Health Formulas, LLC*, 2015 WL 2130504, at *2, *16-17 (D. Nev. May 6, 2015); *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1076 (C.D. Cal. 2012); *FTC v. Hornbeam Special Sols., LLC*, 2022 WL 20357002, at *2 (N.D. Ga. Mar. 28, 2022) (applying ROSCA to "automatically-recurring monthly charges").

FILED UNDER SEAL

1    initial offer to join Prime is misplaced."). Indeed, a free-to-pay conversion like Uber's is

2    explicitly identified in ROSCA as employing a negative option feature. 15 U.S.C. § 8401(8)

3    (citing "free-to-pay conversion" as an example of "negative option sales").

4    **B.    Uber Has Failed to Disclose Material Terms Before Obtaining Consumer**

5    **Billing Information (Count III)**

6    The plain text of ROSCA requires disclosure of "all material terms of the transaction

7    *before* obtaining the consumer's billing information." *See* 15 U.S.C. § 8403(1) (emphasis added).

8    Though Defendants attempt to contest the inadequacy of their disclosures, Defendants do not

9    dispute, that, in violation of the plain words of the statute, all of Defendants' disclosures were

10   made only after Defendants had collected consumers' billing information (for a previous Uber

11   ride or delivery).[9] FAC ¶ 33. Thus, regardless of the *sufficiency* of those disclosures (and, as

12   discussed below, the disclosures were not sufficient), the *timing* of those disclosures—occurring

13   after Defendants had obtained the consumer's billing information—violates ROSCA.

14   This is a per se violation of ROSCA—and enough to entitle Plaintiffs to judgment as a

15   matter of law on Count III. *See also FTC v. Amazon.com*, 735 F. Supp. 3d 1297, 1320 (W.D.

16   Wash. 2024) (rejecting argument that ROSCA permits Amazon to use billing information already

17   on file); *FTC v. Doxo, Inc.*, 771 F. Supp. 3d at 1181 (holding that "FTC's allegations concerning

18   this sequence of events alone are sufficient to plausibly state a claim[…]" under ROSCA.).

19   Further, as the FAC alleges, Defendants have also failed to disclose material terms clearly

20   and conspicuously in violation of ROSCA. A "clear and conspicuous" disclosure is one that a

21   "reasonable [consumer] would notice and understand." *Barrer v. Chase Bank USA, N.A.*, 566

22   F.3d 883, 892 (9th Cir. 2009) (defining "clear and conspicuous" under Truth in Lending Act); *see*

23

---

24   [9] As the FAC alleges, consumers do not have to enter any billing information when signing up for Uber One; if the consumer has ever taken a ride with Uber, Uber will automatically charge the payment method it already obtained during that previous ride. FAC ¶ 27, Ex. 4; ¶ 33; ¶ 38.

FILED UNDER SEAL

*also Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019)

(under Fair Credit Reporting Act, "clear" means "reasonably understandable," and

"conspicuous" means "readily noticeable to the consumer") (citation omitted); *FTC v.*

*Amazon.com*, 735 F. Supp. 3d at 1314-15 (citing *Barrer* and *Gilberg* in interpreting ROSCA). In

evaluating this standard,[10] courts consider both the "context" of the transaction as a whole and

the "visual aspects" of the purported disclosure in comparison to other elements on the page. *See,*

*e.g.*, *id.* at *1318-20. As explained below, the FAC states a claim that Uber has violated ROSCA.

### i.    Count III(a): Uber Fails to Clearly and Conspicuously Disclose Consumers Are Being Enrolled in a Recurring Paid Subscription

First, as alleged in the FAC, Defendants have failed to clearly and conspicuously disclose

that consumers are being enrolled in a paid subscription. FAC ¶ 112. For example, Defendants

present consumers who are using Uber to book a ride or food delivery with pop-ups like "Love

Uber One? Get 50% off for a year." FAC ¶ 26. The pop-up does not explain that Uber One is a

separate subscription service, distinct from simply using Uber; the phrase "Love Uber One"

would lead a reasonable consumer to believe they already have Uber One, and thus Uber and

Uber One are the same, otherwise they could not know whether they "love" it or not. *See id*, Ex.

3. If they hit the button claiming "50% off," the next screen prompts them to "[t]ry for free."

FAC ¶ 27, Ex. 4. If they hit "Try for free," they are enrolled in a paid subscription with recurring

charges. FAC ¶ 28. Further, the charges begin even before the free trial period ends. FAC ¶¶ 39-

41, 86. Other times, when consumers are trying to book a ride, if they click a savings offer, a

pop-up appears, where the choices are to "Start saving" or "Cancel." FAC ¶¶ 29-30. It is unclear

---

[10] Defendants erroneously insert into ROSCA an element for deception under the FTC Act: that a representation be "likely to mislead consumers acting reasonably under the circumstances." *See* MTD at 14. While the FTC asserts–and the FAC plausibly alleges–Uber's disclosures were in fact "likely to mislead," it need only allege that Uber's disclosures were not "clear and conspicuous" under ROSCA. 15 U.S.C. § 8403(1).

FILED UNDER SEAL

1   what tapping cancel would cancel at this point – it could be the ride they are trying to book; they

2   have not signed up for anything else and thus could not cancel it. FAC ¶ 31. Consumers who hit

3   "Start saving" are enrolled in a paid subscription with recurring charges. FAC ¶ 31. Uber also

4   charges subscription fees to consumers who have never used Uber. FAC ¶ 38.

5          Where Defendants mention recurring charges, it is in much smaller, lighter, and less

6   prominent font than any other claims on the screens described above. FAC ¶ 27, Ex. 4; ¶ 30, Ex.

7   6; ¶ 32. ROSCA requires more; specifically, it requires *clear* and *conspicuous* disclosures—

8   based both on "visual aspects" of the purported disclosure and the "context" of the transaction

9   (*FTC v. Amazon.com*, 735 F. Supp. 3d at 1317-1320)—neither of which Uber addresses.

10         Defendants simply ignore the "visual aspects" of the disclosure in comparison to other

11  elements on the page. Courts regularly find that fine print disclosures, such as those relied on by

12  Uber, fail to satisfy ROSCA. *See, e.g.*, *id.* at 1318-20 (denying motion to dismiss ROSCA claim;

13  though terms were bolded, the page contained other "larger and/or colorful text"); *FTC v. Health*

14  *Formulas, LLC*, 2015 WL 2130504, at *16 (D. Nev. May 6, 2015) (defendants violated ROSCA

15  where terms were "buried in fine print on the payment page of [the] [d]efendants' websites");

16  *FTC v. Credit Bureau Ctr.*, 937 F.3d 764, 769 (7th Cir. 2019) (defendants violated ROSCA where

17  they made "incomplete disclosure behind more prominent language").

18         Defendants' MTD also does not address the "context" of the transaction. As the FAC

19  alleges, Uber enrolls consumers with unsolicited push notifications, pop-ups, and advertisements

20  that appear when they are trying to secure a ride or place a delivery. FAC ¶ 25; ¶ 26, Ex. 3; ¶ 27,

21  Ex. 4; ¶ 29, Ex. 5; ¶ 30, Ex. 6; ¶¶ 31, 36, 37. These consumers would have no reason to

22  scrutinize the page for "small print regarding enrollment in an automatically recurring

23  membership." *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1298 (E.D. Cal. 2024); *See*

24

FILED UNDER SEAL

1    *also FTC v. Amazon.com*, 735 F. Supp. 3d at 1320 (disclosures not "clear and conspicuous"

2    under ROSCA where consumer attempting to make one-time purchase, not enter a subscription).

3       Finally, Defendants' citation to cases interpreting state automatic renewal laws and

4    arbitration agreements, MTD at 14, is inapposite. *See Washington v. Internet Order, LLC*, 2015

5    WL 918694, at *5 (W.D. Wa. Mar. 2, 2015) ("Despite the existence of numerous consumer

6    protection laws in various states, Congress enacted ROSCA to specifically regulate the type of

7    negative-option selling alleged here").

8       ii.  **Count III(b): Uber Fails to Clearly and Conspicuously Disclose the**

9         **True Benefits and Savings**

10      As alleged in the FAC, and described above, Defendants not only fail to disclose, but

11   actively misrepresent, the true benefits and savings of the subscription. *See supra* Section I, B.ii-

12   iii; FAC ¶¶19-20, 22-23, 35, 40, 57-58. These claims obscure rather than disclose the truth about

13   benefits and savings. *See supra* Section I, B.ii-iii; FAC ¶¶ 22-23.

14      iii.  **Count III(c): Uber Fails to Clearly and Conspicuously Disclose When**

15        **Consumers Will Be Billed or Charged**

16      As alleged in the FAC, Uber fails to disclose clearly and conspicuously when consumers

17   will be billed or charged. FAC ¶¶ 32-33, 40-41, 77. Instead, Uber sometimes mentions a billing

18   date in fine print, and even that date is inaccurate. FAC ¶ 32. For example, when consumers are

19   enrolled in a subscription while purchasing an Uber ride or delivery, the checkout screen has

20   included fine print language stating, "You will be charged $9.99 on [billing date]," and when

21   consumers are enrolled via their account tab in the Uber app, the "Join Uber One" page has

22   included fine print language stating, "Billing starts [billing date]." FAC ¶ 30, Ex. 6; ¶ 32; ¶ 35,

23   Ex. 9. On other screens, Uber does not make the disclosure *at all*. FAC ¶ 30, Ex. 6. In fact, as

24

1    Defendants admit, Uber actually charges consumers 48 hours *before* the stated billing date. FAC

2    ¶¶ 32, 41, 81, 82; MTD at 5 ("payment is initiated 48 hours before renewal.").

3            iv.        **Count III(d): Uber Has Failed to Clearly and Conspicuously Disclose**

4                       **the Method of Cancellation**

5            As alleged in the FAC, consumers trying to cancel their subscriptions within 48 hours of

6    their renewal date must use a separate and more onerous method of cancellation, which is an

7    independent ROSCA violation. FAC ¶¶ 57-79. The FAC alleges additionally, however, that Uber

8    fails to disclose this cancellation process clearly and conspicuously. *See FTC v. Health*

9    *Formulas, LLC*, 2015 WL 2130504, at *10-11, 25-26 (holding cancellation terms were material

10   and were inadequately disclosed). The only place Uber mentions anything about how to cancel

11   before it starts charging consumers (and the disclosure that Defendants rely on, MTD at 15) is in

12   small, light gray fine print at the very bottom of the screen. For example, in the "Love Uber

13   One?" screens, *see supra* Section II.B.i, the only mention appears towards the bottom of the "Try

14   for free" page, in a block of text, 4 lines in, and reads: "To avoid charges cancel up to 48 hours

15   before [billing date] in the app." FAC ¶ 27, Ex. 4. This disclosure is not only unclear about how

16   to cancel up to 48 hours before the billing date, but there is also no information on where or how

17   to cancel and avoid charges within 48 hours. FAC ¶ 77. Defendants' flippant argument that they

18   are not required to provide a "screen-by-screen tutorial of every navigation step" is a red herring;

19   they admit they need to at least "tell consumers where to find the cancel flow," MTD at 15, but

20   the disclosure they point to does not provide even this bare minimum information. FAC ¶¶ 5, 77.

21           Uber's failure to clearly and conspicuously disclose its cancellation policy has been a

22   significant source of consumer complaints and harm, resulting in consumers being charged for

23   additional months or more in subscription fees because they could not discern how or where to

24

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
Case No. 4:25-cv-03477-JST

FILED UNDER SEAL

1    cancel. FAC ¶¶ 64, 79. *See FTC v. Cyberspace.com*, 453 F.3d at 1201 (evidence of actual

2    deception is "highly probative" in determining whether disclosures are adequate).

3    **C.    Uber Charges Consumers Without Express Informed Consent (Count IV)**

4    The FAC alleges that Defendants violate ROSCA's "express informed consent"

5    requirement. Defendants' argument that Uber obtains express informed consent because

6    "consumers are required to take affirmative action before enrolling," MTD at 16, fails for several

7    reasons. First, this impermissible competing version of the facts ignores well-pled allegations in

8    the FAC that Uber has charged consumers who never signed up at all. FAC ¶¶ 4, 38, 80, 82.

9    Indeed, Defendants do not move to dismiss Count II—Plaintiffs' unfairness claim—which

10    largely mirrors Count IV and is predicated on many of the same alleged facts.

11    Second, consumers could not provide express informed consent because, as alleged in the

12    FAC, Defendants failed to sufficiently disclose material information. *See supra* Section II.B;

13    *United States v. Adobe, Inc.*, 791 F. Supp. 3d at 986 (Court denies motion to dismiss express

14    informed consent count because "the Court finds the complaint does plausibly allege a violation

15    of ROSCA's clear and conspicuous requirement."); *FTC v. Amazon*, 735 F. Supp. 3d, at 1321

16    (holding a failure to clearly and conspicuously disclose material terms precludes express,

17    informed consent); *FTC v. Health Formulas, LLC*, 2015 WL 2130504, at *16-17.

18    Third, the FAC alleges that many consumers signed up for free trials under the guise that

19    they would be able to cancel before being charged only to find out they have already been

20    enrolled in and prematurely charged for an unwanted paid subscription, without any additional

21    affirmative steps on their part, and before their free trial has even ended. FAC ¶¶ 39-41, 81.

22    Defendants do not address how these consumers could have consented to the charges.

23    Fourth, the FAC alleges that many consumers took action to *revoke* consent and were

24    charged again anyway. FAC ¶¶ 80-87. For example, consumers are charged without consent

FILED UNDER SEAL

1  while canceling due to unreasonably long wait times in the Uber customer support chat queue,

2  even when they initiated their cancellation request well before the end of their free trial or

3  current subscription cycle. FAC ¶¶ 83-84. The FAC also alleges that Uber continues to charge

4  many consumers who *already* cancelled their subscriptions. FAC ¶¶ 85-87.

5  **III.    The FAC Properly Pleads Defendants' Liability for Civil Penalties**

6      The FAC properly seeks civil penalties for each violation of ROSCA.[11]

7  **A.    The FTC Followed the Statutory Procedures in 15 U.S.C. § 56; Plaintiffs**

8  **Were Not Required to Allege Procedural Steps in the Complaint**

9      Defendants argue that civil penalties are unavailable here because the FAC does not

10 affirmatively plead compliance with the notice requirements of 15 U.S.C. § 56. MTD at 17.

11 Defendants' contention is meritless. Defendants reference no source of authority supporting the

12 sweeping proposition that a federal agency must affirmatively allege compliance with all

13 statutory procedures and prerequisites to sue, or even a single instance where a court has

14 dismissed an FTC complaint for such a failure. Contrary to Defendants' speculation, the FTC

15 complied with 15 U.S.C. § 56. To the extent the Court requires more—which, given the

16 presumption of regularity,[12] it should not—the FTC will submit additional material, such as a

17 declaration under seal. Under analogous circumstances, the court in *FTC v. Consolidated Foods*

18 *Corp.*, 396 F. Supp. 1344, 1348-49 (S.D.N.Y. 1974), denied a plaintiff's motion to dismiss. This

19 Court should do the same.

20 **B.    The FAC Alleges Defendants' Knowledge, or Knowledge Fairly Implied**

21     The FAC pleads sufficient facts to show that Defendants had "actual knowledge or

22 knowledge fairly implied on the basis of objective circumstances" that their conduct violated

23 ───────────────

24 [11] Contrary to Defendants' assertions, MTD at 18, the FAC does not request civil penalties for violations of the FTC Act. Plaintiffs do not address Defendants arguments in this regard.
[12] *See United States v. Chem. Found.*, 272 U.S. 1, 15 (1926) (courts "presume [public officers] have properly discharged their official duties").

1    ROSCA. 15 U.S.C. § 45(m)(1)(A).[13] As discussed below, (1) the FAC pleads sufficient facts

2    regarding Defendants' knowledge; (2) the cases cited by Defendants are inapposite; and (3)

3    Defendants' purported mistake of law is *not* an appropriate or credible defense here.

4            First, the FAC pleads more than sufficient facts to demonstrate Defendants' actual

5    knowledge of their ROSCA violations or, at a minimum, that a reasonable person (or entity) in

6    Defendants' position would have recognized they were violating ROSCA. These facts include

7    more than a dozen publicly-filed actions brought by the FTC against other companies under the

8    FTC Act and ROSCA, including for failing to have simple cancellation mechanisms and

9    charging consumers without authorization under circumstances similar to those alleged here

10   (FAC ¶ 91); a public outpouring of complaints from customers about unauthorized charges and

11   difficulty canceling (*id.* ¶ 92); internal testing conducted by Uber reflecting significant customer

12   confusion regarding the cancellation process (*id.*); employee discussions of the problems with

13   Uber's disclosures (*id.*); and even Uber's receipt of a letter from the FTC in September 2024

14   asking questions about Uber's subscription programs, including enrollment and cancellation

15   mechanisms and compliance with ROSCA (*id.*). These are precisely the sort of facts that other

16   district courts in the Ninth Circuit have recently found plausibly alleged the civil penalty

17   knowledge standard. *See, e.g.*, *United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080,

18   1100–01 (S.D. Cal. 2024) (prior FTC enforcement actions and consumer complaints); *FTC v.*

19   *Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1332–34 (W.D. Wash. 2024), *motion to certify appeal*

20   *denied*, 2025 WL 2098599 (W.D. Wash. July 25, 2025) (consumer complaints, internal reports of

21   consumer confusion, and allegations that a company as large as Amazon should be aware of

22

---

23   [13] This is not, as Defendants claim, an "actual knowledge" requirement. MTD at 19; *United States v. Tech. Commc'ns Indus., Inc.*, 1986 WL 15489, at *3 (E.D.N.C. Dec. 22, 1986) ("Actual knowledge is not required."). Rather, the FTC may prevail by proving either that Defendants

24   were actually aware of ROSCA's existence and that they were violating it, or that "a reasonable person under the circumstances would have known." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996).

FILED UNDER SEAL

1   ROSCA's requirements); *FTC v. Dave, Inc.*, 2025 WL 2698698, at *18–19 (consumer complaints

2   and the company's compliance management system).[14]

3       Next, Defendants argue that knowledge has not been plausibly alleged because the FTC

4   has "repeatedly admitted" that ROSCA is "unclear." MTD at 19-20. Though this evidentiary

5   issue is inappropriate for resolution here, Plaintiffs note that other courts have categorically

6   rejected this contention: "[T]he record does not show that the FTC has 'admitted' that ROSCA

7   'lacks clarity.'" *FTC v. Amazon.com, Inc.*, 2025 WL 2098599, at *4 (W.D. Wash. July 25, 2025).

8       Finally, Defendants argue that scienter has not been plausibly alleged because Section

9   45(m) incorporates a "mistake-of-law defense." MTD at 19. But Defendants make no attempt to

10  specify the ROSCA requirements about which they were mistaken or explain why they were

11  mistaken, let alone ground their supposed entitlement to this defense to any facts alleged within

12  the four corners of the FAC. Under these circumstances, resolving this issue on the pleadings

13  would be improper. *FTC v. Benning*, 2010 WL 2605178, at *5 (N.D. Cal. June 28, 2010) (noting

14  factual disputes about whether a defendant was actually aware of the nature of the fraud or its

15  illegality are not appropriately weighed on a motion to dismiss).

16      Further, the defense would not be credible here. As discussed above, *supra* Section II, the

17  plain terms of ROSCA prohibit Defendants' conduct. A reasonable, prudent person in

18  Defendants' circumstances, with extensive legal resources, should have understood that ROSCA

19  applied to them.[15] *See United States v. Dish Network*, 954 F. 3d 970, 978 (7th Cir. 2020) ("A

20  large national corporation with the ability to hire sophisticated counsel is deemed to understand

---

[14] Both cases Defendants invoke to argue knowledge has not been pled are not on point. *FTC v. Am. Future Sys., Inc.*, 2024 WL 1376026, at *21 (E.D. Pa. Mar. 29, 2024), did not address corporate knowledge, and *CFPB v. CashCall, Inc.*, 2018 WL 485963, at *14 (C.D. Cal. Jan. 19, 2018) did not concern the knowledge-fairly-implied standard under Section 45(m). But, the FAC meets even Defendants' standard of "direct regulatory warnings, explicit notice of rule requirements, or continued violations after clear notice from authorities," MTD at 20; the FAC alleges continued misconduct after a letter from the FTC probed the practices at issue. FAC ¶ 92.

[15] Defendants do not dispute that they knew of ROSCA's *existence*. Nor could they. Uber has counsel responsible for ensuring compliance with all such consumer protection laws. FAC ¶ 93.

1    basic [application of the law].”). Prior FTC ROSCA enforcement actions and the FTC’s

2    investigation of Uber for ROSCA violations provided further notice that the statute applied to

3    their conduct. *See, e.g. Stratics*, 721 F. Supp. 3d at 1101 (prior enforcement actions); *FTC v. Day*

4    *Pacer LLC*, 689 F. Supp. 3d 609, 644 (N.D. Ill. 2023) (FTC’s investigation of defendants);

5    *United States v. Lassester*, 2005 WL 1638735, at *5 (M.D. Tenn. June 30, 2005).

6    **IV.    The Plaintiff States Were Properly Added as Plaintiffs**

7         Contrary to Defendants’ assertions, MTD at 21-25, the FAC plausibly alleges that the

8    Plaintiff States: have Article III standing, have authority to bring their claims, and have

9    sufficiently pled their claims in Counts I and II.

10        **A.    The Plaintiff States Have Pled Article III Standing**

11        The FAC offers multiple grounds for the Plaintiff States’ standing.[16] The FAC pleads

12   *parens patriae* standing because the Plaintiff States “express[] a quasi-sovereign interest,”

13   “allege[] injury to a sufficiently substantial segment of [their] population,” and “articulate[] an

14   interest apart from the interests of particular private parties.” *Table Bluff Rsrv. (Wiyot Tribe) v.*

15   *Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001) (citing *Alfred L. Snapp & Son, Inc. v.*

16   *Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982).[17]

17        First, the Plaintiff States have a “quasi-sovereign interest in the health and well-being—

18   both physical and economic—of [their] residents in general.” *Snapp*, 458 U.S. at 601.

19   Defendants do not contest that the FAC implicates this interest. Moreover, injuries that give rise

20   to *parens patriae* standing are “[t]ypically…injuries that the state, ‘if it could, would likely

---

[16] While Defendants take issue with the Plaintiff States’ *theory* of standing, they do not contest that they have met Article III’s baseline requirements: injury-in-fact, causation, and redressability. In any event, the FAC pleads concrete, particularized, and actual injury, *see* FAC ¶¶ 38, 89, 92, 138, traceable to the challenged action, *see id.* ¶¶ 87-89, that would be redressed by a favorable decision, *see id.* ¶ 118; *Hawaii v. Trump*, 859 F.3d 741, 762 (9th Cir. 2017).
[17] Many courts apply a two-part test, combining the “substantial segment of population” and “interest apart from private interest.” *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 n.1 (9th Cir. 2017). For completeness, the Plaintiff States separately address each element.

PLAINTIFFS’ OPPOSITION TO
DEFENDANTS’ MOTION TO DISMISS
Case No. 4:25-cv-03477-JST

FILED UNDER SEAL

attempt to address through its sovereign lawmaking powers.'" *California v. United States Dep't of Educ.*, 2018 WL 10345668, at *5 (N.D. Cal. June 27, 2018) (quoting *Snapp*, 458 U.S. at 607). Through the consumer protection statues at issue in this case, the Plaintiff States have attempted to do just that. *See, e.g.*, Md. Code Ann., Com. Law § 13-102 ("[C]onsumer protection is one of the major issues which confront all levels of government."). This same logic applies to the Plaintiff States' ROSCA claims, which Congress explicitly empowered the Plaintiff States to bring. Section 5 of ROSCA, 15 U.S.C.A. § 8401; *See Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230, 1235 (S.D. Fla. 2023) (finding state attorney general had standing to bring consumer protection claims as *parens patriae* where "a statute has been enacted" and "Congress clearly intended that the states be able to bring actions in that capacity").

Second, the FAC's detailed account of the widespread harm that Defendants have caused (*see* FAC ¶¶ 18, 38, 88, 89, 92, 106) pleads injury to a "sufficiently substantial segment" of the Plaintiff States' populations. *Snapp*, 458 U.S. at 593. These allegations comfortably establish injury that the Plaintiff States can vindicate under a *parens patriae* theory. *See In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 532 (S.D.N.Y. 2014) (finding it "easy to conclude that the States have Article III standing to bring this *parens patriae* lawsuit" where states alleged defendants were "preventing the competitive pricing of e-books"); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 23 (D.D.C. 2021) (states "properly pleaded sufficient injury to their quasi-sovereign interests" by alleging "millions of Plaintiffs' citizens have experienced" harm).[18]

Third, the Plaintiff States articulate an interest apart from private parties. The FAC describes "a public outpouring of complaints" and "significant customer confusion," and it

---

[18] Defendants' heavy reliance on *Missouri ex rel. Koster v. Harris* is misplaced. While *Harris* declined to find *parens patriae* standing based on alleged harm to a group of large egg producers, it expressly distinguished *Maryland v. Louisiana*, which found *parens patriae* standing because the harm fell on "a great many citizens in each of the plaintiff States." *Harris*, 847 F.3d 646, 653 (9th Cir. 2017) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 728 (1981)). As with *Maryland*, the FAC differs from *Harris* in that it alleges harm to millions of consumers. *Id.*

1    explains that "[c]onsumer confidence is essential to the growth of online commerce" and that

2    "the Internet must provide consumers with clear, accurate information." FAC ¶¶ 92, 106 (quoting

3    Section 2 of ROSCA, 15 U.S.C. § 8401). The Plaintiff States' interest in a marketplace free from

4    deceptive practices is separate from any consumer's monetary interest; the statutes at issue

5    reinforce this distinction. There is no private right of action under ROSCA. *See* 15 U.S.C. §

6    8403. And under many of the Plaintiff States' consumer protection statutes, the state—unlike a

7    private party—is not required to show harm. *See, e.g.*, Ala. Code § 8-19-5; D.C. Code 28-3904;

8    815 ILCS 505/2; Mont. Code Ann. 30-14-142(2), 30-14-133; Md. Code Ann., Com. Law § 13-

9    302; Minn. Stat. §§ 325F.69, subd.1; 325D.44; N.J. Stat. Ann. § 56:8-2; 73 P.S. §§ 201-3 and

10   201-2(4)(xxi); W. Va. Code § 46A-7-102(7)(M); *State v. Talyansky*, 409 Wis.2d 57, 74 (2023).

11          The Plaintiff States also have standing based on their interest in "the exercise of

12   sovereign power over individuals and entities within the relevant jurisdiction," which "involves

13   the power to create and enforce a legal code, both civil and criminal." *Snapp*, 458 U.S. at 601. As

14   the FAC asserts, the Plaintiff States bring this action pursuant to ROSCA and the "consumer

15   protection and/or business regulation authority conferred on them" by state laws, *parens patriae*,

16   and/or common law authority. FAC ¶¶ 2, 10. In enacting ROSCA, Congress observed that "the

17   aggressive sales tactics many companies use against their online customers have undermined

18   consumer confidence," and empowered state attorneys general to bring actions in federal court to

19   obtain injunctive relief. Section 1 and 5 of ROSCA, 15 U.S.C.A. § 8401. The Plaintiff States'

20   consumer protection statutes likewise authorize the Plaintiff States to seek relief for deceptive

21   conduct. FAC ¶ 10. These explicit statutory grants make clear that this is a sphere in which the

22   Plaintiff States have a critical interest in protecting their marketplaces. *See Massachusetts v.*

23   *E.P.A.*, 549 U.S. 497, 520 (2007) (states receive "special solicitude in [a] standing analysis,"

24   especially when the state has a "procedural right to challenge" the action in question); *Pileggi v.*

1   *Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1226 (D.C. Cir. 2025) ("Congress may

2   elevate certain harms 'to the status of legally cognizable injuries.'") (*quoting TransUnion LLC v.*

3   *Ramirez*, 594 U.S. 413, 425 (2021)).[19] As Defendants acknowledge, when a state sues to

4   vindicate sovereign interests, "it need only meet Article III's standing requirements." MTD at 28.

5          **B.      Defendants Misstate the Law Regarding the Plaintiff States' Authority to Sue**

6                 **in Federal Court**

7          Defendants claim that because certain States' consumer protection statutes authorize

8   enforcement of the acts in state court, those states lack authority to pursue their claims in federal

9   court. MTD at 23. But these statutory grants are permissive, not exclusive. While Defendants

10  devote a full page to quoting these statutes, they fail to cite a single requirement that says a state

11  may sue *only* in state court.[20] That is because there is no such limitation. *See, e.g.*, *United States*

12  *v. Consumer L. Prot., LLC*, 2023 WL 6200774, at *5 (E.D. Mo. Sept. 22, 2023) (rejecting

13  argument that state consumer protection claims must be brought in state court because "the word

14  may is permissive, not exclusive"); *In re Dynamic Random Access Memory (Dram) Antitrust*

15  *Litig.*, 2007 WL 2517851, at *12 (N.D. Cal. Aug. 31, 2007) (similar). Given the utter lack of

16  support for Defendants' position, there are plainly no "compelling reasons" to decline

17  supplemental jurisdiction. 28 U.S.C.A. § 1367(c)(4).

18

19

---

20  [19] Defendants attempt to obscure Plaintiff States' straightforward authority by invoking cases in
    which the parties lacked such an explicit statutory interest. *See Harrison v. Jefferson Par. Sch.*
    *Bd.*, 78 F.4th 765, 768 (5th Cir. 2023). Here, by contrast, federal and state legislatures both
21  recognized the need for consumer protection and empowered the states to carry it
    out; there is "no question that [a state's] interest in ensuring the accuracy of commercial
22  information in the marketplace is substantial." *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp.
    3d 31, 43-44 (D. Mass. 2020) (quoting *Edenfield v. Fane*, 507 U.S. 761, 769 (1993)).
23  [20] The cases Defendants cite to the contrary are well off the mark. Defendants' quote from
    *California v. Infineon Techs. AG* concerns states *other* than California attempting to sue under
    *California's* antitrust law, *not* their own state laws. 531 F. Supp. 2d 1124, 1139 (N.D. Cal. 2007).
24  And *Lupin Pharm., Inc. v. Richards* has no apparent connection to the present issue. There, a
    court declined jurisdiction over a private plaintiff's challenge to the enforcement of a civil
    investigative demand in state court. 2015 WL 4068818 (D. Md. July 2, 2015).

**C.     The FAC Sufficiently Pleads the Plaintiff States' Claims In Counts I and II**

Defendants contend that the Plaintiff States failed to sufficiently plead their claims in Counts I and II because the FAC includes a "barebones" list of the violated consumer protection statutes."[21] MTD at 25. This argument fails. Even under Rule 9(b), Plaintiffs are required only to "be 'specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). The FAC has alleged with particularity – over the course of some 100 paragraphs – exactly "how Uber One [] violated [the states'] consumer protection statutes." MTD at 25. That the FAC does not excerpt, verbatim, each referenced state law is irrelevant. These allegations sufficiently inform Defendants what they are accused of doing. This is all Plaintiff States were required to do. *See Kearns* 567 F.3d at 1124.[22] In *United Healthcare Servs., Inc. v. United Therapeutics Corp.*, the Court was required "to guess UHC's theory of the case" because "UHC does not even attempt to identify how UT's alleged actions violated each of these laws." 2024 WL 1256266, at *18 (D. Md. Mar. 25, 2024). Here, by contrast, Plaintiffs have alleged specific facts as to how Defendant violated state laws – Plaintiffs' theory of the case. In *Adeghe v. Procter & Gamble Co.*, the plaintiff failed "to identify the specific 'Consumer Fraud Acts' at issue," 2024 WL 22061, at *5 (S.D.N.Y. Jan. 2, 2024), which is not the case here. Though Defendants contend that there are "variations" in the state laws at issue, MTD at 25, Defendants do not point to any specific variation that would render Plaintiffs' claims insufficiently pled.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion.

---

[21] The caption to Defendants' argument asserts that Plaintiff States have not plausibly pled their claims. MTD at 25. However, Defendants do not make any actual argument about plausibility.
[22] To suggest Plaintiff States should have added duplicative paragraphs setting out what was already sufficiently pled is inconsistent with even the requirements of Rule 9(b). *See Ross v. A. H. Robins Co.*, 607 F.2d 545, 557 n.20 (2d Cir. 1979).

FILED UNDER SEAL

Dated: March 10, 2026

Respectfully submitted,

FEDERAL TRADE COMMISSION

*/s/ Stephanie Liebner*

Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (VA Bar No. 90647)
James Doty (NY Bar No. 4552550)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Stop CC-10232
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
Fax: (202) 326-3395

*Attorneys for Plaintiff*
*Federal Trade Commission*

OFFICE OF THE ATTORNEY GENERAL
OF MARYLAND, CONSUMER
PROTECTION DIVISION

*/s/ Philip Ziperman*

Philip Ziperman (MD Bar No.: 9012190379)
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
pziperman@oag.maryland.gov
(410) 576-6417

Luke Riley (MD Bar No.: 2502271005)
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
lriley@oag.maryland.gov
(410) 576-6568

*Attorneys for Plaintiff*
*Office of the Maryland Attorney General,*
*Consumer Protection Division*

FILED UNDER SEAL

1

2

3    STEVE MARSHALL
     *ATTORNEY GENERAL*

4    By:

5    */s/ Michael G. Dean*

6    Michael G. Dean
     *Assistant Attorney General*

7    */s/ Lindsay D. Barton*

8    Lindsay D. Barton*
     *Assistant Attorney General*

9    Office of the Attorney General
10   Consumer Interest Division
     501 Washington Avenue
11   P.O. Box 300152
     Montgomery, Alabama 36130-0152
12   (334) 242-7300
     Michael.Dean@AlabamaAG.gov
13   Lindsay.Barton@AlabamaAG.gov

14   *Attorneys for Plaintiff*
     *Attorney General of Alabama*

15

16   **KRISTIN K. MAYES**
     **Attorney General of Arizona**

17

18   */s/ Alyse Meislik*

     Alyse Meislik, AZ Bar No. 024052
19   Assistant Attorney General
     Office of the Arizona Attorney General
20   2005 North Central Avenue
     Phoenix, AZ 85004
21   Phone: (602) 542-3702
     Fax: (602) 542-4377
22   Email:  consumer@azag.gov
     Alyse.Meislik@azag.gov
23

     *Attorney for Plaintiff*
24   *Arizona Attorney General*

FILED UNDER SEAL

URSULA JONES DICKSON
District Attorney of Alameda County

*/s/ Andres H. Perez*
ANDRES H. PEREZ (SBN 186219)
Assistant District Attorney
HUY T. LUONG (SBN 251507)
Deputy District Attorney
Consumer, Environmental & Worker
Protection Division
7677 Oakport Street, Suite 650
Oakland, CA 94621
Telephone (510) 383-8600
Email: andres.perez@acgov.org
          huy.luong@acgov.org

*Attorneys for Plaintiff*
*People of the State of California*


STATE OF CONNECTICUT

WILLIAM TONG

ATTORNEY GENERAL OF THE STATE
OF CONNECTICUT

*/s/ Brendan T. Flynn*
Brendan T. Flynn
Fed. Bar No. ct04545
Assistant Attorney General
Office of the Attorney General of the
State of Connecticut
165 Capitol Ave.
Hartford, CT  06106
Tel: 860-808-5400
Fax: 860-808-5593
Brendan.Flynn@ct.gov

*Attorney for Plaintiff*
*Attorney General of the State of Connecticut*

FILED UNDER SEAL

1

2

3    BRIAN L. SCHWALB
     Attorney General for the District of Columbia

4    */s/ Coty Montag*
     COTY MONTAG [CA BAR #255703]

5    Deputy Attorney General, Public Advocacy
     Division

6    Coty.Montag@dc.gov

7    BETH MELLEN
     WILLIAM STEPHENS

8    Assistant Deputy Attorneys General, Public
     Advocacy Division

9

10   KEVIN VERMILLION
     Director, Office of Consumer Protection

11   EMILY HOLNESS
     Deputy Director, Office of Consumer

12   Protection

13   BRITTANY NYOVANIE
     Assistant Attorney General, Office of

14   Consumer Protection

15   Office of the Attorney General
     for the District of Columbia

16   400 6th Street NW, 10th Floor
     Washington, DC 20001

17   Tel: (202) 702-5686
     Email: Brittany.Nyovanie@dc.gov

18
     *Attorneys for Plaintiff*
19   *District of Columbia*

20

21

22

23

24

1

2
PEOPLE OF THE STATE OF ILLINOIS

3
*/s/ Hal B. Dworkin*

4
HAL B. DWORKIN, IL Bar No. 6318213
Senior Assistant Attorney General

5
Office of the Illinois Attorney General
Consumer Protection Division

6
Consumer Fraud Bureau
115 South LaSalle Street

7
Chicago, IL 60603
(312) 814-5159

8
Hal.Dworkin@ilag.gov

9
*Attorney for Plaintiff*
*The People of the State of Illinois*

10

11

12
FOR PLAINTIFF THE PEOPLE OF THE
STATE OF MICHIGAN:

13
*/s/ Aaron W. Levin*

14
AARON W. LEVIN
Assistant Attorney General

15
Corporate Oversight Division
Michigan Department of Attorney General

16
525 W. Ottawa Street
P.O. Box 30736

17
Lansing, MI 48909
Tel: (517) 335-7632

18
Fax: (517) 335-6755
levina@michigan.gov

19
*Attorney for Plaintiff*
*The People of the State of Michigan*

20

21

22

23

24

FILED UNDER SEAL

KEITH ELLISON
Attorney General of Minnesota

*/s/ Daniel Rife*
DANIEL RIFE
SARAH DOKTORI
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
Daniel.rife@ag.state.mn.us
Telephone: (651) 757-1104
Sarah.doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for Plaintiff*
*State of Minnesota by its Attorney General*
*Keith Ellison*


Catherine Hanaway
Missouri Attorney General

*/s/ Alison Esbeck*
Alison Esbeck (MO Bar # 58501)
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-4977
Alison.Esbeck@ago.mo.gov

Connor McNeall (MO Bar # 76836)
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-7888
connor.mcneall@ago.mo.gov

*Attorneys for Plaintiff*
*Missouri Attorney General's Office*

FILED UNDER SEAL

1

2

3                                            STATE OF MONTANA

4                                            */s/ Brent Mead*
                                             Brent Mead (MT #68035000)*
5                                            Deputy Solicitor General
                                             Office of Consumer Protection
6                                            Montana Department of Justice
                                             P.O. Box 200151
7                                            Helena, MT 59620-0151
                                             (406) 444-4500
8                                            Brent.mead2@mt.gov

9                                            *Attorney for Plaintiff*
                                             *State of Montana*

10

11                                           STATE OF NEBRASKA

12                                           */s/ Benjamin J. Swanson*
                                             Benjamin J. Swanson (NE #27675)
13                                           Assistant Attorney General
                                             Consumer Protection Bureau
14                                           Office of the Nebraska Attorney General
                                             2115 State Capitol
15                                           Lincoln, NE 68508
                                             (402) 471-7759
16                                           benjamin.swanson@nebraska.gov

17                                           *Attorney for Plaintiff*
                                             *State of Nebraska*
18

19

20

21

22

23

24

FILED UNDER SEAL

1

2

3      FOR PLAINTIFF STATE OF NEW
       HAMPSHIRE:

4      JOHN M. FORMELLA
       Attorney General

5
       */s/ Amanda N. Purcell*

6      Amanda N. Purcell, NH Bar #278532
       Assistant Attorney General

7      Consumer Protection and Antitrust Bureau
       New Hampshire Department of Justice

8      One Granite Place South
       Concord, NH 03301

9      Telephone: (603) 271-1215
       Email: Amanda.N.Purcell@doj.nh.gov

10

11     *Attorney for Plaintiff*
       *State of New Hampshire*

12

13     JENNIFER DAVENPORT
       ATTORNEY GENERAL OF NEW JERSEY

14
       */s/ Zeyad A. Assaf*

15     Zeyad A. Assaf
       Deputy Attorney General

16     New Jersey Office of the Attorney General
       Division of Law

17     124 Halsey St., 5th Fl.
       Newark, NJ 07102

18     Phone: (609) 696-5363
       Email: Zeyad.Assaf@law.njoag.gov

19

20     *Attorney for Plaintiff*
       *Attorney General of the State of New Jersey*

21

22

23

24

FILED UNDER SEAL

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General of the State of New York

By: */s/ Patrick Gibson*
Patrick Gibson (NY Bar No. 5267489)
Assistant Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6067
Email: patrick.gibson@ag.ny.gov

*Attorney for Plaintiff*
*The State of New York*


FOR PLAINTIFF THE STATE OF NORTH CAROLINA:

JEFF JACKSON
North Carolina Attorney General

*/s/ Jesse Ramos*
JESSE RAMOS (NC Bar No. 51663)
Special Deputy Attorney General

KUNAL CHOKSI (NC Bar No. 55666)
Senior Deputy Attorney General

BRIAN RABINOVITZ (NC Bar No. 41538)
Special Deputy Attorney General

Consumer Protection Division
North Carolina Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tel: (919) 716-6000
Fax: (919) 716-6050
Email: jramos@ncdoj.gov

*Attorneys for Plaintiff*
*The State of North Carolina*

DAVE YOST
OHIO ATTORNEY GENERAL

*/s/ Kevin R. Walsh*
Kevin R. Walsh (0073999)
Senior Assistant Attorney General
Consumer Protection Section
615 W. Superior Avenue, 11th Floor
Cleveland, Ohio 44113
Telephone: (216) 787-3447
Facsimile: (866) 947-3223
Email: Kevin.Walsh@ohioago.gov

*Attorneys for Plaintiff*
*Ohio Attorney General*

GENTNER DRUMMOND,
ATTORNEY GENERAL OF OKLAHOMA

*/s/ Christopher J. Campbell*
Cameron R. Capps, OBA No. 32742
Christopher. J. Campbell, OBA No. 33649
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 522-1260
Fax: (405) 521-3921
Cameron.Capps@oag.ok.gov
Chris.Campbell@oag.ok.gov

*Attorneys for Plaintiff*
*Attorney General of Oklahoma*

FILED UNDER SEAL

1

2     DAVID W. SUNDAY, Jr.
      PENNSYLVANIA ATTORNEY GENERAL

3     By:

4     */s/ Merna T. Hoffman*
      _____
5     MERNA T. HOFFMAN
      Senior Deputy Attorney General
      PA Attorney I.D. No. 312897
6     15th Floor, Strawberry Square
      Harrisburg, PA 17120
7     Email: mhoffman@attorneygeneral.gov

8     JOHN M. ABEL
      Chief Deputy Attorney General
9     Bureau of Consumer Protection
      PA Attorney I.D. No. 47313
10    15th Floor, Strawberry Square
      Harrisburg, PA 17120
11    Email: jabel@attorneygeneral.gov

12    *Attorneys for Plaintiff*
      *Attorney General of Pennsylvania*
13

14

15    **JAY JONES,**
      **ATTORNEY GENERAL OF THE**
      **COMMONWEALTH OF VIRGINIA**
16

17    */s/ Mark S. Kubiak*
      _____
      Mark S. Kubiak (VSB No. 73119)
18    Senior Assistant Attorney General
      Timothy S. Allison (VSB No. 98083)
19    Assistant Attorney General
      Office of the Attorney General of Virginia
20    202 North Ninth Street
      Richmond, Virginia 23219
21    Telephone: (804) 786-7364 (Kubiak)
                  (804) 786-0594 (Allison)
22    E-mail: mkubiak@oag.state.va.us
                  tallison@oag.state.va.us
23
      *Attorneys for Plaintiff*
24    *Jay Jones, Attorney General of the*
      *Commonwealth of Virginia*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**JOHN B. MCCUSKEY,**
**ATTORNEY GENERAL OF WEST**
**VIRGINIA**

*/s/ Tanya L. Godfrey*

Ann L. Haight (WVSB# 1527)
Deputy Attorney General, Consumer Director
Tanya L. Godfrey (WVSB# 7448)
Assistant Attorney General
Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Ann.L.Haight@wvago.gov
Tanya.L.Godfrey@wvago.gov

*Attorneys for Plaintiff*
*Attorney General of West Virginia*

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Laura E. McFarlane*

LAURA E. MCFARLANE
Assistant Attorney General
State Bar #1089358
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911
(608) 294-2907 (Fax)
laura.mcfarlane@wisdoj.gov

*Attorney for Plaintiff*
*State of Wisconsin*

1

2
\*_Pro hac vice_ application pending or
forthcoming

3
Co-counsel for attorneys appearing
_pro hac vice_:

4

5
Kerry O'Brien (CABN 149264)
Federal Trade Commission

6
Western Region San Francisco
90 Seventh St., Suite 14-300
San Francisco, CA 94103

7
Phone: (415) 848-5100
Email: kobrien@ftc.gov

8

9

10
**ECF ATTESTATION**

11
I, Stephanie Liebner, hereby attest that
concurrence in the filing of this document has
been obtained from the other signatories, and

12
that this document was served by electronic
filing or email on March 10, 2026, on all

13
counsel of record.

14
_/s/ Stephanie Liebner_

15
Stephanie Liebner (VA Bar No. 90647)
Federal Trade Commission

16
600 Pennsylvania Ave., NW
Washington, DC 20580
Phone: (202) 758-4177

17
Email: sliebner@ftc.gov
Fax: (202) 326-3395

18

19

20

21

22

23

24