Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| *FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN,*<br><br>Plaintiffs,<br><br>v.<br><br>**Uber Technologies, Inc.**, a corporation<br>**Uber USA, LLC**, a limited liability company,<br><br>Defendants. | Case No. 4:25-cv-3477<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>**Assigned to Hon. Jon S. Tigar**<br><br>**Date: April 9, 2026:**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 6**<br><br>**Oral Argument Requested**<br>**First Amended Complaint Filed: December 15, 2025** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ...............................................................................................................2

A.    Count One Fails To State A Claim. ..................................................................2

1.    Uber's statements about delivery fees and savings are not misleading. .......3

2.    Consumers may cancel Uber One at any time with no fee. .........................4

3.    Uber disputes the remaining Count One claims..........................................4

B.    ROSCA Does Not Apply To Uber One. ...........................................................5

C.    Count Three Should Be Dismissed Because Uber Clearly And Conspicuously Disclosed Material Terms. ................................................................................7

D.    Count Four Should Be Dismissed Because Uber Obtained Consent. ......................9

E.    The Requests For Civil Penalties Should Be Dismissed.........................................10

1.    The FAC does not allege that the FTC followed statutory procedures.......10

2.    The demand for penalties under ROSCA should be dismissed. .................10

3.    Several state demands for civil penalties must be dismissed......................12

F.    The States Fail To Plausibly Plead Standing, Authority To Sue, Or The Merits. ..12

1.    The FAC fails to plausibly plead Article III standing.................................13

2.    Certain States otherwise lack authority to bring their claims. ...................15

3.    The States' barebones citations fail to plausibly plead their claims. ..........15

III.  CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 11

*Cliffdale Assocs., Inc.,*
    103 F.T.C. 110 (1984) .............................................................................................. 9

*Consumer Fin. Prot. Bureau v. CashCall, Inc.,*
    2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ............................................................ 11

*Custom Commc'ns, Inc. v. FTC,*
    142 F.4th 1060 (8th Cir. 2025) ................................................................................ 6

*Ebner v. Fresh, Inc.,*
    838 F.3d 958 (9th Cir. 2016)..................................................................................... 8

*In re Elec. Brooks Antitrust Litig.,*
    14 F. Supp. 3d 525 (S.D.N.Y. 2014)......................................................................... 13

*FTC v. Am. Future Sys., Inc.,*
    2024 WL 1376026 (E.D. Pa. Mar. 29, 2024)............................................................ 11

*FTC v. Amazon.com, Inc.,*
    2025 WL 2677086 (W.D. Wash. Sept. 17, 2025)...................................................... 6

*FTC v. Amazon.com, Inc.,*
    735 F. Supp. 3d 1297 (W.D. Wash. 2024)................................................................. 7

*FTC v. Consol. Foods Corp.,*
    396 F. Supp. 1344 (S.D.N.Y. 1974).......................................................................... 10

*FTC v. Corpay, Inc.,*
    164 F.4th 807 (11th Cir. 2026) ................................................................................ 4

*FTC v. Cyberspace.Com LLC,*
    453 F.3d 1196 (9th Cir. 2006).................................................................................. 2

*FTC v. DIRECTV, Inc.,*
    2018 WL 3911196 (N.D. Cal. Aug. 16, 2018)........................................................... 2

*FTC v. Doxo, Inc.,*
    771 F. Supp. 3d 1162 (W.D. Wash. 2025).................................................................. 6

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

*FTC v. Health Formulas, LLC,*
    2015 WL 2130504 (D. Nev. May 6, 2015) ............................................................................. 9

*Keebaugh v. Warner Bros. Ent. Inc.,*
    100 F.4th 1005 (9th Cir. 2024) ............................................................................................ 9

*Missouri ex rel. Koster v. Harris,*
    847 F.3d 646 (9th Cir. 2017) ........................................................................................ 13, 14

*Maryland v. Louisiana,*
    451 U.S. 725 (1981) ........................................................................................................... 14

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ........................................................................................................... 14

*Moore v. Trader Joe's Co.,*
    4 F.4th 874 (9th Cir. 2021) ................................................................................................. 2

*New York v. Facebook, Inc.,*
    549 F. Supp. 3d 6 (D.D.C. 2021) ....................................................................................... 13

*Pac. Dawn LLC v. Pritzker,*
    831 F.3d 1166 (9th Cir. 2016) ............................................................................................ 12

*Punchbowl, Inc. v. AJ Press LLC,*
    2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) .................................................................... 9

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.,*
    946 F.3d 951 (6th Cir. 2020) ............................................................................................. 14

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................................................................... 14

*United Healthcare Services, Inc. v. United Therapeutics Corp.,*
    2024 WL 1256266 (D. Md. Mar. 25, 2024) ...................................................................... 15

*United States v. Adobe, Inc.,*
    791 F. Supp. 3d 966 (N.D. Cal. 2025) ................................................................................ 6

*United States v. Dish Network,*
    954 F.3d 970 (7th Cir. 2020) ............................................................................................. 12

*United States v. Stratics Networks, Inc.,*
    721 F. Supp. 3d 1080 (S.D. Cal. 2024) ............................................................................. 11

**Statutes**

15 U.S.C. § 45 .......................................................................................................................... 11

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

15 U.S.C. § 8401 ........................................................................................................................ 6

15 U.S.C. § 8403 ........................................................................................................................ 5

**Other Authorities**

16 C.F.R. § 310.2 .................................................................................................................... 5, 6

84 Fed. Reg. 52393 (Oct. 2, 2019) ............................................................................................ 5

88 Fed. Reg. 24716 (Apr. 24, 2023) .......................................................................................... 5

89 Fed. Reg. 90476 (Nov. 15, 2024) .......................................................................................... 7

91 Fed. Reg. 12318 (Mar. 13, 2026) ........................................................................................ 12

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

## I.    INTRODUCTION

Ignoring Uber One's popular benefits and loyal subscribers, Plaintiffs have built a lawsuit around the fiction that reasonable consumers were misled into joining Uber One by truthful statements. The Opposition leans into that fiction. Plaintiffs insist, for example, that reasonable consumers would think that "you could save $25" actually means "you will save $25." According to Plaintiffs, those same reasonable consumers would also think that "$0 delivery fees on eligible orders"—with an explicit definition of what counts as "eligible"—actually means "$0 delivery fees on all orders." And reasonable consumers who subscribe to all kinds of monthly services in their daily lives would apparently think that a clearly disclosed monthly subscription fee for monthly benefits is actually an "additional fee" for nothing. Plaintiffs give reasonable consumers far too little credit. These are objectively unreasonable interpretations.

The Opposition's additional arguments do not save the FAC. The early posture of the case is a compelling reason to dismiss, as it would avoid unnecessary and costly discovery regarding claims that lack a factual basis, particularly given that Plaintiffs have already had the benefit of investigating before filing suit. And no amount of discovery could save Plaintiffs' ROSCA claims, which depend on a sweeping, atextual interpretation that would grant the FTC (or even a single state) the authority to regulate the specific web designs of every company offering a subscription on the internet. That reading is especially implausible because ROSCA does not speak with the specificity Plaintiffs demand here, and even the FTC has acknowledged that the statute does not set out detailed design rules. The belated attempt to add 22 Plaintiff States—and to seek penalties that the FTC cannot seek on its own—is also rife with problems. The FAC omits basic pleading requirements, like facts establishing standing or facts alleging how Uber violated state laws that are just summarily listed in vague charts. The States' main response is that they did not need to do anything else—so long as a State has a consumer protection statute, citing those laws is enough to show standing and to state a viable claim for relief. Plaintiffs are incorrect. Their claims and requested remedies fail as a matter of law, and the Court should grant Uber's motion.

## II.    ARGUMENT

### A.    Count One Fails To State A Claim.

Count One should be dismissed because the FAC itself shows that the targeted statements are truthful, not false or misleading to reasonable consumers. That is true regardless of which standard applies, but especially so under the heightened requirements of Rule 9(b). Plaintiffs' contention that Rule 9(b) does not apply, Opp. 3–4, is meritless. In fact, they cite several cases applying Rule 9(b) to Section 5 claims. Opp. 4–5 (citing *FTC v. Dave, Inc.*, 2025 WL 2698698 (C.D. Cal. Sept. 12, 2025); *FTC v. Wellness Support Network, Inc.*, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011); *FTC v. Lunada Biomedical, Inc.*, 2016 WL 4698938 (C.D. Cal. Feb. 23, 2016)). What matters is not how a claim is styled but whether it sounds in fraud. These claims clearly do. And Plaintiffs ignore entirely Uber's case law showing that the piggyback state-law claims are also subject to Rule 9(b), Mot. 7 & n.2—providing only an irrelevant assertion that the substance of state law often considers substantive interpretations of Section 5, Opp. 4 n.4.

Plaintiffs reliance on "net impression," *see* Opp. 5–9, also does not help Count One. They invoke that standard as though it were a separate bar to dismissal. It is not. The Ninth Circuit has repeatedly held that whether an advertisement would mislead a reasonable consumer may be resolved as a matter of law where the representation, *read as a whole*, is not misleading. *See, e.g., Moore v. Trader Joe's Co.,* 4 F.4th 874, 880–81 (9th Cir. 2021). And nothing in the FAC alleges how reasonable consumers could derive a false net impression from entirely true statements. To the contrary, the net impression standard only reinforces dismissal here, because it considers Uber's disclosures alongside the challenged statements. *FTC v. DIRECTV, Inc.*, 2018 WL 3911196, at *6, *9, *13–15 (N.D. Cal. Aug. 16, 2018) (finding no misleading net impression where the challenged terms were adequately disclosed and accurately described the offer). The net impression of Uber's enrollment screens is that the consumer is agreeing to a recurring paid subscription and is a far cry from the misleading "fine print disclosures" that courts have deemed too obscure to affect a consumer's overall impression. *Compare, e.g.*, Mot. 7–8, with *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (fine-print disclosure on reverse side of check).

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

**1.      Uber's statements about delivery fees and savings are not misleading.**

*Delivery fees*. The FAC does not plausibly plead that Uber misrepresented that Uber One members receive "$0 delivery fees on eligible" orders. FAC ¶¶ 20, 23 (emphasis added). There is no allegation that any consumer paid a delivery fee on a single eligible order. Mot. 7. And no reasonable consumer would plausibly be misled into believing that Uber was promising no delivery fees on all orders when it promised no delivery fees on eligible orders. Mot. 7–8. As many courts have recognized, reasonable consumers understand qualifying language. *See id.* 7–9.

Plaintiffs' responses sidestep rather than cure the core deficiency of their complaint. They say that Uber's "representation that consumers would pay $0 delivery fees is false or misleading because many subscribers reported paying delivery fees." Opp. 9. But that framing reimagines Plaintiffs' actual claim—as the FAC concedes, Uber promised that consumers would pay $0 delivery fees on eligible orders. *See* FAC ¶¶ 20, 23. So Plaintiffs pivot to a peculiar "logic" game, arguing that Uber "could promise $0 delivery fees on 'eligible' orders but designate all orders 'ineligible'." Opp. 9.[1] The FAC does not allege that Uber ever did that (it did not). Plaintiffs cannot invent an unalleged theory, highlight that the unalleged theory would state a claim, and then use that unalleged theory to support their claim here. What matters are the FAC's allegations, which are plainly deficient.

Nor can Plaintiffs evade dismissal by claiming that this is an "issue[] of fact." Opp. 9. Courts have dismissed analogous deception claims that ignore qualifying language. *See* Mot. 8. Plaintiffs make no attempt to distinguish those cases, and their own single citation to a decision after a bench trial cannot establish that there are fact issues here. *See* Opp. 10 (citing *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 957–58 (N.D. Ill. 2006)). As a matter of law, it was not false or misleading for Uber to promise "$0 delivery fees on eligible orders" and then to fulfill that promise.

*Monthly savings*. For similar reasons, it was not false or misleading for Uber to tell consumers that they could save $25 per month—all while disclosing that this is the average monthly

---

[1] Uber's discussion of its advertisements that define "eligible," Mot. 8, is not a request "to look beyond the four corners of the complaint," Opp. 9 n.6. It is a reminder that the FAC selectively crops and quotes from Uber's materials and therefore avoids providing the full context.

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

savings and defining "savings." Mot. 8–9. Plaintiffs nowhere dispute that some consumers do save $25 or that this is the average savings. *See* Opp. 8 ("most consumers do not save $25"). That is what "could" means. Uber's conditional statements were not false or misleading as a matter of law, because all Uber did was tell consumers that this result was "capable" of happening, not that it "typically or always" happens. Mot. 8 (quoting *Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2023 WL 7284160, at \*3 (N.D. Cal. Nov. 3, 2023) (Tigar, J.)); *id.* 9.

Ignoring this point (and Uber's caselaw), Plaintiffs (Opp. 8) attack the font size and color of Uber's disclosures that $25 is an average and that "[e]stimated savings do not include [the] membership price." FAC ¶ 57, Ex. 19. Because "could" does not mean "will," however, Uber's representation that consumers *could* save $25 would not be false or misleading even without those disclosures. And Plaintiffs' single case on font-size is easily distinguishable: there, consumers had no reason to read further disclosures because the ads "promise[d] … certain … savings … without condition or caveat." *FTC v. Corpay, Inc.*, 164 F.4th 807, 835 (11th Cir. 2026).

### 2.    Consumers may cancel Uber One at any time with no fee.

Count One's cancellation allegations fail because consumers can cancel "any time," and consumers can do so with "no additional fees." Mot. 10–11. Depending on the timing of the cancellation, the most that the FAC alleges is that some late-cancelling consumers might pay membership charges—not an "additional fee"—for another month. *Id.* Like the FAC, Plaintiffs' opposition cannot twist these truthful disclosures into something unlawful. In Plaintiffs' words, what the FAC dubs "additional fees" actually come "in the form of next month's or year's subscription." Opp. 6. As Uber explained, however, that is not an "additional fee"; it is a membership charge for membership benefits. Mot. 11. Plaintiffs cite no case in support of their membership-charges-are-actually-fees interpretation, and they ignore Uber's cases explaining that reasonable consumers understand what "fees" are.

### 3.    Uber disputes the remaining Count One claims.

Plaintiffs mischaracterize Uber's arguments and contend that Uber "do[es] not dispute" that the FAC adequately pleads certain claims. Opp. 5, 8, 9. Plaintiffs are mistaken: page one of Uber's

motion made clear that "there is no merit to the FAC's factual allegations, and Uber intends to vigorously dispute them." Mot. 2. Filing a focused and partial motion to dismiss does not amount to a concession about other allegations or claims. And indeed, Uber moved to dismiss allegations about "when [it] will charge consumers and [whether] consumers have authorized the charges," Opp. 5, under ROSCA, as explained below.

### B.    ROSCA Does Not Apply To Uber One.

ROSCA's text shows that the law does not apply here. *See* Mot. 12–13. A negative option exists only when inaction is treated as "acceptance of the offer" "to sell or provide any … services." 16 C.F.R. § 310.2(w); *see* 15 U.S.C. § 8403. But consumers accept the sole "offer" to "provide" Uber One "services" through affirmative conduct—not "silence or failure." Because Uber One requires affirmative acceptance at enrollment, not later inaction, no negative option exists.

Largely ignoring the text, Plaintiffs advance a sweeping interpretation of ROSCA that would grant the FTC authority to dictate web design choices—down to font size, color and placement—for every company that offers a subscription service. The Court should reject that atextual interpretation. That reading is improbable because Plaintiffs seek to extract detailed design mandates from a statute that does not contain them. ROSCA sets out general prohibitions, not a code regulating free-trial conversions, stored billing information, button hierarchy, or cancellation architecture. The FTC itself has acknowledged that ROSCA's "simple mechanisms" requirement lacks specificity and that the statute "does not specify" what methods satisfy that standard. *See* 84 Fed. Reg. 52393, 52396 (Oct. 2, 2019). Plaintiffs nevertheless ask the Court to adopt precisely the sort of detailed and novel reading the agency has tried, unsuccessfully, to supply through later rulemaking. Negative Option Rule, 88 Fed. Reg. 24716, 24718 (Apr. 24, 2023).

Plaintiffs first assert that Uber One is a "paradigmatic negative option feature" because it is a "free-to-pay conversion." Opp. 10, 12. But negative options and free-to-pay conversions are distinct concepts, and Congress did not sweep all of the latter under ROSCA. ROSCA expressly incorporates the Telemarking Sales Rule's definition of "negative option feature," *see* 15 U.S.C. § 8403, but not that Rule's separate definition of "[f]ree-to-pay conversion," 16 C.F.R. § 310.2(r).

Sidley Austin LLP
Attorneys at Law

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
Case No. 4:25-cv-3477

ROSCA's own findings (which Plaintiffs invoke, Opp. 12), underscore the distinction, by separately discussing "'free-to-pay conversion' and 'negative option' sales." 15 U.S.C. § 8401(8) (faulting "[t]hird party sellers" for their "use of 'free-to-pay conversion' and 'negative option' sales"). And Plaintiffs' citation to *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966, 983 (N.D. Cal. 2025), further undermines their position: that case's statement that free-to-pay conversions are a "type of negative option feature" relies on a 2024 FTC rule that does *not* govern ROSCA and that has been struck down. *Custom Commc'ns, Inc. v. FTC*, 142 F.4th 1060, 1064 (8th Cir. 2025).

Regardless, *Adobe* is far afield. There, consumers were allegedly defaulted without their consent into an "Annual, Paid Monthly" plan that carried a one-year commitment and a substantial early termination fee. Complaint ¶¶ 2–5, 27–30, *United States v. Adobe Inc.*, No. 5:24-cv-03630-BLF (N.D. Cal. filed June 17, 2024). Adobe "clearly disclose[d] the [early termination fee] only when subscribers attempt[ed] to cancel, turning the stealth ETF into a powerful retention tool that generates significant revenues by trapping consumers in subscriptions they no longer want." *Id.* ¶ 3. The FAC here alleges no comparable features: no annual commitment, no early termination fee, and no undisclosed financial liability.

Plaintiffs' other theory—that all "renewal subscriptions" are negative option features—fails as well. *Contra* Opp. 11 & n.8 (quoting *FTC v. Doxo, Inc.*, 771 F. Supp. 3d 1162, 1180 (W.D. Wash. 2025). Courts adopting that view have assumed that each renewal constitutes a new offer and a new acceptance. *See, e.g.*, *Doxo, Inc.*, 771 F. Supp. 3d at 1180; *FTC v. Amazon.com, Inc.*, 2025 WL 2677086, at *5 (W.D. Wash. Sept. 17, 2025). But here the FAC demonstrates that Uber extends only one "offer" for Uber One "services," which each consumer "take[s] an affirmative action" to accept. *See* Mot. 12–13. Trying to sidestep this fact, Plaintiffs argue that Uber One employs a negative option by interpreting customers' "failure … to cancel the agreement" each month as "acceptance of the offer." Opp. 11; *see* 16 C.F.R. § 310.2(w). But a consumer's later decision not to cancel is not "acceptance"; it simply allows an already accepted agreement to continue. By treating renewal billing as the relevant acceptance, Plaintiffs collapse the distinction between acceptance of an offer and continuation of an existing agreement.

**C.    Count Three Should Be Dismissed Because Uber Clearly And Conspicuously Disclosed Material Terms.**

Even assuming ROSCA applies, the ROSCA counts should be dismissed because they fail to state a claim. Starting with Count Three, Plaintiffs' opposition confirms what the FAC's images show: Uber clearly and conspicuously discloses all material terms of Uber One.

Plaintiffs start by contending (Opp. 12) that Uber violates ROSCA even if Uber clearly and conspicuously discloses the material terms and obtains consumers' express informed consent—because some consumers enroll in Uber One using stored billing information. As one court explained, however, "[n]othing in ROSCA says that companies … may not give consumers the option to autofill the billing information already on file." *FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1320 (W.D. Wash. 2024). The FTC itself recently acknowledged the same point: "[W]here a consumer has previously provided account information to the seller and expressly allowed the seller to store that information," the seller may use that information to enroll the consumer in a subscription—as long as the seller "make[s] the required disclosures prior to obtaining the consumer's consent to use saved account information." 89 Fed. Reg. 90476, 90498 & n.305 (Nov. 15, 2024). That is precisely what Uber does: the enrollment screen discloses the material terms, then shows the stored billing information—alongside a prominent "Switch" option allowing the consumer to choose a different card—before presenting the consumer with the button to join Uber One. *See* FAC ¶ 35, Ex. 9. That is all ROSCA (even as previously interpreted by the FTC) requires.

When Plaintiffs turn to Uber's disclosures, they call for a "contextual" and "visual" inquiry, while engaging in the opposite. Opp. 13–14. Plaintiffs excerpt snippets of text and design features, while ignoring others. Worse, they repeatedly emphasize screens that do not enroll Uber One subscribers, *see, e.g.*, FAC ¶¶ 26, 29, and that therefore do not purport to disclose the material terms of Uber One, *see* Opp. 13. Looking at the relevant flows in context, the screens are reasonably understandable and readily noticeable to an ordinary internet consumer. *See* Mot. 14.

Recurrence. The FAC's own enrollment images show that Uber discloses that Uber One is a recurring membership—one that begins on a stated date and continues monthly or yearly unless

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

cancelled. *Id.*; *see also* FAC ¶¶ 17, 27, 30, 35, 39–41. Any ordinary internet consumer who sees disclosures such as "Try Uber One," "Join Uber One," "You'll be charged $9.99 on [billing date] and every month until you cancel in the app," and "Billing starts [date] for $9.99/mo" would understand that they are enrolling in the monthly subscription program called Uber One. Whatever Plaintiffs say about Uber's font, color, and layout choices (Opp. 13–14), consumers understand what it means to join a membership that charges monthly until cancelled. Nor does that understanding disappear simply because the offer appears while consumers "are using Uber to book a ride or food delivery." *Id.* 13–14. Cross-selling and upselling memberships are ubiquitous practices, and ROSCA does not prohibit them.

Plaintiffs' contrary view depends on the assumption that consumers either ignore disclosures or find common subscription language inherently confusing. Neither assumption is consistent with the "reasonable consumer" standard. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); Opp. 13–14. Moreover, contrary to Plaintiffs' theory, other courts have found similar recurrence disclosures clear and conspicuous. Mot. 14. These cases cannot be dismissed out of hand as about "state automatic renewal laws and arbitration agreements," Opp. 15; they answer the same fundamental question ROSCA asks: whether the disclosures are objectively clear and conspicuous. Indeed, Plaintiffs rely on non-ROSCA authorities for the same reason. *See* Opp. 12–13.

Timing of charges. Plaintiffs' cursory billing-disclosure arguments (Opp. 15–16) fare no better. Even assuming that the timing of charges is a material term, Uber plainly discloses it. *See* Mot. 14–15. Plaintiffs still fail to explain how straightforward statements like "Billing starts Jul 16, 2024 for $9.99/mo," immediately above the enrollment button, could be unclear or inconspicuous.[2]

Cancellation method. The FAC's enrollment screens also disclose—immediately above the button to join Uber One—how to cancel: "in the app." FAC ¶¶ 27, 30, 35 & Exs. 4, 6, 9. Plaintiffs nevertheless assert that Uber provides "no information on where or how to cancel and avoid charges within 48 hours" of the billing date, Opp. 16. That is incorrect. As the enrollment screens state, all consumers can initiate the cancellation process "in the app," which is true for both self-cancel and

---

[2] Puzzlingly, Plaintiffs claim that "Uber does not make" billing date "disclosure[s] at all" in certain flows, Opp. 15, while citing only to a flow that obviously states a billing date, FAC ¶ 30, Ex. 6.

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

support-assisted cancel, *see* Mot. 5. Unable to answer Uber's numerous cases deeming materially similar disclosures (such as, "Cancel … via Account Details") sufficient, Plaintiffs rely instead on *FTC v. Health Formulas, LLC*, 2015 WL 2130504 (D. Nev. May 6, 2015). But there, the defendants' complex cancellation policies appeared, in language that was not "clear and readily understandable," "below and to the left of the 'Order Now' button," where consumers might miss it. Here, by contrast, Plaintiffs' own exhibits show the cancellation language on the enrollment screen, adjacent to the action button the user must tap to enroll. That is clear and conspicuous.

**D.    Count Four Should Be Dismissed Because Uber Obtained Consent.**

The same exhibits that defeat Count Three also defeat Count Four. As Uber explained (Mot. 16–17), a consumer provides express informed consent if "the consumer takes some action, such as clicking a button," after being informed of the material terms and told that taking that action will trigger the transaction. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1018 (9th Cir. 2024). Here, in each flow, consumers must affirmatively tap to enroll, after being shown the clear and conspicuous disclosures just discussed. FAC ¶¶ 27, 30, 35. Courts have repeatedly held that materially similar disclosures coupled with an affirmative click constitute express informed consent. *See* Mot. 17. Plaintiffs' four responses (Opp. 17–18) are unpersuasive.

First, Plaintiffs point to a handful of "allegations in the FAC that Uber has charged consumers who never signed up at all." Opp. 17. That is not enough. Plaintiffs must show that "a significant minority of reasonable consumers" were misled. *See* FTC Policy Statement on Deception at 1, 10, n.20, appended to *Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984). A few scattered complaints is not significant. *See Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *11 (C.D. Cal. Aug. 22, 2024) ("100 instances of confusion" among "thousands" was "insignificant").

Second, Plaintiffs repeat their defenses of Count Three, asserting that consumers could not provide express informed consent because Uber supposedly failed to disclose material terms clearly and conspicuously. That argument fails for the same reason Count Three does. *See supra* 7.

Third, Plaintiffs argue (Opp. 17) that a consumer who signs up for a free trial that converts to a paid subscription has not consented to the paid subscription. But the relevant consent is

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

obtained at signup, when the consumer clicks "Try for free," "Start Saving," or "Join Uber One" after being told that they are enrolling in a free trial that becomes a paid, recurring membership. Mot. 16–17. Plaintiffs cite nothing in ROSCA requiring a second consent. Their theory would mean that every disclosed free-trial conversion is unlawful unless the seller re-solicits assent at the moment billing begins. ROSCA imposes no such requirement.

Fourth, Plaintiffs rely on allegations that some consumers later attempted to revoke consent, were routed to support, or were charged again anyway. Opp. 18. Those allegations are about cancellation, not enrollment. They do not retroactively undo the express informed consent given at signup. Otherwise, any alleged defect in cancellation processing would automatically become a failure of express informed consent, collapsing distinct ROSCA theories into one. That is not even how Plaintiffs pleaded this case. *See* FAC ¶¶ 114–17 (pleading Counts Four and Five separately).

## E.    The Requests For Civil Penalties Should Be Dismissed.

The Court should dismiss the demands for civil penalties under ROSCA, and certain penalty demands under state law. Mot. 19–21. (The FTC now admits, despite ambiguity in the FAC, that it is not seeking penalties under the FTC Act. Opp. 18 n.11).

### 1.    The FAC does not allege that the FTC followed statutory procedures.

The Opposition admits that the FAC nowhere alleges that the FTC followed the procedures Congress mandated "before commencing" any civil action seeking civil penalties. The FTC asks the Court to take its word for it, but it offers no good reason to do so. The sole and 50-year-old case the FTC cites does not help it. There, the court denied a motion to dismiss because—although the complaint did "not enumerate the facts evidencing compliance with the[] procedural requirements"—an "affidavit" from an "attorney for the Federal Trade Commission[] establishe[d] that the Commission properly followed the statutorily required procedural steps." *FTC v. Consol. Foods Corp.*, 396 F. Supp. 1344, 1348 (S.D.N.Y. 1974). The FTC has submitted no such affidavit.

### 2.    The demand for penalties under ROSCA should be dismissed.

The Opposition confirms that the FAC has not pled the knowledge required for civil monetary penalties under ROSCA. Under that exacting standard, the FTC must show that each

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

defendant had "actual knowledge" or "knowledge fairly implied on the basis of objective circumstances" that Uber's acts were "unfair or deceptive" and "prohibited by [ROSCA]." 15 U.S.C. § 45(m)(1)(A). This standard is higher than even recklessness, *see Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2018 WL 485963, at *14 (C.D. Cal. Jan. 19, 2018), and thus higher than the "reasonable person (or entity) in Defendants' position" standard that the FTC tries to construct, Opp. 19, 20. The FAC does not plead facts to clear this bar. Mot. 19–20.

The Opposition points to: (1) consumer complaints about Uber One, internal testing, and employee discussions; (2) suits against other companies; (3) and the FTC's 2024 voluntary access letter in the lead up to this case. These allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, a company's awareness of customer complaints, internal testing, and employee views about potential design improvements is not the same as awareness that the company is violating the law. Customer complaints illustrate the point. In "any business, some customer complaints are expected," *FTC* v. *Am. Future Sys., Inc.*, 2024 WL 1376026, at *21 (E.D. Pa. Mar. 29, 2024), even when a business perfectly complies with every law. And unlike in the FTC's case, *United States v. Stratics Networks, Inc.*, 721 F. Supp. 3d 1080, 1100–01 (S.D. Cal. 2024), the FAC does not allege that the "consumer complaints allege[d] violations of" the federal law at issue.

Second, the suits against Amazon (2023) and Adobe (2024) to which the complaint alludes, FAC ¶ 91, cannot establish Uber's knowledge that Uber was violating ROSCA. Those suits which were not only filed after most of the conduct at issue in this case, but they also concern distinct membership programs with distinct enrollment and cancellation flows. There are no allegations in the FAC that Uber's flows have any similarities to the flows at issue in those cases. Again, *Stratics* proves the point. There, the defendants argued only that they lacked knowledge that the law regulated their business, so suits brought under that law against companies engaged in the same business could show knowledge. *Stratics*, 721 F. Supp. 3d at 1100–01.

Third, even if the FTC's September 2024 letter "asking questions about Uber's subscription programs" were probative of actual illegality (it is not), Opp. 19, that would only prove knowledge

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477

after September 2024 when Uber received the letter. Moreover, a request for information is just a request for information, not an allegation, let alone proof of wrongdoing.

Finally, the FTC (Opp. 20) professes confusion about Uber's mistake-of-law defense. But that defense is based in part on the FTC's own statements about ROSCA's ambiguity. Mot. 19. ROSCA is a vague and ambiguous law (as the FTC itself has acknowledged, *see* Mot. 19–20); *see* 91 Fed. Reg. 12318, 12320 (Mar. 13, 2026) (discussing ROSCA's "general statutory prohibitions" and contrasting them with other "more specific provisions"), about which smart company lawyers and regulators might disagree. It is therefore not enough for the FTC to assert that Uber had "extensive legal resources." Opp. 20. Once again, the FTC's case makes Uber's argument. *United States v. Dish Network*, 954 F.3d 970, 978 (7th Cir. 2020) held that "[a] large national corporation with the ability to hire sophisticated counsel is deemed to know basic principles of agency law." The court went on to suggest that the corporation would not be charged with understanding an "ambiguous" law, *id*. at 979—and ROSCA is precisely that.

### 3. Several state demands for civil penalties must be dismissed.

The State Plaintiffs whose laws require scienter to recover civil penalties make no attempt to dispute Uber's argument on scienter. Mot. 20–21. Because the States seek penalties under their own laws, they cannot simply rest on the Opposition's arguments that Uber had the requisite knowledge about ROSCA and have waived any counterarguments. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016). The State penalty demands should be dismissed.

### F. The States Fail To Plausibly Plead Standing, Authority To Sue, Or The Merits.

The FAC is full of attempted shortcuts that do not meet the States' burdens to plead standing, authority to sue, or the merits of their claims. Mot. 21–25. With little in the FAC to go on, the Opposition glosses over these flaws with assertions as conclusory as the pleading it seeks to defend. Opp. 21–25. Worse, Plaintiffs relegate their responses to Uber's lead arguments to paragraph-long footnotes. That contravenes this Court's standing order requiring that footnotes "must be employed sparingly," and Plaintiffs' "[e]xcessive footnotes" (in quantity and size) should

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

therefore "be disregarded." Standing Order for All Civil Cases, District Judge Jon S. Tigar at 5, (N.D. Cal. June 2, 2025). Even if the Court considers them, Plaintiffs' positions are meritless.

### 1.    The FAC fails to plausibly plead Article III standing.

The FAC was required to plead "sufficient facts that, taken as true, demonstrate each element of Article III standing" for the States. Mot. 21–22. The FAC did not do that—instead offering a grab bag of "and/or" allegations that do not even articulate a position on standing, much less sufficient facts to support it. In their Opposition (but not the FAC), the States seem to have settled on either *parens patriae* or a sovereign interest theory. Opp. 21–23. Both fail.

*First*, for *parens patriae*, the Ninth Circuit's decision in *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) affirmed the dismissal of various plaintiff-states based on failures that apply equally to the FAC—failing to allege state-specific harm, the statewide magnitude, or the extent to which any harms affect more than just an identifiable group of consumers. Mot. 22–23. Rather than engage with that binding circuit precedent, Plaintiffs turn to two out-of-circuit cases to argue that it was enough to allege harm to "millions of … citizens" nationwide—unmoored from anything specific to the 22 states claiming standing to sue here. Opp. 22 (citing FAC ¶¶ 18, 38, 88, 89, 92, 106). Neither of Plaintiffs' cases supports such a sweeping rule. In *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 23 (D.D.C. 2021), the allegations were a "shade vague," but the states alleged not only harm to "millions of [their] citizens"—something no Plaintiff State has done on an individualized basis here—but also harm that caused the "States' economies in general [to] suffer[]." And in *In re Electronic Brooks Antitrust Litigation*, 14 F. Supp. 3d 525, 531–32 (S.D.N.Y. 2014), the states did not just point to a challenged practice; they pled how the challenged practice impacted their general economies, trade, and commerce, as evinced by market changes. The States here have not done that much, though more is needed under *Harris*.

Plaintiffs eventually discuss *Harris* in a footnote, but they just repeat their misguided view that alleging harm to "millions of consumers" nationwide is good enough. Opp. 22 n.18. Here, as in *Harris*, the FAC "contains no specific allegations about the statewide magnitude of [any] difficulties or the extent to which they affect more than just an 'identifiable group of

individual[s]'"—egg farmers in *Harris*, and Uber One subscribers here. 847 F.3d at 652. Plaintiffs try to distinguish *Harris* by arguing that this case is more like *Maryland v. Louisiana*, 451 U.S. 725, 728 (1981), which *Harris* distinguished. Opp. 22 n.18. Plaintiffs are mistaken: *Maryland* focused on whether "the nature of the injury complained of is such" that only the state could vindicate it. 847 F.3d at 652. That was true for a tax on "consumers of natural gas" or a "threat[ to] the health of the entire population." *Id.* at 652–53. But it was not true in *Harris*, and the FAC contains no allegation that it is true for Uber One members—there is no allegation that Uber One members in each Plaintiff State are comparably widespread or comparably injured.

The States also allude to preventing marketplace harms as an "interest apart from . . . private parties." Opp. 23 (citing FAC ¶¶ 92, 106). *Harris* forecloses this argument too. States there, as here, asserted "in conclusory fashion" that the "economy … [would] be irreparably injured." 847 F.3d at 652 n.2. And states there, as here, supported that claim by noting harm only to an identifiable group of actors equipped to vindicate their own interests. *Id.* The Ninth Circuit rejected such allegations of statewide economic difficulties. 847 F.3d at 652. This Court should do so as well.

*Second*, the Plaintiff States argue that they "also have standing" based on a sovereign interest in "creat[ing] and enforc[ing]" the law. Opp. 23–24. But the States need to plead and show that Uber has invaded that alleged interest by interfering with regulatory or enforcement authority; a mere violation of the law does not "by itself injure the government in an Article III way." Mot. 22 (citing cases). The FAC pleads nothing like that interference. The States claim that an "explicit statutory" right to sue somehow satisfies their standing burden. Opp. 23–24 & n.19.  But the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff" has standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). The States also refer to their "special solicitude" in standing, Opp. 23, but that does not help either—even *Massachusetts v. EPA*, 549 U.S. 497 (2007) "did not abandon the constitutional baseline" that State plaintiffs must overcome, *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 957 (6th Cir. 2020). A violation of state law is simply not equivalent to an interference with a state's sovereign authority for standing purposes.

**2.    Certain States otherwise lack authority to bring their claims.**

An additional problem for many of the Plaintiff States is that their own statutes—the same ones that they invoke as "explicit" authority for this lawsuit—do not authorize suit in federal court. Mot. 23–25. That is a compelling reason for which this Court can and should decline to exercise supplemental jurisdiction. *Id.* The States' response is unconvincing. They briefly argue that these statutory grants "are permissive, not exclusive." Opp. 24. But that proves too much: if states are actually authorized to sue wherever they want, then there would be no reason for the state legislatures to have granted a more limited authority to sue in certain state courts. The Court should dismiss or decline to exercise supplemental jurisdiction over these claims and leave the states to bring suit where their respective legislatures have authorized it.

**3.    The States' barebones citations fail to plausibly plead their claims.**

Even if the States had standing and authority to sue, the FAC's laundry list of state laws—plus an attempt to attach themselves to federal claims—does not suffice to plead a claim under each of those state laws. Mot. 25. The States' response is self-defeating. Seeking to distinguish *United Healthcare Services, Inc. v. United Therapeutics Corp.*, 2024 WL 1256266, at *19 (D. Md. Mar. 25, 2024), Plaintiffs claim that they have "alleged specific facts as to how Defendant violated state laws – Plaintiffs' theory of the case," Opp. 25, but cite no paragraphs in the FAC. They cannot because there are no "specific facts" in the FAC about how Uber allegedly violated any state law. Indeed, the deficiency in *United Healthcare* was that the plaintiffs had "provided little more than an alphabetical list of state statutes it alleges the defendant violated by the same conduct that underlies the plaintiff's federal statutory claims"—exactly as the States have done here. The States' final argument proves the point. In response to cases dismissing claims that do not account for variations in state laws, Plaintiffs fault Uber for "not point[ing] to any specific variation that would render Plaintiffs' claims insufficiently pled." Opp. 25. But it was the States' job (not Uber's) to plead state-specific claims. Their failure to do so means that their claims should be dismissed.

**III.    CONCLUSION**

For the foregoing reasons, and those in Uber's motion, the FAC should be dismissed in part.

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

Date:  March 24, 2026

Respectfully submitted,

SIDLEY AUSTIN LLP
By:    /s/ *Benjamin M. Mundel*
          Benjamin M. Mundel
          *Attorney for Defendants*

SIDLEY AUSTIN LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO. 4:25-CV-3477