UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

Case No.  25-cv-03477-JST  (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 158

The parties have several discovery disputes.  ECF No. 158.  The Court held a hearing on April 3, 2026, and now issues the following order.

**A.      Date Range**

The parties have reached an agreement on the applicable time period for document production for RFPs 1-5, 9, 11, 14, 21-28, 30, 33-37 and 39.  The parties have a dispute over the start and end dates for document production for RFPs 6-9, 10, 12-13, 15, 18-20, 29, 31, 32, 38 and 40.  For most of these RFPs, the FTC proposes a start date of November 8, 2019 and an end date of December 15, 2025, except that the FTC proposes a start date of October 1, 2021 for RFP 19.  For the RFPs in dispute, Uber proposes a start date of October 1, 2021 and an end date of April 21, 2025.

**1.      Start Date**

Uber launched Uber One on November 17, 2021 and contends that a start date of about 45 days prior to the launch is a good idea.  But it's not a good idea because that would largely screen out documents concerning the development, design and implementation of Uber One.  It's unlikely that Uber conceived of, designed, built and tested Uber One in 45 days.  On the other

hand, the FTC has not justified a two-year look back.[1]  The **ORDERS** that for the RFPs at issue, the start date is one year before Uber One launched:  November 17, 2020 (except for RFP 19, for which the start date is October 1, 2021, as the FTC requested).

### 2.    End Date

For a lawsuit that alleges ongoing illegal conduct, as this one does, there's no end date at which documents cease to be relevant.  Instead, there needs to be an end date for document production so that the task can be completed.  Here, the FTC proposes December 15, 2025.  That's as good a date as any.  One good quality of that end date is that it is in the past, so Uber can go collect documents and finish its document production.

Uber's proposal that the end date for document collection should be the day the FTC filed the complaint in this action does not make sense.  That end date is too long ago.  It's not like Uber discontinued the alleged wrongdoing on the day this lawsuit was filed.  Uber seems to agree that document requests that are relevant to damages and injunctive relief should not have an end date of about a year ago, but contends that RFPs about liability issues should be so limited.  But since the conduct giving rise to the alleged liability did not stop a year ago, that argument is not persuasive.

Accordingly, for the RFPs at issue the Court ORDERS that the end date is December 15, 2025.

### B.    Enrollment and Cancellation Processes (RFPs 8 and 10)

### 1.    Foreign Jurisdictions

Uber contends that documents from foreign jurisdictions are irrelevant, but the Court doesn't agree.  Responsive documents from foreign jurisdictions are relevant because they likely strengthen or weaken any business justification arguments Uber may make concerning the challenged practices.  If Uber's conduct is identical everywhere, that would generally support

---

[1] At the hearing, the FTC argued for a two-year look back by saying that its complaint challenges "all" of Uber's unlawful subscription services.  It is true that the First Amended Complaint (ECF No. 46) has a few scattered references to Uber's "subscription services," such as in paragraphs 1 and 92.  But the FAC's allegations of unlawful conduct are directed at only one subscription service by name:  Uber One.

United States District Court
Northern District of California

business justification arguments, but if its conduct differs in other jurisdictions, that may undermine Uber's defenses of Uber One in the United States. Responsive materials from foreign jurisdictions likely also bear on the availability of alternative designs, as well as Uber's knowledge about that.

On the other hand, Uber says that Uber One is available in 47 countries, there are roughly 31 enrollment flow entry points in each country, and each entry point may have changed over time. Thus, while both RFPs 8 and 10 are "sufficient to show" RFPs, Uber contends that the number of responsive variants could be in the thousands.

In an effort to compromise, the FTC stated in footnote four of the letter brief that it would be willing to limit RFPs 8 and 10 to 5 to 10 foreign jurisdictions. At the hearing, the FTC further explained that it would be satisfied with five foreign jurisdictions: Germany, Mexico, the United Kingdom, Brazil and South Korea. Uber continued to object on the grounds of relevance but did not have any particular comments about these five countries. The FTC's proposed compromise appropriately balances relevance and burden, and the Court accepts it. Accordingly, the Court ORDERS Uber to produce documents responsive to RFPs 8 and 10 for these five countries.

### 2. Uber Pass

The FTC has submitted evidence in connection with this motion to compel showing that Uber One evolved from Uber Pass, such that there was little distinction between the programs. Further, the fact that Uber One was being developed while Uber Pass was in operation means that it is likely that Uber One's enrollment and cancellation flows were influenced by the design of Uber Pass's flows. Uber Pass's enrollment and cancellation flows are therefore also relevant to Uber's knowledge and intent in developing Uber One. Accordingly, the Court **ORDERS** Uber to produce responsive documents concerning Uber Pass.

### C. Government Investigations and Private Lawsuits (RFPs 16 and 17)

Documents about government investigations (RFP 16) and private lawsuits (RFP 17) concerning the challenged practices are relevant and proportional to the needs of the case. They are relevant to Uber's knowledge or notice of alleged unlawful activities. Uber argues that many investigations reveal no wrongdoing, which is true, but investigations that revealed no wrongdoing

by Uber concerning the challenged practices are helpful to Uber – not irrelevant – because they would show lack of notice and undermine the FTC's case.  Documents about private lawsuits challenging the practices at issue in this case have both positive and negative relevance for the same reasons.  If there are lots of such lawsuits, that helps the FTC; if there are few or none, that hurts the FTC.  Likewise, case outcomes and settlements are generally relevant to Uber's knowledge and notice of unlawful activities (or that it did not have such knowledge or notice).

Similarly unpersuasive is Uber's argument that private lawsuits are in the public record, so the FTC can go find the documents itself.  Uber knows what lawsuits have been filed against it, and it has those documents.  It would be burdensome for the FTC to have to review court dockets nationwide to find these documents.

At the hearing, Uber proposed that the end date for these RFPs should be the date the complaint in this case was filed, and the FTC agreed.

Accordingly, the Court GRANTS the FTC's motion to compel concerning government investigations and private lawsuits responsive to RFPs 16 and 17, with a document production end date of April 21, 2025.

**D.**      **Customer Correspondence (RFPs 19, 25 and 26)**

**1.**      **RFP 25**

With respect to documents sufficient to identify the codes, tags or categorizations used to label or sort Uber One customer correspondence, Uber says it has produced those, so there is nothing further to compel concerning those.  Uber acknowledges that it has not yet produced documents sufficient to identify the meaning of those codes, tags or categorizations, and the Court **ORDERS** Uber to do so.[2]

**2.**      **RFPs 19 and 26**

At the hearing, the FTC clarified that it is not currently moving to compel on RFPs 19 and 26.

---

[2] At the hearing, Uber previewed that there may not be documents sufficient to identify the meaning of all such codes, tags and categorizations, and that the FTC may need to seek this information through other discovery tools, such as interrogatories.  Of course, an order compelling the production of documents only compels the production of documents that exist.

United States District Court
Northern District of California

**E.     Advertisements (RFPs 27 and 28)**

The Court **ORDERS** the parties to include in their April 8, 2026 status report an update on the status of document production concerning RFP 27.  At the hearing, the FTC clarified that it is not currently moving to compel on RFP 28.

**IT IS SO ORDERED.**

Dated: April 3, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

5