

Division of Financial Practices
Bureau of Consumer Protection

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

April 8, 2026

**By ECF**

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiff Federal Trade Commission ("FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC ("Uber" or "Defendants") submit this status report pursuant to the Court's March 11, 2026 (Dkt. 145) and April 2, 2026 (Dkt. 165) Discovery Orders.

The parties hereby attest that they have met and conferred in good faith to resolve their disputes prior to filing this letter.

Respectfully submitted,

*/s/ Sarah Abutaleb*

Sarah Abutaleb
Federal Trade Commission

*Attorney for Plaintiff FTC*

*/s/ Ben Mundel*

Ben Mundel
Sidley Austin LLP

*Attorney for Uber Technologies, Inc. and Uber USA, LLC*

## I. __FTC's Statement__

Over the past month, the Parties have made some progress on certain discovery disputes. There are two issues, however, that warrant the Court's consideration: the appropriate number and identity of document custodians, and Defendants' refusal to produce its customer list. The FTC expects it will likely bring additional disputes to the Court's attention next week, depending on the substance of Defendants' forthcoming productions and the outcome of further discussions between the Parties. These disputes concern deficiencies in Defendants' non-custodial document productions and their insistence on deposing two of the FTC's attorneys. Below, the FTC addresses (A) the appropriate number and identity of document custodians, (B) Defendants' refusal to produce its customer list, (C) the status of discovery productions previously ordered by the Court, and (D) additional disputes that may soon be ripe for court intervention.

### A.  The Appropriate Number and Identity of Document Custodians

Pursuant to the Court's Discovery Order dated March 11, 2026, the Parties met and conferred on the issue of document custodians, but they have been unable to reach an agreement. Consistent with other cases involving large corporations and similar allegations, the FTC has proposed a list of twenty-seven current or former Uber employees from a range of teams and levels of seniority who were responsible for core aspects of Uber's subscription practices. *See* Ex. A. Defendants, on the other hand, have proposed a list of just fourteen document custodians that fails to include employees from several relevant and important teams. *See* Ex. B. For the following reasons, the FTC respectfully requests that the Court order Uber to use the FTC's proposed custodian list.[1]

First, the FTC's proposal is proportional to the specific needs of the case. Uber is a large, multinational technology company. Over the years, several hundred employees and numerous teams have worked on crucial issues related to Defendants' subscriptions. These employees and teams, however, are dispersed throughout the company, and Defendants insist that they do not maintain central repositories for many important categories of documents. For example, the testing and development of critical features like Uber's enrollment and cancellation flows is primarily overseen by the Membership Tech team, which consists of the Product Operations, Product, Engineering, Data Science, Design, and User Experience teams. Since Defendants' claim they have no central repository for testing materials, the FTC's proposal reasonably includes employees from each of these teams. Defendants' proposal, in contrast, omits entirely any employees from the Data Science and User Experience teams, despite their obvious involvement in testing and developing the features and practices at the very heart of the case.

Second, contrary to Defendants' self-serving assertions, the FTC's proposal is not unduly burdensome. Rather, the FTC's proposal is reasonably tailored to account for the large scale of Defendants' business, the wide range of teams responsible for overseeing the practices in dispute, significant deficiencies in Defendants' productions to date,[2] and the fact that

---

[1] The FTC reserves the right to seek documents from additional custodians in the future if the need arises.

[2] Defendants' persistent recalcitrance in discovery has hindered the FTC's ability to identity appropriate custodians. Additionally, the FTC is skeptical of Defendants' production of

Defendants' have engaged in the alleged misconduct for several years.[3] Recognizing these considerations, courts have frequently required comparable or even larger sets of custodians in cases involving large corporations and similar allegations. *See, e.g.*, *United States v. Adobe, Inc., et al.*, No. 24-cv-03630, Dkt. No. 102 (N.D. Cal. Sept. 19, 2025) (ordering 5 additional document custodians after parties agreed to 17 ESI custodians, plus 7 other custodians subject to targeted searches); *Tremblay v. OpenAI, Inc.,* 2024 WL 3638421, at *1 (N.D. Cal. July 31, 2024) (granting request for 24 initial custodians with right to seek additional custodians based on "non-cumulative, unique documents or information"); *United States v. Allergan, Inc.,* 2021 WL 969215, at *2 (C.D. Cal. Mar. 1, 2021) (granting additional 21 relevant custodians after 31 were already collected).

For these reasons, the FTC respectfully requests that the Court order Defendants to use the FTC's proposed custodian list. Once this issue is resolved, the Parties will turn to negotiating search terms. To inform these negotiations, the FTC suggests that the Parties promptly exchange search term proposals that Defendants will then process to generate hit reports.

**B. Defendants' Refusal to Produce its Customer List (RFP 35(a))**

Pursuant to the Court's Discovery Order dated March 11, 2026, Defendants were ordered to complete their production of materials responsive to RFPs 35-37 by April 10, 2026. During several meetings concerning this ongoing production, Defendants have stated that they refuse to produce data responsive to RFP 35(a), which requests the contact information for consumers who were enrolled in an Uber One subscription or free trial during the relevant time period (the "customer list"). For the reasons below, the FTC respectfully requests that the Court order Defendants to produce its complete customer list within ten days.

First, Defendants' customer list is highly relevant to the case. It is directly probative of consumer confusion, consumer injury, and the number and identity of consumers who have been harmed by Defendants' alleged misconduct. And it is almost certain to lead to the discovery of potential witnesses and evidence crucial to the case. *See Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (holding it was an abuse of discretion to deny discovery of customer list when the plaintiff's "ability to establish its case… is heavily dependent upon its ability to probe the facts and circumstances relating to public confusion and injury" because such information "constituted the most probative evidence of such confusion."); *FTC v. Amazon.com, Inc.*, 2015 WL 11256312, at *3 (W.D. Wa. Aug. 3, 2015) (compelling defendant to produce customer information because the ability to "contact[] potentially injured customers…[is] consistent with the FTC's role as a consumer protection agency" and protective order was sufficient to protect customers' privacy interest); *FTC v. Dotauthority.com., Inc.*, 2017 WL 5176547, at *1 (S.D. Fla. Nov. 6, 2017) (ordering production of customer list with contact

---

documents responsive to RFPs 2 and 3, and its response to Interrogatory 1. Defendants produced only one undated organizational chart for each of its two most important teams, and information in its response to Interrogatory 1 is contradicted by publicly available materials.

[3] Many of Defendants' proposed custodians assumed their relevant roles long after the company developed and launched its subscriptions. The FTC's proposal attempts to ensure that evidence reflecting the entire relevant time period is collected.

information because "[t]he FTC requires this information to search for evidence that customers have been mislead [sic] by Defendants, evidence that is manifestly relevant to the core controversy."). For example, if the FTC wished to conduct a survey of Uber customers, such a survey could not be performed without the names and contact information for Defendants' customers. *See FTC v. Corpay, Inc.*, 164 F.4th 807 (11th Cir. 2026) (affirming summary judgment in part because FTC survey of customers established consumer confusion and harm).

Second, Defendants' have not articulated any legitimate basis for withholding the customer list. There is clearly no burden argument because Defendants have agreed to produce consumer-level data more granular than contact information for their customers in anonymized form. And there are also no legitimate privilege or privacy concerns. The FTC is not requesting financial information, social security numbers, or medical records; it is requesting only the full name, email address, telephone number, and state of residency of Defendants' customers. The FTC is well-equipped to securely store this information, and the Parties negotiated a Protective Order (Dkt. 34) and ESI Agreement (Dkt. 144) that specifically contemplate the production of sensitive personal information by setting appropriate safeguards.

For these reasons, the FTC respectfully requests that the Court order Defendants to produce its complete customer list within ten days.

## C. Status of Document Productions Previously Ordered by the Court

Pursuant to the Court's March 11, 2026 and April 3, 2026 Discovery Orders, the FTC is expecting Defendants to substantially complete its production of documents responsive to several of the FTC's requests. Below is the status of each of these requests.

| Request | Date of Order | Deadline to Produce | Status |
|---|---|---|---|
| RFPs 2 and 3 | March 11 | March 25, 2026 | Under review[4] |
| Identification of repositories and databases | March 11 | March 18, 2026 | Under review |
| RFP 14 | March 11 | April 10, 2026 | Not complete |
| RFP 30 | March 11 | April 10, 2026 | Not complete |
| RFPs 34-37 | March 11 | April 10, 2026 | Not complete |
| Identification of slack channels | March 11 | April 10, 2026 | Not complete |
| RFP 33(c) and (d) | March 11 | April 27, 2026 | Not complete |
| RFPs 8 and 10 (foreign jurisdictions and Uber Pass) | April 3 | No deadline set by Court | Not complete |
| RFPs 16 and 17 | April 3 | No deadline set by Court | Not complete |
| RFP 25 (documents sufficient to identify meaning of issue codes) | April 3 | No deadline set by Court | Not complete |
| RFP 27 | April 3 | No deadline set by Court | Not complete[5] |

---

[4] *See supra* note 2.

[5] The FTC is still awaiting an update from Defendants on when it will complete its production and has not received any new productions.

**D. Disputes that May Require Court Intervention**

In addition to the RFPs at issue in the Court's March 11, 2026 and April 3, 2026 Discovery Orders, Uber is still in the process of responding to most RFPs. In particular, there are several requests which do not require custodial searches; however, Uber has not completed its productions to these requests and has identified no reason why it has not done so, despite these requests being outstanding for over eight months.

Further, despite the parties' efforts to reach resolution, Defendants insist on deposing two of the FTC's attorneys without justification. This issue will likely be ripe to submit in the coming weeks. Lastly, Defendants sent to the FTC their portion of a joint discovery statement regarding the FTC's responses to Uber's discovery requests. The FTC will provide Defendants with their portion of the letter by this Friday, April 10.

**Uber's Statement**

**A. Uber's Compliance with the Court's March 11, 2026 Discovery Order**

Uber has complied with all deadlines under the Court's March 11, 2026 Discovery Order (ECF No. 150) and will meet its remaining deadlines on April 10 and 27, 2026, as applicable.

Pursuant to the Court's April 3, 2026 Discovery Order (ECF No. 167), Uber provides the following status update on its response to RFP 27. On March 24, 2026, Uber produced 264 responsive documents. Uber has not identified any other responsive documents, but it continues to search for additional responsive documents. Uber believes it can complete its response to RFP 27 by May 8, 2026.

**B. Uber's Position on the Number and Identity of Document Custodians**

Pursuant to the Court's March 11, 2026 Discovery Order (ECF No. 50) and April 2, 2026 Discovery Order (ECF No. 165), Uber includes its position on custodians below.

The reason the parties are still negotiating custodians is because the FTC has, for several months, refused Uber's reasonable proposals and engaged in lengthy delays between responses. Nearly five months ago, Uber proposed custodians that had responsibility for making and implementing Uber One's enrollment and cancellation process at issue in this case. Days ago, the FTC finally accepted six of those custodians. Until April 3, 2026, the FTC had refused to propose its own list of custodians—aside from sending Uber lists of hundreds of "potential" custodians— despite conducting a pre-litigation investigation and receiving five productions of documents in this litigation. Uber still believes that the custodians it offered in November are proportional to the needs of the case, but in the interest of compromise, Uber has agreed to fourteen of the FTC's proposed custodians.

    **a. Background: Uber proposed custodians in November 2025, and the FTC failed to propose any custodians until Friday, April 3, 2026.**

On November 4, 2025, Uber proposed custodians that represent the functions and roles at the core of this case. Uber's proposed custodians covered the key areas implicated by the FTC's allegations. Uber proposed: the Head of Global Memberships, Danielle Sheridan; the Lead for Product Operations for Uber One and head of the membership technology organization, Maheen Abbas; the Strategy and Planning Lead for Global Memberships, Pablo Rodriguez Sanchez; the Director of Product Management for this organization, Abbey Stauffer; the Senior Program Manager for Consumer Experience for Uber One, Alex Wagner; a product manager for the Customer Obsession and Customer Experience team for Uber One, Siddhant Narula; and the Senior Manager for Strategic Finance for Uber One, Sherry Xie.

Until April 3, 2026, the FTC refused to accept any of these custodians and instead sent Uber lists that contained over 200 "potential" custodians. *See* ECF No. 145, Ex. F and G. When the parties brought this issue before the Court in their joint statement submitted on March 6, 2026 (ECF No. 145), the FTC claimed that it lacked the information it needed to negotiate custodians because Uber first needed to complete its responses to the FTC's Interrogatory 1 and RFPs 2 and 3. The Court denied the FTC's motion to compel a further response to Interrogatory 1 but ordered Uber to complete its responses to RFPs 2 and 3 by March 25, 2026. ECF No. 150 ¶¶ 1–2.

On March 24, 2026, Uber completed its responses to RFPs 2 and 3 by producing nineteen organizational charts covering seven teams. On Sunday, March 29, 2026, the FTC sent Uber a list of seven questions, "the answers to which are necessary to determine the appropriate number and identities of custodians." The next day, the FTC added to its list of demands. These questions were not necessary to determine the number or identity of the custodians in this matter. Many of these questions were plainly outside the scope of RFP 3. Nevertheless, Uber answered these questions just two days later—on April 1, 2026.

The FTC finally sent its proposal for 27 custodians on April 3, 2026, and asked for a response on the next business day, April 6, 2026. Uber provided its response on April 7, 2026.

**b. Argument: Uber's proposed custodians are proportional to the needs of this case.**

Determining the appropriate bounds for a set of custodians in this case is straightforward. Uber One is Uber's primary membership program. Among other benefits, Uber One provides a $0 Delivery Fee on eligible food and grocery orders and 6% credits back on eligible rides. In this case, the FTC alleges that Uber One's enrollment processes led Uber users to join Uber One without their consent, that Uber One's cancellation processes were not simple, and that Uber made misleading statements regarding how much Uber users could save with Uber One. This Court has advised the parties that "custodians should be people who have a good deal of relevant information, not just a little bit." *See* ECF No. 150 ¶ 1. Therefore, Uber has proposed custodians that were responsible for designing and testing Uber One's enrollment and cancellation processes, making strategic decisions about the marketing of Uber One, structuring Uber One's benefits, and responding to customer communications about Uber One.

As described above, since November, Uber has proposed custodians responsible for product strategy (Danielle Sheridan and Pablo Rodriguez Sanchez), product operations and

5

technology development (Maheen Abbasi and Abbey Stauffer), customer communications (Alex Wagner and Siddhant Narula), and strategic finance and financial metrics (Sherry Xie).

In response to the FTC's April 3, 2026 proposal, Uber agreed to add eight custodians (and removed Pablo Rodriguez Sanchez, whom the FTC did not include in its list of 27). With these additions, Uber's proposal includes custodians responsible for product strategy (Danielle Sheridan and Ian Crawley), product operations and technology development (Maheen Abbasi, Abbey Stauffer, Beccy Valentine, Breta Bharucha, Jesse Prehodick, Saloni Kishinchandani, and Swathi Bhumireddy), customer communications (Alex Wagner, Siddhant Narula, and Kelsey Sausville), strategic finance and financial metrics (Sherry Xie), and marketing (Mallory Usen).

Additional custodians would be unduly burdensome, and review of their materials would have diminishing returns because they would be unlikely to result in a significant quantity of unique relevant documents not already captured by the custodians Uber has proposed. *See, e.g.*, *Lauris*, 2016 WL 7178602, at \*4 (denying the plaintiffs' request to expand the list of custodians beyond nine where "additional custodians . . . are unlikely to result in production of a significant quantity of unique relevant documents that have not already been captured by search of the identified custodians"). The parties have not yet agreed to search terms, and the FTC has only recently come to the table with a concrete proposal on custodians, so Uber cannot yet estimate its burden with specificity. Generally speaking, each custodian could add tens of thousands of documents to Uber's review burden. This is an expensive and time-consuming proposition.

The FTC never articulated what issues it believed were not covered by these custodians. This omission makes it unnecessarily difficult for Uber to settle on a reasonable counterproposal. The FTC's failure to engage reasonably is reason alone to reject its position. *See, e.g.*, *Alta*, 2019 WL 8757255, at \*1 (rejecting request for 33 custodians as "not proportional" where requesting party lacked factual basis tying proposed custodians to conduct at issue). The FTC has previously suggested that Uber's proposed custodians are too senior, but this case is fundamentally about strategic decisions about the Uber One enrollment and cancellation processes, and the savings claims made therein. These decisions would not have been made without the input or knowledge of Uber's memberships and membership technology teams. Uber's proposed custodians are at the proper level of seniority such that key decisions "would be expected to be communicated through these individuals." *Lauris*, 2016 WL 7178602, at \*4.

The FTC claims for the first time that Uber's proposal is deficient because it does not include "employees from the Data Science and User Experience teams" even though they were involved "in testing and developing the features and practices" at issue. But numerous individuals from numerous teams are involved in all of Uber's testing and development efforts. It is not proportional to make every single individual a custodian merely because they had a little bit of "involvement." Again, the Court has already instructed the parties that "custodians should be people who have a good deal of relevant information, not just a little bit." *See* ECF No. 150 ¶ 1. Therefore, Uber has suggested as custodians the individuals with whom it understands have "a good deal of relevant information" because Uber understands they were most directly responsible for making the strategic decisions regarding these efforts. That said, Uber is willing to add one person from each team to its fourteen proposed custodians.

The Court should order that Uber's fourteen proposed custodians are proportional to the needs of the case and should be used to inform the parties' prompt negotiation on search terms, or at most permit the FTC to one additional custodian from each of the Data Science and User Experience teams.

**C.  Uber's Position Regarding Its Customer List (RFP 35(a))**

The parties have not previously raised this specific dispute, and the FTC only sent its position to Uber less than three hours before the filing deadline for this status report. The FTC asked for a response in less than two hours. Therefore, it is not clear that this issue is ripe. That said, Uber sets forth its position on this issue below

During the parties' March 19, 2026 meet and confer, Plaintiffs asserted that Uber's production in response to RFP 35(a) was deficient because it did not include the names, email addresses, and phone numbers of every current or former Uber One member in the United States, which would be tens of millions of consumers. On April 8, 2026, at 9:18 AM PT, Plaintiffs sent Uber their portion of this joint status report, which includes a motion to compel Uber's customer list. Plaintiffs seek this information for *all* Uber One members regardless of whether they had ever submitted a complaint to Uber or were even potentially injured (i.e., the FTC seeks the contact information and usage history of millions of customers whose Uber One memberships saved them money). Plaintiffs will connect this information with all of the anonymized data they already have, showing in great detail how each Uber One member used Uber.

Uber stands on its objection that it is not reasonable, proportionate, or appropriate to produce the contact information and usage data of the tens of millions of Americans that have used Uber One, regardless of their relevance to this case. It is worth remembering the sheer scope of the data that Uber has already produced (and that Plaintiffs want to attach to a name, email, and phone number). In response to the FTC's numerous requests, Uber, at great effort and expense, produced billions of anonymized datapoints regarding Uber One members' usage of Uber. Anonymizing sensitive customer data is consistent with the approach generally endorsed by courts in this Circuit. *See, e.g.*, *Cuadra v. FedEx Ground Package Sys., Inc.*, No. 2:20-cv-10719, 2021 WL 4497504, at *1 (C.D. Cal. July 28, 2021). Connecting these datapoints to names and contact information not only imposes an unnecessary burden on Uber; it puts consumers' data at risk for no good reason.

Plaintiffs have said they may need this information for various reasons. During the parties' March 19, 2026 meet and confer, the FTC indicated they might reach out to these customers and make their information publicly available. Now, the FTC suggests it may conduct a survey of Uber's customers. But there is no way Plaintiffs will reach out to tens of millions of people to interview or survey them. And the FTC can easily conduct a general population survey that screens out people who are not Uber One customers, as the FTC has previously done. *See In re Intuit Inc.*, FTC Docket No. 9408, Document No. 607016. Second, it is shocking that Plaintiffs would suggest in a meet and confer that they may release the names and contact information of Uber One members. That statement is reason enough to deny the request. *See, e.g.*, *Johnson v. Bankers Life & Cas. Co.*, No. 13-cv-144, 2013 WL 5442374, at *1 (W.D. Wis. Sept. 30, 2013) ("[T]he cases are 'legion' denying motions to compel or granting protective orders where plaintiffs have

requested the production or disclosure of entire customer contact lists."). Users entrust Uber with their personal data on the assumption that it will be used for a narrow, business-related purpose—not shared with dozens of law enforcement agencies *en masse*.

Plaintiffs' request threatens to both annoy Uber's customers and harm Uber's reputation as a careful steward of their personal information. First, further disclosure of this sensitive information puts the information at heightened risk of compromise through a data breach. Producing this data would require sharing it with dozens of third parties (outside counsel for Uber, all of the Plaintiffs, and their discovery vendors), which vastly increases the risk of a breach. Plaintiffs are frequent targets, and repeat victims, of data breaches.[6] Law firms, too, are ripe targets for data thieves, and outside counsel for Uber does not want such information on its systems.[7] In short, nothing good will come from transferring massive amounts of personally identifiable information to dozens of parties.

Even if this risk does not materialize, Uber's customers will doubtless be annoyed that their personal information was transferred many times, including to nearly half of the governments of the United States. Moreover, Uber's customers will be frustrated that the purpose of this disclosure was to contact them about the litigation. Courts therefore limit disclosure of customer lists and contact info to prevent litigants from spamming them with unwanted contacts. *See, e.g.*, *Kase v. Salomon Smith Barney*, 218 F.R.D. 149, 153–55 & n.7 (S.D. Tex. 2003) (limiting discovery of a party's customer list so that those customers would "not be disturbed by unwanted calls or mailings").

For these reasons, the Court should decline to enforce the FTC's request that Uber produce the names, email addresses, and phone numbers of every current or former Uber One member in the United States.

**D. Other Discovery Disputes that Uber Intends to Raise with the Court Promptly**

Uber previews for the Court discovery disputes that Uber intends to raise with the Court if they are not resolved promptly.

First, the FTC has failed to fully and properly respond to Uber's document requests and interrogatories. Uber sent its portion of a joint statement on this issue to the FTC on March 25, 2026, and requested that the FTC provide its portion on March 31, 2026. Two weeks later, the FTC still has not provided Uber with its portion despite Uber's multiple requests.

---

[6] *See, e.g.*, Peter Hancock, Il. *Dept. of Human Services Reports Yearslong Data Breach of Residents' Health-related Information*, ABC7CHICAGO.COM, (Jan. 6., 2026), https://abc7chicago.com/post/illinois-department-human-services-reports-yearslong-data-breach-residents-private-health-related-information/18362578/; Marissa Barrett, *Conduent Data Breach Impacts More than 181,000 New Hampshire Residents*, WMUR, (Feb. 17, 2026), https://www.wmur.com/article/conduent-data-breach-new-hampshire-02162026/70384042.

[7] *See, e.g.*, Mike Scarcella, *Law Firm Pillsbury Faces Class Actions Over April Data Breach*, REUTERS, (Nov. 19, 2025), https://www.reuters.com/legal/government/law-firm-pillsbury-faces-class-action-over-april-data-breach-2025-11-19/.

Second, Uber intends to raise deficiencies in the Plaintiff States' responses to interrogatories that Uber served on the States. Uber sent its portion of a joint statement on this issue to the States on March 31, 2026, and requested the FTC's portion by April 3, 2026. Uber is still awaiting the States' portion of the joint statement.

Third, Uber intends to raise deficiencies with the Plaintiff States' Rule 26 initial disclosures. Uber sent its portion of a joint statement on this issue to the States on March 31, 2026, and again on April 3, 2026, following additional correspondence with the States. Uber is awaiting the States' portion of the joint statement.

Fourth, Uber intends to raise deficiencies in the Plaintiff States' responses to requests for production that Uber served on the States. Uber sent its portion of a joint statement on this issue to the States on April 3, 2026. Uber is awaiting the States' portion of the joint statement.

Fifth, Uber intends to raise a dispute concerning Uber's request for deposition testimony from two FTC employees' public statements about this case. Uber has not yet sent its portion of a joint statement to the FTC but anticipates sending it soon.[8]

---

[8] Uber also understands that the Plaintiff States intend to raise a dispute concerning Uber's request for 30(b)(6) testimony from the Office of the Nebraska Attorney General. The Plaintiff States sent their portion of a joint statement on this issue on April 1, 2026, and Uber sent its portion of the joint statement to the States on April 7, 2026.