UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | Case No. 25-cv-03477-JST  (TSH) |
| Plaintiffs, | |
| v. | **DISCOVERY ORDER** |
| UBER TECHNOLOGIES, INC., et al., | Re: Dkt. No. 172 |
| Defendants. | |

We are here on two discovery disputes.  The first is the number and identity of Uber document custodians, and the second concerns the Uber One customer list.

**A.      Custodians**

The FTC proposes that Uber should have 27 document custodians, and it lists them in Exhibit A.  Uber disagrees and proposes 14 in Exhibit B.  In response to the FTC's complaint that Uber's list contains no one from its Data Science and User Experience teams, Uber is willing to add one person from each such team, bringing its total to 16 proposed custodians.

As to the number of document custodians, the Court views that issue as relating to what is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

The issues at stake are important.  The Plaintiffs in this action are the FTC, 21 states and the District of Columbia – meaning, the federal government and about half the states.  Uber says that tens of millions of Americans have used Uber One, the subscription service at issue in this case, meaning this action is of widespread public importance.  The FTC stated at the hearing that it expects the amount in controversy is hundreds of millions of dollars or more.  The parties have

asymmetric access to information, as nearly all of it is in Uber's possession, and (aside from pre-suit investigation and what may be public) Plaintiffs can obtain it only through discovery. The parties' resources on both sides are significant, so without being overwhelmed, Uber has the capability to produce documents from many custodians, and Plaintiffs have the ability to review and make use of those documents in the litigation.

Uber's documents are important in resolving the issues in dispute. According to the First Amended Complaint, Uber has offered the Uber One service since November 2021. ECF No. 46 ¶ 17. For many of the RFPs the Court has ordered Uber to produce documents from November 2020 through December 2025. ECF No. 167 at 2. During this five year period, it is highly likely that employees with significant relevant knowledge joined or left the company or changed roles, so a large number of custodians is appropriate to cover the time period in question. Further, the burden and expense of the number of custodians the FTC proposes do not outweigh the likely benefit. In sum, all of the Rule 26 proportionality factors counsel in favor of the FTC's proposal of 27 custodians.

As to the identity of the custodians, it must be understood that the Court does not have an informed view of that issue. The Court assumes the FTC proposed its custodian list based on the information known to it so far. For its part, Uber disagrees with the number of custodians the FTC has proposed but has not argued that any particular custodian is inappropriate. In other words, this is not a situation where the parties disagreed about who should be the custodians and then briefed the Court on who the custodians should be and asked the Court to decide that. The dispute as presented is about numbers. Accordingly, having concluded that the FTC has proposed a reasonable number of custodians, the Court defers to the FTC's choice about who they should be.

Therefore, the Court **ORDERS** that Uber shall have as document custodians the 27 individuals listed in Exhibit A (ECF No. 172-1).

**B.      Customer List**

The FTC moves to compel concerning RFP 35(a), which requested: "For each consumer who enrolled in an Uber One subscription or free trial . . . Documents or data sufficient to show the consumer's name, mailing address, email address, and phone number." Uber opposes.

United States District Court
Northern District of California

The FTC has the better of the argument.  The Uber One customer list is probative of consumer confusion and injury.  *See Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) ("Because VISA's ability to establish its case for rescission or modification is so heavily dependent upon its ability to probe the facts and circumstances relating to public confusion and injury, we hold that it was an abuse of discretion to deny outright VISA's Rule 56(f) request for discovery of BCH's mailing lists and customer responses, which constituted the most probative evidence of such confusion."); *FTC v. Amazon.com, Inc.*, 2015 WL 11256312, *3 (W.D. Wa. Aug. 3, 2015) ("[T]he Court finds this information plainly relevant for discovery purposes.  Again, the entire basis of this litigation involves unauthorized in-app charges, and the opportunity to glean information from allegedly harmed individuals renders Interrogatory No. 4 'reasonably calculated to lead to the discovery of admissible evidence.'"); *FTC v. Dotauthority.com, Inc.*, 2017 WL 5176547, *1 (S.D. Fla. Nov. 6, 2017) ("Defendants object to the production of customer information on the grounds that giving the Federal Trade Commission (hereinafter 'FTC') the ability to contact Defendants' customers will result in the destruction of Defendants' businesses.  Be that as it may, Defendants must nevertheless provide the requested information.  Defendants warn that the FTC will use the information to contact Defendants' customers, but that is exactly why it must be produced.  The FTC requires this information to search for evidence that customers have been mislead by Defendants, evidence that is manifestly relevant to the core controversy in the above styled cause.").

Uber objects, first, that the request is overbroad because the FTC seeks contact information for all Uber One members regardless of whether they had ever submitted a complaint to Uber or were even potentially injured (here, Uber equates injury with financial injury and assumes that customers for whom Uber One resulted in savings suffered no injury).  However, that objection is off base because the customer list is a mechanism for the FTC to determine who was confused or injured, for example, by conducting a survey of Uber One members to determine if they were enrolled without their consent, have been unable to unsubscribe easily, and so on.  Uber is also repeating a meritless argument it has made before in this litigation, namely that information that is helpful to the defense is *irrelevant*.  That is the basis for Uber saying it is overbroad to include

3

Uber One customers who never submitted a complaint to Uber or who suffered no financial injury in the customer list.  But that is not overbroad because customers who did not submit a complaint or who were financially uninjured should absolutely be included in the customer list.  Whether the number is high (good for Uber) or low (good for FTC), the percentage of Uber One customers who did not submit a complaint to Uber or were not financially injured is likely relevant to whether the challenged practices are "unfair" under Section 5 of the FTC Act.  It would make no sense to exclude customers who did not submit a complaint to Uber or who were financially uninjured from the customer list and then have the FTC take a survey of the remainder because that group would not be representative of Uber One customers as a whole.  And though Uber today opposes including these people in the customer list, you better believe that if the FTC took a survey of Uber One members that excluded customers who were generally good for Uber, Uber would argue that such a survey was unreliable and inadmissible.

Uber's section of the letter brief raised the issue that the FTC wants to use the customer list to de-anonymize the anonymized transactional data that Uber has produced.  The parties discussed that issue at the hearing.  The parties seem to be in agreement that the FTC would need each customer's member IDs in order to link a name to the transactional data.  As the Court explained at the hearing, the FTC moved to compel on RFP 35(a), which asked for the consumer's name, mailing address, email address, and phone number, but not member ID.  Therefore, the issue of producing member IDs is not before the Court.

Uber also argues that as a practical matter, Plaintiffs will not likely reach out to tens of millions of people to interview or survey them.  Uber is likely correct about that, but that does not provide a reason to deny the motion to compel.  Having a complete customer list provides a starting point for interviews or surveys and allows Plaintiffs to direct communications to relevant people.  Even if there are tens of millions of Americans on the customer list, more than 340 million people live in this country, and screening out about three hundred million of them surely helps in any survey effort.  Further, the state Plaintiffs may decide to do their own surveys, and for some of them, reaching out to many or most of the Uber One members in their state may be feasible.

United States District Court
Northern District of California

Uber contends that Plaintiffs said in a meet and confer that they may publicly release the names and contact information of Uber One members.  That is a startling accusation, and when the Court asked about this issue at the hearing, Uber did not have any specifics, with counsel for Uber disclaiming any personal knowledge and saying he was not in that conversation.  The FTC stated it would comply with the protective order in this action.  Of course, the Court does expect all parties to comply with the protective order.

Uber next argues that Plaintiffs' efforts to contact Uber One members will annoy Uber's customers and harm Uber's reputation as a careful steward of their personal information. However, "the FTC's use of customer information to contact potentially injured customers does not give the Court pause.  Such activities are consistent with the FTC's role as a consumer protection agency and will remain governed by the protective order in place in the above-captioned matter." *FTC v. Amazon.com, Inc.*, 2015 WL 11256312 at \*3.  The Court has the same view with respect to the state Plaintiffs.  *See also FTC v. Dotauthority.com, Inc.*, 2017 WL 5176547 at \*1 ("Defendants warn that the FTC will use the information to contact Defendants' customers, but that is exactly why it must be produced.  The FTC requires this information to search for evidence that customers have been mislead by Defendants, evidence that is manifestly relevant to the core controversy in the above styled cause.").

Finally, Uber raises concerns about a potential data breach.  While data breaches are an unfortunate reality nowadays, the FTC and state Plaintiffs routinely handle confidential information, and the parties stipulated to a Protective Order and an ESI Order (ECF Nos. 34, 144) that contemplate the production of sensitive personal information and set appropriate safeguards. Accordingly, this is not a basis to block this discovery.

For the foregoing reasons, the Court **GRANTS** the FTC's motion to compel concerning RFP 35(a).

**IT IS SO ORDERED.**

Dated: April 10, 2026

THOMAS S. HIXSON
United States Magistrate Judge