# SIDLEY

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

April 14, 2026

***By ECF***

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiff Federal Trade Commission (the "FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively, "Uber") submit this joint statement pursuant to the Court's Discovery Standing Order.

The parties hereby attest that they have met and conferred in good faith to resolve their disputes prior to filing this statement.

Respectfully submitted,

*/s/ Benjamin M. Mundel*

Benjamin M. Mundel
Sidley Austin LLP

*Attorney for Defendants Uber Technologies, Inc. and Uber USA, LLC*

*/s/ James Doty*

James Doty
Federal Trade Commission

*Attorney for Plaintiff FTC*

## I.    Uber's Position

Uber seeks an order requiring the FTC to respond properly to targeted discovery requests directed at the core issues in this case. The FTC's deficiencies prevent Uber from understanding and testing the FTC's claims and should be remedied. Like any plaintiff, the FTC must follow the Federal Rules of Civil Procedure (the "Rules") and participate in discovery.

### a.    The FTC improperly withholds information about non-party communications.

Interrogatory No. 2 asks the FTC to identify communications with non-parties regarding this matter, including the dates, participants, medium, and subject matter. Ex. A at 6. The FTC has not provided this information. The FTC has instead stated it will produce non-privileged documents. Ex. B at 3–4; Ex. E at 2; Ex. F at 2; Ex. J at 2. This is deficient. Rule 33(b)(3) requires interrogatories to be answered "fully." And Rule 33(d) permits reliance on business records only if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and the FTC identifies the records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d); *see United States v. Acad. Mortg. Corp.*, No. 16-CV-02120, 2021 WL 4051421, at *3 (N.D. Cal. Aug. 9, 2021) ("[T]he responding party must identify which specific documents are responsive to which interrogatories[.]") (internal quotation marks omitted). The FTC has not identified which documents from its 1,877-page production are responsive to this Interrogatory, *see* Ex. I, so the burden would not be close to the same. There is no way for Uber to locate responsive documents.

Uber requests an order requiring the FTC to supplement its response to Interrogatory No. 2 to identify its communications with non-parties, including the dates, participants, medium, and subject matter.

### b.    The FTC refuses to identify the allegedly affected consumers.

Interrogatory No. 10 asks the FTC to identify the Uber One customers it contends were unable to cancel or simply cancel their memberships, and to state the factual basis for those contentions. Ex. A at 7. The FTC refused to respond, objecting that the Interrogatory seeks privileged information, is overly broad and unduly burdensome because Uber possesses the identities of these individuals, and is premature because discovery is ongoing. Ex. B at 12–13. The FTC has refused to supplement its response. Ex. E at 3; Ex. F at 3; Ex. G at 3; Ex. H at 2.

The FTC's response is improper and violates the Rules. Interrogatory No. 10 seeks basic factual information regarding the individuals the FTC contends were affected by Uber's alleged conduct, which is directly relevant to the FTC's claims and Uber's defenses. *See* Fed. R. Civ. P. 26(b)(1). The FTC's privilege objections do not justify a complete refusal to respond because the interrogatory seeks factual information. Nor may the FTC refuse to respond on the ground that Uber may possess related information. *See Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, No. 08-1467, 2009 WL 10672602, at *2 (C.D. Cal. Mar. 2, 2009) ("[D]efendants are entitled to discover what information plaintiffs actually possess . . . . It is not a sufficient response that defendants may have the information in their possession . . . ."). Interrogatory No. 10 is also not premature. The FTC must respond based on the information currently available to it. *See Peck v. Cnty. of Orange*, No. 2:19-CV-04654, 2020 WL 4218223, at *6 (C.D. Cal. July 10, 2020) ("Plaintiff shall fully answer these interrogatories based on the information available . . . at

present."). Uber is entitled to test the FTC's allegations, including by identifying the individuals the FTC contends were affected by the alleged conduct.

Uber requests an order requiring the FTC to provide a complete response to Interrogatory No. 10 identifying the customers it contends were unable to cancel or simply cancel their memberships and the factual basis for those contentions.

### c.  The FTC refuses to identify the standards underlying its allegations.

Interrogatory Nos. 5–7 ask the FTC to identify the standards it uses to assess whether a charge is an "additional fee," whether consent is "express informed," and whether a cancellation mechanism is "simple," including the factors considered and their relative weight. Ex. A at 6. The FTC has refused to provide this information, asserting privilege, and has declined to supplement its responses to provide non-privileged information. Ex. B at 8–11; Ex. E at 3; Ex. F at 2.

This information is relevant because the FTC alleges that Uber charged "additional fees," charged consumers without "express informed consent," and does not have a "simple" cancellation process. *See, e.g.*, FAC ¶¶ 99, 102, 116. It is also a proper subject of contention interrogatories under Rule 33(a)(2), which permits discovery into a party's legal theories. *See Carbon v. Seattle Reprod. Med. Inc. PS*, No. 2:19-CV-01491, 2020 WL 4339253, at *5 (W.D. Wash. July 28, 2020) ("Rule 33(a)(2) allows a party to discover an opponent's theory of a case."). These interrogatories seek non-privileged explanations of the standards applied, so they are not protected by privilege. *See Dennis Fugnetti Photography Tr. v. Bird B Gone, Inc.*, No. CV-19-00847, 2021 WL 3660755, at *1 (C.D. Cal. July 14, 2021) ("[T]he existence of [privileged] communications is not a basis for a wholesale refusal to answer an interrogatory[.]"). The FTC cannot simultaneously say that Uber violated certain opaque legal requirements but also refuse to disclose what those standards require.

The FTC's citation to *Everest Nat'l Ins. Co. v. Santa Cruz Cnty. Bank*, No. 15-CV-02085, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016), illustrates why the FTC's responses are improper. There, the bank served an interrogatory that asked an insurance company, "What do YOU contend is the meaning of the term 'promoting any security'" in an exclusion. *Id.* The court reasoned that the bank "did not ask [the company] how it applied these terms in the past" and instead "invite[d] answers involving abstract legal definitions." *Id.* Here, Uber has asked the FTC "how it applied these terms in the past," *id.*—i.e., to identify the standards the FTC has used.

Uber requests an order requiring the FTC to supplement its responses to Interrogatory Nos. 5–7 to provide non-privileged information identifying the standards the FTC applies.

### d.  The FTC fails to identify the conduct required for compliance and relief sought.

Interrogatory No. 12 asks the FTC to identify the changes it contends Uber must make for its enrollment and cancellation flows to comply with ROSCA. Ex. A at 7. The FTC responded, "the Complaint sets forth information showing how Defendants' Enrollment Flows and Cancellation Flows violate ROSCA." Ex. B at 14; *see* Ex. F at 3.[1] Interrogatory No. 16 asks the FTC to identify and describe the specific terms of the injunctive relief it seeks. Ex. A at 8. The FTC stated that it will address injunctive relief only "upon the filing of any summary judgment motion." Ex. B at 16; Ex. E at 3; Ex. G at 4; Ex. H at 2; Ex. J at 2.

---

[1] The FTC's representation that it "pointed Defendants **to the paragraphs** in the Complaint" is inaccurate. But even that would not be sufficient and would be contrary to the Order issued in *FTC v. Match Group, Inc*.

These responses are insufficient. The FTC seeks injunctive relief but has not identified the conduct it contends is required or prohibited. That information is directly relevant to Uber's defenses and the scope of relief. *See* Fed. R. Civ. P. 26(b)(1). It is also a proper subject of contention interrogatories under Rule 33(a)(2). Other courts have ordered the FTC to respond to similar interrogatories in cases like this. *See* Order, *FTC v. Match Group, Inc.*, No. 3:19-cv-02281, ECF No. 174 ¶ 2 (N.D. Tex. Nov. 8, 2022) ("The plaintiff's objections to the portion of Interrogatory No. 2 (Disputed Issue I) relating to fixes (i.e., changes the plaintiff[] contends would be necessary to 'make the Online Cancelation Flow 'simple'") are overruled, and motion to compel a further response to this portion of the interrogatory is granted."). The FTC's cited authority is inapposite because that interrogatory broadly asked about changes the company needed to make "to its website and advertising." *FTC v. Doxo, Inc.*, No. 2-24-cv-00569-TSZ, Dkt. No. 54 at 6 (W.D. Wash. June 20, 2025). But here, Uber asks about the very flows that the FTC challenges.

Uber requests an order requiring the FTC to provide complete responses to Interrogatory Nos. 12 and 16.

### e.   The FTC refuses to produce consumer complaints regarding Uber's competitors.

RFP No. 7 seeks consumer complaints and related communications regarding Uber and four of its competitors. Ex. C at 7. The FTC has refused to produce documents regarding Uber's competitors. Ex. D at 9–10; Ex. E at 2; Ex. G at 2; Ex. H at 1; Ex. J at 2.

The requested materials are relevant and proportional under Rule 26(b)(1). The FTC relies on consumer complaints, including the volume and nature of those complaints, to support its claims. *See, e.g.*, FAC ¶ 60 ("Consumers have complained . . . "), ¶ 87 (quoting consumer complaints). Evidence of consumer complaints against competitor companies is therefore directly relevant to benchmarking complaint volume, assessing materiality, and evaluating consumer perception. The FTC has agreed to produce this evidence in other similar cases. *See FTC v. Directv, Inc.*, No. 15-CV-01129, 2016 WL 3351945, at *1 (N.D. Cal. June 9, 2016) (noting FTC agreed to produce samples of consumer complaints for three DIRECTV competitors).

Uber requests an order that the FTC respond fully to RFP No. 7 and produce consumer complaints for Lyft, DoorDash, Grubhub, and Instacart.

## II.   The FTC's Position

Defendants, who possess nearly all the relevant data and communications in this case, have refused to produce that material short of repeated requests and discovery motions practice, culminating in the need for court orders (compliance with which remains TBD). By contrast, the FTC, a party with no firsthand knowledge of the underlying facts, has produced the discoverable material in its possession in accordance with the rules and done so notwithstanding Defendants propounding a barrage of improper, burdensome, and irrelevant discovery that in some instances, is impossible to fully answer because Defendants have yet to satisfy their own longstanding production obligations. For example, Defendants ask the FTC to identify every single Uber customer who was unable to cancel, despite themselves being in possession of that information and having not produced so much as a customer list to the FTC yet (something that should have been included in Defendants' initial disclosures and that they have now been ordered to produce just this month). In short, many of the disputes Defendants raise simply highlight how woefully deficient their own production has been to date.

Interrogatory 2 requests information about the FTC's communications with third parties, and the FTC has fully responded. Specifically, on January 26, 2026, the FTC produced emails to and from consumers that identify the dates of each communication, the persons involved, the medium, and the subject matter, in accordance with Rule 33(d). To the extent Defendants demand that the FTC separately list the "dates, participants, medium, and subject matter" of each communication, Rule 33(d) protects the FTC from that make-work because the "burden of deriving or ascertaining the answer will be substantially the same for either party."

Interrogatories 5-7 seek the FTC's legal interpretation of the terms "additional fee," "express informed consent," and "simple" cancellation mechanisms, and the FTC has responded with its objections. Specifically, the FTC objects to the request as going beyond the permissible scope of discovery in seeking Plaintiffs' legal analysis, rather than relevant facts or the application of law to facts. *See, e.g.*, *A.G. v. Oregon Dep't of Human Servs.*, 2015 WL 1548919, at *2 (D. Oregon Apr. 7, 2015) (rejecting interrogatory that did "not ask for facts or the application of law to facts" and instead sought "discovery on defendants' motion argument, not facts relevant to [plaintiffs'] claims"). To the extent Defendants seek the FTC's legal interpretation of certain terms, such requests are outside the permissible scope of interrogatories. *See, e.g. AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR(JSC), 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014) (interrogatories "directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the facts of the case are not permitted"); *Everest Nat'l Ins. Co. v. Santa Cruz Cnty. Bank*, No. 15CV02085BLFHRL, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016) (interrogatories asking for legal definitions are questions of pure law). These interrogatories all ask what the "standard" is, a pure law question of how the FTC interprets these particular terms "entirely divorced from the factual context of this case." *Everest*, 2016 WL 6311876, at *4.

Interrogatory 10 seeks the identity of Uber One customers who were not able to cancel their membership, and the FTC has responded with its objections. Specifically, the request is overbroad and unduly burdensome because Defendants are in possession of the information regarding customers who have been unable to cancel, and the request is premature because Defendants have refused to provide customer-related information to the FTC during either the investigation or discovery. The FTC has indicated its willingness to consider a supplementary response to this interrogatory *after* Defendants produce the data the FTC has requested and the FTC has had an opportunity to review it.

Interrogatory 12 seeks every single change the FTC would make to every one of Defendants' enrollment and cancellation flows in order to comply with ROSCA, and the FTC has responded with the relevant information while objecting to the remainder of the request. Specifically, the FTC pointed Defendants to the paragraphs in the Complaint that lay out details of how and why the FTC believes Defendants enrollment and cancellation flows violate federal law and harm consumers. As a matter of business decision-making, Defendants have an infinite combination of lawful design choices they could employ across various enrollment and cancellation flows. Their request that the FTC conduct that decision-making for them is unduly burdensome and irrelevant. The FTC is not required to redline Uber's websites and applications and suggest line-by-line edits to advise Defendants on how to make business choices that comply

with ROSCA. *See FTC v. Doxo, Inc.*, No. 2-24-cv-00569-TSZ, Dkt. No. 54 (W.D. Wash. June 18, 2025).

Interrogatory 16 seeks the specific terms of injunctive relief the FTC will request, and the FTC has responded with its objections.  The FTC will submit a proposed order with injunctive provisions at the appropriate stage in litigation, and not before it has received complete discovery from Defendants.

RFP 7 seeks all complaints, comments, or communications regarding Uber and four of its competitors, and the FTC has produced complaints regarding Uber while objecting to the remainder of the request. Specifically, the FTC searched for, and produced, consumer complaints regarding Uber One and Uber Pass. To the extent Defendants are seeking consumer complaints regarding competitors, the request is beyond the scope of permissible discovery: consumer complaints regarding Lyft, DoorDash, Grubhub, or Instacart are not relevant to any party's claim or defense and not proportional to the needs of the case. Defendants cite *FTC v. Directv, Inc.* in support of their position, but the Magistrate Judge in that case found that the relevance of competitors' complaints was "largely speculative" and that the burden of producing them was not proportional to the needs of the case. No. 15CV01129HSGMEJ, 2016 WL 3351945, at *2 (N.D. Cal. June 9, 2016). The fact that the FTC voluntarily agreed to produce a *sample* of complaints in that case does not create a legal requirement and burden on the FTC to do so in this and every other case.