# Exhibit G



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA  •  ASIA PACIFIC  •  EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

January 7, 2026

**Via Email**

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
E: pmezan@ftc.gov

     **Re:**    *FTC v. Uber Technologies, Inc. and Uber USA, LLC, No. 4:25-cv-03477 –* Discovery

Dear Counsel:

We write to address a number of outstanding discovery items. First, we address Uber's discovery requests to the FTC. Second, we respond to the FTC's questions about the discovery it served on Uber and address the items raised in your December 23, 2025 email about our discovery responses.

### I.    Uber's Discovery Requests To the FTC

We have serious concerns about the FTC's failure to respond to Uber's discovery requests.

On July 11, 2025, we served 19 requests for production and 17 interrogatories on the FTC. To date, the FTC has not produced a single responsive document. Nor has the FTC meaningfully or substantively responded to the interrogatories. And the FTC has denied our repeated requests that it identify potential custodians and search terms to use to identify responsive materials.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 2

We summarize some of the key deficiencies below.

- RFP # 1 seeks documents identified in your initial disclosures. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 3 seeks all non-privileged documents from your investigative file. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22 and that it will log all withheld documents.

- RFP # 4 seeks communications the FTC had with third parties relating to Uber, and RFP # 5 seeks documents produced by third parties. The FTC has not produced any documents responsive to either requests to date. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 6 seeks all transcripts of testimony provided by third parties. The FTC has not produced any documents to date. Please confirm that the FTC will produce all responsive documents by January 22, or indicate that the FTC has not taken any testimony.

- RFP # 7 seeks all consumer complaints, comments, or communication regarding Uber, Lyft, DoorDash, Grubhub, or Instacart. We understand this material would be held in the Consumer Sentinel database. Consumer Sentinel data has been produced in many cases, including cases we have worked on together before. Please confirm that the FTC will produce all responsive documents by January 22.

- RFP # 12 seeks surveys, copy tests, studies, or other testing that the FTC has done regarding Uber or this case. Please confirm whether there are any responsive documents and if any documents are being withheld on the privilege grounds. Please also produce non-privileged responsive documents by January 22.

The FTC has also refused to produce documents in response to RFP #s 16-19. We will draft our portion of the joint discovery letter for this dispute and provide it to you.

As to the FTC's responses to Uber's interrogatories, those too are deficient.

- Interrogatory # 1 seeks the factual basis for the FTC's investigation. You identify two bases: consumer complaints and public information. By January 22, please produce and identify the consumer complaints and also specifically identify the public information that is responsive to this Interrogatory.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 3

- Interrogatory # 2 seeks the identity of third parties with whom you have communicated. You state that you will produce communications with consumers and you note that you gave a nonpublic briefing on the investigation to staff of the House Judiciary Committee. Please confirm that you will produce all communications with consumers by January 22 as well as the materials used to brief the House Judiciary Committee and also confirm that the FTC has not had any other communication with third parties about the investigation or case. If the FTC has had such additional communication, please identify that communication.

- Interrogatory # 3 seeks the factual basis for the allegations in the FTC's complaint. You identify information from Consumer Sentinel as well as material produced during the investigation. Please produce that information by January 22 and confirm that there are no additional and undisclosed factual bases for the allegations in the FTC's complaint.

- Interrogatory # 8 asks the FTC to identify all Uber customers who were allegedly harmed. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 9 asks the FTC to identify all Uber customers who were unaware of the material terms of the Uber One membership at the time of enrollment. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 10 asks the FTC to identify all Uber customers that were not able to cancel Uber One and those that were not able to simply cancel Uber One. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

- Interrogatory # 15 asks the FTC to identify all Uber consumers that were deceived or misled by Uber advertising. You object that this interrogatory is premature. Please confirm that you will identify customers as you become aware of them and that you will provide a complete, substantive response to this Interrogatory by April 3.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 4

- Interrogatory # 16 asks the FTC to identify the terms of the injunction that it is seeking. Please confirm that you will provide a complete, substantive response to this Interrogatory by January 22.

- Interrogatory # 17 asks the FTC to identify and describe the monetary relief it is seeking. You object that this interrogatory is premature. Please confirm that you will provide a complete, substantive response to this Interrogatory by April 3.

## II.    The FTC's Discovery Requests To Uber

Below we provide a status update on each of the FTC's discovery requests served on Uber. This letter incorporates the objections we made in responding to those requests by reference and does not repeat them all here. This letter should not be interpreted as a waiver of any objection previously stated.

Before going through each request, we respond to your December 23, 2025 search terms and potential custodians lists. These lists are overbroad and unreasonable. With respect to the FTC's "potential custodians," you characterize this as a list of "approximately 200 individuals whose names or emails appear in Uber's extremely limited pre-complaint production and who clearly possess relevant information." However, this appears to be a list of nearly every name of an Uber employee that the FTC could find in the documents Uber produced during the investigation. The FTC has made no effort to target its potential custodians toward those individuals most likely to have relevant information. Thus, the FTC's list includes multiple people who have no policymaking responsibilities with respect to Uber One, like Salomon Fraind (Head of Groceries and Retail Customer Experience) and Stephanie Dawson (Sr Program Leader, AV Delivery). Similarly, the FTC's list includes employees with roles unrelated to Uber One in the United States, such as Eric Hamidy (Director, United States and Canada Crash Claims & Support) and Kaimei Zhang (Senior Operations Manager, Rider, EMEA). The FTC also lists a number of senior Uber executives with no nexus to its complaint, such as Chief People Officer Nikki Krishnamurthy.

By contrast, we have provided a list of seven custodians all of whom are intimately involved in Uber One. Through searching their files, we are getting you the key communications about Uber One, including correspondence that these custodians had with other employees who are not custodians. If you think there are any holes or gaps in our proposal, we are happy to discuss that with you. But the 200+ individuals you listed are not necessary custodians for this case and are far greater than the number of custodians permitted in other similar cases. *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (rejecting request for 33 custodians as "not proportional to the needs of [the] case" where requesting party lacked

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 5

factual basis tying proposed custodians to conduct at issue); see also *Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information* (N.D. Cal.) (recommending that parties phase discovery to start with "[c]ustodians (by name or role) most likely to have discoverable information").

The FTC's search term proposal is equally overbroad. While Defendants' proposed 129 unique, reasonably tailored search terms, the FTC proposes a set of incredibly broad terms, including many that are not connected to the case. For example, in response to RFP 4, the FTC's proposal would mean that any document with the words "goal" and "growth" would need to be reviewed, sweeping in companywide growth documents that have nothing to do with Uber One or the issues in the complaint. With respect to RFP 12, the FTC's proposal includes the words "promotion" and "join."  This would include Uber promotions that have nothing to do with Uber One and documents about joining meetings that have nothing to do with Uber One. With respect to RFP 14, any document with the words "payment" and "process" would need to be reviewed. This term is thus likely to sweep in any documents that talk about processing payments for any of Uber's services. With respect to RFP 15, any documents with the words "think" and "customer" or "think" and "consumer" would need to be reviewed, again sweeping in documents relating to any of Uber's offerings. Defendants could list countless such examples of unreasonable and overbroad terms. Moreover, the FTC's terms are impracticable because more than half of the proposed search term strings are too long for our processing tool and would need to be split into multiple terms before they could even be run.

Again, by contrast, our search term list is reasonable and proportionate. If you think there are missing words or concepts from the terms we provided, let us know and we are happy to discuss.

- **RFP 1:**

    - Text of RFP 1: For Uber USA, LLC, Documents sufficient to show the following: (a) its full legal name and All other names under which it has done business; (b) its mailing address, street address, and telephone number of its headquarters; (c) its date and place of incorporation; (d) the names and addresses of All parent, subsidiary, and affiliate companies, and Each person who is or has been an officer of Uber USA, LLC; (e) All websites and mobile applications operated by or on behalf of Uber USA, LLC; (f) All Products offered by or on behalf of Uber USA, LLC; and (g) its relationship to Uber One and Uber Technologies, Inc., Including Any transfers of money between it and Uber Technologies, Inc.

    - Defendants' Status Update: On November 21, 2025, Defendants produced documents responsive to this request, including a corporate organization chart

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 6

(UBER-FTCU1-00000001) and two corporate formation documents. (UBER-FTCU1-00000002 - UBER-FTCU1-00000009). The corporation formation documents have the full legal name and address for Uber USA, LLC. Uber Technologies, Inc. is the 100% owner of Uber USA, LLC. Uber One is offered by Uber USA, LLC, as stated in the Uber One terms. Uber USA, LLC does not own or operate any websites or mobile applications.

- **RFP 2:**

  o Text of RFP 2: Documents, such as organizational charts, sufficient to show the organizational structure of Uber Technologies, Inc. and Uber USA, LLC, Including the Uber One, Uber Support, and Uber "customer obsession" teams.

  o Defendants' Status Update: On November 21, 2025, Defendants produced organizational charts for the teams that are responsible for Uber One, including the Membership and Membership Technology teams. (UBER-FTCU1-00000010 - UBER-FTCU1-00000011). Defendants also identified responsive information in their November 4, 2025 letter regarding custodians. Please let us know if there are other groups where you would like organizational charts and we are happy to look for them, as long as those teams have a reasonable relationship to the issues in this case.

- **RFP 3:**

  o Text of RFP 3: Documents sufficient to identify (a) Any team or group that worked on Any issue Relating to Uber One (Including the development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments, reviews, studies, surveys, or testing of Uber One; Uber One Customer Correspondence; Uber One customer retention; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities); (b) the individuals on those teams; (c) the individuals supervising those teams; (d) the dates those individuals worked on or supervised those teams; and (e) whether those individuals are or were employed by Uber Technologies, Inc., Uber USA, LLC, or both.

  o Defendants' Status Update: Defendants have produced or provided in writing information relating to the teams responsible for Uber One and the issues in the complaint, including the Membership, Membership Technology, CommOps, Customer Obsession, and Strategic Finance teams.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 7

- **RFPs 4 and 5:**

  - Text of RFP 4: All Documents Relating to (a) goals or targets set for teams or groups working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3, and (b) metrics by which those teams' performance was evaluated.

  - Text of RFP 5: Performance reviews for All members of teams who worked on Any issue Relating to Uber One, Including individuals identified in Your response to RFP 3.

  - Defendants' Status Update: Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the proposed custodians and search terms we have offered are reasonable and proportionate. Defendants will not produce any performance reviews.

- **RFP 6:**

  - Text of RFP 6: All operational plans, business reviews, technical reviews, product requirements documents, and reports prepared by or for Any team or group working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3.

  - Defendants' Status Update: Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the proposed custodians and search terms we have offered are reasonable and proportionate.

- **RFP 7:**

  - Text of RFP 7: All presentations to, and Documents sent to, Uber's Board of Directors, Any drafts thereof, and the minutes of Any meeting of Uber's Board, Relating to Uber One or Uber Pass.

  - Defendants' Status Update: Defendants will conduct a reasonable search for documents sent to Uber's Board of Directors or minutes of Uber's Board of Directors meetings that discuss Uber One enrollment processes, Uber One cancellation processes, or the advertisements at issue in the Complaint.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 8

- **RFPs 8, 9, and 10:**

    o Text of RFP 8: Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Enrollment Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Enrollment Process, Including Any hyperlinked Documents; (b) Each disclosure Relating to the terms of Uber One that may appear in the Enrollment Process; (c) Each claim relating to Uber One subscription benefits or savings that may appear in the Enrollment Process; (d) whether the Enrollment Process was only available to certain cohorts of consumers; (e) the timeframe during which Each Enrollment Process was available; and (f) Any changes, whether enacted or only considered, to the Enrollment Process or elements of the Enrollment Process referenced in subparts (a) through (d).

    o Text of RFP 9: Documents (such as screenshots or video recordings) sufficient to show how You inform consumers that (a) they are or have enrolled in Uber One (free trial or otherwise); (b) they will be charged an Uber One subscription fee; (c) they have cancelled their Uber One subscription, turned off the auto-renewal feature, paused their subscription, or accepted a discounted subscription; (d) if they have paused their subscription or accepted a discounted subscription, the date on which they will once again be charged the full price for an Uber One subscription; and (e) Any changes, whether enacted or only considered, to subparts (a) through (d).

    o Text of RFP 10: Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Cancellation Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Cancellation Process, Including Any hyperlinked Documents; (b) Each potential page, step, or action that may appear in the Cancellation Process that does not progress a consumer toward or result in cancellation; (c) Each claim Relating to Uber One or Uber Pass subscription benefits or savings that may appear in the Cancellation Process; (d) Each potential retention effort that may appear in the Cancellation Process; (e) whether the Cancellation Process was only available to certain cohorts of consumers; (f) the timeframe during which Each Cancellation Process was available; and (g) Any changes, whether enacted or only considered, to the Cancellation Process or elements of the Cancellation Process referenced in subparts (a) through (e).

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 9

- o <u>Defendants' Status Update:</u> Defendants produced Uber One's current and prior terms and conditions, which are or were used in the enrollment flows. Defendants will produce screenshots of all Uber One US enrollment and cancellation flows and notification procedures during the relevant time period. Defendants will also produce video recordings of enrollment and cancellation flows that are available. Defendants will not produce contemplated changes to the flows or notifications procedures that were not implemented. Defendants also will not produce any material from foreign jurisdictions as such material is overbroad, irrelevant, and disproportionate to the needs of the case.

- **RFP 11:**

  - o <u>Text of RFP 11:</u> All video recordings, Including compilations of video recordings, of consumers or individuals interacting with the Uber One Enrollment or Cancellation Processes.

  - o <u>Defendants' Status Update:</u> You asked whether a repository of video recordings of consumers or individuals interacting with the Uber One enrollment or cancellation processes exists. Defendants respond that no such repository exists. Defendants will produce video recordings of Uber One enrollment and cancellation flows that it identifies through a reasonable search.

- **RFPs 12 and 13:**

  - o <u>Text of RFP 12:</u> All Documents Relating to Uber One or Uber Pass Enrollment, Including (a) All Documents Relating to the development of Enrollment Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Enrollment; (c) All Documents Relating to disclosures that You made or considered making during Enrollment; (d) All Documents Relating to Nonconsensual Enrollment; (e) All Documents Relating to Any claims regarding subscription benefits or savings that You made or considered making during Enrollment; and (f) All Documents Relating to free trials, enrollment incentives, or promotions.

  - o <u>Text of RFP 13:</u> All Documents Relating to Uber One or Uber Pass Cancellation Processes, Including (a) All Documents Relating to the development of Cancellation Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Cancellation Processes, Including changes to how and where consumers may access Cancellation Processes, the pages or steps that consumers may encounter

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 10

during Cancellation Processes, and the tactics used by You to retain customers during Cancellation Processes; (c) All Documents Relating to consumers' difficulty with cancelling subscriptions or free trials; (d) All Documents Relating to Diverted Cancels, Including consumers' abandonment of Cancellation Processes; (e) All Documents Relating to Any claims regarding subscription benefits or savings that may appear during Cancellation Processes; and (e) All Documents analyzing or Relating to the timing or stage at which abandonment occurs, the reason(s) for abandonment, and save rates.

    o   Defendants' Status Update: Subject to the objections made previously, Defendants have proposed a custodial search to respond to RFP #s 12 and 13. Defendants believe that this proposal is reasonable and proportionate. If there are custodians or terms that you believe are missing, we welcome a meet and confer on that topic.

- **RFP 14:**

      o   Text of RFP 14: All Documents Relating to Your polices, practices, or procedures for Uber One, Including (a) how You determine when consumers enrolled in Uber One will be charged or billed for their subscriptions; (b) how You calculate savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes; (c) the Uber One terms of service; (d) how You address or dispute chargebacks; (e) the issuance of refunds; (f) the terms of free trials, enrollment incentives, or promotions; (g) how You determine which fees, if Any, will be charged to consumers who are subscribed in Uber One; and (h) Any changes, whether enacted or only considered, to Your policies, practices, or procedures.

      o   Defendants' Status Update: On November 21, 2025, Defendants produced Uber One's current and prior terms and conditions in response to subpart (c). Defendants will not produce materials in response to subpart (a) because it seeks irrelevant information and is disproportionate to the needs of the case. Defendants believe that subpart (b) is entirely duplicative of RFP 29 and refer to Defendants' response to that RFP. Defendants will not produce documents in response to subpart (g) because it is overbroad, seeks irrelevant information, is unduly burdensome and disproportionate to the needs of the case. Defendants will also not produce documents in response to subpart (h) because changes Defendants considered but did not actually make are not relevant and are disproportionate to the needs of the case.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 11

- **RFP 15:**

    o  <u>Text of RFP 15:</u> All Documents Relating to consumer understanding, beliefs, intention, or perception regarding Uber One, including the terms of Uber One; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

    o  <u>Defendants' Status Update:</u> Subject to the objections made previously, Defendants have proposed a custodial search to respond to this RFP. Defendants believe that this proposal is reasonable and proportionate. If there are custodians or terms that you believe are missing, we welcome a meet and confer on that topic.

- **RFPs 16 and 17:**

    o  <u>Text of RFP 16:</u> All Documents Relating to Any communications received from, or investigations or inquiries by, any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, regarding Nonconsensual Enrollment or Uber One Cancellation or Enrollment Processes.

    o  <u>Text of RFP 17:</u> All Documents Relating to private lawsuits against You regarding Uber One and involving Uber One Enrollment or Cancellation Processes, Nonconsenual Enrollment, Diverted Cancels, or Uber One subscription benefits or savings.

    o  <u>Defendants' Status Update:</u> In response to RFP 16, Defendants will produce consumer complaints about Uber One's cancellation and enrollment processes, including complaints from the Better Business Bureau and State Attorneys General. Defendants will not produce documents related to lawsuits and accordingly stand on their objections to RFP 17.

- **RFP 18:**

    o  <u>Text of RFP 18:</u> All Documents discussing the Restore Online Shopper Confidence Act ("ROSCA") or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment in, or cancellation of, online subscription services.

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 12

- o  Defendants' Status Update: The FTC has asked Defendants to use search terms to respond to this request. Defendants reiterate that the material requested by this RFP is privileged and that search terms would surface documents that are largely if not entirely privileged. Defendants are willing to see if there is some path to get the FTC responsive and non-privileged material, if the FTC identifies what it wants that is not clearly privileged communication.

- **RFP 19:**

  - o  Text of RFP 19: All Customer Correspondence Relating to Uber One, Including the terms of Uber One; Uber One Enrollment or Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; refunds; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

  - o  Defendants' Status Update: Defendants state that they will collect responsive materials from the Bliss database of customer communications. Defendants will produce a list of potentially relevant issue codes in response to RFPs 25 and 26 and are willing to negotiate the scope of this search and production by using those codes.

- **RFP 20:**

  - o  Text of RFP 20: All Documents prepared by or for You Relating to Uber One Customer Correspondence, Including analyses, studies, or reviews of Uber One Customer Correspondence.

  - o  Defendants' Status Update: Defendants are willing to conduct a custodial search for responsive material, but this search will be limited to the scope of the allegations in the complaint. We believe the search we have offered is reasonable and proportionate. If you believe there are additional specific terms or custodians that are needed, please let us know.

- **RFP 21:**

  - o  Text of RFP 21: Documents sufficient to show All versions of All Uber blog posts, support pages, and FAQs (and the timeframe when such materials were publicly available) Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 13

Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

- o Defendants' Status Update: Defendants will supplement their productions made during the investigation to include new blog posts, support pages, and FAQs regarding the enrollment, cancellation, and advertising allegations made in the complaint. Defendants will produce documents relating to partnerships or agreements with third party entities to the extent they bear on the process of Uber One enrollment.

- **RFP 22:**

    - o Text of RFP 22: All Documents Relating to (a) credit card fraud, (b) account takeovers, (c) Uber One partnerships or agreements with third party entities, or (d) family or household members signing up for Uber One for other members of their family or household, as a cause of Nonconsensual Enrollment.

    - o Defendants' Status Update: Defendants maintain their objections to parts (a), (b), and (d). In response to part (c), Defendants will produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment.

- **RFPs 23 and 24:**

    - o Text of RFP 23: All Documents used by You to train Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience on issues Relating to Uber One, including call scripts, policies, manuals, knowledge bases, "blogposts," "support logic," or FAQs.

    - o Text of RFP 24: All Documents reviewed or created by Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

    - o Defendants' Status Update: The FTC asked for clarification regarding Defendants' plan to locate responsive documents for this request. Defendants will perform discrete pulls and produce documents showing how Uber's customer

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 14

support addresses questions and complaints about the enrollment, cancellation, and advertising issues in the complaint.

- **RFPs 25 and 26:**

  - <u>Text of RFP 25:</u> Documents sufficient to identify All codes, tags, or categorizations used by Your customer service, Uber support, Uber "customer obsession" teams, or Any other teams or contractors to label or sort Uber One Customer Correspondence, and the meaning of those codes, tags, or categorizations.

  - <u>Text of RFP 26:</u> All Documents and data Relating to Uber One Customer Correspondence, Including Documents or data showing, for Each month, the volume and percentage of customer service contacts Relating to Each code, tag, or categorization referenced in Your response to RFP 25.

  - <u>Defendants' Status Update:</u> Defendants will identify relevant issue codes related to the Uber One enrollment, cancellation, and advertising issues in the complaint. Defendants will meet and confer on a plan to collect and extract responsive customer communication that was tagged with the agreed upon issue codes.

- **RFPs 27 and 28:**

  - <u>Text of RFP 27:</u> All materially unique versions of Advertisements Relating to Uber One.

  - <u>Text of RFP 28:</u> For Each Advertisement responsive to RFP 27, a dissemination schedule, Including the dates and times of dissemination, number of disseminations, the media used, and the total cost of preparing and disseminating the Advertisement.

  - <u>Defendants' Status Update:</u> In response to RFP 27, Defendants will conduct a reasonable search for Uber One advertisements that have the claims at issue in the complaint. Once this production is made, the FTC can identify a reasonable number of advertisements and Uber will search for dissemination information for that reasonable number of advertisements to respond to RFP 28.

- **RFP 29:**

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 15

- o Text of RFP 29: All Documents and underlying data Relating to savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes (e.g., that Uber One customers save or can save $25 per month, or that Uber One customers are eligible for $0 delivery fees), Including Any analyses, experiments, reviews, studies, or testing You conducted.

- o Defendants' Status Update: Defendants will produce data substantiating the advertising claims at issue in the complaint. Defendants have also proposed search terms and custodians to collect other responsive documents and communications.

- **RFP 30:**

  - o Text of RFP 30: Documents sufficient to show (a) Each of Your partnerships or agreements Relating to Uber One with third party entities, Including Your partnerships with credit card companies, Disney+, PayPal, Verizon, and others; (b) the terms of such partnerships or agreements; and (c) how customers of third parties are enrolled in Uber One subscriptions or free trials as a result of these partnerships or agreements.

  - o Defendants' Status Update: Defendants maintain their objection that much of this request has nothing to do with the subject matter of this case. Uber will produce documents sufficient to show the ways in which Uber One partnerships or agreements with third party entities bear on the process of Uber One enrollment.

- **RFPs 31 and 32:**

  - o Text of RFP 31: All Documents (Including video recordings and underlying data) Relating to Any analyses, experiments, reviews, studies, or testing of Uber One, Including: (a) usability studies of Uber One Enrollment or Cancellation Processes; (b) the "Uber One Churn Prevention" experiments (see UBER-SEPT24-00000178, UBER-SEPT24-00000273); (c) the "Cancellation Flow – Primary CTA XP" experiment (see UBER-SEPT24-00000131); (d) the "Membership Cancellation Transparency – XP" experiment (see UBER-SEPT24-00000133); (e) the "Cancellation Flow Restructing Phase 1 XP" experiment (see UBER-SEPT24-00000136); (f) the "US Uber One Savings Reinforment" experiment (see UBER-SEPT24-00000156); (g) the "Cancellation Value Reminder Screen XP" experiment (see UBER-SEPT24-00000373); (h) the "US Uber One Ending Benefits on Free Trial Cancellation" readout (see UBER-SEPT-00000148); (i) the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 16

financial impact of Any changes, whether enacted or only considered, to Uber One Enrollment or Cancellation Processes, Uber One enrollment incentives, free trials, or promotions, and Uber One subscription benefits or savings; and (j) consumers' ability to locate and navigate the Uber One Enrollment and Cancellation Processes.

o  Text of RFP 32: All Documents and underlying data relating to consumer testing or analyses of Uber One performed by You or at Your direction regarding consumer understanding, beliefs, behavior, perception, or demographics, Including Any A/B or multivariate testing, copy testing, surveys, focus groups, customer interviews, conversion rate testing, clickstream analysis, or polling.

o  Defendants' Status Update: The FTC has asked whether Defendants maintain a repository of responsive materials for these requests. Defendants state that there is not a repository of responsive materials. Defendants will search for and produce responsive materials identified based upon a review of the hits from the search terms and custodians identified in Defendants' November 4, 2025 and November 18, 2025 letters. If there are particular custodians or terms you think are missing, please let us know.

- **RFP 33:**

  o  Text of RFP 33: All Documents and underlying data Relating to how You determine the total price of Uber rides or Uber Eats deliveries, Including (a) the factors You use to determine the total price of Uber rides or Uber Eats deliveries and the weights assigned to those factors; (b) Any fees that You may include in the total price and how and when those fees are assessed; (c) the effect, if Any, that a consumer's enrollment or membership status in Uber One has on the total price or Any fees that may be included in the total price; (d) how You determine whether an Uber ride or Uber Eats delivery is eligible for a $0 delivery fee, 10% discount, or other special offer or promotion associated with Uber One; and (e) Any changes, whether enacted or only considered, to how You determine the total price of Uber rides or Uber Eats deliveries.

  o  Defendants' Status Update: Defendants reiterate that most of the material requested by this RFP is not related to the subject matter of this lawsuit. Defendants will produce documents showing how its $0 delivery fee on eligible order claim is substantiated. Defendants will also produce documents showing the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 17

delivery fees it charges to Uber One customers when they place orders that are not eligible for $0 delivery.

- **RFP 34**

    o <u>Text of RFP 34</u>: Documents or data sufficient to show: (a) The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall; (b) The total number of consumers with active Uber One subscriptions, by month and overall; (c) The total number of consumers with active Uber One free trials, by month and overall; (d) The total number of consumers with discounted Uber One subscriptions, by month and overall; (e) The total number of consumers who accepted a discounted Uber One subscription during Any Cancellation Process, by month and overall; (f) The total number of consumers with paused Uber One subscriptions, by month and overall; (g) The total number of consumers who paused their Uber One subscription or free trial during Any Cancellation Process, by month and overall; (h) The total number of consumers who successfully cancelled their Uber One subscription or free trial (i.e., consumers who were not subsequently charged for Uber One for Any reason after completing a Cancellation Process), by month and overall; (i) The total number of consumers who cancelled their Uber One subscription or free trial (or who turned off the auto-renewal feature) but were were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall; (j) The total number of consumers who initated Any Uber One Cancellation Process, by month and overall; (k) The total number of consumers who initiated Any Uber One Cancellation Process but did not terminate their Uber One subscription or free trial, by month and overall; and (l) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

    o <u>Defendants' Status Update</u>: Defendants will respond to subparts (a) – (h) and part (l) with discrete data pulls.

- **RFP 35**

    o <u>Text of RFP 35</u>: For each consumer who enrolled in an Uber One subscription or free trial: (a) Documents or data sufficient to show the consumer's name, mailing address, email address, and phone number; and (b) All Documents and data (including click-through data) Relating to: (i) The consumer's enrollment in Uber One, Including (A) the date, time, and Enrollment Process through which the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 18

consumer enrolled; (B) whether the consumer enrolled through a free trial or other promotion; and (C) if the consumer enrolled through a free trial or other promotion, the terms of the free trial or promotion (e.g., billing date, duration of free trial, etc.); (ii) The consumer's Uber One payment history, Including (A) the date, time, amount, and payment method of All Uber One subscription fees paid by or billed to the consumer; and (B) the date, time, and amount of Any refunds (including chargebacks) paid to the consumer in connection with Any Uber One subscription fee; (iii) The consumer's Uber One usage, Including (A) the date, time, and total price of Each Uber ride or Uber Eats delivery ordered and paid for by the consumer while the consumer was subscribed to Uber One; (B) Any fees that the consumer was assessed in connection with Each Uber ride or Uber Eats delivery that the consumer ordered while subscribed to Uber One; (C) if the Uber ride or Uber Eats delivery was reduced in price as a result of the consumer's Uber One subscription, the amount and reason that the price was reduced (i.e., a $0 delivery fee); and (D) the lifetime, cycle, and average trip and delivery savings attributable to the consumer's Uber One subscription; (iv) The consumer's cancellation of (or attempts to cancel) Uber One, Including (A) the date, time, duration, and outcome of Each instance in which the consumer initiated a Cancellation Process; (B) for Each Cancellation Process that the consumer initiated, the point at which the consumer exited or completed the Cancellation Process, and the amount of time the consumer spent on Each page or step of the Cancellation Process; (C) if applicable, the dates and times on which the consumer cancelled his or her Uber One subscription (or turned the auto-renewal feature off), and the date and time on which the subscription terminated; and (D) if applicable, the dates and times on which the consumer paused Uber One or accepted a discounted Uber One subscription, the means by which the consumer paused or accepted a discounted Uber One subscription, and the duration of the pause or discounted subscription; (v) The consumer's complaints or inquiries Relating to Uber One, Including the date, time, code, tag, or categorization of Each complaint or inquiry; and (vi) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

o  <u>Defendants' Status Update</u>: With respect to subpart (a), Defendants do not collect consumers' mailing addresses in the ordinary course, but Defendants will otherwise respond to this subpart with discrete data pulls. Defendants will respond to subparts (b)(i)-(iii) and (vi), except that for subpart (b)(iii) Defendants will only provide aggregate data that captures consumers' duration of membership. Defendants will not respond to subpart (b)(iv) because this data is not kept in the

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 19

ordinary course of their business or is not proportional to the needs of the case. Defendants will also not respond to subpart (b)(v) because it is duplicative with RFPs 19, 25, and 26.

- **RFP 36**

  - Text of RFP 36: All data (Including click-through data) Relating to Each potential Uber One Enrollment Process, Including data showing: (a) The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall, through the Enrollment Process; (b) If the Enrollment Process is not available to All consumers (i.e., the Enrollment Process begins with a pop-up Advertisement, push notification, or other solicitation), (i) the total number of consumers who were presented with the Enrollment Process, by month and overall; (ii) the total number of instances in which the Enrollment Process was presented to consumers, by month and overall; and (iii) how You determine which, when, and how often consumers are presented with the Enrollment Process; (c) The average and median amount of time that it takes consumers to enroll in an Uber One subscription or free trial through the Enrollment Process; and (d) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

  - Defendants' Status Update: Defendants are conducting a reasonable and proportionate search for data in response to this RFP.

- **RFP 37**

  - Text of RFP 37: All data (Including click-through data) Relating to Each potential Uber One Cancellation Process, Including data showing: (a) The total number of instances in which consumers initiated Each Cancellation Process, by month and overall; (b) The total number of instances in which consumers successfully completed Each Cancellation Process (i.e., instances in which consumers were not subsequently charged for Uber One for Any reason after completing the Cancellation Process), by month and overall; (c) The total number of instances in which consumers completed Each Cancellation Process but were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall; (d) The total number of instances in which consumers agreed to pause their Uber One subscription or accepted a discounted Uber One subscription during Each Cancellation Process, by month and overall; (e) The total number of instances in which consumers abandoned Each Uber One

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 20

Cancellation Process after initiating it without cancelling, turning off the auto-renewal feature, pausing, or accepting a discounted Uber One subscription, by month and overall; (f) The total number of instances in which consumers initiated Each Uber One Cancellation Process within 48 hours of the consumer's billing date; (g) The average amount of time that consumers spent interacting with the Cancellation Process, and with Each page or step of the Cancellation Process; and (h) A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

- o <u>Defendants' Status Update</u>: Defendants are conducting a reasonable and proportionate search for data in response to this RFP.

- **RFP 38:**

  - o <u>Text of RFP 38</u>: All communications, Including emails, text messages, instant messages, Slack messages, call recordings, notes of phone calls, and meeting minutes, Relating to Uber One.

  - o <u>Defendants' Status Update:</u> Defendants maintain that this RFP is entirely too broad. It would seek significant material that has nothing to do with the allegations in the complaint.

- **RFP 39:**

  - o <u>Text of RFP 39</u>: Documents sufficient to identify your document retention and destruction policies and when such policies went into effect.

  - o <u>Defendants' Status Update:</u> On November 21, 2025, Defendants produced their document retention policy. (UBER-FTCU1-00000128 - UBER-FTCU1-00000131)

- **RFP 40:**

  - o <u>Text of RFP 40</u>: Documents sufficient to show the monthly, quarterly, and annual gross and net revenue You generated from Uber One since November 8, 2019.

  - o <u>Defendants' Status Update:</u> Defendants will produce information sufficient to show the monthly, quarterly, and annual gross revenue generated from Uber One since Uber One's inception. Defendants do not track "net revenue."

# SIDLEY

Paul Mezan, Esq.
Stephanie Liebner, Esq.
James Doty, Esq.
Page 21

Sincerely,

/s/ Benjamin M. Mundel
Benjamin M. Mundel
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

cc:    Lauren Freeman (lfreeman@sidley.com)
       Drew Langan (dlangan@sidley.com)