# Exhibit J



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

February 19, 2026

<u>**Via Email**</u>

Paul Mezan, Esq.
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
pmezan@ftc.gov

RE:   *FTC et al. v. Uber Technologies, Inc. et al., No. 4:25-cv-03477*

Dear Counsel:

We write in response to your letter dated February 10, 2026, our meet-and-confer conducted on February 11, 2026, and the parties' email correspondence. We first address Uber's discovery requests to the FTC, and we then address the FTC's discovery requests to Uber.

**I.      Uber's Discovery Requests to the FTC**

Below Uber addresses its requests for production served on the FTC and then its interrogatories served on the FTC.

- **Requests for Production**

  - The FTC asked that Uber identify its concerns with the FTC's productions to date. Uber understands that the FTC has produced documents responsive to RFPs 1, 3, 4, 5, 6, 7, 13, 15, 16, 17, 18, and 19. Please confirm whether the FTC considers its responses to these RFPs substantially complete. Uber will then be able to identify specific deficiencies.

  - For RFPs 4 and 5, please state the basis upon which you seek to withhold responsive documents based on privilege.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

- o Please also clarify whether the FTC is planning to produce consumer complaints relating to Lyft, DoorDash, Grubhub, and Instacart from its Consumer Sentinel database, as requested by RFP 7. These materials are relevant, inter alia, as benchmarking the volume of customer complaints. If the FTC does not intend to introduce consumer complaints about Uber at trial, please let us know.

- **Interrogatories**: Further, the FTC has not supplemented any of its interrogatory responses. As described in our January 7, 2026 letter, these are also deficient. Without waiver of its rights to identify any other deficiencies, Uber requests that the FTC supplement its responses to the following Interrogatories by February 24, 2026.

  - o Interrogatory 1 seeks the factual basis for the FTC's investigation. You identify two bases: consumer complaints and public information. Please supplement your response to identify with specificity, by Bates number, which complaints and documents formed the factual basis that caused the FTC to open the investigation.

  - o Interrogatory 2 seeks the identity of non-parties with whom the FTC has communicated. Please supplement your response to identify the dates of each communication, the persons involved, the medium, and the subject matter.

  - o Interrogatory 3 seeks the factual basis for the allegations in the FTC's complaint. You identify information from Consumer Sentinel, as well as material produced during the investigation. Please supplement your response to identify with specificity, by Bates number, to which complaints you are referring.

  - o Interrogatory 16 asks the FTC to identify the terms of the injunction it is seeking. Uber reiterates its request that the FTC provide a complete, substantive response to this Interrogatory.

## II.    The FTC's Discovery Requests To Uber

Below we respond to the FTC's questions and assertions relating to its discovery requests served on Uber. This letter incorporates by reference the objections we made in responding to those requests and does not repeat them all here. This letter should not be interpreted as a waiver of any objection previously stated.

To begin, the FTC's characterization of discovery overlooks the more than one thousand pages of documents that Uber produced to the FTC during its investigation, which are also responsive to the FTC's discovery requests here. There was no reason for <u>any</u> further discovery, let alone the extremely broad requests you served in the litigation. Furthermore, the FTC's letter ignores its delays and unreasonable positions, as described further below.

# SIDLEY

Page 3

Before addressing the specific discovery requests, we address the Applicable Time Period, Uber Pass, and search terms and custodians.

- **Applicable Time Period**. Six months ago, Uber stated in its August 21, 2025 responses and objections to the FTC's requests for production that it would consider the Applicable Time Period to be October 1, 2021 to April 21, 2025, and Uber stands by that position. Requiring Uber to search for and produce documents responsive to each request from nearly two years before the launch of Uber One (November 17, 2021) is not reasonable or proportionate to the needs of the case. By contrast, the start date Uber used for its productions in response to the Voluntary Access Letter (October 1, 2021) is reasonable because it includes a sensible ramp-up period before the launch of Uber One. It is also not reasonable or proportionate to enlarge the Applicable Time Period nearly eight months to encompass the time between the filing of the Complaint and the First Amended Complaint ("FAC") when neither complaint alleges illegal conduct that took place exclusively or primarily within that time period. As we discussed in our February 11, 2026 meet-and-confer, Uber will consider responding to specific document requests with documents from before October 1, 2021 or after April 21, 2025, if the FTC can identify a specific basis for doing so for that request. To date, Uber has received no particularized justification for any request.

- **Uber Pass**. Uber Pass is not relevant to the FAC and the FAC makes no allegations that any conduct related to Uber Pass was unlawful. The FTC had every opportunity, during its pre-complaint investigation, to develop facts concerning Uber Pass; that investigation yielded a complaint with no allegation that Uber Pass was unlawful. Thus, as Uber explained during the February 11, 2026 meet-and-confer, if the FTC is seeking information about Uber Pass to prove a violation of the law, it cannot do so based on the FAC. If the FTC is looking for information related to Uber Pass to understand the history of Uber's subscription practices, Uber would consider providing it if the FTC articulates a rationale within the bounds of specific requests. Because the investigatory phase is over and the FTC is now bound by the allegations it has pled, Uber would require a commitment that the FTC is not seeking—and will not seek—any relief on the basis of Uber Pass or alleging that Uber Pass violated the law before it considered producing any documents.

- **Search Terms and Custodians**. Uber produced a viable list of custodians on November 4, 2025. The FTC did not respond until December 23, 2025. Uber's list is reasonable and proportionate, particularly given the phased approach to discovery in the Northern District of California. The FTC has refused to engage or negotiate reasonably with Uber, insisting on more than 200 custodians and not addressing our fundamental concerns with that number. Uber has proposed, on multiple occasions, that the FTC use Uber's search terms and custodians, which Uber sent in November 2025, as a starting point for its counter-proposals. At the very least, Uber has proposed that the FTC point to specific

# SIDLEY

Page 4

missing pieces from Uber's terms and custodians proposals. The FTC has refused both of these reasonable proposals. Indeed, the FTC stated during the February 11, 2026 meet-and-confer that it would not be willing to accept a single one of Uber's search terms or custodians as appropriate for discovery. The FTC's refusal to engage in negotiations or accept reasonable proposals has delayed discovery by at least three months. Uber reiterates its request that the FTC confirm that Uber's seven-custodian proposal covers the core discovery needed in this case or is at least a good starting point. Uber can then produce those documents promptly, and the FTC can identify any gaps or follow-on requests. If the FTC does not agree to this proposal, the FTC needs to engage with a reasonable counterproposal that identifies a realistic number of search terms and custodians.

Uber responds below regarding the FTC's specific requests.

- **Requests Pending Agreement on Search Terms and Custodians**

  o **RFPs 4, 6, 12, 13, 15, and 20**: Both parties agree that these requests require an agreement on search terms and custodians. The FTC has asked Uber to produce documents responsive to these requests, but Uber cannot do that until the FTC makes a reasonable counter-offer to Uber's proposed terms and custodians or accepts Uber's proposal.

- **Requests Where Uber Has Completed Its Collection and Review of Documents**

  o **RFP 2**: After conducting a reasonable search, Uber has not located a document that shows where its relevant teams are situated in relation to each other within Uber's corporate structure. Uber produced organizational charts on November 21, 2025, that show Uber's corporate structure (UBER-FTCU1-00000001) and the organizational makeup of the key Uber One teams—the Global Membership (UBER-FTCU1-00000010) and Membership Tech (UBER-FTCU1-00000011) teams.

  o **RFP 3**: Uber's production on November 21, 2025, provided much of the requested information in response to RFP 3. For example, the Global Membership organizational chart shows sub-functions including Central Operations, Core Portfolio & Strategy, Loyalty, and Cross Platform. Also, the Membership Tech organizational chart contains organizational charts for the Production Operations, Product, Engineering, Data Science, Design, and UX teams. Together, these documents show a majority of the sub-functions that the FTC claims are missing. Separately, Uber notes that its proposed custodians are employed by Uber Technologies, Inc.

# SIDLEY

Page 5

- o **RFP 7**: Uber stated on January 7, 2026, that it would conduct a reasonable search for documents sent to Uber's Board of Directors or minutes of Uber's Board of Directors meetings that discuss Uber One enrollment processes, Uber One cancellation processes, or the advertisements at issue in the Complaint. Following document collection and review, Uber has not identified any responsive, non-privileged documents. Uber will provide a privilege log upon substantial completion of its document productions.

- o **RFP 30**: Uber is not currently aware of any documents responsive to the relevant portions of this request, as defined by Uber's January 7, 2026 correspondence, because no consumers are enrolled in Uber One as a result of any partnership or agreement without providing affirmative consent to Uber.

- **Requests Where Uber Is Collecting and Reviewing Documents and Data to Continue its Rolling Productions**

  - o **Interrogatory 1**: Uber will provide the FTC with titles and tenures for the 219 proposed custodians that the FTC included in its February 12, 2026 email.

  - o **RFP 8**: Uber will produce additional responsive documents to this request as part of its rolling productions, but Uber will not provide flows from foreign jurisdictions because they are not relevant to this matter.

  - o **RFP 11**: Uber will produce additional responsive documents to this request as part of its rolling productions. Uber has not yet withheld any materials responsive to this request on the basis of privilege.

  - o **RFPs 14, 16, 21, 22, 23, 24, 29, 31, 32, 33, and 34**: Uber will produce documents and/or data responsive to the relevant portions of these requests as part of its rolling productions.

  - o **RFP 19**: Uber will provide a list of potentially relevant issue codes, per RFP 25. Uber's Bliss database includes materials from its Executive Community Relations team.

  - o **RFPs 25 and 26**: Uber will provide a list of potentially relevant issue codes associated with Uber One.

  - o **RFPs 27 and 28**: Uber will produce documents responsive to RFP 27 as part of its rolling productions. As previously discussed, the parties will then agree to a reasonable and proportionate response to RFP 28.

# SIDLEY

Page 6

- **RFP 35**: Uber does not collect or maintain user residency data, but Uber can provide data that it uses to designate a user's location, which is generally the location where the user enrolled in Uber One. Uber is continuing its reasonable and proportionate search for data in response to this request, which calls for the production of hundreds of billions of data points. Uber agrees to explain its basis for not producing data in response to any sub-part of this request once its search is complete.

- **RFPs 36 and 37**: Uber is continuing its reasonable and proportionate search for data in response to these RFPs, which call for the production of hundreds of millions, if not billions, of data points. Uber agrees to explain its basis for not producing data in response to any sub-part of these requests once its search is complete.

- **Requests Where Uber Stands on Its Objections**

  - **RFP 5**: Uber stands on its objections and does not intend to produce performance reviews because they are not relevant to the allegations in this case. Although the FTC claims that it is willing to limit this request, the FTC has failed to do so in any productive respect because the FTC has refused to narrow its list of relevant individuals to less than 219 "potential custodians." If the FTC identifies a limited number of individuals for which it would like Uber to consider whether it will produce performance reviews, and articulates a reasonable basis why these documents are relevant, Uber will meet and confer with the FTC to discuss the details of the proposal and its justifications. But Uber maintains its position that performance reviews, as a general matter, are not relevant to the FTC's claims in this litigation.

  - **RFP 17**: Uber's position has not changed since its January 7, 2026 letter. Uber will not produce documents related to private lawsuits regarding Uber One.

  - **RFP 18**: Uber explained in its January 7, 2026 letter that it would be willing to respond to this request if the FTC identifies the documents that it seeks beyond communications that would clearly be privileged. The FTC has not addressed Uber's pending question. As a result, Uber continues to stand on its objections.

# SIDLEY

Page 7

Sincerely,

/s/ Benjamin M. Mundel
Benjamin M. Mundel
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

cc:    lfreeman@sidley.com
dlangan@sidley.com
lydia.sidrys@sidley.com
david.gringer@wilmerhale.com
sonal.mehta@wilmerhale.com
marissa.wenzel@wilmerhale.com
jdoty@ftc.gov
sliebner@ftc.gov
pziperman@oag.maryland.gov
lriley@oag.maryland.gov
michael.dean@alabamaag.gov
jessica.tubbs@alabamaag.gov
lindsay.barton@alabamaag.gov

# SIDLEY