UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | Case No. 25-cv-03477-JST (TSH) |
| Plaintiffs, | |
| v. | **DISCOVERY ORDER** |
| | Re: Dkt. Nos. 180, 181 |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants. | |

The parties have filed joint discovery letter briefs at ECF Nos. 180 and 181. The Court rules as follows.

## A.     ECF No. 180 (Rule 30(b)(6) Deposition Notices to States)

Plaintiffs Attorneys General of Nebraska, Montana, Maryland and Alabama ("States") move to quash Uber's Rule 30(b)(6) deposition notices. From footnotes 1 and 4, the Court gathers that the only active deposition notice is against Nebraska, but that Uber is likely to re-serve its deposition notice on Montana and is likely to serve similar deposition notices on the other state plaintiffs. Thus, the States seek a ruling on the propriety of the deposition notice to Nebraska, figuring it will provide guidance as to the other state plaintiffs.

The deposition notice to Nebraska lists the following topics:

> 1. All facts within Your knowledge Relating to any Investigation(s) Relating to the allegations in the Complaint, Including the identities of the individuals who participated in any Investigation(s), the dates on which such Investigation(s) occurred, and all facts learned in the course of such Investigation(s).
>
> 2. All facts within Your knowledge Relating to Your initial disclosures under Federal Rule of Civil Procedure 26(a)(1).
>
> 3. All facts within Your knowledge Relating to Your responses to Interrogatories.

United States District Court
Northern District of California

4.  All facts within Your knowledge Relating to the allegation that it was misleading for Uber to state that consumers could "cancel their subscription services at any time with no additional fees."  Complaint ¶ 98(a).

5.  All facts within Your knowledge Relating to the allegation that it was misleading for Uber to state that a benefit of Uber One is "$0 Delivery Fee on eligible food, groceries, and more."  Complaint ¶20, Ex. 2.

6.  All facts within Your knowledge Relating to the allegation that it was misleading for Uber to state that consumers save an average of $25 every month with Uber One.  *See* Complaint ¶ 19, Ex.1.

7.  All facts within Your knowledge Relating to the impact(s) of the conduct alleged in the Complaint on Nebraska's consumers, including quantification of any financial impact.

8.  All facts within Your knowledge Relating to the allegation that Uber "failed to provide simple mechanisms" for cancelling Uber One.  Complaint ¶ 116.

9.  All facts within Your knowledge Related to any attempts by any Nebraska consumer to cancel their Uber One membership, Including whether such attempts were successful.

10.  All facts within Your knowledge Related to Your claim for monetary and equitable relief, as set forth in the "prayer for relief" of the Complaint, Including, but not limited to, the "civil penalties, damages, restitution, and/or forfeitures for each [alleged] violation of [the] respective state law, as well as attorneys' fees, costs, and expenses as provided under state law."  Complaint at 50.

11.  All facts within Your knowledge Relating to any Investigation(s) Relating to whether Defendants' alleged practices and policies challenged in the Complaint have been discontinued.

12.  All facts within Your knowledge Relating to Your contention that, "[a]bsent injunctive relief by [the] Court, Defendants are likely to continue to injure consumers and harm the public interest." Complaint ¶ 118.

The Court thinks this deposition notice is improper.  "Numerous . . . federal courts have . . . concluded that 30(b) (6) deposition notices directed to a law enforcement agency involving the type of information Defendants seek in this case were, in effect, notices to depose opposing counsel of record and would not be permitted given a) the agencies' lack of independent knowledge of the transactions at issue and that the information the noticing party was seeking was generated by the agencies' counsel or counsel's agents in preparation of trial, b) the consequent high potential for intrusion into attorney work product, c) the undue burden and inefficiency

2

entailed to prepare a lay witness to engage in rote memorization and recitation of the evidence in the case, and d) the availability of alternative means to secure legitimate factual discovery." *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, *4 (D. Md. June 22, 2010).

The Court follows that case law here. All of the noticed topics are effectively attempts to depose Nebraska's counsel, who are the people with the relevant knowledge. Deposing opposing counsel is highly disfavored. Further, and even aside from that problem, it would be unduly burdensome and inefficient to require any witness or combination of witnesses to memorize and recite the information sought by these topics. *See S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1177 (D. Colo. 2009) (this type of memorization and recitation is "inefficient in the extreme"). This is what contention interrogatories are for.

Accordingly, the Court **GRANTS** the States' motion and **QUASHES** the Rule 30(b)(6) deposition notice to Nebraska.

**B.    ECF No. 181 (Uber's Discovery Requests to FTC)**

Uber moves to compel concerning certain of its discovery requests to the FTC.

**1.    Interrogatory No. 2**

This rog asked the FTC to "Identify all Third Parties You have communicated with Concerning Uber, this Action, or the Investigation. For each Communication, identify the date(s) of the Communication, the Persons involved in the Communication, the medium, and the subject matter." The FTC responded that "it will produce copies of all responsive, nonprivileged email communications with consumers concerning Uber One and this Action in its response to Uber's Document Request 7."

Uber is right that this Rule 33(d) reference is defective. To rely on Rule 33(d), the FTC must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," Fed. R. Civ. Proc. 33(d). The FTC's answer to rog 2 specifies nothing at all. The FTC argues that on January 26, 2026 it produced emails to and from consumers that identify the dates of each communication, the persons involved, the medium, and the subject matter. But producing the documents isn't good

3

enough because the rog response has to specify the records that must be reviewed. If the date, persons, medium and subject matter are all evident from the communications themselves, then Bates numbers would likely accomplish that specification. But it's not good enough for a Rule 33(d) reference to say that somewhere in the responding party's document production is the information you seek. The response has to say where. Accordingly, Uber's motion to compel is **GRANTED**.

### 2.    Interrogatory No. 10

This rog asked the FTC to "Identify the Uber One customers that were allegedly not able to cancel their membership and those that were allegedly not able to simply cancel their membership. Your response should state the complete factual basis, Including what the Cancel Flow was and why the customer was unable to cancel or unable to simply cancel with that Cancel Flow." The FTC objected based on privilege, undue burden, and prematurity, and asserting that this information is largely within Uber's possession and Uber hasn't produced it yet.

In this case the FTC alleges that Uber One customers are not able to cancel their membership without great difficulty. *E.g.*, First Amended Complaint ¶ 5 ("Defendants have failed to provide a simple method to cancel Uber One, employing a series of obstacles that compound to deter and prevent consumers from stopping recurring charges. For any consumer wishing to cancel Uber One, Defendants require them to take at least 12 different actions and navigate a maze of at least 7 screens, if they guess the right paths to use, despite there being no mention of cancellation until the fourth screen."). Rog 10 seeks to take discovery into those allegations, and Uber is entitled to know the case against it.

Rog 10 does not invade privilege or work product. It seeks to know the FTC's contentions concerning specific customers' inability or difficulty in canceling their Uber One membership, and that is a legitimate function of a rog. *See* Fed. R. Civ. Proc. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application or law to fact . . ."). The rog is not unduly burdensome because the FTC need only answer with the knowledge that it has. Nor is the rog premature. The FTC must answer the rog with whatever knowledge is available to it. The Court understands that discovery is ongoing and

United States District Court
Northern District of California

the FTC is likely to gain more information during discovery, so in the future it will likely be able to give a better and more complete answer to rog 10 than it can right now. That means the FTC can, and likely must, supplement its response later as it learns more. It does not mean that the FTC can refuse to disclose what it *does* know right now. It's not true that all information about customer complaints comes from Uber in discovery. In order to allege in the Complaint and the First Amended Complaint that an Uber One membership is difficult to cancel, the FTC must have known something about that. Probably the FTC does know about particular Uber One members who claimed it was difficult to cancel their membership because they complained to the FTC. Uber is entitled to ask about that.

In granting this motion to compel, the Court is not ordering the FTC to make contentions it doesn't want to make. The Court doubts that the FTC's case at trial will consist of a list of millions of Uber One customers by name with evidence specific to each one showing exactly how difficult it was to cancel their membership – the information rog 10 is asking for. Rog 10 is a contention rog.[1] *If* the FTC contends that particular Uber One members were not able to easily cancel their membership, Uber is entitled to know that and the basis for that contention so it can defend against the accusation. Even though the FTC is not likely to identify every specific Uber One member who found it difficult to cancel, it is quite likely that the FTC will come up with some examples in order to humanize its case and show the concrete harm Uber's policies allegedly had on some specific people. The FTC can't keep those examples hidden in discovery and surprise Uber with them on summary judgment or at trial.

In other words, this discovery order is not telling the FTC how to prove its case (i.e., on a customer-by-customer basis rather than through generalized evidence). That's not the purpose of a discovery order. Rather, this order requires the FTC to disclose any contentions it makes (or will later make in discovery) that are responsive to rog 10. For purposes of clarity, the Court thinks rog 10 is asking about particular customers. If the FTC decides it will prove its case with no

---

[1] Uber agrees that rog 10 is a contention rog. ECF No. 181 at 1 (Uber: "Interrogatory No. 10 asks the FTC to identify the Uber One customers it contends were unable to cancel or simply cancel their memberships, and to state the factual basis for those contentions.").

United States District Court
Northern District of California

customer-specific examples of difficulty in canceling an Uber One membership, then in theory it could comply with this order by stating that it identifies no responsive customers. But then the FTC will be stuck with that answer on summary judgment and at trial. What the FTC can't do is refuse to say whether it intends to use customer-specific examples.

With that understanding, the Court **GRANTS** Uber's motion to compel.

### 3.      Interrogatories Nos. 5-7

Rog 5 asked: "Identify and describe the standard You use to assess whether a charge is an 'additional fee' as used in paragraphs 90 and 91 of Your Complaint." Rog 6 asked: "Identify and describe the standard You use to assess when a customer provides 'express informed consent,' Including a description of what factors You consider under this standard, the relative weight of such factors in Your assessment of whether consent is express and informed, and the legal authority for such factors." Rog 7 asked: "Identify and describe the standard You use to assess whether cancellation mechanisms are 'simple' as required by ROSCA, Including a description of what factors You consider under this standard, the relative weight of such factors in Your assessment of whether a cancellation mechanism is simple, and the legal authority for such factors."

At first blush these seem to be contention rogs, but upon closer inspection, they are not. Rog 5, for example, does not ask for the basis for the contention that the charge is an additional fee. Rog 6 does not ask for the basis for the contention that customers did not provide informed consent. And rog 7 does not ask for the reasons the FTC contends the cancellation mechanism is not simple. In other words, these rogs do not ask for the FTC's contentions in this case. They are more like meta-contention rogs, asking how the FTC goes about determining which contentions it will make.

These rogs are not proper under Rule 33. Rogs can ask about "an opinion or contention that relates to fact or the application of law to fact," Fed. R. Civ. Proc. 33(a)(2), but these rogs do not ask about facts or the application of law to fact. Rogs that ask about pure issues of law are not proper, but these rogs do not ask about that either. They are asking about the FTC's internal thought process and how it makes decisions. That doesn't seem to be in the scope of Rule 33. In

United States District Court
Northern District of California

addition, it is irrelevant. *What* the FTC contends in this case is relevant and discoverable, but *why* and *how* it decided to make those contentions is not relevant. This case is about whether Uber's challenged practices are legal or not legal. This case is not about why did the FTC file this case. Accordingly, Uber's motion to compel is **DENIED**.

### 4. Interrogatories No. 12 and 16

Rog 12 asked the FTC to "Identify every single change You contend that Uber must make so that its Enrollment Flows and Cancellation Flows comply with ROSCA. State your answer separately for each Enrollment Flow and Cancellation Flow that You identify in response to Interrogatory No. 11." Rog 16 asked the FTC to "Identify and describe the specific terms of the injunctive relief that You are seeking in this Action."

The problem with rog 12 is the way it assumes the FTC thinks there is one, and only one, way for Uber to comply with ROSCA, such that the FTC could state "every single change . . . Uber must make." But as the FTC explained, "[a]s a matter of business decision-making, Defendants have an infinite combination of lawful design choices they could employ across various enrollment and cancellation flows." In other words, the FTC doesn't have a list of "every single change . . . that Uber must make." Rog 12 is a contention rog that asks for a contention the FTC isn't making and doesn't think it needs to make.

Rog 16 is improper because it invades privilege and work product. At the appropriate stage in the case the FTC will have to disclose the injunctive relief it is seeking. Uber is not entitled to a sneak peak into its opponent's future litigation plans.

Uber's motion to compel concerning rogs 12 and 16 is **DENIED**.

### 5. Request for Production No. 7

This RFP requested "All consumer complaints, comments, or Communications regarding Uber, Lyft, DoorDash, Grubhub, or Instacart." The FTC objected to producing responsive documents concerning Lyft, DoorDash, Grubhub or Instacart, as well as to producing responsive documents concerning Uber that are unrelated to the allegations in this case. Uber moves to compel the customer complaints about Lyft, DoorDash, Grubhub and Instacart.

The Court **DENIES** Uber's motion. This discovery is not proportional to the needs of the

case. As an initial matter, Uber is moving to compel all complaints about these other companies, no matter what they are about. This would include complaints, for example, that the Lyft driver exceeded the speed limit or his car did not have a working seatbelt, or that the Grubhub driver took too long to arrive so the pizza was cold when the customer got it – issues that have no conceivable relevance to this case. Uber does not make any argument that these other companies have a subscription service similar to Uber One that has any of the features the FTC challenges in this case. But even were that true, the relevance of complaints about other companies concerning similar practices is at best speculative. Accordingly, Uber's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: April 16, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

8