WILMERHALE

**David Gringer**

+1 212 230 8864 (t)
+1 212 230 8888 (f)
david.gringer@wilmerhale.com

April 17, 2026

***By ECF***

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiffs the Attorneys General of the States of Alabama, Arizona, Connecticut, Maryland, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Virginia, West Virginia, Wisconsin, and the District of Columbia, the People of the State of California, the People of the State of Illinois, and the People of the State of Michigan, (collectively, the "States") and defendants Uber Technologies, Inc. and Uber USA, LLC submit this joint statement pursuant to the Court's Discovery Standing Order.

The parties hereby attest that they have met and conferred in good faith to resolve their disputes prior to filing this statement.

Respectfully submitted,

*/s/ David Gringer*

David Gringer
Wilmer Cutler Pickering Hale and Dorr LLP

*Attorney for Defendants Uber Technologies, Inc. and Uber USA, LLC*

*/s/ Michael G. Dean*

Michael G. Dean
*Assistant Attorney General*
*Attorney for Plaintiff State of Alabama*

*/s/ Philip Ziperman*

Philip Ziperman
*Deputy Chief, Consumer Protection Division*
*Attorney for Plaintiff Attorney General of Maryland*

## I.    Uber's Position

### a.  The States refuse to provide Uber with facts relating to ROSCA benchmarks (No. 1).

Interrogatory No. 1 asked the States to "[i]dentify five subscription services offered to consumers that You contend do not violate ROSCA, 15 U.S.C. §§ 8401-8405." The States have refused to respond, asserting that this information is "not relevant" or "if relevant, … disproportional to the needs of the case" and that it "improperly seeks a legal analysis."[1] Those objections are meritless and inconsistent with both this Court's prior rulings and the FTC's position. The information is relevant because Uber may use the States' response to Interrogatory No. 1 to benchmark its own processes against relevant comparators. In addition, what is "simple" depends on context. These comparators will help provide the necessary context.

Moreover, the Court has already held that enrollment and cancellation flows other than the ones alleged to be unlawful "bear on the availability of alternative designs, as well as Uber's knowledge about that." Dkt. 167 (compelling production of "materials from foreign jurisdictions"). If the States respond to this Interrogatory entirely with product flows that are not "availabl[e]" to Uber, that is relevant under this Court's ruling. And if the States respond with product flows that are similar to Uber's, that undercuts actual knowledge. Additionally, the States' position that "other companies' compliance or failure to comply with ROSCA is not relevant," Joint Statement (States' Position), conflicts with the FTC's contention that "investigations and private lawsuits related to … similar conduct … are squarely relevant to Defendants' knowledge or notice of unlawful practices." Dkt. 179-1. Plaintiffs have argued that Uber's knowledge of whether non-identical conduct violates ROSCA is relevant; thus, they must provide discovery on it just as they have demanded of Uber.[2]

The States are also wrong to object that Interrogatory No. 1 "improperly seeks a legal analysis." Interrogatory No. 1 does not call for "analysis" at all because it seeks no explanation or reasoning. It simply asks the States to identify the names of services. The States do not have to share reasons. At most, Interrogatory No. 1 seeks the application of law to fact, which is permissible under Rule 33. *See* Fed. R. Civ. P. 33(a)(2).

### b.  The States refuse to identify non-privileged facts about their investigations, including about communications with consumer complainants (No. 4).

It should be unobjectionable that Uber seeks to know whether (and if so, when, through whom, and how) the States communicated with individuals about Uber One. But the States will not identify a complete list of communication recipients, dates of communications, methods, or other facts relating to those communications.[3] By the States' own description, consumer

---

[1] As between States, most of the objections and responses lack material differences.

[2] The States' two citations on this point, one of which is a 41-year-old decision from a Maryland state court, do not concern the situation where a party seeks industry comparator information to inform a knowledge requirement and other valid evidentiary rationales. *See Consumer Fin. Prot. Bureau v. Navient Corp.*, 2018 WL 2088760, at *6-7 (M.D. Pa. May 4, 2018) (comparators not relevant to reasonableness of conduct); *Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub. Co.*, 304 Md. 731, 752 (1985) (challenging agency action based on selective enforcement argument).

[3] Uber understood from the parties' meet-and-confer that the States would not commit to providing a complete response to Interrogatory No. 4. The States' portion of this joint statement says that "the lead States agreed

complaints are relevant to their claims. *See, e.g.*, First Amended Complaint ("FAC") ¶¶ 4, 38, 60, 62. Uber is entitled to information about these communications. For example, Uber is entitled to know whether the States spoke to any of the consumer complainants to confirm accuracy—and, if so, when and through whom—so that Uber can take further discovery as necessary and so the appropriate weight can be given to these hearsay complaints.

If the States' communications with all individuals concerning Uber One took place in writing and have been disclosed in document productions, Bates ranges can be cited under Rule 33(d). But Plaintiffs have lodged a series of unfounded "privilege" and "work product" objections that their response to this Joint Statement does not disavow.[4] The communications are plainly relevant because Plaintiffs assert them as evidence of Uber One's noncompliance with ROSCA. *See, e.g.*, FAC ¶ 4 ("Consumers have complained that they have been enrolled in an Uber One subscription without their consent, reporting that they never signed up and have no idea why they were charged."). And courts have repeatedly rejected the position that they are work product. *See* Wright & Miller, 8 Fed. Prac. & Proc. § 2023 (3d ed.) (courts have "consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts"). There is thus no basis for the States to withhold a response to Interrogatory No. 4.

### c. The States will not share the factual bases for their deception claims (Nos. 5, 8, 9, 10, 14).

"[T]he precise formulation and context of [a defendant's] representations are pivotal to [deception] claims." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (applying New York and California law); *see id.* at 742 ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."). The "context" of the alleged misstatement matters, *Klammer v. Mondelez Int'l, Inc.*, 2023 WL 105095, at *3 (N.D. Cal. Jan. 4, 2023), as does the medium, *see Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 532 (N.D. Cal. 2018) ("It would not be reasonable to expect a consumer to search for disclaimers on a website to clarify a purported misrepresentation on in-store signage."). Whether or not the allegations of deception were "set out in great detail in the First Amended Complaint"—Uber contends they were not—those were allegations and Uber now seeks evidence. Uber requests the entire deceptive communication (because context matters) and, within it, "each statement or omission" that was allegedly deceptive. Interrogatory No. 5. This should not be contentious. Nor should Uber's related requests for facts supporting the States' position that reasonable consumers would have been deceived by the asserted representations. Contrary to the States' suggestion that these Interrogatories call for "legal analysis," Joint Statement (States' Position), they only seek to clarify the States' position ("State whether") and "all facts in support of [that] response." Interrogatory Nos. 9, 10.

---

to request that states would supplement their responses to certain interrogatories, including Interrogatory 4," but does not explain the bounds of that supplementation or whether all States have agreed to it. If the States agree to provide complete responses to Interrogatory No. 4, Uber would only request that all supplementations be complete by April 24, 2026.

[4] These include objections based on "the attorney-client privilege, the attorney work product doctrine, the common interest doctrine, the law enforcement privilege, and the deliberative process privilege."

The States cannot be excused from responding to Uber's discovery on the basis that the States do not intend to use certain information to prove their claims. As the Court has repeatedly observed, evidence can be relevant because it exonerates Uber. *See* Dkt. 167 ("investigations that revealed no wrongdoing by Uber concerning the challenged practices are helpful to Uber – not irrelevant – because they would show lack of notice and undermine the FTC's case"). For example, the States cannot refuse to provide facts relating to a reasonable consumer's understanding of "average" (No. 9) when a communication alleged to be deceptive contains that word. Regardless of how the States intend to prove their deception case, they must provide discovery relevant to Uber's reasonable defenses.

## II.     The States' Position

### a.  The States are not obligated to conduct a legal analysis of other platforms to aid Uber's defense.

Uber's request that the States identify other subscription services that do not violate ROSCA is improper. Despite Uber's claims to the contrary, other companies' compliance or failure to comply with ROSCA is not relevant to the States' claims or Uber's defenses. *See, e.g., Cons. Prot. Fin. Bur. v. Navient Corp.*, 2018 W.L. 2088760, at *6-7 (M.D. PA) (holding that "the actions, inactions, or understandings of other industry participants are not relevant to the present lawsuit. . . . this suit is against specific defendants, and, consequently, those defendants are the only [defendants] whose actions are relevant.").

Moreover, Uber's request would require the States to conduct separate investigations of multiple subscription platforms and then provide Uber with their opinions about the legality of those services. Such a requirement would grind the States' enforcement duties to a halt. *See, e.g., Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub. Co.*, 304 Md. 731, 752 (1985)("To require the Division to undertake an industry-wide investigation every time one violator comes to its attention would prevent the prosecution of numerous known violators."). Moreover, "Rule 33 does not permit interrogatories directed to issues of '"pure law," *i.e.* legal issues unrelated to the facts of the case.'" *Santos v. Baca*, 2016 WL 1611584, at *1 (D. Nev. Apr. 21, 2016)(cleaned up). Even if Uber were right that its request seeks the application of facts to law, the request would still be improper. "Rule 33(b), which declares that an interrogatory is 'not necessarily objectionable merely because an answer . . . involves an opinion or contention that relates to fact or the application of law to fact' confers no such absolute right [to an answer]. The sentence of Rule 33(b) that includes the quoted passage makes it clear that it applies only to interrogatories that are 'otherwise proper.'" *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985)(footnote omitted). Here, Uber seeks information from the States regarding whether the States believe other platforms are operating legally. In their complaint, the FTC and the States have set out in great detail how they believe Uber has violated ROSCA. Whether another company is currently complying with or violating ROSCA has no bearing on those claims or Uber's defenses. It is wholly irrelevant. This Court will decide whether Uber has violated ROSCA on the evidence before it and not based on a State's opinion which Uber claims as a "benchmark" about the legality of its competitors' practice. Accordingly, Uber's request seeks irrelevant information, and it is not a proper discovery request under Rules 26(b)(1) and 33.

Uber seeks to counter this by asserting that "the Court has already held that enrollment and cancellation flows other than the ones alleged to be unlawful 'bear on the availability of alternative designs, as well as Uber's knowledge about that.'" (Section I.a., *supra*)(quoting Dkt. 167 at 3). What Uber fails to mention was that, in that discovery issue, the FTC was seeking information about investigations and private lawsuits against Uber that concerned Uber One. The distinction matters. Evidence of other cases against Uber is relevant to Uber's knowledge. The States' legal opinions about other companies' subscription services are not.

**b. Uber's complaint that the States have refused to identify non-privileged facts about their investigations is premature and misrepresents the facts.**

Despite Uber's claims, the States have not refused to identify non-privileged facts about their investigations.[5] In fact, even before Uber submitted its interrogatories to the States, the States' initial disclosures provided Uber with consumer complaints the States have received regarding Uber One. Those complaints generally set out each consumer's specific complaint(s), provided the consumer's name and contact information, and in many cases included communications with consumers. In response to Uber's interrogatories, the States responded by citing the complaints they provided with their initial disclosures with references to specific Bates numbers. In the States' responses to Uber's requests for production, the States reproduced those complaints, any additional complaints received after submission of the initial disclosures, and any additional communications related to those complaints, again citing specific Bates numbers for those documents.

Generally speaking, the states' reception of consumer complaints and any mediation between the states and Uber on a consumer's behalf would have been done in writing. Nevertheless, after meeting and conferring with counsel for Uber on this issue, the lead States agreed to request that states supplement their responses to certain interrogatories, including Interrogatory 4. Those States that have additional responsive information have submitted supplemental responses to Uber over the last two weeks. Given that the States have agreed to give Uber the information it seeks, where it exists, Uber's objection is both premature and factually incorrect.

**c. The States have shared the factual bases for their claims.**

Uber's Interrogatory No. 5 asks the States to identify "every Communication ever made by Uber" and then separately identify "each statement or omission that the Complaint alleges violates" the States' consumer protection laws. This request is improper in that it seeks a legal analysis of "every Communication ever made by Uber," regardless of whether a particular Communication is relevant to this case. *See, e.g., Santos*, 2016 WL 1611584, at *1; *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 333. And, at this point, Uber has not even provided

---

[5] Uber's assertion that the States "have lodged a series of unfounded 'privilege' and 'work product' objections" (Section I.b., *supra*) is baseless. First, Uber minimizes the fact that the States have provided well over a thousand documents containing consumer complaints and related communications despite their objections. Second, the States have rightly objected on privilege grounds as Uber's request seeks all communications the States have had with anyone about their investigations and this litigation, which necessarily includes the States' privileged communications with each other and with the FTC.

the States with sufficient discovery from which the States could identify such Communications. Nevertheless, the States have, to the extent they were able, sufficiently answered Uber's interrogatory. Rather than simply refer Uber back to the First Amended Complaint, the States set out that they believe Uber has made deceptive representations in its advertising regarding the amount of savings consumers would receive on ride bookings and delivery services if they subscribed to Uber One; falsely represented in its advertising that consumers could cancel their Uber One subscriptions "anytime" without incurring additional fees, while creating obstacles that make it unreasonably difficult, if not outright impossible, for consumers to actually cancel their subscriptions; and charged consumers for Uber One subscriptions without the consumers' consent. These are the factual bases for the States' claims, and they are set out in great detail in the First Amended Complaint. It appears that what Uber really wants is for the States' to disclose trial exhibits, which is not an appropriate request at this time. *See, e.g., MH v. Adams,* No. 1:22-CV-00409-REP, 2026 WL 221811, at *7 (D. Idaho Jan. 28, 2026)("At this stage of the litigation, the identification of exhibits remains a work-in-progress and is governed by later disclosure requirements. Compelling such information now would speed up the timeline and intrude on trial preparation.").

Uber's Interrogatory No. 9 asks the States to "[s]tate whether reasonable consumers understand that a claim that consumers '[s]ave $25 every month' 'on average' means that consumers are guaranteed to save at least $25 per month[.]" Similarly, Uber's Interrogatory No. 10 asks the States to "[s]tate whether reasonable consumers believe that a membership or loyalty program's claim of average savings includes the cost of that membership or loyalty program[.]" Not only are these requests vague, in that they do not define the term "reasonable consumer," they are also inapplicable to the claims at issue in this case. The FTC and the States' contentions are not that consumers misunderstood Uber's representations about average savings; they are instead that Uber represented consumers would save a specific amount when they did not. Furthermore, the "reasonable consumer" standard is not necessarily applicable under the States' consumer protection laws. For example, Maryland law employs an "unsophisticated consumer" standard. *See Golt v. Phillips,* 308 Md. 1, 10 (1986) ("An omission is considered material if a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action."). Finally, Uber is free to argue that reasonable consumers would have understood its representations differently, but it is not entitled to have the States offer a legal analysis regarding Uber's own "reasonable consumer" standard. *Cf. Santos,* 2016 WL 1611584, at *1 ("Rule 33 does not permit interrogatories directed to issues of '"pure law," *i.e.* legal issues unrelated to the facts of the case.'").

Finally, Uber's Interrogatory No. 14 asks the States to "[i]dentify all facts in support of the allegation in paragraph 83 of the Complaint that consumers have spent 'unreasonably long wait times in the Uber customer support chat queue.'" The States answered that, as set out in the First Amended Complaint, consumers who have sought support from Uber while trying to cancel their subscriptions have waited hours, up to an entire day, for a response from Uber. The States further explained that they expected additional facts supporting their allegation to be uncovered during discovery. Given that Uber has yet to provide the States with sufficient information to identify specific instances of consumers enduring unreasonably long wait times, the States cannot provide Uber with that additional detail at this time.

## SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from the signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2026

/s/ *David Gringer*
David Gringer

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 4:25-CV-3477