WILMERHALE

**David Gringer**

+1 212 230 8864 (t)
+1 212 230 8888 (f)
david.gringer@wilmerhale.com

April 17, 2026

**By ECF**

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiffs the Attorneys General of Alabama and Maryland, on behalf of themselves and the Attorneys General of the States of Arizona, Connecticut, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Virginia, West Virginia, Wisconsin, and the District of Columbia, the People of the State of California, the People of the State of Illinois, and the People of the State of Michigan, (collectively, the "States") and defendants Uber Technologies, Inc. and Uber USA, LLC submit this joint statement pursuant to the Court's Discovery Standing Order.

The parties hereby attest that they have met and conferred in good faith to resolve their disputes prior to filing this statement.

Respectfully submitted,

*/s/ David Gringer*

David Gringer
Wilmer Cutler Pickering Hale and Dorr LLP

*Attorney for Defendants Uber Technologies, Inc. and Uber USA, LLC*

*/s/ Michael G. Dean*

Michael G. Dean
*Assistant Attorney General*
*Attorney for Plaintiff State of Alabama*

*/s/ Philip Ziperman*

Philip Ziperman
*Deputy Chief, Consumer Protection Division*
*Attorney for Plaintiff Attorney General of Maryland*

## I.      Uber's Position

### a.  The States refuse to identify Uber's alleged misstatements (No. 16).[1]

Request No. 16 should not be controversial—Uber seeks production of the documents and communications containing the statements or omissions that the States contend violate their consumer protection statutes.[2] The States first object that these documents are privileged and/or work product. But Uber is not asking for anything internal to the States, and certainly no documents describing mental impressions or internal decision-making processes. Indeed, the States' portion of this joint statement acknowledges that Uber seeks only "every Uber communication containing a violative statement." Nor is Uber asking for the States "to create" anything.  Joint Statement (States' Position). Uber instead seeks consumer-facing documents containing the statements or omissions that allegedly mislead consumers so that Uber can understand the claims against it and prepare a defense. It should be beyond dispute that Uber is entitled to know the premise of the States' deception claims. As courts nationwide recognize, "the precise formulation and context of [a defendant's] representations are pivotal to [deception] claims." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (applying New York and California law); *see id.* at 742 ("The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."); *Klammer v. Mondelez Int'l, Inc.*, 2023 WL 105095, at *3 (N.D. Cal. Jan. 4, 2023) ("context" matters).

Even if this were somehow attorney work product (it is not), Uber has a "substantial need," Fed. R. Civ. P. 26(b)(3)(A)(ii), for these documents because they are the "primary evidence" of Plaintiffs' deception claims. *Fink*, 714 F.3d at 741. The States have pled that, "[i]n numerous instances," Uber has made "representations [that] are false, misleading, or not substantiated at the time the representations were made." First Amended Complaint ("FAC") ¶¶ 98-99. The States cannot now complain that they need to produce evidence of that claim—i.e., the "Uber communications," Joint Statement (States' Position), that contain those "representations," FAC ¶ 99. To be sure, that may require the States to "sift through every Uber communication, make a statement-by-statement determination of which were deceptive, and provide Uber with the results of that legal analysis." Joint Statement (States' Position). But the outputs of that process are not "textbook work product," *id.*, because they are external-facing advertisements. And the process itself is simply what needs to be done to identify "[t]he primary evidence" in a deception case. *Fink*, 714 F.3d at 741.

Finally (and inconsistent with the privilege objection), the States object that these documents are already in Uber's possession or publicly available. As Uber has made clear to the States on multiple occasions, the general suite of Uber's marketing communications is, obviously, within Uber's possession. What is not in Uber's possession—or in the public domain—is the subset of those documents the States contend to be unlawful. Those must be produced.

---

[1] The States advised Uber on Wednesday, April 15, and again today, that they will replead the same state-law claims asserted in the First Amended Complaint, as permitted by the Court's motion-to-dismiss decision.  Dkt. 178 at 27.

[2] The States' objections are not materially different.

**b.  The States refuse to produce documents about ROSCA (Nos. 17, 18, and 20).**

Request Nos. 17. 18, and 20 seek documents relating to the States' allegations that Uber's cancellation flows were not "simple," including documents describing what "does or does not constitute a 'simple' cancellation method" under ROSCA (No. 17), documents identifying consumers who found Uber's flows to be not "simple" (No. 18), and "any guidance, publication, opinion, policy statement, comments to rulemaking, statements on rulemaking, or enforcement action" relating to ROSCA (No. 20).

On Request No. 18, the States simultaneously suggest that they have completed their productions and describe an intent to "perform [an] analysis" of "sales data" that would reflect "consumer specific account information" for consumers who found Uber's flows not to be simple. Joint Statement (States' Position). Whatever the source, the Court should order production of all non-privileged documents responsive to Request No. 18.

With respect to Request Nos. 17 and 20, there are at least two reasons why Uber must understand how the States seek to apply ROSCA in this case. First, because the text of ROSCA is vague, 84 Fed. Reg. 52393, 52396 (Oct. 2, 2019), 88 Fed. Reg. 24716, 24718 (Apr. 24, 2023), both sides will need to submit evidence showing how the standard should apply to Uber One. Documents showing how the States have interpreted ROSCA in the past bear directly on the persuasiveness of their arguments for ROSCA liability in this case; if, for example, the evidence shows that the States have taken inconsistent positions on what constitutes a "simple" cancellation method, Uber could use that evidence to discredit the States' position that the Uber One cancellation flows are not "simple." Second, and relatedly, the States have alleged that Uber "violated ROSCA with actual knowledge[.]" FAC ¶ 120. Again, evidence that ROSCA's requirements are unclear, or have been interpreted inconsistently, would undercut actual knowledge of a violation. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) (where "relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing ... violator"). Moreover, the States' position that documents concerning "cancellation of loyalty programs or negative options other than Uber One are irrelevant," Joint Statement (States' Position), contradicts with the FTC's position that "investigations and private lawsuits related to … similar conduct … are squarely relevant to Defendants' knowledge or notice of unlawful practices." Dkt. 179-1. This Court has held that Plaintiffs can obtain discovery relevant to "Uber's knowledge and notice of unlawful activities (or that it did not have such knowledge or notice)." Dkt. 167 at 4. Request Nos. 17 and 20 seek evidence that goes squarely to that question. In *Amazon*, the FTC agreed to produce this information.[3]

The States object, in part, on the basis that they provided narrative answers regarding what constitutes a "simple" cancellation flow in response to interrogatories and thus do not need to produce documents responsive to RFPs 17 and 18. Putting aside that the States' interrogatory

---

[3] *Fed. Trade Comm'n v. Amazon.com, Inc.*, Case 2:23-cv-00932 (W.D. Wash.), Dkt. No. 180 at 2 ("In the negotiations leading up to the motion, the FTC agreed to produce 'all nonprivileged documents relating to the FTC's investigation; final versions of FTC guidance, publications, policy statements, and workshops related to dark patterns, negative options, or ROSCA; and any non-privileged FTC 'internal guidelines or policies for enforcing or prosecuting the use of Dark Patterns or violations of ROSCA or any rule concerning Negative Options.'").

responses are insufficient, such responses would not excuse them from also producing responsive materials. *See, e.g.*, *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("'Rules 33 and 34 are cumulative, not alternative.'"). The States also point to produced customer complaints, but Uber's requests seek all documents and communications relating to the States' allegations that its cancellation flows were or are not "simple," including but not limited to customer complaints. Certainly, if the States possess no responsive documents beyond consumer complaints, they can say so.

## II.   The States' Position

### a.   The States properly responded to Request No. 16.[4]

Request No. 16 seeks "All Documents and Communications Relating to Your allegations that Uber's marketing Relating to Uber One was or is deceptive or unfair, Including all Communications containing every single Uber statement or omission that You contend violates the State Consumer Protection Statute." In response, the States produced non-privileged documents in their possession relating to the allegations, but objected to Uber's request for identification of every Uber communication containing a violative statement. Uber now seeks to compel the States to provide that identification.

To comply with Uber's request for "every single" violative Uber statement or omission, counsel for the States would need to sift through every Uber communication, make a statement-by-statement determination of which were deceptive, and provide Uber with the results of that legal analysis. That is textbook work product. The States' investigation is being conducted entirely by their counsel, in consultation with FTC's counsel, and Uber cannot compel the States to create and produce such material. Such "contention-based document requests" are "inappropriate because they invade counsel's mental impressions, often requiring counsel to cull and compile documents in a way that exposes legal strategies and deliberative choices about the importance of certain documents to specific claims, defenses, or other contentions in the case." *Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, 340 F.R.D. 570, 573 (N.D. Ind. 2021); *see also Kalbers v. DOJ - United States Dep't of Just.*, 166 F.4th 783, 792 (9th Cir. 2026) ("'[T]he selection and compilation of documents by counsel' reveals 'important aspects of his understanding of the case.'") (quoting *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985)); *In re Plastics Additives Antitrust Litig.*, 2005 WL 8179862, at *2 (E.D. Pa. Mar. 28, 2005) ("[T]he selection and compilation of particular documents responsive to this discovery request, which seeks all documents concerning 'alleged price-fixing,' would disclose the mental impressions and thoughts of plaintiffs' attorneys, and, therefore, constitutes opinion work-product.").

Uber's conclusory argument that the work product doctrine should be set aside because Uber has a "substantial need" for the documents has no merit. Uber concedes that it already has the

---

[4] At the time of the drafting of this letter, the States' state law claims have been dismissed. Because Uber has declined the States' request that it withdraw its objection, the States have prepared their response herein and intend to amend the Complaint to reassert their state law claims in a manner that complies with this Court's Order (Docket No. 178), but they question the timing of an objection to discovery that is relevant to only a claim that is currently dismissed.

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 4:25-CV-3477

documents. And the Amended Complaint puts Uber on more than adequate notice of the types of communications that are deceptive. Uber's demand that the States provide a legal analysis of Uber's own documents highlights the undue burden inherent in this type of document request, as it "exact[s] an often-disproportionate burden . . . by imposing on counsel across the aisle the task of doing requesting counsel's job for her—forming her own impressions about the importance of documents exchanged in discovery." *Axis Ins.*, 340 F.R.D. at 574 (N.D. Ind. 2021).

**b.    Requests Nos. 17, 18, and 20 seek information unrelated to the case that the States are not obligated to provide.**

Request Nos. 17. 18, and 20 seek two general categories of documents. First, Request No. 18 seeks in part "documents sufficient to show the identity of all consumers who found Uber's Cancellation Flows to not be 'simple.'" It is unclear whether Uber claims that the States' response to this portion of the request is inadequate, but in any event, the States have produced all consumer complaints they received concerning the Uber One cancellation process. That is all the States are required to do. The States certainly do not need to elicit from each consumer whether they specifically found the cancellation process to be "simple."

Second, the Requests seek policy-related materials concerning cancellation and negative options that have no direct connection to Uber, including "All Documents and Communications Relating to methods of cancelling a loyalty or membership program, Including all Documents in which You have described what does or does not constitute a 'simple' cancellation method" and "All Documents and Communications Relating to any guidance, publication, opinion, policy statement, comments to rulemaking, statements on rulemaking, or enforcement action Relating to Negative Options or Cancellation Flows."

These requests stray far beyond the scope of this case. This matter concerns whether Uber complied with the law governing negative options. Documents that generally concern cancellation of loyalty programs or negative options other than Uber One are irrelevant, and in any event, disproportional. *See* Fed. R. Civ. P. 26(b)(1); *see also Fed. Trade Comm'n v. Amazon.com, Inc.*, Case 2:23-cv-00932-JHC, 2025 WL 592998, at *5 (W.D. Wash. Feb. 24, 2025) ("[T]he FTC's internal interpretations of ROSCA, negative options, and dark patterns over time has no bearing on the objective reasonableness of Defendants' interpretation of ROSCA.") (quoting *id.* at Dkt. No. 180 at 10).[5]

Uber claims that the States' position conflicts with the FTC's position regarding investigations and private lawsuits, but Uber neglects to mention that the FTC was seeking information about investigations and private lawsuits *concerning Uber One*. Uber, by contrast, seeks various policy and enforcement materials unrelated to Uber One. That distinction is critical.

Uber further argues that ROSCA is "vague" and that the materials are relevant to the allegation that Uber "violated ROSCA with actual knowledge[.]" FAC ¶ 120. But the FAC already sets

---

[5] While Uber references the fact that the FTC voluntarily agreed to produce certain non-privileged policy materials related to ROSCA in the *Amazon* case, it ignores that the FTC, as the primary regulator and rule-making authority on negative options, is far differently positioned than the States (and indeed, the FTC has already agreed to produce final public versions of FTC guidance, publications, or policy statements related to negative options and ROSCA).

forth several bases on which to find that Uber had actual knowledge, *see* FAC ¶¶ 91–93, and Uber's knowledge of the illegality of its conduct may also be revealed in the electronically stored information (primarily email) that Uber has thus far failed to produce. If Uber was aware of other documents that suggest that ROSCA should be understood differently or that Uber did not have actual knowledge, it is free to cite to them, but it is not entitled to compel the States to search for any additional such documents after the fact.

**<u>SIGNATURE ATTESTATION</u>**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document was obtained from the signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2026

    /s/ *David Gringer*
David Gringer

JOINT STATEMENT REGARDING DISCOVERY DISPUTE
CASE NO. 4:25-CV-3477