

Division of Financial Practices
Bureau of Consumer Protection

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

May 5, 2026

***By ECF***

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

      Dear Judge Hixson:

      Plaintiff Federal Trade Commission ("FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC ("Uber" or "Defendants") submit this joint status report pursuant to the Court's April 23, 2026 (Dkt. 190) Order.

      The parties hereby attest that they have met and conferred in good faith prior to filing this status report.

                         Respectfully submitted,

                         */s/ Sarah Abutaleb*
                         Federal Trade Commission

                         *Attorney for Plaintiff FTC*

                         */s/ Ben Mundel*
                         Ben Mundel
                         Sidley Austin LLP

                         *Attorney for Uber Technologies, Inc. and Uber USA, LLC*

## I.   FTC's Statement

The FTC requests that the Court order Defendants to run the search strings that appear in Exhibit A.  As explained below, the search strings are proportional to the needs of the case, given (*inter alia*) the issues at stake, the amount in controversy, and the importance of the documents.  As further explained, the specific search strings with the highest hit counts seek documents that go to the heart of the litigation, which, according to Defendants, can be located only with custodial searches.  Finally, given Defendants' failure to identify any overbreadth in the search strings and their plainly erroneous views of relevance, they should be ordered to produce the resulting documents by May 22, screening only for privilege, with a log to be produced by June 5.

To date, Defendants have produced fewer than 1,500 documents (including in connection with the FTC's pre-suit investigation) and have represented that they are largely finished with their non-custodial production.  In response to many RFPs, Defendants have produced only a handful of documents or none at all (*see infra* p. 2).  Although the FTC is still discussing with Defendants the deficiencies in their non-custodial production, it appears that Defendants' position is that the overwhelming majority of relevant documents can be located only via search terms.[1]

The FTC's proposed search terms were run against the files of 27 custodians (*see* Dkt. No. 177, at 2), generating 694,475 hits (including family members).  After the FTC dropped one of its search terms, this figure was further reduced to approximately 647,000.[2]  Although the FTC believes that a document pool of this magnitude is proportional to the needs of the case, the FTC indicated that it was willing to discuss potential changes to the search string to minimize the burden on Defendants.  To facilitate the discussion, the FTC requested that Defendants inform the FTC whether certain search terms were disproportionately driving the hit counts or whether the searches were sweeping in certain categories of irrelevant or only tangentially relevant documents that the parties could agree to exclude from production.

Defendants mostly rejected the FTC's suggestion, claiming that the total number of documents is simply too large irrespective of responsiveness.  Only in a few stray instances do they argue that specific search strings are not targeted to the RFP or are unnecessary, which the FTC addresses below.

Contrary to Defendants' argument, the search terms and resulting productions are proportional to the needs of the case.  *See* Fed. R. Civ. Proc. 26(b)(1).  As the Court has noted, the "issues at stake" are of "widespread public importance."  *See* Dkt. No. 177, at 1.  The amount in controversy is high:  Plaintiffs allege pervasive problems with Defendants' subscription

---

[1] The FTC has raised with Defendants certain deficiencies in their non-custodial production and is continuing to review recent productions for completeness.  The FTC intends to raise any unresolved issues with the Court as soon as they are ripe, including as early as in the May 15 joint status report.

[2] After receiving Defendants' hit count report, the FTC agreed to drop the term "breach" from RFP 17, which Defendants say would reduce the hit count by at least 47,927.

service(s), which have yielded billions of dollars in revenue since launch. (Plaintiffs also seek civil penalties.) "[N]early all of" the information remains in Uber's possession (*see id.* at 1-2). Defendants and Plaintiffs both have the resources to review the requested material. And the material—regarding, for example, the development and evolution of the enrollment and cancellation flows, and Defendants' studies regarding consumer behavior and understanding (*see infra* p. 2)—are important (indeed, critical) to resolving the dispute, and Defendants, as noted above, have indicated that much of the material can be located only with search terms. Accordingly, the search strings are appropriate. *See Garner v. Amazon.com, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (compelling production when hit rate resulted in potentially 4.4 million responsive documents because "[w]hile the scope of the production is undoubtedly vast, so too are the claims and damages at issue."); *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) (finding that production of 409,988 documents was proportional and not an undue burden due to their relevance, because "[a] voluminous ESI case is always going to be burdensome. This is an unfortunate reality of ESI heavy, high-dollar commercial cases.").

The search strings are particularly appropriate given that the hit count is partially a product of Defendants' chosen litigation strategy. Had Defendants engaged with the FTC regarding the identity of individuals with relevant knowledge, the parties may have agreed to fewer than 27 custodians, which could have lessened the hit counts. Having opted for a different course, Defendants' complaints about the resulting burden should not be given much weight, especially where they offer no argument other than an unadorned assertion that the number of documents is just too many. *See Simon & Simon, PC v. Align Tech., Inc.*, 2022 WL 2387729, at *3 (N.D. Cal. July 1, 2022) (Hixson, J.) (compelling defendant to run search strings that would potentially result in production of 820,000 responsive documents because "[v]olume is not an excuse for arbitrary search parameters.").

Although the FTC believes the above is sufficient to order Defendants to run the FTC's revised searches, the FTC explains in more detail below why the search strings for several RFPs with the largest hit counts are appropriate and then addresses Defendants' scattershot arguments.

- RFP 15: This RFP seeks documents regarding consumers' understanding, beliefs, intentions, and perceptions as to whether they were deceived by Defendants' false promises, charged without consent, or had difficulty cancelling the subscription. Because Defendants have represented that no repository of such documents exists, search terms are essential. And the documents are critical to the issues in dispute, because whether employees recognized that consumers were deceived by Defendants' marketing, charged without consent, or trapped in a cancellation maze (for example) would be compelling evidence on both liability and civil penalties (*e.g.*, if they demonstrate Defendants' awareness of problems with their subscription service).[3] Because there are numerous

---

[3] *FTC v. Cyberspace.com*, LLC, 453 F.3d 1196, 1201 (9th Cir. 2006) (evidence of "actual deception" is "highly probative to show" violation of FTC Act); *FTC v. Uber Techs., Inc.*, No. 25-CV-03477-JST, 2026 WL 976077, at *11 (N.D. Cal. Apr. 10, 2026) (civil penalties appropriate if defendant had "actual knowledge" of violations—*e.g.*, from "employee discussions of the problems with Uber's disclosures").

words by which Defendants might refer to consumers—"people," "subscribers," "members" (*see e.g.*, Ex. B, UBER-FTCU1-00000768, at 771-74, 77-81 (referring to consumers as members) (highlighting added), "users" (*see e.g.*, Ex. C, UBER-FTCU1-00004175, at 4177, 4179, 4181-83) (referring to consumers as users) (highlighting added), etc.—responsive documents should not, as Defendants propose, arbitrarily be limited to ones that specifically use the word "consumer" or "customer."

- RFP 29:  This RFP seeks documents and information regarding Defendants' claim that subscribers save money.  *See* Complaint ¶ 98.  Defendants have produced only *three* non-custodial documents in response to the RFP and have represented that their production is complete.  The FTC has raised with Defendants the deficiencies in their noncustodial production and intends to address it further with the Court when ripe, but Defendants' current refusal to produce additional responsive non-custodial documents underscores the importance of custodial searches.  These materials are essential for evaluating key issues in the case, including for example:  (1) whether Uber's "save $25 dollars a month" claim is false, and (2) Uber's anticipated argument that, in calculating relief, consumer harm should be offset by the purported benefits of the subscription.

- RFPs 31 and 32:  These RFPs seek testing, surveys, experiments, or similar documents regarding Uber One and discussions regarding the same—for example, testing regarding various iterations of the enrollment and cancellation flows.  Search terms are required because Defendants have represented that no central repository for such documents exists.  And the documents are critical because they may provide what could be the *most* probative evidence supporting Plaintiffs' claims—direct, empirical, and scientific data of Defendants' own making regarding consumers' experience with the enrollment and cancellation flows and their understanding of subscription terms.

Defendants' remaining objections about specific search strings are baseless, largely demonstrating their continued attempts to forestall production of key material for as long as possible.  (Defendants raised these objections for the first time on Friday, May 1, months after first receiving the FTC's search proposal on February 12, 2026.)  In any event, as laid out below, each objection is without merit.[4]

First, documents concerning "members" or "subscribers" are relevant, and Defendants offer no support for their argument to exclude Uber Pass documents.  *See* **RFPs 4, 6, 26, 29, 31, and 32**.  Documents related to Uber Pass (the Uber One predecessor program, discontinued in

---

[4] Defendants' repeated assertions that they were surprised by the FTC's position in this submission is difficult to understand; the FTC is requesting that the Court order search terms that the FTC first proposed in ***December 2025*** (refined in February 2025, then revised subsequently at Defendants' request); and the arguments that follow below are largely responses to specific arguments raised by Defendants in an email to the FTC on the evening of Friday, May 1. Defendants' position is also ironic, given that they provided their portion of this statement— which proposes for the first time an entirely new search and review protocol without ever raising it directly with Plaintiffs (*see infra* p. 8, 14-21)—roughly 30 minutes before the Court's deadline for this statement.

2021) are relevant because the Complaint's claims encompass *any* Uber subscription program (Second Am. Compl. ¶¶ 17, 98-132), and because the unlawful Uber One enrollment and cancellation interfaces were first developed during the Uber Pass period. Even after Uber Pass was discontinued, internal documents show Uber used the terms "Uber Pass" or "pass" and Uber One interchangeably, such that documents referencing Uber Pass not only are probative of Uber One, they are highly likely to be about Uber One. *See, e.g.*, Ex. D, UBER-SEPT24-00000950 (2023 internal chat communications recommending Uber Pass and Uber One subscriptions being treated identically for internal coding purposes); Ex. C, UBER-FTCU1-00004175, at 181 (employees referring to Uber One in February 2023 as "pass"). Documents related to Uber Pass cannot be withheld simply because the subscription program was known previously by a different name.

Second, because there are countless terms by which Defendants may refer to subscribers, the searches should not use "customer" or "consumer" as limiting terms (*see* **RFPs 20, 22, 26**), which would serve only to screen out highly relevant documents. *See supra* p. 2, **RFP 15**).

Third, the Court's granting the FTC's prior motion to compel with respect to certain RFPs (**Nos. 14, 16, and 17**) does not absolve Defendants from running searches to locate additional responsive documents. Defendants do not and cannot claim that all responsive documents have been produced. For example, Defendants have failed to produce policy documents that explain how savings claims are calculated or how Uber determines what fees it charges (RFP 14), and no email discussions regarding prior lawsuits (RFP 17) and no documents whatsoever regarding BBB complaints or government inquiries (RFP 16). Under the Federal Rules, a party must produce all responsive, non-privileged documents that are in its "possession, custody, or control," and consequently, all responsive documents that are identified through running search terms must be produced. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34(a)(1); *see also* Dkt. 144, Stipulated ESI Agreement, at 4 ("all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein."); *Albert v. Lab. Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wa. 2020) (manual searches and ESI searches are "not duplicative" and parties should "collect and produce electronically stored evidence that is known to a party to be responsive to a discovery request or relevant to the subject matter of the action.").

Fourth, the search string for **RFP 33** seeks only documents this Court has ordered Defendants to produce, *i.e.*, materials that bear on whether subscribers save money as compared to non-subscribers, as Defendants have advertised; documents are responsive, for example, only if they contain either "Uber One," "U1" or "UberOne."

Finally, the FTC respectfully requests that, given the unique circumstances, the Court order Defendants to produce the documents resulting from the searches, reviewing only for privilege.[5] First, Defendants' foot-dragging at every opportunity leaves the parties with only minimal time to complete discovery, even with the recent schedule extension, and a protracted

---

[5] In the FTC's most recent ROSCA litigation, *FTC v. Doxo, et al.*, No. 24-569 (W.D. Wa. filed Apr. 24, 2024), Defendants produced more than 700,000 emails (and 1.8 million documents total) after running search terms with only a privilege review.

period of relevance review would only serve further to prejudice Plaintiffs.[6]  Second, as the foregoing demonstrates, Defendants have overwhelmingly failed to argue that the searches sweep in irrelevant documents or otherwise explain why a relevance review is necessary, particularly given the sweep of Plaintiffs' claims, which broadly challenge the advertising, claimed benefits, and cancellation mechanism of Defendants' subscription program.

Defendants have demonstrated time and again that they have flatly erroneous views of relevance and what the RFPs encompass—for example, deeming documents irrelevant where they refer to "members" or "subscribers" or "people," and relevant only where they use the magic words "consumer" or "customer." *See supra* p. 2-3.  Combined with their seeming commitment to produce as few documents as possible, a relevance review would pose an intolerable risk that Defendants would apply these or other comparably erroneous relevance standards, devised and applied in secret, to withhold critical materials.  The main result of a relevance review would thus be a time-wasting process that would only further delay Defendants' already much-delayed production obligations, jeopardize the discovery schedule, and inevitably result in further burdening this Court (already significantly burdened by Defendants' strategy of resisting discovery at every step) with continued disputes.[7]

## II.    Uber's Statement

The FTC asks this Court for extraordinary relief: an order compelling Uber to review and produce nearly 700,000 documents in three weeks *and* to surrender its right under the parties' Stipulated ESI Agreement (Dkt. 144), the Federal Rules, and governing case law to limit production to relevance. The FTC sprung that demand on Uber 24 hours before this filing, after Uber had spent significant time producing detailed hit-count data the FTC requested, and negotiating in good faith. These discovery practices do not reflect the civility that Uber works to demonstrate or what Uber thinks the Court expects. Uber recognizes the importance of using search terms to identify responsive documents. Uber is ready, willing, and able to work with the FTC to identify terms that make sense. Uber agrees to use 13 of the FTC's proposed 33 strings exactly as written, agrees to test 14 more terms through random sampling against the FTC's broader formulations, and has already directly collected and produced the universe of documents called for by the remaining 6. Any judicial intervention is thus premature. The FTC's request that all documents get produced is unsupported and unsupportable.

In this statement, Uber first outlines the steps it has taken to provide the FTC with hit reports, narrowed terms, and data to work this out. Rather than collaborate, the FTC unveiled its demand that Uber review and produce nearly 700,000 documents in three weeks and forgo its

---

[6] For example, Defendants have said it will take four to six weeks simply to get hit counts for the search terms as applied to Slack and Google Drive materials.

[7] The FTC's proposal is entirely consistent with the parties' ESI agreement; the FTC's request does not hinge on the "mere fact" that a document hits on a search string (*see infra* p. 8), but on the fact that the Defendants have failed to identify any overbreadth in the searches, which are tailored to the Complaint's broad allegations; their extensive production delays; their production of only a handful of non-custodial documents; and their repeated assertions that documents are not relevant when they plainly are.

right to a responsiveness review—and gave Uber just 24 hours to respond. That eleventh-hour ultimatum is contrary to the Court's instruction to work together constructively. Uber therefore requests that the Court direct the parties to finish this meet and confer process over the next two weeks. If that does not resolve the issue, the parties should brief the dispute, with Uber having sufficient time to submit declarations and evidence. If the Court wishes to resolve the issue now, Uber identifies a reasonable path forward where it (1) agrees to 13 terms proposed by the FTC; (2) proposes modifications for 14 terms, and agrees to sample documents that hit on the FTC's terms but not Uber's modification; and (3) identifies 6 search strings where search terms are not needed.

**A.  The Court Should Direct The Parties To Negotiate For Two More Weeks**

The FTC once again treats these status reports as an opportunity to ambush Uber and has rushed to court on a dispute that is unripe.

Contrary to the narrative presented by the FTC, Uber is not trying to avoid search term discovery. Rather, Uber has been providing the FTC with repeated hit reports and burden information so that the parties can agree to the appropriate search terms. This iterative process is consistent with local practice and countless complex civil cases in this Court. Rather than cutting off this process early, we are confident that with appropriate time the parties should be able to promptly reach an agreement here.

The FTC's suggestion that Uber has "foot-dragg[ed]" cannot be reconciled with the record. *Uber* proposed search terms to the FTC on November 19, 2025, more than five months ago. The FTC did not provide the current search term proposal until April 16, when the FTC proposed 26 search strings to Uber.  The FTC's claim (FTC Statement n.4) that Uber should not be "surprised" because the FTC "first proposed" terms in December 2025 is misleading: the terms at issue today bear little resemblance to the December proposal, having been revised multiple times since—as the FTC itself acknowledges—and the FTC's demand that Uber forgo a responsiveness review was raised for the first time on May 4. Uber promptly collected data that hit on these terms for the custodians ordered by the Court on April 10 so that it could run hit reports for the FTC. On April 20, Uber identified numerous problems with the FTC's proposed strings (syntax errors and character limitations) that made it impossible for the strings to be run in Uber's document review platform, Relativity. The FTC provided updated terms to Uber on April 21 and April 23, fixing these issues. Uber immediately ran Gmail[8] hit reports for these terms and it took until April 29 for the report to be complete. Uber provided the FTC with hit counts showing that the FTC's terms returned 694,475 documents including families.

---

[8] Uber is still working to collect Google Drive and Slack files for the 27 custodians, but these collections take longer than the Gmail collection. We understand that the FTC's request here is limited to the Gmail collection and documents. Uber expects the Google Drive collection to finish by the end of the week and will immediately provide hit reports to the FTC. Uber's third-party Slack vendor estimated that exports should begin by May 7, and after the data is loaded into Relativity, Uber will run hit reports. Uber did not want the collection of Drive or Slack to delay the process, so Uber has run hit reports on the Gmail collection.

As agreed, Uber then identified particular terms that were driving abnormally high hit counts and explained that specific words appeared to be sweeping in irrelevant or attenuated material. In particular, on May 1, Uber provided the FTC with a detailed spreadsheet identifying, RFP-by-RFP and string-by-string, the problems with the FTC's proposed strings. Uber also broke the FTC's strings into more than 5,000 smaller component parts so the parties could see which terms were driving the hit counts the most. Based on this further detailed information, Uber asked the FTC to provide a revised set of terms so Uber could run another hit report, and offered to discuss any remaining issues. Rather than respond, the FTC ran to court.

Recognizing the May 5 joint status report deadline was upcoming and the Court's admonition to work collaboratively, on April 29, Uber asked the FTC to provide their insert by Friday, May 1. Instead, the FTC sent its portion on May 4, less than 24 hours before this joint status report was due. In its portion, the FTC for the first time requested that Uber review and produce nearly 700,000 documents in three weeks, and not review any documents for responsiveness (and the FTC provided their 5 pages requesting this relief). The FTC's suggestion that Uber itself acted in haste by submitting its portion "roughly 30 minutes" before the deadline (FTC Statement n.3) ignores that Uber could not respond until it had received the FTC's insert— which arrived less than 24 hours before the deadline. Uber respectfully requests that the Court deny this request and direct the parties to continue to meet and confer for the next two weeks.

Since receiving the FTC's proposal on April 16, Uber has worked in good faith to get hit reports and material to the FTC expeditiously, so the parties can agree to search terms together and in good faith. This process is not complete. The FTC has not responded to the report Uber provided on May 1. And Uber has not had the opportunity to fully respond to the FTC's current demand because it was made just 24 hours before this status report was filed. The FTC's suggestion that Uber drove up hit counts with respect to custodians turns the record on its head. The custodian list was set by this Court's order following motion practice (Dkt. 177); Uber did not choose 27 custodians, and the FTC pressed for additional custodians beyond what Uber proposed. The FTC cannot now use the very custodial scope it sought to manufacture an argument for skipping considerations of burden and responsiveness. Nor are Uber's proposed narrowings "stray instances" of overbreadth: Exhibit F identifies, RFP-by-RFP, specific FTC connectors that drive tens of thousands of hits on non-responsive material—e.g., "member* w/25 target*" (~73,000 hits), "Membership w/25 benefit" (~89,000 hits), and "Membership AND test*" (~77,000 hits). These are not de minimis "edge cases"; they are concrete examples of overbreadth that the FTC chose not to address.

Uber respectfully believes that the best path forward is for the parties to continue to meet and confer over these search string issues until May 19. If the parties cannot agree, then they should submit statements to the Court on May 29, with the FTC to provide its statement on May 22. In all events, this should allow the parties to narrow any disputes before they are presented to the Court.

At a minimum, the Court should provide Uber with more than a few hours to brief this issue before ruling on it. The parties have until September 14, 2026 to complete discovery (Dkt. 189), and requiring Uber to review nearly 700,000 documents, waive its right to a responsiveness review, and complete the entire production in just three weeks is highly prejudicial. Uber should

be allowed to fully brief this issue, with declarations and data substantiating the burden and overbreadth of the FTC's request. With adequate time, Uber can review a sample of documents responsive to the FTC's broader strings to show empirically that vast portions of the documents they return are not responsive—rather than asking the Court to resolve a complex ESI dispute on the FTC's speculation alone.

### B. Uber Proposes A Reasonable Path Forward

If the Court does not wish to give the parties more time to narrow the dispute, Uber proposes a reasonable path forward, using nearly *all* of the FTC terms (either in full or for sampling):

- For 13 out of 33 strings, Uber will use the FTC terms exactly as they proposed (see Exhibit E for this list).
- For 14 out of 33 strings, Uber proposes modest adjustments to the FTC's proposed terms and will review a sample of documents excluded by these limitations to have actual data (and not just speculation) about whether these modifications remove vast swaths of responsive data as the FTC contends (see Exhibit F for this list).
- For 6 out of 33 search strings proposed by the FTC, Uber has already conducted direct collections and no search strings are needed at this time (see Exhibit G for this list).

### 1. *FTC Search Strings That Uber Proposes To Narrow*

As shown in Exhibit F, Uber proposes to narrow 14 search strings proposed by the FTC. This narrowing was based upon a granular review of the search string hit reports for words or phrases that returned an abnormally high number of hits. For these strings we did the following: removed generic words not limited to this case, added narrower connectors (within 10, instead of within 25), and added limiting words to focus on the issues in this case. We explain the edits we made in Column C.

The FTC asserts that these edits will remove vast swaths of highly responsive documents. Uber believes that is not correct.[9] In order to determine if Uber's proposed edits are actually appropriate, Uber is proposing that for each string, it reviews a random sample of 100 documents that are excluded by Uber's edits but were included in the FTC's broader string. That will provide actual data on these edits. If 85% or more of the sample is responsive, Uber will use the FTC's proposed string without its modifications. If 50%-84.9% is responsive, Uber will propose a revised search to capture the relevant documents (now with information from a sample review).

---

[9] For example, the FTC repeatedly insists that hits for "member*" alone would be responsive, but they are not. Examples of such facially nonresponsive hits include mentions of employees receiving emails about signing up for "memberships" that have nothing to do with Uber One or anyone on the "membership" team receiving an email, despite its responsiveness to the RFPs or relevance to the issues in the case, when the employee title is used in the email. These examples hit on the FTC's proposed search terms.

If less than 50% of the sample is responsive, Uber will use its narrowed string, and not the FTC proposal.

This proposal allows the parties and the Court to have actual data about the responsiveness of the documents in the FTC's proposal. Without this information, the parties are simply guessing about whose strings are better.

### 2. *FTC Search Strings Where Uber Already Collected Responsive Documents*

Exhibit G identifies the search strings the FTC proposes for RFPs where Uber already collected responsive documents directly from central repositories and custodians. Because Uber already collected responsive documents, additional search strings are not necessary.

### C. Uber Should Be Permitted to Conduct a Responsiveness Review

Finally, in all events, Uber should be permitted the responsiveness review that the parties' ESI Agreement guarantees. The FTC asks this Court to take an extraordinary step that it does not even attempt to support with on-point authority. The cases the FTC cites—*Garner*, *SinglePoint*, and this Court's decision in *Simon & Simon* do not waive a producing party's right to review for responsiveness. To the contrary, *SinglePoint* expressly preserved it. 2023 WL 2585296, at *3 ("agreeing to run search terms does not waive relevance objections"). The FTC's reliance on *Doxo* (FTC Statement n.5) is equally misplaced: based on our review of the docket in that case, the defendants there *chose* to produce on a privilege-only basis as part of their own litigation strategy; no court compelled them to surrender a responsiveness review.

We explain here why in all events Uber should be permitted to review documents for responsiveness, not just privilege. The law is clear: just because a document hits on a search term does not mean it is responsive to the RFP.

The ESI Agreement in this case makes clear that the parties will review for responsiveness. Dkt. 144. The ESI Agreement states that "[t]he mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation." Dkt. 144 at 8.

This agreement is consistent with case law. Courts routinely hold that agreeing to run search terms does not waive the right to review documents for relevance. *See O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 277 (W.D. Wash. 2021) ("[A] party's agreement to run search terms does not waive its right to review the resulting documents for relevance so long as the review can be done in a reasonably timely manner."); *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) ("agreeing to run search terms does not waive relevance objections to the documents that are responsive to the search terms"; holding that a party may "review all documents that are 'hits' on a search term for relevance and withhold irrelevant documents"); *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. 2021) ("The Court will not compel defendants to produce any document simply because it contains a search term whether or not it is

responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action."); *FlowRider Suft, Ltd. v. Pacific Surf Designs, Inc.*, 2016 WL 6522807, at *7-8 (S.D. Cal. Nov. 3, 2016) (denying motion to compel "production of all documents that 'hit' on the parties' agreed-upon ESI search terms without further relevance review").

The FTC's remaining argument—that Uber cannot be trusted to conduct a responsiveness review because of its "flatly erroneous view of relevance"—is unsupported and unfair. Every relevance position Uber has taken has been the subject of good-faith objection and, if necessary, motion practice before this Court, with rulings in both directions. The FTC's real complaint is not that Uber acts in bad faith, but that Uber holds positions the FTC disagrees with—positions this Court has resolved in motion practice and will continue to resolve if necessary. And in all events, when Uber reviews documents for production, it is not making relevance determinations, it is making responsiveness determinations.

### D. Conclusion

For the foregoing reasons, Uber respectfully requests that the Court:

(1) Deny the FTC's request and allow the parties to continue to negotiate search terms until May 19, 2026. If the parties cannot agree, then they should submit competing statements to the Court on May 29, 2026, with the FTC to provide its statement to Uber by May 22. (If the Court does not wish to grant additional time, at a minimum provide a briefing schedule so that Uber can brief this issue in more than 24 hours so that it can submit declarations and data on the burden.)

(2) If the Court is inclined to address the search term dispute at this time, adopt Uber's proposal, which largely adopts the FTC's search strings. For all search strings on relevant RFPs, Uber will conduct a sample review of documents that its strings exclude so that determinations can be made on data and not speculation.

(3) In all events, deny the FTC's request to compel production with no responsiveness review, and permit Uber to review documents for both responsiveness and privilege, consistent with the parties' Stipulated ESI Agreement (Dkt. 144) and case law.

Uber remains willing to work collaboratively with the FTC to reach agreement on reasonable search terms and is committed to producing all responsive, non-privileged documents on a reasonable schedule.

10

**Exhibit E:  FTC Proposed Search Terms Uber Has Agreed To Use Without Modification**

| FTC Proposed Search Strings Uber Has Agreed to Use Without Modification | |
|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** |
| 07. All presentations to, and Documents sent to, Uber's Board of Directors, Any drafts thereof, and the minutes of Any meeting of Uber's Board, Relating to Uber One or Uber Pass. | (Board OR BOD OR "B.O.D.") AND (("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) w/25 (subscri* OR member* OR growth OR retention OR complain* OR ticket* OR churn OR enroll* OR cancel*)) |
| 12. All Documents Relating to Uber One or Uber Pass Enrollment, Including (a) All Documents Relating to the development of Enrollment Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Enrollment; (c) All Documents Relating to disclosures that You made or considered making during Enrollment; (d) All Documents Relating to Nonconsensual Enrollment; (e) All Documents Relating to Any claims regarding subscription benefits or savings that You made or considered making during Enrollment; and (f) All Documents Relating to free trials, enrollment incentives, or promotions. | ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (payment* OR billing OR consent* OR anytime OR "any time" OR fee* OR credit* OR exclusive* OR "flash sale" OR discount* OR save* OR saving*)) <br><br>("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (cancel* OR renew* OR recurring OR specification* OR feature* OR iteration* OR "in-app" OR "go-live" OR rollout* OR launch* OR flow* OR workflow* OR beta OR test* OR process*)) <br><br>("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (conversion* OR "drop-off*" OR hidden OR abandon* OR funnel* OR complet* OR "one-click" OR "one click" OR UX OR "user experience" OR promo* OR incentiv* OR bonus* OR campaign* OR winback*)) <br><br>("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (offer* OR mistak* OR unauthorize* OR friction OR "pain point*" OR "drop- |

11

| FTC Proposed Search Strings Uber Has Agreed to Use Without Modification | |
| --- | --- |
| **FTC RFP** | **FTC's Proposed Search String(s)** |
| | off*" OR CTA* OR "call to action" OR stack* OR conversion* OR unaware OR aware* OR confus* OR notic* OR mistake)) |
| | ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (readout* OR experiment* OR study OR survey* OR pilot* OR trial* OR prototype* OR mockup* OR penetration OR perk* OR 3P OR FTP OR P2P OR nudg* OR upsell OR uninten* OR inadvertent* OR misle*)) |
| | ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((enroll* OR signup* OR "sign-up*" OR "sign up" OR regist* OR "create account" OR "account creation" OR "account setup" OR "new account*" OR "new customer*" OR join* OR activat* OR member*) w/25 (accident* OR unwanted OR "don't know" OR "did not mean" OR "do not mean" OR "didn't mean" OR mistakenly OR revenue* OR "financial impact*" OR profit*)) |
| 13. All Documents Relating to Uber One or Uber Pass Cancellation Processes, Including (a) All Documents Relating to the development of Cancellation Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Cancellation Processes, Including changes to how and where consumers may access Cancellation Processes, the pages or steps that consumers may encounter during Cancellation Processes, and the tactics used by You to retain customers during Cancellation Processes; (c) All Documents Relating to consumers' difficulty with cancelling subscriptions or free trials; (d) All Documents Relating to Diverted Cancels, Including consumers' abandonment of Cancellation Processes; (e) All Documents Relating to Any claims regarding subscription benefits or savings that may appear during Cancellation Processes; and (e) All Documents analyzing or Relating to the timing or stage at which abandonment occurs, the reason(s) for abandonment, and save rates. | ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (bonus* OR discount* OR offer* OR perk* OR improv* OR save* OR saving* OR exclusive* OR churn* OR renew* OR recurring OR payment* OR annual OR monthly))<br><br>("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (flow* OR workflow* OR beta OR test* OR process* OR experiment* OR study OR survey* OR rollout* OR launch* OR release* OR revenue* OR "financial impact*")) |

12

| FTC Proposed Search Strings Uber Has Agreed to Use Without Modification | |
|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** |
| | ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (hidden OR "card hopping" OR "wallet hopping" OR "wallet cycling" OR "card deletion" OR benefit* OR CTA OR "call to action" OR "call-to-action")) <br><br> ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (readout OR P0 OR FTP OR P2P OR pilot* OR trial* OR prototype* OR mockup* OR specification* OR feature* OR iteration* OR "in-app" OR "go-live")) <br><br> ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (UI OR "user interface" OR promo* OR incentiv* OR billing OR winback* OR resurrection* OR mistake* OR unauthorize* OR unaware OR friction OR "pain point*")) <br><br> ("Uber One" OR UberOne OR U1 OR "Uber Pass" OR Pass) AND ((cancel* OR unsubscribe* OR "end subscription" OR "end membership" OR "stop billing" OR "stop subscription" OR discontinue* OR deactivat* OR discontinu* OR "opt-out" OR optout OR "opt out" OR "close account" OR "account closure") w/25 (profit* OR conversion* OR "drop-off*" OR abandon* OR funnel* OR complet* OR "one-click" OR "one click" OR simple OR UX OR "user experience")) |

**Exhibit F:  Uber's Proposed Narrowed Terms To Use For Sampling Purposes**

| Search Strings That Uber Proposes To Narrow And Then Sample | | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| 04. All Documents Relating to (a) goals or targets set for teams or groups working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3, and (b) metrics by which those teams' performance was evaluated. | ("Uber One" OR UberOne OR U1 OR subscri* or member*) w/25 (goal* OR target* OR objective* OR metric* OR OKR* OR "O.K.R.*" OR KPI* OR "K.P.I.*" OR benchmark* OR P0 OR "scorecard" OR "score card" OR "progress report*" OR "definition of done" OR "DOD" OR "D.O.D.") | Uber already directly produced the business planning documents that show the goals, targets, and metrics for Uber One. These documents cover the majority of the FTC's RFP.<br><br>The RFP is seeking communications about these business planning documents. The FTC should use search terms limited to those documents (called business reviews), instead of these broad and generic terms. The FTC's proposal also includes terms that are very broad and don't appear relevant. For example, it includes any documents that hit on member* w/25 target*, which has ~73k hits, and subscr* w/25 metric*, which has ~9k hits. | ("Uber One" OR UberOne OR U1) w/10 (goal* OR target* OR objective* OR metric* OR OKR* OR "O.K.R.*" OR KPI* OR "K.P.I.*" OR benchmark* OR P0 OR "scorecard" OR "score card" OR "progress report*" OR "definition of done" OR "DOD" OR "D.O.D.") |
| 06. All operational plans, business reviews, technical reviews, product requirements documents, and reports prepared by or for Any team or group working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3. | ("Uber One" OR UberOne OR U1 OR subscri* OR member*) w/25 ("operational plan" OR "operations plan" OR "ops plan" OR "operating plan" OR "business review" OR QBR OR "Q.B.R." OR "quarterly business review" OR campaign* OR "review deck" OR "technical review" OR "tech review" OR "architecture review" OR "design review")<br><br>("Uber One" OR UberOne OR U1 OR subscri* OR member*) w/25 (PRD OR "P.R.D." OR "product requirements" OR "requirements doc" | Uber already produced the business planning documents that set goals, targets, or metrics for Uber One.<br><br>This direct collection should cover the RFP.  But the FTC has proposed a broad term that we believe sweeps in broad information that is not responsive. The string is not limited to Uber One.  It also includes terms with broad hits: "member* w/25 campaign*," which has ~13k hits. | ("Uber One" OR UberOne OR U1) w/10 ("operational plan" OR "operations plan" OR "ops plan" OR "operating plan" OR "business review" OR QBR OR "Q.B.R." OR "quarterly business review" OR campaign* OR "review deck" OR "technical review" OR "tech review" OR "architecture review" OR "design review")<br><br>("Uber One" OR UberOne OR U1) w/10 (PRD OR "P.R.D." OR |

| | Search Strings That Uber Proposes To Narrow And Then Sample | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| | OR "requirements spec*" OR specification* OR "spec doc" OR "status report*" OR "weekly update" OR "monthly update" OR "quarterly update" OR roadmap* OR "project plan" OR "work plan" OR "strategy deck" OR "strategy doc" OR "planning deck") | | "product requirements" OR "requirements doc" OR "requirements spec*" OR specification* OR "spec doc" OR "status report*" OR "weekly update" OR "monthly update" OR "quarterly update" OR roadmap* OR "project plan" OR "work plan" OR "strategy deck" OR "strategy doc" OR "planning deck") |
| 15. All Documents Relating to consumer understanding, beliefs, intention, or perception regarding Uber One, including the terms of Uber One; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities. | ("Uber One" OR UberOne OR U1 OR subscri* OR member*) AND (false OR decepti* OR deceiv* OR scam* OR confus* OR misle* OR mistak* OR aware* or uninten* OR inadvertent* OR accident* OR unwanted OR trick* OR trap* OR friction OR loop OR maze)<br><br>("Uber One" OR UberOne OR U1) AND ((Delta OR "Capital One" OR "Cap One" OR "TD" OR Wealthsimple OR Marriott OR Verizon OR Disney OR PayPal OR 3P OR enroll* OR cancel* OR member* OR customer* OR consumer* OR | Uber already produced testing documentation for Uber One, information and agreements regarding Uber One's partnerships with third parties, and millions of rows of data related to enrollment, cancellation, subscription benefits, and savings.<br><br>This proposed search string is not tailored to the RFP, which seeks documents "Relating to *consumer* understanding, beliefs, intentions, or perception" (emphasis added). The string is not limited by the term "consumer" or "customer." Thus, the FTC's search string seeks documents well beyond the scope of the RFP. | ("Uber One" OR UberOne OR U1) AND (consumer* OR customer* OR subscri* OR member*) w/10 (think* OR belie* OR notice* OR understand* OR realiz*) AND (term* OR advertisement* OR ad OR ads OR enroll* OR cancel* OR consent* OR benefit* OR saving*) AND (false OR decepti* OR deceiv* OR scam* OR confus* OR misle* OR mistak* OR aware* or uninten* OR inadvertent* OR accident* OR |

| | | Search Strings That Uber Proposes To Narrow And Then Sample | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| | subscri*) w/25 (think* OR belie* OR notice* OR understand* OR realiz* OR "card hopping" OR "wallet hopping" OR disclaimer* OR anytime OR "any time")) | | unwanted OR trick* OR trap* OR friction OR loop OR maze)<br><br>("Uber One" OR UberOne OR U1) AND (consumer* OR customer* OR subscri* OR member*) w/10 (think* OR belie* OR notice* OR understand* OR realiz*) AND (enroll* OR cancel*) AND (Delta OR "Capital One" OR "Cap One" OR "TD" OR Wealthsimple OR Marriott OR Verizon OR Disney OR PayPal OR 3P OR "card hopping" OR "wallet hopping" OR disclaimer* OR anytime OR "any time") |
| 18. All Documents discussing the Restore Online Shopper Confidence Act ("ROSCA") or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment in, or cancellation of, online subscription services. | ("Uber One" OR U1 OR "Uber Pass" OR Pass OR member* OR subscri* OR enroll* OR cancel*) w/25 (ROSCA OR "Restore Online Shoppers' Confidence Act" OR "R.O.S.C.A." OR "F.T.C." OR FTC OR "automatic renewal law*" OR ARL OR "A.R.L." OR "click-to-cancel" OR "click to cancel" OR "negative option" OR "Consumer Rights Directive" OR "Unfair | This search string is not tailored to the RFP. For example, the FTC's terms pick up any instance of ("Uber One" OR U1) w/25 German*, ("Uber Pass" OR Pass) w/25 German*, member* w/25 German*, or subscri* w/25 German*.<br><br>The search string also does not require documents to be related to enrollment or cancellation, which is what ROSCA covers. Moreover, the likelihood that there are non-privileged documents to this request is low, so the burden of an overbroad search is not proportional or necessary for RFP 18. | ((("Uber One" OR U1 OR "Uber Pass" OR Pass OR member* OR subscri*) AND (enroll* OR cancel*)) w/10 (ROSCA OR "Restore Online Shoppers' Confidence Act" OR "R.O.S.C.A." OR "F.T.C." OR FTC OR "automatic renewal law*" OR ARL OR "A.R.L." OR |

| Search Strings That Uber Proposes To Narrow And Then Sample | | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| | Commercial Practices Directive" OR "Digital Services Act" OR German*) | | "click-to-cancel" OR "click to cancel" OR "negative option" OR "Consumer Rights Directive" OR "Unfair Commercial Practices Directive" OR "Digital Services Act") |
| 20. All Documents prepared by or for You Relating to Uber One Customer Correspondence, Including analyses, studies, or reviews of Uber One Customer Correspondence. | ("Uber One" OR UberOne OR U1) AND ((complain* OR feedback OR friction OR "pain point" OR readout* OR churn* OR ticket* OR problem* OR "response time" OR delay OR wait* OR authorize* OR unauthorize* OR unknown OR bill* OR refund* OR increas* OR pattern* or trend*) w/25 (cancel* OR enroll* OR charg* OR fee* OR paus*)) | This search string is not tailored to the RFP, which seeks documents "Relating to Uber One Customer Correspondence." The string is not limited by the term "consumer" or "customer." As proposed, the search string seeks documents well beyond the scope of the RFP. | ("Uber One" OR UberOne OR U1) AND (consumer* OR customer* OR subscri* OR member*) AND (correspond* OR analys* OR stud* OR review*) AND ((complain* OR feedback OR friction OR "pain point" OR readout* OR churn* OR ticket* OR problem* OR "response time" OR delay OR wait* OR authorize* OR unauthorize* OR unknown OR bill* OR refund* OR increas* OR pattern* or trend*) w/10 (cancel* OR enroll* OR charg* OR fee* OR paus*)) |
| 22. All Documents Relating to (a) credit card fraud, (b) account takeovers, (c) Uber One partnerships or | ("Uber One" OR UberOne OR U1 OR member* OR subscri*) w/25 (fraud* OR stole* OR | Uber already produced documents responsive to RFP 22. These documents include third party partnership agreements and documents related to payment processing. This | ("Uber One" OR UberOne OR U1) w/10 ((card w/5 fraud*) OR stole* OR unauthorize* |

| Search Strings That Uber Proposes To Narrow And Then Sample | | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| agreements with third party entities, or (d) family or household members signing up for Uber One for other members of their family or household, as a cause of Nonconsensual Enrollment. | unauthorize* OR "didn't agree" OR "did not agree" OR unknown OR "ID theft" OR takeover* OR "card hopping" OR "wallet hopping" OR Delta OR "Capital One" OR "Cap One" OR "TD" OR 3P OR Wealthsimple OR Marriott OR Verizon OR Disney OR PayPal OR campaign*) | search string is not necessary; the parties have not agreed to run search terms to pull documents for this in addition to Uber's direct pulls. In addition, the search string is not tailored to the RFP or the issues in the case. For example, it includes all hits for "member* w/25 unknown" and "member* w/25 TD," each of which has over 4k hits. | OR "didn't agree" OR "did not agree" OR unknown OR "ID theft" OR takeover* OR "card hopping" OR "wallet hopping" OR Delta OR "Capital One" OR "Cap One" OR "TD" OR 3P OR Wealthsimple OR Marriott OR Verizon OR Disney OR PayPal OR campaign*) |
| 29. All Documents and underlying data Relating to savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes (e.g., that Uber One customers save or can save $25 per month, or that Uber One customers are eligible for $0 delivery fees), Including Any analyses, experiments, reviews, studies, or testing You conducted. | ("Uber One" OR UberOne OR U1 OR Pass OR Membership) w/25 (save* OR saving* OR "delivery fee" OR benefit OR promo* OR discount* OR incentiv* OR bonus* OR perk* OR exclusive* OR "on average" OR "national average" OR "Uber Cash" OR ubercash OR "cash-back" OR "break even" OR "break-even") | Uber already produced data showing how savings claims are substantiated and Uber's advertisements that have savings claims. <br><br>If the FTC is also seeking communications about these data and documents, the FTC should propose targeted searches based on what Uber has already produced. This search string is not tailored to the RFP because it is not limited to Uber One or savings substantiation. For example, there are ~89k hits for Membership w/25 benefit, ~23k hits for Membership w/25 incentiv*, and ~12k hits for Pass w/25 benefit. | ("Uber One" OR UberOne OR U1) w/10 (save* OR saving* OR discount* OR "on average" OR "national average" OR "cash-back" OR "break even" OR "break-even") |
| 31. All Documents (Including video recordings and underlying data) Relating to Any analyses, experiments, reviews, studies, or testing of Uber One, Including: (a) usability studies of Uber One Enrollment or | ("Uber One" OR UberOne OR U1 OR Pass OR Membership) AND (""A/B"" OR multivariate OR optimiz* OR experiment* OR XP* OR study OR test* OR analysis OR variant* OR conversion* OR convert* OR project | This search string is not tailored to RFP 31 or 32 (which appear to propose the same search string). Both RFPs are limited to Uber One testing, but the search string goes beyond that by including "Membership." For example, this includes all hits for Membership AND test*, which has ~77k hits; all hits for Membership AND project*, which has ~47k hits; | ("Uber One" OR UberOne OR U1) AND ("A/B" OR multivariate OR optimiz* OR experiment* OR XP* OR study OR test* OR analysis OR variant* OR conversion* OR |

| | | Search Strings That Uber Proposes To Narrow And Then Sample | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| Cancellation Processes; (b) the "Uber One Churn Prevention" experiments (see UBER-SEPT24-00000178, UBER-SEPT24- 00000273); (c) the "Cancellation Flow – Primary CTA XP" experiment (see UBER-SEPT24-00000131); (d) the "Membership Cancellation Transparency – XP" experiment (see UBER-SEPT24-00000133); (e) the "Cancellation Flow Restructing Phase 1 XP" experiment (see UBER-SEPT24-00000136); the "US Uber One Savings Reinforment" experiment (see UBER-SEPT24-00000156); the "Cancellation Value Reminder Screen XP" experiment (see UBER-SEPT24-00000373); (h) the "US Uber One Ending Benefits on Free Trial Cancellation" readout (see UBER-SEPT-00000148); (i) the financial impact of Any changes, whether enacted or only considered, to Uber One Enrollment or Cancellation Processes, Uber One enrollment incentives, free trials, or promotions, and Uber One subscription benefits or savings; and (j) consumers' ability to locate and navigate the Uber One Enrollment | OR clickstream* OR clickthrough* OR survey* OR interview* OR poll* OR "focus group" OR "copy test")<br><br>Note: The FTC's proposed search string for RFPs 31 and 32 is the same." | and all hits for Membership AND XP*, which has ~44k hits. | convert* OR project OR clickstream* OR clickthrough* OR survey* OR interview* OR poll* OR "focus group" OR "copy test") |

19

| Search Strings That Uber Proposes To Narrow And Then Sample | | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| and Cancellation Processes.<br><br>32. All Documents and underlying data relating to consumer testing or analyses of Uber One performed by You or at Your direction regarding consumer understanding, beliefs, behavior, perception, or demographics, Including Any A/B or multivariate testing, copy testing, surveys, focus groups, customer interviews, conversion rate testing, clickstream analysis, or polling. | | | |
| 33. All Documents and underlying data Relating to how You determine the total price of Uber rides or Uber Eats deliveries, Including (a) the factors You use to determine the total price of Uber rides or Uber Eats deliveries and the weights assigned to those factors; (b) Any fees that You may include in the total price and how and when those fees are assessed; (c) the effect, if Any, that a consumer's enrollment or membership status in Uber One has on the total price or Any fees that may be included in the total price; (d) how You determine whether an Uber ride or Uber Eats delivery is eligible | ("Uber One" OR UberOne OR U1) AND ((pric* OR fare* OR charg* OR cost* OR bill* OR fee*) w/25 (determin* OR calculat* OR model* OR forecast* OR factor* OR weight* OR algorithm* OR logic OR "decision engine" OR "pricing engine" OR experiment* OR XP* OR test* OR variant* OR fee* OR surcharge* OR discount* OR perk* OR promo* OR incentiv*))<br><br>("Uber One" OR UberOne OR U1) AND ((pric* OR fare* OR charg* OR cost* OR bill* OR fee*) w/25 (offer* OR | This search string is not tailored to the RFP, as ordered by the Court. The FTC lost its motion to compel as to subparts (a), (b), and (e), and this search string is not tailored to subparts (c) and (d). Dkt. 150 ("For RFP 33, the Court grants the FTC's motion to compel as to subparts (c) and (d) and denies it as to subparts (a), (b) and (e)."). | ("Uber One" OR UberOne OR U1) AND (total w/10 (price* OR charg*)) AND (ride* OR eats*) AND (enroll* OR member* OR status)<br><br>("Uber One" OR UberOne OR U1) AND (total w/10 (price* OR charg*)) AND (ride* OR eats*) AND ("delivery fee" OR "10%" OR discount* OR offer* OR promo*) |

| Search Strings That Uber Proposes To Narrow And Then Sample | | | |
|---|---|---|---|
| **FTC RFP** | **FTC's Proposed Search String(s)** | **Deficiencies in the FTC's Proposed Search String(s)** | **Uber's Revised Proposal** |
| for a $0 delivery fee, 10% discount, or other special offer or promotion associated with Uber One; and (e) Any changes, whether enacted or only considered, to how You determine the total price of Uber rides or Uber Eats deliveries. | eligib* OR trigger* OR rollout* OR launch* OR update* OR simulation* OR impact* OR revenue* OR margin* OR profit* OR elasticity OR "customer segment*" OR tier* OR subscriber* OR "member benefit*" OR "$0*")) | | |

**Exhibit G:  FTC's Proposed Strings Where Uber Already Responded With Direct Collections**

| FTC's Proposed Strings Where Uber Already Conducted Direct Collections | | |
| --- | --- | --- |
| **RFP** | **FTC's Proposed Search String(s)** | **Order (if applicable) & Uber's Production** |
| 14. All Documents Relating to Your polices, practices, or procedures for Uber One, Including (a) how You determine when consumers enrolled in Uber One will be charged or billed for their subscriptions; (b) how You calculate savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes; (c) the Uber One terms of service; (d) how You address or dispute chargebacks; (e) the issuance of refunds; (f) the terms of free trials, enrollment incentives, or promotions; (g) how You determine which fees, if Any, will be charged to consumers who are subscribed in uber One; and (h) Any changes, whether enacted or only considered, to Your policies, practices, or procedures. | ("Uber One" OR UberOne OR U1) AND ((polic* OR practice* OR procedure* OR guide* OR rule* OR protocol* OR requirement* OR process* OR playbook* OR "knowledge base*") w/25 (bill* or charg* OR refund* OR payment* OR renewal* OR recurring OR sav* OR saving* OR benefit* OR eligib* OR enroll* OR cancel* OR disput* OR chargeback* OR "CB*"))<br><br>("Uber One" OR UberOne OR U1) AND ((polic* OR practice* OR procedure* OR guide* OR rule* OR protocol* OR requirement* OR process* OR playbook* OR "knowledge base*") w/25 ("free trial" OR incentiv* OR promo* OR fee* OR credit* OR "Uber Cash" OR discount* OR promo* OR "average savings" OR "national average" OR "48 hour*" OR "48-hour*" OR "24 hour*" OR "24-hour*")) | The Court ordered Uber to respond to this RFP by April 10, which Uber did. Dkt. 150.  Uber produced its policies, practices, and procedures by collecting the documents directly from centralized sources and relevant individuals.<br><br>For example, Uber produced (i) historical versions of terms and conditions; (ii) a payment processing study; (iii) knowledge bases reflecting Uber One customer support policies; (iv) other documents showing Uber's refund policies and general approach to accounts with pending chargebacks; and (v) documents regarding which fees are charged to consumers who are subscribed to Uber One. |
| 16. All Documents Relating to Any communications received from, or investigations or inquiries by, Any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, regarding Nonconsensual Enrollment or Uber One Cancellation or Enrollment Processes. | ("Uber One" OR UberOne OR U1) AND ((subscri* OR member* OR enroll* OR cancel* OR compliance OR "attorney general" OR "A.G." OR AG OR regulator* OR investigat* OR CID OR "Civil Investigative Demand" OR subpoena) w/25 (complain* OR scam* OR trick* OR fraud* OR accident* OR mistake* OR unintentional* OR confus* OR "didn't mean to"))<br><br>("Uber One" OR UberOne OR U1) AND ((subscri* OR member* | The Court directed Uber to complete its production of this RFP by April 27, which Uber did. Dkt. 191 ("Uber shall comply with the agreed production deadlines set forth in Section I.A of the status report."); *see* Dkt. 188 ("Defendants to complete production by April 27.").<br><br>Uber explained in its April 27 production letter to the FTC that Uber "conducted a reasonable search and identified no responsive documents." |

22

| FTC's Proposed Strings Where Uber Already Conducted Direct Collections | | |
|---|---|---|
| **RFP** | **FTC's Proposed Search String(s)** | **Order (if applicable) & Uber's Production** |
| | OR enroll* OR cancel* OR compliance OR "attorney general" OR "A.G." OR AG OR regulator* OR investigat* OR CID OR "Civil Investigative Demand" OR subpoena) w/25 ("didn't think" OR "signed me up" OR "enrolled me" OR "didn't authorize" OR disput* OR "didn't realize" OR (thought w/5 cancel*) OR "didn't agree" OR (surprise* w/5 subscrib*))) | |
| 17. All Documents Relating to private lawsuits against You regarding Uber One and involving Uber One Enrollment or Cancellation Processes, Nonconsenual Enrollment, Diverted Cancels, or Uber One subscription benefits or savings. | ("Uber One" OR U1 OR member* OR subscri*) w/25 (fraud* OR false* OR unauthorized OR "did not authorize" OR decept* OR unfair* OR breach* OR enroll* OR cancel* OR consent* OR "negative option") | The Court required Uber to respond to this RFP by April 27, which Uber did. Dkt. 191 ("Uber shall comply with the agreed production deadlines set forth in Section I.A of the status report."); *see* Dkt. 188 ("Defendants to complete production by April 27."). <br><br> On April 27, Uber produced three complaints from private lawsuits related to Uber One.  These complaints are sufficient for the FTC to see what lawsuits have been filed.  Uber contends that searching for communications about these lawsuits would directly seek privileged information and such information would not be relevant. |
| 26. All Documents and data Relating to Uber One Customer Correspondence, Including Documents or data showing, for Each month, the volume and percentage of customer service contacts Relating to Each code, tag, or categorization referenced in Your response to RFP 25. | ("Uber One" OR UberOne OR U1 OR member* OR subscri*) AND ((complain* OR feedback OR friction OR "pain point" OR readout* OR P0 OR churn OR ticket* OR problem* OR "response time" OR delay OR wait* OR unauthorize* OR unknown OR increase*) w/25 (enroll* OR cancel* OR charg* OR fee* OR bill* OR refund* OR pattern* OR trend* OR payment*)) | Uber already produced all contact codes that mention Uber One and the counts for those codes. Uber is in the process of negotiating with the FTC regarding the scope of customer communications to produce through direct pulls. |