# Exhibit A

Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
James Doty (NY Bar No. 4552550)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
(202) 326-3395 (fax)

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. 4:25-cv-03477-JST |
| Plaintiff, | **PLAINTIFF'S FIRST SET OF** |
| v. | **REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| **UBER TECHNOLOGIES, Inc.**, a corporation, and | |
| **UBER USA, LLC**, a limited liability company, | |
| Defendants. | |

Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal Rules of Civil Procedure 26 and 34, serves the following requests for production of documents ("RFPs") from Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively, "Defendants" or "Uber").

Uber's responses to these requests are due within 30 days of service. Please also produce for examination, copying, and inspection the documents and things described below within 30

days of service, at the office of the Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.

For purposes of these requests, the following instructions and definitions apply.

## I.    INSTRUCTIONS

A.    **Failure to Disclose**:  You are placed on notice that, to the extent that you fail to disclose responsive documents (including ESI) in response to these RFPs, the FTC may move before or at trial or any other evidentiary hearing to preclude you from presenting evidence regarding or relating to this information.

B.    **Ongoing Duty to Supplement**:  These RFPs are continuing in nature through the conclusion of this matter and require supplemental responses pursuant to Federal Rule of Civil Procedure 26(e).  Responsive Documents obtained or discovered after your initial response and production must be produced promptly.

C.    **Document Retention**:  Retain all documentary materials used in the preparation of responses to these RFPs.  The FTC may seek the production of additional documents at a later time during this litigation.  Accordingly, you should have already suspended any routine procedures for document destruction and taken other measures to prevent the destruction of documents that are in any way relevant to this litigation during its pendency, regardless of whether you believe such documents are protected from discovery by privilege or otherwise.

D.    **Scope of Search**:  These RFPs require you to produce documents in your possession or under your actual or constructive custody or control, including, but not limited to, documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

E.      **Construction**: In construing these requests, the singular shall be deemed to include the plural and vice versa, so as to make the requests inclusive rather than exclusive. The past tense shall be construed to include the present and future tenses and vice versa, so as to make the requests inclusive rather than exclusive.

F.      **Applicable Time Period**: The applicable time period, unless otherwise specified, shall be from November 8, 2019, to the date of full and complete response. This instruction shall not be read to limit your duty to supplement your responses pursuant to Rule 26(e).

G.      **Sharing of Information**: The FTC often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The Commission may make information supplied by you available to such agencies where appropriate pursuant to the Federal Trade Commission Act and 16 C.F.R. § 4.11 (c) and (j) and in compliance with any Protective Order entered by the Court. Information you provide may be used in any federal, state, or foreign civil or criminal proceeding by the Commission or other agencies.

H.      **Privilege**: If any document or portion of a document that would be responsive to a request below is not produced because of a claim of privilege or immunity, you shall serve upon the FTC counsel a written list that identifies each such document and the applicable claim (*e.g.*, attorney-client privilege) and provides sufficient information for the FTC to assess the applicability of privilege or protection as required by Federal Rule of Civil Procedure 26(b)(5). Such information includes, without limitation, (a) the name and position of each author, originator, and/or creator of the document; (b) the name and position of each addressee or recipient of the document; (c) the name and position of each other person who received or was shown the document or a copy thereof; (d) the nature of the document (*e.g.*, a letter, a memorandum, an advertisement, hand-written notes, etc.); (e) the general subject matter of the

3                          PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

document or portion of the document withheld; (f) the date of the document or, if the specific creation date of the document is not known, your best estimate of the date (*i.e.*, the month and year or, if the month is not known, the year) on which the document is believed to have been created; (g) the number of pages of the document or portion of the document withheld; (h) the specific privilege or exemption claimed for that document; and (i) an explanation of the grounds for claiming such privilege or exemption, with sufficient particularity to provide a basis for determination of the validity of the privilege or exemption claimed.  Any attachment to an allegedly privileged or immune document shall be produced unless you contend that the attachment is also privileged or immune, in which case the information specified above in this paragraph shall be separately provided for each such attachment.  If only some portion of any responsive material is privileged, all non-privileged portions of the material must be produced.

I.      **Objections**:  If there is an objection to any part of a request below, the grounds of the objection and the part to which the objection applies should be identified with specificity, and documents responsive to the remaining part(s) should be produced.

J.      **Translations:**  Where an identified document is in a language other than English, state whether an English translation of such document exists.  If an English translation exists, identify and provide both the document and the English translation.

K.      **Sensitive Personally Identifiable Information**:  If any material called for by these requests contains sensitive personally identifiable information or sensitive health information of any individual, please contact FTC counsel before sending those materials to discuss ways to protect such information during production, such as by encrypting any electronic copies of such material with encryption software such as SecureZip and providing the encryption key in a separate communication.

For purposes of these requests, sensitive personally identifiable information includes: an individual's Social Security number alone; or an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

## II.      DEFINITIONS

A.      "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale or use of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content. Advertisements include email marketing, pop-ups, push notifications, and the like.

B.      "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any request any document that otherwise might be construed to be outside the scope of the request.

C.      "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

D.      "**Cancellation Procedure**" and "**Cancellation Process**" means the process, flow, or experience through which a consumer may temporarily or permanently stop recurring charges

from being placed on the consumer's credit card, debit card, bank account, or other financial account, including all immediately preceding or immediately subsequent steps that form part of that process, flow, or experience (such as elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

E. "**Customer Correspondence**" means documents, such as complaints, reviews (on social media, app stores, or otherwise), inquiries, and your responses to such complaints, reviews, and inquiries, that you directly or indirectly received from or sent to a customer, including any complaints or inquiries to or by Better Business Bureaus or government agencies, and your responses to those complaints, reviews, or inquiries.

F. "**Diverted Cancel**" means a consumer: (a) who was enrolled in Uber One (through a free trial or otherwise); (b) for whom you have any reason to believe intended to cancel Uber One through (in whole or in part) a cancellation procedure (including any consumer to commence a cancellation procedure, either on the consumer's own initiative or at your direction); and (c) who did not terminate their enrollment during the cancellation procedure.

G. "**Document**" means the complete original, all drafts, and any non-identical copy, whether different from the original because of notations on the copy, different metadata, or otherwise, of any item covered by Federal Rule of Civil Procedure 34(a)(1)(A), including ESI.

H. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

I. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

hardware or software.  This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp or Slack), videoconferencing, other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.  "ESI" also includes such technical assistance or instructions as will enable FTC counsel to convert ESI into a reasonably usable form.

J.       **"Enrollment"** or **"Enrollment Process"** means the process, flow, or experience through which a consumer accepts an offer or arrangement to receive a product or service, whether through silence, failure to take affirmative action to reject such offer or arrangement, or otherwise, including all immediately preceding or immediately subsequent steps that form part of that process, flow, or experience (such as any elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

K.       "**Include**" and "**including**" mean "including without limitation," or "including but not limited to," to avoid excluding any document that might otherwise fall within the scope of any request.

L.       "**Nonconsensual Enrollee**" or "**Nonconsensual Enrollment**" mean a consumer: (a) who was enrolled in Uber One; (b) whom you have any reason to believe was enrolled without the consumer knowing or realizing they were enrolled; and (c) whom you have no reason to believe was enrolled through identity theft or as a result of any other fraud by a third party.  Nonconsensual Enrollment includes "mistaken" enrollment and "accidental" enrollment.

M.     "**Product**" means products, goods, and services, and includes online memberships, subscriptions, free trials, and enrollments.

N.     "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

O.     "**You**" and "**Your**" mean Uber Technologies, Inc., Uber USA LLC, and their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all current and former directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, individually, collectively, or in any combination.

## III.    REQUESTS FOR PRODUCTION

1. For Uber USA, LLC, Documents sufficient to show the following: (a) its full legal name and All other names under which it has done business; (b) its mailing address, street address, and telephone number of its headquarters; (c) its date and place of incorporation; (d) the names and addresses of All parent, subsidiary, and affiliate companies, and Each person who is or has been an officer of Uber USA, LLC; (e) All websites and mobile applications operated by or on behalf of Uber USA, LLC; (f) All Products offered by or on behalf of Uber USA, LLC; and (g) its relationship to Uber One and Uber Technologies, Inc., Including Any transfers of money between it and Uber Technologies, Inc.

2. Documents, such as organizational charts, sufficient to show the organizational structure of Uber Technologies, Inc. and Uber USA, LLC, Including the Uber One, Uber Support, and Uber "customer obsession" teams.

3. Documents sufficient to identify (a) Any team or group that worked on Any issue Relating to Uber One (Including the development of Uber One and its terms; Uber One Advertisements; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; analyses, experiments, reviews, studies, surveys, or testing of Uber One; Uber One Customer Correspondence; Uber One customer retention; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities); (b) the individuals on those teams; (c) the individuals supervising those teams; (d) the dates those individuals worked on or supervised those teams; and (e)

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

whether those individuals are or were employed by Uber Technologies, Inc., Uber USA, LLC, or both.

4.  All Documents Relating to (a) goals or targets set for teams or groups working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3, and (b) metrics by which those teams' performance was evaluated.

5.  Performance reviews for All members of teams who worked on Any issue Relating to Uber One, Including individuals identified in Your response to RFP 3.

6.  All operational plans, business reviews, technical reviews, product requirements documents, and reports prepared by or for Any team or group working on Any issue Relating to Uber One, Including Any teams or groups identified in Your response to RFP 3.

7.  All presentations to, and Documents sent to, Uber's Board of Directors, Any drafts thereof, and the minutes of Any meeting of Uber's Board, Relating to Uber One or Uber Pass.

8.  Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Enrollment Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Enrollment Process, Including Any hyperlinked Documents; (b) Each disclosure Relating to the terms of Uber One that may appear in the Enrollment Process; (c) Each claim relating to Uber One subscription benefits or savings that may appear in the Enrollment Process; (d) whether the Enrollment Process was only available to certain cohorts of consumers; (e) the timeframe during which Each Enrollment Process was available; and (f) Any changes, whether enacted or only considered, to the Enrollment Process or elements of the Enrollment Process referenced in subparts (a) through (d).

9.  Documents (such as screenshots or video recordings) sufficient to show how You inform consumers that (a) they are or have enrolled in Uber One (free trial or otherwise); (b) they will be charged an Uber One subscription fee; (c) they have cancelled their Uber One subscription, turned off the auto-renewal feature, paused their subscription, or accepted a discounted subscription; (d) if they have paused their subscripton or accepted a discounted subscription, the date on which they will once again be charged the full price for an Uber One subscription; and (e) Any changes, whether enacted or only considered, to subparts (a) through (d).

10. Documents (such as screenshots or video recordings) sufficient to show, for Each type of Uber One or Uber Pass Cancellation Process available in Any jurisdiction (Including foreign jurisdictions) on Any platform, application, or device: (a) Each page or step that may appear in the Cancellation Process, Including Any hyperlinked Documents; (b) Each potential page, step, or action that may appear in the Cancellation Process that does not progress a consumer toward or result in cancellation; (c) Each claim Relating to Uber

9                PLAINTIFF'S FIRST SET OF
                 REQUESTS FOR PRODUCTION
                 4:25-CV-03477-JST

One or Uber Pass subscription benefits or savings that may appear in the Cancellation Process; (d) Each potential retention effort that may appear in the Cancellation Process; (e) whether the Cancellation Process was only available to certain cohorts of consumers; (f) the timeframe during which Each Cancellation Process was available; and (g) Any changes, whether enacted or only considered, to the Cancellation Process or elements of the Cancellation Process referenced in subparts (a) through (e).

11. All video recordings, Including compilations of video recordings, of consumers or individuals interacting with the Uber One Enrollment or Cancellation Processes.

12. All Documents Relating to Uber One or Uber Pass Enrollment, Including (a) All Documents Relating to the development of Enrollment Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Enrollment; (c) All Documents Relating to disclosures that You made or considered making during Enrollment; (d) All Documents Relating to Nonconsensual Enrollment; (e) All Documents Relating to Any claims regarding subscription benefits or savings that You made or considered making during Enrollment; and (f) All Documents Relating to free trials, enrollment incentives, or promotions.

13. All Documents Relating to Uber One or Uber Pass Cancellation Processes, Including (a) All Documents Relating to the development of Cancellation Processes; (b) All Documents Relating to the actual or forecasted financial impact on Uber of changes, whether enacted or only considered, to Cancellation Processes, Including changes to how and where consumers may access Cancellation Processes, the pages or steps that consumers may encounter during Cancellation Processes, and the tactics used by You to retain customers during Cancellation Processes; (c) All Documents Relating to consumers' difficulty with cancelling subscriptions or free trials; (d) All Documents Relating to Diverted Cancels, Including consumers' abandonment of Cancellation Processes; (e) All Documents Relating to Any claims regarding subscription benefits or savings that may appear during Cancellation Processes; and (e) All Documents analyzing or Relating to the timing or stage at which abandonment occurs, the reason(s) for abandonment, and save rates.

14. All Documents Relating to Your polices, practices, or procedures for Uber One, Including (a) how You determine when consumers enrolled in Uber One will be charged or billed for their subscriptions; (b) how You calculate savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes; (c) the Uber One terms of service; (d) how You address or dispute chargebacks; (e) the issuance of refunds; (f) the terms of free trials, enrollment incentives, or promotions; (g) how You determine which fees, if Any, will be charged to consumers who are subscribed in uber One; and (h) Any changes, whether enacted or only considered, to Your policies, practices, or procedures.

15. All Documents Relating to consumer understanding, beliefs, intention, or perception regarding Uber One, including the terms of Uber One; Uber One Advertisements; Uber

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

16. All Documents Relating to Any communications received from, or investigations or inquiries by, Any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, regarding Nonconsensual Enrollment or Uber One Cancellation or Enrollment Processes.

17. All Documents Relating to private lawsuits against You regarding Uber One and involving Uber One Enrollment or Cancellation Processes, Nonconsenual Enrollment, Diverted Cancels, or Uber One subscription benefits or savings.

18. All Documents discussing the Restore Online Shopper Confidence Act ("ROSCA") or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment in, or cancellation of, online subscription services.

19. All Customer Correspondence Relating to Uber One, Including the terms of Uber One; Uber One Enrollment or Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; refunds; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

20. All Documents prepared by or for You Relating to Uber One Customer Correspondence, Including analyses, studies, or reviews of Uber One Customer Correspondence.

21. Documents sufficient to show All versions of All Uber blog posts, support pages, and FAQs (and the timeframe when such materials were publicly available) Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

22. All Documents Relating to (a) credit card fraud, (b) account takeovers, (c) Uber One partnerships or agreements with third party entities, or (d) family or household members signing up for Uber One for other members of their family or household, as a cause of Nonconsensual Enrollment.

23. All Documents used by You to train Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience on issues Relating to Uber One, including call scripts, policies, manuals, knowledge bases, "blogposts," "support logic," or FAQs.

24. All Documents reviewed or created by Your customer service, Uber Support, Uber "customer obsession" teams, or Any other teams or contractors responsible for customer experience Relating to Uber One, Including the terms of Uber One; Uber One Enrollment and Cancellation Processes; Nonconsensual Enrollment; Diverted Cancels; Uber One

11                                PLAINTIFF'S FIRST SET OF
                                  REQUESTS FOR PRODUCTION
                                  4:25-CV-03477-JST

subscription benefits or savings; and Uber One partnerships or agreements with third party entities.

25. Documents sufficient to identify All codes, tags, or categorizations used by Your customer service, Uber support, Uber "customer obsession" teams, or Any other teams or contractors to label or sort Uber One Customer Correspondence, and the meaning of those codes, tags, or categorizations.

26. All Documents and data Relating to Uber One Customer Correspondence, Including Documents or data showing, for Each month, the volume and percentage of customer service contacts Relating to Each code, tag, or categorization referenced in Your response to RFP 25.

27. All materially unique versions of Advertisements Relating to Uber One.

28. For Each Advertisement responsive to RFP 27, a dissemination schedule, Including the dates and times of dissemination, number of disseminations, the media used, and the total cost of preparing and disseminating the Advertisement.

29. All Documents and underlying data Relating to savings claims that may appear in Uber One Advertisements, Enrollment Processes, and Cancellation Processes (e.g., that Uber One customers save or can save $25 per month, or that Uber One customers are eligible for $0 delivery fees), Including Any analyses, experiments, reviews, studies, or testing You conducted.

30. Documents sufficient to show (a) Each of Your partnerships or agreements Relating to Uber One with third party entities, Including Your partnerships with credit card companies, Disney+, PayPal, Verizon, and others; (b) the terms of such partnerships or agreements; and (c) how customers of third parties are enrolled in Uber One subscriptions or free trials as a result of these partnerships or agreements.

31. All Documents (Including video recordings and underlying data) Relating to Any analyses, experiments, reviews, studies, or testing of Uber One, Including: (a) usability studies of Uber One Enrollment or Cancellation Processes; (b) the "Uber One Churn Prevention" experiments (*see* UBER-SEPT24-00000178, UBER-SEPT24-00000273); (c) the "Cancellation Flow – Primary CTA XP" experiment (*see* UBER-SEPT24-00000131); (d) the "Membership Cancellation Transparency – XP" experiment (*see* UBER-SEPT24-00000133); (e) the "Cancellation Flow Restructing Phase 1 XP" experiment (*see* UBER-SEPT24-00000136); (f) the "US Uber One Savings Reinforment" experiment (*see* UBER-SEPT24-00000156); (g) the "Cancellation Value Reminder Screen XP" experiment (*see* UBER-SEPT24-00000373); (h) the "US Uber One Ending Benefits on Free Trial Cancellation" readout (*see* UBER-SEPT-00000148); (i) the financial impact of Any changes, whether enacted or only considered, to Uber One Enrollment or Cancellation Processes, Uber One enrollment incentives, free trials, or promotions, and

12                                PLAINTIFF'S FIRST SET OF
                                  REQUESTS FOR PRODUCTION
                                  4:25-CV-03477-JST

Uber One subscription benefits or savings; and (j) consumers' ability to locate and navigate the Uber One Enrollment and Cancellation Processes.

32. All Documents and underlying data relating to consumer testing or analyses of Uber One performed by You or at Your direction regarding consumer understanding, beliefs, behavior, perception, or demographics, Including Any A/B or multivariate testing, copy testing, surveys, focus groups, customer interviews, conversion rate testing, clickstream analysis, or polling.

33. All Documents and underlying data Relating to how You determine the total price of Uber rides or Uber Eats deliveries, Including (a) the factors You use to determine the total price of Uber rides or Uber Eats deliveries and the weights assigned to those factors; (b) Any fees that You may include in the total price and how and when those fees are assessed; (c) the effect, if Any, that a consumer's enrollment or membership status in Uber One has on the total price or Any fees that may be included in the total price; (d) how You determine whether an Uber ride or Uber Eats delivery is eligible for a $0 delivery fee, 10% discount, or other special offer or promotion associated with Uber One; and (e) Any changes, whether enacted or only considered, to how You determine the total price of Uber rides or Uber Eats deliveries.

34. Documents or data sufficient to show:

    a. The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall;

    b. The total number of consumers with active Uber One subscriptions, by month and overall;

    c. The total number of consumers with active Uber One free trials, by month and overall;

    d. The total number of consumers with discounted Uber One subscriptions, by month and overall;

    e. The total number of consumers who accepted a discounted Uber One subscription during Any Cancellation Process, by month and overall;

    f. The total number of consumers with paused Uber One subscriptions, by month and overall;

    g. The total number of consumers who paused their Uber One subscription or free trial during Any Cancellation Process, by month and overall;

    h. The total number of consumers who successfully cancelled their Uber One subscription or free trial (i.e., consumers who were not subsequently charged for

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

Uber One for Any reason after completing a Cancellation Process), by month and overall;

i. The total number of consumers who cancelled their Uber One subscription or free trial (or who turned off the auto-renewal feature) but were were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall;

j. The total number of consumers who initated Any Uber One Cancellation Process, by month and overall;

k. The total number of consumers who initiated Any Uber One Cancellation Process but did not terminate their Uber One subscription or free trial, by month and overall; and

l. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

35. For each consumer who enrolled in an Uber One subscription or free trial:

a. Documents or data sufficient to show the consumer's name, mailing address, email address, and phone number; and

b. All Documents and data (including click-through data) Relating to:

i. The consumer's enrollment in Uber One, Including (A) the date, time, and Enrollment Process through which the consumer enrolled; (B) whether the consumer enrolled through a free trial or other promotion; and (C) if the consumer enrolled through a free trial or other promotion, the terms of the free trial or promotion (e.g., billing date, duration of free trial, etc.);

ii. The consumer's Uber One payment history, Including (A) the date, time, amount, and payment method of All Uber One subscription fees paid by or billed to the consumer; and (B) the date, time, and amount of Any refunds (including chargebacks) paid to the consumer in connection with Any Uber One subscription fee;

iii. The consumer's Uber One usage, Including (A) the date, time, and total price of Each Uber ride or Uber Eats delivery ordered and paid for by the consumer while the consumer was subscribed to Uber One; (B) Any fees that the consumer was assessed in connection with Each Uber ride or Uber Eats delivery that the consumer ordered while subscribed to Uber One; (C) if the Uber ride or Uber Eats delivery was reduced in price as a result of the consumer's Uber One subscription, the amount and reason that the price was reduced (i.e., a $0 delivery fee); and (D) the lifetime, cycle, and

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

average trip and delivery savings attributable to the consumer's Uber One subscription;

iv. The consumer's cancellation of (or attempts to cancel) Uber One, Including (A) the date, time, duration, and outcome of Each instance in which the consumer initiated a Cancellation Process; (B) for Each Cancellation Process that the consumer initiated, the point at which the consumer exited or completed the Cancellation Process, and the amount of time the consumer spent on Each page or step of the Cancellation Process; (C) if applicable, the dates and times on which the consumer cancelled his or her Uber One subscription (or turned the auto-renewal feature off), and the date and time on which the subscription terminated; and (D) if applicable, the dates and times on which the consumer paused Uber One or accepted a discounted Uber One subscription, the means by which the consumer paused or accepted a discounted Uber One subscription, and the duration of the pause or discounted subscription;

v. The consumer's complaints or inquiries Relating to Uber One, Including the date, time, code, tag, or categorization of Each complaint or inquiry; and

vi. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

36. All data (Including click-through data) Relating to Each potential Uber One Enrollment Process, Including data showing:

a. The total number of consumers who enrolled in an Uber One subscription or free trial, by month and overall, through the Enrollment Process;

b. If the Enrollment Process is not available to All consumers (i.e., the Enrollment Process begins with a pop-up Advertisement, push notification, or other solicitation), (i) the total number of consumers who were presented with the Enrollment Process, by month and overall; (ii) the total number of instances in which the Enrollment Process was presented to consumers, by month and overall; and (iii) how You determine which, when, and how often consumers are presented with the Enrollment Process;

c. The average and median amount of time that it takes consumers to enroll in an Uber One subscription or free trial through the Enrollment Process; and

d. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

15

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

37. All data (Including click-through data) Relating to Each potential Uber One Cancellation Process, Including data showing:

    a. The total number of instances in which consumers initiated Each Cancellation Process, by month and overall;

    b. The total number of instances in which consumers successfully completed Each Cancellation Process (i.e., instances in which consumers were not subsequently charged for Uber One for Any reason after completing the Cancellation Process), by month and overall;

    c. The total number of instances in which consumers completed Each Cancellation Process but were subsequently charged for at least one additional month or year of their Uber One subscription, by month and overall;

    d. The total number of instances in which consumers agreed to pause their Uber One subscription or accepted a discounted Uber One subscription during Each Cancellation Process, by month and overall;

    e. The total number of instances in which consumers abandoned Each Uber One Cancellation Process after initiating it without cancelling, turning off the auto-renewal feature, pausing, or accepting a discounted Uber One subscription, by month and overall;

    f. The total number of instances in which consumers initiated Each Uber One Cancellation Process within 48 hours of the consumer's billing date;

    g. The average amount of time that consumers spent interacting with the Cancellation Process, and with Each page or step of the Cancellation Process; and

    h. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

38. All communications, Including emails, text messages, instant messages, Slack messages, call recordings, notes of phone calls, and meeting minutes, Relating to Uber One.

39. Documents sufficient to identify your document retention and destruction policies and when such policies went into effect.

40. Documents sufficient to show the monthly, quarterly, and annual gross and net revenue You generated from Uber One since November 8, 2019.

PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST

Dated: July 22, 2025

/s/ Paul Mezan
Paul Mezan (NY Bar #5357124)
Stephanie Liebner (VA Bar #90647)
James Doty (NY Bar # 4552550)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 758-4177; pmezan@ftc.gov (Mezan)
sliebner@ftc.gov (Liebner)
jdoty@ftc.gov (Doty)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

17    PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION
4:25-CV-03477-JST