# Exhibit D

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | Case No. 4:25-cv-3477-JST |
| Plaintiffs, | |
| v. | **DECLARATION OF VINCENT LIU** |
| UBER TECHNOLOGIES, INC., a corporation, and UBER USA, LLC, a limited liability company, | |
| Defendants. | |

I, Vincent Liu, hereby declare and state as follows:

1.    I am currently employed as an eDiscovery Solutions Architect at Omni-Invictus LLC, d/b/a Array ("Array"). Defendants Uber Technologies, Inc. and Uber USA, LLC (together, "Uber") retained Array to manage Uber's Technology Assisted Review ("TAR") with Continuous Active Learning ("CAL"), also known as TAR 2.0, workflow in this matter.

2.    I am over the age of 18 and competent to make this Declaration. The statements contained in this Declaration are based on my personal knowledge. If called and sworn as a witness, I would and could testify competently to the matters set forth herein.

### Twenty Years of eDiscovery Industry Experience

3.    In my role as an eDiscovery Solutions Architect at Array, I serve as a subject matter expert in TAR. When I refer to "TAR" in this Declaration, I am referring to TAR with CAL (or TAR 2.0). My TAR expertise includes TAR workflows, use cases, and best practices.

4.    I joined Array in August 2024. Before joining Array, I worked in similar roles in the eDiscovery industry for over 20 years. Prior to joining Array, I worked in similar eDiscovery roles at Level Legal, Cobra Legal Solutions, Ricoh USA, Evolve Discovery, Stratify, Zantaz, and Valora Technologies.

### Personal Involvement in Over 50 TAR Workflows

5.    TAR is a widely accepted methodology designed to efficiently and accurately review large-scale document populations.

6.    Over the course of my 20-year career in eDiscovery, I have been personally involved in over 50 workflows utilizing TAR.

7.    These document reviews utilizing TAR have been accepted in matters with the FTC, DOJ, SEC, and CFPB, among others.

### Explanation of How TAR Works in This Matter

8.    Uber began model training by providing subject matter experts ("SMEs"), who are Uber's outside counsel, with a statistically valid simple random sample of documents drawn from the TAR-eligible population.

9. This initial statistically valid simple random sample of documents was taken from the Gmail and Google Drive repositories and contained 1,114 documents. An additional statistically valid simple random sample will be taken from the Slack repository once the collection of those documents is complete.

10. The review is proceeding using a CAL workflow. In a CAL, or TAR 2.0, workflow, a model is trained by reviewing documents and assigning a value of either responsive or not responsive to each of the reviewed documents. Specifically, this project utilizes a classifier called a support vector machine, or "SVM." With an SVM model, the system learns from reviewers as they code and constantly updates its predictions. When the SVM runs, it takes reviewers' coding decisions and pulls them into a high-dimensional model. This model is divided into two spaces, with the boundary between them referred to as the hyperplane. The SVM puts documents that are coded responsive on one side of the hyperplane, and it puts documents coded not responsive on the other side.

11. After the model establishes the hyperplane, it takes all documents without a coding decision and maps them onto either side of the hyperplane. It bases their position on the model's current understanding of the difference between responsive and not responsive. Documents that have strong similarities to responsive or not responsive documents are positioned farther away from the hyperplane, while documents that might belong in either group are mapped closer to the hyperplane in the middle. Based on the reviewed documents, the model assigns a score to each document in the review universe.

12. Uber has also employed coverage-oriented review techniques for the Gmail and Google Drive repositories to expose the model to diverse and uncertain content. These early coverage review efforts were reviewed by SMEs to ensure the model receives the highest quality inputs for this foundational training material.

13. The coverage review of the Gmail and Google Drive repositories contained 3,126 documents. An additional coverage review of the Slack repository will be utilized once the collection of those documents is complete.

14.     Following the coverage review, Uber's outside lawyers conducted a document review training session for 42 Array contract reviewers who are working eight hours per day each day for five days per week. Holding the document review training session allowed for the Gmail and Google Drive review to transition to a prioritized workflow in which documents most likely to be responsive are reviewed first.

15.     During the prioritized workflow, model performance is continuously monitored. As the population of truly responsive documents is exhausted and reviewers see a diminishing value of return on the review (which is not just when a specific recall rate is reached), Uber will establish a reasonable TAR score threshold. Documents at or above the threshold will constitute the presumptively responsive set, including associated family members. Documents below the threshold will constitute the presumptively non-responsive set, subject to validation testing. At this point, the review will pause, and a validation sample will be taken at a 95% confidence level with a ±5% margin of error from the TAR-classified non-responsive documents that have not yet been reviewed. The sampled documents will be reviewed for responsiveness. Any responsive, or eluded, documents in this set are noted and used to estimate overall recall across the full dataset. Provided the recall rate is at or above the agreed-upon threshold established for the matter, the responsiveness review is complete. If the recall rate is below the threshold, Uber may revert to a coverage review, which ensures the system learns from a representative cross-section of the entire document population, or continue reviewing under a lower responsiveness cutoff threshold. The latter allows the review team to evaluate documents that the model previously ranked with a lower probability of being responsive, serving as a secondary check to confirm that no significant clusters of responsive documents have been incorrectly excluded.

16.     Recall measures how many true responsive documents the system is able to find. Most workflows I have worked on propose a 70-80% recall. In this matter, Uber has proposed a 75% recall. TAR at 75% recall is consistent with, or exceeds, historical review effectiveness. Human manual or linear review has generally been shown to yield about a 70% recall rate, and TAR can achieve at least as high recall than manual review.

17.    By proposing a 75% recall, Uber will not stop reviewing documents when it reaches a 75% recall rate. Instead, Uber will stop reviewing documents once the population of predicted responsive documents is exhausted. That will trigger a validation. Recall numbers higher than 75% are expected at validation, but Uber is using a 75% recall rate as a minimum, not a proposed ceiling.

### Uber's TAR Proposal and Transparency Regarding the TAR Process

18.    I am familiar with Uber's TAR proposal in this matter. The TAR proposal contains standard disclosures regarding the use of the TAR methodology.

19.    I am also familiar with the written questions that the FTC has asked about Uber's TAR proposal because my colleagues and I used our TAR expertise to help Uber prepare answers to share with the FTC. Based on the written answers that I am aware that Uber provided the FTC, Uber's level of transparency with the FTC regarding TAR has been industry standard.

20.    It is not standard practice to share the documents used and attorney coding decisions made for the initial training of the TAR model. Typical disclosures include the statistics of the validation sets and final recall, precision, elusion, and total document universe numbers, not the underlying content of any of the documents used for training.

### Why TAR Is Needed in This Case

21.    TAR enables effective culling of non-responsive material, significantly reducing the number of documents requiring manual review.

22.    The total population of documents is estimated to be over 1.2 million documents.

23.    In this matter, Uber is expecting a responsiveness rate of roughly 12% based on initial sampling of the current review population, meaning that the review population is overinclusive.

24.    Given the volume of data to review and produce with discovery closing in mid-September, TAR is the surest way for Uber to complete its review in time.

### Comparison of Uber's TAR Workflow to a Manual Review

25.    Manual review alone of the estimated 1.2 million documents would be impractical and disproportionate in terms of time and cost.

DECLARATION OF VINCENT LIU
CASE NO. 4:25-CV-3477-JST
4

26. A manual review with 42 contract reviewers would take more than six months to complete and would cost an estimated $1.5 million more than Uber's proposed TAR workflow.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 5, 2026.

Signed by:

*Vincent Liu*

By: _____9C300F5C791E4A8..._____

Vincent Liu