# Exhibit E

| From: | Bragg, Tayler G. |
|---|---|
| Sent: | Tuesday, June 2, 2026 4:58 PM |
| To: | 'Doty, James'; Mezan, Paul; Wojcicki, Allison; Abutaleb, Sarah; Liebner, Stephanie; Roy, Patrick; Ziperman, Philip; LRiley@oag.maryland.gov; Dean, Michael; Barton, Lindsay; jessica.tubbs@alabamaag.gov |
| Cc: | Mundel, Benjamin; Freeman, Lauren; Scheper, Abby; Sidrys, Lydia; Mehta, Sonal; Gringer, David; Wenzel, Marissa M. |
| Subject: | RE: FTC et al v. Uber - Joint Status Report, TAR Questions, and Discovery Served |

James,

We'd like to discuss any remaining questions you have about TAR.

Best,
Tayler

**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Tuesday, June 2, 2026 4:34 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al v. Uber - Joint Status Report, TAR Questions, and Discovery Served

**EXTERNAL EMAIL - Use caution with links and attachments.**

Thanks, Tayler, and yes, I meant EST for the cutoffs for the submission exchanges; thanks for clarifying. We're happy to talk tomorrow, but what is it you'd like to discuss?

--James

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Tuesday, June 2, 2026 5:16 PM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>;

1

Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al v. Uber - Joint Status Report, TAR Questions, and Discovery Served

Counsel,

We address below (A) your exchange proposal for the joint status report due on Friday (6/5), (B) the TAR questions you raised during our call on Friday (5/29), (C) the additional TAR questions you sent in various emails after the call on Friday (5/29), and (D) the written discovery you served on Friday (5/29).

Please let us know when you are available to discuss. We are available on Wednesday (6/3) from 2-3:30 ET and 4-4:30 ET.

**A. Exchange Proposal for Joint Status Report Due Friday, 6/5**

Your proposal below didn't include a time zone, but we assume they are in ET and have added the time zones below. We agree to your proposal. Uber does not intend to raise any issues affirmatively.

> **Wednesday, 6/3 at 9am PT / noon ET:** FTC draft to Uber
> **Thursday, 6/4 at noon PT / 3pm ET:** Uber send its portion to FTC
> **Friday, 6/5 at 9am PT / noon ET:** FTC revisions to Uber
> **Friday, 6/5 at 11am PT / 2pm ET:** Uber revisions to FTC
> **Friday, 6/5 at noon PT / 3pm ET:** FTC to file after getting Uber signoff

**B. TAR Questions Raised During Friday (5/29) Call**

Our answers to the questions you raised during our call are below in blue.

1. You asked us to send you the initial random sample of documents that we used to train the TAR/CAL model and identify how we coded each of those documents.

We are not able to share the documents and coding decisions used to train the TAR/CAL model. They are subject to the attorney-client privilege and attorney work product doctrine. We are not aware of this being standard or typical practice.

The TAR process validation is shared through the robust metrics used and transparency of those metrics described in our protocol and answers to your follow-up questions regarding the process.

Please also note that many of the documents themselves that were used initially to train the model are privileged. In addition, any documents identified as responsive and not privileged will be produced as part of the standard production process.

2. You asked about how the sampling will work since the Slack collection hasn't completed yet.

We confirm that the SMEs will do another initial proportional random sample review and coverage set review of the Slack materials once the Slack collection is complete.

3. You asked about the "score" of documents and specifically if a 1-10 score is used.

Documents are scored from 0 to 100. A relevance rank near zero indicates that the model believes the document is more likely to be coded on the negative review field choice (i.e., not responsive). A rank closer to 100 means the model believes that a document is more likely to be coded on the positive review field choice (i.e., responsive).

4. You asked how TAR works for documents in Google Drive that are not text rich.

Documents with low or no text are not included in the TAR review. Each such document will be manually reviewed.

5. You asked for any additional written documentation about how TAR works.

Our eDiscovery consultant, Array, gave us permission to share with you the attached primer on TAR/CAL.

**C. TAR Questions Sent Via Email After Friday's (5/29) Call**

Our answers to the questions you raised in the emails you sent after our call are below in blue. Note that the numbering in your list was off (i.e., your numbers went 1, 2, 3, 2, 3, 4), so we corrected the numbering below, including by picking back up at #6 (given the five questions raised during the call) to avoid confusion with duplicate numbering.

6. Start date: On what date did Uber start coding documents? How many documents has Uber coded?

Attorneys started coding documents for the initial sample to train the TAR/CAL model on May 22. As of June 2 at 4:46 ET, 11,406 documents have been coded.

7. Production end-date: your completion deadline is too late. What's the earliest deadline you could complete review?

We believe the earliest deadline we could complete our production would be July 31. But that requires everything to go according to plan. If there are any issues, it will take until August 14 to complete.

8. Relevance review: how is the relevance review being conducted—e.g., are the reviewers just looking at any document and seeing whether it is relevant to any RFP? Are the reviewers marking documents non-responsive on the ground that they do not say "Uber One" (but instead say "Uber Pass," "subscriber," or "member")?

Reviewers are coding documents based on whether they are responsive to any of the RFPs that are the subject of the custodial review, as identified in the search strings that Judge Hixson ordered Uber to use on May 12. Dkt. 209; *see* Dkt. 200-1 (identifying search terms and strings). For example, if a document hits only on the search string proposed for RFP 4, it is not reviewed only for responsiveness to RFP 4; it is reviewed for responsiveness to all of the RFPs listed in Dkt. 200-1.

Reviewers are also coding documents based on whether they are responsive to the additional RFPs that you served late Friday, May 29, afternoon, which expanded the RFPs that previously mentioned only Uber One to include Uber Pass. Please note our flag below in Section D.

Reviewers are not marking documents non-responsive on the ground that they do not say "Uber One" (but instead say "Uber Pass," "subscriber," or "member").

9.  Categories of documents: what are you doing to ensure that significant slices of documents responsive to each RFP are included in the review samples?

As our proposal indicated, Uber is using CAL for responsiveness review. Uber initiated training of the Google and Drive set with a statistically valid random sample drawn from the TAR-eligible population in the workspace, which included documents from Gmail and Drive. Uber will do the same for Slack data once processed into the review environment. These training documents are drawn from a combination of random samples from the portion of the review corpus that is not able to be clearly classified as responsive or not, and high-scoring documents meant to reinforce the model's understanding of responsiveness. Supplemental and proportional, stratified samples of documents from distinct data sources are a planned portion of our workflow designed to ensure that meaningful variations on document content will be included in the model training.

We are using the coverage review queue of the assisted review module to identify documents that are optimal for training the model. The goal of the coverage review is to quickly separate documents into the positive choice and negative choice categories. The documents that are served up during the coverage review can be either responsive or non-responsive and are the most impactful to training the model. The coverage review serves the documents the model is most unsure about, which are the documents with a rank near 50. The coverage review queue serves up a mixture of documents: 45% are documents with ranks immediately above 50, 45% are documents with ranks immediately below 50, and the remaining 10% are documents with a rank of exactly 50. For the documents above and below 50, the queue serves up the ranks closest to 50 before serving up ranks that are further away. This applies human coding decisions to the most ambiguous documents, training the model and improving its predictions about the remainder.

10.  Model stabilization: your proposal says that you will "transition to a prioritized workflow" "as the model stabilizes" (letter at 2). What specifically do you mean by stabilizes—i.e., what metric will you use to determine that the model has stabilized?

Model stabilization can be observed by monitoring the rank distribution and model volatility. For rank distribution, we are looking to form a "U" shape, where we see spikes of documents ranked at the low ranks and the high ranks with a low distribution of documents ranked at or near the "50" rank. This tells us that the model has high confidence distributing documents ranked either not responsive or responsive, and a low set of documents are at or near the ambiguous "50" rank.

Additionally, model volatility can be observed every time the model updates. Every time the model updates, we can see the number of documents predicted to be in each rank band (0-10, 11-20, etc.) at the outset of review, and the number of documents predicted within each band significantly change from build to build.

As the model stabilizes and any additional training documents become less useful, the number of documents predicted at each band stabilizes and does not materially shift from build to build, indicating that the model is stable and would not benefit from additional coverage training. At that point, we switch to a prioritized review queue and monitor the progress of that review to determine when to cut-off review once most relevant documents have been served and reviewed by a human.

11.  TAR score threshold: What is the definition of the TAR score threshold (the estimate of likelihood of relevance on a percentage basis)? What specific score are you proposing to use?

The TAR score threshold, or cut-off score, determines the point at which documents are predicted to be responsive (those above the cut-off are considered responsive, while those below the cutoff are considered not responsive). The specific cut-off is determined by the review progress within the prioritized

4

review and cannot be proposed at the outset. This will be determined once review progresses and nears completion.

12. <u>Recall percentage</u>:  Why can you not use a recall percentage of, say, 90?

Human linear review has generally been shown to yield about a 70% recall rate, and TAR can achieve at least as high recall as manual review. TAR should not be held to a higher standard than manual review.

13. <u>Precision/Recall</u>: Is this basically whether any non-relevant docs were marked relevant?

Precision measures how many false positives are in the population, and recall measures how many true positives the system is able to find.

a. What use are you making of the precision estimate—going back and reviewing more documents until precision is at a certain threshold? What threshold?

The precision sample is drawn from the above-threshold (responsive) population. The purpose of this sample is to measure accuracy within the documents identified as responsive. In practical terms, a sample of approximately 300 documents is reviewed, the proportion that is actually responsive is calculated, and this provides an estimate of how "clean" or accurate the responsive set is. Precision helps answer the question, "Of the documents we are producing as responsive, how many truly meet that standard?"

Because we plan on using a prioritized review queue where humans will review all documents predicted as responsive by the model, we expect a fairly high precision once human review of all documents predicted responsive is complete because humans will be downgrading any false positives predicted by the model. We are not targeting a specific precision threshold in this matter due to not producing documents without human review.

b. Why use a precision threshold at all? It seems as if, combined with recall, this would lead to ensuring no relevant documents get produced, while guaranteeing that many relevant documents do not get produced.

Precision does not account for true positives, only false positives. The goal is to minimize the number of false positives produced by having humans review all predicted responsive documents and downgrade any predicted false positives from the production population.

c. Your letter (at 3) says "based on the results of the precision threshold, Uber will draw a random sample . . ."  What does this mean? If precision is, say, 50%, or 80%, how does that affect the random sample?

The size of the recall sample cannot be pre-determined. It is calculated based on the results of the precision sample and the proportional sizes of the responsive set and the not responsive set. The corresponding calculation will determine the optimal size of the sample to ensure compliance with the stated goals (75% recall, 95% confidence, ±5% margin of error).

d. Estimating 75% recall—how is this calculation performed? Are you estimating the total documents marked non-responsive that are actually responsive across entire pool, and also estimating the total number of documents in the entire pool that are non-responsive?

The recall sample is drawn from the below-threshold (presumptively non-responsive) population. This sample is used to estimate how many responsive documents remain in that population. In plain terms, a random sample is reviewed, the percentage of responsive documents found in that sample is calculated,

and that rate is applied to the broader population to estimate what was missed. This is the primary mechanism for assessing completeness of the review and is functionally equivalent to an elusion analysis.

As covered elsewhere, this sample is the same as an elusion sample, but it provides additional information when paired with the precision sample (i.e., recall). Independently, this sample will still provide the elusion metric, which can be provided without issue.

     e.   Your letter says the sample will include "TAR-classified non-responsive documents." Does non-responsive in that context refer to documents that TAR codes as non-relevant, or documents that are uncoded that the TAR predicts are non-relevant?

This is referring to a population of documents that are predicted by TAR to be non-responsive and have not been subsequently reviewed by a human.

     f.   How are you calculating the confidence interval?

A confidence interval is calculated based on the desired confidence level, sample size, and population size. We are suggesting a 95% confidence level and 5% margin of error to be used for determining sample sizes. The confidence interval will provide the actual range (from the lower bound to the upper bound) based on the actual results and the margin of error used.

     g.   Your margin of error (+/- 5) seems to suggest that the actual recall percentage could be as low as 70%, but let me know if that's not correct.

That is correct. As explained above, human linear review has generally been shown to yield about a 70% recall rate.

14. "Additional metrics"
     a.   What specific metrics or information are you planning to give to us as the review proceeds?

Uber will provide high-level summaries of validation parameters, including sample sizes, confidence intervals, and resulting metrics.

15. <u>End of review</u>:
     a.   Basically, once you hit 75 recall rate plus or minus 5, you're stopping review, right? And then just producing everything with a TAR score above a certain level (what level?), and not reviewing the documents below that level?

No, this is not correct. Uber plans to review everything predicted as responsive and only stop review once the population of predicted responsive documents has been exhausted. This will be measured by a diminishing return on review (for example, when the last ~300-500 documents reviewed are all coded not responsive). At that point, we will set a cut-off score and take a validation sample to ensure a recall of 75% or higher has been achieved. If it has not, review will continue. In this process, everything above the cut-off score will end up being reviewed and will be eligible for production, provided it is coded by a human as responsive (subject to withholding of privileged material). Not everything below the cut-off will be reviewed by a human.

     b.   Are you going to review every document manually for relevance before it is produced? Or just produce everything above a certain TAR score, reviewing only for privilege?

Every document above the cut-off score and predicted to be responsive by the TAR model will be reviewed manually for responsiveness.

16. <u>customer correspondence</u>: are you proposing to use TAR for the customer correspondence review? If so, is that being handled separately from the 600K emails and Google and Slack material? Or are you proposing to have it be all part of the same review pool?

TAR is not being used to review the customer correspondence addressed in the Court's May 18 Discovery Order (Dkt. 216).

**D. Written Discovery Served on Friday, 5/29**

We have reviewed the discovery you served on Friday (5/29) afternoon and will respond according to the federal and local rules. We wanted to raise that RFP 51 does not mention Uber Pass. This seems to contradict the representation in your email that "the second set of RFPs we're attaching all specifically mention Uber Pass." Please review and serve an amended RFP if needed.

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

---

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Friday, May 29, 2026 3:37 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al v. Uber -- FTC rogs/RFPs

Hi Uber,

Please see the attached.

With respect to the RFPs, as Judge Hixson recognized, there is "little distinction" between Uber Pass and Uber One. *See* Doc. No. 167 at 3. Thus, documents related to Uber Pass are relevant and called for by our RFPs. On our call today, you indicated that you did not believe Uber Pass documents were responsive unless the RFP specifically said "Uber Pass." We think that's wrong for the reason stated, but to moot the issue, the second set of RFPs we're attaching all specifically mention Uber Pass.

We're not asking you to run new search strings with respect to the RFPs, nor with two possible exceptions (see below) are we asking you to perform additional direct

pulls.  Instead, the RFPs are served mostly to avoid Uber marking relevant documents as non-responsive because they relate to Uber Pass.

RFPs 52 and 53:  These RFPs correspond to RFPs 31 and 32, with respect to which you have represented that direct pulls are currently underway.  Please search for and produce all responsive material called for by RFPs 52 and 53, including testing, surveys, etc performed when the subscription was called Uber Pass.  As stated during the call and as noted above, we believe Uber Pass material is responsive to RFPs 31 and 32, but to avoid a dispute about the issue, we're serving RFPs 52 and 53.

To recap:  pursuant to the second RFPs, please mark Uber Pass material as responsive when reviewing custodial material, and please ensure that your direct pulls for RFPs 31/32/52/53 search for and produce Uber Pass material.

Please confirm you will satisfy the above.

Thanks,

--James

---

**From:** Doty, James
**Sent:** Friday, May 29, 2026 2:00 PM
**To:** 'Bragg, Tayler G.' <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; 'Ziperman, Philip' <pziperman@oag.state.md.us>; 'LRiley@oag.maryland.gov' <lriley@oag.maryland.gov>; 'Dean, Michael' <michael.dean@alabamaag.gov>; 'Barton, Lindsay' <lindsay.barton@alabamaag.gov>; 'jessica.tubbs@alabamaag.gov' <jessica.tubbs@alabamaag.gov>
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; 'Freeman, Lauren' <lfreeman@sidley.com>; 'Scheper, Abby' <abby.scheper@sidley.com>; 'Sidrys, Lydia' <lydia.sidrys@sidley.com>; 'Mehta, Sonal' <sonal.mehta@wilmerhale.com>; 'Gringer, David' <david.gringer@wilmerhale.com>; 'Wenzel, Marissa M.' <marissa.wenzel@wilmerhale.com>
**Subject:** FTC et al v. Uber -- 6/5 submission

Hi Uber,

We'd like to use a similar exchange schedule re: the 6/5 status report as we did for the last one.  Specifically, we propose:

Wed, 6/3 at noon:  FTC draft to Uber
Thursday, 6/4 at 3pm:  Uber send its portion to FTC
Friday, 6/5 at noon:  FTC revisions to Uber
Friday, 6/5 at 2:  Uber revisions to FTC
Friday, 6/5 at 3:  FTC to file after getting Uber signoff

The above assumes that Uber is not planning to raise any issues affirmatively.  If that's wrong, then we can stick to the above schedule but just have the dates/times be mutual.

Does Uber agree?

8

Thanks,

James

---

**From:** Doty, James
**Sent:** Friday, May 29, 2026 12:51 PM
**To:** 'Bragg, Tayler G.' <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; 'Ziperman, Philip' <pziperman@oag.state.md.us>; 'LRiley@oag.maryland.gov' <lriley@oag.maryland.gov>; 'Dean, Michael' <michael.dean@alabamaag.gov>; 'Barton, Lindsay' <lindsay.barton@alabamaag.gov>; 'jessica.tubbs@alabamaag.gov' <jessica.tubbs@alabamaag.gov>
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; 'Freeman, Lauren' <lfreeman@sidley.com>; 'Scheper, Abby' <abby.scheper@sidley.com>; 'Sidrys, Lydia' <lydia.sidrys@sidley.com>; 'Mehta, Sonal' <sonal.mehta@wilmerhale.com>; 'Gringer, David' <david.gringer@wilmerhale.com>; 'Wenzel, Marissa M.' <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Sorry, one additional question:

9.  customer correspondence:  are you proposing to use TAR for the customer correspondence review?  If so, is that being handled separately from the 600K emails and Google and Slack material?  Or are you proposing to have it be all part of the same review pool?

---

**From:** Doty, James
**Sent:** Friday, May 29, 2026 12:26 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Hi Tayler,

Our additional questions are below.  Please let us know when we can expect responses to these and to the questions we raised earlier today.  Thanks,

James

* * *

1.  Start date:  On what date did Uber start coding documents?  How many documents has Uber coded?

9

2. <u>Production end-date</u>:  your completion deadline is too late.  What's the earliest deadline you could complete review?

3. <u>Relevance review</u>:  how is the relevance review being conducted—e.g., are the reviewers just looking at any document and seeing whether it is relevant to any RFP?  Are the reviewers marking documents non-responsive on the ground that they do not say "Uber One" (but instead say "Uber Pass," "subscriber," or "member")?

2. <u>Categories of documents</u>:  what are you doing to ensure that significant slices of documents responsive to each RFP are included in the review samples?

3. <u>Model stabilization</u>:  your proposal says that you will "transition to a prioritized workflow" "as the model stabilizes" (letter at 2).  What specifically do you mean by stabilizes—i.e., what metric will you use to determine that the model has stabilized?

4. <u>TAR score threshold</u>:  What is the definition of the TAR score threshold (the estimate of likelihood of relevance on a percentage basis)?  What specific score are you proposing to use?

5. <u>Recall percentage</u>:  Why can you not use a recall percentage of, say, 90?

6. <u>Precision/Recall</u>:  Is this basically whether any non-relevant docs were marked relevant?
   1. What use are you making of the precision estimate—going back and reviewing more documents until precision is at a certain threshold? What threshold?
   2. Why use a precision threshold at all? It seems as if, combined with recall, this would lead to ensuring no relevant documents get produced, while guaranteeing that many relevant documents do not get produced.
   3. Your letter (at 3) says "based on the results of the precision threshold, Uber will draw a random sample . . ."  What does this mean? If precision is, say, 50%, or 80%, how does that affect the random sample?
   4. Estimating 75% recall—how is this calculation performed? Are you estimating the total documents marked non-responsive that are actually responsive across entire pool, and also estimating the total number of documents in the entire pool that are non-responsive?
   5. Your letter says the sample will include "TAR-classified non-responsive documents."  Does non-responsive in that context refer to documents that TAR codes as non-relevant, or documents that are uncoded that the TAR predicts are non-relevant?
   6. How are you calculating the confidence interval?
   7. Your margin of error (+/- 5) seems to suggest that the actual recall percentage could be as low as 70%, but let me know if that's not correct.

7. "Additional metrics"

1. What specific metrics or information are you planning to give to us as the review proceeds?

8. <u>End of review</u>:
   1. Basically, once you hit 75 recall rate plus or minus 5, you're stopping review, right? And then just producing everything with a TAR score above a certain level (what level?), and not reviewing the documents below that level?
   2. Are you going to review every document manually for relevance before it is produced? Or just produce everything above a certain TAR score, reviewing only for privilege?

---

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Friday, May 29, 2026 10:51 AM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Counsel,

As we discussed, please let us know when you'd like to schedule an additional time to meet and confer, and send us your questions beforehand.

Best,
Tayler

**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

---

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Thursday, May 28, 2026 3:00 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta,

11

Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>;
Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Sounds good, thanks

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Thursday, May 28, 2026 3:30 PM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison
<awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie
<sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip
<pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael
<michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>;
jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren
<lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia
<lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David
<david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

James,

We can speak from 10-10:30 ET tomorrow.

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Thursday, May 28, 2026 1:42 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki,
Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie
<sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip
<pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael
<michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>;
jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren
<lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia
<lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer,
David <david.gringer@wilmerhale.com>; Wenzel, Marissa M.
<marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Hi Tayler,

Let's do tomorrow morning; we're available at 10 or 10:30. We'd like to go through your email below and your proposal line by line to see whether we can get more detail. We'd also like to discuss your email from Wed evening regarding our data-related RFPs and my question below re: RFPs 31 and 32.

Thanks,

James

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Thursday, May 28, 2026 11:57 AM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

James,

We are available on Friday morning ET or Friday from 2-3 ET. We answered your questions with specificity. If there is further detail that you need, please send specific questions in advance of the M&C so that we can prepare.

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Wednesday, May 27, 2026 5:24 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys,

Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal
<sonal.mehta@wilmerhale.com>; Gringer, David
<david.gringer@wilmerhale.com>; Wenzel, Marissa M.
<marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Hi Tayler,

Your email doesn't answer any of our questions with any
specificity.  So that we can try to understand what you are actually
proposing, we again request that you let us know when you are
available to meet and confer.  We would also like to discuss all
aspects of your proposal, including your proposed production dates;
Uber's offer to complete production only one month before the close
of fact discovery is not acceptable.

Finally, with respect to RFPs 31 and 32, please confirm that Uber is
producing all documents it can locate via direct pulls that relate to
Uber's subscription service, regardless of whether the subscription
was called Uber Pass or Uber One at the time of the testing, survey,
etc.

We look forward to your responses to the above, and to the various
issues raised in our meet-and-confer of a few weeks ago (due today).

Thanks,

James

---

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Tuesday, May 26, 2026 8:09 PM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki,
Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner,
Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip
<pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael
<michael.dean@alabamaag.gov>; Barton, Lindsay
<lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren
<lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys,
Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal
<sonal.mehta@wilmerhale.com>; Gringer, David
<david.gringer@wilmerhale.com>; Wenzel, Marissa M.
<marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

James,

Our responses to your questions about our TAR proposal are below in green.
Please let us know if you have any further questions or concerns.

14

- what specific documents will be used to train the model,

As our proposal indicated, Uber will use Relativity Continuous Active Learning ("CAL") for responsiveness review and will initiate training with a statistically valid random sample drawn from the TAR-eligible population in the workspace, which is expected to include documents from Gmail, Google Drive (Docs, Sheets, Slides), and Slack data once available and processed into the review environment. These training documents will be drawn from a combination of random samples from the portion of the review corpus that is not able to be clearly classified as responsive or not, and high-scoring documents meant to reinforce the model's understanding of responsiveness. Supplemental and proportional, stratified samples of documents from distinct data sources are a planned portion of our workflow designed to ensure that meaningful variations on document content will be included in the model training.

Please also note that the CAL algorithm continuously updates its predictive model based on ongoing human review, so as additional documents are reviewed, the algorithm continuously pushes the most likely relevant documents to the top of the queue.

- how they will be coded,

Subject matter experts from the outside counsel firms will review the initial random samples and coverage review samples, providing model training and calibration. Contract reviewers will conduct the remainder of the prioritized review under outside counsel supervision, with outside counsel performing targeted quality control to ensure consistency and accuracy. Reviewer coding decisions will continuously inform and refine the model.

- how you propose to ensure that all categories of documents are included in the review pool,

Uber will take reasonable steps to ensure that the review population reflects the full range of potentially responsive documents within the collected data corpus. This process will include statistical and stratified sampling methods designed to assess whether categories of potentially responsive information are adequately represented in the review pool.

If sampling or other analyses suggest that certain subject matters or document categories may be underrepresented, Uber may employ additional methods to identify exemplar documents and improve coverage, including targeted search terms, term variations, clustering, or other analytics. Uber may also evaluate issue coding and topic-based analyses to confirm that subject matters present in the collected data corpus are appropriately reflected in the review and production process.

- what cutoffs you're proposing for the "TAR score threshold,"

Uber will establish the TAR score threshold after model stabilization and will describe the objective basis for selecting the threshold. Documents at or above the threshold will be treated as presumptively responsive (including

15

family members), and documents below the threshold will be presumptively non-responsive, subject to validation testing.

- why you've set the recall percentage at only 75%,

75% recall is a common recall that has been used for regulatory and litigation purposes for well over a decade. *See* Maura R. Grossman & Gordon V. Cormack (FNaa1), Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review, 17 Rich. J.L. & Tech. 11, 55 (2011) ("For three of the five topics . . . the results show no significant difference in recall between the technology-assisted and manual reviews. This result is perhaps not surprising, since the recall scores are all on the order of 70% - the best that might be reasonably achieved, given the level of agreement among human assessors. As such, the results support the conclusion that technology-assisted review can achieve at least as high recall as manual review, and higher precision, at a fraction of the review effort, and hence, a fraction of the cost.").

- the use you plan to make of a precision estimate,

The precision estimate will inform understanding of the responsiveness rate in the above-threshold population and will be used as part of the overall validation methodology.

- whether you propose a manual review of all documents for responsiveness,

Given our proposal to use CAL, Uber does not propose to manually review every document in the review corpus for responsiveness. Uber proposes to use CAL to prioritize review and then validate the below-threshold population statistically through sampling. Uber will review validation samples to confirm responsiveness determinations and, based on those outcomes, either continue review or consider the review complete.

We also thought it might be helpful to provide more information about how Uber will make this determination. One initial indication that a validation test can be performed is when the prioritized review shows that the most recently reviewed 1,000 documents includes 10% or fewer responsive documents. The validation testing will allow Uber to confirm whether the chosen affiliated threshold score confirms a 75% recall. Another indicator of validation timing would be if the model demonstrates clear signs of stability (i.e., a clear delineation between responsive and non-responsive classification) such that a threshold score can be identified and tested via validation where, at a minimum, 75% recall can be achieved while maintaining an acceptable precision. In either instance, should the validation test fail to confirm the 75% recall at the identified threshold score, additional training and review or alteration of the threshold score can be chosen to achieve the target minimum recall point estimate.

- how you plan to calculate an elusion rate and overall number of eluded documents, etc etc.

16

Uber's recall sampling will draw a statistically valid sample from the population not included in the presumptively responsive set. The responsiveness rate observed in that sample will be used to estimate the rate of responsive documents remaining in the below-threshold population. Uber will use the population counts of the below-threshold set and the observed responsiveness rate from the recall sample to estimate the number of responsive documents remaining below threshold.

Uber is proposing a two-step validation process: (1) a precision sample drawn from documents above the responsiveness threshold, and (2) a recall sample drawn from documents below the threshold. Because the recall sample tests the same below-threshold population that would be evaluated in an elusion analysis, it functions as an elusion test here. When considered together, the precision and recall samples provide a more complete measure of the quality and completeness of the review than an elusion sample alone.

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

---

**From:** Bragg, Tayler G.
**Sent:** Friday, May 22, 2026 3:17 PM
**To:** Doty, James <jdoty@ftc.gov>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Counsel,

Our timing proposal will be based on a TAR process. That is the only way the materials can be reviewed during the discovery period. We are happy to provide you with more information on the TAR process. We will work on answers to your questions and circle back.

17

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 214 981 3423
tbragg@sidley.com

---

**From:** Doty, James <jdoty@ftc.gov>
**Sent:** Friday, May 22, 2026 2:12 PM
**To:** Bragg, Tayler G. <tbragg@sidley.com>; Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Mundel, Benjamin <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** RE: FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Hi Tayler,

Thanks for sending, but the vague and generic document contains virtually no concrete details about how Uber proposes to use TAR; it reads like a 30,000 foot Wikipedia description of how TAR works generally.  For there to be any hope of our agreeing to your use of TAR, we need full transparency into what you're proposing—including what specific documents will be used to train the model, how they will be coded, how you propose to ensure that all categories of documents are included in the review pool, what cutoffs you're proposing for the "TAR score threshold," why you've set the recall percentage at only 75%, the use you plan to make of a precision estimate, whether you propose a manual review of all documents for responsiveness, how you plan to calculate an elusion rate and overall number of eluded documents, etc etc.

Given the opacity of Uber's proposal—and also the general heterogeneity of the review set, which means there may be categories of highly relevant but rare documents that are excluded from the various statistical samples Uber draws—

18

we're not optimistic that the parties will be able to reach agreement about the use of TAR for all of Uber's custodial production. So we can explore further, though, please let us know when you're available to discuss in detail what Uber is proposing. In the meantime, for purposes of your proposed production dates (due today), we think it makes sense to assume that Uber's review will be manual.

Thank you and enjoy the holiday weekend,

James

---

**From:** Bragg, Tayler G. <tbragg@sidley.com>
**Sent:** Thursday, May 21, 2026 6:06 PM
**To:** Mezan, Paul <pmezan@ftc.gov>; Wojcicki, Allison <awojcicki@ftc.gov>; Doty, James <jdoty@ftc.gov>; Abutaleb, Sarah <sabutaleb@ftc.gov>; Liebner, Stephanie <sliebner@ftc.gov>; Roy, Patrick <proy@ftc.gov>; Ziperman, Philip <pziperman@oag.state.md.us>; LRiley@oag.maryland.gov; Dean, Michael <michael.dean@alabamaag.gov>; Barton, Lindsay <lindsay.barton@alabamaag.gov>; jessica.tubbs@alabamaag.gov
**Cc:** Benjamin Mundel -Contact <bmundel@sidley.com>; Freeman, Lauren <lfreeman@sidley.com>; Scheper, Abby <abby.scheper@sidley.com>; Sidrys, Lydia <lydia.sidrys@sidley.com>; Mehta, Sonal <sonal.mehta@wilmerhale.com>; Gringer, David <david.gringer@wilmerhale.com>; Wenzel, Marissa M. <marissa.wenzel@wilmerhale.com>
**Subject:** FTC et al. v. Uber Technologies, Inc. et al. - TAR Proposal

Counsel,

Please see the attached TAR proposal for the custodial review. We will follow up with our rolling production schedule tomorrow.

Best,
Tayler


**TAYLER G. BRAGG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
2323 Cedar Springs
Suite 2600
Dallas, TX 75201
+1 214 981 3423
tbragg@sidley.com
www.sidley.com



*********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*********************************************************************************