# SIDLEY

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8157
BMUNDEL@SIDLEY.COM

June 12, 2026

*By ECF*

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiff Federal Trade Commission ("FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC ("Uber" or "Defendants") submit this joint letter brief pursuant to the Court's June 9, 2026 (Dkt. 230) Discovery Order.

The parties hereby attest that they have met and conferred in good faith prior to filing this letter brief.

Respectfully submitted,

*/s/ James Doty*

Federal Trade Commission

*Attorney for Plaintiff FTC*

*/s/ Benjamin M. Mundel*

Ben Mundel
Sidley Austin LLP

*Attorney for Uber Technologies, Inc.
and Uber USA, LLC*

## I.    Uber's Statement

Uber respectfully requests that the Court permit it to review documents for responsiveness and privilege by July 13, two months before the close of fact discovery (and about two weeks after the FTC's proposal). That will allow the parties ample time to review documents and take depositions. There is no reason to dispense with the requirements of relevance and responsiveness. Nor does it advance the litigation to flood the record with hundreds of thousands of irrelevant documents—to date, roughly 10% of documents that hit on the search terms are responsive.

Uber recognizes its responsibility to quickly produce responsive ESI. We have heard the Court's admonition and take it seriously. Since the last hearing, Uber has more than doubled its contract attorney team and now has 110 contract attorneys reviewing documents, in addition to lawyers from two large law firms and a leading e-discovery consulting firm. Uber will make its first custodial production on June 18 and complete custodial production by July 13. Uber will complete the review of more than one million documents just two months after the Court's order on search terms. Uber's discovery consultant attests this is among the fastest e-discovery review he has seen in his career, and far faster than typical litigation timeframes. Grobart Decl. ¶¶ 6-12 (Exhibit A). Uber's proposed schedule will give the FTC plenty of time to complete depositions before the close of fact discovery in mid-September.

Uber respectfully submits that an order requiring Uber to produce over one million documents without determining whether those documents are responsive to any discovery request or relevant would be extraordinary and is unwarranted. Fed. R. Civ. P. 26(b)(1) (limiting discovery to "relevant" material); *see In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020). Respecting Rule 26's limit, district courts across the country have denied requests like the FTC's.

### A. Uber Has Proposed A Highly Expedited ESI Production Schedule, Allowing Depositions To Be Completed Comfortably Within The Current Case Schedule

To ensure that the FTC has time to complete depositions and to demonstrate that it is not dragging its feet, Uber more than doubled its ESI discovery efforts. Uber retained 110 contract attorneys to work on its TAR review of custodial documents. This team is overseen by a team of lawyers at Sidley and Wilmer, Uber's in-house e-discovery team, and Uber's e-discovery consultant. These additional resources have enabled us to expedite the production schedule by more than 30 days. We have also developed a plan to make significant rolling productions so the FTC can effectively prepare for depositions. Uber proposes the following schedule for producing custodial documents:

- June 18: Initial production (approximately 25% of expected responsive material)
- July 2: Second production (bringing total to ≈50–70% of responsive material)
- July 13: Final production of ESI[1]

Notably, forgoing a relevance review would not allow Uber to complete this review faster. If Uber had to review *all* documents for privilege, rather than only responsive documents (estimated to be 10%), the privilege review alone would take longer to complete than a privilege review following a responsiveness review. Decl. ¶ 11.

---

[1] Uber did not thwart ESI progress for months. It was Uber that first proposed search terms and custodians in November 2025, and the FTC took weeks to respond.

**B. Uber Should Be Permitted To Review For Relevance And Responsiveness**

The FTC's extraordinary request to order Uber to forgo relevance and responsiveness review is inconsistent with Rule 26.[2]

*Relevance.* Rule 26 limits discovery to material that is "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and courts "must limit the . . . extent of discovery" to "the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) (the requirement "that the material sought in discovery be 'relevant' should be firmly applied"); 8 Federal Practice & Procedure § 2008 ("Perhaps the single most important word in Rule 26(b)(1) is 'relevant,' for it is only relevant matter that may be the subject of discovery.").

The FTC's proposal flips Rule 26 upside down by urging this Court to order the discovery of irrelevant material. The FTC implies, through a case citation, that the document hits are "presumptively responsive and relevant," but cannot dispute that in most cases even carefully chosen search terms will yield irrelevant information. *See Spivey v. BP Expl. & Prod. Inc.*, 2024 WL 5246598, at *5 (E.D. La. Dec. 30, 2024) ("Regardless of how tailored a search term is, not every document located via electronic word search produces relevant information."); *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) ("[T]he fact that a search term is relevant does not eliminate the possibility that it will produce irrelevant documents."); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2016 WL 6522807, at *8 (S.D. Cal. Nov. 3, 2016) ("[D]espite the parties' efforts to tailor the search terms to the issues in this case, the resulting 'hits' contain many irrelevant and unresponsive documents"). That is true here. Over half a million of the document hits are likely irrelevant from initial modeling, Decl. ¶ 12, including non-responsive documents with sensitive business information that could harm Uber if disclosed.[3]

*Responsiveness.* The parties agreed to produce only responsive documents. Their ESI Agreement states that "[t]he mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant." Dkt. 144 at 8. Rule 34 likewise contemplates that only responsive documents will be produced. *See* Fed. R. Civ. P. 34(b)(2).

Given the clarity of the Federal Rules, courts have consistently denied requests like the FTC's. "[C]ompelling defendants to produce all documents that contain only one search term without a responsiveness review" might "speed the production" or even promote "fair[ness]," but that "is not the standard under Rule 26 for discovery." *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) (denying request like FTC's). Just as in these cases, requiring Uber "to produce all documents which contained the search terms unless they are

---

[2] The FTC's critique of the foreign flow production is wrong. Uber produced flows it could identify for each country in the Court's order: 8 German flows, 9 UK flows, 8 Brazil flows, 4 South Korea flows, and 8 Mexico flows. Uber also took immediate steps to address compliance with discovery orders , ECF 230, producing documents yesterday, making an additional production today, and transferring transactional data for production that will be produced as soon as the computer run time is complete (likely early next week, but Uber executed the request already).

[3] While there is a protective order in place, the FTC has inadvertently disclosed confidential material on two occasions, first by failing to properly file confidential material under seal (*see* Dkt. 164 at 2 (explaining how FTC filed a joint discovery statement without properly filing an exhibit under seal); *see also* Dkt. 155-58) and second by improperly redacting confidential information (*see* Dkt. 196; Dkt. 199).

privileged" would "make a mockery of F.R.C.P. 26(b)(1)" and subvert the parties' ESI agreement. *Wilson v. Rockline Indus., Inc.*, 2009 WL 10707835, *1 (W.D. Ark. 2009) (denying request like FTC's); *see also FlowRider Surf*, 2016 WL 6522807, at *8 (denying "Defendant's motion to compel Plaintiffs to produce all documents that 'hit' on the parties' ESI search terms"); *cf. Spivey*, 2024 WL 5246598, at *5 (rejecting analogous request under Rules 26(b)(1) and 45). None of these cases, and none of the FTC's cases, hold that a court may disregard the clear limits in the Federal Rules to expedite discovery due to perceived delay.[4]

Uber did not delay and began the review immediately after the Court's May 12 ruling:
- <u>May 15</u>: Uber hired consultant to start TAR and retain contract attorneys
- <u>May 21</u>: Uber provided written TAR proposal to FTC
- <u>May 21</u>: Uber began review of 1,114 documents to train TAR model
- <u>May 22</u>: Uber provided initial proposed production schedule
- <u>May 27</u>: Uber reviewed additional 3,126 documents to further refine initial model
- <u>May 29</u>: Uber finalized list of 42 contract review attorneys
- <u>June 1</u>: Trained 42 contract attorneys and started prioritized review queue
- <u>June 9</u>: Uber directed Array to increase contract review team to 110 reviewers

The FTC's critique of Uber's TAR approach was addressed in our prior briefing and declaration. But Uber has been transparent and is using standard TAR approaches, accepted by courts in many cases. If the Court disagrees, Uber respectfully requests a stay to seek review.

## II.    <u>FTC's Statement</u>

The FTC renews its request for the Court to order Uber to produce the search term hits by June 26, reviewing only for privilege.  The alternatives Uber has presented are a manual relevance review, which it says would take more than six months (*see* Dkt. No. 226 at 9), and its belatedly raised TAR proposal, which, as discussed below, would prejudice the FTC's ability to pursue discovery and relies on a black box protocol whose specific elements are some combination of unexplained and defective.

### A. Uber's Proposed Custodial Production Schedule is Unreasonable and Would Severely Prejudice the FTC

Uber's proposal to complete its custodial production only two months before the end of fact discovery would dramatically disrupt the discovery schedule, prejudice the FTC, and reward Uber for its own discovery delays.

As a threshold matter, given Uber's persistent violations of discovery deadlines, neither the parties nor the Court can rely on Uber to abide by its proposed deadlines.[5]  As Uber admits, it

---

[4] The FTC's cases are inapposite: Not one expressly overrode Rule 26's relevance limitation; indeed, the producing party did "not contend that" the material was "not relevant to any Party's claim or defense" in *McNeil* (at *4); privilege review, not relevance, was at issue in *Gallo* (at *3); the *Progressive* court acknowledged (at *11) that *nonresponsive* documents would be produced (and the parties' ESI agreement permitted that); and *Ingrid* involved possible spoliation of relevant evidence (at *9).

[5] In addition to the violations already found by the Court:  despite representing that it would be "hugely burdensome" to produce foreign flows because each jurisdiction had at least 31 variants (Dkt. No. 158 at 8), Uber produced fewer than 40 flows *total* by the Court-ordered deadline.  And

has not even loaded Slack material into its review platform and so cannot responsibly promise to produce the materials by any particular date. Dkt. No. 226 at 8 ("The computers are still working to collect the Slack documents"). And Uber has given no indication of when it will come into compliance with the discovery orders that, as the Court noted, Uber is violating to this day. Uber now claims it can complete the TAR process weeks before its originally proposed "earliest" deadline. *Id.* at 9. While still insufficient, the new proposal raises separate concerns, because Uber previously explained that the TAR model requires a later deadline to ensure the model is refined and implemented accurately so as not to miss categories of responsive documents, and has provided no technical details about how that can be achieved on a shorter timeline.

Even assuming Uber abides by its proposed schedule, it does not provide the FTC sufficient time to review the large volume of documents, select deponents, and issue follow-up discovery relating to issues raised in depositions or Uber's final custodial production.[6] This result would be particularly unfair because the compressed schedule would be one of Uber's making but its harms would fall entirely on the FTC. The FTC's discovery requests were issued in *July 2025*. Uber thwarted for months the FTC's attempt to identify custodians and attempted to bog down the search term selection with endless meet-and-confers. And even after the Court ordered Uber to run the FTC's proposed search terms, Uber still, apparently, did not take steps to complete its custodial production in a timely fashion—*e.g.*, by commencing an immediate review of the resulting hits.

The FTC's proposal, while still requiring the FTC to litigate on a tight timeframe, is the only reasonable proposal that gives the parties a meaningful chance to complete discovery by September 14 without severely prejudicing the FTC. Accordingly, the FTC respectfully requests that the Court exercise its broad authority to manage discovery and order Uber to produce all documents that result from the search terms, without a further relevance review. *McNeil v. Cmty. Prob. Servs., LLC*, 2019 WL 5957004, at *4 (M.D. Tenn. Oct. 29, 2019) (finding "a relevance review is unnecessary" because the documents identified using search terms were "presumptively responsive and relevant—that is the purpose of search terms"); *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467, at *11 (D. Nev. May 19, 2014) (ordering production of more than 500,000 search term hits when producing party predicted only 9.87% were relevant despite "likely . . . production of documents not responsive" because discovery had been "stalled for many months"); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 2014 WL 1338480, at *9 (N.D. Cal. Apr. 1, 2014) (where there was a "serious question as to whether Defendants have produced all responsive documents stored on their hard drives," granting motion to compel production of defendants' entire hard drives and full access to email accounts); *E&J Gallo Winery v. Encana Energy Servs., Inc.*, 2004 WL 7342781, at *3 (E.D. Cal. Dec. 16, 2004) (in a case "fraught with delay and disputes," the court ordered immediate production of all of the custodians' communications with non-attorneys that hit on search terms); *cf. O'Donnell/Salvatori Inc. v.*

---

on the eve of its deadline for producing advertisements, Uber requested an extension because it discovered a new source of responsive material that it had failed to identify in the preceding ten months. The upshot is that Uber's promise to abide by discovery deadlines is not a reliable basis on which the Court can rest its ruling.

[6] Tigar Standing Order Section F.3 (requiring depositions to be noticed at least 30 days before the close of fact discovery); LR 37-3 (discovery that calls for responses after discovery deadline are unenforceable absent a showing of good cause).

*Microsoft Corp.*, 339 F.R.D. 275, 277 (W.D. Wash. 2021) (court permitted responsiveness review "**so long as the review can be done in a timely manner**") (emphasis added).

The FTC's proposal is fully consistent with relevance and responsiveness standards. Both parties propose means to identify relevant and responsive documents:  the FTC proposes search terms deemed by the Court to be "thoughtfully designed" and "well calibrated to find relevant documents" (Dkt. No. 209 at 2) on a timeline that moves discovery forward expeditiously, while Uber offers a defective proposal (*see infra*) which would cause disruption and prejudice the FTC.  Uber threatens to drag its feet with a privilege review, but such a review could be swiftly accomplished by searching for attorney names and email addresses, with the assurance of strong confidentiality, clawback, and other protections in place.  Dkt. No. 34 & No. 144, Section 11 (FTC's affirmative obligation to notify Uber if it receives privileged Uber documents).  *Cf. E & J Gallo Winery*, 2004 WL 7342781, at *3 (ordering party to conduct privilege review by searching for attorney email addresses).

### B.  Uber's TAR Proposal Is Unreasonable and Untimely

The Court should also reject Uber's proposal for a second-layer relevance review (beyond the application of the Court-ordered search terms) because it relies on an unexplained and belatedly raised TAR proposal that will, by design, withhold relevant documents.

As explained in the FTC's earlier submission (Dkt. No. 226), Uber is unable or unwilling to explain key aspects of the process and demonstrate that it provides sufficient guarantees against exclusion of key relevant material.  Specifically, Uber has failed to describe or defend any of the following: the model's training documents, Uber's initial coding decisions, any quality control measures to ensure documents responsive to each RFP or search string are included, the criteria or process for establishing a so-called "reasonable TAR threshold," below which documents are presumptively non-responsive (Dkt. No. 226-4), or the basis for withholding as much as 30% of relevant material.[7]

The FTC is also alarmed by Uber's representation that a mere 10% of documents reviewed thus far are responsive, which would suggest a total document production—both custodial and non-custodial documents—of only 125,000 documents.  This case involves a broad-based challenge to Uber's subscription practices.  The notion that so few hits are relevant—when almost all of the search strings include "Uber One" as a term (Dkt. No. 200-1)— strains belief and suggests the TAR process was off-base from its inception.[8]

Finally, this defective proposal was sprung on the FTC (and the Court) 10 months after the document requests were issued, with Uber commencing it unilaterally (before meeting and conferring), in the evident hope that the FTC would be cornered into acquiescing once the proposal was already, secretly, in motion.  Dkt. No. 226 at 10-11.  Given these circumstances,

---

[7] Uber has suggested (without support) that manual reviews miss a giant quantum of relevant material, but even if true, Uber's proposal would perform significantly worse, layering a (error-prone, according to Uber) manual relevance review *on top of* a TAR review, which itself by design allows as much as 30% of relevant material to elude production.  Dkt. No. 226 at 8.

[8] While of course every case is different, the FTC notes that this figure is orders of magnitude smaller than in the agency's recent ROSCA litigations of *FTC v. Amazon* (more than 600,000 documents produced) and *FTC v. Doxo* (1.8 million documents produced after running search terms without a further relevance review).

Uber should not be rewarded with its inadequate, self-serving production protocol on its inadequate, self-serving schedule.