Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: 415-772-1200
Facsimile: 415-772-7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711

*Attorneys for Defendants Uber Technologies, Inc. and Uber USA, LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, Inc., a corporation, and UBER USA, LLC, a limited liability company, <br><br> Defendants. | Case No. 4:25-cv-03477-JST <br><br> DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES <br><br> Assigned to: Hon. Jon. S. Tigar <br><br><br> Date: August 13, 2026 <br> Time: 2:00pm <br> Place: Courtroom 6 <br><br><br> Answer Filed: May 15, 2026 |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT ......................................................................................................................3

I.  Uber Sufficiently Pled Its Affirmative Defenses By Alleging Supporting Facts and Law ...................................................................................................................3

II.  Uber's Affirmative Defenses Are Legally Sufficient ..........................................7

    A.  Uber Has Stated Legally Valid Due Process Defenses (First and Second Affirmative Defenses) ............................................................................7

    B.  Uber Has Asserted a Viable First Amendment Defense (Third Affirmative Defense) ...............................................................................10

    C.  Plaintiffs Concede That Uber's Good Faith Is Relevant To Penalties (Fourth Affirmative Defense) ...............................................................12

    D.  Uber's Offset Defense Properly Seeks to Limit Restitution (Fifth Affirmative Defense) ...........................................................................13

    E.  Uber Has Alleged Proper Limitations and Laches Defenses (Sixth Affirmative Defense) ...........................................................................15

    F.  Uber Has Asserted Viable Defenses That Plaintiffs' Actions Violate the Administrative Procedure Act and Major Questions Doctrine (Seventh Affirmative Defense) ...........................................................................18

    G.  Uber Has Asserted Viable Constitutional Defenses to the Excessiveness of Monetary Relief Sought (Eighth Affirmative Defense)..........................19

III.  Uber's Affirmative Defenses Are Not Redundant or Immaterial ......................20

IV.  Uber Should Receive Leave to Amend Any Stricken Affirmative Defense .....21

CONCLUSION..................................................................................................................21

## TABLE OF AUTHORITIES

**CASES**

Page(s)

*American Beverage Ass'n v. City & County of San Francisco*,
916 F.3d 749 (9th Cir. 2019) ...................................................................................................11

*AMG Capital Management, LLC v. FTC*,
593 U.S. 67 (2021)....................................................................................................................13

*Carranza v. City of San Pablo*,
2022 WL 110647 (N.D. Cal. Jan. 12, 2022) ............................................................................21

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)..................................................................................................................10

*Clarke v. Pacific Gas & Electric Co.*,
501 F. Supp. 3d 774 (N.D. Cal. 2020) .....................................................................................16

*Consumer Finanical Protection Bureau v. Navient Corp.*,
2018 WL 2088760 (M.D. Pa. May 4, 2017)...............................................................................9

*Delphix Corp. v. Actifo, Inc.*,
2014 WL 4628490 (N.D. Cal. Mar. 19, 2014)............................................................................5

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517
(1994)..................................................................................................................................20, 21

*Fitzpatrick v. City of Los Angeles*,
2023 WL 3318748 (C.D. Cal. Jan. 31, 2023) .....................................................................19, 20

*FTC v. Affiliate Strategies, Inc.*,
2010 WL 11470103 (D. Kan. June 8, 2010)..............................................................................15

*FTC v. Amazon.com, Inc.*,
2024 WL 4839389 (W.D. Wash. Nov. 20, 2024).......................................................................17

*FTC v. Amazon.com, Inc.*,
2025 WL 2677086 (W.D. Wash. Sept. 17, 2025).................................................................9, 11

*FTC v. Amazon.com, Inc.*,
735 F. Supp. 3d 1297 (W.D. Wash. 2024).................................................................................11

*FTC v. BF Labs Inc.*,
2015 WL 12806580 (W.D. Mo. Aug. 28, 2015).........................................................................11

*FTC v. Bronson Partners, LLC*,
2006 WL 197357 (D. Conn. Jan. 25, 2006)...............................................................................14

*FTC v. Consumer Defense, LLC*,
2019 WL 266287 (D. Nev. Jan. 18, 2019)..................................................................................14

*FTC v. DirecTV, Inc.*,
2015 WL 9268119 (N.D. Cal. Dec. 21, 2015)............................................................................17

*FTC v. Febre*,
128 F.3d 530 (7th Cir. 1997) ....................................................................................................14

*FTC v. Figgie International, Inc.*,
994 F.2d 595 (9th Cir. 1993) ....................................................................................................14

*FTC v. Hang-Ups Art Enterprises, Inc.*,
1995 WL 914179 (C.D. Cal. Sep. 27, 1995)........................................................................13, 17

*FTC v. Ivy Capital, Inc.*,
2011 WL 2470584 (D. Nev. June 20, 2011)............................................................................4, 11

*FTC v. Lights of America Inc.*,
2011 WL 13308569 (C.D. Cal. Apr. 29, 2011) ........................................................................14

*FTC v. Lunada Biomedical, Inc.*,
2015 WL 12911515 (C.D. Cal. Sept. 23, 2015) .....................................................................4, 11

*FTC v. National Urological Group, Inc.*,
2005 WL 8155166 (N.D. Ga. June 24, 2005) ...........................................................................18

*FTC v. North America Marketing & Associates, LLC*,
2012 WL 5034967 (D. Ariz. Oct. 18, 2012)................................................................................5

*FTC v. Publishers Business Services, Inc.*,
540 F. App'x 555 (9th Cir. 2013) .........................................................................................13, 14

*FTC v. USA Financial, LLC*,
2009 WL 10671254 (M.D. Fla. Feb. 18, 2009) .........................................................................18

*FTC v. Vemma Nutrition Co.*,
2016 WL 3548762 (D. Ariz. June 30, 2016) .............................................................................13

*Gabelli v. SEC*,
568 U.S. 442 (2013)...................................................................................................................16

*Hall-Johnson v. Citibank, N.A.*,
2024 WL 3907037 (N.D. Cal. Aug. 19, 2024) ....................................................................3, 5, 21

*Howard v. Tanium, Inc.*,
2022 WL 597028 (N.D. Cal. Feb. 28, 2022) .............................................................................16

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ...................................................................................................14

iii

*Intuit, Inc. v. FTC*,
170 F.4th 411 (5th Cir. 2026) .................................................................................13

*J & J Sports Productions, Inc. v. Dean*,
2011 WL 4080052 (N.D. Cal. Sept. 12, 2011) ................................................................3, 8

*Johnson v. Resurgent Capital Services LP*,
2023 WL 4532432 (W.D. Wash. July 13, 2023) .........................................................13

*Levin-Richmond Terminal Corp. v. International Longshoremen's &
Warehousemen's Union, Local 10*,
751 F. Supp. 1373 (N.D. Cal. 1990) ......................................................................8, 10

*Malibu Media, LLC v. Lee*,
2013 WL 2252650 (D.N.J. May 22, 2013) .........................................................19

*McKinney-Drobnis v. Massage Envy Franchising, LLC*,
2017 WL 1246933 (N.D. Cal. Apr. 5, 2017) ......................................................8, 9

*Murphy v. Trader Joe's*,
2017 WL 235193 (N.D. Cal. Jan. 19, 2017) ......................................................12

*Nguyen v. CTS Electronics Manufacturing Solutions Inc.*,
301 F.R.D. 337 (N.D. Cal. 2014).................................................................................20

*Otey v. CrowdFlower, Inc.*,
2013 WL 5734146 (N.D. Cal. Oct. 22, 2013)..........................................................1, 2, 7

*People ex rel. Hartigan v. Progressive Land Developers, Inc.*,
576 N.E.2d 214 (Ill. Ct. App. 1991), *aff'd sub nom. People ex rel. Burris
v. Progressive Land Developers, Inc.*, 602 N.E.2d 820 (Ill. 1992)...................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014).................................................................................17

*Qarbon.com Inc. v. eHelp Corp.*,
315 F. Supp. 2d 1046 (N.D. Cal. 2004) .........................................................5

*Robey v. SPARC Group LLC*,
256 N.J. 541 (2024) .................................................................................15

*SEC v. Western International Securities, Inc.*,
2023 WL 2480732 (C.D. Cal. Mar. 13, 2023).................................................................8

*State v. CSC Holdings, LLC*,
2025 WL 2708275 (Conn. Super. Ct. Sept. 17, 2025).................................................12

*Ticer v. Young*,
2018 WL 2088393 (N.D. Cal. May 4, 2018).................................................7, 10, 15, 19

*United States v. Academy Mortgage Corp.*,
    2020 WL 7056017 (N.D. Cal. Dec. 2, 2020) ................................................................12

*United States v. Lindberg Corp.*,
    882 F.2d 1158 (7th Cir. 1989) ....................................................................................17

*United States v. Ruby Co.*,
    588 F.2d 697 (9th Cir. 1978) ......................................................................................17

*Voltage Pictures, LLC v. Blake*,
    2015 WL 9272880 (D. Or. Dec. 17, 2015) ................................................................19

*Voltage Pictures, LLC v. O'Leary*,
    2016 WL 3693610 (D. Or. June 21, 2016), *report and recommendation
    adopted*, 2016 WL 3678986 (D. Or. July 11, 2016) ..................................................20

*Watkins v. U.S. Army*,
    875 F.2d 699 (9th Cir. 1989) ......................................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................................15, 17

*XILINX, Inc. v. Altera Corp.*,
    1993 WL 767688 (N.D. Cal. Oct. 25, 1993)................................................................5

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 45(a) ...................................................................................................................2

15 U.S.C. § 45(m)(1)(A)...................................................................................................1, 12

15 U.S.C. § 57b.........................................................................................................6, 13, 14, 15

15 U.S.C. § 8403...................................................................................................................2

28 U.S.C. § 2462..............................................................................................................6, 15

Cal. Bus. & Prof. Code § 17200 ..........................................................................................15

Cal. Bus. & Prof. Code § 17208 ..........................................................................................16

Fed. R. Civ. P. 12(f)...............................................................................10, 15, 17, 20, 21

Fed. R. Civ. P. 15(a)(2)........................................................................................................21

Section 13(b) of the FTC Act..........................................................................................13, 14

Section 19 of the FTC Act ............................................................................................13, 14, 15

N.C. Gen. Stat. § 75-15.2....................................................................................................12

Ohio Rev. Code § 1345.07(E)................................................................................................16

**INTRODUCTION**

Plaintiffs ask this Court to foreclose all eight affirmative defenses—defenses grounded in constitutional protections, statutory limitations periods, and equitable principles that courts in this Circuit routinely permit—based on arguments that elide the governing legal standard for such motions. At this stage, Plaintiffs must show "'to a certainty'" that each defense would fail "'despite any state of the facts which could be proved in support of the defense.'" *Otey v. CrowdFlower, Inc.*, 2013 WL 5734146, at *3 (N.D. Cal. Oct. 22, 2013). Plaintiffs have not met this standard. Each of Uber's defenses is adequately pled with specific factual and legal support and is directly relevant to the claims and remedies at issue in this case.

Uber's due process defenses (First and Second Affirmative Defenses) raise substantial constitutional questions about the vagueness of ROSCA as applied to Uber's specific conduct—questions that were not addressed in Uber's motion to dismiss and cannot be foreclosed by an unpublished district court decision denying an as-applied challenge at summary judgment, on distinguishable facts. Uber's First Amendment defense (Third Affirmative Defense) identifies non-deceptive, protected speech that the SAC targets and preserves a constitutional challenge to injunctive terms that would unduly restrict Uber's protected speech. Uber's Sixth Affirmative Defense raises two fact-bound timeliness arguments: express statutory limitations periods and laches, which courts allow defendants to develop against government plaintiffs (state and federal) in discovery. Uber's Seventh Affirmative Defense properly asserts that overreaching enforcement in this case exceeds Plaintiffs' statutory authorization, another context-specific argument that cannot be disproven as a matter of law by the mere existence of other ROSCA enforcement actions.

Plaintiffs fare no better with their attack on affirmative defenses addressing remedies. Affirmative defenses seeking to limit exposure are no less valid than those controverting liability. Uber's Fourth Affirmative Defense properly seeks to limit relief by showing good faith, which is directly responsive to the "actual knowledge or knowledge fairly implied" factor that must be considered for the assessment of civil penalties under 15 U.S.C. § 45(m)(1)(A). The Fifth Affirmative Defense asserts the well-established restitutionary principle that an injury-redressing

award may be offset by refunds and other consumer value received. Finally, Uber's Eighth Affirmative Defense preserves constitutional excessive-fine defenses based on the mismatch between the penalties sought by Plaintiffs and actual consumer harm.

Plaintiffs have not shown "'to a certainty'" that each defense would fail under any set of supporting facts. *Otey*, 2013 WL 5734146, at *3. The motion should thus be denied.

## **BACKGROUND**

This case challenges Uber One, a loyalty program designed to engage and reward customers with tangible benefits on rides and food delivery in exchange for a recurring membership fee. Far from trying to trap customers in a billing cycle they do not want, Uber aims to engage and retain consumers with transparency about the value of the program—and to make it simple to cancel should the program not satisfy their needs.

In December 2025, the FTC filed its First Amended Complaint ("FAC"), Dkt. 46, adding 22 State plaintiffs and new legal theories under state law. *Id*. In January 2026, Uber moved to dismiss the FAC, Dkt. 116, and the Court partially granted that motion. Dkt. 178. On May 4, 2026, Plaintiffs filed the operative Second Amended Complaint ("SAC"). Dkt. 199. Uber answered the SAC on May 15, 2026, and asserted eight targeted affirmative defenses. Dkt. 213 ("Answer"). Plaintiffs seek to strike all of them. Dkt. 225.

The FTC seeks relief under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, while the States add claims under dozens of state consumer protection statutes. Plaintiffs' deception-based claims mischaracterize two statements—that consumers can "[c]ancel" Uber One "anytime without fees or penalties" and that the average savings for consumers is up to $25 per month. SAC ¶ 20 (Ex. 2); *id.* ¶ 57 (Ex. 19). These statements are not misleading because Uber asserts they are true. *See* Answer ¶¶ 3, 22. The ROSCA claims wrongly fault Uber One's enrollment flows for failing to obtain express informed consent before charging consumers and Uber One's cancellation flows for being inadequately "simple." SAC ¶¶ 1, 437-440. But Uber timely elicits consent before charging consumers and gives consumers simple options for cancelling their memberships. *See*

Answer ¶ 5 ("By telling consumers the terms and then asking them to click a button to join, Uber obtains their express informed consent before enrollment."); *id.* ¶¶ 437-438.

Uber's answer responds to each of Plaintiffs' allegations in detail and raises eight affirmative defenses directed to the claims and remedies Plaintiffs have put at issue.

**ARGUMENT**

**I.    Uber Sufficiently Pled Its Affirmative Defenses By Alleging Supporting Facts and Law**

Each of Uber's affirmative defenses is pled with factual and legal support that gives Plaintiffs more than fair notice of the legal theory asserted and the factual basis for it. An affirmative defense is insufficient when it makes "'mere reference to a legal doctrine'" or "'simply states a legal conclusion or theory without the support of facts explaining how it connects to the instant case.'" *Hall-Johnson v. Citibank, N.A.*, 2024 WL 3907037, at *2-3 (N.D. Cal. Aug. 19, 2024). Uber's answer readily exceeds that standard.

Starting with Uber's First Affirmative Defense, Uber explains that ROSCA is "unconstitutionally vague as applied by Plaintiffs to Uber's conduct" because "ROSCA does not identify the features necessary for" three quoted statutory requirements to be met. Answer 52:1-17. That is enough because it "makes apparent that Defendants argue that [the relevant statute is] unconstitutionally vague as applied to their actions." *J & J Sports Prods., Inc. v. Dean*, 2011 WL 4080052, at *3 (N.D. Cal. Sept. 12, 2011); *see id.* (construing an affirmative defense "charg[ing] that Plaintiff's 'Complaint is unconstitutionally vague as applied to these Defendants'" to be "sufficient as plead," even though "generally worded"). Uber's pleading then goes even further, identifying the FTC's own acknowledgements that ROSCA "'does not provide clarity about how to avoid deceptive negative option disclosures and procedures,'" "'lacks specificity about

cancellation procedures and … cancellation-related disclosures,'" and "'does not specify what methods would satisfy this requirement.'" Answer 52:1-17.[1]

With similar specificity, Uber's Third Affirmative Defense explains why Plaintiffs' claims run afoul of the First Amendment. The defense identifies the speech at issue by referencing the "allegations in the Complaint [that] are based on non-deceptive protected speech through which Uber communicates with consumers"—thereby identifying not only the type of speech ("non-deceptive") but also the speaker ("Uber") and audience ("consumers"). Answer 53:13-19. Uber also explains how the First Amendment violation occurs—both by "improperly seek[ing] to impose liability for protected speech" and by seeking "to compel speech." *Id.* As the FTC knows, far vaguer First Amendment allegations have survived motions to strike. In *FTC v. Ivy Capital, Inc.*, for example, the court denied a motion to strike a defense asserting merely that the challenged conduct was protected by the First Amendment. 2011 WL 2470584, at *1-2 (D. Nev. June 20, 2011). In *FTC v. Lunada Biomedical, Inc.*, the court denied a motion to strike an affirmative defense alleging that "'[t]he Complaint's requested relief, if adopted, would violate Lunada's First Amendment right to communicate truthful commercial speech' because 'Lunada's claims are truthful.'" 2015 WL 12911515, at *2 (C.D. Cal. Sept. 23, 2015). Here, Uber has identified the type of protected speech with even more detail—"non-deceptive protected speech through which Uber communicates with consumers"—and explains the First Amendment's application with even more granularity, specifying that the SAC threatens both "to impose liability for protected speech" and "to compel speech." Answer 53:13-19.

---

[1] Plaintiffs do not appear to challenge the pleading sufficiency of Uber's Second Affirmative Defense, *see* Mot. 21-22, although they do challenge its legal viability, *see infra* § II(B). Uber's Second Affirmative Defense is adequately pled because it identifies the precise aspects of ROSCA that Plaintiffs seek to enforce without fair notice, explains that it is the application of those statutory requirements to "design elements like those alleged to have been used by Uber" that causes the constitutional problem, and supports the defense with concessions by the FTC that ROSCA "'does not provide clarity'" and "'lacks specificity.'" Answer 52:18-53:12.

Unlike the stricken affirmative defenses in three of Plaintiffs' cases, Uber never relies on "information and belief." *See* Mot. 21-22 (citing *Hall-Johnson*, 2024 WL 3907037, at *2; *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004); *XILINX, Inc. v. Altera Corp.*, 1993 WL 767688, at *1 (N.D. Cal. Oct. 25, 1993)). That is important because pleading "on information and belief" indicates some degree of speculation. *See Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (interpreting "the phrase 'on information and belief'" to have been "intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations," and thus inferring that "plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree"). By contrast, Uber's defenses are grounded in known or investigated facts. Under the Fifth Affirmative Defense, Uber pleads the fact that it has "paid" "refunds" "to customers." Answer 54:3-7 (asserting that those refunds should offset a restitutionary award). With respect to the Fourth Affirmative Defense, Uber alleges that it "lacked actual or implied knowledge" that its "enrollment or cancellation flows" violated ROSCA. *Id.* 53:20-54:2 (asserting good faith).

Nor do Uber's affirmative defenses rest on "boilerplate" language. *Hall-Johnson*, 2024 WL 3907037, at *3. Take the timeliness defenses. In *Hall-Johnson*, the defendant alleged only that she "is informed and believes, and thereon alleges, that Plaintiff unjustifiably delayed in commencing this action, that said delay has prejudiced the rights of Answering Defendant and therefore, the Complaint should be barred under the Doctrine of Laches." 2024 WL 3907037, at *2; *see also FTC v. N. Am. Mktg. & Assocs., LLC*, 2012 WL 5034967, at *2 (D. Ariz. Oct. 18, 2012) (cited at Mot. 21) (laches and other defenses contained "no reference to supporting facts … and thus provide[d] no notice concerning the basis of the defenses").[2] The pleadings in *Hall-Johnson* and *North America Marketing* thus failed to apprise the plaintiff of the timeframe within which the

---

[2] The laches defense in *Hall-Johnson* also said, "This defense is alleged in the alternative and does not admit any of the allegations contained in the Complaint," which has no analog in Uber's defense. 2024 WL 3907037, at *2.

claim allegedly should have been brought. By contrast, Uber's Sixth Affirmative Defense identifies that the FTC's claim for restitutionary damages is based on challenged conduct that "occurred more than three years ago" and that the FTC's request for civil penalties is based at least in part on conduct that "occurred more than five years ago." Answer 54:8-18; *see* SAC ¶ 17 ("Uber has charged consumers for various subscription plans over the years, including Uber Pass, and since November 2021, Uber One."). The FTC dispels any doubt that it could be unaware of the limitations periods contained in its own enabling statutes by citing those very statutes in its motion. *See* Mot. 12-13 (citing 15 U.S.C. § 57b, 28 U.S.C. § 2462).

Uber's Seventh Affirmative Defense describes specifically how the FTC's claims violate the Administrative Procedure Act and the major questions doctrine, both by identifying the exact subset of the industry into which the agency has overreached ("the membership economy") and how that overreach occurs (because the FTC's interpretation of ROSCA in this case would allow the agency to "unilaterally set granular requirements for all membership services" "without proceeding through rulemaking and without the approval of Congress"). Answer 54:19-55:3. And, under the Eighth Affirmative Defense, Uber has identified the basis for excessiveness, that the "monetary relief sought … far exceeds the amount of consumer harm." *Id.* 55:4-9.

Plaintiffs fault Uber for not using "more words" in the Fourth, Fifth, and Eighth Affirmative Defenses, but Uber's brevity tracks the slimness of the relevant allegations in the SAC. For example, the SAC seeks "restitution" without identifying how restitution would be calculated. *See, e.g.*, SAC (Prayer for Relief (E)). In response, Uber appropriately pleads that "[a]ny finding of monetary liability, including any restitution award, should be offset to account for" two particular considerations: (1) "the benefits of Uber One that Uber customers received" and (2) "refunds paid to customers." Uber's affirmative defenses thus follow the level of generality used in the SAC (which has, of course, survived a motion to dismiss). Expert discovery will quantify these benefits in further detail once Plaintiffs' restitutionary calculations are known.

## II.    Uber's Affirmative Defenses Are Legally Sufficient

Plaintiffs recognize the relevant standard, which is that "'once an affirmative defense has been properly pled, a motion to strike which alleges the legal insufficiency of an affirmative defense will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Otey*, 2013 WL 5734146, at *3; *see* Mot. 6 (arguing that a defense should be struck because it "lacks merit under any set of facts"); *see also Ticer v. Young*, 2018 WL 2088393, at *5 (N.D. Cal. May 4, 2018) ("'[B]efore a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'"). Plaintiffs' motion falls short of this high bar with respect to all eight affirmative defenses.

### A.    Uber Has Stated Legally Valid Due Process Defenses (First and Second Affirmative Defenses)

Plaintiffs argue both that Uber's due process defenses were rejected at the motion-to-dismiss stage and that those defenses are legally insufficient. Neither argument has merit.

The due process issues raised by Uber's First and Second Affirmative Defenses would not "relitigate" the motion to dismiss. *See* Mot. 5-9. Uber's motion to dismiss does not contain the words "unconstitutional" or "due process." *See* Dkt. 116. True, Uber did argue that Plaintiffs' "ROSCA penalty demands fail because the complaint does not allege that Uber violated any rule with knowledge," *id.* at 19, and the Court rejected that argument, *see* Dkt. 178 at 20-21. To support that point, Uber noted ROSCA's inherent ambiguity. *See* Dkt. 116 at 19-20. But, in so doing, Uber did not contest the statute's constitutionality.

By contrast, the due process defenses squarely challenge whether the FTC's enforcement of ROSCA violates due process because certain ROSCA requirements are unconstitutionally vague as applied to Uber and because the FTC failed to give fair notice that it considered "design elements" like those allegedly used by Uber to be noncompliant with ROSCA. Answer 52:1-53:12. Because the due process defenses were not raised or rejected in connection with the motion to dismiss, they cannot be stricken on this basis now.

7

Even accepting Plaintiffs' argument, in ruling on Uber's different argument in the motion to dismiss, the Court expressly cabined its ruling to "the motion to dismiss stage," indicating that factual development could change the analysis at a later point. Dkt. 178 at 21. And the Court explained that its decision was limited to what Uber's particular "argument" was able "to establish." *Id*. The Court hypothesized that a different argument (i.e., one that "provide[d] an interpretation of the statute and then explain[ed] why [Uber's] conduct complied with that interpretation") might have led to a different result. *Id*. That is what Uber now raises in its affirmative defense.

Regardless of how "'vague and indefinite'" the standard for unconstitutional vagueness is (Mot. 7), or how "limited" the "set of circumstances" in which courts find unconstitutional lack of fair notice (*id.*), affirmative defenses based on as-applied unconstitutional vagueness and/or lack of fair notice regularly survive motions to strike. *See, e.g.*, *McKinney-Drobnis v. Massage Envy Franchising, LLC*, 2017 WL 1246933, at *8-9 (N.D. Cal. Apr. 5, 2017); *J & J Sports Prods., Inc.*, 2011 WL 4080052, at *2-3; *SEC v. W. Int'l Sec., Inc.*, 2023 WL 2480732, at *6-8 (C.D. Cal. Mar. 13, 2023); *Levin-Richmond Terminal Corp. v. Int'l Longshoremen's & Warehousemen's Union, Loc. 10*, 751 F. Supp. 1373, 1375-1376 (N.D. Cal. 1990). Contrary to Plaintiffs' motion, due process defenses do not fail just because there have been other enforcement actions against different defendants (*see* Mot. 8) or because other courts have found the challenged statute to be constitutional in other applications or concluded that the statute is not facially unconstitutional (*see* Mot. 7 (quoting non-binding, unpublished district court decision granting summary judgment on constitutional issue to FTC)).  This is for multiple reasons.

First, the existence of distinct enforcement actions "'against other companies,'" Mot. 8, does not give Uber fair notice that Uber's specific practices would be targeted. Indeed, in resisting discovery that asked the States to identify practices compliant with ROSCA, the States argued that "other companies' compliance or failure to comply with ROSCA is not relevant to the States' claims or Uber's defenses," Dkt. 185 at 2, invoking caselaw saying that "'this suit is against specific defendants, and, consequently, those defendants are the only [defendants] whose actions

8

are relevant.'" *Id.* (quoting *Consumer Fin. Prot. Bureau v. Navient Corp.*, 2018 WL 2088760, at *6-7 (M.D. Pa. May 4, 2017)); *see id.* at 3 ("Whether another company is currently complying with or violating ROSCA has no bearing on [Plaintiffs' ROSCA claims against Uber] or Uber's defenses. It is wholly irrelevant."). That argument was successful. *See* Dkt. 192 at 3 (denying Uber's motion to compel). The States should not be allowed to resuscitate a topic disclaimed as irrelevant, and into which discovery has been denied, in order to block Uber's due process defenses.

Second, when courts uphold the constitutionality of a statute facially or in other as-applied settings, that only means the statute is not unconstitutional in all applications or not unconstitutional in a different context. It leaves open the opportunity for defendants to pursue fact-bound defenses that certain statutory features "are unconstitutionally vague when applied to the factual allegations" in another defendant's particular case, as Uber does here. *McKinney-Drobnis*, 2017 WL 1246933, at *9. For example, in *McKinney-Drobnis*, the court denied a motion to strike an affirmative defense that "the term 'unfair'" under California's Unfair Competition Law was "unconstitutionally vague when applied to the factual allegations in the complaint," while crediting that other courts had "'repeatedly upheld the constitutionality of the UCL and awards made thereunder.'" *Id.* Analogously, it is immaterial that another court granted summary judgment in favor of the FTC when a different defendant facing different allegations in a different "complaint," *id.*, raised facial and as-applied constitutional challenges to ROSCA. *See Amazon.com, Inc.*, 2025 WL 2677086, at *15.

Moreover, *Amazon* was a summary judgment decision in which the Court reached its conclusion about as-applied constitutionality after the development of a factual record. 2025 WL 2677086, at *15. The court's decision emphasized the defendant's concessions that "ROSCA is a 'clear statute' and 'ROSCA is facially clear[.]'" *Id.*; *see id.* ("The Court relied on these representations."). Plaintiffs have pointed to no similar statements by Uber here, in a case where Uber has emphasized the FTC's own acknowledgement that "ROSCA is **un**clear," Dkt. 116 at 19

9

(emphasis in original), and where Uber faces different allegations that merit rebuttal with unique as-applied constitutional defenses.

Finally, even where "the constitutionality of [a statute] has frequently been upheld," the question may still be a "substantial legal" one. *Levin-Richmond Terminal Corp.*, 751 F. Supp. at 1375 (addressing constitutional challenge to RICO). Only defenses involving legal questions that "'are clear and not in dispute'" fail under Rule 12(f). *Ticer*, 2018 WL 2088393, at *5. Because Uber's due process defenses properly raise substantial legal questions for the first time and are not foreclosed by relevant authority, they should not be stricken.

### B.   Uber Has Asserted a Viable First Amendment Defense (Third Affirmative Defense)

Plaintiffs assert that "any speech at issue would be false or misleading commercial speech" unprotected by the Constitution, Mot. 9, but that argument both assumes Plaintiffs' ultimate success (premature at best) and ignores that a significant portion of the speech at issue—the speech that allegedly violates ROSCA but not the FTC Act—is not alleged to be misleading or deceptive. The alleged ROSCA-violating speech consists of app flows and other consumer communications through which Uber tells potential or active users about enrolling in or cancelling Uber One. For example, the SAC faults "an advertisement to enroll in Uber One on [the user's] checkout screen" that "tells [the user] that if they check that box they can save a certain dollar amount off their ride with a free trial of Uber One," among other statements. SAC ¶ 29. That speech allegedly fails "to obtain a consumer's express informed consent" at the right time, *id.* ¶ 437, but it is not alleged to be false or misleading; there is no allegation that users will not, for example, save that "certain dollar amount off their ride with a free trial of Uber One." *Id.* ¶ 29. The SAC also targets the content on an alleged set of "7 screens" through which Uber communicates with consumers—not because there is anything allegedly misleading or deceptive about that content but instead because that flow of information is supposedly not "simple." *Id.* ¶ 5. Uber enjoys First Amendment protection of truthful speech and should be allowed to assert that protection over the speech not alleged to be deceptive here. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,

447 U.S. 557, 564 (1980) (government's power to regulate commercial speech that is not misleading "is more circumscribed").

Moreover, Plaintiffs' motion ignores the part of the Third Affirmative Defense asserting that Plaintiffs improperly seek "to compel speech." Answer 53:13-19. It is beyond dispute that the First Amendment imposes constraints on the government's power to compel speech. *See, e.g.*, *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 753 (9th Cir. 2019) (city ordinance requiring health warnings on advertisements for certain beverages likely an "unjustified or unduly burdensome disclosure requirement that might offend the First Amendment by chilling protected commercial speech"). Such compelled speech by the government triggers at least a plausible First Amendment defense. At minimum, whether ROSCA implicates the First Amendment "by limiting speech, or even compelling speech, is not a simple question." *FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1331-32 (W.D. Wash. 2024) (declining to address argument as applied to Amazon at motion-to-dismiss stage because it had "not been fully briefed").[3]

In addition, here, as it has in other cases, "the First Amendment will bear on the exact contours of the injunctive relief sought by the FTC," because "First Amendment analysis may be necessary to determine whether the relief sought would be overly broad and ensnare truthful and non-misleading commercial speech." *Lunada Biomedical, Inc.*, 2015 WL 12911515, at *3 (denying motion to strike First Amendment affirmative defense); *see also FTC v. Ivy Cap., Inc.*, 2011 WL 2470584, at *2 (denying motion to strike affirmative defense because the "First Amendment may be relevant as it relates to the relief sought"); *FTC v. BF Labs Inc.*, 2015 WL 12806580, at *3 (W.D. Mo. Aug. 28, 2015) (declining to strike First Amendment defense "because the Court finds that the substance of this defense may be relevant to the final disposition of this action"). The SAC's prayer for relief asks the Court to "[e]nter a permanent injunction to prevent future violations of the FTC Act." SAC (Prayer for Relief (A)). It is unclear how Plaintiffs would

---

[3]   Amazon's motion for summary judgment on this issue was eventually denied on the basis that Amazon had failed to "demonstrate that ROSCA implicates First Amendment rights." *FTC v. Amazon.com, Inc.*, 2025 WL 2677086, at *16 (W.D. Wash. Sept. 17, 2025).

ask the Court to order that any alleged (or proven) deception be excised from Uber's truthful speech. Because the First Amendment may inform the bounds of that decision, the Court should deny Plaintiffs' motion to strike Uber's Third Affirmative Defense.

### C.   Plaintiffs Concede That Uber's Good Faith Is Relevant To Penalties (Fourth Affirmative Defense)

Plaintiffs seek to strike Uber's Fourth Affirmative Defense on the basis that it would limit remedies rather than disprove liability, but that is a proper function of an affirmative defense. Courts regularly allow defendants to pursue affirmative defenses that "operate[] to reduce damages rather than as a barrier to liability." *Murphy v. Trader Joe's*, 2017 WL 235193, at \*3 (N.D. Cal. Jan. 19, 2017) (collecting cases). In *Murphy*, the court recognized that, although "courts sometimes describe an affirmative defense as 'an assertion raising new facts and arguments that, if true, will defeat plaintiff's claim,' this general language does not establish a fixed rule" against remedy-reducing affirmative defenses. *Id*. Even Plaintiffs' leading case for the proposition that affirmative defenses can only "defeat liability," Mot. 17, recognizes that, "'[a]lthough the failure to mitigate doctrine operates to reduce damages rather than as a barrier to liability, it is still considered an affirmative defense.'" *United States v. Acad. Mortg. Corp.*, 2020 WL 7056017, at \*5 (N.D. Cal. Dec. 2, 2020) (cited at Mot. 12-13, 17-18). In fact, in *Academy Mortgage*, the Court denied a motion to strike an offset defense asserting that the defendant "seeks to offset the amount of damages by any collateral funds that the United States has already recovered." *Id.* at \*6.

Plaintiffs' motion rightly concedes that a good faith defense "could … limit relief." Mot. 11. That concession dooms the motion to strike this defense. The FTC Act expressly requires courts to consider "actual knowledge or knowledge fairly implied" in assessing civil penalties. 15 U.S.C. § 45(m)(1)(A). Many parallel state statutes similarly condition penalties on "knowing" or "willful" conduct. *See, e.g.*, N.C. Gen. Stat. § 75-15.2 (permitting civil penalties for knowing violations); *State v. CSC Holdings, LLC*, 2025 WL 2708275, at \*12 (Conn. Super. Ct. Sept. 17, 2025) ("[C]ivil penalties are available as a potential remedy for wilful violations of [the Connecticut Unfair Trade Practices Act]."). Good faith is likewise a valid defense against the

granting of a permanent injunction, which Plaintiffs seek. *See FTC v. Vemma Nutrition Co.*, 2016 WL 3548762, at *2 (D. Ariz. June 30, 2016) (good faith is "a valid affirmative defense" where the FTC seeks a permanent injunction); *FTC v. Hang-Ups Art Enters., Inc.*, 1995 WL 914179, at *3 (C.D. Cal. Sep. 27, 1995) (a good faith defense "asserted against the granting of a permanent injunction against defendant […] should not be stricken").

Plaintiffs' argument that "equitable defenses are generally not available in law enforcement actions brought by a government agency to enforce or protect a public right," Mot. 10, is unavailing because it runs headlong in the problem that "deceptive advertising claims under the FTC Act are 'in their nature' traditional actions at law and equity and thus involve private rights." *Intuit, Inc. v. FTC*, 170 F.4th 411, 418 (5th Cir. 2026).

Finally, Plaintiffs passingly assert that Uber's good-faith defense would require the FTC to spend resources "on irrelevant issues," Mot. 12, but Plaintiffs do not and cannot identify any such discovery. Accordingly, "[t]here is no reason to strike defendants' 'good faith error'" defense at this stage. *Johnson v. Resurgent Cap. Servs. LP*, 2023 WL 4532432, at *1 (W.D. Wash. July 13, 2023).

### D.      Uber's Offset Defense Properly Seeks to Limit Restitution (Fifth Affirmative Defense)

Plaintiffs concede that any monetary award may account for refunds already paid to consumers, which is explicitly part of Uber's Fifth Affirmative Defense. Their only real objection is to offsetting the value consumers received from Uber One. But their principal authority, *FTC v. Publishers Business Services, Inc.* ("*PBS*"), 540 F. App'x 555, 557-558 (9th Cir. 2013), does not support striking that defense here because *PBS* addressed restitution under Section 13(b) of the FTC Act, a provision that no longer authorizes equitable monetary relief after *AMG Capital Management, LLC v. FTC*, 593 U.S. 67, 75 (2021). Plaintiffs instead seek redress under Section 19(b), which permits only relief necessary to redress consumer injury and expressly prohibits exemplary or punitive damages. *See* 15 U.S.C. § 57b(b). And *PBS* itself distinguished Section 19(b) on that ground, recognizing that Section 19(b) limits recovery to amounts necessary to

13

compensate consumers, unlike Section 13(b). 540 F. App'x at 557; *see also FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997) (Section 13(b) lacks limitations contained in Section 19(b)). Because Uber's offset defense goes directly to whether Plaintiffs' requested redress would exceed actual consumer injury, it is not foreclosed by *PBS*. Plaintiffs' other offset cases are similarly unpersuasive where they rely on Section 13(b) authority, not the more constrained remedial scheme at issue here.

Plaintiffs' citation to *FTC v. Figgie International, Inc.* addresses Section 19 but is still unavailing because, there, the court rejected offsets in the context of a remedy fashioned by the district court that was far more tailored than the one sought by Plaintiffs here. 994 F.2d 595, 606 (9th Cir. 1993). In *Figgie*, the FTC only sought amounts spent "that would not have been spent" absent wrongdoing. *Id*. Not so here. In discovery, Plaintiffs have indicated that they are seeking the total dollar amount of fees paid for Uber One as well as the cost of time lost by consumers cancelling Uber One, assuming without factual or legal support that the time spent is a compensable monetary harm. *See* Gringer Dec., Ex. A at 17; *id.*, Ex. B at 12-42. In order to avoid a "windfall," *Figgie*, 994 F.2d at 606, Uber's offset defense advocates for tailoring restitutionary "redress" to actual consumer "injury," if any, as required. 15 U.S.C. § 57b(b).

Courts have expressly allowed offsets for value other than refunds. For example, in *FTC v. Consumer Defense, LLC*, the Court denied the FTC's motion to strike an offset defense, recognizing that "[a] monetary award to consumers in this case may reflect benefits that the consumers received, including a reduction for any refunds." 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019). In *FTC v. Bronson Partners, LLC*, another court similarly declined to strike the defendants' offsets defense, holding that "any monetary award may reflect benefits received by consumers and should be reduced by any refunds." 2006 WL 197357, at *2 (D. Conn. Jan. 25, 2006); *see also FTC v. Lights of Am. Inc.*, 2011 WL 13308569, at *4 (C.D. Cal. Apr. 29, 2011) (declining to strike offsets defense, citing *Bronson Partners* and distinguishing *Figgie*). Courts evaluating violations of the state consumer protection laws asserted here have approached remedies with a similar framework. *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 796,

14

802 (2015) (allowing restitution for violation of Cal. Bus. & Prof. Code § 17200 to be offset by value of the products received and holding that "a full refund is *unavailable* under the UCL when the product had value to consumers notwithstanding the alleged deceptive advertising"); *Robey v. SPARC Grp. LLC*, 256 N.J. 541, 556-557 (2024) ("When a consumer claims that there is a difference in value between an item as advertised and the item as delivered, but the item is not worthless, the benefit-of-the-bargain theory of damages is applicable."). For purposes of a motion to strike under Rule 12(f), an affirmative defense is legally insufficient only if it raises a question of law that is "'clear and not in dispute.'" *Ticer*, 2018 WL 2088393, at *5. That is not the case here, where courts have embraced Defendants' position.

Moreover, Plaintiffs improperly seek to resolve disputed factual issues that cannot be adjudicated on a motion to strike, particularly given the nature of the membership service at issue. Uber One has given concrete, quantifiable benefits to consumers in the form of discounts and other savings. *See* Answer ¶ 1 (Uber One members receive "additional savings and exclusive benefits"). Whether and how such offsets should feature in an injury-redressing remedy turns on fact-intensive questions involving the types of Uber One benefits at issue and how those benefits can be quantified. *See FTC v. Affiliate Strategies, Inc.*, 2010 WL 11470103, at *12-13 (D. Kan. June 8, 2010) (finding it "premature to strike [offsets] defense" because the issue of the type and scope of "benefits" purportedly received by consumers is one "better determined after further factual development"). Because resolution of these issues requires discovery, Plaintiffs' challenge is premature and is more appropriately evaluated at summary judgment, not on a Rule 12(f) motion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

**E.    Uber Has Alleged Proper Limitations and Laches Defenses (Sixth Affirmative Defense)**

Plaintiffs concede that monetary relief under Section 19 of the FTC Act is subject to a three-year statute of limitations, *see* 15 U.S.C. § 57b (cited at Mot. 12-13), and that civil penalties are subject to a five-year statute of limitations, *see* 28 U.S.C. § 2462 (cited at Mot. 13). Their motion to strike this defense should thus be denied on that basis alone. Additionally, Plaintiffs

ignore that the SAC alleges numerous violations of state law, many with their own relevant limitations periods. For example, under the relevant Ohio law, "[n]o action may be brought by the attorney general … to recover for a transaction more than two years after the occurrence of a violation." Ohio Rev. Code § 1345.07(E); *see also, e.g.*, Cal. Bus. & Prof. Code § 17208 (four-year limitations period under relevant California law). These statutes impose independent temporal restrictions on enforcement actions for state-law claims, just as federal law constrains the timeline for certain federal remedies.

Plaintiffs cannot evade these limitations periods by labeling Uber's conduct ongoing or continuous. *See* Mot. at 13. Where a single violation "continues and remains un-remedied," the limitations clock starts running "'as soon as the plaintiff can file suit and obtain relief,'" such that "'a continuing violation is actionable even before the last act of the violation.'" *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 787-788 (N.D. Cal. 2020). Here, the SAC alleges wrongdoing that started even before Uber One was launched in "November 2021." SAC ¶ 17; *see also* Dkt. 155 at 1-2 (Plaintiffs demanding discovery related to Uber Pass, a membership program that preceded Uber One). In government enforcement actions for civil penalties, the statute of limitations begins to run when the violation occurs, not when it is discovered, because the government is uniquely positioned and obligated to investigate such violations. *See Gabelli v. SEC*, 568 U.S. 442, 450-51 (2013). Thus, allegations that Uber's conduct continued through the filing of the SAC does not eliminate any applicable limitations period. Uber has plausibly alleged that material portions of the challenged conduct fall outside these limitations windows and thus the limitations defenses should proceed to discovery. *See Howard v. Tanium, Inc.*, 2022 WL 597028, at *2 (N.D. Cal. Feb. 28, 2022) (denying motion to strike limitations affirmative defense because the defendant had "identified the statute of limitations under which its defense arises"). Remaining factual questions (about the temporal scope of Plaintiffs' claims, whether the alleged conduct was

continuous, and when the alleged conduct occurred) are not appropriate for resolution on a Rule 12(f) motion. *See Whittlestone, Inc.*, 618 F.3d at 974.[4]

Plaintiffs also incorrectly argue that Uber's laches defense is unavailable against the FTC absent "extraordinary affirmative misconduct." Mot. at 14. That overstates the law and does not justify striking Uber's laches defense at the pleading stage. Laches bars equitable relief when the plaintiff engages in "unreasonable, prejudicial delay in commencing suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014). Courts recognize that laches may be asserted against the government when delayed enforcement action is "'inexcusable and operates to ... [a party's] material prejudice,'" *see United States v. Lindberg Corp.*, 882 F.2d 1158, 1164 (7th Cir. 1989), or when the government engages in "affirmative misconduct," *United States v. Ruby Co.*, 588 F.2d 697, 705 n.10 (9th Cir. 1978). Whether action amounts to affirmative misconduct is governed by a flexible inquiry with "no single test." *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989); *see also, e.g.*, *People ex rel. Hartigan v. Progressive Land Devs., Inc.*, 576 N.E.2d 214, 220 (Ill. Ct. App. 1991) (affirming judgment that laches barred Attorney General's suit where "fact situation" showed "more than mere nonaction or inattention on the part of the State"), *aff'd sub nom. People ex rel. Burris v. Progressive Land Devs., Inc.*, 602 N.E.2d 820 (Ill. 1992). Laches is fact-sensitive. Thus, it is unsurprising that courts routinely deny the FTC's motions to strike the defense. *See, e.g.*, *FTC v. Amazon.com, Inc.*, 2024 WL 4839389, at *5 (W.D. Wash. Nov. 20, 2024) (declining to strike laches defense); *FTC v. DirecTV, Inc.*, 2015 WL 9268119, at *2 (N.D. Cal. Dec. 21, 2015) ("Whether the FTC's conduct was sufficiently dilatory and DirecTV's prejudice sufficiently severe to warrant laches are factual questions inappropriate for determination on a motion to strike."); *Hang-Ups Art Enters., Inc.*, 1995 WL 914179, at *4.

Notwithstanding this permissive factual standard, the pleadings alone support a finding that Plaintiffs engaged in affirmative misconduct as that term is understood. Plaintiffs waited years to

---

[4]   The tolling agreement between Uber and the FTC, *see* Mot. 13 n.3, expressly preserves Uber's ability to assert timeliness defenses and does not affect limitations periods applicable against the States. Plaintiffs do not and cannot argue that it bars the Sixth Affirmative Defense.

challenge conduct they now allege is unlawful, depriving Uber of the opportunity to timely conform its conduct to these regulators' view of the law. The unfairness of this delay was compounded by the FTC's failure to provide clear guidance under ROSCA. Rather than clarify this standard, Plaintiffs allowed the marketplace and Uber to operate for years under ambiguity, including throughout the alleged violation period, effectively signaling that Uber's practices were permissible. Plaintiffs' misconduct and regulatory silence have resulted in significant prejudice to Uber, a company that dedicates significant resources to regulatory compliance.

## F.     Uber Has Asserted Viable Defenses That Plaintiffs' Actions Violate the Administrative Procedure Act and Major Questions Doctrine (Seventh Affirmative Defense)

Uber has properly asserted that Plaintiffs' claims are barred because Plaintiffs seek to radically expand the FTC's power to regulate the membership economy without congressional authorization. As Uber's answer explains, this lawsuit targets "practices that look nothing like those ROSCA was meant to prohibit." Answer ¶ 6. "Congress passed [ROSCA] in the early years of the Internet to stamp out pernicious tactics employed by third-party sellers who tricked consumers into unknowingly buying their products or services while completing a transaction with a different online retailer." *Id.* By contrast, Uber One "is a popular, well-known, and straightforward membership for which consumers must take an affirmative step to enroll." *Id.* The FTC's reading of ROSCA would enable the agency to impose unanticipated demands on all membership services in an impermissible extension of ROSCA's statutory text and Congress's intent.

Courts regularly deny motions to strike affirmative defenses alleging arbitrary or capricious agency action or violations of statutory authority. *See, e.g.*, *FTC v. USA Fin., LLC*, 2009 WL 10671254, at *3 (M.D. Fla. Feb. 18, 2009); *FTC v. Nat'l Urological Grp., Inc.*, 2005 WL 8155166, at *10-11 (N.D. Ga. June 24, 2005). The same should follow here. The FTC claims to have a "long (and recent) history" of enforcing "the principles of the FTC Act and ROSCA." Mot. 16. However long (or not long) the FTC's enforcement of these "principles" has been, *id.*, Uber is entitled to pursue a defense that the agency's enforcement in this case constitutes a radical expansion of

power to regulate the membership economy without proper agency procedures. Citations to recent FTC enforcement actions do not prove that those actions were appropriate uses of the FTC's enforcement power or that this one is.

Tellingly, no case cited by the FTC in support of the principle that an ultra vires defense should be rejected "where 'the FTC relies on well-established rules and legal theories'" is about ROSCA enforcement, which is the subject of Uber's Seventh Affirmative Defense. Mot. 17. Thus, none of those cases shows that the FTC has acted consistently with the APA and the major questions doctrine in this particular case. Mot. 17. Of course, Uber does not dispute the basic proposition that an agency can address alleged wrongdoing "via rulemaking or litigation," Mot. 16-17, but that discretion does not empower an agency to act beyond its statutory authorization. Because Plaintiffs have cited no authority against Uber's defense as applied to the facts in this case, let alone any showing that the "questions of law" inherent to this defense are "'clear and not in dispute,'" *Ticer*, 2018 WL 2088393, at *5, the defense should not be stricken.

### G.   Uber Has Asserted Viable Constitutional Defenses to the Excessiveness of Monetary Relief Sought (Eighth Affirmative Defense)

Putting aside restitution, Plaintiffs cannot dispute that Uber's Eighth Affirmative Defense would, if proven, limit Plaintiffs' recovery of civil penalties. Civil penalties payable to a government agency may be unconstitutionally excessive if the amount "'is grossly disproportionate to the gravity of the' offense." *Fitzpatrick v. City of Los Angeles*, 2023 WL 3318748, at *31 (C.D. Cal. Jan. 31, 2023).

It makes no difference that Plaintiffs have "yet to seek any particular penalty amount." Mot. 20. As explained *supra* § II(C), it is proper for defendants to preserve defenses that limit monetary relief, even if those defenses do not controvert liability. Thus, courts regularly deny motions to strike the affirmative defense of unconstitutionally excessive statutory damages. *See, e.g.*, *Voltage Pictures, LLC v. Blake*, 2015 WL 9272880, at *7 (D. Or. Dec. 17, 2015) (observing that the Due Process Clause applies to statutory damages that are "wholly disproportioned to the offense and obviously unreasonable"); *Malibu Media, LLC v. Lee*, 2013 WL 2252650, at *10

(D.N.J. May 22, 2013) (noting that "other courts have permitted such defenses to stand"); *Voltage Pictures, LLC v. O'Leary*, 2016 WL 3693610, at \*2-3 (D. Or. June 21, 2016), *report and recommendation adopted*, 2016 WL 3678986 (D. Or. July 11, 2016). The Court should deny the motion here too.

Further, the plaintiff States have advised in initial disclosures that they are seeking penalties up to the statutory maximum for each alleged violation, which, if aggregated for numerous potential violations, could far exceed the value of the direct consumer harm and the revenue obtained by Uber from Uber One. *See* Gringer Dec., Ex. B at 12-42. That amount would very likely be "'grossly disproportionate to the gravity of the' offense." *Fitzpatrick*, 2023 WL 3318748, at \*31.

## III.    Uber's Affirmative Defenses Are Not Redundant or Immaterial

Plaintiffs repeatedly accuse Uber's affirmative defenses of being "redundant" and "immaterial," but identify no respect in which they meet those Rule 12(f) criteria. *See, e.g.*, Mot. 3-4, 12, 15. Redundant matter involves a "needless repetition of allegations." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 342 (N.D. Cal. 2014). For example, in *Nguyen*, the "allegations in [the] second cause of action [were] entirely repetitive of the allegations in [the] first cause of action." *Id*. The court struck "the repetitive allegations in the second cause of action" because the defendant otherwise would have had to litigate "essentially the same claim twice and to simultaneously attempt to ascertain how the second cause of action [was] different from the first." *Id*. at 343. There is no such material in Uber's answer and Plaintiffs do not attempt to identify any.

"'[I]mmaterial' matter" under Rule 12(f) means information that "'has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). Motions to strike on immateriality grounds "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (Apr. 2026). For example,

20

in *Fogerty*, the court affirmed a decision to strike a copyright infringement defendant's "seven pages of allegations" about an alleged "tax shelter scheme" into which he was fraudulently induced before the copyrighted material was even created. 984 F.2d at 1526-1527. Observing also that the "allegations did not involve the parties to the copyright infringement action," the Ninth Circuit held that "the district court correctly noted that the [tax shelter] allegations created serious risks of prejudice to [the plaintiff]" as well as "delay" and potential "confusion of the issues." *Id.* at 1528. Here again, Plaintiffs can cite no material analogous to the *Fogerty* tax shelter digression. All eight of Uber's affirmative defenses are not only relevant to Plaintiffs' claims but also, as explained above (*see supra* § II), legally meritorious defenses to them.

**IV.    Uber Should Receive Leave to Amend Any Stricken Affirmative Defense**

It is well-established that, "[i]f the court strikes an affirmative defense, 'leave to amend should be freely given' unless doing so would result in prejudice to the opposing party." *Hall-Johnson*, 2024 WL 3907037, at *2; *see* Fed. R. Civ. P. 15(a)(2). The only prejudice suggested by the motion is "the burden of having to defend against a claim on its merits," which "does not constitute undue prejudice." *Carranza v. City of San Pablo*, 2022 WL 110647, at *6 (N.D. Cal. Jan. 12, 2022). Plaintiffs' vague speculation that Uber's pursuit of affirmative defenses would "invite wasteful and unnecessary pretrial expense and litigation over irrelevant issues" is untethered to any specific component of any affirmative defense. Mot. 2. And it is wrong. Each affirmative defense relates directly to Plaintiffs' own claims. As pled, there is nothing "'spurious'" about any aspect of Uber's defenses, *Fogerty*, 984 F.2d at 1527, nor would marginal discovery on those defenses affect the fact discovery deadline approaching in under three months or the case schedule more broadly. We are already deep into discovery and Plaintiffs could identify no discovery sought by Uber that is "wasteful" or unnecessary.

**CONCLUSION**

Uber has pled eight targeted defenses raising substantial questions of law that should be decided with the benefit of a developed factual record.  Plaintiffs' motion to strike illustrates why relief under Rule 12(f) is disfavored. It should be denied in full.

Dated: June 22, 2026

Respectfully submitted,

*/s/ David Gringer*
David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: +1 212 230 8800

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: +1 650 600 5051

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8729
Facsimile: +1 202 736 8711

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

*Attorneys for Defendants Uber Technologies, Inc. and Uber USA, LLC*

22

**ATTESTATION**

I, David Gringer, hereby attest that this document was served by electronic filing on June 22, 2026, on all counsel of record.

*/s/ David Gringer*
David Gringer