# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FEDERAL TRADE COMMISSION;
THE ATTORNEYS GENERAL OF THE
STATES OF ALABAMA, ARIZONA,
CONNECTICUT, MARYLAND,
MINNESOTA, MISSOURI, MONTANA,
NEBRASKA, NEW HAMPSHIRE, NEW
JERSEY, NEW YORK, NORTH
CAROLINA, OHIO, OKLAHOMA,
PENNSYLVANIA, VIRGINIA, WEST
VIRGINIA, WISCONSIN, AND THE
DISTRICT OF COLUMBIA; THE PEOPLE
OF THE STATE OF CALIFORNIA, THE
PEOPLE OF THE STATE OF ILLINOIS,
AND THE PEOPLE OF THE STATE OF
MICHIGAN,

          Plaintiffs,

    v.

UBER TECHNOLOGIES, INC., a
corporation; and

UBER USA, LLC, a limited liability
company,

          Defendants.

Case No. 4:25-cv-03477-JST

**PLAINTIFF STATES' RULE 26(A)(1)
SUPPLEMENTAL INITIAL
DISCLOSURES**

      Plaintiff States, the Attorneys General of the States of Alabama, Arizona, Connecticut, Maryland, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Virginia, West Virginia, Wisconsin, and the District of Columbia (collectively, "Attorneys General"); the People of the State of California, by and through the District Attorney for Alameda County, the People of the State of Illinois, and the People of the State of Michigan (together with the Attorneys General, "Plaintiff States") make the following initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure:

## I.    Preliminary Statement

    a.  Plaintiff States reserve the right to supplement these disclosures pursuant to the Federal Rules of Civil Procedure and the United States District Court for the Northern District of California Local Rules (the "Local Rules"). The following disclosures are made based on the information reasonably available to Plaintiff States as of the date of this disclosure, and represent Plaintiff States' good faith effort to identify relevant information. Further investigation, research, and analysis may supply additional facts and documents and add meaning to known facts, all of which may in turn lead to additions or changes to this disclosure. Plaintiff States therefore reserve the right to amend and/or supplement these initial disclosures as necessary during the course of discovery. By identifying documents or persons likely to have knowledge of relevant facts, Plaintiff States do not waive any objections they now have or may have to the admissibility of such documents or testimony. Additionally, Plaintiff States do not waive their right to object to the disclosure of any information or documents on any grounds provided in the Federal Rules of Civil Procedure, Federal Rules of Evidence, or the Local Rules, including but not limited to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, rule, or doctrine protecting disclosure.

## II.    Disclosures

    a.  **Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

        i.  Plaintiff States incorporate by reference all individuals identified in the

Federal Trade Commission's ("FTC") and Defendants' initial disclosures.

ii. Plaintiff States will provide contact information for any consumers or individuals on whom they may rely.

**Supplemental Response**: Plaintiff States are in the process of gathering the complaints they received from consumers, which identify the consumers' names and contact information, and will be providing the actual complaints to the Defendants as part of their initial disclosures. These complaints are in addition to consumer complaints submitted to the FTC through its Consumer Sentinel Network, which the FTC has already provided to Defendants, and which also identify the consumers' names and contact information. In addition to complaining consumers, the Plaintiff States identify the following individuals who are likely to have discoverable information:

**Alabama**

In addition to counsel and legal staff, Alabama identifies the following individual:

Crystal Vaughn, Public Protection Specialist
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36104
(334) 242-7300

**Arizona**

Arizona has no additional individuals to disclose in this matter at this time, other than their counsel.

**California**

The People of the State of California currently have no additional individuals to disclose other than their counsel in this matter.

**Connecticut**

Connecticut has no additional individuals to disclose in this matter at this time, other than their counsel.

**District of Columbia**

The District of Columbia has no additional individuals to disclose other than their counsel in this matter.

**Illinois**

Illinois has no additional individuals to disclose other than their counsel in this matter.

**Maryland**

Maryland has no additional individuals to disclose other than their counsel in this matter.

**Michigan**

Michigan has no additional individuals to disclose other than counsel in this matter.

**Minnesota**

Minnesota has no additional individuals to disclose other than their counsel in this matter.

**Missouri**

Missouri has no additional individuals to disclose other than their counsel in this matter.

**Montana**

Montana has no additional individuals to disclose other than their counsel in this matter.

**Nebraska**

Nebraska has no additional individuals to disclose in this matter other than its

counsel at this time.

**New Hampshire**

New Hampshire has no additional individuals to disclose in this matter other than its counsel at this time.

**New Jersey**

New Jersey has no additional individuals to disclose other than their counsel in this matter.

**New York**

In addition to counsel, New York identifies the following individual:

Andy Lugo, Section Chief, Bureau of Consumer Frauds and Protection
Office of the New York State Attorney General
28 Liberty Street, New York, NY 10005
212-416-8350

**North Carolina**

North Carolina has no additional individuals to disclose other than their counsel in this matter.

**Ohio**

Ohio has no additional individuals to disclose other than its counsel in this matter.

**Oklahoma**

Oklahoma has no additional individuals to disclose other than their counsel in this matter.

**Pennsylvania**

In addition to counsel, Pennsylvania identifies the following individuals:

Jessica Nelson, Senior Civil Investigator
Mia Pione, Senior Civil Investigator
Office of the Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA 17120

(717) 497-7159

**Virginia**

Virginia has no additional individuals to disclose other than their counsel in this matter.

**West Virginia**

West Virginia has no additional individuals to disclose other than their counsel in this matter.

**Wisconsin**

Wisconsin has no additional individuals to disclose other than their counsel in this matter.

b. **Provide a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

   i.  Plaintiff States may use the following documents, data compilations, or other electronically stored information to support their claims:

      1. Documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC, including the categories of Uber's produced documents identified in the FTC's initial disclosures.

      2. Documents produced to the FTC and Plaintiff States in future discovery in this litigation.

      3. Documents provided to the Plaintiff States by consumers.

Plaintiff States reserve the right to use any materials produced by any other party or non-party in this or any related action to support their claims.

**Supplemental Response**: Plaintiff States are in the process of gathering the complaints they received from consumers and will be providing the actual complaints to the Defendants as part of their initial disclosures. These complaints are in addition to consumer complaints submitted to the FTC through its Consumer Sentinel Network, which the FTC has already provided to Defendants. The following is a list of the additional documents, electronically stored information, and tangible things that each Plaintiff State has in its possession, custody, or control:

**Alabama**

Alabama has no additional documents beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Arizona**

Arizona has no additional documents beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**California**

The People of the State of California supplement Plaintiffs' initial response by disclosing the People currently have no additional documents beyond the consumer complaints it is producing.

**Connecticut**

Connecticut has no additional documents beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**District of Columbia**

The District of Columbia discloses: (1) the PowerPoint slides of a presentation produced by Uber to the District of Columbia on November 5, 2025, which is currently in Uber's possession, custody, or control; (2) the consumer complaints the District of Columbia is producing; and (3) the documents produced by Uber to the FTC during this investigation and litigation, which are currently in the FTC's possession, custody, or control and which are accessible to the Plaintiff States.

**Illinois**

Illinois has no additional documents beyond the consumer complaints and accompanying correspondence it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Maryland**

Maryland has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Michigan**

Michigan has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during its investigation and this litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Minnesota**

Minnesota has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Missouri**

Missouri has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Montana**

Montana has no additional documents to disclose beyond those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Nebraska**

Nebraska has no additional documents beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**New Hampshire**

New Hampshire has no additional documents to disclose beyond the consumer complaints it is producing; the documents in the FTC's Consumer Sentinel database, which are currently in the possession, custody, or control of the FTC and accessible to the Plaintiff States; and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and accessible to the Plaintiff States.

**New Jersey**

New Jersey has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**New York**

In addition to the consumer complaints New York is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States, New York identifies: (1) slides from a PowerPoint presentation that Uber presented to the Office of the New York Attorney General on December 9, 2025, which is currently within Uber's possession, custody or control and a copy of which is in New York's possession, custody or control; and (2) documents within the Office of the New York Attorney General's possession, custody or control relating to the mediation of consumer complaints about the Uber One service.

**North Carolina**

North Carolina has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Ohio**

Ohio has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Oklahoma**

Oklahoma has no additional documents to disclose beyond those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Pennsylvania**

In addition to the consumer complaints produced and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States, Pennsylvania has screen captures of websites operated by or for Uber.

**Virginia**

Virginia has no additional documents beyond the consumer complaints it is producing and those documents produced by Uber to FTC during the investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**West Virginia**

West Virginia has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

**Wisconsin**

Wisconsin has no additional documents to disclose beyond the consumer complaints it is producing and those documents produced by Uber to the FTC during this investigation and litigation, which are currently in the possession, custody, or control of the FTC and which are accessible to the Plaintiff States.

c. **Provide a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

   i. Plaintiff States seek monetary relief, civil penalties, and other relief authorized by and pursuant to their respective state statutes. At the time of service of these disclosures, Plaintiff States cannot provide a calculation or estimate of this relief, as any such calculation or estimate necessarily will be based on information and data yet to be obtained in discovery.

**Supplemental Response**: In addition to seeking injunctive relief pursuant to § 8405 of the Restore Online Shoppers' Confidence Act, the Plaintiff States have identified the statutory basis for each claim they make for relief in paragraph 121 of the Amended Complaint. For ease of reference, below the Plaintiff States supplement

the information contained therein on a state-by-state basis. The Plaintiff States remain unable to provide Defendants with precise calculations of the amount of monetary relief they are seeking until discovery has progressed further in this matter and they have been provided the necessary data from the Defendants on which they would calculate the amount of restitution and penalties they are seeking in this matter.

**Alabama**

Injunction – The Office of the Alabama Attorney General may seek an injunction against any person who has engaged in, is engaging in, or is about to engage in any violation of Alabama's Deceptive Trade Practices Act. Ala. Code § 8-19-8(a).

Restitution – Section 8-19-8(e) of the Code of Alabama authorizes the court to "grant such other appropriate relief as [it] may determine." This provision permits the court to order restitution to affected consumers. *Nunley v. State,* 628 So. 2d 619, 621 (Ala. 1993). The full amount of restitution that Alabama may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the Deceptive Trade Practices Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Office of the Attorney General may seek penalties of up to $2000 for each violation of Alabama's Deceptive Trade Practices Act. Ala. Code § 8-19-8(b). Alabama may/can seek a civil penalty for each instance in which Defendants either misled a consumer or committed a deceptive practice. At a minimum, Alabama would seek a penalty for each time the Defendants enrolled a consumer

into a subscription service through the use of a deceptive practice. Alabama can also seek a civil penalty for each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by Alabama will be based primarily on discovery obtained from the Defendants.

Fees and Costs – The Office of the Attorney General is entitled to an award for fees and costs "[i]n any successful action or petition brought under" Alabama's Deceptive Trade Practices Act. Ala. Code § 8-19-8(e).

**Arizona**

Injunction – Pursuant to A.R.S. § 44-1528(A)(1) and (A)(4), the Office of the Arizona Attorney General may seek injunctive orders against any person who has engaged in or is engaging in any practice that violates the Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 to -1534.

Restitution – Pursuant to A.R.S. § 44-1528(A)(2), the Office of the Arizona Attorney General may seek an order or judgment requiring such orders or judgments as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any unlawful practice pursuant to the Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 to -1534, including the appointment of a receiver. The Arizona Attorney General's Office may seek restitution on behalf of all Arizona consumers who paid subscription fees

to Defendants for their online subscription services.  The Court is authorized to provide restitution for any money that "may have been acquired" through Defendants' violations of the Arizona Consumer Fraud Act. Computation of the full amount of restitution being sought by the Office of the Arizona Attorney General will be based primarily on discovery obtained from the Defendants.

Disgorgement – To the extent not restored to consumers as restitution pursuant to A.R.S. § 44-1528(A)(2), the Office of the Arizona Attorney General may seek disgorgement of any profits, gain, gross receipts or other benefit obtained by means of any unlawful practice pursuant to the Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 to -1534.  A.R.S. § 44-1528(A)(3).  Upon finding an unlawful practice, the court may award disgorgement of all gross receipts acquired by the unlawful practice without regard for any value actually conveyed.  Computation of the full amount of disgorgement being sought by the Office of the Arizona Attorney General will be based primarily on discovery obtained from the Defendants.

Penalties – Pursuant to A.R.S. § 44-1531, the Office of the Arizona Attorney General may seek civil penalties of up to $10,000 per violation for each willful violation of A.R.S. § 44-1522.  A willful violation occurs when the party committing the violation knew or should have known that his conduct was of the nature prohibited by A.R.S. § 44-1522. The Office of the Arizona Attorney General may seek a civil penalty for each instance in which Defendants made a false statement or committed an unfair or deceptive practice.  At a minimum, the Office of the Arizona Attorney General can seek a civil penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive or unfair practice.  The Office of the Arizona Attorney General can also

seek a civil penalty for each time Defendants made an unfair or deceptive statement about their subscription services, including a statement about: (a) a consumer's ability to cancel the Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. Computation of the full amount of civil penalties being sought by the Office of the Arizona Attorney General will be based primarily on discovery obtained from the Defendants.

Fees and Costs – In any action brought pursuant to the Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 to -1534, the Office of the Arizona Attorney General is entitled to recover costs, which in the discretion of the court may include a sum representing reasonable attorney's fees for the services rendered, for the use of the state. A.R.S. § 44-1534.

**California**

Injunctive Relief – the People of the State of California may seek to enjoin any person who engages, has engaged, or proposes to engage in unfair competition. (California Business and Professions Code §17203.) Any person who violates or proposes to violate California Business and Professions Code §17500 may be enjoined. (California Business and Professions Code §17535.) An injunction may issue even if Defendant(s) have voluntarily discontinued the offending conduct. Injunctive relief may be prohibitory and/or mandatory.

Restitution – Restitution may be ordered as necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of unfair competition or false advertising. (California Business and Professions Code §§17203 and 17535.) The People of that State of California will

be seeking disgorgement of all fees collected by Defendant as a result of any violations of law alleged in the Amended Complaint and proven at trial including fees collected as a result of untrue or misleading statements made or disseminated to the public in the State of California or made or disseminated from the State of California to the public in any state.

Civil Penalties – Civil Penalties up to $2,500 must be ordered for each violation of the Unfair Competition Law and the False Advertising Law. (California Business and Professions Code §§17206 and 17536.) Civil Penalties under §§17206 and 17536 are cumulative to each other. (California Business and Professions Code §§17205 and 17534.5.) Violations include any untrue or misleading statements made or disseminated to the public in the State of California or made or disseminated from the State of California to the public in any state. Courts have broad discretion to determine what constitutes a violation for the purpose of ordering civil penalties including the number of victims, the number of separate individual acts or practices, and the number of days the defendant engaged in such acts or practices constituting unfair competition and/or false advertising.

**Connecticut**

Injunction – The Connecticut Attorney General is authorized to seek an order temporarily or permanently restraining and enjoining the continuance of any violation of any provision of the Connecticut Unfair Trade Practices Act. Conn. Gen. Stat. § 42-110m (a). An injunction may issue even in the absence of consumer harm. Injunctive relief may be prohibitory and/or mandatory.

Restitution – Similarly, the Connecticut Attorney General is authorized to seek an order directing restitution. Conn. Gen Stat. § 42-110m (a). Connecticut will further

seek disgorgement of all sums collected by Defendant as a result of any violations of law alleged in the Amended Complaint and proven at trial including fees collected as a result of untrue or misleading statements made or disseminated to Connecticut consumers or made or disseminated from Connecticut to the public in any state.

Attorney's Fees, Costs, and Other Relief – Pursuant to Conn. Gen. Stat. § 42-100m, "[t]he court may award the relief applied for or so much as it may deem proper including reasonable attorney's fees, accounting and such other relief as may be granted in equity."

Penalties – The Attorney General may recover civil penalties pursuant to Conn. Gen. Stat. 42-110o (b), which provides, in relevant part, "[i]n any action brought under section 42-110m, if the court finds that a person is wilfully using or has wilfully used a method, act or practice prohibited by section 42-110b, the Attorney General, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than five thousand dollars for each violation. For purposes of this subsection, a wilful violation occurs when: (1) The party committing the violation knew or should have known that his conduct was a violation of section 42-110b …." Connecticut may seek a civil penalty for each unfair or deceptive act or practice. At a minimum, Connecticut may seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of an unfair or deceptive act or practice. Connecticut can also seek a civil penalty for each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save

by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Connecticut may also seek a penalty for each time the Defendants published an unfair or deceptive advertisement to Connecticut consumers regarding its subscription services. Computation of the full amount of civil penalties being sought by Connecticut will be based primarily on discovery obtained from the Defendants.

**District of Columbia**

Injunction – If the Office of the Attorney General for the District of Columbia "has reason to believe that any person is using or intends to use any method, act, or practice" in violation of the D.C. Consumer Protection Procedures Act, it may seek a temporary or permanent injunction to prohibit the use of the method, act, or practice and require the violator to take affirmative action. D.C. Code § 28-3909(a).

Restitution – The Office of the Attorney General for the District of Columbia may generally seek restitution of money or property for violations of the D.C. Consumer Protection Procedures Act. D.C. Code § 28-3909(a). The full amount of restitution that the District of Columbia may seek in this case is the total amount of subscription fees paid by District consumers to Defendants for their online subscription services where those fees were paid as a result of Defendants' violations of the D.C. Consumer Protection Procedures Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Office of the Attorney General for the District of Columbia may seek penalties of up to $5,000 for each first violation of the D.C. Consumer

Protection Procedures Act. D.C. Code § 28-3909(b)(1). At a minimum, the District of Columbia would seek a penalty for each time Defendants enrolled a consumer into their subscription service through the use of a deceptive or unfair practice, in violation of the D.C. Consumer Protection Procedures Act. The District of Columbia may also seek a civil penalty for each time a consumer was misled or injured when the Defendants made an unfair or deceptive statement: (a) regarding the consumer's ability to cancel Defendants' subscription services; (b) about the date on which the consumer would be billed or charged; (c) about the amount the consumer would save by enrolling in Defendants' subscription services; (d) regarding the benefits of Defendants' subscription services; and (e) regarding the consumer's authorization of charges for Defendants' subscription services. Computation of the full amount of the penalties sought by the District of Columbia will be based primarily on discovery obtained from the Defendants.

Costs – The Office of the Attorney General for the District of Columbia may, in any action to enforce the D.C. Consumer Protection Procedures Act, recover the costs of that action, including any reasonable attorneys' fees. D.C. Code § 28-3909(b)(4).

**Illinois**

Injunction – The People of the State of Illinois may seek an injunction to restrain any person found to have used, is currently using, or is about to use any method, act or practice declared to be unlawful under the Illinois Consumer Fraud Act from engaging in the use of such method, act, or practice. 815 ILCS 505/7(a).

Restitution – Section 7 of the Illinois Consumer Fraud Act authorizes the People of the State of Illinois to seek restitution. 815 ILCS 505/7(a). The full amount of restitution that Illinois may seek for affected consumers in this case is the total

amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the Consumer Fraud Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The People of the State of Illinois may seek civil penalties up to $50,000 against any person found to have engaged in any method, act, or practice declared under the Illinois Consumer Fraud Act to be unlawful. 815 ILCS 505/7(b). Additionally, if the Court finds that the method, act, or practice was entered into with intent to defraud, then the Court has the authority to impose a civil penalty of up to $50,000 per violation.

Costs – The People of the State of Illinois are entitled to recover costs for actions brought under Section 7 of the Illinois Consumer Fraud Act. 815 ILCS 505/10.

**Maryland**

Injunction – The Office of the Maryland Attorney General may seek an injunction prohibiting a person who is engaged or engaging in a violation of the Maryland Consumer Protection Act from continuing or engaging in the violation. Md. Code Ann., Com. Law § 13-406.

Restitution – Restitution under Maryland law is an amount that may be disgorged from a wrongdoer. *Cons. Prot. Div. v. Cons. Publ'g Co., Inc.*, 304 Md. 731, 776 (1985). The Office of the Maryland Attorney General may generally order a party to disgorge restitution pursuant to Md. Code Ann., Com. Law § 13-406(c)(2). The full amount of restitution that Maryland may seek to disgorge in this case is the total amount of subscription fees paid by consumers to the Defendants for their online subscription services. Computation of the full amount of this restitution will be

based primarily on discovery obtained from the Defendants.

Penalties – The Office of the Maryland Attorney General may seek penalties of up to $10,000 for each violation of the Consumer Protection Act pursuant to Md. Code Ann., Com. Law § 13-410. Maryland can seek a civil penalty for each instance in which Defendants either misled a consumer or committed an unfair practice. At a minimum, Maryland would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive or unfair practice. Maryland can also seek a civil penalty for each time a consumer was misled or injured when the Defendants made an unfair or deceptive statement about their subscription services, including a statement about: (a) a consumer's ability to cancel the Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. Computation of the full amount of the penalties sought by Maryland will be based primarily on discovery obtained from the Defendants and upon the factors supplied § 13-410.

Costs – The Office of the Maryland Attorney General may in any action to enforce the Consumer Protection Act recover the costs of that action, including the salaries of its employees, pursuant to Md. Code Ann., Com. Law § 13-409.

**Michigan**

Injunction – The Michigan Attorney General may seek an injunction against a person that has engaged, is engaging, or is about to engage in a method, act, or practice that is unlawful under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.905.

Restitution – The Michigan Attorney General may seek reimbursement for people

who have suffered damages and other appropriate relief pursuant to the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.910.  The full amount that the Michigan Attorney General may seek to recover in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the Michigan Consumer Protection Act.  Computation of this amount will be based primarily on discovery obtained from Defendants.  The Michigan Attorney General may seek to recover $250 for affected consumers if it is greater than actual damages.  Mich. Comp. Laws § 445.911(2).

Penalties – The Michigan Attorney General may seek penalties up to $25,000 for persistent and knowing violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.905.  Michigan may seek a civil penalty for each instance in which Defendants persistently and knowingly committed an act or practice unlawful under the Michigan Consumer Protection Act, including each time Defendants enrolled a consumer into a subscription service through the use of an unlawful act or practice.  This may include making misrepresentations (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by the Michigan Attorney General will be based primarily on discovery obtained from the Defendants.

Costs – The Michigan Attorney General may be awarded costs pursuant to the

Michigan Consumer Protection Act, Mich. Comp. Laws § 445.905.

**Minnesota**

Injunction – Pursuant to Minnesota Statues, sections 8.31, subd. 3, 325D.45, subdivision 1, and 325F.70, subdivision 1, the Office of the Minnesota Attorney General may seek and obtain an injunction against any violation or threatened violation of Minnesota law, including violations of Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44, *et seq.* and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.69, *et seq.*

Restitution – The Minnesota Attorney General is empowered by statute and common law to seek and obtain restitution, including equitable restitution reflecting an amount necessary to divest money improperly gained at the expense of another, in connection with violations of Minnesota law. *See* Minn. Stat. § 8.31, subd. 3a; *State v. Minnesota Sch. of Bus., Inc.*, 935 N.W.2d 124, 138–39 (Minn. 2019); *State by Humphrey v. Alpine Air Products, Inc.*, 490 N.W.2d 888, 896 (Minn. Ct. App. 1992), *aff'd* 500 N.W.2d 788 (Minn. 1993). The full amount of restitution that Minnesota may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the Deceptive Trade Practices Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Office of the Minnesota Attorney General may seek penalties of up to $25,000 for each violation of the Minnesota law. *See* Minn. Stat. § 8.31, subd. 3; *see also Alpine Air Prods., Inc.*, 490 N.W.2d at 896-97. Factors considered in awarding civil penalties include defendants' good or bad faith, public injury,

defendants' ability to pay, and desire to eliminate benefits derived from violations. *Id.* Minnesota may seek a civil penalty for each instance in which Defendants either misled a consumer or committed a deceptive or unfair practice. At a minimum, Minnesota would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive or unfair practice. Minnesota can also seek a civil penalty for each time a consumer was misled or injured when the Defendants made an unfair or deceptive statement about their subscription services, including a statement:  (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by Minnesota will be based primarily on discovery obtained from the Defendants.

Costs – The Office of the Minnesota Attorney General may recover the costs and disbursements, including the costs of investigations and reasonable attorney's fees in connection with its enforcement of Minnesota law.   *See* Minn. Stat. § 8.31, subd. 3a.

**Missouri**

Injunction – The Office of the Missouri Attorney General may seek an injunction against any person who has engaged in, is engaging in, or is about to engage in any violation of the Missouri Merchandising Practices Act.  Mo. Rev. Stat. §407.100.3

Restitution – Missouri Revised Statutes Section 407.100.4 authorizes the court "to

enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss…." Mo. Rev. Stat. §407.100.4. Furthermore, pursuant to §407.140.3, the defendant is required to pay 10% of the amount of total restitution paid by defendant to the State of Missouri. Mo. Rev. Stat. §407.140.3. Missouri will seek restitution in the full amount of subscription fees paid by consumers to the Defendants for their subscription services. Computation of the full amount of this restitution will be based primarily on discovery obtained from the Defendants.

Penalties – Missouri Revised Statutes Section 407.100.6 authorizes the court to "award to the state a civil penalty of not more than one thousand dollars per violation…." Mo. Rev. Stat. §407.100.6. Missouri can seek a civil penalty for each time Defendants committed an unfair practice, which includes deceptive practices and misleading statements. At a minimum, Missouri would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive or unfair practice. In addition, Missouri can also seek a penalty for each time a consumer was misled when Defendants made an unfair or deceptive statement about their subscription services, including statements about: (a) the ability to cancel the Defendants' subscription service, (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. In order to compute the exact amount, Missouri will need to review discovery yet to be produced by Defendants.

Fees and Costs – Missouri Revised Statutes Section 407.130 entitles the attorney general to "recover as costs, in addition to normal court costs, the cost of the investigation and prosecution of any action to enforce the provisions of this

chapter." Mo. Rev. Stat. §407.130.

Interest – In addition to the above articulated damages, the state of Missouri may recover pre and post judgment interest.  Mo. Rev. Stat. §408.040.

**Montana**

Injunction – The *Montana Unfair Trade Practices and Consumer Protection Act* of 1973 ("MCPA"), MCA § 30-14-101, et. seq., authorizes the Montana Attorney General to bring an action in the name of the State to restrain, by temporary or permanent injunction, unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce declared unlawful. The Montana Attorney General may seek an injunction when there is  "reason to believe that a person is using, has used, or is about to knowingly use any method, act, or practice declared … unlawful."  MCA § 30-14-111

Restitution – The Montana Attorney General is authorized to receive or recover settlement proceeds, and amounts awarded in judgment at the discretion of the court. MCA §30-14-143. The full amount of restitution that Montana may seek to recover in this case is, at minimum, the total amount of subscription fees paid by consumers to the Defendant in exchange for online subscription services. Montana anticipates it will not be able to accurately assess the extent of damages until sufficient information is obtained from Defendants. Therefore, a computation cannot be provided until discovery is complete.

Penalties – The Montana Attorney General may seek penalties of not more than $10,000 for each violation of the MCPA. MCA § 30-14-142(2). Montana may/can seek a civil penalty for each instance in which Defendants either misled a consumer or committed a deceptive practice. At a minimum, Montana would seek a penalty

for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive practice. Montana can also seek a civil penalty for each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by Montana will be based primarily on discovery obtained from the Defendants.

Fees and Costs – The Montana Attorney General is entitled to an award for fees and costs, including attorney's fees pursuant to MCA § 30-14-133 of the MCPA.

**Nebraska**

Injunction – Under Neb. Rev. Stat. § 87-303.05(1), the Attorney General is entitled to obtain a permanent injunction whenever "the Attorney General has cause to believe that a person has engaged in or is engaging in any" deceptive trade practice under section 87-302 or 87-303.01 of the Nebraska Uniform Deceptive Trade Practices Act (NE UDTPA).

Restitution – The NE UDTPA expressly authorizes the court to "make such orders or judgments as . . . may be necessary to restore to any other person any money or real or personal property which may have been acquired by means of" a deceptive trade practice. Neb. Rev. Stat. § 87-303.05(1). The full amount of restitution that Nebraska may seek to disgorge in this case is the total amount of subscription fees paid by consumers to the Defendants for their online subscription services.

Plaintiff States' Rule 26(a)(1)
Supplemental Initial Disclosures
Case No. 4:25-cv-03477-JST

Computation of the full amount of this restitution will be based primarily on discovery obtained from the Defendants.

Penalties – Any person who violates section 87-302 of the NE UDTPA "shall be subject to a civil penalty of not more than two thousand dollars for each violation." Neb. Rev. Stat. § 87-303.11(1). The Attorney General, acting in the name of the State of Nebraska, "may seek recovery of such civil penalties in a civil action." Id. Nebraska can seek a civil penalty for each instance in which Defendants committed an unfair trade practice under NE UDTPA. At a minimum, Nebraska would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive trade practice. Nebraska can also seek a civil penalty for each time Defendants made a deceptive statement about their subscription services, including a statement about: (a) a consumer's ability to cancel the Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. Computation of the full amount of the penalties sought by Nebraska will be based primarily on discovery obtained from the Defendants.

Fees and Costs – Under the NE UDTPA, "costs shall be allowed to the prevailing party unless the court otherwise directs." Neb. Rev. Stat. § 87-303(b). The court may also award attorneys' fees if "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Id.

**New Hampshire**

Injunction – Whenever the New Hampshire Attorney General has reason to believe that a person has engaged or is engaging in a violation of the New Hampshire Consumer Protection Act, the Attorney General may seek to restrain such conduct

by temporary or permanent injunction. N.H. Rev. Stat. Ann. 358-A:4, III(a).

Restitution – Likewise, whenever the Attorney General has reason to believe that a person has engaged or is engaging in a violation of the New Hampshire Consumer Protection Act, the Attorney General may petition the court for an order of restitution of money or property to any person or class of persons injured thereby. N.H. Rev. Stat. Ann. 358-A:4, III(a). In this case, that may include disgorgement of all fees collected by Defendants as a result of any violation of law alleged in the Amended Complaint and proven at trial, including fees collected as a result of untrue or misleading statements made or disseminated to those in New Hampshire or obtained as a result of an unfair or deceptive practice, such as by enrolling a consumer in a subscription without valid consent, charging a consumer without authorization (e.g., charging the consumer prior to a stated billing date), or frustrating a consumer's ability to cancel a subscription.  Computation of the full amount of restitution will be based on discovery obtained from Defendants.

Penalties – The Attorney General may seek civil penalties of up to $10,000 for each violation of the New Hampshire Consumer Protection Act. N.H. Rev. Stat. Ann. 358-A:4, III(b). In this case, that may include seeking a penalty for each instance when Defendants enrolled a consumer into, or prevented cancellation of, a subscription service through the use of a deceptive or unfair practice.  New Hampshire may also seek a civil penalty for each unfair or deceptive statement made by Defendants' or at Defendants' direction concerning Defendants' subscription services, including a statement about: (a) a consumer's ability to cancel Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge a consumer.  Computation

of the full amount of the penalties sought by New Hampshire will be based on discovery obtained from the Defendants.

Costs – The Attorney General may seek to recover all legal costs and expenses, including attorney's fees, of an action to enforce the New Hampshire Consumer Protection Act. N.H. Rev. Stat. Ann. 358-A:6, IV.

**New Jersey**

Injunction – "Whenever it shall appear to the Attorney General that a person has engaged in, is engaging in or is about to engage in any practice declared to be unlawful by [the NJCFA] he may seek and obtain . . . an injunction prohibiting such person from continuing such practices or engaging therein or doing any acts in furtherance thereof." N.J. Stat. Ann. § 56:8-8.

Restitution – The court may "make such orders or judgments . . . which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice herein declared to be unlawful." N.J. Stat. Ann. § 56:8-8. The full amount of restitution that New Jersey may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the NJCFA. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – Any person who violates the NJCFA shall, in addition to any other penalty provided by law, be liable to a penalty of not more than $10,000 for the first offense and not more than $20,000 for the second and each subsequent offense. N.J. Stat. Ann. § 56:8-13. New Jersey may/can seek a civil penalty for each instance in

which Defendants committed an unlawful practice. At a minimum, New Jersey would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive practice. New Jersey can also seek a civil penalty for each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Under N. J. Stat. Ann. § 56:8-4(b), New Jersey can seek a civil penalty for each violation of Section 5 of the FTC Act. Computation of the full amount of civil penalties being sought by New Jersey will be based primarily on discovery obtained from the Defendants.

Fees and Costs – The Attorney General is entitled to recover investigative costs for an NJCFA action. N.J. Stat. Ann. § 56:8-11.  Additionally, "In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J. Stat. Ann. § 56:8-19.

**New York**

Injunction – the New York State Attorney General may seek an injunction against any person who has engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting or transaction of business. N.Y. Exec. Law § 63(12). N.Y. Gen. Bus. Law §§ 349(b) provides that the New York State Attorney General may seek an injunction against any person that has engaged in or is about to engage in deceptive acts or practices

or false advertising pursuant to N.Y. Gen. Bus. Law §§ 349 and 350.

Restitution – N.Y. Exec. Law § 63(12) authorizes the court to grant restitution and damages arising from repeated fraudulent or illegal acts or demonstrated persistent fraud or illegality in the carrying on, conducting or transaction of business. N.Y. Gen. Bus. Law § 349(b) also authorizes the court to grant restitution of any moneys or property obtained directly or indirectly by deceptive acts or practices or false advertising. The full amount of restitution that New York may seek to disgorge in this case is the total amount of subscription fees paid by consumers to the Defendants for their online subscription services where those fees were paid as the result of Defendants' violations of N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law §§ 349 and 350, and any other laws for which restitution to New York is applicable. Computation of the full amount of this restitution will be based primarily on discovery obtained from the Defendants.

Penalties – The New York State Attorney General may seek penalties pursuant to N.Y. Gen. Bus. Law § 350-d of up to five thousand dollars for each violation of N.Y. Gen. Bus. Law §§ 349 and 350. At a minimum, New York would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive practice or false advertising. New York can also seek a civil penalty for each time a consumer was misled or injured when the Defendants made a deceptive statement about, or falsely advertised, their subscription services, including a statement or advertisement about: (a) a consumer's ability to cancel the Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. Computation of the full amount of the penalties sought by

New York will be based primarily on discovery obtained from the Defendants.

Disgorgement – The New York State Attorney General is entitled to seek disgorgement as a remedy under N.Y. Exec. Law § 63(12). *See, e.g.*, *People v. Greenberg*, 27 N.Y.3d 490, 497 (2016).

Additional monetary award – The New York State Attorney General is entitled to seek from the court an additional award of up to $2,000 per defendant pursuant to N.Y. C.P.L.R. 8303-a(6).

**North Carolina**

Costs – The Attorney General of the State or North Carolina may seek to recover its costs, including a reasonable attorneys' fee, incurred by the investigation and litigation of a violation of the North Carolina's Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1 *et seq.* N.C.G.S. § 16.1.

Injunction – The Attorney General of the State of North Carolina may seek an injunction to enjoin a practice alleged to be violative of North Carolina's Unfair or Deceptive Trade Practices Act. N.C.G.S. § 75-15.1.

Restitution – The Attorney General of the State of North Carolina may seek restitution of any moneys obtained by any defendant as a result of a violation of North Carolina's Unfair or Deceptive Trade Practices Act. N.C.G.S. § 75-15.1. The full amount of restitution that North Carolina may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violation of North Carolina's Unfair or Deceptive Trade Practices Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Attorney General of the State of North Carolina may seek civil penalties of up to $5,000 for each knowing violation of North Carolina's Unfair or Deceptive Trade Practices Act. N.C.G.S. § 75-15.2. At a minimum, North Carolina would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of an unfair or deceptive practice. North Carolina can also seek a civil penalty each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by North Carolina will be based primarily on discovery obtained from the Defendants.

Other Relief – The Attorney General of the State of North Carolina may seek disgorgement of ill-gotten monies or reformation or recission of any contracts obtained by any defendant as a result of a violation of North Carolina's Unfair or Deceptive Trade Practices Act. N.C.G.S. § 75-15.1.

**Ohio**

Injunction – The Ohio Attorney General's office may seek an injunction against a supplier who has violated or is violating the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01, *et seq*, and from further violating the CSPA, R.C. 1345.01, *et seq*. and its Substantive Rules, Ohio Adm. Code 109:4-3-01, *et seq*.

Restitution – The CSPA allows for the Ohio Attorney General's office to seek "to reimburse consumers found to have been damaged" by Defendants' conduct as set

out in the Amended Complaint, R.C. 1345.07(B). The full amount of restitution that Ohio may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the CSPA. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Office of the Ohio Attorney General may seek penalties of up to $25,000 for each separate and appropriate violation of the CSPA, R.C. 1347.07(D). Ohio can seek a civil penalty for each instance in which Defendants either misled a consumer or committed an unfair or deceptive practice. At a minimum, Ohio would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of an unfair or deceptive practice. Ohio can also seek a civil penalty for each time Defendants misled a consumer: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, and (d) regarding specific benefits of Defendants' subscription services. Computation of the full amount of civil penalties being sought by Ohio will be based primarily on discovery obtained from the Defendants.

Fees and Costs – The Office of the Ohio Attorney General is entitled to a reward for fees and costs as other appropriate relief under the CSPA. R.C. 1347.07(B).

**Oklahoma**

Injunction – The Oklahoma Attorney General may seek an injunction prohibiting a person who has violated, is violating, or is likely to violate the Oklahoma Consumer

Protection Act. Okla. Stat. tit. 15, § 756.1(A)(2). The Oklahoma Consumer Protection Act further authorizes additional orders or judgments necessary to prevent the use or employment of unlawful practices, including appointment of a receiver or sequestration of assets to prevent the use or enjoyment of proceeds derived through illegal means and the disgorgement of proceeds derived through illegal means. Okla. Stat. tit. 15, §§ 756.1(C)(1), (C)(4).

Restitution – The Oklahoma Attorney General may seek relief to compensate persons for damages sustained as a result of unlawful practices. Okla. Stat. tit. 15, § 756.1(C)(2). The Oklahoma Consumer Protection Act further authorizes additional orders or judgments necessary to prevent the use or employment of unlawful practices, including appointment of a receiver or sequestration of assets to prevent the use or enjoyment of proceeds derived through illegal means. Okla. Stat. tit. 15, §§ 756.1(C)(1), (C)(4). The full amount of restitution that Oklahoma may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to the Defendants for their online subscription services. Computation of the full amount of this restitution will be based primarily on discovery obtained from the Defendants.

Penalties – The Oklahoma Attorney General may seek penalties as provided by the Oklahoma Consumer Protection Act of not more than $10,000 per violation, in addition to other penalties that may be imposed. Okla. Stat. tit. 15, § 761.1(C). Oklahoma may/can seek a civil penalty for each instance in which Defendants made a false or misleading claims or engaged in unfair or deceptive trade practices. At a minimum, Oklahoma would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of an unfair or deceptive

practice. Oklahoma can also seek a civil penalty for each time Defendants misled a consumer or made a false representation: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits characteristics, or uses of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by Oklahoma will be based primarily on discovery obtained from the Defendants.

Costs and Fees – The Oklahoma Attorney General may seek recovery of reasonable expenses and investigation fees and may also seek reasonable expenses and attorney's fees as determined by the court. 15 O.S. §§ 756.1(A)(4), 761.1(D).

**Pennsylvania**

Injunction – The *Pennsylvania Unfair Trade Practices and Consumer Protection Law*, 73 P.S. §§ 201-1 through 201-9.2 ("PA- UTPCPL") authorizes the Pennsylvania Office of Attorney General to bring an action in the name of the Commonwealth to restrain, by temporary or permanent injunction, unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce declared unlawful. See 73 P.S. § 201-4.

Restitution – Section 73 P.S. § 201-4 of the PA- UTPCPL provides that, "whenever any court issues a permanent injunction to retrain and prevent violations of [the PA-UTPCPL] … the court may in its discretion direct that the defendant or defendants restore to any person in interest any moneys … which may have been acquired by means of any violation of this act… ." The full amount of restitution that

Pennsylvania may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the PA-UTPCPL. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – Section 201-8(b) of the PA- UTPCPL authorizes the Attorney General to collect civil penalties in the amount of $1,000.00 for each instance of a past or present violation of the PA- UTPCPL, and $3,000.00 for each instance involving consumers age sixty (60) years of age or older. The PA- UTPCPL authorizes the imposition of a penalty for each instance in which Defendants used unfair methods of competition or unfair or deceptive acts or practices as defined by Section 201-2(4). At a minimum, this would include a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of a deceptive act or practice: (a) regarding their ability to cancel Defendants' subscription services, (b) about the specific date on which the consumer would be billed or charged, (c) about a specific amount they would save by enrolling in Defendants' subscription services, (d) regarding specific benefits of Defendants' subscription services, and (e) regarding their authorization of charges for Defendants' subscription services. Computation of the full amount of civil penalties being sought by Pennsylvania will be based primarily on discovery obtained from the Defendants.

Fees and Costs – The Pennsylvania Office of the Attorney General is entitled to an award for fees and costs pursuant to 72 P.S. § 1602-U which states, "a court may in its discretion direct that a defendant or defendants reimburse the Commonwealth for its costs of an investigation and litigation, including attorney fees, under the Unfair

Trade Practices and Consumer Protection Law." 72 P.S. § 1602-U.

**Virginia**

Virginia only brings federal claims pursuant to the federal Restore Online Shoppers' Confidence Act ("ROSCA") and presently only seeks injunctive relief pursuant to § 8405 of ROSCA.

**West Virginia**

Injunction – The Office of the West Virginia Attorney General may seek an injunction against any person to restrain a person from violating West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-7-108.

Restitution, Fees – W. Va. Code § 46A-7-108 authorizes the West Virginia Attorney General to seek "other appropriate relief." Such relief may include consumer refunds, disgorgement of ill-gotten gains, debt cancellation, and other measures necessary to secure complete justice, including reimbursement of attorney's fees. *See CashCall, Inc., et al v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *19 (W.Va. Supreme Court, May 30, 2014) (memorandum decision) (award of $446,180 in attorney's fees to the State unanimously affirmed). The full amount of restitution that West Virginia may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the West Virginia Consumer Credit and Protection Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – The Office of the West Virginia Attorney General may seek penalties of up to $5,000.00 for each violation of the West Virginia Consumer Credit and

Protection Act, W. Va. Code § 46A-7-111(2) "if the court finds that the defendant has engaged in a course of repeated and willful violations of this chapter." The term "willful" means "conduct that was intentionally engaged in [as opposed to involuntarily] that had as its consequences the violation of law." *State v. Saunders*, 638 S.E.2d 173,174 (W. Va. 2006). West Virginia can seek a civil penalty for each instance in which Defendants either misled a consumer or committed an unfair or deceptive act or practice. At a minimum, West Virginia would seek a penalty for each time the Defendants enrolled a consumer into a subscription service through the use of an unfair or deceptive act or practice. West Virginia can also seek a civil penalty for each time a consumer was misled or injured when the Defendants made an unfair or deceptive statement about their subscription services, including a statement about: (a) a consumer's ability to cancel the Defendants' subscription service (b) a billing date, (c) monthly savings, (d) the benefits of a subscription, and (e) authorization to charge the consumer. Computation of the full amount of the penalties sought by West Virginia will be based primarily on discovery obtained from the Defendants.

**Wisconsin**

Injunction – The Wisconsin Department of Justice may seek a temporary or permanent injunction against any violation of Wisconsin's Deceptive Trade Practices Act. Wis. Stat. § 100.18(11)(d).

Restitution – The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action for a violation of Wisconsin's Deceptive Trade Practices Act. Wis. Stat. § 100.18(11)(d).

The full amount of restitution that Wisconsin may seek for affected consumers in this case is the total amount of subscription fees paid by consumers to Defendants for their online subscription services, where those fees were paid as a result of Defendants' violations of the Deceptive Trade Practices Act. Computation of the full amount of this restitution will be based primarily on discovery obtained from Defendants.

Penalties – Each violation of Wisconsin's Deceptive Trade Practices act is subject to a civil forfeiture of not less than $50 nor more than $200. Wis. Stat. § 100.26(4). Wisconsin can seek a civil forfeiture for each instance in which Defendants made, published, disseminated, circulated, or placed before the public in Wisconsin, a false, deceptive, and/or misleading representation. Examples of misrepresentations alleged in the Amended Complaint include, but are not limited to: (a) the ability to cancel Defendants' subscription services, (b) the specific date on which the consumer would be billed or charged, (c) a specific amount potential customers would save by enrolling in Defendants' subscription services, (d) specific benefits of Defendants' subscription services, and (e) the authorization of charges for Defendants' subscription services. Computation of the full amount of civil forfeitures being sought by Wisconsin will be based primarily on discovery obtained from the Defendants.

Fees and Costs – Additional surcharges and fees are added to the total forfeiture including those imposed by Wis. Stat. §§ 100.261, 100.264, 165.755, 302.46(1), 757.05, 814.04, 814.63(1)(b), 814.85(1)(a), and 814.86(1), as well as costs and fees associated with the investigation and prosecution pursuant to Wis. Stat. §§ 93.20 and 100.263.

**d. Provide for inspection and copying as under Rule 34 any insurance agreement under which an insurance business may be liable to satisfy all or part of a judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

    i. Plaintiff States are not aware of any such insurance agreement.

Dated: April 1, 2026

OFFICE OF THE ATTORNEY GENERAL
OF MARYLAND, CONSUMER
PROTECTION DIVISION

*/s/ Philip Ziperman*
Philip Ziperman (MD Bar No.: 9012190379)*
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
pziperman@oag.maryland.gov
(410) 576-6417

Luke Riley (MD Bar No.: 2502271005)*
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
lriley@oag.maryland.gov
(410) 576-6568

*Attorneys for Plaintiff*
*Office of the Maryland Attorney General,*
*Consumer Protection Division*

STEVE MARSHALL
*ATTORNEY GENERAL*

By:

*/s/ Michael G. Dean*

Michael G. Dean*
*Assistant Attorney General*

*/s/ Lindsay D. Barton*

Lindsay D. Barton*
*Assistant Attorney General*

Office of the Attorney General
Consumer Interest Division
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
(334) 242-7300
Michael.Dean@AlabamaAG.gov
Lindsay.Barton@AlabamaAG.gov

*Attorneys for Plaintiff*
*Attorney General of Alabama*

**KRISTIN K. MAYES**
**Attorney General of Arizona**

*/s/ Alyse Meislik*

Alyse Meislik, AZ Bar No. 024052*
Assistant Attorney General
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3702
Fax: (602) 542-4377
Email:  consumer@azag.gov
Alyse.Meislik@azag.gov

*Attorney for Plaintiff*
*Arizona Attorney General*

URSULA JONES DICKSON
District Attorney of Alameda County

/s/ Andres H. Perez

ANDRES H. PEREZ (SBN 186219)
Assistant District Attorney
HUY T. LUONG (SBN 251507)
Deputy District Attorney
Consumer, Environmental & Worker
Protection Division
7677 Oakport Street, Suite 650
Oakland, CA 94621
Telephone (510) 383-8600
Email: andres.perez@acgov.org
        huy.luong@acgov.org

*Attorneys for Plaintiff*
*People of the State of California*

STATE OF CONNECTICUT

WILLIAM TONG

ATTORNEY GENERAL OF THE STATE
OF CONNECTICUT

/s/ Brendan T. Flynn

Brendan T. Flynn*
Fed. Bar No. ct04545
Assistant Attorney General
Office of the Attorney General of the
State of Connecticut
165 Capitol Ave.
Hartford, CT  06106
Tel: 860-808-5400
Fax: 860-808-5593
Brendan.Flynn@ct.gov

*Attorney for Plaintiff*
*Attorney General of the State of Connecticut*

Plaintiff States' Rule 26(a)(1)
Supplemental Initial Disclosures
Case No. 4:25-cv-03477-JST

BRIAN L. SCHWALB
Attorney General for the District of Columbia

*/s/ Coty Montag*

COTY MONTAG [CA BAR #255703]
Deputy Attorney General, Public Advocacy
Division
Coty.Montag@dc.gov

BETH MELLEN
WILLIAM STEPHENS
Assistant Deputy Attorneys General, Public
Advocacy Division

KEVIN VERMILLION
Director, Office of Consumer Protection

EMILY HOLNESS
Deputy Director, Office of Consumer
Protection

BRITTANY NYOVANIE
Assistant Attorney General, Office of
Consumer Protection

Office of the Attorney General
for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Tel: (202) 702-5686
Email: Brittany.Nyovanie@dc.gov

*Attorneys for Plaintiff*
*District of Columbia*

PEOPLE OF THE STATE OF ILLINOIS

/s/ Hal B. Dworkin
HAL B. DWORKIN, IL Bar No. 6318213*
Senior Assistant Attorney General
Office of the Illinois Attorney General
Consumer Protection Division
Consumer Fraud Bureau
115 South LaSalle Street
Chicago, IL 60603
(312) 814-5159
Hal.Dworkin@ilag.gov

*Attorney for Plaintiff*
*The People of the State of Illinois*


FOR PLAINTIFF THE PEOPLE OF THE
STATE OF MICHIGAN:

/s/ Aaron W. Levin
AARON W. LEVIN*
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
525 W. Ottawa Street
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
Fax: (517) 335-6755
levina@michigan.gov

*Attorney for Plaintiff*
*The People of the State of Michigan*

KEITH ELLISON
Attorney General of Minnesota

*/s/ Daniel Rife*

DANIEL RIFE*
SARAH DOKTORI*
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
Daniel.Rife@ag.state.mn.us
Telephone: (651) 757-1104
Sarah.Doktori@ag.state.mn.us
Telephone: (651) 583-6694

*Attorneys for Plaintiff*
*State of Minnesota by its Attorney General*
*Keith Ellison*

Catherine Hanaway
Missouri Attorney General

*/s/ Alison Esbeck*

Alison Esbeck (MO Bar # 58501)*
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-4977
Alison.Esbeck@ago.mo.gov

Connor McNeall (MO Bar # 76836)*
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Ste 200
St. Louis, MO 63101
(314) 340-7888
connor.mcneall@ago.mo.gov

*Attorneys for Plaintiff*
*Missouri Attorney General's Office*

Plaintiff States' Rule 26(a)(1)
Supplemental Initial Disclosures
Case No. 4:25-cv-03477-JST

STATE OF MONTANA

*/s/ Brent Mead*

Brent Mead (MT #68035000)*
Deputy Solicitor General
Office of Consumer Protection
Montana Department of Justice
P.O. Box 200151
Helena, MT 59620-0151
(406) 444-4500
Brent.mead2@mt.gov

*Attorney for Plaintiff*
*State of Montana*


STATE OF NEBRASKA

*/s/ Benjamin J. Swanson*

Benjamin J. Swanson (NE #27675)*
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68508
(402) 471-7759
benjamin.swanson@nebraska.gov

*Attorney for Plaintiff*
*State of Nebraska*

FOR PLAINTIFF STATE OF NEW HAMPSHIRE:

JOHN M. FORMELLA
Attorney General

*/s/ Amanda N. Purcell*

Amanda N. Purcell, NH Bar #278532*
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-1215
Email: Amanda.N.Purcell@doj.nh.gov

*Attorney for Plaintiff*
*State of New Hampshire*


JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

*/s/ Zeyad A. Assaf*

Zeyad A. Assaf *
Deputy Attorney General
New Jersey Office of the Attorney General
Division of Law
124 Halsey St., 5th Fl.
Newark, NJ 07102
Phone: (609) 696-5363
Email: Zeyad.Assaf@law.njoag.gov

*Attorney for Plaintiff*
*Attorney General of the State of New Jersey*

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General of the State of New York

By:  */s/ Patrick Gibson*

Patrick Gibson (NY Bar No. 5267489)*
Assistant Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6067
Email: patrick.gibson@ag.ny.gov

*Attorney for Plaintiff*
*The State of New York*


FOR PLAINTIFF THE STATE OF NORTH CAROLINA:

JEFF JACKSON
North Carolina Attorney General

*/s/ Jesse Ramos*

JESSE RAMOS (NC Bar No. 51663)*
Special Deputy Attorney General

KUNAL CHOKSI (NC Bar No. 55666)
Senior Deputy Attorney General

BRIAN RABINOVITZ (NC Bar No. 41538)*
Special Deputy Attorney General

Consumer Protection Division
North Carolina Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tel: (919) 716-6000
Fax: (919) 716-6050
Email: jramos@ncdoj.gov

*Attorneys for Plaintiff*
*The State of North Carolina*

Plaintiff States' Rule 26(a)(1)
Supplemental Initial Disclosures
Case No. 4:25-cv-03477-JST

DAVE YOST
OHIO ATTORNEY GENERAL

/s/ Kevin R. Walsh

Kevin R. Walsh (0073999)*
Senior Assistant Attorney General
Consumer Protection Section
615 W. Superior Avenue, 11th Floor
Cleveland, Ohio 44113
Telephone: (216) 787-3447
Facsimile: (866) 947-3223
Email: Kevin.Walsh@ohioago.gov

Attorneys for Plaintiff
Ohio Attorney General


GENTNER DRUMMOND,
ATTORNEY GENERAL OF OKLAHOMA

/s/ Christopher J. Campbell

Cameron R. Capps, OBA No. 32742*
Christopher. J. Campbell, OBA No. 33649*
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 522-1260
Fax: (405) 521-3921
Cameron.Capps@oag.ok.gov
Chris.Campbell@oag.ok.gov

Attorneys for Plaintiff
Attorney General of Oklahoma

DAVID W. SUNDAY, Jr.
PENNSYLVANIA ATTORNEY GENERAL

By:

*/s/ Merna T. Hoffman*
MERNA T. HOFFMAN\*
Senior Deputy Attorney General
PA Attorney I.D. No. 312897
15th Floor, Strawberry Square
Harrisburg, PA 17120
Email: mhoffman@attorneygeneral.gov

JOHN M. ABEL\*
Chief Deputy Attorney General
Bureau of Consumer Protection
PA Attorney I.D. No. 47313
15th Floor, Strawberry Square
Harrisburg, PA 17120
Email: jabel@attorneygeneral.gov

*Attorneys for Plaintiff*
*Attorney General of Pennsylvania*


**JAY JONES,**
**ATTORNEY GENERAL OF THE**
**COMMONWEALTH OF VIRGINIA**

*/s/ Mark S. Kubiak*
Mark S. Kubiak (VSB No. 73119)\*
Senior Assistant Attorney General
Timothy S. Allison (VSB No. 98083)\*
Assistant Attorney General
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-7364 (Kubiak)
            (804) 786-0594 (Allison)
E-mail: mkubiak@oag.state.va.us
        tallison@oag.state.va.us

*Attorneys for Plaintiff*
*Jay Jones, Attorney General of the*
*Commonwealth of Virginia*

Plaintiff States' Rule 26(a)(1)
Supplemental Initial Disclosures
Case No. 4:25-cv-03477-JST

**JOHN B. MCCUSKEY,
ATTORNEY GENERAL OF WEST
VIRGINIA**

/s/ Tanya L. Godfrey
Ann L. Haight (WVSB# 1527)*
Deputy Attorney General, Consumer Director
Tanya L. Godfrey (WVSB# 7448)*
Assistant Attorney General
Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Ann.L.Haight@wvago.gov
Tanya.L.Godfrey@wvago.gov

*Attorneys for Plaintiff
Attorney General of West Virginia*


JOSHUA L. KAUL
Attorney General of Wisconsin

/s/ Laura E. McFarlane
LAURA E. MCFARLANE*
Assistant Attorney General
State Bar #1089358
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911
(608) 294-2907 (Fax)
laura.mcfarlane@wisdoj.gov

*Attorney for Plaintiff
State of Wisconsin*

*Pro hac vice* application filed or forthcoming

Co-counsel for attorneys appearing *pro hac vice*:

Kerry O'Brien (CABN 149264)
Federal Trade Commission
Western Region San Francisco
90 Seventh St., Suite 14-300
San Francisco, CA 94103
Phone: (415) 848-5100
Email: kobrien@ftc.gov