# Exhibit C

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN,<br><br>    Plaintiffs,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC., a corporation, and Uber USA, LLC, a limited liability company,<br><br>    Defendants. | Case No. 4:25-CV-3477-JST<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF FTC'S SECOND SET OF INTERROGATORIES**<br><br>Complaint Filed: April 21, 2025 |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules"), Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively "Defendants" or "Uber") hereby provide these objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Second Set of Interrogatories (the "Interrogatories"). Uber reserves the right to supplement or amend these objections and responses as necessary in accordance with the Federal Rules of Civil Procedure and any Local Rules or orders of this Court.

## GENERAL OBJECTIONS

The following General Objections apply to each of the Interrogatories whether or not specifically referred to and/or incorporated in each response:

1. Privilege. Uber objects to the Interrogatories to the extent they seek documents or information subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (including, without limitation, all communications with, or work product of, any outside attorney) (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Uber shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

2. Reservation of Right to Supplement. These responses and objections are made without prejudice to, and are not a waiver of, Uber's right to amend, correct, or supplement these responses, and are subject to Uber's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents that may exist. Uber provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

3. No Waiver. By responding to these Interrogatories, Uber does not concede the relevance of any Interrogatory nor the relevance or admissibility of any information provided in response thereto. Uber expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, confidentiality, hearsay, or admissibility as evidence for any other purpose.

4. Uber objects to the Interrogatories to the extent that they seek information, documents, or communications that are already in the possession, custody, or control of Plaintiff, in

2

particular through Uber's prior responses to the FTC's September 5, 2024 Voluntary Access Letter ("VAL"), and through prior productions of documents in the present litigation on November 21, 2025 and January 26, February 23, March 9, March 24, April 10, April 27, May 8, May 15, May 27, May 29, June 11, June 12, June 18, June 23, and June 24, 2026 (collectively, Uber's "Prior Productions") which, upon information and belief, have been provided in their entirety to FTC. Uber will provide responsive, non-privileged information, to the extent it exists, that is not duplicative of that already provided to FTC.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

5.      Uber specifically objects to the Instructions and the Definitions to the extent they purport to impose obligations on Uber that exceed those imposed by the Rules and the Local Rules. In responding to these Interrogatories, Uber will follow the requirements set forth in the Rules and the Local Rules.

6.      Uber specifically objects to Instruction H as imposing an undue burden on Uber. Uber has provided information for the time period beginning October 1, 2021 in response to the VAL and for similarly more limited periods in its Prior Productions, consistent with the parties' prior agreement and the Court's Discovery Order (ECF No. 167). It is disproportionate to the needs of the case to require Uber to provide information from November 8, 2019—nearly two full years before the launch of the membership program at issue in FTC's Complaint. Additionally, Instruction H purports to extend the applicable time period to "the date of full and complete response" to the Interrogatories, an indefinite endpoint that extends far after the filing of the Complaint and is an ever-moving goalpost. Uber will interpret these Interrogatories as requesting information from October 1, 2021 to April 21, 2025 ("Applicable Time Period").

7.      Uber specifically objects to the definition of "Cancellation Procedure" and "Cancellation Process" as overbroad, vague, and imprecise. Defining the terms to include "all immediately preceding steps" and "elements that could influence the consumer's behavior during, or

3

understanding of, the process" makes the starting point of a "Cancellation Procedure" or "Cancellation Process" indeterminate, circular, and potentially limitless.[1]

8. Uber specifically objects to the definition of "Customer Correspondence" as overbroad and seeking irrelevant information to the extent it includes any Uber customers who were not Uber One members. Uber objects that "Customer Correspondence" is overbroad to the extent it includes publicly available information (for example, reviews on social media and app stores) that is not in the custody of Uber and is equally accessible to FTC. Further, Uber objects that the phrase "indirectly received from . . . a customer" is overbroad, vague, and imprecise.

9. Uber specifically objects to the definition of "Diverted Cancel" as vague. The phrase "have any reason to believe" lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as "intend[ing] to cancel Uber One." Uber further objects that this term is overbroad to the extent that it would include consumers who "commence a cancellation procedure" with no intention of cancelling Uber One, but instead for purposes of obtaining a Save Offer. Further, the definition improperly requires Uber to speculate about the state of mind of third parties. To the extent an Interrogatory demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence. Because this definition does not enable Uber to ascertain, without resort to speculation, who must be included in or excluded from the responsive universe, Uber cannot reasonably provide a complete or accurate response to Interrogatories using this term.

10. Uber specifically objects to the definition of "Enrollment" or "Enrollment Process" as overbroad, vague, and imprecise. By defining the terms as encompassing "all immediately preceding steps or immediately subsequent steps," the definition refers back to itself without specifying any determinate starting or ending point, thereby rendering it circular and the scope limitless. Further, the inclusion of the phrase "any elements that could influence the consumer's behavior during, or

---

[1] Uber does not include specific objections to defined terms that are not used in the substance of FTC's Interrogatory, even if listed as a definition. Uber expressly reserves the right to further object to FTC's definitions to the extent they are used in subsequent Interrogatories.

4

understanding of, the process" compounds the ambiguity by introducing an undefined, potentially boundless, and similarly circular variable.

11. Uber specifically objects to the definition of "Nonconsensual Enrollee" and "Nonconsensual Enrollment" as vague. The phrase "have any reason to believe" lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as having enrolled "without . . . knowing or realizing." Uber further objects that, by requiring evaluation of individuals based on subjective impressions or conjecture, the definition is overbroad and unduly burdensome. Compliance would necessitate an indefinite, exhaustive review of innumerable records coupled with guesswork as to whether any circumstance—however trivial—could constitute "a reason to believe" enrollment was mistaken. Further, the definition improperly requires Uber to speculate about the state of mind of third parties. To the extent an Interrogatory demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence. Because this definition does not enable Uber to ascertain, without resort to speculation, who must be included in or excluded from the responsive universe, Uber cannot reasonably provide a complete or accurate response to Interrogatories using this term.

12. Uber specifically objects to the definition of "You" and "Your" as overbroad. These Interrogatories were propounded to Defendants Uber Technologies, Inc., and Uber USA, LLC, and Defendants can only provide information that is within their own possession, custody, or control.

13. The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Interrogatories.

**INTERROGATORIES**

**INTERROGATORY 2:** For each Uber One subscriber, identify by Bates number(s) any enrollment flow completed by the consumer, including any advertisements clicked on by the consumer.

**RESPONSE:**

Uber objects to this Interrogatory as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case. Uber further objects to this Interrogatory as vague and ambiguous through its use of undefined terms, including "Uber One subscriber" and "enrollment flow," to the extent that term is different than "Enrollment" or "Enrollment Process." Uber further objects to this Interrogatory on the basis of overbreadth, relevance and proportionality because it seeks information regarding "each Uber One subscriber" and their interaction with "any enrollment flow," without regard to whether the information is at all relevant and proportional to the specific disclosures and enrollment and cancellation practices challenged in the Complaint. Uber objects because it does not maintain this information in the ordinary course of its business. Uber reincorporates its objections to the defined terms, including to "Enrollment Process," as overbroad, vague and imprecise.

Subject to and without waiving the foregoing specific and general objections, Uber directs Plaintiff FTC to the membership database files and data dictionary produced at UBER-FTCU1-00099066 – UBER-FTCU1-00099115 and UBER-FTCU1-00099167, as well as the additional information produced by Uber in response to Plaintiff FTC's Interrogatory 3, from which the enrollment flows completed by Uber One subscribers may be ascertained. The referenced documents and information are in Plaintiffs' possession, custody or control, and the burden of deriving or ascertaining the enrollment flow completed by each consumer is the same for both parties.

**INTERROGATORY 3:** For each entry point variable listed in Uber's data productions responsive to RFP 35 (e.g., "checkout interstitial," "one click," and "interstitial home") identify by Bates number all enrollment flows and advertisements that correspond to the entry point variable.

**RESPONSE:**

Uber objects to this Interrogatory as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case. Uber further objects to this

6

Interrogatory as vague and ambiguous through its use of undefined terms, including "entry point variable" and "enrollment flow," to the extent that term is different than "Enrollment" or "Enrollment Process." Uber reincorporates its objections to the defined terms, including to "Enrollment Process," as overbroad, vague and imprecise.

Subject to and without waiving the foregoing specific and general objections, Uber responds that the entrypoint variables produced in response to RFP 35 do not correspond precisely to the documents showing enrollment flows that it has produced. Uber also does not maintain records related to the entrypoint variables throughout the time period necessary to match each and every entry point variable. Uber is not able to verify the accuracy of any match given the backwards-looking nature of the data and Uber's presently available records.

The following represents Uber's best approximation of how specific entrypoint variables observed in the data correspond to enrollment flows previously produced:

| Entrypoint Variable | Corresponding Bates |
| --- | --- |
| activity_home | UBER-FTCU1-00000139<br>UBER-FTCU1-00002703<br>UBER-FTCU1-00002716<br>UBER-FTCU1-00004533 |
| Billboard | UBER-FTCU1-00000145<br>UBER-FTCU1-00000146<br>UBER-FTCU1-00002729 |
| BILLBOARD | UBER-FTCU1-00000145<br>UBER-FTCU1-00000146<br>UBER-FTCU1-00002729 |
| bottom_sheet_app_launch | UBER-FTCU1-00002704<br>UBER-FTCU1-00002705 |
| BOTTOM_SHEET_APP_LAUNCH | UBER-FTCU1-00002704<br>UBER-FTCU1-00002705 |
| bottom_sheet_home | UBER-FTCU1-00002704<br>UBER-FTCU1-00002705 |

7

| | |
|---|---|
| cart_footer_banner | UBER-FTCU1-00000140<br>UBER-FTCU1-00000141<br>UBER-FTCU1-00000170<br>UBER-FTCU1-00000175<br>UBER-FTCU1-00002706<br>UBER-FTCU1-00004525<br>UBER-FTCU1-00004528 |
| ccc | UBER-FTCU1-00002707<br>UBER-FTCU1-00002708<br>UBER-FTCU1-00004529 |
| checkout | UBER-FTCU1-00000153<br>UBER-FTCU1-00000154<br>UBER-FTCU1-00002720<br>UBER-FTCU1-00002721<br>UBER-FTCU1-00002732 |
| CHECKOUT | UBER-FTCU1-00000153<br>UBER-FTCU1-00000154<br>UBER-FTCU1-00002720<br>UBER-FTCU1-00002721<br>UBER-FTCU1-00002732 |
| checkout_banner | UBER-FTCU1-00000153<br>UBER-FTCU1-00000154<br>UBER-FTCU1-00002720<br>UBER-FTCU1-00002721<br>UBER-FTCU1-00002732 |
| checkout_footer_banner | UBER-FTCU1-00000153<br>UBER-FTCU1-00000154<br>UBER-FTCU1-00002720<br>UBER-FTCU1-00002721<br>UBER-FTCU1-00002732 |
| checkout_interstitial | UBER-FTCU1-00000142<br>UBER-FTCU1-00000168<br>UBER-FTCU1-00000171<br>UBER-FTCU1-00000176<br>UBER-FTCU1-00002709<br>UBER-FTCU1-00002710<br>UBER-FTCU1-00004515<br>UBER-FTCU1-00004518 |
| eats_ccc | UBER-FTCU1-00002707<br>UBER-FTCU1-00002708<br>UBER-FTCU1-00004529 |

| | |
|---|---|
| eft_ccc | UBER-FTCU1-00002707<br>UBER-FTCU1-00002708<br>UBER-FTCU1-00004529 |
| identity | UBER-FTCU1-00000149<br>UBER-FTCU1-00000150<br>UBER-FTCU1-00023124 |
| identity_card | UBER-FTCU1-00000147<br>UBER-FTCU1-00000148<br>UBER-FTCU1-00002713 |
| identity_list_item | UBER-FTCU1-00000149<br>UBER-FTCU1-00000150<br>UBER-FTCU1-00023124 |
| interstitial_home | UBER-FTCU1-00002704<br>UBER-FTCU1-00002705 |
| menu | UBER-FTCU1-00000149<br>UBER-FTCU1-00000150<br>UBER-FTCU1-00023124 |
| one_click | UBER-FTCU1-00004517<br>UBER-FTCU1-00002722<br>UBER-FTCU1-00002733 |
| post_trip_push | UBER-FTCU1-00000155<br>UBER-FTCU1-00023125 |
| Preview | UBER-FTCU1-00004532 |
| product_selector | UBER-FTCU1-00000156<br>UBER-FTCU1-00002725<br>UBER-FTCU1-00002735<br>UBER-FTCU1-00004520<br>UBER-FTCU1-00004521 |
| promo_screen_banner | UBER-FTCU1-00000157<br>UBER-FTCU1-00000158<br>UBER-FTCU1-00002726<br>UBER-FTCU1-00002736<br>UBER-FTCU1-00004531 |
| request_blocker | UBER-FTCU1- 00023116<br>UBER-FTCU1- 00023117<br>UBER-FTCU1- 00023119<br>UBER-FTCU1- 00023120 |
| ring | UBER-FTCU1-00002727 |
| ring_dispatch | UBER-FTCU1-00002727 |

9

| | |
|---|---|
| ring_ontrip_interstitial | UBER-FTCU1-00000172<br>UBER-FTCU1-00000177<br>UBER-FTCU1-00002724<br>UBER-FTCU1-00004542 |
| settings | UBER-FTCU1-00000149<br>UBER-FTCU1-00000150<br>UBER-FTCU1-00023124 |
| SETTINGS | UBER-FTCU1-00000149<br>UBER-FTCU1-00000150<br>UBER-FTCU1-00023124 |
| signup | UBER-FTCU1-00000161<br>UBER-FTCU1-00002739<br>UBER-FTCU1-00002742<br>UBER-FTCU1-00004530<br>UBER-FTCU1-00004536 |
| storefront_banner | UBER-FTCU1-00000166<br>UBER-FTCU1-00000169<br>UBER-FTCU1-00000174<br>UBER-FTCU1-00004523<br>UBER-FTCU1-00004526 |
| storefront_student_plan_billboard | UBER-FTCU1-00000167<br>UBER-FTCU1-00002749<br>UBER-FTCU1-00002750<br>UBER-FTCU1-00004519<br>UBER-FTCU1-00023126 |
| u4b_org_funded | UBER-FTCU1-00002755<br>UBER-FTCU1-00002756<br>UBER-FTCU1-00004540 |

Uber is continuing to review and will supplement this response to the extent additional information becomes available.

**INTERROGATORY 4:** State the number of impressions received for each advertisement produced by Uber.

**RESPONSE:**

Uber objects to this Interrogatory as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case. Uber further objects to this Interrogatory as vague and ambiguous through its use of undefined terms, including "impressions." Uber further objects to this Interrogatory on the basis of overbreadth, relevance and proportionality

10

because it seeks information regarding the "number of impressions received for each advertisement produced by Uber," without regard to whether the information is at all relevant and proportional to the specific disclosures and enrollment and cancellation practices challenged in the Complaint.

Subject to and without waiving the foregoing specific and general objections, Uber responds that it is willing to meet and confer regarding this Interrogatory and what information the FTC seeks regarding advertisement impressions.

Dated: June 29, 2026

_/s/ Lauren C. Freeman_

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel (_pro hac vice_)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (_pro hac vice_)
david.gringer@wilmerhale.com
Marissa M. Wenzel (_pro hac vice_)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

11

DEFENDANT UBER TECHNOLOGIES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF FTC'S SECOND
SET OF INTERROGATORIES; CASE NO. 4:25-CV-3477-JST

Telephone: 212-230-8800

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

DEFENDANT UBER TECHNOLOGIES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF FTC'S SECOND SET OF INTERROGATORIES; CASE NO. 4:25-CV-3477-JST