UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | Case No.  25-cv-03477-JST   (TSH) |
| Plaintiffs, | |
| v. | **DISCOVERY ORDER** |
| UBER TECHNOLOGIES, INC., et al., | Re: Dkt. No. 249 |
| Defendants. | |

The parties filed a joint status report on discovery at ECF No. 249.  The Court held a hearing on July 24, 2026 and now issues the following order.

**A.      FTC's Motions**

**1.      RFPs 52 and 53**

The FTC moves for an order requiring Uber to complete its non-custodial document productions in response to RFPs 52 and 53 by August 12, 2026.  Uber agrees.  Accordingly, it is **SO ORDERED**.

**2.      Rogs**

**a.      Rog 2**

Rog 2 requested:  "For each Uber One subscriber, identify by Bates number(s) any enrollment flow completed by the consumer, including any advertisements clicked on by the consumer."  The FTC states that Uber's response is deficient and incomplete.  Uber agrees its response is incomplete.  Uber states that the only accessible data Uber has about how a member signed up is through its "entrypoint" field in its customer data.  The parties agree that out of approximately 46.3 million Uber One subscribers, Uber's response to rog 2 omits information for 19.4 million customers.  Uber says that it is because its membership database does not have entry

point variables for those customers. Uber is investigating whether that data is available in another source. At the hearing Uber stated that it has located some additional responsive information that it can provide by August 14, 2026. The FTC argues that if Uber in fact does not have that information for any of its customers, it should clearly confirm that fact in writing and explain, to the extent it can, how Uber One subscribers who are missing the entry point variable came to be enrolled in Uber One.

Rule 33 governs rogs. It says that an entity responding to a rog "must furnish the information available to the party." Fed. R. Civ. Proc. 33(b)(1)(B). So, that is what Uber must do. The Court **GRANTS** the FTC's motion to compel on rog 2 and **ORDERS** Uber to provide a supplemental response to rog 2 no later than August 14, 2026, and thereafter as required by Rule 26(e), with the responsive information available to it. That includes information that may be available in a source other than the entry point field in the customer data, if responsive information exists elsewhere. The Court does not think that in response to rog 2 Uber needs to explain how Uber One subscribers who are missing an entry point variable came to be enrolled in Uber One. The rog didn't ask that.

### b. Rog 3

Rog 3 requested: "For each entry point variable listed in Uber's data productions responsive to RFP 35 (*e.g.*, 'checkout interstitial,' 'one click,' and 'interstitial home') identify by Bates number all enrollment flows and advertisements that correspond to the entry point variable." The FTC says that Uber's response is incomplete. The FTC says that Uber's previous productions indicate that there are around 230 different entry point variables, but Uber has answered the rog for only 35 of them, and for 32 of them there are multiple enrollment flows associated with a single entry point variable. Further, according to the FTC, Uber has produced enrollment flows that do not correspond to any of the listed entry point variables, further confusing the situation. The FTC requests that the Court order Uber, by July 29, "(1) to identify the Bates numbers of all enrollment flows and advertisements that correspond to all 230 different entry point variables; (2) for entry point variables that correspond to multiple enrollment flows, to provide information showing the specific enrollment flow a subscriber completed to enroll or confirm in a

United States District Court
Northern District of California

supplemental response that such information does not exist; and (3) to provide a complete list of all corresponding enrollment flows and advertisements for the entry point variables listed in Uber's initial response to the FTC's Interrogatory number 3."

For its part, Uber stated in the status report that the 35 entry point variables for which it provided information account for 84.6% of the enrollments across all entry points (for consumers that have an entry point variable in the database). During the hearing Uber said that number is now up to 90%. For the remainder, Uber states that it has been working to identify the requested information, but that is time consuming because the more rarely used entry points are not as well documented. And most of the remaining entry points appear no longer to be in use. Uber asks the Court to grant it until at least August 14 to supplement its response. However, Uber advises that even by then, it may not have a complete answer, and indeed may not ever have a complete answer.

The Court **GRANTS** the FTC's motion to compel rog 3 as follows: The Court **ORDERS** Uber to answer rog 3 with the information available to it. Uber shall amend its response to rog 3 no later than August 14, 2026, and thereafter as required by Rule 26(e). Of the three forms of relief requested by the FTC, the Court in this paragraph grants the first one. At the hearing the FTC clarified that the third form of relief is duplicative of the first one.

The second form of relief ("for entry point variables that correspond to multiple enrollment flows, to provide information showing the specific enrollment flow a subscriber completed to enroll or confirm in a supplemental response that such information does not exist") is technically responsive to rog 2, not rog 3. Rog 2 asked for the enrollment flows by consumer, whereas rog 3 asked for enrollment flows by entry point variable. From the discussion at the hearing, it sounds like Uber has provided this second form of relief in response to rog 3 (and the answer is that such information does not exist). In any event, the Court **ORDERS** Uber to provide this second form of relief, but the Court sees no harm in Uber providing it in response to rog 3 instead of rog 2.

### 3.    Rog 4

This rog requested: "State the number of impressions received for each advertisement produced by Uber." Uber did not respond to this rog but instead asked for the parties to meet and

3

confer, where Uber requested that the FTC narrow the universe of advertisements. The FTC has now provided a list of 1,167 specific advertisements that include the FTC's alleged misrepresentations. ECF No. 249-4. The FTC requests that Uber be ordered to produce the impression data for these ads by August 5, 2026. Uber agrees to the August 5 deadline and says it believes it will be able to produce impression data for all but 19 of the 1,167 specific advertisements. Uber explains that for the remaining 19, it does not have a specific numeric identifier that would allow it to track impressions.

Accordingly, the Court **ORDERS** Uber to answer rog 4 with the impression data available to it for the 1,167 advertisements no later than August 5, 2026, and thereafter as required by Rule 26(e). The Court **ORDERS** Uber to identify to the FTC in writing no later than July 29, 2026 which of the 1,167 advertisements it is unable to provide impression data for.

## B.    Uber's Motions

### 1.    Customers Plaintiffs Are Most Likely to Rely On

The FTC's initial disclosures identify more than 200 current or former Uber employees and more than 600 purported Uber customers. The States' initial disclosures incorporate the FTC's and Uber's initial disclosures and add a handful of other individuals. Uber states that it does not intend to depose any of its current or former employees, but that still leaves more than 600 potential customer deponents at issue. Under the default provisions of Rule 30, Uber may taken only 10 depositions, but regardless, in the time remaining in discovery Uber says it could not depose the 600 consumer witnesses listed in the FTC's initial disclosures. Uber requests that the Court order Plaintiffs to make a good faith identification of the 20 consumers that they are most likely to rely on, to aid Uber in deciding whom to depose. The FTC and the States oppose.

The Court **DENIES** the request. First, under Rule 26, initial disclosures are normally made near the start of fact discovery, *see* Fed. R. Civ. Proc. 26(a)(1)(C), whereas trial witnesses are disclosed close to trial. Fed. R. Civ. Proc. 26(a)(3)(B). Thus, the normal state of affairs is that a litigant does not know who the other side's trial witnesses will be when it must decide whom to depose. Uber claims to understand this and is not seeking a final list of trial witnesses, but the "problem" it is trying to solve (it doesn't know who in the initial disclosures it should depose)

inheres in the structure of Rule 26 itself.  Like all other litigants whose opponents list more than 10 people in their initial disclosures, Uber will have to figure that out for itself.

Uber says it is trying to avoid a trial by ambush.  However, the Court does not think Uber is facing an ambush.  Uber, after all, can depose a sample of the consumers.  Neither side has asked the Court for leave to take more than ten depositions, so the Court expresses no view on that subject here.  But in principle there is no reason why Uber cannot develop its own consumer deposition evidence.  Uber is free to depose at least some consumers during fact discovery, and the Court does not see the big deal if Uber has to cross examine some additional and undeposed consumers at trial.  They were or are Uber's customers, so it's not true that Uber will be cross examining people it knows nothing about.  Regardless, for consumers who testify live at trial, as well as those whose depositions are played, they will all just be a handful of examples drawn from tens of millions of affected consumers; there is therefore a significant limit to how important any one consumer's testimony is.

Now, it may be that developing consumer deposition evidence is of no use or value to Uber, which may regard all such testimony as part of the FTC's case.  Litigants are often not mirror images of each other, and it is common for one side to think that certain subjects are for its opponent to take discovery into and the litigant will address those matters only defensively.  If Uber's plan is to address consumer testimony in a purely defensive posture – well, that's a litigation choice.  But intentionally not taking a certain category of discovery doesn't mean you are "ambushed" when your opponent presents it at trial.

The Court is also skeptical that Uber's request could be granted.  Uber concedes that it "is not seeking final trial-witness disclosures" or "a binding election of trial witnesses."  Rather, it seeks "only a good-faith identification of the consumers upon which Plaintiffs presently expect to rely," so that it can depose them.  However, trial is a year away, and summary judgment motions have not yet been filed, let alone ruled on.  The Court doubts Plaintiffs have a list of 20 consumers they are most likely to rely on.  There is no reason for them to, as the disclosure of trial witnesses is not due until long after fact discovery closes.  At the hearing, the FTC confirmed that it does not have a list of consumers it currently expects to rely on.

United States District Court
Northern District of California

### 2.    More Rogs

Uber has served 20 rogs on the FTC and 20 on the States.  It now seeks leave to serve 11 rogs over the presumptive limit of 25 in Rule 33, for a total of 36 rogs each to the FTC and States. Uber sets forth in the status report the remaining 16 rogs it would like to serve.  The FTC and the States oppose the request.

The Court **DENIES** Uber's request.  The proposed rogs are excessively repetitive both with each other and with Uber's other rogs.  They are not proportional to the needs of the case.

### 3.    Rog 11

Uber's rog 11 requested:  "Identify each iteration and feature of the Enrollment Flows and Cancellation Flows that You contend violate ROSCA and explain why."  The FTC's response stated merely that the complaint sets forth information showing how Uber's enrollment flows and cancellation flows violate ROSCA.  Uber contends this response is deficient and requests that the Court order the FTC to amend its response by July 31, 2026.

For its part, the FTC agrees to supplement its response to rog 11 but states it cannot do so by July 31.  The FTC refers the Court to its own motion to compel concerning rogs 2 and 3, and says that it is still reviewing Uber's custodial document productions.  However, at the hearing the FTC stated that it could amend its response to rog 11 to provide a meaningful answer by August 7, 2026, and Uber stated that date was acceptable.

Accordingly, the Court **GRANTS** Uber's motion to compel and **ORDERS** the FTC to supplement its response to rog 11 by August 7.  The FTC's existing response is deficient.  The fact that the FTC does not have complete information about Uber's enrollment and cancellation flows does not excuse it from answering rog 11 with the information available to it.  Thereafter, the FTC must further update its response to rog 11 as Rule 26(e) requires.

### 4.    Privilege Logs

Uber requests that the Court set a July 24, 2026 deadline for the FTC's first privilege log (for approximately half of the documents) and a July 31, 2026 deadline for the FTC's final privilege log (to include the remaining privileged documents).  In the status report, the FTC agreed.  At the hearing, the FTC stated that it has reviewed its privileged documents and believes

they all come within exceptions to the logging requirement. Accordingly, the Court **ORDERS** the FTC to serve its first privilege log by July 24 and its final privilege log by July 31 for documents that are required to be logged.

**C.      Next Hearing**

The Court **ORDERS** the parties to file a further discovery status report by August 7, 2026. The Court schedules a further discovery hearing for August 11, 2026 at 1:00 p.m.

**IT IS SO ORDERED.**

Dated: July 24, 2026

THOMAS S. HIXSON
United States Magistrate Judge