Division of Financial Practices
Bureau of Consumer Protection

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

September 11, 2026

***By ECF***

Honorable Thomas S. Hixson
United States District Court, Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *FTC et al. v. Uber Technologies, Inc. et al.*, Case No. 4:25-cv-03477-JST

Dear Judge Hixson:

Plaintiff Federal Trade Commission ("FTC") and Defendants Uber Technologies, Inc. and Uber USA, LLC ("Uber" or "Defendants") submit this joint discovery letter pursuant to Fed. R. Civ. P. 37(a) and the Court's local rules.

The parties hereby attest that they have met and conferred in good faith prior to filing this discovery letter.

Respectfully submitted,

*/s/ Paul Mezan*

Paul Mezan
Federal Trade Commission
*Attorney for Plaintiff FTC*

*/s/ Ben Mundel*

Ben Mundel
Sidley Austin LLP

*Attorney for Uber Technologies, Inc. and Uber USA, LLC*

## I. FTC's Statement

On July 24, 2026, the FTC issued its First Set of Requests for Admission, Fourth Set of Requests for Production, and Third Set of Interrogatories. The Defendants provided their responses on August 24, 2026, several of which the FTC has identified as deficient. As explained below, the FTC respectfully requests that the Court order Uber to supplement its responses by September 18, 2026, to Requests for Production 58 and Interrogatory 13.

### A. Uber's Responses to Interrogatory 13 and Request for Production 58

The FTC issued Interrogatory 13 to obtain information about Defendants' belief in whether their subscription services violated ROSCA. Relatedly, RFP 58 requests that Defendants produce: "All Documents: (a) supporting Your Fourth Affirmative Defense that Uber did not act with intentional misconduct and lacked actual or implied knowledge that its enrollment or cancellation flows violated [ROSCA]; (b) supporting Your response to the FTC's Interrogatory 13; and (c) evidencing or discussing Your purported belief that Your subscription services do not violate [ROSCA]."

As explained below, Uber has both argued that it had a good faith belief for its practices while denying the FTC all discovery necessary to test Uber's alleged belief. This is, of course, a paradigmatic, improper sword-and-shield strategy. Uber cannot both rely on, for example, specific conclusions of its in-house attorneys while thwarting the FTC's ability to investigate those conclusions. Accordingly, the FTC respectfully requests that, unless Uber withdraws its good faith defense, the Court order Uber to produce the documents as set forth below.

In addition to redress for injured consumers, this action seeks civil penalties for Uber's violations of ROSCA. Civil penalties are appropriate if the FTC demonstrates that Defendants committed the violations with "actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A).

In its Answer, Uber asserts that civil penalties are not warranted because it had a good faith belief that its practices complied with the law.[1] The FTC, in seeking to better understand Uber's good faith defense, asked whether Uber contends it believed its subscription services did not violate ROSCA, in addition to asking for details supporting that good faith belief. Ex. A., Rog 13. Uber responded affirmatively that its "subscription services have complied with ROSCA throughout the Applicable Time Period" and that "[t]his conclusion was reached by Uber personnel responsible for Uber One, including business and legal leadership." *Id.* However, it has refused to provide any details about this conclusion, or identify any relevant documents, while withholding the relevant information on privilege grounds. *See* Ex. A, Rog 13

[1] The FTC has moved to strike Defendants' good faith defense on the grounds that it is not a defense to liability under the FTC Act or ROSCA (Dkt. 225 at 10). While the issue remains *sub judice*, even if struck as an affirmative defense, Defendants may try to use good faith as a defense to limit civil penalties. Uber has not denied that it may raise the good faith issue even if it's stricken as an affirmative defense. Thus, Uber has not given the Court any reason to believe that the issue will disappear even if the FTC's motion is granted.

("Uber maintains that any specific legal advice and guidance is privileged."); Ex. B, RFP 58 (Uber "has identified withheld or redacted privileged documents on the privilege logs" that are relevant to good faith defense). Thus, Uber intends to shield from the FTC the exact communications and discussions that it apparently intends to rely on to support its defense, including the details of that purported good faith belief, the personnel involved in reaching that conclusion, when that conclusion was reached, the basis for reaching that conclusion, and any evidence demonstrating that Uber did in fact have a good faith belief.

Under well-established law, Uber has waived any applicable privilege by putting its state of mind, including the specific conclusions of its business and legal employees, at issue. A privilege is waived if: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the privileged information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *See, e.g., United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1995) (applying test from *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

First, Uber's raising a good faith defense is an affirmative act. *See Hearn*, 68 F.R.D. at 581 (raising an affirmative defense qualifies as an "affirmative act"); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) ("The defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way."). While Uber claims its defense is merely just denying scienter, a good faith defense involves an affirmative belief that the party's conduct was lawful, and Uber's interrogatory response confirms it is making such a contention (as shown below by the many cases finding waiver of privilege when a good faith defense is raised). Second, Uber has directly put the "conclusion[s]" of its "business and legal leadership" at issue by raising the good faith defense and thus making its mental state an issue in the case. *See* Ex. A, Rog 13. Uber seems to conflate the second prong with waiver caused by relying on the advice of counsel (which Uber also meets that test as explained below), but the privileged information is at issue in this case not just because Uber is relying on it but also because those communications are relevant to Uber's mental state, which it made an issue in this case. Third, application of the privilege would deny the opportunity to probe the exact discussions that Uber will rely on in arguing against civil penalties. *See Hearn*, 68 F.R.D. at 581 (denial of information necessary to "'defend' against defendants' affirmative defense" satisfies the third *Hearn* prong); *Amlani*, 169 F.3d at 1196 (noting that if the government is denied access to the information because of privilege, "it would be forced to rely almost exclusively on [defendants'] characterization of events"). Uber's argument that there is other evidence of their conduct is irrelevant; what they are withholding is evidence into Uber's subjective belief, which is what is relevant to their good faith defense.

This conclusion accords with courts in this circuit, and throughout the country, that have routinely found that a good faith defense waives privileges where, as here, a defendant does not

rest on a generic denial of scienter but instead affirmatively asserts a good faith belief.[2] *See, e.g., Regents of Univ. of California v. Micro Therapeutics, Inc.*, No. 03-5669, 2007 WL 2069946, at *2-3 (N.D. Cal. July 13, 2007) ("assertions regarding a defendant's good faith may be so inextricably intertwined with the defendant's state of mind that the privilege must give way into the basis for such belief"); *United States v. Ormat Indus., Ltd.*, No. 14-325, 2016 WL 4107682, at *4 (D. Nev. Aug. 1, 2016) (defendant's good faith affirmative defense went "beyond mere denial of scienter to put its state of mind and knowledge of the [statutory requirements] at issue"); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, No. 06-3459, 2012 WL 8134011, at *3 (C.D. Cal. Mar. 9, 2012) (first two requirements met because defendant "has gone beyond merely denying willfulness and has asserted a good faith belief that it had common law rights over Plaintiffs during this time"); *Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 647 (D. Ariz. 2005) ("Application of the privilege here would deny [plaintiffs] vital information to test the reasonableness and good-faith basis of Defendants' denial of their claims."); *accord Cox*, 17 F.3d at 1419 ("Having gone beyond mere denial, affirmatively to assert good faith, [defendant] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege."); *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991) (affirming trial court ruling that "if [defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal"); *United States v. Exxon Corp.,* 94 F.R.D. 246, 249 (D.D.C.1981) ("[T]he only way to assess the validity of [defendant]'s affirmative [good faith] defenses, voluntarily injected into this dispute, is to investigate attorney-client communications.").

This conclusion is also bolstered by the many courts who have found that an advice-of counsel-defense waives applicable privileges.[3] *See, e.g. Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("[T]o the extent that [defendant] claims that its tax position is reasonable because it was based on advice of counsel, [defendant] puts at issue the tax advice it received."); *see also Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2003). Implied waiver of privilege occurs even "in instances in which the magic words 'advice of counsel' are not used but where the circumstances underlying an affirmative defense necessarily rely on otherwise privileged material." *Olvera v. Cnty. of Sacramento*, No. 10-550, 2012 WL 273158, at *3 (E.D. Cal. Jan. 30, 2012); *see also Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20- 1891, 2022 WL 16856349, at *2 (N.D. Cal. Nov. 10, 2022) (attorney-client privilege waived even where defendants did not formally assert advice of counsel defense); *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08- 5129, 2013 WL 1366037, at *2 (N.D. Cal. Apr. 3, 2013) ("[T]he introduction of any evidence that [defendant's] investigation included seeking advice of counsel would be sufficient to put that advice in issue."). Uber cites to *Lamartina v. VMware, Inc.*, where the court found privilege was not waived with respect to one category of documents where defendants invoked the "thoughtful

[2] Courts have similarly found that raising a good faith defense may waive attorney work product protections. *See, e.g. Handgards, Inc. v. Johnson and Johnson*, 413 F. Supp. 926, 931-32 (N.D. Cal. 1976).

[3] Courts have found that protection for attorney work product is likewise waived by raising an advice of counsel defense. *See, e.g. Verizon California*, 266 F. Supp. 2d at 1149; *Mushroom Ass'n v. Monterey Mushrooms, Inc.*, 1992 WL 442892, at *4-5 (N.D. Cal. May 19, 1992).

consideration" of their attorneys, but found privilege *was* waived with respect to a second category of documents where "[defendant] relied on its counsel's conclusions that the trades were in fact legal." No. 20-02182, 2024 WL 3049450, at *5, *7 (N.D. Cal. June 17, 2024). Here, Uber does not simply contend that its lawyers thought about the issue, it is contending that its lawyers reached the conclusion that its practices were legal. Uber's reliance on the "conclusion[s]" of its "legal leadership" puts their legal analysis and advice directly at issue. Uber cannot both cite as evidence the conclusions of its lawyers while stonewalling the FTC's efforts to probe the circumstances surrounding those purported conclusions.

Accordingly, unless Uber withdraws its defense, the FTC respectfully asks the Court to order Uber to produce all documents withheld as privileged, and remove all redactions on documents already produced, that bear on Uber's belief that they had not violated the law. This would include, of course, all documents on the subject, regardless of whether they support or undermine Uber's defense.[4] Contrary to Uber's assertions, the Court in *Ormat* only authorized the two options being presented here: "[defendant] may proceed with its good faith defenses and produce the relevant documents... or preserve the communications' confidentiality by abandoning the defenses that giving rise to the waiver." 2016 WL 4107682, at *5; *see also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003). In fact, courts have found that "defendants cannot avoid waiver by offering to rely at summary judgment or trial solely on non-legal justifications for certain subjective beliefs," which is what Uber is offering by proposing to amend its interrogatory response not to include its legal counsels' conclusions. *See In re Lidoderm Antitrust Litig.*, No. 14-02521, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016).

Uber alternatively proposes to wait until the Court decides on Uber's Fourth Affirmative Defense, then wait further to see whether Uber still claims it had a good faith defense against civil penalties, before deciding on this issue. Uber's proposal to kick the can further down the road is unworkable this late into discovery and on the eve of depositions. *Cf. Ormat*, 2016 WL 4107682, at *4 ("[W]hile [defendant] has not confirmed that it plans to rely on attorney-client communications in proving its defenses... it wishes to retain its option to do so. The Court finds this posture untenable in light of the deposition schedule and document-intensive nature of this case."). Moreover, Uber has not stated that it will not raise good faith arguments even if the affirmative defense is stricken, so there is nothing to be gained by delaying this decision.

---

[4] The case law is clear that the waiver of attorney-client privilege applies to more than just the communications that support Defendants' claim, and also includes any other communications on the subject that may have impacted Defendants' state of mind. *See, e.g. Verizon California*, 266 F. Supp. 2d at 1149 ("Since the question of [defendant]'s state of mind is paramount, all documents and communications that are probative of [defendant]'s state of mind, whether admissible at trial or not, should be discoverable."); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1187 (E.D. Cal. 2001) ("As a result of assertion of advice of counsel, a party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject.") (internal quotations omitted); *U.S. v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) ("[T]he waiver must pertain to all documents bearing upon the subject matter of the defense…. Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid.").

## II. Uber's Statement

Uber's defense rests on what it did, not on what its lawyers said. Uber disclosed all material terms before and during enrollment, obtained express informed consent, and gave subscribers multiple simple mechanisms to cancel. That conduct is documented in the advertisements, enrollment flows, cancellation flows, and business data Uber has already produced, and it is the entire basis of Uber's contention that it complied with ROSCA and lacked knowledge of any violation. Uber has not offered the advice of its counsel in support of that contention. The FTC nonetheless asks the Court to order Uber to produce every document it has withheld as privileged, and to remove the redactions from documents it has already produced, on the subject of whether Uber believed it complied with ROSCA. The FTC does not dispute that those documents are privileged. It argues only that Uber gave up the privilege. The Court should deny that request as premature. The FTC fails at each step of its own waiver test.

The FTC's request to pierce Uber's privilege is premature because it rests entirely on an affirmative defense the FTC is simultaneously asking the Court to strike. The FTC acknowledges in a footnote that it has moved to strike Uber's Fourth Affirmative Defense and that the FTC's motion remains pending. Its only answer to that problem is that Uber "may try to use good faith as a defense to limit civil penalties" no matter what happens with that motion. *Supra* n.1. But the FTC cannot simultaneously ask the Court to strike the defense and, at the same time, treat that defense as a waiver of privilege. The consequences run one way. If the FTC prevails on its motion to strike and on these requests, it will hold privileged material it has no right to see, obtained to meet a defense that no longer exists. Thus, it is the FTC, not Uber, that is trying to have it both ways. *Contra* 1 (falsely accusing Uber of a "paradigmatic … sword-and-shield strategy"). The prudent course is to deny the FTC's discovery request without prejudice, to be revisited if and when the Court denies the FTC's motion to strike.

The FTC also cannot show that Uber waived the privilege. As the FTC recognizes, to overcome concededly valid privilege claims, it must show that: (1) the privilege assertion resulted from an "affirmative act" by Uber, (2) Uber "puts [the] privileged information at issue" through such an affirmative act, and (3) applying privilege would deny the FTC access to "vital" information. *See Amlani*, 169 F.3d 1189, 1195 (citing *Hearn*, 68 F.R.D. at 581). A failure on any one of these three prongs is dispositive, and the FTC has failed to show all three.

First, the FTC argues that "Uber's raising a good faith defense is an affirmative act," but that is backwards. The FTC is the plaintiff, and the FTC is the one that has the burden of proving scienter. *See, e.g.*, *Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1334 (W.D. Wash. 2024) (FTC must allege actual or constructive knowledge). To that end, *the FTC* alleged in the complaint that, "[a]s one of the world's largest technology companies, Uber has extensive legal resources, including in-house and outside counsel who are responsible for ensuring Uber complies with all applicable consumer protection laws and regulations." SAC ¶¶ 91–93. Answering that allegation is a response to the FTC's affirmative act, not Uber's. *See Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1105 n.6 (D. Kan. 2006) ("reject[ing] plaintiffs' suggestion that having an 'intent' element as part of one's burden of proof is sufficient to waive the privilege if protected documents would assist in proving that element.")

The FTC's own filings confirm the point. Despite resting its motion on Uber's so-called "good faith defense," the FTC nowhere reproduces what that defense actually says. Here is the full text: "Plaintiffs' claims are barred, in whole or in part, by Uber's good faith and the absence of intentional misconduct and reckless or negligent conduct. Even if Uber's enrollment or cancellation flows are found to violate ROSCA, Uber lacked actual or implied knowledge of such alleged violations." ECF No. 213 at 53–54 (Fourth Affirmative Defense). The defense denies knowledge and, at most, limits penalties. It facially relies on no legal advice. The one phrase the FTC does feature, Uber's reference to its "business and legal leadership," comes from Uber's answer to an interrogatory the FTC propounded. Again, that is Uber responding to the FTC, not the reverse.

Second, the FTC has not shown that Uber put privileged material at issue. A reference to a lawyer or a legal department does not trigger a subject-matter waiver. In this Circuit, numerous courts have found that a company can reference the fact that in-house lawyers were involved in forming the corporation's state of mind without waiving privilege. *See, e.g.*, *Gemini Data, Inc. v. Google LLC*, No. 24-CV-06412-JSW (PHK), 2026 WL 1726266, at *3 (N.D. Cal. June 15, 2026) (lawyer's testimony "solely as to the ultimate fact of Google's corporate state of mind was not a disclosure of advice of counsel"); *Lamartina v. VMware, Inc.*, No. 20-CV-02182-EJD (VKD), 2024 WL 3049450, at *4–6 (N.D. Cal. June 17, 2024) (no subject-matter waiver where company invoked the "thoughtful consideration" of its attorneys). That is all that Uber has done here. This is also why the FTC's cases are inapposite. Uber asserts no advice-of-counsel defense, and its discovery responses rely on no specific advice of counsel. *Contra Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 2007 WL 2069946 (N.D. Cal. July 13, 2007) (party claiming privilege specifically relied on patent prosecution counsel's good faith belief regarding the availability of certain evidence). The FTC's cases are different in kind. Each involved a party that rested its defense on counsel's own conclusions or advice. *Hearn*, 68 F.R.D. at 581; *Micro Therapeutics*, 2007 WL 2069946, at *1; *Ormat*, 2016 WL 4107682, at *4; *Spin Master*, 944 F. Supp. 2d at 854–55; *Handgards*, 413 F. Supp. at 928–29; *Roehrs*, 228 F.R.D. at 646–47; *Cox*, 17 F.3d at 1418–20; *Exxon*, 94 F.R.D. at 248–49; *Penzoil*, 974 F.2d at 1163; *Ronald A. Katz Tech. Licensing*, 266 F. Supp. 2d at 1148; *Olvera*, 2012 WL 273158 at *4; *Jadoo TV*, 2022 WL 16856349, at *1; *Volterra*, 2013 WL 1366037, at *2.

Third, withholding privileged material denies the FTC nothing vital. The FTC must show that maintaining privilege would be "manifestly unfair." *Hearn*, 68 F.R.D. at 581. The FTC has not made such a showing. The FTC has received mountains of evidence about Uber's subscription practices and an established compliance regime in which no business and legal professionals had actual or implied knowledge that Uber violated ROSCA. Uber has fully responded to Interrogatory 13 and RFP 58.

For Interrogatory 13, the FTC has all the information it needs to test Uber's characterization of why its subscription practices did not violate ROSCA. Uber identified its Uber One advertisements, enrollment flows, and cancellation flows. Uber also asserted that it disclosed all material terms before and during enrollment, that it obtained express informed consent for enrollment, and that it provided multiple simple mechanisms for customers to cancel. Uber's response references at least tens of thousands of documents showing Uber's compliance with ROSCA, including "billing data, usage data, customer behavior data, customer

communications/complaints, email/slack messages, and complaints produced by Plaintiffs." Rule 33 does not require Uber to comb its production and list every single document that could negate the FTC's claim that Uber acted with the requisite scienter.

RFP 58 is duplicative of RFPs that the FTC has long since served and for which Uber has long since produced the agreed upon scope. RFP 18 fully subsumes subparts (a) and (c) of RFP 58, and is closely related to subpart (b). RFP 18 requested "All Documents discussing [ROSCA]…or any other laws or regulations (Including those in foreign jurisdictions) Relating to enrollment, or cancellation of, online subscription services." As Uber noted in its objections to RFP 58, the parties negotiated search terms and custodians for RFP 18, and Uber has long since completed its productions. That means that the FTC already has "All Documents discussing" ROSCA that are not privileged and that fall within the parties' negotiated production criteria. The FTC does not explain what a second review of the same material would add.

If the Court disagrees, the remedy is amendment, not waiver. Uber, in the alternative, asks leave to amend its response to Interrogatory 13 to remove the reference to Uber's 'business and legal leadership.' Courts allow that course rather than forcing a party to choose between its privilege and its defense. *See, e.g.*, *Ormat*, 2016 WL 4107682 at *5 (citing *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)). The FTC's citation to *Lidoderm* is inapposite because the subject matter there was likelihood of success in patent litigation. The court's holding made sense in that context: there was no way for defendants to quarantine their "business judgment and executive experience" from the legal advice they received. *Lidoderm*, 2016 WL 4191612 at *5. Uber, by contrast, can and will maintain its good faith defense without reliance on legal advice.

**ECF ATTESTATION**

I, Paul Mezan, hereby attest that concurrence in the filing of this document has been obtained from the other signatories, and that this document was served by electronic filing or email on September 11, 2026, on all counsel of record.

/s/ Paul Mezan____________________
Paul Mezan