# Exhibit B

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiffs,

vs.

UBER TECHNOLOGIES, INC., a corporation, and Uber USA, LLC, a limited liability company,

Defendants.

Case No. 4:25-CV-3477-JST

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF FTC'S FOURTH SET OF REQUESTS FOR PRODUCTION**

Complaint Filed: April 21, 2025

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively "Defendants" or "Uber") hereby provide objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Fourth Set of Requests for Production of Documents (the "Requests"). Uber reserves the right to supplement or amend these objections and responses as necessary in accordance with the Federal Rules of Civil Procedure and any Local Rules or orders of this Court.

**GENERAL OBJECTIONS**

The following General Objections apply to each of the Requests whether or not specifically referred to and/or incorporated in each response:

Privilege. Uber objects to the Requests to the extent they seek documents or information subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Uber shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

Reservation of Right to Supplement. These responses and objections are made without prejudice to, and are not a waiver of, Uber's right to amend, correct, or supplement these responses, and are subject to Uber's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents. Uber provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

No Waiver. By responding to these Requests, Uber does not concede relevance or admissibility of any Request nor the relevance or admissibility of information or documents provided in response thereto. Uber expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, confidentiality, hearsay, or admissibility as evidence for any other purpose.

Uber objects to the Requests to the extent that they seek information, documents, or communications that are already in the possession, custody, or control of Plaintiff, in particular through Uber's prior responses to the FTC's September 5, 2024 Voluntary Access Letter ("VAL").

Uber will provide responsive, non-privileged information, to the extent it exists, that is not duplicative of that already provided to FTC.

Uber further objects to the Requests to the extent they are duplicative of, or substantially overlap with, previously served Requests as to which the Court has ordered, or the parties have agreed to, custodians, search terms, and applicable date ranges, and pursuant to which Uber has already conducted a custodial review and produced responsive, non-privileged documents. Uber will not re-produce documents that it has already produced in this litigation.

**SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Uber specifically objects to the Instructions and the Definitions to the extent they purport to impose obligations on Uber that exceed those imposed by the Federal Rules of Civil Procedure (Rules) and the Local Rules. In responding to these Requests for Production, Uber will follow the requirements set forth in the Rules and the Local Rules.

Uber specifically objects to Instruction F as imposing an undue burden on Uber. Uber provided information for the time period beginning October 1, 2021 in response to the VAL, and it is disproportionate to the needs of the case to require Uber to provide information from November 8, 2019—nearly two full years before the launch of the membership program at issue in FTC's Complaint. Additionally, Instruction F purports to extend the applicable time period to "the date of full and complete response" to the Request, an indefinite endpoint that extends far after the filing of the Complaint and is an ever-moving goalpost.

Uber further objects to Instruction F to the extent it purports to impose a time period inconsistent with the Court's April 3, 2026 Discovery Order [ECF No. 167] and the parties' agreements reflected in their March 25, 2026 Joint Discovery Statement [ECF No. 158]. To the extent any Request in Plaintiff's Fourth Set is duplicative of, or substantially overlaps with, a previously served Request, Uber will apply the date range previously ordered by the Court, or agreed to by the parties, for the corresponding previously served Request.

Several of the Requests in Plaintiff's Fourth Set substantially overlap with previously served Requests for which the Court has ordered, or the parties have agreed to, the applicable date ranges. Accordingly, Uber will interpret Request 56 as subject to the November 17, 2020 through December

15, 2025 date range applicable to corresponding Requests 12 and 45, which encompass enrollment in Uber One and Uber Pass; Request 57 as subject to the November 17, 2020 through December 15, 2025 date range applicable to corresponding Requests 31, 32, 52, and 53, which encompass surveys and consumer testing of Uber One and Uber Pass; Request 58 as subject to the November 17, 2020 through December 15, 2025 date range applicable to corresponding Request 18, which encompasses documents discussing ROSCA; and Request 60 as subject to the October 1, 2021 through December 15, 2025 date range applicable to corresponding Requests 33(c)-(d) and 54.

Uber specifically objects to the definition of "Cancellation Procedure" and "Cancellation Process" as overbroad, vague, and imprecise. Defining the terms to include "all immediately preceding steps" and "elements that could influence the consumer's behavior during, or understanding of, the process" makes the starting point of a "Cancellation Procedure" or "Cancellation Process" indeterminate, circular, and potentially limitless.

Uber specifically objects to the definition of "Customer Correspondence" as overbroad and seeking irrelevant information to the extent it includes any Uber customers who were not Uber One members. Uber objects that "Customer Correspondence" is overbroad to the extent it includes publicly available information (for example, reviews on social media and app stores) that is not in the custody of Uber and is equally accessible to FTC. Further, Uber objects that the phrase "indirectly received from … a customer" is overbroad, vague, and imprecise.

Uber specifically objects to the definition of "Diverted Cancel" as vague. The phrase "have any reason to believe" lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as "intend[ing] to cancel Uber One." Uber further objects that this term is overbroad to the extent that it would include consumers who "commence a cancellation procedure" with no intention of cancelling Uber One, but instead for purposes of obtaining a Save Offer. Further, the definition improperly requires Uber to speculate about the state of mind of third parties. To the extent a Request demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence.

Uber specifically objects to the term “Document” as overbroad to the extent it requires Uber to produce multiple identical copies of documents due to immaterial differences in “metadata.”

Uber specifically objects to the terms “Electronically Stored Information” and “ESI” as overbroad to the extent they require Uber to produce multiple identical copies of documents due to immaterial differences in “metadata.”

Uber specifically objects to the definition of “Enrollment” or “Enrollment Process” as overbroad, vague, and imprecise. By defining the terms as encompassing “all immediately preceding steps or immediately subsequent steps,” the definition refers back to itself without specifying any determinate starting or ending point, thereby rendering it circular and the scope limitless. Further, the inclusion of the phrase “any elements that could influence the consumer’s behavior during, or understanding of, the process” compounds the ambiguity by introducing an undefined, potentially boundless, and similarly circular variable.

Uber specifically objects to the definition of “Nonconsensual Enrollee” and “Nonconsensual Enrollment” as vague. The phrase “have any reason to believe” lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as having enrolled “without … knowing or realizing.” Uber further objects that, by requiring evaluation of individuals based on subjective impressions or conjecture, the definition is overbroad and unduly burdensome. This definition would necessitate an indefinite, exhaustive review of innumerable records coupled with guesswork as to whether any circumstance—however trivial—could constitute “a reason to believe” enrollment was mistaken. Further, the definition improperly requires Uber to speculate about the state of mind of third parties. To the extent a Request demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber’s knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence.

Uber specifically objects to the definition of “You” and “Your” as overbroad. These Requests for Production were propounded to Defendants Uber Technologies, Inc., and Uber USA, LLC, and Defendants can only provide information that is within their own possession, custody, or control.

The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

**SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS**

**REQUEST FOR PRODUCTION 56:** All Documents (including communications and Advertisements) related to the conversion of Uber Pass subscribers into Uber One subscribers.

**RESPONSE:**

Uber objects to this Request as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case, because it seeks "All Documents" related to the conversion of Uber Pass subscribers into Uber One subscribers without regard to whether such documents are relevant to the specific disclosures and enrollment and cancellation practices challenged in the Complaint. Uber further objects to this Request as duplicative of previously served Requests, including Requests 12 and 45, pursuant to which Uber conducted a custodial review using the search terms proposed by the FTC and ordered by the Court and has produced the responsive, non-privileged documents identified in that review.

Subject to and without waiving the foregoing specific and general objections, Uber responds as follows: Uber has already produced non-privileged documents responsive to this Request through its custodial productions. Uber is willing to meet and confer with Plaintiff to understand what responsive documents, if any, Plaintiff believes are missing from Uber's productions.

**REQUEST FOR PRODUCTION 57:** All Documents related to the membership survey produced at UBER-FTCU1-0002230, including documents sufficient to substantiate Your claim from Your letter dated May 27, 2026 that "less than 4% of Uber One members indicate that they joined Uber One by accident."

**RESPONSE:**

Uber objects to this Request to the extent it seeks information protected from disclosure under the attorney-client privilege and attorney work product doctrines. Uber objects to this Request because it is premised on, and seeks discovery concerning, a confidential settlement communication: Uber's May 27, 2026 letter was a settlement communication designated as confidential pursuant to

Federal Rule of Evidence 408, and it is improper for Plaintiff to propound discovery premised on the contents of a confidential settlement communication. Uber understands the Request to refer to UBER-FTCU1-00022300 and responds on that basis. Uber further objects to this Request as duplicative of previously served Requests, including Requests 31, 32, 52, and 53, pursuant to which Uber conducted a custodial review using the search terms proposed by the FTC and ordered by the Court and has produced the responsive, non-privileged documents identified in that review.

Subject to and without waiving the foregoing specific and general objections, Uber responds as follows: Uber has already produced non-privileged documents relating to UBER-FTCU1-00022300 through its custodial productions.

**REQUEST FOR PRODUCTION 58:** All Documents: (a) supporting Your Fourth Affirmative Defense that Uber did not act with intentional misconduct and lacked actual or implied knowledge that its enrollment or cancellation flows violated the Restore Online Shopper's Confidence Act ("ROSCA"); (b) supporting Your response to the FTC's Interrogatory 13; and (c) evidencing or discussing Your purported belief that Your subscription services do not violate the Restore Online Shopper's Confidence Act ("ROSCA").

**RESPONSE:**

Uber objects to this Request as seeking documents protected from disclosure under the attorney-client privilege and attorney work product doctrines. On its face, the Request seeks documents "evidencing or discussing" Uber's beliefs regarding compliance with ROSCA, which necessarily encompass privileged legal analyses, assessments, and communications with counsel. Uber will not produce such documents, and nothing in this Response waives, or places at issue, any privileged matter. Uber further objects to this Request to the extent that the identification of documents "supporting" Uber's Fourth Affirmative Defense or Uber's response to Interrogatory 13 calls for attorney work product, including counsel's selection and evaluation of documents. Uber's identification of the evidence supporting its defenses will occur in accordance with the schedule ordered by the Court, and Uber reserves the right to rely on any documents produced in discovery in this litigation. Uber further objects to this Request as duplicative of previously served Requests,

including Request 18, pursuant to which Uber conducted a custodial review using the search terms proposed by the FTC and ordered by the Court and has produced the responsive, non-privileged documents identified in that review.

Subject to and without waiving the foregoing specific and general objections, Uber responds as follows: Uber has already produced non-privileged documents responsive to this Request through its custodial productions, and has identified withheld or redacted privileged documents on the privilege logs Uber has served in this litigation. Uber further refers Plaintiff to Uber's objections and response to Interrogatory 13.

**REQUEST FOR PRODUCTION 59:** Certified financial statements, including income statements, balance sheets, and cash flow statements for each of the past three fiscal years and for each quarter of the current fiscal year for both Uber Technologies, Inc. and Uber USA LLC.

**RESPONSE:**

Uber objects to this Request as seeking documents that are not relevant to any claim or defense in this litigation. Uber further objects to this Request as seeking documents that are publicly available and equally accessible to Plaintiff. The audited annual financial statements and unaudited quarterly financial statements of Uber Technologies, Inc., including income statements, balance sheets, and cash flow statements, are contained in Uber Technologies, Inc.'s Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q filed with the U.S. Securities and Exchange Commission. No audited financial statements exist for Uber USA LLC on a standalone basis.

Subject to and without waiving the foregoing specific and general objections, Uber refers Plaintiff to Uber Technologies, Inc.'s Annual Reports on Form 10-K for the past three fiscal years and Quarterly Reports on Form 10-Q for each completed quarter of the current fiscal year, which contain the requested financial statements and are publicly available on the U.S. Securities and Exchange Commission's EDGAR database. No standalone audited financial statements exist for Uber USA LLC.

**REQUEST FOR PRODUCTION 60:** Data or Documents sufficient to show, by month: (a) the average base price of an Uber ride in the United States for both Uber One subscribers and non-Uber

One subscribers; (b) the average Uber Eats service fee in the United States prior to the assessment of any discounts or promotions for both Uber One subscribers and non-Uber One subscribers; and (c) the average Uber Eats delivery fee in the United States prior to the assessment of any discounts or promotions for both Uber One subscribers and non-Uber One subscribers.

**RESPONSE:**

Uber objects to this Request as seeking data and documents that are not relevant to any claim or defense in this litigation. Monthly averages of base ride prices, Uber Eats service fees, and Uber Eats delivery fees for Uber One subscribers and non-subscribers are not relevant to the specific disclosures and enrollment and cancellation practices challenged in the Complaint. Uber further objects to this Request as unduly burdensome and disproportionate to the needs of the case because it would require Uber to compile, aggregate, and analyze an extremely large volume of transaction-level data spanning years of rides and deliveries across the United States, and to create documents and analyses that do not exist and are not maintained in the ordinary course of business, which Rule 34 does not require. Uber further objects to this Request as duplicative of previously served Requests 33 and 54, pursuant to which Uber has produced documents concerning how it determines the total price of Uber rides and Uber Eats deliveries, including the effect, if any, of a consumer's Uber One or Uber Pass membership status on that price.

Subject to and without waiving the foregoing specific and general objections, Uber responds as follows: Uber will not produce documents or data in response to this Request as written.

Dated: August 24, 2026

*<u>/s/ Lauren C. Freeman</u>*

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP

1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Marissa M. Wenzel (*pro hac vice*)
marissa.wenzel@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*