# EXHIBIT B

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street
San Francisco, CA 94111
Telephone: +1 628 235 1026

Brittany R. Warren (*pro hac vice*)
brittany.warren@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA, THE PEOPLE OF THE STATE OF ILLINOIS,

Case No. 4:25-CV-3477-JST

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF FTC'S FIFTH SET OF REQUESTS FOR PRODUCTION**

Complaint Filed: April 21, 2025

AND THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiffs,

vs.

UBER TECHNOLOGIES, INC., a corporation, and Uber USA, LLC, a limited liability company,

Defendants.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules"), Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively "Defendants" or "Uber") hereby provide objections and responses to Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Fifth Set of Requests for Production of Documents (the "Requests"). Uber reserves the right to supplement or amend these objections and responses as necessary in accordance with the Federal Rules of Civil Procedure and any Local Rules or orders of this Court.

## GENERAL OBJECTIONS

The following General Objections apply to each of the Requests whether or not specifically referred to and/or incorporated in each response:

Privilege. Uber objects to the Requests to the extent they seek documents or information subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity from discovery (collectively, "Privileged Information"). Any inadvertent disclosure of Privileged Information by Uber shall not constitute a waiver of any applicable privilege, doctrine, or immunity.

Reservation of Right to Supplement. These responses and objections are made without prejudice to, and are not a waiver of, Uber's right to amend, correct, or supplement these responses, and are subject to Uber's right to produce evidence of any subsequently discovered facts, or additional facts, information, or documents. Uber provides these responses in good faith after a reasonable inquiry and based on information that it knows or can readily obtain.

No Waiver. By responding to these Requests, Uber does not concede relevance or admissibility of any Request nor the relevance or admissibility of information or documents provided in response thereto. Uber expressly reserves its right to assert any and all objections to the admissibility of any responses into evidence at any hearing or trial of this proceeding, or in any other actions or proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, confidentiality, hearsay, or admissibility as evidence for any other purpose.

Uber objects to the Requests to the extent that they seek information, documents, or communications that are already in the possession, custody, or control of Plaintiff, in particular through Uber's prior responses to the FTC's September 5, 2024 Voluntary Access Letter ("VAL"). Uber will provide responsive, non-privileged information, to the extent it exists, that is not duplicative of that already provided to FTC.

Uber further objects to the Requests to the extent they are duplicative of, or substantially overlap with, previously served Requests as to which the Court has ordered, or the parties have agreed to, custodians, search terms, and applicable date ranges, and pursuant to which Uber has already conducted a custodial review and produced responsive, non-privileged documents. Uber will not re-produce documents that it has already produced in this litigation.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Uber specifically objects to the Instructions and the Definitions to the extent they purport to impose obligations on Uber that exceed those imposed by the Federal Rules of Civil Procedure (Rules) and the Local Rules. In responding to these Requests for Production, Uber will follow the requirements set forth in the Rules and the Local Rules.

Uber specifically objects to Instruction F as imposing an undue burden on Uber. Uber provided information for the time period beginning October 1, 2021 in response to the VAL, and it is disproportionate to the needs of the case to require Uber to provide information from November 8, 2019—nearly two full years before the launch of the membership program at issue in FTC's Complaint. Additionally, Instruction F purports to extend the applicable time period to "the date of full and complete response" to the Request, an indefinite endpoint that extends far after the filing of the Complaint and is an ever-moving goalpost.

Uber further objects to Instruction F to the extent it purports to impose a time period inconsistent with the Court's April 3, 2026 Discovery Order [ECF No. 167] and the parties' agreements reflected in their March 25, 2026 Joint Discovery Statement [ECF No. 158]. To the extent any Request in Plaintiff's Fifth Set is duplicative of, or substantially overlaps with, a previously served Request, Uber will apply the date range previously ordered by the Court, or agreed to by the parties, for the corresponding previously served Request.

The Request in Plaintiff's Fifth Set substantially overlaps with previously served Requests for which the Court has ordered, or the parties have agreed to, the applicable date ranges. Accordingly, Uber will interpret Request 61 as subject to the October 1, 2021 through December 15, 2025 date range applicable to corresponding Request 33, which encompasses the same information as this Request.

Uber specifically objects to the definition of "Cancellation Procedure" and "Cancellation Process" as overbroad, vague, and imprecise. Defining the terms to include "all immediately preceding steps" and "elements that could influence the consumer's behavior during, or understanding of, the process" makes the starting point of a "Cancellation Procedure" or "Cancellation Process" indeterminate, circular, and potentially limitless.

Uber specifically objects to the definition of "Customer Correspondence" as overbroad and seeking irrelevant information to the extent it includes any Uber customers who were not Uber One members. Uber objects that "Customer Correspondence" is overbroad to the extent it includes publicly available information (for example, reviews on social media and app stores) that is not in the custody of Uber and is equally accessible to FTC. Further, Uber objects that the phrase "indirectly received from … a customer" is overbroad, vague, and imprecise.

Uber specifically objects to the definition of "Diverted Cancel" as vague. The phrase "have any reason to believe" lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as "intend[ing] to cancel Uber One." Uber further objects that this term is overbroad to the extent that it would include consumers who "commence a cancellation procedure" with no intention of cancelling Uber One, but instead for purposes of obtaining a Save Offer. Further, the definition

improperly requires Uber to speculate about the state of mind of third parties. To the extent a Request demands that Uber divine the intentions or beliefs of customers, it calls for information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence.

Uber specifically objects to the definition of "Document" as overbroad to the extent it requires Uber to produce multiple identical copies of documents due to immaterial differences in "metadata."

Uber specifically objects to the definition of "Electronically Stored Information" and "ESI" as overbroad to the extent they require Uber to produce multiple identical copies of documents due to immaterial differences in "metadata."

Uber specifically objects to the definition of "Enrollment" or "Enrollment Process" as overbroad, vague, and imprecise. By defining the terms as encompassing "all immediately preceding steps or immediately subsequent steps," the definition refers back to itself without specifying any determinate starting or ending point, thereby rendering it circular and the scope limitless. Further, the inclusion of the phrase "any elements that could influence the consumer's behavior during, or understanding of, the process" compounds the ambiguity by introducing an undefined, potentially boundless, and similarly circular variable.

Uber specifically objects to the definition of "Nonconsensual Enrollee" and "Nonconsensual Enrollment" as vague. The phrase "have any reason to believe" lacks any objective, articulable standard for determining what level of information, inference, or supposition is sufficient to trigger an affirmative duty to identify a person as having enrolled "without … knowing or realizing." Uber further objects that, by requiring evaluation of individuals based on subjective impressions or conjecture, the definition is overbroad and unduly burdensome. This definition would necessitate an indefinite, exhaustive review of innumerable records coupled with guesswork as to whether any circumstance—however trivial—could constitute "a reason to believe" enrollment was mistaken. Further, the definition improperly requires Uber to speculate about the state of mind of third parties. To the extent a Request demands that Uber divine the intentions or beliefs of customers, it calls for

information not within Uber's knowledge, is incapable of verification, and is not reasonably calculated to lead to the discovery of admissible evidence.

Uber specifically objects to the definition of "You" and "Your" as overbroad. These Requests for Production were propounded to Defendants Uber Technologies, Inc., and Uber USA, LLC, and Defendants can only provide information that is within their own possession, custody, or control.

The foregoing general objections and specific objections to the instructions and definitions provided by Plaintiff shall be fully incorporated by reference into each of the below specific objections to the Requests.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**REQUEST FOR PRODUCTION 61:** For a random sample of 10% of all U.S.-based consumers who, during the time period from January 1, 2021, through August 31, 2026, used Uber at least once (including both users who were enrolled in an Uber One subscription or free trial and users who were not enrolled in an Uber One subscription or free trial), documents and data sufficient to show:

a. A unique user ID (e.g., "hashed_user_uuid") that is linkable to the unique user IDs previously produced in this matter;

b. The consumer's Uber rides, Including (A) whether, at the time of the ride, the consumer was enrolled in an Uber One subscription or free trial; (B) the date and time in seconds of the request for the ride; (C) the type of ride requested (e.g., Priority, UberX, etc.); (D) whether the ride was reserved or scheduled in advance; (E) geocoordinates for the ride's origin; (F) geocoordinates for the ride's destination; (G) trip distance in miles; (H) trip time in minutes; (I) an identifier for whether the ride was subject to surge pricing and a variable that reports the effect of surge pricing on the ride price (either as a multiple of the base price or an adder in dollars); (J) all components of price, including listed price, actual price paid, all fees associated with the ride, any Uber One discount applied, and any other discount applied; (K) all other data that Uber contends would be necessary or appropriate for a difference-in-differences analysis of ride prices for consumers who are enrolled in Uber One and consumers who are not;

c. The consumer's Uber Eats orders, Including (A) whether, at the time of the order, the consumer was enrolled in an Uber One subscription or free trial; (B) the date and time in seconds of the order; (C) merchant ID; (D) merchant type; (E) whether the order was reserved or scheduled in advance; (F) geocoordinates of the merchant pick-up location; (G) geocoordinates of the drop-off destination; (H) delivery distance in miles; (I) delivery time in minutes; (J) characteristics of the order that affect total price, including total number of items ordered, number of food items ordered, number of drink items ordered, and number of paid add-ons; (K) all components of price, including listed price, actual price paid, all fees associated with the order including delivery fees, any Uber One discount applied, and any other discount applied; (L) all other data that Uber contends would be necessary or appropriate for a difference-in-differences analysis of Uber Eats order prices for consumers who are enrolled in Uber One and consumers who are not;

d. Documents and data sufficient to verify that the data is a 10% sample drawn from the target population using simple random sampling methods; and

e. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

**RESPONSE:**

Uber objects to this Request as overbroad and seeking irrelevant information, as well as unduly burdensome and disproportionate to the needs of the case, because it seeks documents and data for a sample of "all U.S.-based consumers who . . . used Uber at least once (including both users who were enrolled in an Uber One subscription or free trial and users who were not enrolled in an Uber One subscription or free trial)"—i.e., without regard to whether someone is an Uber One customer and whether such documents or data would be relevant to the specific disclosures and enrollment and cancellation practices challenged in the Complaint. Uber further objects to this Request as duplicative of previously served Requests, including Requests 33(a), (b), and (e), which the Court previously rejected on March 11, 2026. (ECF No. 150). As Uber explained to the Court then, "Pricing is only relevant to the extent it bears on Uber's representations about Uber One savings . . . . The FTC is on a fishing expedition for information about how Uber sets prices across

its services. This request is disproportionate for this case." (ECF No. 145 at 5). The Court accordingly rejected the FTC's motion compelling Uber to produce documents responsive to these Requests.

Subject to and without waiving the foregoing specific and general objections, Uber responds as follows: Uber will not produce documents or data in response to this Request.

Dated: September 23, 2026

*/s/ Lauren C. Freeman*

Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
101 California Street
San Francisco, CA 94111
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
50 California Street
San Francisco, CA 94111
Telephone: +1 628 235 1026

Brittany R. Warren (*pro hac vice*)
brittany.warren@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037

*Attorneys for Defendants*
*Uber Technologies, Inc., and Uber USA, LLC*