# EXHIBIT F

Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (Virginia Bar No. 90647)
James Doty (NY Bar No. 4552550)
Sarah Abutaleb (DC Bar No. 1779979)
Allison Wojcicki (DC Bar No. 1736349)
Patrick Roy (DC Bar No. 1023521)
Daniel O. Hanks (DC Bar. No. 495823)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Phone: (202) 758-4177 (Mezan)
Email: pmezan@ftc.gov (Mezan)
(202) 326-3395 (fax)

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

**FEDERAL TRADE COMMISSION, et al.**

Plaintiff,

v.

**UBER TECHNOLOGIES, Inc.**, a corporation, and

**UBER USA, LLC**, a limited liability company,

Defendants.

Case No. 4:25-cv-03477-JST

**PLAINTIFF'S FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal Rules of Civil Procedure 26 and 34, serves the following requests for production of documents ("RFP") from Defendants Uber Technologies, Inc. and Uber USA, LLC (collectively, "Defendants" or "Uber").

Uber's response to these requests is due within 30 days of service. Please also produce for examination, copying, and inspection the documents and things described below within 30 days of service, at the office of the Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.

For purposes of these requests, the following instructions and definitions apply.

## I. INSTRUCTIONS

A. **Failure to Disclose**: You are placed on notice that, to the extent that you fail to disclose responsive documents (including ESI) in response to these RFPs, the FTC may move before or at trial or any other evidentiary hearing to preclude you from presenting evidence regarding or relating to this information.

B. **Ongoing Duty to Supplement**: These RFPs are continuing in nature through the conclusion of this matter and require supplemental responses pursuant to Federal Rule of Civil Procedure 26(e). Responsive Documents obtained or discovered after your initial response and production must be produced promptly.

C. **Document Retention**: Retain all documentary materials used in the preparation of response to these RFPs. The FTC may seek the production of additional documents at a later time during this litigation. Accordingly, you should have already suspended any routine procedures for document destruction and taken other measures to prevent the destruction of documents that are in any way relevant to this litigation during its pendency, regardless of whether you believe such documents are protected from discovery by privilege or otherwise.

D. **Scope of Search**: These RFPs require you to produce documents in your possession or under your actual or constructive custody or control, including, but not limited to,

documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

E. **Construction**: In construing these requests, the singular shall be deemed to include the plural and vice versa, so as to make the requests inclusive rather than exclusive. The past tense shall be construed to include the present and future tenses and vice versa, so as to make the requests inclusive rather than exclusive.

F. **Applicable Time Period**: The applicable time period, unless otherwise specified, shall be from November 8, 2019, to the date of full and complete response. This instruction shall not be read to limit your duty to supplement your responses pursuant to Rule 26(e).

G. **Sharing of Information**: The FTC often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The Commission may make information supplied by you available to such agencies where appropriate pursuant to the Federal Trade Commission Act and 16 C.F.R. § 4.11 (c) and (j) and in compliance with any Protective Order entered by the Court. Information you provide may be used in any federal, state, or foreign civil or criminal proceeding by the Commission or other agencies.

H. **Privilege**: If any document or portion of a document that would be responsive to a request below is not produced because of a claim of privilege or immunity, you shall serve upon the FTC counsel a written list that identifies each such document and the applicable claim (*e.g.*, attorney-client privilege) and provides sufficient information for the FTC to assess the applicability of privilege or protection as required by Federal Rule of Civil Procedure 26(b)(5). Such information includes, without limitation, (a) the name and position of each author,

originator, and/or creator of the document; (b) the name and position of each addressee or recipient of the document; (c) the name and position of each other person who received or was shown the document or a copy thereof; (d) the nature of the document (*e.g.*, a letter, a memorandum, an advertisement, hand-written notes, etc.); (e) the general subject matter of the document or portion of the document withheld; (f) the date of the document or, if the specific creation date of the document is not known, your best estimate of the date (*i.e.*, the month and year or, if the month is not known, the year) on which the document is believed to have been created; (g) the number of pages of the document or portion of the document withheld; (h) the specific privilege or exemption claimed for that document; and (i) an explanation of the grounds for claiming such privilege or exemption, with sufficient particularity to provide a basis for determination of the validity of the privilege or exemption claimed. Any attachment to an allegedly privileged or immune document shall be produced unless you contend that the attachment is also privileged or immune, in which case the information specified above in this paragraph shall be separately provided for each such attachment. If only some portion of any responsive material is privileged, all non-privileged portions of the material must be produced.

I. **Objections**: If there is an objection to any part of a request below, the grounds of the objection and the part to which the objection applies should be identified with specificity, and documents responsive to the remaining part(s) should be produced.

J. **Translations:** Where an identified document is in a language other than English, state whether an English translation of such document exists. If an English translation exists, identify and provide both the document and the English translation.

K. **Sensitive Personally Identifiable Information**: If any material called for by these requests contains sensitive personally identifiable information or sensitive health information of any individual, please contact FTC counsel before sending those materials to discuss ways to protect such information during production, such as by encrypting any electronic copies of such material with encryption software such as SecureZip and providing the encryption key in a separate communication.

For purposes of these requests, sensitive personally identifiable information includes: an individual's Social Security number alone; or an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

## II. DEFINITIONS

A. "**Advertisement**" or "**Advertising**" or "**Ad**" means any written or verbal statement, illustration, or depiction that promotes the sale or use of a good or service or is designed to increase consumer interest in a brand, good, or service. Advertising media includes, but is not limited to: packaging and labeling; promotional materials; print; television; radio; and Internet, social media, and other digital content. Advertisements include email marketing, pop-ups, push notifications, and the like.

B. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any request any document that otherwise might be construed to be outside the scope of the request.

C. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

D. "**Cancellation Procedure**" and "**Cancellation Process**" means the process, flow, or experience through which a consumer may temporarily or permanently stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account, including all immediately preceding or immediately subsequent steps that form part of that process, flow, or experience (such as elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

E. "**Customer Correspondence**" means documents, such as complaints, reviews (on social media, app stores, or otherwise), inquiries, and your responses to such complaints, reviews, and inquiries, that you directly or indirectly received from or sent to a customer, including any complaints or inquiries to or by Better Business Bureaus or government agencies, and your responses to those complaints, reviews, or inquiries.

F. "**Diverted Cancel**" means a consumer: (a) who was enrolled in Uber One (through a free trial or otherwise); (b) for whom you have any reason to believe intended to cancel Uber One through (in whole or in part) a cancellation procedure (including any consumer to commence a cancellation procedure, either on the consumer's own initiative or at your direction); and (c) who did not terminate their enrollment during the cancellation procedure.

G. "**Document**" means the complete original, all drafts, and any non-identical copy, whether different from the original because of notations on the copy, different metadata, or otherwise, of any item covered by Federal Rule of Civil Procedure 34(a)(1)(A), including ESI.

H. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

I. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp or Slack), videoconferencing, other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media. "ESI" also includes such technical assistance or instructions as will enable FTC counsel to convert ESI into a reasonably usable form.

J. **"Enrollment"** or **"Enrollment Process"** means the process, flow, or experience through which a consumer accepts an offer or arrangement to receive a product or service, whether through silence, failure to take affirmative action to reject such offer or arrangement, or otherwise, including all immediately preceding or immediately subsequent steps that form part of

that process, flow, or experience (such as any elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

K. "**Include**" and "**including**" mean "including without limitation," or "including but not limited to," to avoid excluding any document that might otherwise fall within the scope of any request.

L. "**Nonconsensual Enrollee**" or "**Nonconsensual Enrollment**" mean a consumer: (a) who was enrolled in Uber One; (b) whom you have any reason to believe was enrolled without the consumer knowing or realizing they were enrolled; and (c) whom you have no reason to believe was enrolled through identity theft or as a result of any other fraud by a third party. Nonconsensual Enrollment includes "mistaken" enrollment and "accidental" enrollment.

M. "**Product**" means products, goods, and services, and includes online memberships, subscriptions, free trials, and enrollments.

N. "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

O. "**You**" and "**Your**" mean Uber Technologies, Inc., Uber USA LLC, and their wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all current and former directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, individually, collectively, or in any combination.

## III. REQUESTS FOR PRODUCTION

61. For a random sample of 10% of all U.S.-based consumers who, during the time period from January 1, 2021, through August 31, 2026, used Uber at least once (including both users who were enrolled in an Uber One subscription or free trial and users who were not enrolled in an Uber One subscription or free trial), documents and data sufficient to show:

a. A unique user ID (e.g., "hashed_user_uuid") that is linkable to the unique user IDs previously produced in this matter;

b. The consumer's Uber rides, Including (A) whether, at the time of the ride, the consumer was enrolled in an Uber One subscription or free trial; (B) the date and time in seconds of the request for the ride; (C) the type of ride requested (*e.g.*, Priority, UberX, etc.); (D) whether the ride was reserved or scheduled in advance; (E) geocoordinates for the ride's origin; (F) geocoordinates for the ride's destination; (G) trip distance in miles; (H) trip time in minutes; (I) an identifier for whether the ride was subject to surge pricing and a variable that reports the effect of surge pricing on the ride price (either as a multiple of the base price or an adder in dollars); (J) all components of price, including listed price, actual price paid, all fees associated with the ride, any Uber One discount applied, and any other discount applied; (K) all other data that Uber contends would be necessary or appropriate for a difference-in-differences analysis of ride prices for consumers who are enrolled in Uber One and consumers who are not;

c. The consumer's Uber Eats orders, Including (A) whether, at the time of the order, the consumer was enrolled in an Uber One subscription or free trial; (B) the date and time in seconds of the order; (C) merchant ID; (D) merchant type; (E) whether the order was reserved or scheduled in advance; (F) geocoordinates of the merchant pick-up location; (G) geocoordinates of the drop-off destination; (H) delivery distance in miles; (I) delivery time in minutes; (J) characteristics of the order that affect total price, including total number of items ordered, number of food items ordered, number of drink items ordered, and number of paid add-ons; (K) all components of price, including listed price, actual price paid, all fees associated with the order including delivery fees, any Uber One discount applied, and any other discount applied; (L) all other data that Uber contends would be necessary or appropriate for a difference-in-differences analysis of Uber Eats order prices for consumers who are enrolled in Uber One and consumers who are not;

d. Documents and data sufficient to verify that the data is a 10% sample drawn from the target population using simple random sampling methods; and

e. A data dictionary defining Each term or element in the dataset in sufficient detail for someone unfamiliar with the dataset to understand it.

Dated: August 25, 2026

*/s/ Paul Mezan*

Paul Mezan (NY Bar No. 5357124)
Stephanie Liebner (VA Bar No. 90647)
James Doty (NY Bar No. 4552550)
Sarah Abutaleb (DC Bar No. 1779979)
Allison Wojcicki (DC Bar No. 1736349)
Patrick Roy (DC Bar No. 1023521)
Daniel O. Hanks (DC Bar. No. 495823)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 758-4177
pmezan@ftc.gov (Mezan)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION