# EXHIBIT 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

------------------------------X
FEDERAL TRADE COMMISSION, : Case No.:
et al., : 4:25-cv-03477-JST
Plaintiffs, :
v. :
UBER TECHNOLOGIES, INC., a :
corporation; and :
UBER USA, LLC, a limited :
liability company, :
Defendants. :
------------------------------X

VIDEOTAPED DEPOSITION OF MIA PAONE
CONDUCTED VIRTUALLY
THURSDAY, OCTOBER 8, 2026
9:26 a.m. EST

Job No.: 650597
Pages 1 - 264
Reported Stenographically by:
APRIL REID, RPR, CRR, CA CSR #14963



A P P E A R A N C E S

ON BEHALF OF THE COMMONWEALTH OF PENNSYLVANIA:
MERNA T. HOFFMAN, ESQ.
Pennsylvania Office of the Attorney General
Bureau of Consumer Protection
15th Floor, Strawberry Square
Harrisburg, PA 17120

ON BEHALF OF THE FEDERAL TRADE COMMISSION:
GREGORY VAN HOEY, ESQ.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 758-4177

ON BEHALF OF THE DEFENDANTS:
TAYLOR GOOCH, ESQ.
WILMER CUTLER PICKERING
HALE and DORR LLP
50 California Street - Suite 3600
San Francisco, CA 94111
(628) 235-1000



A P P E A R A N C E S cont'd

ON BEHALF OF THE DEFENDANTS: cont'd
JACQUELINE W. VIEIRA, ESQ.
WILMER CUTLER PICKERING
HALE and DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

ALSO PRESENT:
LUKE RILEY, State of Maryland
PAUL KAMINSKI, Videographer
KYLAN BARRY, Remote Technician



I N D E X


| MIA PAONE | PAGE |
|---|---|
| Examination by Mr. Gooch | 11 |
| Examination by Ms. Hoffman | 259 |
| Examination by Mr. Gooch | 260 |


E X H I B I T S


| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Second Amended Complaint | 42 |
| Exhibit 5 | Screenshots | 59 |
| Exhibit 96 | Consumer Complaint Form | 67 |
| Exhibit 121 | Consumer Complaint Form of Dennis Massei | 95 |
| Exhibit 122 | August 4, 2026 letter to Dennis Massei from the Commonwealth of Pennsylvania Office of Attorney General | 100 |
| Exhibit 116 | Consumer Complaint Form of Nicole Mitzel | 106 |
| Exhibit 127 | e-mail from Mitzel to Paone dated 3/3/26 | 107 |
| Exhibit 128 | e-mail from Paone to Mitzel 6/8/26 and following thread | 122 |
| Exhibit 117 | Consumer Complaint Form of Mohamed Swaray | 130 |

9

PROCEEDINGS

THE VIDEOGRAPHER: Here begins media -- Media Number 1 in the Videotaped Deposition of Mia Paone in the matter of Federal Trade Commission v. Uber Technologies, Inc., et al., in the United States District Court, Northern District of California, Oakland Division, Case No. 4:25-CV-03477-JST.

Today's date is October 8th, 2026. The time on the video monitor is 9:26 a.m. Eastern Time.

The videographer today is Paul Kaminski, representing Planet Depos, headquartered at 451 Hungerford Drive, Suite 400, Rockville, Maryland 20850.

All parties of this video deposition are attending remotely.

Would counsel please voice-identify themselves and state whom they represent.

MR. GOOCH: Taylor Gooch on behalf of Uber. Also with me here today is Jacqueline Vieira.

MS. MERNA HOFFMAN: Merna Hoffman on behalf of the Commonwealth of Pennsylvania Office of Attorney General.

10

MR. VAN HOEY: Gregory Van Hoey on behalf of the Federal Trade Commission.

THE VIDEOGRAPHER: The court reporter today is April Reid, representing Planet Depos.

The witness will now be sworn and then we may proceed.

THE STENOGRAPHER: Ms. Paone, if I may please ask you to raise your right hand.

THE WITNESS: (Complies.)

THE STENOGRAPHER: Do you swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do, yes.

THE STENOGRAPHER: Thank you.

We may begin.

THEREUPON:

MIA PAONE

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

11

EXAMINATION

BY MR. GOOCH:

Q. Good morning, Ms. Paone.

**A. Good morning.**

Q. Can you state your full name, just for the record?

**A. Sure. It's Mia Paone.**

Q. And what city and -- do you live in?

**A. Carlisle, Pennsylvania.**

Q. And where do you currently work?

**A. Pennsylvania Office of Attorney General.**

Q. And what's your job title there?

**A. Senior civil investigator.**

Q. How long have you had that job?

**A. Since November of 2025.**

Q. And have you been deposed before?

**A. I have not, no.**

Q. So I just want to run through a couple things. I'm sure your counsel ran them through with you as well, but just since this is your first time.

We, obviously, have a court reporter here today. We're both going to try -- or at least I'm going try, I'm hoping you can as well, to not talk over each other so that way her life

12

can be a little bit easier. Is that okay?

**A. Yeah. Understood.**

Q. And then I know we have a video today, but I'm going to ask you to always answer the questions verbally, so with a "yes" or a "no" or an "I don't know," or whatever the answer may be, but head shakes or "uh-huhs" don't show up on the record. Okay?

**A. Sure.**

Q. And then I'm going to ask you a number of questions throughout the day. I really hope we don't go all day. I'm sure at some point I'm going to say something that makes absolutely no sense to you. If that happens, just let me know; let me ask the question again. Otherwise, I'm going to assume you understood the question. Is that okay?

**A. Great. Thank you.**

Q. And I'm going to try to take breaks about every hour. That being said, at the end of the day, you're in charge. So whenever you want to take a break, just let me know and let everyone else know and we'll take a break. The only thing I'll ask is if there's a question pending, I'll let you answer that specific question, but we can

21

**A. Well, I mean, as I'm sure you saw in the produced documents, there are, like, a number of agents that mediate complaints.**
Q. Uh-hmm.
**A. Most recently, Uber may be receiving correspondence from Megan Herr.**
Q. And who is -- I'm sorry. What did you say the last name was?
**A. Herr. It's H-E-R-R.**
Q. And what is Ms. Megan Herr's responsibility?
**A. She's mediating complaints right now.**
Q. And what's her job?
Do you know her job title?
**A. She's a consumer protection agent.**
Q. Do you have a sense as to how many complaints Ms. Megan Herr handles for Uber One?
MS. HOFFMAN: Objection, form.
**A. Very few.**
Q. So I think the answer is -- to the next few questions are all no, but I just want to make sure. So I'll apologize in advance.
Ms. Paone, you're not offering an expert opinion in this case about whether the advertising at issue that Uber One does is deceptive, are you?

22

**A. Can you repeat the question? I'm sorry.**
Q. Yeah. You bet. And I can talk up.
You're not offering an expert opinion in this case about whether or not Uber One's advertising is deceptive; correct?
**A. No, I am not an expert.**
Q. And you're not offering an opinion about whether or not any consumers, in the State of Pennsylvania or otherwise, were deceived by Uber One; correct?
**A. No, I'm not an attorney.**
Q. And you're not offering an opinion about whether any consumers of Uber One in the State of Pennsylvania or elsewhere were harmed; correct?
**A. No. Again, I'm not an attorney.**
Q. And you're not offering an opinion about the sufficiency or the adequacy of the disclosures of Uber One enrollment; correct?
**A. No, because I am not an attorney.**
Q. And the same would be true about cancellation?
**A. What would be true about cancellation? Do you mind stating the whole question?**
Q. Don't mind at all.
You're not offering an opinion about

23

whether or not -- the sufficiency of the disclosures, that being said, whether or not there are enough or whether or not they're too much, of Uber's cancellation process, are you?
**A. No. I don't have the ability to do so because I'm not an attorney.**
Q. And you're not offering an opinion about what users took away from the enrollment process of Uber One; correct?
**A. No. That would be a question for the consumers.**
Q. And you don't speak on behalf of the consumers; correct?
**A. I do not, no.**
Q. The -- and just to be clear, Uber One consumers should speak for themselves; right?
**A. Correct, yeah.**
Q. And you're not offering an opinion about compliance with the FTC act as part of this case; correct?
**A. No, I'm not an attorney.**
Q. And you're not offering an opinion about compliance with the Pennsylvania Unfair Trade Practices and Consumer Protection law as part of this case; correct?

24

**A. Because I'm not an attorney.**
Q. And you're not offering an opinion about compliance with ROSCA as part of this case; correct?
**A. I'm not an attorney.**
MR. GOOCH: And -- and just for the court reporter, ROSCA is O -- sorry, R-O-S-C-A.
Q. And, Ms. Paone, you're not offering an opinion about expressed or implied claims in any Uber One advertising; correct?
**A. No.**
Q. And I promise, just two more.
**A. Sure.**
Q. And Ms. Pa- -- Paone, you're not offering an opinion about what consumers took away from the advertisements?
In other words, you're not going to speak for the consumers regarding what they understood the advertisements to mean; correct?
**A. Correct. Yeah, the -- the consumers would know that best.**
Q. And finally, you're not offering an opinion in this case regarding damages in any way; correct?

37

**A. Myself, no.**
Q. And as you said earlier, you're not here to speak for complainants; correct?
**A. Correct.**
Q. The person that would need to testify about canceling Uber One would be the people that actually tried to cancel Uber One; correct?
**A. The consumers would know best, yeah.**
Q. And that's not you; right?
**A. Correct.**
Q. So for your deposition here today, I don't want you to reveal anything you talked about with your counsel. Okay?
Did you meet with counsel to prepare for today?
**A. I did.**
Q. About how many times did you meet with counsel?
**A. Twice.**
Q. Roughly, how long were each of those meetings?
**A. A few hours.**
Q. And during those meetings, other than counsel, was anyone else there?
**A. Jessica Nelson.**

38

Q. Was Ms. Jessica Nelson in both of those meetings?
**A. She was in the one -- the second one I think she may have been in for a little bit, but it was mainly just myself.**
Q. And was that second meeting yesterday?
**A. Yes.**
Q. Have you had an opportunity to review the transcript of Ms. Jessica Nelson's deposition?
**A. No.**
Q. Have you had the opportunity to review any of the transcripts of any of the depositions in this case?
**A. No.**
Q. And when you met with Ms. Hoffman -- am I mispronouncing that right?
**A. Correct.**
Q. When you met with Ms. Hoffman for your deposition preparation, did you review any documents?
**A. Consumer complaints.**
Q. Other than the consumer complaints, did you review anything else?
**A. The documents that were produced to Uber.**

39

Q. Do you recall any of those other documents?
**A. The -- I mean, it was mostly consumer complaints, but I believe there was the screenshots. But I was not a part of that. They were just a part of what was produced. And then there was some correspondence between, like, myself and consumers.**
Q. And for the screenshots, you're referring to the ones that Ms. Jessica Nelson took; right?
**A. Correct, yeah. I did not review those, but they were a part of the production.**
Q. And the person that would need to answer questions about those screenshots would be Ms. Jessica Nelson, not you; correct?
**A. Correct.**
Q. You don't have any testimony to give regarding the screenshots that Ms. Jessica Nelson took; correct?
**A. No, sir.**
Q. During your time working on Uber One complaints, have you ever met with anyone from the FTC?
MS. HOFFMAN: Objection. Pursuant to the common interest agreement.
But you can -- you can testify.

40

**A. Myself, no.**
Q. Did you ever meet with a Mr. Jonathan Bugbee for the FTC?
**A. That doesn't ring a well, but -- I mean, I may have been in, like, a meeting, but I -- that -- that name does not ring a bell.**
Q. Did the FTC ever have any role in the complaints that you mediated for the State of Pennsylvania regarding Uber One?
MS. HOFFMAN: Objection, form.
Objection to common interest privilege.
Q. You can answer the question.
**A. Can you ask more specifically what you mean by "role"?**
Q. Yeah. You bet.
So taking the -- the set of complaints regarding Uber One that you handled -- are you with me so far?
**A. Sure.**
Q. For those complaints, you said you were the mediator, the neutral mediator; correct?
**A. Correct.**
Q. Did the FTC have a role in mediating

53

that right?
**A. Because I'm not an attorney, I wouldn't be able to.**
Q. And you're not going to provide any testimony about that; correct?
**A. I don't think so.**
Q. Why don't you turn to paragraph 437.
**A. Okay.**
Q. Do you see on this paragraph it says, "Defendants have failed to obtain a consumer's expressed informed consent before charging the consumer's credit card, debit card, bank account or other financial account for products or services through such transaction"?
Do you see that?
**A. I do see that.**
Q. Now, you have no opinion as to whether or not that statement that defendants have failed to obtain, and it goes on, is true or false; correct?
**A. If we're talking specifically about the complaint, I mean, I don't have the ability to speak on the allegations specifically, but I can say that after reviewing the consumers' complaints, we have received numerous consumers**

54

**who have said that they were charged without giving authorization to Uber.**
Q. Okay. But you already said you didn't investigate whether or not those statements were true or false; correct?
**A. Other than the verification that the consumer provides.**
**And also, I mean, we received responses from Uber saying the consumer was charged. So they didn't ever say that the consumer wasn't charged.**
Q. So Uber has told you that they failed to obtain a consumer's expressed informed consent?
**A. No. That's not what I said.**
Q. So --
**A. Uber had full -- Uber has not denied charging the consumer.**
Q. That wasn't my question.
My question was whether or not you have ever -- strike that.
My question was whether or not you have ever investigated and determined the truthfulness of the statement "Uber failed to obtain consumer's expressed informed consent"?
**A. I did not double-check the consumer's --**

55

**I'm not sure what you want to call it. I did not double-check that their statements were true and accurate, other than I know that when they file a consumer complaint they say that it's true and accurate.**
Q. You didn't ever do any Internet searching, any investigation, pick up the phone and confirm any of the facts; correct?
**A. Oh. I did speak with consumers, sure.**
Q. But again, other than with the consumer, you didn't do anything to verify the facts of their statements; correct?
**A. I sent the information over to Uber and received a response from Uber.**
Q. And Uber didn't say that they failed to obtain the consumer's expressed consent; correct?
**A. No.**
Q. So other than the complaints that you're speaking about, other than those complaints by the consumers, you have no other evidence that Uber failed to obtain consumers' expressed informed consent; right?
**A. I -- no. I mean, I don't think so.**
**But again, I will say that these are legal allegations, and I don't have the ability to**

56

**say if something fits a legal claim.**
**So I -- I share the information that I may, you know, have or receive from consumer complaints, and it would be up to the attorneys to advise if they fit those claims.**
Q. And the appropriate way to determine whether or not those consumers are being truthful and correct is if they actually testify; right?
Not for you to just testify on their behalf?
**A. I mean, the consumers would know the best, yeah.**
Q. And the consumers knowing the best is also true with regard to any allegations related to the cancellation process; right?
**A. Other than the attorneys. I mean, the attorneys are the ones that are interpreting the law. But a consumer could have their story to tell. They were the person who experienced it, not myself.**
Q. Right.
So the person that -- let's take a step back.
So why don't -- I was trying to skip looking at the paragraph, but we'll -- we'll look

261

talk to the credit card company with the consumer on the line with you; right?

**A. I don't think that I ended up, like, getting -- I -- I don't remember exactly what it was.**

**And it may not have even been a credit card company. I don't remember. I mean, it's been years.**

**But I -- I just know, like, if I called a bank and asked for information, they would never, ever give it to me.**

Q. Of course. And that's not my question.

My question is if you've ever asked for any consumer to sign something or give you permission to reach out to a credit card company, bank or any other financial institution.

**A. I don't think the bank would give me that information, no.**

Q. That's not my question.

My question is --

**A. I wasn't sure if -- you asked if I -- and the bank would not give me that information even with the permission of the consumer. I don't think that they would give me that information, no.**

262

Q. Still not my question.

My question is: Have you ever asked a consumer whether or not you could get that permission or have them sign something so you could reach out to a bank or other financial institution?

**A. No.**

MR. GOOCH: No further questions.

MS. HOFFMAN: Nothing further here.

MR. GOOCH: Then I think we're good to go off the record, unless the court reporter, videographer or technician have something they want to ask at all.

THE VIDEOGRAPHER: Please stand by. This marks the end of the deposition of Mia Paone. We're going off the record. The time is 4:16 p.m.

AND FURTHER THIS DEPONENT SAITH NOT.

* * * * *

263

SIGNATURE RIGHTS WERE RESERVED.

(Videotaped Deposition concluded at 4:16 p.m.)

* * * * *

264

CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

STATE OF CALIFORNIA)
)ss.
COUNTY OF SACRAMENTO)

I, APRIL REID, RPR, CRR, CA Certified Shorthand Reporter #14963, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken by me in shorthand and thereafter transcribed into typewriting under my direction and supervison;

That I am neither counsel for, nor related to, any party to said proceedings, nor in any way interested in the outcome thereof.

I further certify that I am not a party to any stipulation, if made, that would waive my duties mandated by the Court Reporters Board of California.

In witness whereof, I have hereunto subscribed my name.

Dated: Tuesday, October 20, 2026,

April Reid, RPR, CRR, Certificate No. 14963