Lauren C. Freeman (SBN 324572)
lfreeman@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415-772-1200
Facsimile: 415-772-7400

Benjamin M. Mundel (*pro hac vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202-736-8729
Facsimile: 202-736-8711

*Attorneys for Defendants*
*Uber T0chnologies, Inc., and Uber USA, LLC*

Sonal N. Mehta (SBN 222086)
sonal.mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-600-5051

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800

Joseph Taylor Gooch (SBN 294282)
taylor.gooch@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
50 California Street
San Francisco, CA 94111
Telephone: +1 628 235 1026

Brittany R. Warren (*pro hac vice*)
brittany.warren@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION; THE ATTORNEYS GENERAL OF THE STATES OF ALABAMA, ARIZONA, CONNECTICUT, MARYLAND, MINNESOTA, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NEW JERSEY, NEW YORK, NORTH CAROLINA, OHIO, OKLAHOMA, PENNSYLVANIA, VIRGINIA, WEST VIRGINIA, WISCONSIN, AND THE DISTRICT OF COLUMBIA; THE PEOPLE OF THE STATE OF CALIFORNIA,** | Case No. 4:25-cv-3477<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF MOTION TO COMPEL A RESPONSE TO RFP 61**<br><br>Assigned to:<br>Hon. Jon S. Tigar, U.S.D.J.<br><br>Hon. Thomas S. Hixson, U.S.M.J. |

**THE PEOPLE OF THE STATE OF ILLINOIS, AND THE PEOPLE OF THE STATE OF MICHIGAN,**

Plaintiffs,

v.

**Uber Technologies, Inc.**, a corporation, and **Uber USA, LLC**, a limited liability company,
Defendants,

After the Court recently denied the FTC's motion to compel a response to RFP 61, the FTC moved for reconsideration on the grounds that (1) the FTC is now willing to narrow its request even further, and (2) the FTC was diligent "in seeking the information" in RFP 61. Dkt. 295 at 2–4. Neither proposition warrants reconsideration, or comes close to meeting the heavy burden to warrant reconsideration. Even as narrowed, the burden of responding to RFP 61 remains disproportionate to the needs of this case, as detailed in the attached declaration. And the FTC's claim of diligence is hollow, because it has had relevant information since the beginning of this case but did not move to compel until fact discovery was almost over. As the Court recognized, RFP 61 was—and remains—a "crushing burden in the final weeks of fact discovery, which could so easily have been avoided had the FTC brought this motion to compel earlier." Dkt. 281 at 3. The motion for reconsideration should therefore be denied.

## I. BACKGROUND

On October 2, 2026, the FTC moved to compel a response to RFP 61. The Court denied that motion on October 15, 2026. Dkt. 281 at 3. The Court began by describing the request as a "doozy." *Id*. at 1. "The real problem with the FTC's motion to compel," moreover, was that "the FTC filed it about six weeks before the close of fact discovery." *Id.* at 2. The "crushing burden in the final weeks of fact discovery, which could so easily have been avoided had the FTC brought this motion to compel earlier, [wa]s not proportional to the needs of the case." *Id.* at 3.

On October 22, 2026, after the Court extended the fact discovery period by one month, the FTC requested leave to move for reconsideration. The next day, the Court granted the FTC leave and

deemed the FTC's arguments at Dkt. 295 to be the reconsideration motion. Dkt. 297. The Court ordered Uber to file a response, including any declarations, no later than October 28, 2026. *Id.*

## II. LEGAL STANDARD

A motion for reconsideration requires leave of court. Civ. L. R. 7-9(a). A party may only seek reconsideration on three grounds: (1) a material difference in fact or law from what was originally presented to the court which could not have been discovered through the exercise of reasonable diligence, (2) the emergence of new material facts or a change of law, or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments. Civ. L. R. 7-9(b); *see In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1163–64 (N.D. Cal. 2019) "Motions for reconsideration are disfavored and 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Id.* at 1163 (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam)). None of those are present here.

## III. ARGUMENT

### A. RFP 61 Remains Disproportionately Burdensome Even With the FTC's Proposed 1% Sample.

The Court correctly concluded that RFP 61 would impose a "crushing burden" on Uber, Dkt. 281 at 3, and nothing in the FTC's reconsideration motion changes that bottom line. The FTC says that it "understands the Court's concern regarding burden" and therefore now seeks "information only on 1% of Uber customers," rather than the 10% of customers that the FTC sought before. Dkt. 295, at 4. In the process, the FTC alleges, without explanation or evidentiary support, that "the vast majority" of Uber's data comes from "a single repository." *Id.* at 4 n.5. The FTC's on-the-fly proposal to narrow the request is opportunistic, but it is not the "emergence" of a "new material fact[]" since it does not cure the foundational burden problems. To explain why, Uber is providing additional details about the burdens in a sworn declaration from one of its data scientists, Philip Linfoot (hereinafter "Linfoot Declaration").

As described, a response to RFP 61 would be massive. A 10% sample, as RFP 61 requests on its face, would comprise billions of transactions, with 35 data points needed for each transaction. Linfoot Decl. ¶ 6. Even the 1% sample that the FTC now offers as a compromise would comprise hundreds of millions of transactions, again each with 35 data points. *Id.* More fundamentally, however, the FTC's focus on the sample size misses the point. The bigger challenge in responding to RFP 61 comes from pulling together data from multiple sources from Uber's different lines of business. Transaction data for Uber rides is stored separately from transaction data for Uber deliveries. Uber's data scientist needs to work with many different teams to gather this data, adding time and effort to formulating a response to RFP 61. *See id.* ¶ 9. Moreover, RFP 61 requests over five and a half years of data. Uber moves older data into a different form of storage. Older data is stored in different repositories that both take longer to access and require additional checks to ensure reliability. *See* Linfoot Decl. ¶ 8. Whether RFP 61 seeks a sample of 10% or 1% of customers, it is still a "humongous amount of data to demand that Uber pull together." Dkt. 281 at 3.

If more were needed, the marginal relevance of the burdensome dataset must be viewed in the context of "the needs of the case." Uber has already produced data showing how much its members saved because of Uber One alone (*i.e.*, without promotions available to members and non-members alike). The FTC's motion does not even mention this data, let alone challenge its validity. Moreover, Uber has designated a 30(b)(6) witness to answer questions about this specific data field and another designee has already been deposed on Uber's average savings claim. When viewed against that information, the FTC's continued pursuit of RFP 61 is especially disproportionate: the FTC is essentially asking Uber to perform a massive meta-analysis to prove the validity of data that the FTC does not contest.

The Court should deny the FTC's motion for reconsideration on grounds that the burden of responding to RFP 61 is still "not proportional to the needs of the case." *Id.*

**B. The FTC's Motion Does Not Undermine the Court's Prior Conclusion that the FTC Was Not Diligent.**

The FTC's only other argument for reconsideration is that it acted diligently in seeking the information in RFP 61 and that the Court "manifestly err[ed]" by finding otherwise. Dkt. 295 at 3.

Although the FTC does not cite Local Civ. R. 7-9(b)(3) in its brief, the FTC is wrong, and there was no error, much less manifest error, in the Court's ruling.

First, the FTC repeatedly takes aim at the wrong target. More specifically, the FTC refers throughout the motion to earlier dates when it allegedly "sought information related to RFP 61." *Id.* at 2–3. But the Court's untimeliness finding was based on when the FTC *filed its motion to compel*, not when the FTC first sought information "related to RFP 61." Dkt. 281 at 2–3 (calling the timing of "the FTC's motion to compel" the "real problem" and noting that the outcome may have been different "[h]ad the FTC filed this motion to compel earlier in fact discovery"). And the distinction matters especially because the FTC has waited until the end of the schedule to conduct vast amounts of discovery: Uber is in the process of responding to twelve other RFPs, seven other interrogatories, and preparing for about thirteen more depositions. Uber's data scientist "do[es] not believe that we would be able to complete this work  accurately in the remaining discovery time," especially factoring in other discovery and other job responsibilities. *See* Linfoot Decl. ¶ 9. As the Court found, therefore, the burdens "could so easily have been avoided had the FTC brought this motion to compel earlier." Dkt. 281 at 3.

Second, the factual premise of the FTC's diligence claim is inaccurate and certainly does not show any manifest error. According to the FTC, it was not until August 2026 that it learned the key "relevant fact" needed to propound RFP 61—namely, "whether Uber included in its calculations promotions that were available to *all* Uber users, subscribers or not." Dkt. 295 at 3. But the FTC knew that "relevant fact" long before August 2026. It is stated in one of Uber's core Uber One enrollment flows *shown in the FTC's own complaint*. Exhibit 1 to the complaint shows a screenshot that tells consumers the $25 average savings figure reflects what Uber One members save "from Uber One and promos." Dkt. 1 at 5; Dkt. 46 at 8; Dkt. 196 at 8. By its plain terms, the phrase "and promos" means that it provides a source of savings separate "from Uber One." The FTC has been on notice of its self-described "relevant fact" since at least the beginning of the case.

Even if the "relevant fact" was not clear from Uber's public documents, Uber's March 9, 2026 production provided additional notice. On that date—five and a half months before the FTC

claims to have realized the relevant fact—Uber produced "documents demonstrating Uber's methodology for calculating savings from Uber One through April 21, 2025." *See* 4th Prod. Cover Letter. Uber identified these documents by Bates numbers. The document produced at UBER-FTCU1-00002120, in combination with the cover letter, made clear that, until at least April 21, 2025, some of Uber's savings claims included promotions that were available to non-members. *See* UBER-FTCU1-00002120 at -2129. The FTC tries to brush aside this document in a footnote, Dkt. 295, at 3 n.3, but its convenient interpretation is strained: while the FTC focuses on a separate row titled "open question," the document plainly states that Uber's "Potential 'National' Savings (existing membership)" did include promotions available to non-members. *See* Dkt. 295, Ex. G. To estimate "potential savings for Uber One," the document says that the calculation includes "Member Promos," "Eater promos," and "Rider promos," making clear that "Eater promos" and "Rider promos" are distinct from "Member promos" and thus available to non-members.

By the time the FTC's reconsideration motion is resolved, less than six and half weeks will remain in fact discovery—with the Thanksgiving holiday in the middle. Now, as before, the FTC is "demand[ing] that Uber pull together" a "humongous amount of data … with six weeks left in fact discovery." Dkt. 281 at 3. As Uber's data scientist has attested, this is not enough time. *See* Linfoot Decl. ¶ 9–10. Now, as before, the FTC's request should be denied.

## IV. CONCLUSION

The Court should deny the Motion. Even at a 1% sample, RFP 61 would still require pulling hundreds of millions of transactions from multiple repositories, a "crushing burden" disproportionate to a case in which Uber has already produced unchallenged savings data. And the FTC's diligence claim fails: the "relevant fact" it says it learned in August 2026 appeared in its own complaint filed April 21, 2025 and then again as early as Uber's March 2026 production.

Date: October 28, 2026

Respectfully submitted,
SIDLEY AUSTIN LLP
By: /s/ Lauren C. Freeman
Lauren C. Freeman
*Attorney for Defendants*